John Fellas
Hagit Elul
Sarah Barrett*
*application for admission pending

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
fellas@hugheshubbard.com

Attorneys for Defendants Dr. Marco Stoffel
and Lauramca Holdings, L.L.C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE ALSAM; COLLEEN AND LOGANY SETTLEMENTS; COLLEEN INVESTMENT AG; ALSAM HOLDING AG; PENNY ASSET AG; LOGANY EQUITY AG; VIERWALDSTATTER BETEILIGUNGEN AG; CLARICK AG; COLLEEN INVESTMENT, L.L.C.; LOGANY, L.L.C.; and WILLIAM TACON, RECEIVER AND MANAGER OF THE ASSETS OF MAYTOWN UNIVERSAL SA AND PLYMPTON UNIVERSAL SA,<br><br>         Plaintiffs,<br>- against -<br>DR. MARCO STOFFEL; ALBE ASSOCIATES LIMITED; BLUECOLT SECURITIES CORPORATION; LAURAMCA HOLDINGS, L.L.C.; and JOHN DOES 1-10<br>         Defendants. | Case No. 2008 CV 02844 |

**SUPPLEMENTAL MEMORANDUM OF LAW
<u>IN FURTHER SUPPORT OF MOTION TO DISMISS OR STAY</u>**

# TABLE OF CONTENTS

Page

BACKGROUND ..................................................................................................................1

    The Swiss Chambers' March 10 Decision..................................................................2

    The Parties ..................................................................................................................3

    The Agreements to Arbitrate ......................................................................................4

ARGUMENT......................................................................................................................5

I.    There is *Prima Facie* Evidence That There Are Agreements To Arbitrate Among The Parties ..................................................................................................6

II.    The Arbitration Agreements Incorporate the Swiss Rules of Arbitration and Swiss Law Which Empower Arbitrators To Determine Their Own Jurisdiction .........8

Conclusion ..........................................................................................................................10

# TABLE OF AUTHORITIES

Page

## CASES

*Am. Bureau of Shipping v. Tencara Shipyard, S.P.A.*, 170 F.3d 349 (2d Cir.1999) ....................... 8

*Global Gold Mining v. Robinson*, --- F.Supp.2d ---, 2008 WL 336821 (S.D.N.Y. Feb. 6, 2008) ............................................................................................................................................ 8

*JSC Surgutneftegaz v. President and Fellows of Harvard College*, 2005 WL 1863676 (S.D.N.Y. Aug. 3, 2005) ........................................................................................................... 9

*Shaw Group v. Triplefine Inter. Corp.*, 322 F.3d 115 (2d Cir. 2003) .............................................. 9

## STATUTES

9 U.S.C. § 205 ................................................................................................................................ 2

28 U.S.C. § 1446 ............................................................................................................................ 2

## MISCELLANEOUS

Robert H. Smit, General Commentary on the WIPO Arbitration Rules, Recommended Clauses, General Provisions and the WIPO Expedited Arbitration Rules, 9 Am. Rev. Int'l Arb. 3, 14 (1998) ............................................................................................................ 9

Article 3(6) of the Swiss Rules of International Arbitration .................................................. 7, 8, 9

Article 6(2) of the ICC Rules of Arbitration ............................................................................. 8, 9

Article 186 of the Swiss Private International Law Act ............................................................. 10

Defendants Dr. Marco Stoffel ("Dr. Stoffel") and Lauramca Holdings L.L.C. ("Lauramca") (collectively "Defendants") respectfully submit this Supplemental Memorandum of Law In Further Support of their Motion To Dismiss Or Stay. The purpose of this Supplemental Memorandum is to bring to the Court's attention the March 10, 2008 decision of the Arbitration Committee of the Zurich Swiss Chamber of Commerce (the "Swiss Chambers") finding that Dr. Stoffel and Lauramca had presented *prima facie* evidence that they had entered into arbitration agreements with all the parties to this lawsuit which require arbitration in Switzerland pursuant to the Swiss Rules of International Arbitration, and referring the Notice of Arbitration to an arbitral tribunal.

## BACKGROUND

On December 21, 2007, the plaintiffs commenced a civil action, numbered 116985/07, against Defendants in the Supreme Court of the State of New York, County of New York. On January 23, 2008, Defendants filed a motion to dismiss or stay on the grounds that the plaintiffs' claims were subject to arbitration, or alternatively, on the grounds of *forum non conveniens*, and oral arguments were heard on March 3, 2008.

Seven days later, on March 10, 2008, the Swiss Chambers issued the decision mentioned above, granting initial jurisdiction over an arbitration instituted by Defendants against all plaintiffs in this case. The subject matter of the arbitration is identical to that of this litigation; in it, Defendants seek declaratory judgment from the Swiss Chambers that they are not liable for the claims brought by plaintiffs in this action.

After this decision, on March 18, 2008 Defendants removed this action to the United States District Court for the Southern District of New York pursuant to the Federal Arbitration Act, 9 U.S.C. § 205, and 28 U.S.C. § 1446. At the time of removal, the state court had not yet reached any decision on Defendants' Motion to Dismiss.

Accordingly, Defendants' Motion to Dismiss is currently pending before this Court.[1] Defendants rest on their state court papers, but hereby respectfully submit supplemental evidence and legal authority relating to the Swiss Chambers' March 10 decision, which was issued both after the motion was fully briefed and oral argument delivered in state court.

As a result of the decision of the Swiss Chambers, an arbitral panel will be constituted in Switzerland to hear the claims asserted in the Notice of Arbitration, which raises the identical issues raised by plaintiffs' complaint. At a minimum, this Court should stay this action until that panel determines whether it has jurisdiction to hear the case before it, since it is clear from the decision of the Swiss Chambers and the applicable Swiss law that the question of arbitrability — the question of whether the disputes raised by the complaint are arbitrable — should be resolved by the soon-to-be constituted Swiss arbitration panel.

*The Swiss Chambers' March 10 Decision*

Defendants filed their Notice of Arbitration with the Swiss Chambers on January 21, 2008, pursuant to the Swiss Rules of International Arbitration (the "Swiss Rules"). The respondents in the arbitration are all the plaintiffs named in this action, defendants Bluecolt Securities Corp. ("Bluecolt") and Albe Associates Ltd. ("Albe"), and non-parties Orconsult SA and Orconsult Ltd. (Notice of Arbitration, January 21, 2008, at pp. 1–3, attached as Ex. D to Declaration of Francois Knopefler dated March 25, 2008 ("Knoepfler Decl.").) As part of the filing, Defendants proffered eighteen agreements between the parties containing arbitration clauses. (*Id.* at pp. 8–14.)

---

1   The state court file, which includes Defendants' Motion to Dismiss and accompanying Memorandum of Law, Plaintiffs' Opposition, and Defendants' Memorandum in Further Support, all with supporting exhibits, will be filed with the clerk of this court pursuant to Local Rule 81.1.

On February 5, 2008, the Swiss Chambers invited Defendants to "make full particulars of the parties bound to the different agreements to arbitrate and to specify which arbitration agreement Claimants invoke" as binding on the respondents. (February 5, 2008 Swiss Chambers' letter, Knoepfler Decl Ex. B.) Defendants responded to the Swiss Chambers' request on February 20, 2008, further explaining the 18 agreements. (Defendants' Complement to the Notice of Arbitration, Knoepfler Decl. Ex. E.)

On March 10, 2008, the Swiss Chamber issued a decision (the "March 10 Decision") finding that the arbitration clauses provided in the first three agreements relied upon in the Notice of Arbitration — the "Donation Agreement," the "Escrow Confirmation" and the "Adoption of Escrow Confirmation" — are "applicable to all the parties to this arbitration." The Swiss Chamber further instructed the Respondents to specify whether they prefer a sole or three-member arbitral tribunal. (Swiss Chambers' March 10 Decision at p. 2, Knoepfler Decl. Ex. C.)

*The Parties*

This dispute is over the use and control of assets held by a complex trust structure devised for estate and charitable purposes. In 1998, Angela Blickle ("Blickle") appointed Dr. Stoffel to act personally or through an entity as protector of several trusts ("the Trusts") that were intended, in part, to support research into borderline personality disorder. (Donation Agreement attached as Exhibit 1 to Declaration of John Fellas dated March 25, 2008 ("Fellas Decl.").) To further this end, Blickle also created a foundation in the field of research into borderline personality disorder ("the Foundation"), named Dr. Stoffel as Director, and donated money to fund the Foundation's work. (*Id.*) Various entities related to the Trusts and Foundation were formed, and various other agreements were entered into, to further the purpose of the Donation Agreement, such as entities designed to maximize assets and reduce tax liabilities. Dr. Stoffel and a number of the trust-related entities comprise the parties in this action. (Compl. at ¶¶ 2-15,

4

18-19, 24, 27, 31.) And the thrust of the complaint in this action is that Dr. Stoffel engaged in wrongdoing in connection with the activities of the Trusts and the Foundation.

*The Agreements to Arbitrate*

As noted, the parties entered into various agreements in order to further the purposes of the Trusts and Foundations. These agreements contain arbitration clauses calling for arbitration in Switzerland, and are relied on as the basis of the Notice of Arbitration.

For example, one such agreement — the Donation Agreement — contains an arbitration clause which provides as follow (with emphasis added):

> **All relationships of our family, the trusts (including trustees, protectors and beneficiaries) and its various entities with the officers and directors of the entities** as well as with the foundation are subject to Swiss Law. All successors of these persons and entities are bound by this agreement. **Exclusive Jurisdiction falls to arbitration in Zurich, according to the rules of the Zurich Chambers of Commerce** including the mandatory submission to its Mini Trial. The parties expressly waive the right of appeal.

(Donation Agreement, Fellas Decl. Ex. 1.)

The Swiss Chambers found that the Donation Agreement, along with two additional agreements containing arbitration clauses — the "Escrow Confirmation" and the "Adoption of Escrow Confirmation" — provide *prima facie* evidence that all the parties to this lawsuit had agreed to arbitrate. (Escrow Confirmation, Fellas Decl. Ex. 2; Adoption of Escrow Confirmation, Fellas Decl. Ex. 3.)

The Swiss Chambers did not discuss any of the remaining fifteen agreements in reaching its March 10 decision, but three of those agreements bear mentioning as plaintiffs explicitly rely on these agreements in their complaint. In January 1999, Dr. Stoffel entered into three fiduciary agreements with Chiltern Trust Company (Jersey) Limited, the name of plaintiff

Vistra Trust Company (Jersey) Limited prior to 2006. (Compl. at ¶ 2.) The Fiduciary Agreements provide as follows (with emphasis added):

> This Agreement is exclusively subject to SWISS LAW. **In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being ZURICH.**

(Fiduciary Agreements, Fellas Decl. Exs. 4, 5, 6.)

In their complaint, plaintiffs explicitly rely on the Fiduciary Agreements in connection with claims for breach of fiduciary duty, alleging that because of, *inter alia*, ". . . certain 'Fiduciary Agreements' which Stoffel entered into with Vistra in January 1999, [] Stoffel could act only on instructions from Vistra with respect to the Swiss and Irish Companies." (Compl. at ¶ 26.) The Fiduciary Agreements on their face govern Dr. Stoffel's duties and activities with respect to plaintiffs Alsam Holding AG, Penny Asset AG, Colleen Investment AG and Logany Equity AG. (Fiduciary Agreements, Fellas Decl. Exs. 4, 5, 6.)

## ARGUMENT

The Swiss Chambers' March 10 Decision is *prima facie* confirmation that the dispute among the parties to this action is governed by arbitration agreements calling for arbitration in Switzerland. Further, Swiss law — which governs those agreements and which plaintiffs concede applies here — holds that plaintiffs are bound under these agreements. (Point I.)

The issue before this Court is <u>who</u> should determine the threshold question of arbitrability, *i.e.*, who decides whether the claims raised by the complaint and, as a corollary, by the Notice of Arbitration should be resolved by arbitration: the arbitration panel that is shortly to be constituted in Switzerland or the Court. The clear and unmistakable evidence contained in the

arbitration agreements show that the arbitrators should resolve this threshold issue of arbitrability. (Point II.)

I. There is *Prima Facie* Evidence That There Are Agreements To Arbitrate Among The Parties.

After considering the various agreements amongst the parties — including, explicitly, the Donation Agreement — the Swiss Chambers determined, as set forth in the March 10 Decision, that defendants Dr. Stoffel and Lauramca had established there were arbitration agreements applicable to the respondents to the arbitration, which include all the plaintiffs in this action, as well as defendants Bluecolt and Albe.

The Swiss Chambers issued the March 10 Decision pursuant to Article 3(6) of the Swiss Rules, which requires the Swiss Chambers to conduct an initial examination of the claimant's submissions with respect to the arbitration agreements invoked by the claimant and to make a determination that there is a *prima facie* agreement to arbitrate between the claimant and the respondent under the Swiss Rules. (Knoepfler Decl. at pp. 2-3.) Article 3(6) of the Swiss Rules provides as follows:

> The Chambers shall provide without delay a copy of the Notice of Arbitration and of any exhibits included therewith to the Respondent, unless the Chambers decide, after consultation with the Special Committee, that there is manifestly no agreement to arbitrate referring to these Rules.

As explained in the Knoepfler Declaration, Article 3(6) of the Swiss Rules requires the Swiss Chambers to make an initial gate-keeping determination as to whether there is evidence of a *prima facie* arbitration agreement between the parties. (Knoepfler Decl. at p. 4.) Only if there is, will the Swiss Chambers then transmit the notice of arbitration to the respondent and refer the arbitration to an arbitral tribunal. (*Id.* at pp. 3-4.) While the Swiss Chambers' initial determination of a *prima facie* arbitration agreement does not preclude the respondent

7

from contesting jurisdiction before the tribunal or the tribunal's ability to examine its own jurisdiction, it is not a determination entered into lightly by the Swiss Chambers. (*Id.* at p. 6.)

The Swiss Chambers' determination of *prima facie* arbitral jurisdiction not only undercuts plaintiffs' argument that they did not enter into arbitration agreements, but also should be accorded deference by this court. In *Global Gold Mining v. Robinson*, No. 07 Civ. 10492, --- F.Supp.2d ---, 2008 WL 336821 (S.D.N.Y. Feb. 6, 2008), a claimant in an arbitration sought to compel the International Court of Arbitration ("ICC Court") of the International Chamber of Commerce ("ICC") to reverse its initial determination that there was no arbitration agreement conferring jurisdiction over the respondent which it made pursuant to Article 6(2) of the ICC Rules of Arbitration — the ICC counterpart to Article 3(6) of the Swiss Rules (Knoepfler Decl. at pp. 4-5). The court denied the motion, stating that where the ICC Rules "call for the ICC Court to make a determination, those rules are to be followed, and that determination respected." *Global Gold Mining*, 2008 WL 336821, at *3.

Indeed, even absent a finding by the Swiss Chambers, it is clear that the plaintiffs here — each of whom asserts claims concerning misappropriation of trust assets — are subject to the Donation Agreement as either trustees, protectors, beneficiaries or "its various entities." The Donation Agreement forms the basis for the Trust structure, the various plaintiff Trust entities, and the charitable donations being challenged by plaintiffs. *See* Memorandum of Law of Defendants Dr. Marco Stoffel and Lauramca Holdings, L.L.C. in Further Support of Motion to Dismiss ("Def. Reply Mem.") at p. 4.[2]

---

2  Even if the plaintiffs were construed to fall outside of the expansive terms of trust entities contemplated by the Donation Agreement, Swiss law — which applies to the issue of arbitrability (Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion to Dismiss at 20 n. 6) — recognizes numerous situations in which a nonsignatory can be bound to an arbitration agreement. (Def. Reply Mem. at p. 4; Declaration of Messrs.

(Footnote continued on next page)

II.   The Arbitration Agreements Incorporate the Swiss Rules of Arbitration and Swiss Law Which Empower Arbitrators To Determine Their Own Jurisdiction.

The Swiss Chambers' March 10 Decision is also relevant to the threshold issue presented in this motion to dismiss: who should determine the arbitrability of plaintiffs' claims. As explained in Defendants' Reply Memorandum, the broad scope of the arbitration clauses at issue and the express incorporation of the Swiss Rules constitute clear and unmistakable evidence that the parties intended the arbitral tribunal — and not the courts — to decide the threshold issue of arbitrability. (Def. Reply Mem. at pp. 6-7.)

In *Shaw Group v. Triplefine Inter. Corp.*, the Second Circuit held that the incorporation of the ICC Rules sufficiently evidenced the parties' intent to arbitrate questions of arbitrability because "Article 6, section 2, of those rules ... specifically provides for the ICA, the arbitral body of the ICC, to address questions of arbitrability, either *sua sponte* before an answer is filed or at the specific request of any party." 322 F.3d 115, 122 (2d Cir. 2003). Significantly, Article 6(2) of the ICC Rules — on which the Second Circuit relied in *Shaw* — is the ICC's procedural counterpart to 3(6) of the Swiss Rules, under which the Swiss Chamber has already issued a positive determination that there is a *prima facie* agreement to arbitrate among all the plaintiffs and Defendants. (Knoepfler Decl. at pp. 4-5.)

Moreover, it is important to note that the arbitration agreements provide the situs of the arbitration to be Switzerland. The "situs of the arbitration is of critical importance because

---

(Footnote continued from previous page)

Francois Knoepfler and Philippe Schweizer dated February 26, 2008, at pp. 9–12.) The result would be the same under U.S. law. Plaintiffs cannot avail themselves of the benefits of the agreements with Dr. Stoffel and Lauramca and later disavow the portion of those agreements subjecting them to arbitration. *See, e.g., Am. Bureau of Shipping v. Tencara Shipyard, S.P.A.*, 170 F.3d 349 (2d Cir.1999).

the law of the jurisdiction in which the arbitration is conducted ordinarily <u>provides the procedural law of the arbitration.</u>" *JSC Surgutneftegaz v. President and Fellows of Harvard College*, No. 04 Civ. 6069, 2005 WL 1863676, at * 7 (Aug. 3, 2005 S.D.N.Y.). *See also* Robert H. Smit, General Commentary on the WIPO Arbitration Rules, Recommended Clauses, General Provisions and the WIPO Expedited Arbitration Rules, 9 Am. Rev. Int'l Arb. 3, 14 (1998) ("<u>[T]he law of the arbitral situs will or may determine</u> the arbitrability of the ... dispute, the validity of the arbitration agreement, <u>the procedures that may or must be used in the arbitration</u>, the availability of interim relief from the arbitrators or local courts, the availability of particular types of relief . . ., the nature and extent of judicial intervention in the proceedings, the procedural recourse for confirming, enforcing and vacating the award, and the enforceability of the award in other countries.") (emphasis added).

Thus, whenever parties enter into an arbitration agreement that specifies Switzerland as the place of arbitration, they are agreeing to the mandatory application of Swiss procedural law generally and specifically to the application of Article 186 of the Swiss Private International Law Act, which provides that the arbitral tribunal has the jurisdiction to determine its own jurisdiction. (Knoepfler Decl. at pp. 9-10.) Article 186 of the Swiss Private International Law Act has been interpreted as mandatory, such that the "the parties cannot deprive the arbitral tribunal of the power and confer it on another authority, be it an institution or a court." (*Id.*) The Swiss federal court has ruled that pursuant to Article 186 "if the state judge is seized with an objection based upon arbitration and that the arbitral tribunal has its seat in Switzerland, the judge will limit himself/herself to a summary examination of the existence *prima facie* of the arbitration clause so not to jeopardize the decision of the arbitral tribunal on its own

jurisdiction." (Declaration of Francois Knoepfler and Philippe Schweizer dated February 26, 2008 at pp. 5-6.)

The Swiss Chambers has already made the initial determination of the *prima facie* existence of arbitration agreements among the parties to this litigation with the result that a tribunal will shortly be constituted to determine whether it has jurisdiction to resolve the claims made in the Notice of Arbitration. In deference to that decision, and consistent with Article 186 of the Swiss Private International Law Act, this Court should, at a minimum, stay this action pending that tribunal's determination of its jurisdiction.

## Conclusion

For the foregoing reasons, and as set forth in Defendants' opening and reply papers, this Court should dismiss the complaint in favor of arbitration or, in the alternative, stay this litigation.

Dated this 25th day of March, 2008.

HUGHES HUBBARD & REED LLP

By: _____
John Fellas
Hagit Elul
Sarah Barrett*

One Battery Park Plaza
New York, New York 10004
(212) 837-6000
fellas@hugheshubbard.com

*Attorney for Defendants Dr. Marco Stoffel and Lauramca Holdings, L.L.C.*

*application for admission pending

CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Motion For Leave To Submit Supplemental Memorandum Of Law, Supplemental Memorandum of Law In Further Support of Motion to Dismiss, Declaration of John Fellas In Support of the Supplemental Memorandum Of Law, and Declaration of Francois Knoepfler all dated March 25, 2008, to be served by Federal Express this 25 day of March, 2008, to the following:

    Scott S. Balber, Esq.
    Chadbourne & Parke LLP
    30 Rockefeller Plaza
    New York, NY 10112

    Martin J. Murray, Esq.
    Law Offices of Martin J. Murray
    475 Park Avenue South, 23rd Floor
    New York, NY 10011

    ATTORNEYS FOR PLAINTIFFS VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE ALSAM; COLLEEN AND LOGANY SETTLEMENTS; COLLEEN INVESTMENT AG; ALSAM HOLDING AG; PENNY ASSET AG; LOGANY EQUITY AG; VIERWALDSTATTER BETEILIGUNGEN AG; CLARICK AG; COLLEEN INVESTMENT, L.L.C.; LOGANY, L.L.C.; AND WILLIAM TACON, RECEIVER AND MANAGER OF THE ASSETS OF MAYTOWN UNIVERSAL SA AND PLYMPTON UNIVERSAL SA

I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 25, 2008
    New York, New York

_____
Hagit Elul