```
        CCOAMINI          SUPREME COURT - STATE OF NEW YORK    DATE: 04/01/2008
INDEX NO: 116985 2007         NEW YORK COUNTY CLERK           TIME: 12:06:31
PURCHASE: 12212007        CIVIL INDEX MINUTE BOOK INQUIRY


PLAINTIFF NAME: VISTRA TRUST CO LTD  DEFENDANT NAME: STOFFEL MARCO
       ATTORNEY: CHADBOURNE & PARKE,        ATTORNEY: UNKNOWN
                 30 ROCKEFELLER PLAZ
                 NEW YORK, NEW YORK
                 1-212 408-5100 EX62
SEQ  DATE                  MINUTES
0001 12212007          SUMMONS AND COMPLAINT


0001 12262007          AFFIDAVIT OF SERVICE (2)


0001 12272007          AFFIDAVIT OF SERVICE


0001 12282007          INTERIM DECISION PART 2 SEQ 001


0001 01042008          NOTICE OF ENTRY


0001 01282008          UNDERTAKING - SD 02-07-2008


0001 01312008          NOTICE OF APPEARANCE


0001 03072008          NOTICE OF APPEARANCE


0001 03122008          PRELIMINARY CONFERENCE ORDER


0001 03182008          NOTICE OF FILING OF NOTICE OF REMOVAL



                    PAGE -   1
```

46-3004R-100M92

## COUNTY CLERK, NEW YORK COUNTY

Application for INDEX NUMBER pursuant to Section 8018, C.P.L.R.

### FEE $210.00

Space below to be TYPED or PRINTED by applicant

| | INDEX NUMBER |
|---|---|
| | Do not write in this space |

## TITLE OF ACTION OR PROCEEDING

VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE
OF THE ALSAM, COLLEEN AND LOGANY SETTLEMENTS,
COLLEEN INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG, VIERWALDSTATTER
BETEILIGUNGEN AG, CLARICK AG, COLLEEN INVESTMENT,
L.L.C., LOGANY, L.L.C., and WILLIAM TACON,
RECEIVER AND MANAGER OF THE ASSETS OF MAYTOWN
UNIVERSAL SA AND PLYMPTON UNIVERSAL SA,

                                    Plaintiffs,

        -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES LIMITED,
BLUECOLT SECURITIES CORPORATION, LAURAMCA
HOLDINGS, L.L.C., and JOHN DOES 1-10,

                                    Defendants.

### CHECK ONE

| | | | |
|---|---|---|---|
| ☐ | COMMERCIAL ACTION | X | NOT COMMERCIAL ACTION |
| ☐ | CONSUMER CREDIT TRANSACTION | X | NOT CONSUMER CREDIT TRANSACTION |
| ☐ | THIRD PARTY ACTION | X | NOT THIRD PARTY ACTION |

### IF THIRD PARTY ACTION
### MAIN INDEX NO. _____

`7116985`

| | |
|---|---|
| **Name and address of Attorney for Plaintiff or Petitioner. Telephone No.** | Scott S. Balber, Chadbourne & Parke LLP<br>30 Rockefeller Plaza<br>New York, NY 10112<br>(212) 408-5100 |
| **Name and address of Attorney for Defendant or Respondent. Telephone No.** | |

| | | |
|---|---|---|
| **A.** | **Nature and object of action or Nature of special proceeding** | Recover Plaintiffs' property which is being wrongfully held by Defendants. |

**B.**    **Application for Index Number filed by:**    **Plaintiff** ☒    **Defendant** ☐

**C.**    **Was a previous Third Party Action filed**   **Yes** ☐   **No** ☒

       **Date filed** _____

B199— Summons without notice, Supreme Court, personal or substituted service, 12 pt. type, 4-94

©1993 BlumbergExcelsior, Inc., Publisher, NYC 10013
www.blumberg.com

## Supreme Court of the State of New York
## County of New York

VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE
ALSAM, COLLEEN AND LOGANY SETTLEMENTS, COLLEEN INVEST-
MENT AG, ALSAM HOLDING AG, PENNY ASSET AG, LOGANY EQUITY
AG, VIERWALDSTATTER BEITEILIGUNGEN AG, CLARICK AG,
COLLEEN INVESTMENT, L.L.C., LOGANY, L.L.C. and
WILLIAM TACON, RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON UNIVERSAL SA,

*Plaintiff(s)*

*against*

DR. MARCO STOFFEL, ALBE ASSOCIATES LIMITED,
BLUECOLT SECURITIES CORPORATION, LAURAMCA HOLDINGS,
L.L.C., and JOHN DOES 1-10,

*Defendant(s)*

Index No.
Date purchased

Plaintiff(s) designate(s) 07116985
New York
County as the place of trial.

The basis of the venue is
residence/principal place
of business of certain parties

## Summons

Plaintiff(s) reside(s) at

County of see attached Rider

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action and to serve a copy of your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's Attorney(s) within  30    days after the service of this summons, exclusive of the day of service (or within 30 days after the service is complete if this summons is not personally delivered to you within the State of New York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief demanded in the complaint.

Dated, December 21, 2007

Scott S. Balber
Chadbourne & Parke LLP
Attorney(s) for Plaintiff

Office and Post Office Address
30 Rockefeller Plaza
New York, NY 10112

Defendant's address:
See attached Rider

FILED

DEC 21 2007

NEW YORK
COUNTY CLERK'S OFFICE

STATE OF NEW YORK, COUNTY OF                                                    SS:   The undersigned, being duly sworn, deposes and says; deponent is not a
party herein, is over 18 years of age and resides at
That on                                              at                M., at
deponent served the within summons,                                    on                                              defendant,

**INDIVIDUAL**
1. ☐   by delivering a true copy *of each* to said defendant personally; deponent knew the person so served to be the person described as
said defendant therein.

**CORPORATION**
2. ☐   a                                    corporation, by delivering thereat a true copy *of each* to
personally, deponent knew said corporation so served to be the corporation described in said summons as said defendant and
knew said individual to be                                    thereof.

**SUITABLE AGE PERSON**
3. ☐   by delivering thereat a true copy *of each* to                                    a person of suitable age
and discretion. Said premises is defendant's—actual place of business—dwelling place—usual place of abode—within the state.

**AFFIXING TO DOOR, ETC.**
4. ☐   by affixing a true copy *of each* to the door of said premises, which is defendant's—actual place of business—dwelling place—
usual place of abode—within the state. Deponent was unable, with due diligence to find defendant or a person of suitable age
and discretion thereat, having called there

**MAILING TO RESIDENCE USE WITH 3 OR 4**
5A. ☐   Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a postpaid envelope properly addressed to
defendant at defendant's last known residence, at                                    and deposited
said envelope in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.

**MAILING TO BUSINESS USE WITH 3 OR 4**
5B. ☐   Within 20 days of such delivery or affixing, deponent enclosed a copy of same in a first class postpaid envelope properly
addressed to defendant at defendant's actual place of business, at
in an official depository under the exclusive care and custody of the U.S. Postal Service within New York State.
The envelope bore the legend "Personal and Confidential" and did not indicate on the outside thereof, by return address
or otherwise, that the communication was from an attorney or concerned an action against the defendant.

**DESCRIPTION USE WITH 1, 2, OR 3**
☐

| | | | | | |
|---|---|---|---|---|---|
| ☐ Male | ☐ White Skin | ☐ Black Hair | ☐ White Hair | ☐ 14-20 Yrs. | ☐ Under 5' | ☐ Under 100 Lbs. |
| ☐ Female | ☐ Black Skin | ☐ Brown Hair | ☐ Balding | ☐ 21-35 Yrs. | ☐ 5'0"-5'3" | ☐ 100-130 Lbs. |
| | ☐ Yellow Skin | ☐ Blonde Hair | ☐ Mustache | ☐ 36-50 Yrs. | ☐ 5'4"-5'8" | ☐ 131-160 Lbs. |
| | ☐ Brown Skin | ☐ Gray Hair | ☐ Beard | ☐ 51-65 Yrs. | ☐ 5'9"-6'0" | ☐ 161-200 Lbs. |
| | ☐ Red Skin | ☐ Red Hair | ☐ Glasses | ☐ Over 65 Yrs. | ☐ Over 6' | ☐ Over 200 Lbs. |

Other identifying features:

*Sworn to before me on*                                    Print name beneath signature. ............................................

                                                           *LICENSE NO.* ............................................

---

Index No.
Supreme Court of the State of New York
County of New York

VISTRA TRUST COMPANY (JERSEY)
LIMITED, etc., et al.,

*Plaintiff(s)*

*against*

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

*Defendant(s)*

**Summons**

ACTION NOT BASED UPON A
CONSUMER CREDIT TRANSACTION

Scott S. Balber
Chadbourne & Parke LLP
*Attorney(s) for Plaintiff(s)*

*Office, Post Office Address and Tel. No.*

30 Rockefeller Plaza
New York, NY 10112
(212) 408-5100

# RIDER TO SUMMONS

**Plaintiffs' Addresses:**

Vistra Trust Company (Jersey) Limited
38 Esplanade
St. Helier
Jersey

Colleen Investment AG
Achereggstrasse 10
6362 Stansstad
Switzerland

Alsam Holding AG
Achereggstrasse 10
63662 Stansstad
Switzerland

Penny Asset AG
Achereggstrasse 10
63662 Stansstad
Switzerland

Logany Equity AG
Achereggstrasse 10
63662 Stansstad
Switzerland

Vierwaldstatter Beteiligungen AG
Achereggstrasse 10
63662 Stansstad
Switzerland

Clarick AG
Achereggstrasse 10
63662 Stansstad
Switzerland

Colleen Investment, L.L.C.
c/o Corporation Service Company
80 State Street
Albany, New York 12207-2543

Logany, L.L.C.
c/o Corporation Service Company
80 State Street
Albany, New York 12207-2543

William Tacon
P.O. Box 4571
Palm Grove House, 2nd Floor
Wickhams Cay, Road Town
Virgin Islands (British)


**Defendants' Addresses:**

Dr. Marco Stoffel
340 W. 12th Street
New York, New York 10014

Albe Associates Limited
c/o Orconsult S.A.
Wenigstrasse 7
Postfach, CH-8026
Zurich, Switzerland

Bluecolt Securities Corporation
c/o Orconsult S.A.
Wenigstrasse 7
Postfach, CH-8026
Zurich, Switzerland

Lauramca Holdings LLC
340 W. 12th Street
New York, New York 10014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM B. TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

Index No.    **0 7 1 1 6 9 8 5**

**Jury Trial Demanded**

<u>**COMPLAINT**</u>

                              Plaintiffs,

                  -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA, L.L.C., and JOHN
DOES 1-10,

                              Defendants.



FILED

DEC 2 1 2007

NEW YORK
COUNTY CLERKS OFFICE

Plaintiffs, as and for their complaint herein against defendants Dr. Marco Stoffel

("Stoffel"), Albe Associates Limited ("Albe"), Bluecolt Securities Corporation ("Bluecolt"),

Lauramca, L.L.C. ("Lauramca") and John Does 1-10 respectfully allege as follows:

<u>NATURE OF THE ACTION</u>

1.  Plaintiffs bring this action to recover many millions of dollars of assets

misappropriated by defendant Stoffel for his personal benefit and for the benefit of various

individuals and entities under his control (including the other defendants named herein). For a period of eight years, Stoffel used his fiduciary position for his own financial gain, using trust and corporate accounts as his personal piggy bank in order to lead a lavish lifestyle and portray himself to the world as an ersatz philanthropist. To conceal his wrongdoing, Stoffel devised a complex money-laundering scheme, concocting a trail of false documentation and using hundreds of funds transfers through an array of opaque, Stoffel-controlled offshore shell companies to conceal his misappropriations of assets. In December of 2006, when plaintiffs saw through Stoffel's shell game and learned of Stoffel's misconduct, he was removed from all positions of authority. Despite his removal, Stoffel's appetite for plaintiffs' money went unsated, and he continued to transfer millions of dollars of trust and corporate assets to bank accounts for his benefit. Now, plaintiffs seek to prevent further malfeasance by Stoffel, recover the assets he has wrongfully taken, and obtain compensation for the consequences of his misconduct.

## THE PARTIES

2.   Plaintiff Vistra Trust Company Limited ("Vistra") is a corporation organized under the laws of the Bailiwick of Jersey with offices at 38 Esplanade, St. Helier, Jersey. Vistra serves as the Trustee of the Alsam, Colleen and Logany Settlements (collectively the "Jersey Trusts"), each of which is organized under the laws of the Bailiwick of Jersey. Until November 1, 2006, Vistra operated under the name of Chiltern Trust Company (Jersey) Limited.

3.   Plaintiff Colleen Investment AG ("Colleen AG") is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.

4.   Plaintiff Alsam Holding AG is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.

5.   Plaintiff Penny Asset AG is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.

6.   Plaintiff Clarick AG is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.

7.   Plaintiff Vierwaldstätter Beteiligungen AG is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.

8.   Plaintiff Logany Equity AG is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland. Plaintiffs Colleen AG, Alsam Holding AG, Penny Asset AG, Clarick AG, Vierwaldstätter Beteiligungen AG and Logany Equity AG will be referred to collectively as the "Swiss Companies."

9.   Plaintiff Colleen Investment, L.L.C. ("Colleen LLC") is a limited liability corporation organized under the laws of Delaware with its principal New York office c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543. The entire membership interest in Colleen Investment, L.L.C. is held by Colleen Investment AG.

10.   Plaintiff Logany, L.L.C. ("Logany LLC") is a limited liability corporation organized under the laws of Delaware and authorized to do business in New York, with its principal New York office c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543. The entire membership interest in Logany, L.L.C. is beneficially owned by

Colleen Investment, L.L.C.  Plaintiffs Colleen LLC and Logany LLC will be referred to collectively as the "LLCs."

11. Plaintiff William B. Tacon, in his capacity as Receiver and Manager ("Mr. Tacon"), was appointed on December 11, 2006 by the High Court of Justice of the British Virgin Islands (the "BVI Court") as Receiver and Manager of the assets of two British Virgin Islands companies, Maytown Universal SA ("Maytown") and Plympton Universal SA ("Plympton").  Mr. Tacon brings suit here in his capacity as Receiver and Manager of the assets of Maytown and Plympton and all references to Mr. Tacon in this Complaint refer only to Mr. Tacon acting in this capacity.

12. Upon information and belief, defendant Stoffel is a citizen of the United Kingdom and of Switzerland and a resident of the State of New York, residing at 340 W. 12th Street, New York, New York 10014.  Until December of 2006, Stoffel served as the President of plaintiffs Colleen LLC and Logany LLC and exercised control over other companies directly or indirectly owned by Vistra as Trustee and holding the assets of the Jersey Trusts.

13. Upon information and belief, Defendant Lauramca, L.L.C. is a Delaware limited liability company with its principal place of business at 340 W. 12th Street, New York, New York 10014, the residence of defendant Stoffel.  On information and belief, pursuant to a divorce settlement, Stoffel was to own all of the membership interests in Lauramca, L.L.C. are owned and controlled by Stoffel.

14. Upon information and belief, Defendant Albe Associates Limited ("Albe") is a British Virgin Islands International Business Company controlled and beneficially owned by

4

Stoffel, with its principal offices c/o Orconsult S.A., Wenigstrasse 7, Postfach, CH-8026 Zurich, Switzerland.

15. Upon information and belief, Defendant Bluecolt Securities Corporation is a Panamanian corporation controlled and beneficially owned by Stoffel, with its address c/o Orconsult S.A., Wenigstrasse 7, Postfach, CH-8026 Zurich, Switzerland.

16. Upon information and belief, defendants John Doe 1-10 are individuals, corporations or other entities purporting to act as directors, officers, employees, managers or agents of Stoffel or on his instructions in connection with the circumstances described herein.

17. This lawsuit arises out of actions taken and business transacted by Defendants within the State of New York, as alleged below, and this Court has jurisdiction on that basis.

FACTS COMMON TO ALL CAUSES OF ACTION

A.     The Jersey Trusts

18. On December 18, 1998, the Jersey Trusts (the Alsam Trust, the Colleen Trust, and the Logany Trust) were established as discretionary trusts in and under the laws of the Bailiwick of Jersey.  The Jersey Trusts were established by Angela and Holger Blickle.

19. Vistra has served as the Trustee of the Jersey Trusts since their inception.

20. The original beneficiaries were named as (i) Angela Blickle; (ii) Angela and Holger Blickle's son Cedrick Blickle ("Cedrick"); (iii) Angela and Holger Blickle's daughter Clarissa Blickle ("Clarissa"); (iv) Cedrick's direct descendants; and (v) Clarissa's direct descendants.

21. The Settlements appointed Vistra as Trustee and New Eagle Corporation Limited ("New Eagle"), an Irish corporation, as "Protector" of the Jersey Trusts, a position that under the terms of the Settlements provided New Eagle with certain duties, powers, and obligations.

22. Angela Blickle died in February 1999. Following her death, Stoffel represented to Vistra that he was a director of New Eagle.

B.    The Jersey Trusts' Initial Assets

23. The Settlements provided that the assets to be placed into the Jersey Trusts included the shares of the Swiss Companies.

24. The majority of the Plaintiffs' assets are now held by Colleen AG and its wholly-owned subsidiaries. Colleen AG owns the membership interest in Colleen LLC, which in turn owns the membership interest in Logany LLC (together with Colleen LLC, the "US LLCs"). Among other assets, Logany LLC owns a commercial building at One Broadway in the City of New York. The One Broadway building is the principal asset of Logany LLC and in turn, the membership interest in Logany LLC accounts for a majority of Colleen LLC's assets. Colleen LLC's other assets include bank and securities accounts held in the United States and real estate limited partnership investments in the United States.

25. In or around April 1999, Vistra entered into nominee agreements with three Irish companies -- First Aim Management Limited ("First Aim"), Millenium Import/Export Limited ("Millenium"), and Madison Corporate Development Limited ("Madison") -- pursuant to which each Irish company held bank deposits belonging to Plaintiffs.

26. The effect of the nominee agreements, coupled with Stoffel's appointment as the Irish companies' attorney and certain "Fiduciary Agreements" which Stoffel entered into with Vistra in January 1999, was that Stoffel could act only on instructions from Vistra with respect to the Swiss and Irish Companies.

27. In mid-1999, the Irish Companies' assets were transferred to two two new nominee companies, Maytown Universal SA ("Maytown") and Plympton Universal SA ("Plympton"), each British Virgin Islands Corporations, (together the "BVI Companies")..

28. Until December 11, 2006, when the High Court of Justice of the British Virgin Islands appointed Plaintiff William Tacon as Receiver and Manager to locate, recover and manage the assets of the BVI Companies.  The BVI Companies had at all times been under the complete control of Stoffel and Guido Banholzer ("Banholzer') and Georges Phillipe ("Phillipe").  Banholzer and Phillipe were each associated with Orconsult SA, a Swiss company based in Zurich.

29. Until his removal in December of 2006 from all positions of responsibility with respect to the ,Swiss Companies, the US LLCs and the BVI Companies, Stoffel has held officer or director positions with respect to these entities or has exercised complete control over their affairs.

30. Stoffel provided various diagrams to Vistra between 1999 and 2006, purporting to show the organizational structure of the Swiss Companies, the LLCs, and the BVI Companies.  These charts were false and misleading in various respects because they purported to show changes to parent-subsidiary and nominee relationships which had never been effected

and because they failed to accurately account for Stoffel's dealings with the Swiss Companies,
the LLCs and the BVI Companies..

C.    Transfer of Plaintiffs' Assets to Stoffel via Bluecolt, Albe and the Scottish Partnerships

31. On information and belief, Bluecolt, a Panamanian company, and Albe, a British
Virgin Islands company, were entities established in 1999 as "shelf companies" by law firms in
Panama and the British Virgin Islands. Beginning at least in November of 2000 and, upon
information and belief, continuing until the present day, both companies have been beneficially
owned by Stoffel, who executed Mandate Agreements under which Orconsult held the shares of
Albe and Bluecolt on Stoffel's behalf and managed the affairs of both companies in accordance
with his instructions.

32. "Know your customer" filings furnished to banks holding Albe and Bluecolt
funds reflected that Dr. Stoffel was the beneficial owner of these entities. Furthermore, in his
will, Stoffel accounted for the shares of Albe among his personal assets and stated that Albe
"holds [his] liquid moneys."

33. Starting in and around April 2002 through December 2005, Bluecolt and Albe
received at least US$ 13.8 million in assets that had been improperly transferred from the BVI
Companies pursuant to invoices submitted by seven shell entities -- P.B. Partners & Co., ITC
International Traders Corp. & Co., Istalla International Finance & Co., IPMG (Industrial
Planning and Marketing Group) Limited, ATC Advanced Technology Consultants & Co., Nevis
Corp. & Co., and Interconsultants & Associates (the "Intermediate Recipients"). Specifically,
the assets were misappropriated from the BVI Companies pursuant to what Stoffel himself has

described under oath in another U.S. proceeding as more than one hundred "fake invoices" purporting to demand fees for services that were allegedly rendered by the Intermediate Recipients which were owned by Orconsult.

34. In fact, the "fake invoices" were concocted to hide the siphoning of funds from the BVI Companies for Stoffel's benefit through an array of intermediate entities established in various offshore jurisdictions, whose only purpose was to create a convoluted and opaque paper trail that would help to conceal Stoffel's misappropriations and the location of the proceeds.

35. Stoffel himself forwarded these "fake invoices" on a regular basis to Orconsult for payment pursuant to Stoffel's written instructions. The invoices were fraudulent because the alleged services, which were described in general terms such as the provision of "business logistics," were never actually provided, nor was there any intention that they be provided. None of these invoices were paid, nor were any of the transfers made, with proper authorization.

36. Once payment was made pursuant to the "fake invoices," the resulting funds were transferred to Albe and Bluecolt for Stoffel's benefit. Subsequent to the improper and unauthorized transfer of these assets from the BVI Companies to Bluecolt and Albe, Bluecolt and Albe made a series of substantial asset transfers to Stoffel personally and to third parties to whom payments were directed by Stoffel for Stoffel's own purposes. None of these transfers were known to Vistra, Clarissa or Cedrick, nor was there any legitimate basis for them.

37. Indeed, putting the lie to any claim that the transfers to Albe and Bluecolt were other than for Stoffel's benefit, documents show that Stoffel frequently used the BVI

Companies' funds wrongfully transferred to Albe and Bluecolt as a personal "piggy bank" to fund his lavish lifestyle, directing Orconsult to cause Albe and Bluecolt to pay art dealers, vendors of classic luxury automobiles, and other parties on Stoffel's behalf.

38. Stoffel never disclosed the Albe and Bluecolt transfers to Vistra, or to Cedrick or Clarissa. Nor did Stoffel ever inform Vistra of his personal interest in Albe and Bluecolt, or even of the existence of these entities. Stoffel knowingly failed to provide this information because he had the motive and opportunity to deceive Vistra regarding the transfers of the BVI Companies' funds to Albe and Bluecolt.

39. Stoffel knew that the invoices submitted in support of the Albe and Bluecolt transfers were, to use Stoffel's term, "fake." He thus acted knowingly and willfully in providing these false documents to the BVI Companies in support of requests for payment.

C.   Stoffel's Purported Transfer of Trust Assets to Aquarius and Capricorn

40. As part of Stoffel's fraudulent scheme, he arranged for the formation of two Bermuda-based trusts, the Capricorn Trust ("Capricorn") and the Aquarius Trust ("Aquarius"). Banholzer and Phillipe of Orconsult SA created a new entity, Orconsult Limited, for the purpose of providing a trustee entity for Capricorn and Aquarius. Unlike the Jersey Trusts, the terms of Capricorn and Aquarius vested significant powers in the Protector -- which not coincidentially was New Eagle, an entity controlled by Stoffel -- to add and remove beneficiaries virtually at will and to make distributions to a vaguely-defined general class of "charitable" beneficiaries.

41. In a document dated December 2, 1999, Stoffel purported to remove Cedrick and Clarissa as beneficiaries of the Jersey Trusts and to replace them with Capricorn and Aquarius,

as well as two charities controlled by Stoffel (the Borderline Personality Disorder Research Foundation ("BPDRF") and the Third Millennium Foundation ("TMF") and a general class of charitable beneficiaries. Vistra, the only entity with the power to change the beneficiaries of the Jersey Trusts, never removed Cedrick or Clarissa as beneficiaries and these documents were therefore false, as Stoffel knew.

42. Stoffel has falsely claimed that assets of the Plaintiffs have been held by Capricorn and Aquarius since sometime in 1999.

43. Orconsult never had authority to manage Plaintiffs' assets, and did not have authority to make or confirm distributions of assets of the Trusts.

44. Stoffel falsely represented to Cedrick and Clarissa that the Jersey Trusts no longer existed, that the Plaintiffs' assets were now controlled by Capricorn and Aquarius and that Orconsult was now Trustee. In fact, Stoffel knew that the purported transfer of Jersey Trust assets to Capricorn and Aquarius was a fiction, as he acknowledged later in his dealings with Vistra. In fact, in late 2006 Stoffel requested that Vistra approve a transfer of the Jersey Trust assets to Capricorn and Aquarius. The request was not granted, but the fact that Stoffel made it demonstrates that Stoffel knew that only Vistra could effect such a transfer and that Vistra had never done so.

45. Stoffel also sought to prevent Cedrick and Clarissa from meeting with Vistra, falsely representing to them that such meetings could "damage" the Jersey Trusts.

46. Stoffel knowingly omitted to inform Vistra that he was acting as if transfers of Trust assets to Capricorn and Aquarius had occurred, and Stoffel never disclosed to Vistra that

he was misrepresenting to Cedrick and Clarissa that the assets of the Jersey Trusts were held by Capricorn and Aquarius..

D.     Stoffel's Abuse and Waste of Plaintiffs' Assets As Director and Officer of the Plaintiff Companies

47. Stoffel's tenure as a director and officer of the Swiss Companies and the LLCs was characterized by deception and the abuse, waste, and theft of Plaintiffs' assets.

48. In 1999, Stoffel received a US$ 2.4 million interest-free loan which ultimately derived from Plaintiffs' assets. Stoffel used the proceeds of this loan to purchase real estate in Scarsdale, New York.

49. Without authority to do so, Orconsult SA and Stoffel arranged for this US$ 2.4 million loan to be "forgiven" on the basis of management fees purportedly owed to New Eagle for services as Protector, and the loan has never been repaid by Stoffel. These purported New Eagle management fees were far in excess of reasonable compensation given New Eagle's extremely limited role. Neither the loan nor the payment of exorbitant fees to New Eagle was disclosed to Vistra. Such fees could only be paid by Vistra, and at no point did Vistra do so. Stoffel refrained from disclosing the facts of these purported fees to Vistra, despite his fiduciary duty to do so, because he wished to retain the fruits of the unauthorized loan and the alleged forgiveness thereof.

50. As a director and officer of the Swiss Companies and the US LLCs, Stoffel also established business relationships between these entities and Stoffel's company, Lauramca. Lauramca was improperly paid $120,000 by Colleen LLC in 2006 at the direction of Stoffel, and Lauramca also improperly received $24,000 in "administrative services fees" from Logany

12

in 2006. Stoffel improperly caused Colleen LLC to reimburse Lauramca for over $100,000 in "office furniture," which remains within Stoffel's 340 W. 12th Street home. Stoffel and his agents have actively attempted to conceal these arrangements, modifying and recharacterizing invoices after the fact to conceal the extent of Lauramca's financial benefit obtained from the Swiss Companies and the US LLCs. Finally, Lauramca also improperly received $931,335.95 in Jersey Trust assets from Orconsult.

51. Stoffel has also unlawfully transferred assets belonging to the Plaintiffs to various charities. For example, Colleen LLC, at Stoffel's direction, donated US$ 157,500 and 150,000 to the New Museum of Contemporary Art in 2006 and 2005 respectively. Stoffel did not timely inform Vistra of these dispositions of Plaintiffs' assets. These unlawful donations of Plaintiffs' assets were made by Stoffel to burnish his reputation and increase his stature in the New York philanthropic community.

52. Stoffel has also improperly caused other of the Plaintiff Companies to make unlawful donations of office space, and caused Colleen LLC to pay rent for space on behalf of TMF in the amount of US$ 68,000 in 2006 alone. Stoffel did not timely inform Vistra of these donations of cash and office space.

53. None of these payments and donations were ever made, authorized or approved by Vistra.

E.    Unlawful Transfers in Stoffel's Favor Following His Removal as an Officer and Director of the Plaintiff Companies

54. Following his removal as an officer and director of the Plaintiff Companies on December 6 and 7, 2006, described more fully below, Stoffel has continued to misappropriate assets properly belonging to the Companies.

55. On December 13 and 18, 2006, Stoffel transferred a total of US $1.8 million from a Deutsche Bank account maintained in New York and belonging to Colleen LLC to himself and to entities he believed were acting as his agents. Also on December 18, 2006, Stoffel directed the transfer of $300,000 from a Wachovia securities account held by Colleen AG to a First Republic Bank account held in Stoffel's name and the payment of another $300,000 to the Swiss account of attorney R.A. Dallafior. Stoffel has refused demands to return these funds.

F.    Unauthorized Payments to BPDRF and TMF

56. Stoffel caused payments to be made to BPDRF and TMF without proper authorization. Since the Jersey Trusts' inception, more than $21 million in Plaintiffs' assets have been improperly transferred to BPDRF and TMF.

57. In September 1999, Stoffel proposed that an additional class of beneficiaries be added to the terms of the Jersey Trusts to enable charitable donations to be made to BPDRF and TMF. When Stoffel's proposal was not adopted by Vistra, Stoffel simply proceeded to act as if it had been, making enormous payments of Plaintiffs' assets to BPDRF and TMF that were palpably improper.

14

58. Stoffel did not timely inform Vistra of his actions in causing at least US$ 21 million in Trust assets to be transferred to BPDRF and TMF.

59. On November 20, 2006, Stoffel provided Vistra with a "report" of payments made to the beneficiaries of the Jersey Trusts, reflecting four payments totaling US$ 1.4 million to BPDRF and TMF and purporting to provide a full account of payments to these entities. Vistra at no time exercised any powers of distribution from the Jersey Trusts with respect to any such payments. This November 20, 2006 report was false because it failed to account for millions of dollars worth of Plaintiffs' assets that had been unlawfully transferred to BPDRF and TMF.

60. At all times relevant herein, Stoffel has controlled BPDRF and TMF. Stoffel founded BPDRF in 1999, and BPDRF's "offices" are in his home. He has also served, and continues to act, as President of both BPDRF and TMF, positions he also held while acting as an officer and director for the Plaintiff Companies.

61. Stoffel routinely exploited this tenure as management of both the Plaintiff Companies and the Foundations. For example, TMF is listed as a donor of "$100,000 or more" to the Human Rights Watch. This donation, which was made from Plaintiffs' assets, and other similar donations, including donations of Plaintiffs' assets to establish a scholarship named after Stoffel himself, were never authorized by Vistra.

G.   Vistra Effects Changes to Plaintiff Company Management and Engages in Other Efforts to Protect Plaintiffs' Assets

62. On November 15, 2006 Vistra obtained an order from the Royal Court of the Island of Jersey which, *inter alia*, suspended the powers of the Protector of the Jersey Trusts and empowered Vistra to take steps to locate, secure and recover assets of the Trusts.

63. On December 6, 2006, each of the Swiss Companies resolved to dismiss Messrs. Marco Stoffel, Guido Banholzer and Georges Phillipe from their respective Boards of Directors and appointed directors chosen by Vistra as Trustee.

64. Immediately following this resolution, Colleen AG caused the removal of any and all persons currently authorized to act as officers of either of the LLCs and appointed new managers chosen by Vistra as Trustee. As a result of these consents, the LLCs are now under the exclusive control of Vistra.

## AS AND FOR THE FIRST CAUSE OF ACTION
### (Plaintiff Vistra Against Stoffel)
### (Fraud)

65. Plaintiff Vistra repeats and realleges each and every allegation contained in paragraphs 1 through 64 hereof as though fully set forth herein.

66. At all times from the inception of the Trusts until Stoffel's removal from his positions of responsibility in relation to the Jersey Trusts in December of 2006, Stoffel had a confidential and fiduciary relationship with Plaintiff Vistra, giving rise to a duty to fully disclose material facts and events relating to the Jersey Trusts, their assets, and the affairs of the Plaintiff Companies. Stoffel also had a duty to refrain from making material misstatements of fact to Plaintiff Vistra.

16

67. Stoffel breached these duties by omitting to inform Vistra regarding (i) Stoffel's siphoning of funds via Albe and Bluecolt on the basis of more than one hundred "fake invoices"; (ii) Stoffel's actions in attempting to cause the transfer of the Trust assets to Capricorn and Aquarius; (iii) Stoffel's actions in attempting to substitute Orconsult for Vistra as the Trustee managing and overseeing the assets of the Jersey Trusts; (iv) Stoffel's self-dealing transactions pursuant to which Lauramca received payments for office space, furniture and other purposes; (v) Stoffel's receipt of unauthorized loans ultimately derived from Plaintiffs' assets to purchase a home in Scarsdale, New York and with respect to property at 340 W. 12th Street in the City of New York, and the purported repayment of the Scarsdale loan by means of the charging of excessive management fees by New Eagle, and (vi) Stoffel's transfers to BPDRF of enormous sums derived from Plaintiffs' assets. Had Vistra been informed of these matters, Vistra would have taken steps to prevent Stoffel from taking each of these actions.

68. Stoffel also breached his fiduciary duties to Vistra by affirmatively misrepresenting (i) that his plan to contribute assets of the Trusts and the Plaintiff Companies to BPDRF and TMF was a prospective and unfinished proposal rather than a *fait accompli*; (ii) that he intended to act as if a transfer of Jersey Trust asets had occurred whether or not Vistra carried out any such transfer; (iii) that Cedrick and Clarissa had no desire to meet with Vistra; and (iv) that a far smaller sum of Plaintiffs' Assets had been transferred to the Foundations than was actually the case.

69. Vistra relied upon these misrepresentations to its detriment because Vistra would have taken steps to prevent Stoffel from dissipating assets of the Trusts and purporting to

transfer assets to Capricorn and Aquarius had Stoffel provided truthful information regarding these matters.

### AS AND FOR THE SECOND CAUSE OF ACTION
(Plaintiff Vistra Against Lauramca, Albe, and Bluecolt)
(Aiding and Abetting Fraud)

70. Plaintiff Vistra repeats and realleges each and every allegation contained in paragraphs 1 through 69 hereof as though fully set forth herein.

71. Defendant Lauramca knowingly aided and abetted Stoffel's frauds by omission concerning (i) Stoffel's siphoning of funds via Albe and Bluecolt on the basis of more than one hundred "fake invoices"; (ii) Stoffel's self-dealing transactions pursuant to which Lauramca received payments for office space, furniture and other purposes; and (iii) Stoffel's receipt of an unauthorized loan ultimately derived from Plaintiffs' assets with respect to property located at 340 W. 12th Street in the City of New York. Lauramca aided and abetted Stoffel's frauds by knowingly receiving, and holding on Stoffel's behalf, the fruits of fraudulent conduct and by providing modified and inaccurate invoices with respect to the provision of office space to the LLCs.

72. Defendants Albe and Bluecolt aided and abetted Stoffel's fraud concerning Stoffel's siphoning of funds via Albe and Bluecolt on the basis of more than one hundred "fake invoices." Albe and Bluecolt knowingly received the siphoned funds, held them on Stoffel's behalf, and acted to conceal both the source of the funds and Stoffel's status as the beneficial owner of Albe and Bluecolt.

73. By engaging in the aforementioned activities, Lauramca, Albe and Bluecolt rendered substantial assistance to Stoffel's fraud.

74. Plaintiff Vistra was injured by the acts of Lauramca, Albe and Bluecolt to aid and abet Stoffel's fraud, insofar as without those acts, the fraud would not have occurred or would have been discovered and stopped more rapidly.

### AS AND FOR THE THIRD CAUSE OF ACTION
(Plaintiff Mr. Tacon Against Stoffel)
(Fraud)

75. Plaintiff Mr. Tacon repeats and realleges each and every allegation contained in paragraphs 1 through 74 hereof as though fully set forth herein

76. Stoffel served as the "controlling mind" of the BVI Companies from these entities' inception until late 2006. Stoffel's domination and control over the BVI Companies were such that Stoffel had a relationship of trust and confidence with the BVI Companies and was obligated to fully disclose material facts to both entities and refrain from making misrepresentations of fact to them.

77. Stoffel breached these duties by forwarding, for payment from assets held by the BVI Companies, hundreds of what Stoffel has characterized as "fake invoices." The "fake invoices" were issued, and the resultant payments were made, for the ultimate benefit of Stoffel via Albe and Bluecolt. These invoices recited fictitious services that were never rendered and failed to disclose that the real reason for the invoices was to serve as a cover for unlawful payments to intermediaries for forwarding to Albe and Bluecolt, entities owned and controlled by Stoffel and which held funds for his benefit.

78. The BVI Companies paid in excess of US$ 13 million for Stoffel's benefit in reliance on these fictitious invoices and were accordingly injured by Stoffel's presentation of the invoices for payment.  Mr. Tacon has standing, under the orders of the BVI Court, to recover damages on behalf of the BVI Companies for these injuries.

## AS AND FOR THE FOURTH CAUSE OF ACTION
(Plaintiff Mr. Tacon Against Albe, Bluecolt and Lauramca)
(Aiding and Abetting Fraud)

79. Plaintiff Mr. Tacon repeats and realleges each and every allegation contained in paragraphs 1 through 78 hereof as though fully set forth herein.

80. Defendant Lauramca knowingly aided and abetted Stoffel's frauds by omission concerning Stoffel's siphoning of funds belonging to the Trusts via Albe and Bluecolt on the basis of more than one hundred "fake invoices".  Lauramca aided and abetted Stoffel's frauds by knowingly receiving the fruits of fraudulent conduct and holding them on Stoffel's behalf.

81. Defendants Albe and Bluecolt aided and abetted Stoffel's fraud concerning Stoffel's siphoning of funds belonging to the Trusts via Albe and Bluecolt on the basis of hundreds of "fake invoices."  Albe and Bluecolt knowingly received the siphoned funds, held them on Stoffel's behalf, and acted to conceal both the source of the funds and Stoffel's status as the beneficial owner of Albe and Bluecolt.

82. By engaging in the aforementioned acts, Albe and Bluecolt rendered substantial assistance to Stoffel's fraud.

83. The BVI Companies were injured by the acts of Lauramca, Albe and Bluecolt to aid and abet Stoffel's fraud, insofar as without those acts, the fraud would not have occurred or

would have been discovered and stopped more rapidly. Mr. Tacon has standing, under the orders of the BVI Court, to recover damages on behalf of the BVI Companies for these injuries.

### AS AND FOR THE FIFTH CAUSE OF ACTION
(Plaintiffs Vistra and Mr. Tacon Against Stoffel and John Docs 1-10)
(Breach of Fiduciary Duty)

84. Plaintiffs Vistra and Mr. Tacon repeat and reallege each and every allegation contained in paragraphs 1 through 83 hereof as though fully set forth herein.

85. Until December 11, 2006, defendants Stoffel and John Does 1-10 (the "John Does") acted as directors, officers or agents of the BVI Companies in administering the assets of each of these entities.

86. In their capacities as directors, officers, or agents of the BVI Companies, these defendants owed to the BVI Companies and Vistra fiduciary duties of loyalty, fidelity, honesty and care. In particular, Stoffel and the John Does owed to the BVI Companies and Vistra the duty to refrain from transferring their funds without authority.

87. Stoffel and the John Does were subject to duties to act only pursuant to valid instructions, and to refrain from making material misrepresentations to Maytown, Plympton, Vistra and the beneficiaries of the Trusts.

88. Stoffel and the John Does have made or permitted unlawful transfers of Plaintiffs' assets from the BVI Companies, including transfers to BPDRF, TMF, Stoffel, Bluecolt and Albe. These transfers were not authorized by Vistra. These defendants also failed to provide accurate, complete and timely information to Vistra or to Mr. Tacon regarding the disposition of funds held by the BVI Companies.

89. Vistra and Mr. Tacon are entitled to a declaration that Stoffel and the John Does have breached their fiduciary duties with regard to Plaintiffs' assets, and an order directing that the wrongfully transferred assets be returned to Mr. Tacon, or, in the alternative, an award of compensatory damages from these defendants in an amount to be determined at trial sufficient to compensate Mr. Tacon for all funds unlawfully transferred from the BVI Companies.

### AS AND FOR THE SIXTH CAUSE OF ACTION
(Mr. Tacon and the LLC Plaintiffs Against Stoffel and John Does 1-10)
(Accounting)

90. Plaintiffs Mr. Tacon, Colleen LLC and Logany LLC repeat and reallege each and every allegation contained in paragraphs 1 through 89 hereof as though fully set forth herein.

91. In their capacities as directors, officers, or agents of the BVI Companies, Stoffel and the John Does owed to Maytown, Plympton, and Vistra as Trustee fiduciary duties of loyalty, fidelity, honesty and care. In particular, Stoffel and the John Does owed to Maytown, Plympton and Vistra as Trustee the duties to refrain from transferring funds held on behalf of Plaintiffs without authority and to provide truthful and complete information regarding the disposition of the Trusts' assets.

92. In their capacities as directors, officers, or agents of each of the LLCs, Stoffel and the John Does owed each of the LLCs fiduciary duties of loyalty, fidelity, honesty and care. In particular, Stoffel and the John Does owed each of the LLCs a duty to expend corporate resources only for proper business purposes, and to refrain from wasting corporate assets.

93. Prior to December 7, 2006, Stoffel and the John Does, as fiduciaries of the LLCs, exercised control over the LLCs and other entities owned, controlled and/or affiliated with

Vistra. Even after their removal, Stoffel and the John Does wrongfully continued to conduct transactions on behalf of the LLCs and misrepresent to third parties that they remained in positions of authority to act on the LLCs' behalf.

94. Stoffel's and the John Does' management of the LLCs and of the BVI Companies resulted in substantial misappropriations of their assets. An accounting is necessary to determine the extent to which Stoffel and the John Does have misappropriated, improperly distributed and wasted the assets of these entities and to determine the funds properly owed to these entities by the Individual Defendants.

95. As a result of Stoffel's and the John Does' breaches of their fiduciary duty owed to the LLCs and the BVI Companies, Mr. Tacon and the LLCs are entitled to an accounting of Stoffel's and the John Does' activities, and by extension, the financial and business details of the LLCs and the BVI Companies, during their tenure as officers, directors and/or agents of the LLCs and the BVI Companies.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
(LLCs Against the Stoffel and John Does 1-10)
(Breach of Fiduciary Duty)

96. The LLCs repeat and reallege each and every allegation contained in paragraphs 1 through 96 hereof as though fully set forth herein.

97. Until their recent removals from such positions, Stoffel and the John Does acted as directors, officers or agents of the LLCs in administering the assets of each of these entities.

98. Stoffel and the John Does have breached their fiduciary duties owed to the LLCs through their mismanagement of the LLCs' affairs, their self-dealing, and their waste and/or

misappropriation of the LLCs' assets, and these acts of Stoffel and the John Does had no proper business purpose.

99. The LLCs are entitled to a declaration that Stoffel and the John Does have breached their fiduciary duties to the LLCs and, following the requested accounting, an order directing that the assets be returned to the LLCs, or, in the alternative, an award of compensatory damages from Stoffel and the John Does in an amount to be determined at trial sufficient to compensate the LLCs for the damages they have suffered as a result of Stoffel's and the John Does' breaches of fiduciary duty, plus an award of punitive damages in an amount to be determined at trial.

**AS AND FOR THE EIGHTH CAUSE OF ACTION**
(All Plaintiffs Against All Defendants)
<u>(Unjust Enrichment)</u>

100. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 99 hereof as though fully set forth herein.

101. Defendants have been unjustly enriched by their withdrawals of the assets of the Plaintiff Companies and the BVI Companies for Defendants' personal use and by Defendants' self-dealing with the Plaintiff Companies and the BVI Companies to those entities' detriment.

102. Defendants have been unjustly enriched at the expense of Plaintiffs, and the circumstances are such that equity and good conscience require Defendants to make restitution to Plaintiffs.

103.    Plaintiffs are entitled to a declaration that Defendants have been unjustly enriched at the expense of Plaintiffs, and following the requested accounting, an order directing that the assets be returned to Plaintiffs, or, in the alternative, an award of compensatory damages from these defendants in an amount to be determined at trial sufficient to provide Plaintiffs with the appropriate restitution for such unjust enrichment.

### AS AND FOR THE NINTH CAUSE OF ACTION
(LLCs and Mr. Tacon Against All Defendants)
(Constructive Trust)

104.    The LLCs and Mr. Tacon repeat and reallege each and every allegation contained in paragraphs 1 through 103 hereof as though fully set forth herein.

105.    A relationship of trust and confidence existed between the LLCs and the BVI Companies on the one hand, and Stoffel and the John Does, who served as officers, agents and directors of said companies, on the other hand.  Accordingly, these defendants owed each of the LLCs as well as the BVI Companies fiduciary duties of loyalty, fidelity, honesty and care.

106.    Stoffel and the John Does breached that duty by (a) causing unlawful payments to be made to *inter alia*, BPDRF, TMF, Bluecolt, and Albe from assets belonging to the LLCs and the BVI Companies, (b) causing unauthorized payments to be made to themselves from assets belonging to the LLCs and the BVI Companies, (c) using the funds of the LLCs and the BVI Companies to fund their personal expenses, (d) providing free rental space at the LLCs' expense to, *inter alia,* TMF, and (e) executing agreements between the LLCs and the BVI Companies on the one hand and entities with which they possess a personal interest on the other hand, benefitting Defendants at the expense of the LLCs and the BVI Companies.

107.    As a result of the breaches, Defendants have been unjustly enriched.

108.    The LLCs and Mr. Tacon are entitled to a constructive trust over all monies in Defendants' possession, as well as all monies received by Defendants in the future that are owed or will be due and owing to the LLCs and the BVI Companies.

## AS AND FOR THE TENTH CAUSE OF ACTION
(The Plaintiff Companies and Tacon Against All Defendants)
(Conversion)

109.    The Plaintiff Companies and Mr. Tacon repeat and reallege each and every allegation contained in paragraphs 1 through 108 hereof as though fully set forth herein.

110.    Defendants unlawfully transferred, received, possessed, retained, and converted funds belonging to the Plaintiff Companies, Maytown, and Plympton for their individual purposes and have refused to return such funds.

111.    The Plaintiff Companies and Mr. Tacon are entitled to a declaration that Defendants have converted assets belonging to the Plaintiff Companies, Maytown, and Plympton and an order directing the return of these assets to Plaintiff Companies, or, in the alternative, an award of compensatory damages from these defendants in an amount to be determined at trial sufficient to provide the Plaintiff Companies and Mr. Tacon with the appropriate relief for such conversion.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION
(Plaintiff Companies and Tacon Against All Defendants)
(Money Had and Received)

112.    The Plaintiff Companies and Mr. Tacon repeat and reallege each and every allegation contained in paragraphs 1 through 111 hereof as though fully set forth herein.

113.    Defendants have received funds properly belonging to Plaintiffs that were unlawfully distributed to Defendants but were paid to them through transfers to Albe and Bluecolt.

114.    On information and belief, all relevant times herein, Stoffel controlled and had a beneficial interest in Lauramca, Albe and Bluecolt.

115.    In light of Stoffel's conduct with respect to Plaintiffs, the circumstances are such that equity and good conscience require Defendants to make restitution to the Plaintiff Companies and Mr. Tacon.

116.    The Plaintiff Companies and Mr. Tacon are entitled to a declaration that they are entitled to recover their assets transferred to Stoffel, Lauramca, Albe and Bluecolt under a theory of monies had and received and, following the requested accounting, an order directing that the assets be returned to Plaintiffs, or, in the alternative, an award of compensatory damages from these defendants in an amount to be determined at trial sufficient to provide plaintiffs with the appropriate restitution.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor as follows: (i) an order directing the return of any Trust assets improperly held or controlled by Defendants, or, in the alternative, awarding Plaintiffs damages in an amount to be determined at trial, but not less than $30,000,000; (ii) an award of punitive damages in an amount to be determined at trial, but not less than $75,000,000; (iii) preliminary and permanent injunctive relief barring Defendants from transferring or dissipating assets derived from Plaintiffs; (iv) an order permanently enjoining Stoffel and the John Does from (a) acting or purporting to act on behalf

of the Jersey Trusts or any of Maytown, Plympton or the Swiss Companies; (b) holding themselves out as agents of the Trusts or any of any of Maytown, Plympton or the Swiss Companies; (c) and receiving or transferring funds or things of value, on behalf of the Trusts or any of their subsidiaries, or attempting or purporting to do the same; (v) an order directing Stoffel and the John Does to provide Plaintiffs with all documents in their possession relating or pertaining to (a) the property or business of the Trusts, Maytown, Plympton, or any of the Plaintiff Companies and (b) without limiting the generality of the foregoing, all transfers of money or property belonging to Maytown, Plympton, or any of the Plaintiff Companies; (vi) an order requiring Stoffel and the John Does to account to the LLCs; (vii) an order imposing a constructive trust on the assets of all Defendants; and (viii) such other relief as the Court may order.

Dated:  New York, New York
       December 21, 2007

CHADBOURNE & PARKE LLP

By _____

Scott S. Balber
Member of the Firm
Jonathan C. Cross
Tamara Stevenson
Robert E. Grossman
30 Rockefeller Plaza
New York, New York 10112
Tel. (212) 408-5100

Attorneys for Plaintiffs Vistra Trust
Company (Jersey) Limited, Colleen
Investment AG, Alsam Holding AG,
Penny Asset AG, Logany Equity AG,
Vierwaldstatter Beteiligungen AG, Clarick
AG, Colleen Investment, L.L.C., and
Logany, L.L.C.

*a
copies
001
12-27-07*

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____ YORK _____          PART 2
                        *Justice*

VISTRA TRUST Co.,
Et Al.

                    - v -

DR. Marco Stoffel,
Et Al.

INDEX NO. 116985/07

MOTION DATE _____

MOTION SEQ. NO. 1

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

**FILED**
DEC 28 2007
NEW YORK
COUNTY CLERK'S OFFICE

|                                                          | PAPERS NUMBERED |
|----------------------------------------------------------|-----------------|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits |                 |
| Answering Affidavits — Exhibits                          |                 |
| Replying Affidavits                                      |                 |

Cross-Motion:  ☐ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion is referred to the Commercial Division Support office for reassignment to a Commercial Part.

When this case came in by order to show cause, I was unable to consult with Justice Freedman the acting Administrative Justice because she was busy doing motions. I spoke to her later in the afternoon and she gave me permission to send to the Commercial Division.

Please note that at the time the parties were here, I found it necessary, in view of Justice Freedman's unavailability to sign the order to show cause with a return day of Jan. 11 and a TRO.

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: 12/21/07                              *Llyn*
                                              J.S.C.

**LOUIS B. YORK**
        J.S.C.

Check one:  ☐ FINAL DISPOSITION   ☐ NON-FINAL DISPOSITION



SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

Index No. 116985/07

(Hon. Louis B. York)

**AFFIDAVIT OF SERVICE**

Plaintiffs,

-against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

Defendants.

---

FILED
DEC 2 7 2007
COUNTY CLERK'S OFFICE
NEW YORK

STATE OF NEW YORK   )
                    :    ss.:
COUNTY OF NEW YORK  )

ALFRED MC NEILL, being duly sworn deposes and says:

1. I am not a party to this action, am over the age of eighteen, and reside in the State of New York.

2. On the 21st day of December, 2007, I served true copies of Vistra Trust Company (Jersey) Limited as Trustee of the Alsam, Colleen, and Logany Settlements, Colleen Investment

AG, Alsam Holding AG, Penny Asset AG, Logany Equity AG, Vierwaldstatter Beteiligungen

AG, Clarick AG, Colleen Investment, L.L.C., Logany, L.L.C., and William Tacon's Summons

and Complaint, Order to Show Cause with Temporary Restraining Order, Memorandum of Law

in Support of Plaintiffs' Application for a Temporary Restraining Order and a Preliminary

Injunction, Affirmation of Scott S. Balber in Support of Temporary Restraining Order,

Preliminary Injunction and Affirmation of Exigent Circumstances of Scott S. Balber and

Request for Judicial Intervention by hand, on defendant, Dr. Marco Stoffel, by personally

delivering true copies of the same upon him at the address shown below:

Dr. Marco Stoffel
340 West 12th Street
New York, NY 10014

Alfred Mc Neill

Sworn to before me this
26th day of December 2007

Esta Fischer

ESTA FISCHER
NOTARY PUBLIC, State of New York
No. 31-4957113
Qualified in New York County
Commission Expires Oct. 10, 20 09

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

Index No. 116985/07

(Hon. Louis B. York)

**AFFIDAVIT OF SERVICE**

            Plaintiffs,

            -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

            Defendants.

---



STATE OF NEW YORK    )
               :    ss.:
COUNTY OF NEW YORK )

    KADE COUTAIN, being duly sworn deposes and says:

    1. I am not a party to this action, am over the age of eighteen, and reside in the State of

New York.

    2. On the 21st day of December, 2007, I served true copies of Vistra Trust Company

(Jersey) Limited as Trustee of the Alsam, Colleen, and Logany Settlements, Colleen Investment

AG, Alsam Holding AG, Penny Asset AG, Logany Equity AG, Vierwaldstatter Beteiligungen

AG, Clarick AG, Colleen Investment, L.L.C., Logany, L.L.C., and William Tacon's Summons

and Complaint, Order to Show Cause with Temporary Restraining Order, Memorandum of Law

in Support of Plaintiffs' Application for a Temporary Restraining Order and a Preliminary

Injunction, Affirmation of Scott S. Balber in Support of Temporary Restraining Order,

Preliminary Injunction and Affirmation of Exigent Circumstances of Scott S. Balber and

Request for Judicial Intervention by leaving true copies of the same in the reception area of

defendant Lauramca Holdings L.L.C.'s designated agent for service process, Willkie Farr &

Gallagher LLP ("Willkie Farr") located at 787 7th Avenue, New York, New York, 10019.  Jane

Doe, from Willkie Farr's Managing Attorney's office, was present.  Jane Doe is an Asian

female, approximately 28 years of age, approximately 5'7" and 130 pounds with brown eyes.

Kade Coutain

Sworn to before me this
**24th** day of December 2007

WILLIAM L. BELLOTTI
Notary Public, State of New York
No. 01-BE4508468
Qualified in New York County
Commission Expires April 30, 20 **11**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

                              Plaintiffs,

                    -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

                              Defendants.

---

Index No. 116985/07

(Hon. Louis B. York)

**AFFIDAVIT OF SERVICE**



FILED
DEC 2 6 2007
COUNTY CLERK'S OFFICE
NEW YORK

STATE OF NEW YORK      )
                       :      ss.:
COUNTY OF NEW YORK  )

KADE COUTAIN, being duly sworn deposes and says:

1. I am not a party to this action, am over the age of eighteen, and reside in the State of New York.

2. On the 21st day of December, 2007, I served true copies of Vistra Trust Company (Jersey) Limited as Trustee of the Alsam, Colleen, and Logany Settlements, Colleen Investment

AG, Alsam Holding AG, Penny Asset AG, Logany Equity AG, Vierwaldstatter Beteiligungen

AG, Clarick AG, Colleen Investment, L.L.C., Logany, L.L.C., and William Tacon's Summons

and Complaint, Order to Show Cause with Temporary Restraining Order, Memorandum of Law

in Support of Plaintiffs' Application for a Temporary Restraining Order and a Preliminary

Injunction, Affirmation of Scott S. Balber in Support of Temporary Restraining Order,

Preliminary Injunction and Affirmation of Exigent Circumstances of Scott S. Balber and

Request for Judicial Intervention by hand, on counsel for defendant, Thomas M. Mueller, by

leaving a copy with the Managing Clerk's Office at the address shown below:

> Morrison & Foerster,
> 1290 Avenue of the Americas
> New York, New York 10104-0050

Kade Coutain

Sworn to before me this
**24th** day of December 2007

WILLIAM L. BELLOTTI
Notary Public, State of New York
No. 01-BE4508468
Qualified in New York County
Commission Expires April 30, 20 *11*

2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, et al.,

                        Plaintiffs,

           -against-

DR. MARCO STOFFEL, et al.,

                        Defendants.

---

Index No. 116985/07

**NOTICE OF ENTRY**

PLEASE TAKE NOTICE that an Order, a true and correct copy of which is annexed

hereto, was duly entered in the Office of the New York County Clerk on December 28, 2007.

Dated:  New York, New York
       January 3, 2008

                             CHADBOURNE & PARKE LLP

                             By_____
                                 Tamara L. Stevenson
                             30 Rockefeller Plaza
                             New York, New York  10112
                             (212) 408-5100

TO:    Thomas M. Mueller
       Morrison & Foerster LLP
       1290 Avenue of the Americas
       New York, New York 10104-0050

FILED

JAN - 4 2008

COUNTY CLERK'S OFFICE
NEW YORK

PRESENT: _____ YORK _____ PART 2
_____ Justice

VISTRA TRUST Co.,
ET AL.

INDEX NO. 116985/07

v.

MOTION DATE _____

DR. Marco Stoffel,
ET AL.

MOTION SEQ. NO. _____

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

PAPERS NUMBERED

**FILED**

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...

Answering Affidavits — Exhibits

DEC 28 2007

Replying Affidavits

NEW YORK
COUNTY CLERK'S OFFICE

Cross-Motion: ☐ Yes ☐ No

Upon the foregoing papers, it is ordered that this motion is referred to the Commercial Division support office for reassignment to a Commercial Part.

When this case came in my order to show cause, I was unable to consult with Justice Friedman, the acting Administrative Justice because she was busy doing motions. I spoke to her later in the afternoon and she gave me permission to send to the Commercial Division.

Please note that at the time the parties were here, I found it necessary, in view of Justice Friedman's unavailability, to sign the Order to show cause with a return day of Jan. 11 and a TRO.

Dated: 12/24/07

*Lou*
_____ J.S.C.
**LOUIS B. YORK
J.S.C.**

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Check one: ☐ FINAL DISPOSITION ☐ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST ☐ REFERENCE

<u>AFFIDAVIT OF SERVICE BY MAIL</u>

STATE OF NEW YORK    )
:   ss.:
COUNTY OF NEW YORK  )

Plaintiff:
Vistra Trust Company (Jersey) Limited, et al.,
vs.
Defendant:
Dr. Marco Stoffel, et al.

Index No. 116985/07

COREY DURHAM, being duly sworn deposes and says:

1. That he is in the employ of Chadbourne & Parke LLP, that he is not a party to this action and that he is over the age of eighteen years;

2. That on the 3rd Day of January, 2008, he served the within Notice of Entry in this action, by depositing a true copy of same securely enclosed in a postpaid wrapper in an official depository maintained and exclusively controlled by the United States Postal Service, upon the following:

      Thomas M. Mueller
      Morrison & Foerster LLP
      1290 Avenue of the Americas
      New York, New York 10104-0050

Corey Durham

Sworn to before me this
3rd day of January 2008

ALEXANDRA NELLOS
Notary Public, State of New York
No. 02NE6126418
Qualified in New York County
Commission Expires May 9, 20__

Bond No. KO751857 2

# UNDERTAKING ON PRELIMINARY INJUNCTION BOND

Supreme Court of the State of New York
County of New York

------------------------------------------------------------

Vistra Trust Company (Jersey) Limited as
Trustee of the Alsam, Colleen, and Logany
Settlements, Colleen Investment AG, Alsam
Holding AG, Penny Asset AG, Logany
Equity AG, Vierwaldstatter Beteiligungen AG,
Clarick AG, Colleen Investment, L.L.C.,
Logany, L.L.C., and William Tacon, Receiver
and Manager of the Assets of Maytown
Universal SA and Plympton Universal SA,

Index No. 116985/07

                                    Plaintiffs,

        - against -

Dr. Marco Stoffel, Albe Associates Limited,
Bluecolt Securities Corporation, Lauramca
Holdings, L.L.C., and John Does 1-10,

                                    Defendants.

------------------------------------------------------------

**WHEREAS,** on the 11th day of January, 2008, the Plaintiffs, Logany, L.L.C. and Colleen Investment, L.L.C., the above named, were granted a preliminary injunction, upon the posting of a bond in the sum of $1,000,000.00, in the above entitled action, restraining the Defendants from doing certain things as more fully set forth in the order to show cause dated December 21st, 2007.

**NOW, THEREFORE,** the **Westchester Fire Insurance Co., Inc.,** having an office and principal place of business for the State of New York at **140 Broadway, 41st Floor, New York, N.Y., 10005,** does hereby, pursuant to the Statute in such case made and provided, undertake that the Plaintiffs, Logany, L.L.C. and Colleen Investment, L.L.C. will pay to the Defendants so enjoined, such damages and costs not exceeding the sum of **One Million and No/100---($1,000,000.00)---Dollars** as it may sustain by reason of the injunction, if the Court shall finally decide that the Plaintiffs, Logany, L.L.C. and Colleen Investment, L.L.C. were not entitled thereto; such damages and costs to be ascertained by a reference, or otherwise as the Court shall direct.

DATED: **January 25th, 2008**

                    **Westchester Fire Insurance Co., Inc.**

                    By:_____
                         **Annie Sawh, Attorney-in-fact**

form#

## ACKNOWLEDGMENT OF SURETY

**STATE OF NEW YORK** }
**COUNTY OF** _New York_ }  SS:

On the __25th__ day of ___January___ in year _2008_ before me personally came
_____ Annie Sawh _____ to me known, who being by me duly sworn, did
depose and say that he/she resides at ___140 Broadway - 41st Floor, New York, N.Y., 10005___ ,
that he/she is the Attorney-in-Fact of _Westchester Fire Insurance Company, Inc._ , the
corporation described in and which executed the above instrument; that he/she knows the corporate seal of said
corporation, that the seal affixed to such instrument is such corporate seal: that it was so affixed by order of the
Board of Directors of said corporation, and, that he/she signed his/her name thereto by like order; and that said
corporation is duly authorized to transact business in the State of New York in pursuance of the statutes of such
case made and provided, that the Superintendent of insurance of the State of New York, has, pursuant to Chapter
28 of the Consolidated Laws of the State of new York, known as the Insurance Law, issued to

_Westchester Fire Insurance Company, Inc._
a Certificate of Solvency and qualification to become surety or guarantor on all bonds. undertakings,
recognizances. guaranties and other obligations required or permitted by law and that such certificate has not been
evoked.

_____
Notary Public

COLETTE M. BLAIKIE
Notary Public, State of New York
No. 01 BL6145027
Qualified in Nassau County
Certificate Filed in New York County
Commission Expires December 16, 20 _10_

**Attorney**
278494

**Know all men by these presents:** That **WESTCHESTER FIRE INSURANCE COMPANY**, a corporation of the State of New York, having its principal office in the City of Atlanta, Georgia, pursuant to the following Resolution, adopted by the Board of Directors of the said Company on November 8, 1999, to wit:

"RESOLVED, that the following Rules shall govern the execution for the Company of bonds, undertakings, recognizances, contracts and other writings in the nature thereof:

(1)    That the President, any Senior Vice President, any Vice President, and Assistant Vice President, or any Attorney-in-Fact, may execute for and on behalf of the Company any and all Bonds, undertakings, recognizances, contracts and other writings in the nature thereof, the same to be attested when necessary by the Corporate Secretary, or any Assistant Corporate Secretary, and the seal of the Company affixed thereto; and that the President, any Senior Vice President, any Vice President or any Assistant Vice President may appoint and authorize any other Officer (elected or appointed) of the Company, as Attorney-in-Fact to so execute or attest to the execution of all such writings on behalf of the Company and to affix the seal of the Company thereto.

(2)    Any such writing executed in accordance with these Rules shall be as binding upon the Company in any case as though signed by the President and attested to by the Corporate Secretary.

(3)    The signature of the President, or a Senior Vice President, or a Vice President, or an Assistant Vice President and the seal of the Company may be affixed by facsimile on any power of attorney granted pursuant to this Resolution, and the signature of a certifying Officer and the seal of the Company may be affixed by facsimile to any certificate of any such power, and any such power or certificate bearing such facsimile signature and seal shall be valid and binding on the Company.

(4)    Such other Officers of the Company, and Attorneys-in-Fact shall have authority to certify or verify copies of this Resolution, the By-Laws of the Company, and any affidavit or record of the Company necessary to the discharge of their duties.

(5)    The passage of this Resolution does not revoke any earlier authority granted by Resolutions of the Board of Directors"

Does hereby nominate, constitute and appoint COLETTE M. BLAIKIE, D. NICHOLAS BLAIKIE, ANNIE SAWH and ELIZABETH ROUSSEAU all of the City of New York City, State of New York, each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Five Million Dollars ($5,000,000) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney, Vice-President, has hereunto subscribed his name and affixed the corporate seal of the said **WESTCHESTER FIRE INSURANCE COMPANY** this 6th day of July 2006.



**WESTCHESTER FIRE INSURANCE COMPANY**

Stephen M. Haney, Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA    ss.
On this 6th day of July, A.D. 2006, before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney, Vice-President of the **WESTCHESTER FIRE INSURANCE COMPANY** to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.



NOTARIAL SEAL
Kathleen Tirri, Notary Public
Philadelphia, Philadelphia County
My commission expires September 22, 2007

Notary Public

I, the undersigned Secretary of **WESTCHESTER FIRE INSURANCE COMPANY**, do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Secretary, and affixed the corporate seal of the Corporation, this 25th day of January 2008.



George D. Mulligan, Secretary

THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER July 6, 2008.

FORM NO. 68005

THE BACK OF THIS DOCUMENT LISTS VARIOUS SECURITY FEATURES    THAT WILL PROTECT AGAINST COPY COUNTERFEIT AND ALTERATION.

**WESTCHESTER FIRE INSURANCE COMPANY**

**FINANCIAL STATEMENT**                    **DECEMBER 31, 2006**

### ADMITTED ASSETS

| | |
|---|---:|
| BONDS | $1,729,763,005 |
| SHORT - TERM INVESTMENTS | 25,153,792 |
| STOCKS | 154,887,336 |
| REAL ESTATE | 0 |
| CASH ON HAND AND IN BANK | (74,947) |
| PREMIUM IN COURSE OF COLLECTION* | 116,402,754 |
| INTEREST ACCRUED | 16,895,983 |
| OTHER ASSETS | 254,645,146 |
| TOTAL ASSETS | $2,297,673,069 |

### LIABILITIES

| | |
|---|---:|
| RESERVE FOR UNEARNED PREMIUMS | $391,811,211 |
| RESERVE FOR LOSSES | 1,243,956,960 |
| RESERVE FOR TAXES | 8,090,954 |
| FUNDS HELD UNDER REINSURANCE TREATIES | 0 |
| OTHER LIABILITIES | (3,963,619) |
| TOTAL LIABILITIES | 1,639,895,506 |

| | |
|---|---:|
| CAPITAL:  SPECIAL SURPLUS | 200,132,500 |
| CAPITAL:  928,592 SHARES, $4.85 PAR VALUE | 4,503,671 |
| CAPITAL:  PAID IN | 179,710,659 |
| SURPLUS (UNASSIGNED) | 273,430,733 |
| SURPLUS TO POLICYHOLDERS | 657,777,563 |
| TOTAL | $2,297,673,069 |

(*EXCLUDES PREMIUM MORE THAN 90 DAYS DUE.)

STATE OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

John P. Taylor, being duly sworn, says that he is Vice President of
Westchester Fire Insurance Company and that to the best of his knowledge and belief the
foregoing is a true and correct statement of the said Company's financial condition as of the
31 st day of December, 2006.

Sworn before me this        18th day of April, 2007.

_____
Vice President

_____                    _____
Notary Public                              My commission expires

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Danielle M. Darden, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Oct. 21, 2009
Member, Pennsylvania Association of Notaries

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

Index No. 116985/07

Hon. Richard B. Lowe III

**NOTICE OF APPEARANCE**

Plaintiffs,

-against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10

Defendants.

RECEIVED JAN 8 8 2008 TRIAL SUPPORT OFFICE

FILED JAN 3 1 2008 COUNTY CLERK'S OFFICE NEW YORK

---

PLEASE TAKE NOTICE that the Law Offices of Martin J. Murray, 475 Park

Avenue South, 25th Floor, New York, New York  10016 hereby appears as co-counsel to

plaintiffs Vistra Trust Company (Jersey) Limited as Trustee of the Alsam, Colleen, and

Logany Settlements, Colleen Investment AG, Alsam Holding AG, Penny Asset AG,

Logany Equity AG, Vierwaldstätter Beteiligungen AG, Clarick AG, Colleen Investment,

L.L.C., Logany, L.L.C., and William R. Tacon, Receiver and Manager of the assets of

Maytown Universal SA and Plympton Universal SA.

Dated: January 25, 2008
      New York, New York

LAW OFFICES OF MARTIN J. MURRAY

By: _____
      Nora von Stange
      Martin J. Murray

475 Park Avenue South, 25th Floor
New York, New York  10016
(212) 725-2044

To:
Morrison & Foerster LLP
Thomas M. Mueller, Esq.
1290 Avenue of the Americas
New York, New York 10104-0050
(212) 468-7900

Counsel for
Dr. Marco Stoffel and Lauramca Holdings LLC


Chadbourne & Parke LLP
Scott S. Balber, Esq.
Robert Grossman, Esq.
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Counsel for Plaintiffs

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE ALSAM, COLLEEN, AND LOGANY SETTLEMENTS, COLLEEN INVESTMENT AG, ALSAM HOLDING AG, PENNY ASSET AG, LOGANY EQUITY AG, VIERWALDSTATTER BETEILIGUNGEN AG, CLARICK AG, COLLEEN INVESTMENT, L.L.C., LOGANY, L.L.C., and WILLIAM TACON, RECEIVER AND MANAGER OF THE ASSETS OF MAYTOWN UNIVERSAL SA AND PLYMPTON UNIVERSAL SA, | Index No. 116985/07<br><br>Hon. Richard B. Lowe III |

Index No. 116985/07

Hon. Richard B. Lowe III

Plaintiffs,

-against-

DR. MARCO STOFFEL, ALBE ASSOCIATES LIMITED, BLUECOLT SECURITIES CORPORATION, LAURAMCA HOLDINGS, L.L.C., and JOHN DOES 1-10

Defendants.

**AFFIRMATION OF SERVICE**

I, Nora von Stange, an attorney admitted to practice in the Courts of the State of New York, hereby affirm under penalty of perjury that on January 26, 2008 I served the foregoing Notice of Appearance by prepaid FedEx delivery upon:

Morrison & Foerster LLP
Thomas M. Mueller, Esq.
1290 Avenue of the Americas
New York, New York 10104-0050
(212) 468-7900

Counsel for
Dr. Marco Stoffel & Lauramca Holdings LLC

Chadbourne & Parke LLP
Scott S. Balber, Esq.
Robert Grossman, Esq.
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

Counsel for Plaintiffs

January 26, 2008

_____
Nora von Stange

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED
AS TRUSTEE OF THE ALSAM; COLLEEN AND
LOGANY SETTLEMENTS; COLLEEN
INVESTMENT AG; ALSAM HOLDING AG;
PENNY ASSET AG; LOGANY EQUITY AG;
VIERWALDSTATTER BETEILIGUNGEN AG;
CLARICK AG; COLLEEN INVESTMENT, L.L.C.;
LOGANY, L.L.C.; and WILLIAM TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

Index No. 116985/07

Hon. Richard B. Lowe III

**NOTICE OF APPEARANCE**

               Plaintiffs,

- against -

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS,
L.L.C., and JOHN DOES 1-10

               Defendants.



PLEASE TAKE NOTICE that the law firm of Hughes Hubbard & Reed LLP, One

Battery Park Plaza, New York, New York 10004, hereby appears as co-counsel to Defendants

Dr. Marco Stoffel and Lauramca Holdings, L.L.C.

Dated: New York, New York
       February 29, 2008

HUGHES HUBBARD & REED LLP

By
    John Fellas (JF-5574)
    One Battery Park Plaza
    New York, New York 10004
    (212) 837-6000

60234486_1.DOC

TO:
Morrison & Foerster LLP
Thomas M. Mueller, Esq.
1290 Avenue of the Americas
New York, NY 10104-0050
(212) 468-7000

Counsel for
Dr. Marco Stoffel and Lauramca Holdings, LLC


Chadbourne & Parke LLP
Scott S. Balber, Esq.
Robert Grossman, Esq.
30 Rockefeller Plaza
New York, NY 10112
(212) 408-5100

Law Offices of Martin J. Murray
Nora von Stange, Esq.
Martin J. Murray, Esq.
475 Park Avenue South, 23rd Floor
New York, NY 10011

Counsel for Plaintiffs


Clerk
Supreme Court, New York County
60 Centre Street
New York, NY 10007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
Index No. 116985/07

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE ALSAM;
COLLEEN AND LOGANY SETTLEMENTS; COLLEEN INVESTMENT AG; ALSAM
HOLDING AG; PENNY ASSET AG; LOGANY EQUITY AG; VIERWALDSTATTER
BETEILIGUNGEN AG; CLARICK AG; COLLEEN INVESTMENT, L.L.C.; LOGANY,
L.L.C.; and WILLIAM TACON, RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON UNIVERSAL SA,

                                                            Plaintiffs,

                        -   against –


DR. MARCO STOFFEL, ALBE ASSOCIATES LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C., and JOHN DOES 1-10,


                                                            Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## <u>AFFIDAVIT OF SERVICE BY HAND</u>


STATE OF NEW YORK           )
                                      ss. :
COUNTY OF NEW YORK          )


    EDWARD A. SCHAEFER, being duly sworn, deposes and says that I am over the age of

eighteen years, not a party to this action, and am in the employ of Hughes Hubbard & Reed LLP,

attorneys for Defendants Dr. Marco Stoffel and Lauramca Holdings, L.L.C. herein;  that on the 29th day

of February, 2008, deponent served the NOTICE OF APPEARANCE by hand delivery, by personally

delivering true and correct copies to and leaving them with a person of suitable age and discretion at each

of the law offices indicated below:


        TO:    CHADBOURNE & PARKE LLP

              Scott S. Balber, Esq.

              Robert Grossman, Esq.

              30 Rockefeller Plaza

              New York, New York 10112

-and-

LAW OFFICES OF MARTIN J. MURRAY

Nora von Stange, Esq.

Martin J. Murray, Esq.

475 Park Avenue South, 23rd Floor

New York, New York 10011

EDWARD A. SCHAEFER

Sworn to before me this

_____ day of February, 2008.

Notary Public

PATRICIA E. SMITH
Notary Public, State of New York
No. 1SM4796951
Qualified in Richmond County
Certificate Filed in New York County
Commission Expires March 30, 20 ___

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                    Present: _The Honorable Richard B._
COMMERCIAL DIVISION: IAS PART _56_                 Justice              _Low_

---------------------------------------------------x

_Vistra Trust Company, et al_

                                Plaintiff(s),

            - against -

_Marco Stoffel, et al._

                                Defendant(s).

---------------------------------------------------x

Index No. _116985/07_

**DCM Track : COMPLEX**

**Preliminary Conference Order**

(Section 202.8 [f], 202.12, 202.70
of the Uniform Rules for the Trial
Courts) (Implementation of
Commercial Division Rules in
New York County, June 8, 2007)


**COMPLETE ALL ITEMS ON THE FORM UNLESS INAPPLICABLE, UNKNOWN OR
NOT REQUIRED BY THE PRESIDING JUSTICE)**

**FILED**

(1)    **Appearances**:

MAR 12 2008

COUNTY CLERK'S OFFICE
NEW YORK

        Include addresses, telephone numbers and e-mail addresses

        Attorney for Plaintiff(s)    _Scott S. Balber / Chadbourne &_
                                      _30 Rockefeller Plaza, NY, NY 10112    Parke_
                                                                              _LLP_
                                      _212-408-5466_
                                      _SBALBER @ CHADBOURNE. COM_

        Attorney for Defendant(s)    _Thomas M. Mueller   Morrison + Foerster LLP_
        _Marco Stoffel_              _1290 Ave. of the Americas N7 N7 10104_
        _handramed_
                                     _212·468·8164 + mueller@mofo.com_
                                     _John Fellas, Hughes Hubbard & Reed LLP_
        Attorney for Defendant(s)    _ONE BATTERY PARK PLAZA  NY NY 10004_
                                     _212 837-6075    fellas @ hugheshubbard_
                                                                    _com_

        Attorney for Defendant(s)    _____

(2)  **Nature of case:** *Fraud, breach of fiduciary duty / conversion*

(3)  **Bill of Particulars:**

Demanded by _N/A_ and served by _N/A_.

(4)  **Preservation of Evidence:**

Attorneys shall confer about preservation of evidence before finalizing the Preliminary Conference Order and provide a report of their conference to the court.

(5)  **Discovery and Inspection:**

(a)  All demands for Discovery and Inspection shall be served by _April 2, 2008_

(b)  All responses to Discovery and Inspection demands shall be served by _May 2, 2008_

(6)  **Interrogatories**

No more than 25 interrogatories, including subparts, shall be served on or before _April 2, 2008_. Answers to interrogatories shall be served on or before _May 2, 2008_.

(7)  **Depositions:**

(a)  Depositions shall be held as follows:

| Party | Date |
|---|---|
| All depositions shall be held between June 18 and September 12, 2008. | |

(Add additional sheets, if needed)

Depositions shall end by *September 12, 2008*.

(b)    Depositions shall be conducted in accordance with Part 221 of the Uniform Rules for Trial Parts.

(8)    **Other Disclosure**:

(a)    Commissions or letters rogatory (CPLR 3108): identify and set forth the location of each witness, if known.

*Guido Banholzer, George Philippe, Bernhard Lotscher, Aline Wey, Marco Bezzani, STM (The parties reserve the right to supplement this list).*

(b)    Expert disclosure (CPLR 3101[d]), if applicable:

Plaintiff(s) shall provide expert disclosure by *October 1, 2008*

Defendant(s) shall provide expert disclosure by *October 1, 2008*

Depositions: *To be concluded by October 29, 200*

(9)    **End Date for All Disclosure:** *November 28, 2008*

(10)    **Conferences:**

Compliance Conference shall be held: *6/19/08 at 2:30*

Pre-Trial Conference shall be held: _____

(11)    **Note of Issue:**

Note of Issue shall be filed: *3/23/09* . This date, the end date for all discovery and conference dates, may not be changed without a court order.

(12)    **Discovery Disputes and Motions:**

Counsel by joint letter shall present discovery disputes to the court. Parties shall communicate with the court before making discovery motions.

3

**Dispositive Motions**:

All dispositive motions shall be made no more than 30 days after the filing of the Note of Issue. Dispositive motions shall contain Commercial Rule 19-a Statements of Undisputed Facts and Memoranda of Law with Tables of Contents and Tables of Authorities.

(14)  **E-Filing:**

Parties are expected to E-File.

(15)  **Mediation:**

(16)  **Confidentiality/Nondisclosure Agreement:**

In the event there is a need for a Confidentiality/Nondisclosure Agreement and Order prior to disclosure, the parties shall use the Agreement at *www.nycbar. org/pdf/report/modelconfidentiality.pdf* unless parties provide reason otherwise. If the parties cannot agree, they shall promptly notify the Court. The failure to promptly seek a confidentiality agreement may result in a waiver. The Agreement may not provide for sealing absent Court order (22 NYCRR 216.1).

(17)  **Miscellaneous:**

(a)  If the matter settles, the parties shall promptly notify the court and promptly forward a courtesy copy of the Stipulation of Discontinuance to the Court.

(b)  The failure of any party to comply with any of the requirements contained in this Order shall not excuse any other party(ies) from complying with any other requirement.

(18)  **Trial:**

(a)  Plaintiff anticipates the trial of this matter to be __10__ days.

Defendant _5_____ anticipates the trial of this matter to be __10__ days.  (Add additional sheets, if needed)

(b)  The matter is hereby set down for trial on _____.

)   This Order includes the attached _____page(s) that is/are incorporated by
    reference.


Dated: ___3/5/08___


                                              SO ORDERED:

                                              RICHARD B. LOWE III
                                                      J.S.C.


FILED

MAR 1 2 2008

COUNTY CLERK'S OFFICE
NEW YORK

_____ v. _____

ex No. _____

### SUPREME COURT : NEW YORK COUNTY
### COMMERCIAL DIVISION: IAS PART _____
### PRELIMINARY CONFERENCE ORDER/STIPULATION

### ADDITIONAL SHEET

ITEM  NO.

PAGE ____ OF ____


**SO ORDERED**

_____

_____
J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY)
LIMITED AS TRUSTEE OF THE ALSAM;
COLLEEN AND LOGANY SETTLEMENTS;
COLLEEN INVESTMENT AG; ALSAM
HOLDING AG; PENNY ASSET AG;
LOGANY EQUITY AG;
VIERWALDSTATTER BETEILIGUNGEN
AG; CLARICK AG; COLLEEN
INVESTMENT, L.L.C.; LOGANY, L.L.C.;
AND WILLIAM TACON, RECEIVER AND
MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND
PLYMPTON UNIVERSAL SA,

Index No.: 116985/07

I.A.S. Part 56

(Hon. Richard B. Lowe III)

Plaintiffs,

**NOTICE OF FILING OF
NOTICE OF REMOVAL**

-against-

DR. MARCO STOFFEL; ALBE
ASSOCIATES LIMITED; BLUECOLT
SECURITIES CORPORATION;
LAURAMCA HOLDINGS, L.L.C.; AND
JOHN DOES 1-10,

Defendants.



FILED

MAR 1 8 2008

NEW YORK
COUNTY CLERK'S OFFICE

TO THE SUPREME COURT OF NEW YORK:

TAKE NOTICE that Dr. Marco Stoffel and Lauramca Holdings, LLC, defendants in this action have, pursuant to federal law, filed with the Clerk of the United States District Court for the Southern District of New York a Notice of Removal. Pursuant to 28 U.S.C. § 1446 and 9 U.S.C. § 205, this court is respectfully requested to proceed no further in this action, unless and until the action is remanded by the United States District Court.

A copy of the Notice of Removal filed with the United States District Court is attached and filed with this document. Notice of the Removal has also been given to the plaintiffs in this action.

This action was removed to the United States District Court under the authority of 28 U.S.C. § 1446 and 9 U.S.C. § 205.

Dated: March 18, 2008

HUGHES HUBBARD & REED LLP

By: _____
   John Fellas
   Hagit M. Elul
   Sarah Barrett*
   *application for admission pending

One Battery Park Plaza
New York, New York 10004
(212) 837-6000
fellas@hugheshubbard.com

Attorneys for Defendants Dr. Marco Stoffel
and Lauramca Holdings, L.L.C.

2

GE BUCHWAL

John Fellas
Hagit Elul
Sarah Barrett*
*application for admission pending

**08 CV 02844**

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
fellas@hugheshubbard.com

Attorneys for Defendants Dr. Marco Stoffel
and Lauramca Holdings, L.L.C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED
AS TRUSTEE OF THE ALSAM; COLLEEN AND
LOGANY SETTLEMENTS; COLLEEN
INVESTMENT AG; ALSAM HOLDING AG;
PENNY ASSET AG; LOGANY EQUITY AG;
VIERWALDSTATTER BETEILIGUNGEN AG;
CLARICK AG; COLLEEN INVESTMENT, L.L.C.;
LOGANY, L.L.C.; and WILLIAM TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

Case No.



Plaintiffs,

- against -

DR. MARCO STOFFEL; ALBE ASSOCIATES
LIMITED; BLUECOLT SECURITIES
CORPORATION; LAURAMCA HOLDINGS,
L.L.C.; and JOHN DOES 1-10

Defendants.

## NOTICE OF REMOVAL PURSUANT TO 9 U.S.C. § 205 AND 28 U.S.C § 1446

Defendants Dr. Marco Stoffel ("Dr. Stoffel") and Lauramca Holdings, L.L.C.

(collectively, "Defendants"), by their counsel Hughes Hubbard & Reed LLP, hereby remove this

action pursuant to the Federal Arbitration Act, 9 U.S.C. § 205 and 28 U.S.C. § 1446 from the Supreme Court of the State of New York to the United States District Court for the Southern District of New York. Defendants respectfully state to this Court the following:

1.      On December 21, 2007, the above-captioned Plaintiffs (collectively, "Plaintiffs") commenced a civil action, numbered 116985/07, against Defendants in the Supreme Court of the State of New York, County of New York. Pursuant to 28 U.S.C. §1446(a), attached herewith as Exhibit 1 are copies of Plaintiffs' summons and complaint, and attached herewith as Exhibit 2 are copies of all orders in the state court action.[1]

2.      On January 23, 2008, Defendants filed a Motion to Dismiss on the grounds of *forum non conveniens*.[2] Filed herewith as Exhibit 3 is a copy of Defendants' Motion to Dismiss (attachments excluded) and memoranda of law in support thereof.

## I.     THIS ACTION RELATES TO AN ARBITRATION AGREEMENT UNDER THE CONVENTION.

3.      This action relates to arbitration agreements falling under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958 (9 U.S.C. § 201).

4.      Plaintiffs' allegations involve a relationship among Defendants and Plaintiffs concerning a foreign charitable trust, which is governed by various contracts. Three such contracts (collectively, the "Fiduciary Agreements") between defendant Dr. Stoffel and plaintiff

---

[1]      On December 21, 2007, Plaintiffs filed an Order to Show Cause with Temporary Restraining Order, and the Order was granted by Justice York. On January 2, 2008, a Memorandum of Law in Opposition to Plaintiffs' Application for a Temporary Restraining Order and a Preliminary Injunction was filed by Defendants.

[2]      On March 3, 2008, oral argument was held on the Motion to Dismiss. As of the date of this removal, no decision has been rendered, and Defendants have not otherwise answered Plaintiffs' Complaint.

Vistra Trust Company (Jersey) Limited ("Vistra")[3] contain an arbitration provision that provides as follows:

> This Agreement is exclusively subject to SWISS LAW. In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being ZURICH.

A copy of the Fiduciary Agreements is attached herewith as Exhibit 4.[4]

5.    In their Complaint, Plaintiffs explicitly rely on the Fiduciary Agreements to support their allegations against Defendants. Thus Plaintiffs allege that "[t]he effect of the nominee agreements, coupled with Stoffel's appointment as the Irish companies' attorney and certain 'Fiduciary Agreements' which Stoffel entered into with Vistra in January 1999, was that Stoffel could act only on instructions from Vistra with respect to the Swiss and Irish Companies." (Pls.' Compl. Ex. 1 at ¶ 26.) Furthermore, Plaintiff Vistra has brought a claim against Defendant Dr. Stoffel for breach of fiduciary duty. (Pls.' Compl. Ex 1 at ¶¶ 84 - 89.)

6.    Switzerland and the United States are signatories to the Convention.

7.    The Convention embraces any "arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered commercial, including a transaction, contract, or agreement" (9 U.S.C. § 202). The relationship here among Defendants

---

[1]    The Fiduciary Agreements are between Dr. Stoffel and Chiltern Trust Company (Jersey) Limited; the latter being, as acknowledged by Plaintiffs, the name of Vistra prior to November 1, 2006. (Pls.' Compl. Ex. 1 at ¶ 2 ("Until November 1, 2006, Vistra operated under the name of Chiltern Trust Company (Jersey) Limited.").

[4]    Defendants Dr. Stoffel and Lauramca Holdings L.L.C. have commenced an arbitration proceeding in Switzerland seeking declaratory relief related to the issues raised in Plaintiffs' Complaint and based on the Fiduciary Agreements and other agreements; this proceeding is *Re: 1. Marco Stoffel, 2. Lauramca Holdings LLC versus 1. Maytown Universal SA, 2. Plympton Universal SA, 3. Vistra Trust Company (Jersey) Limited, as trustee for the Alsam, Colleen and Logany Settlements, 4. Alsam Holding AG, 5. Penny Asset AG, 6. Logany Equity AG, 7. Vierwaldstaetter Beteiligungen AG, 8. Clarick AG, 9. Colleen Investment AG, 10. Colleen Investment LLC, 11. Logany LLC, 12. Albeag Foundation, 13. Albe Associates Limited, 14. Bluecolt Securities, 15. Orconsult SA and 16. Orconsult Limited, as trustee for Aquarius and Capricorn trusts (CH)*, Swiss Chambers' Arbitration Case No. 600116-2008, dated January 21, 2008.

and Plaintiffs is a "commercial" one within the meaning of the Convention and 9 U.S.C. §§ 201, *et seq. See Kenney v. Kenney*, 494 F.Supp.2d 252, 254 (S.D.N.Y. 2007) (although agreement at issue did not involve a commercial transaction, but rather obligations of professional responsibility between partners in a consultancy business, there was no basis to find the parties "had a relationship that was anything other than commercial").

        8.      The arbitration provisions in the Fiduciary Agreements accordingly bring this action within the Convention. *See Best Concrete Mix Corp. v. Lloyd's of London Underwriters*, 413 F.Supp.2d 182, 186 (E.D.N.Y. 2006) (quoting *U.S. Titan, Inc. v. Guangzhou Zhen Hua Shipping Co.*, 241 F.3d 135, 146 (citations omitted)) (an arbitration agreement exists within the meaning of the Convention if "(1) there is a written agreement; (2) the writing provides for arbitration in the territory of a signatory of the convention; (3) the subject matter is commercial; and (4) the subject matter is not entirely domestic in scope."); *Borsack v. Chalk & Vermilion Fine Arts, Ltd.*, 974 F.Supp. 293, 298 (S.D.N.Y. 1997) (the "domestic in scope" element considers whether the relationship at issue is entirely between citizens of the United States). As noted above, the Fiduciary Agreements constitute a (1) written agreement, (2) to arbitrate in Switzerland, (3) arising from a commercial relationship between the parties, which is (4) not entirely between citizens of the United States – for example, Plaintiff Vistra is, as alleged in Plaintiffs' Complaint, a corporation "organized under the laws of the Bailiwick of Jersey with offices at 38 Esplanade, St. Helier, [Island of] Jersey." (Pls.' Compl. Ex. 1 at ¶ 2.).

        9.      Plaintiffs acknowledge, in papers submitted in the state court, the applicability of the Convention. *See* Plaintiffs' Memorandum of Law in Opposition to Defendants Marco Stoffel and Lauramca Holdings, L.L.C.'S Motion to Dismiss, at p. 19, attached herewith as Exhibit 5 ("Under the Federal Arbitration Act [] and the Convention on the Recognition and Enforcement

of Foreign Arbitral Awards . . ., this Court has exclusive jurisdiction to determine 'whether the

parties agreed to arbitrate and if so, whether the scope of that agreement encompasses the

asserted claims.'").

## II.    THIS ACTION IS REMOVABLE PURSUANT TO THE FEDERAL ARBITRATION ACT, 9 U.S.C. § 205.

10.    This action is removable pursuant to the Federal Arbitration Act ("FAA"), 9

U.S.C. § 205, which provides as follows (with emphasis added):

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement . . . falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal. For the purposes of Chapter 1 of this title any action or proceeding removed under this section shall be deemed to have been brought in the district court to which it is removed.

11.    Pursuant to 9 U.S.C. § 205, this action is properly removable to the District Court

of the United States for the district and division embracing the place wherein such action is

pending. The United States District Court for the Southern District of New York embraces the

district of the Supreme Court of the State of New York, County of New York.

## III.    THIS NOTICE OF REMOVAL IS TIMELY.

12.    Under Section 205, a defendant may remove "at any time before the trial." 9

U.S.C. § 205; *see also Dale Metals Corp. v. Kiwa Chemical Industry Co., Ltd.*, 442 F.Supp. 78,

81 n.1 (D.C.N.Y. 1977) ("Nothing could be plainer than the language of 9 U.S.C. § 205, . . .

which, in pertinent part, provides that in cases involving arbitration agreements, 'the defendants

may, at any time before the trial thereof, remove' to federal court[.]").

13.    This removal is timely because it is made before trial.

6

## IV. ALL PROPERLY SERVED DEFENDANTS CONSENT TO REMOVAL OF THIS ACTION.

14. To the extent that the consent of all properly served defendants is required,[5] it is

the case that all properly served defendants do consent to removal of this action to this Court.[6]

*See In re Consol. Welfare Fund 'ERISA' Litigation*, 1992 WL 212348 (S.D.N.Y. August 21,

1992) (removal proper where yet-to-be served defendant did not consent to removal, as court did

have jurisdiction over such defendant).

---

[5]     *See Acosta et al. v. Master Maintenance & Constr., Inc.*, 52 F.Supp.2d 699, 707-08 (M.D.La. 1999) (removal
under 9 USC § 205 does not require consent of all defendants), *aff'd on other grounds*, 452 F.3d 373 (5th Cir.
2006).

[6]     Neither Albe Associates Limited nor Bluecolt Securities Corporation ("Albe" and "Bluecolt"), the other
defendants named in this action, have appeared in this case. Based upon Defendants' review of the record and
Docket Sheet in this action, Plaintiffs have not effected proper service upon Albe and Bluecolt as of the date of
this Notice. To the extent Plaintiffs take the position that they have properly served Albe and Bluecolt by
delivery of papers to Defendant Dr. Stoffel, Dr. Stoffel denies he is an agent of these entities.

7

WHEREFORE, defendants Dr. Marco Stoffel and Lauramca Holdings, L.L.C. advise

the Court that this action has been removed from the Supreme Court of the State of New York,

County of New York to the United States District Court for the Southern District of New York.

Dated this 18th day of March, 2008.

HUGHES HUBBARD & REED LLP

By: _____
    John Fellas
    Hagit Elul
    Sarah Barrett*
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
fellas@hugheshubbard.com
Attorney for Defendants Dr. Marco Stoffel
and Lauramca Holdings, L.L.C.

*application for admission pending

John Fellas
Hagit Elul
Sarah Barrett*
*application for admission pending

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004
(212) 837-6000
fellas@hugheshubbard.com

Attorneys for Defendants Dr. Marco Stoffel
and Lauramca Holdings, L.L.C

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

VISTRA TRUST COMPANY (JERSEY)
LIMITED AS TRUSTEE OF THE ALSAM;
COLLEEN AND LOGANY SETTLEMENTS;
COLLEEN INVESTMENT AG; ALSAM
HOLDING AG; PENNY ASSET AG;
LOGANY EQUITY AG;
VIERWALDSTATTER BETEILIGUNGEN
AG; CLARICK AG; COLLEEN
INVESTMENT, L.L.C.; LOGANY, L.L.C.;
AND WILLIAM TACON, RECEIVER AND
MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND
PLYMPTON UNIVERSAL SA,

                        Plaintiffs,

          -against-

DR. MARCO STOFFEL, ALBE
ASSOCIATES LIMITED, BLUECOLT
SECURITIES CORPORATION,
LAURAMCA HOLDINGS, L.L.C., AND
JOHN DOES 1-10,

                        Defendants.

Index No.:

**CERTIFICATE OF
COMPLIANCE WITH
REQUIREMENT TO GIVE
NOTICE OF REMOVAL (28
U.S.C. 1446(D))**

The undersigned, attorney of record for Dr. Marco Stoffel and Lauramca Holdings, LLC, certifies that, in compliance with 28 U.S.C. § 1446(d), a copy of the Notice of Removal of this action was filed with the Clerk of the Supreme Court of New York. This filing occurred on March 18, 2008.

The undersigned further certifies that, in compliance with the requirements of 28 U.S.C. § 1446(d), written notice of the removal was also given to all parties in this action, along with a copy of the Notice of Removal filed in this court.

This notice was given on March 18, 2008 to all of the parties named above as plaintiffs in this action or to their attorney of record by hand delivery.

Dated: March 18, 2008

HUGHES HUBBARD & REED LLP

By: _____
    John Fellas
    Hagit M. Elul
    Sarah Barrett*
    *application for admission pending

One Battery Park Plaza
New York, New York 10004
(212) 837-6000
fellas@hugheshubbard.com

Attorneys for Defendants Dr. Marco Stoffel
and Lauramca Holdings, L.L.C.

2

# Exhibit 1

 B199— Summons with notice, Supreme Court
personal or substituted service (2 pt. type, 1-94)

· 1993 **Blumberg** Excelsior, Inc., Publisher, NYC 10013
www.blumberg.com

# Supreme Court of the State of New York
## County of New York

Index No. 116985/07

Date purchased 12/21/07

VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE
ALSAM, COLLEEN AND LOGANY SETTLEMENTS, COLLEEN INVEST-
MENT AG, ALSAM HOLDING AG, PENNY ASSET AG, LOGANY EQUITY
AG, VIERWALDSTATTER BEITEILIGUNGEN AG, CLARICK AG,
COLLEEN INVESTMENT, L.L.C., LOGANY, L.L.C. and
WILLIAM TACON, RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON UNIVERSAL SA,

*Plaintiff(s)*

*against*

DR. MARCO STOFFEL, ALBE ASSOCIATES LIMITED,
BLUECOLT SECURITIES CORPORATION, LAURAMCA HOLDINGS,
L.L.C., and JOHN DOES 1-10,

*Defendant(s)*

Plaintiff(s) designate(s)
New York
County as the place of trial.

The basis of the venue is
residence/principal place
of business of certain parties

## Summons

Plaintiff(s) reside(s) at

County of see attached Rider

To the above named Defendant(s)

**You are hereby summoned** to answer the complaint in this action and to serve a copy of
your answer, or, if the complaint is not served with this summons, to serve a notice of appearance, on the Plaintiff's
Attorney(s) within 30    days after the service of this summons, exclusive of the day of service (or within 30
days after the service is complete if this summons is not personally delivered to you within the State of New
York); and in case of your failure to appear or answer, judgment will be taken against you by default for the relief
demanded in the complaint.

Dated, December 21, 2007

Scott S. Balber
Chadbourne & Parke LLP
    Attorney(s) for Plaintiff

Office and Post Office Address
30 Rockefeller Plaza
New York, NY 10112

Defendant's address:
See attached Rider

NEW YORK
COUNTY CLERK'S OFFICE

DEC 21 2007

NOT COMPARED
WITH COPY FILE

**RIDER TO SUMMONS**

**Plaintiffs' Addresses:**

Vistra Trust Company (Jersey) Limited
38 Esplanade
St. Helier
Jersey

Colleen Investment AG
Achereggstrasse 10
6362 Stansstad
Switzerland

Alsam Holding AG
Achereggstrasse 10
63662 Stansstad
Switzerland

Penny Asset AG
Achereggstrasse 10
63662 Stansstad
Switzerland

Logany Equity AG
Achereggstrasse 10
63662 Stansstad
Switzerland

Vierwaldstatter Beteiligungen AG
Achereggstrasse 10
63662 Stansstad
Switzerland

Clarick AG
Achereggstrasse 10
63662 Stansstad
Switzerland

Colleen Investment, L.L.C.
c/o Corporation Service Company
80 State Street
Albany, New York 12207-2543

Logany, L.L.C.
c/o Corporation Service Company
80 State Street
Albany, New York 12207-2543

William Tacon
P.O. Box 4571
Palm Grove House, 2nd Floor
Wickhams Cay, Road Town
Virgin Islands (British)

**Defendants' Addresses:**

Dr. Marco Stoffel
340 W. 12th Street
New York, New York 10014

Albe Associates Limited
c/o Orconsult S.A.
Wenigstrasse 7
Postfach, CH-8026
Zurich, Switzerland

Bluecolt Securities Corporation
c/o Orconsult S.A.
Wenigstrasse 7
Postfach, CH-8026
Zurich, Switzerland

Lauramca Holdings LLC
340 W. 12th Street
New York, New York 10014

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM B. TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

                                        Plaintiffs,

-against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA, L.L.C., and JOHN
DOES 1-10,

                                        Defendants.

Index No.

**Jury Trial Demanded**

**COMPLAINT**

NEW YORK
COUNTY CLERK'S OFFICE

DEC 21 2007

NOT COMPARED
WITH COPY FILE

---

Plaintiffs, as and for their complaint herein against defendants Dr. Marco Stoffel

("Stoffel"), Albe Associates Limited ("Albe"), Bluecolt Securities Corporation ("Bluecolt"),

Lauramca, L.L.C. ("Lauramca") and John Does 1-10 respectfully allege as follows:

## NATURE OF THE ACTION

    1.  Plaintiffs bring this action to recover many millions of dollars of assets

misappropriated by defendant Stoffel for his personal benefit and for the benefit of various

individuals and entities under his control (including the other defendants named herein). For a period of eight years, Stoffel used his fiduciary position for his own financial gain, using trust and corporate accounts as his personal piggy bank in order to lead a lavish lifestyle and portray himself to the world as an ersatz philanthropist. To conceal his wrongdoing, Stoffel devised a complex money-laundering scheme, concocting a trail of false documentation and using hundreds of funds transfers through an array of opaque, Stoffel-controlled offshore shell companies to conceal his misappropriations of assets. In December of 2006, when plaintiffs saw through Stoffel's shell game and learned of Stoffel's misconduct, he was removed from all positions of authority. Despite his removal, Stoffel's appetite for plaintiffs' money went unsated, and he continued to transfer millions of dollars of trust and corporate assets to bank accounts for his benefit. Now, plaintiffs seek to prevent further malfeasance by Stoffel, recover the assets he has wrongfully taken, and obtain compensation for the consequences of his misconduct.

## THE PARTIES

2. Plaintiff Vistra Trust Company Limited ("Vistra") is a corporation organized under the laws of the Bailiwick of Jersey with offices at 38 Esplanade, St. Helier, Jersey. Vistra serves as the Trustee of the Alsam, Colleen and Logany Settlements (collectively the "Jersey Trusts"), each of which is organized under the laws of the Bailiwick of Jersey. Until November 1, 2006, Vistra operated under the name of Chiltern Trust Company (Jersey) Limited.

3. Plaintiff Colleen Investment AG ("Colleen AG") is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.

2

4.  Plaintiff Alsam Holding AG is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.

5.  Plaintiff Penny Asset AG is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.

6.  Plaintiff Clarick AG is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.

7.  Plaintiff Vierwaldstätter Beteiligungen AG is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.

8.  Plaintiff Logany Equity AG is a Swiss corporation with its principal place of business at Achereggstrasse 10, 63662 Stansstad, Switzerland.  Plaintiffs Colleen AG, Alsam Holding AG, Penny Asset AG, Clarick AG, Vierwaldstätter Beteiligungen AG and Logany Equity AG will be referred to collectively as the "Swiss Companies."

9.  Plaintiff Colleen Investment, L.L.C. ("Colleen LLC") is a limited liability corporation organized under the laws of Delaware with its principal New York office c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543.  The entire membership interest in Colleen Investment, L.L.C. is held by Colleen Investment AG.

10.  Plaintiff Logany, L.L.C. ("Logany LLC") is a limited liability corporation organized under the laws of Delaware and authorized to do business in New York, with its principal New York office c/o Corporation Service Company, 80 State Street, Albany, New York 12207-2543.  The entire membership interest in Logany, L.L.C. is beneficially owned by

3

Colleen Investment, L.L.C.  Plaintiffs Colleen LLC and Logany LLC will be referred to collectively as the "LLCs."

11. Plaintiff William B. Tacon, in his capacity as Receiver and Manager ("Mr. Tacon"), was appointed on December 11, 2006 by the High Court of Justice of the British Virgin Islands (the "BVI Court") as Receiver and Manager of the assets of two British Virgin Islands companies, Maytown Universal SA ("Maytown") and Plympton Universal SA ("Plympton").  Mr. Tacon brings suit here in his capacity as Receiver and Manager of the assets of Maytown and Plympton and all references to Mr. Tacon in this Complaint refer only to Mr. Tacon acting in this capacity.

12. Upon information and belief, defendant Stoffel is a citizen of the United Kingdom and of Switzerland and a resident of the State of New York, residing at 340 W. 12th Street, New York, New York 10014.  Until December of 2006, Stoffel served as the President of plaintiffs Colleen LLC and Logany LLC and exercised control over other companies directly or indirectly owned by Vistra as Trustee and holding the assets of the Jersey Trusts.

13. Upon information and belief, Defendant Lauramca, L.L.C. is a Delaware limited liability company with its principal place of business at 340 W. 12th Street, New York, New York 10014, the residence of defendant Stoffel.  On information and belief, pursuant to a divorce settlement, Stoffel was to own all of the membership interests in Lauramca, L.L.C. are owned and controlled by Stoffel.

14. Upon information and belief, Defendant Albe Associates Limited ("Albe") is a British Virgin Islands International Business Company controlled and beneficially owned by

Stoffel, with its principal offices c/o Orconsult S.A., Wenigstrasse 7, Postfach, CH-8026 Zurich,

Switzerland.

15. Upon information and belief, Defendant Bluecolt Securities Corporation is a

Panamanian corporation controlled and beneficially owned by Stoffel, with its address c/o

Orconsult S.A., Wenigstrasse 7, Postfach, CH-8026 Zurich, Switzerland.

16. Upon information and belief, defendants John Doe 1-10 are individuals,

corporations or other entities purporting to act as directors, officers, employees, managers or

agents of Stoffel or on his instructions in connection with the circumstances described herein.

17. This lawsuit arises out of actions taken and business transacted by Defendants

within the State of New York, as alleged below, and this Court has jurisdiction on that basis.

FACTS COMMON TO ALL CAUSES OF ACTION

A.    The Jersey Trusts

18. On December 18, 1998, the Jersey Trusts (the Alsam Trust, the Colleen Trust,

and the Logany Trust) were established as discretionary trusts in and under the laws of the

Bailiwick of Jersey.  The Jersey Trusts were established by Angela and Holger Blickle.

19. Vistra has served as the Trustee of the Jersey Trusts since their inception.

20. The original beneficiaries were named as (i) Angela Blickle; (ii) Angela and

Holger Blickle's son Cedrick Blickle ("Cedrick"); (iii) Angela and Holger Blickle's daughter

Clarissa Blickle ("Clarissa"); (iv) Cedrick's direct descendants; and (v) Clarissa's direct

descendants.

21. The Settlements appointed Vistra as Trustee and New Eagle Corporation Limited ("New Eagle"), an Irish corporation, as "Protector" of the Jersey Trusts, a position that under the terms of the Settlements provided New Eagle with certain duties, powers, and obligations.

22. Angela Blickle died in February 1999. Following her death, Stoffel represented to Vistra that he was a director of New Eagle.

B.    The Jersey Trusts' Initial Assets

23. The Settlements provided that the assets to be placed into the Jersey Trusts included the shares of the Swiss Companies.

24. The majority of the Plaintiffs' assets are now held by Colleen AG and its wholly-owned subsidiaries. Colleen AG owns the membership interest in Colleen LLC, which in turn owns the membership interest in Logany LLC (together with Colleen LLC, the "US LLCs"). Among other assets, Logany LLC owns a commercial building at One Broadway in the City of New York. The One Broadway building is the principal asset of Logany LLC and in turn, the membership interest in Logany LLC accounts for a majority of Colleen LLC's assets. Colleen LLC's other assets include bank and securities accounts held in the United States and real estate limited partnership investments in the United States.

25. In or around April 1999, Vistra entered into nominee agreements with three Irish companies -- First Aim Management Limited ("First Aim"), Millenium Import/Export Limited ("Millenium"), and Madison Corporate Development Limited ("Madison") -- pursuant to which each Irish company held bank deposits belonging to Plaintiffs.

26. The effect of the nominee agreements, coupled with Stoffel's appointment as the Irish companies' attorney and certain "Fiduciary Agreements" which Stoffel entered into with Vistra in January 1999, was that Stoffel could act only on instructions from Vistra with respect to the Swiss and Irish Companies.

27. In mid-1999, the Irish Companies' assets were transferred to two two new nominee companies, Maytown Universal SA ("Maytown") and Plympton Universal SA ("Plympton"), each British Virgin Islands Corporations, (together the "BVI Companies")..

28. Until December 11, 2006, when the High Court of Justice of the British Virgin Islands appointed Plaintiff William Tacon as Receiver and Manager to locate, recover and manage the assets of the BVI Companies. The BVI Companies had at all times been under the complete control of Stoffel and Guido Banholzer ("Banholzer') and Georges Phillipe ("Phillipe"). Banholzer and Phillipe were each associated with Orconsult SA, a Swiss company based in Zurich.

29. Until his removal in December of 2006 from all positions of responsibility with respect to the ,Swiss Companies, the US LLCs and the BVI Companies, Stoffel has held officer or director positions with respect to these entities or has exercised complete control over their affairs.

30. Stoffel provided various diagrams to Vistra between 1999 and 2006, purporting to show the organizational structure of the Swiss Companies, the LLCs, and the BVI Companies. These charts were false and misleading in various respects because they purported to show changes to parent-subsidiary and nominee relationships which had never been effected

7

and because they failed to accurately account for Stoffel's dealings with the Swiss Companies, the LLCs and the BVI Companies..

C.      Transfer of Plaintiffs' Assets to Stoffel via Bluecolt, Albe and the Scottish Partnerships

31. On information and belief, Bluecolt, a Panamanian company, and Albe, a British Virgin Islands company, were entities established in 1999 as "shelf companies" by law firms in Panama and the British Virgin Islands.  Beginning at least in November of 2000 and, upon information and belief, continuing until the present day, both companies have been beneficially owned by Stoffel, who executed Mandate Agreements under which Orconsult held the shares of Albe and Bluecolt on Stoffel's behalf and managed the affairs of both companies in accordance with his instructions.

32. "Know your customer" filings furnished to banks holding Albe and Bluecolt funds reflected that Dr. Stoffel was the beneficial owner of these entities.  Furthermore, in his will, Stoffel accounted for the shares of Albe among his personal assets and stated that Albe "holds [his] liquid moneys."

33. Starting in and around April 2002 through December 2005, Bluecolt and Albe received at least US$ 13.8 million in assets that had been improperly transferred from the BVI Companies pursuant to invoices submitted by seven shell entities -- P.B. Partners & Co., ITC International Traders Corp. & Co., Istalla International Finance & Co., IPMG (Industrial Planning and Marketing Group) Limited, ATC Advanced Technology Consultants & Co., Nevis Corp. & Co., and Interconsultants & Associates  (the "Intermediate Recipients").  Specifically, the assets were misappropriated from the BVI Companies pursuant to what Stoffel himself has

described under oath in another U.S. proceeding as more than one hundred "fake invoices" purporting to demand fees for services that were allegedly rendered by the Intermediate Recipients which were owned by Orconsult.

34. In fact, the "fake invoices" were concocted to hide the siphoning of funds from the BVI Companies for Stoffel's benefit through an array of intermediate entities established in various offshore jurisdictions, whose only purpose was to create a convoluted and opaque paper trail that would help to conceal Stoffel's misappropriations and the location of the proceeds.

35. Stoffel himself forwarded these "fake invoices" on a regular basis to Orconsult for payment pursuant to Stoffel's written instructions. The invoices were fraudulent because the alleged services, which were described in general terms such as the provision of "business logistics," were never actually provided, nor was there any intention that they be provided. None of these invoices were paid, nor were any of the transfers made, with proper authorization.

36. Once payment was made pursuant to the "fake invoices," the resulting funds were transferred to Albe and Bluecolt for Stoffel's benefit. Subsequent to the improper and unauthorized transfer of these assets from the BVI Companies to Bluecolt and Albe, Bluecolt and Albe made a series of substantial asset transfers to Stoffel personally and to third parties to whom payments were directed by Stoffel for Stoffel's own purposes. None of these transfers were known to Vistra, Clarissa or Cedrick, nor was there any legitimate basis for them.

37. Indeed, putting the lie to any claim that the transfers to Albe and Bluecolt were other than for Stoffel's benefit, documents show that Stoffel frequently used the BVI

Companies' funds wrongfully transferred to Albe and Bluecolt as a personal "piggy bank" to fund his lavish lifestyle, directing Orconsult to cause Albe and Bluecolt to pay art dealers, vendors of classic luxury automobiles, and other parties on Stoffel's behalf.

38. Stoffel never disclosed the Albe and Bluecolt transfers to Vistra, or to Cedrick or Clarissa. Nor did Stoffel ever inform Vistra of his personal interest in Albe and Bluecolt, or even of the existence of these entities. Stoffel knowingly failed to provide this information because he had the motive and opportunity to deceive Vistra regarding the transfers of the BVI Companies' funds to Albe and Bluecolt.

39. Stoffel knew that the invoices submitted in support of the Albe and Bluecolt transfers were, to use Stoffel's term, "fake." He thus acted knowingly and willfully in providing these false documents to the BVI Companies in support of requests for payment.

C.    Stoffel's Purported Transfer of Trust Assets to Aquarius and Capricorn

40. As part of Stoffel's fraudulent scheme, he arranged for the formation of two Bermuda-based trusts, the Capricorn Trust ("Capricorn") and the Aquarius Trust ("Aquarius"). Banholzer and Phillipe of Orconsult SA created a new entity, Orconsult Limited, for the purpose of providing a trustee entity for Capricorn and Aquarius. Unlike the Jersey Trusts, the terms of Capricorn and Aquarius vested significant powers in the Protector -- which not coincidentially was New Eagle, an entity controlled by Stoffel -- to add and remove beneficiaries virtually at will and to make distributions to a vaguely-defined general class of "charitable" beneficiaries.

41. In a document dated December 2, 1999, Stoffel purported to remove Cedrick and Clarissa as beneficiaries of the Jersey Trusts and to replace them with Capricorn and Aquarius,

as well as two charities controlled by Stoffel (the Borderline Personality Disorder Research Foundation ("BPDRF") and the Third Millennium Foundation ("TMF") and a general class of charitable beneficiaries. Vistra, the only entity with the power to change the beneficiaries of the Jersey Trusts, never removed Cedrick or Clarissa as beneficiaries and these documents were therefore false, as Stoffel knew.

42. Stoffel has falsely claimed that assets of the Plaintiffs have been held by Capricorn and Aquarius since sometime in 1999.

43. Orconsult never had authority to manage Plaintiffs' assets, and did not have authority to make or confirm distributions of assets of the Trusts.

44. Stoffel falsely represented to Cedrick and Clarissa that the Jersey Trusts no longer existed, that the Plaintiffs' assets were now controlled by Capricorn and Aquarius and that Orconsult was now Trustee. In fact, Stoffel knew that the purported transfer of Jersey Trust assets to Capricorn and Aquarius was a fiction, as he acknowledged later in his dealings with Vistra. In fact, in late 2006 Stoffel requested that Vistra approve a transfer of the Jersey Trust assets to Capricorn and Aquarius. The request was not granted, but the fact that Stoffel made it demonstrates that Stoffel knew that only Vistra could effect such a transfer and that Vistra had never done so.

45. Stoffel also sought to prevent Cedrick and Clarissa from meeting with Vistra, falsely representing to them that such meetings could "damage" the Jersey Trusts.

46. Stoffel knowingly omitted to inform Vistra that he was acting as if transfers of Trust assets to Capricorn and Aquarius had occurred, and Stoffel never disclosed to Vistra that

11

he was misrepresenting to Cedrick and Clarissa that the assets of the Jersey Trusts were held by Capricorn and Aquarius..

**D.    Stoffel's Abuse and Waste of Plaintiffs' Assets As Director and Officer of the Plaintiff Companies**

47. Stoffel's tenure as a director and officer of the Swiss Companies and the LLCs was characterized by deception and the abuse, waste, and theft of Plaintiffs' assets.

48. In 1999, Stoffel received a US$ 2.4 million interest-free loan which ultimately derived from Plaintiffs' assets. Stoffel used the proceeds of this loan to purchase real estate in Scarsdale, New York.

49. Without authority to do so, Orconsult SA and Stoffel arranged for this US$ 2.4 million loan to be "forgiven" on the basis of management fees purportedly owed to New Eagle for services as Protector, and the loan has never been repaid by Stoffel. These purported New Eagle management fees were far in excess of reasonable compensation given New Eagle's extremely limited role. Neither the loan nor the payment of exorbitant fees to New Eagle was disclosed to Vistra. Such fees could only be paid by Vistra, and at no point did Vistra do so. Stoffel refrained from disclosing the facts of these purported fees to Vistra, despite his fiduciary duty to do so, because he wished to retain the fruits of the unauthorized loan and the alleged forgiveness thereof.

50. As a director and officer of the Swiss Companies and the US LLCs, Stoffel also established business relationships between these entities and Stoffel's company, Lauramca. Lauramca was improperly paid $120,000 by Colleen LLC in 2006 at the direction of Stoffel, and Lauramca also improperly received $24,000 in "administrative services fees" from Logany

in 2006. Stoffel improperly caused Colleen LLC to reimburse Lauramca for over $100,000 in "office furniture," which remains within Stoffel's 340 W. 12th Street home. Stoffel and his agents have actively attempted to conceal these arrangements, modifying and recharacterizing invoices after the fact to conceal the extent of Lauramca's financial benefit obtained from the Swiss Companies and the US LLCs. Finally, Lauramca also improperly received $931,335.95 in Jersey Trust assets from Orconsult.

51. Stoffel has also unlawfully transferred assets belonging to the Plaintiffs to various charities. For example, Colleen LLC, at Stoffel's direction, donated US$ 157,500 and 150,000 to the New Museum of Contemporary Art in 2006 and 2005 respectively. Stoffel did not timely inform Vistra of these dispositions of Plaintiffs' assets. These unlawful donations of Plaintiffs' assets were made by Stoffel to burnish his reputation and increase his stature in the New York philanthropic community.

52. Stoffel has also improperly caused other of the Plaintiff Companies to make unlawful donations of office space, and caused Colleen LLC to pay rent for space on behalf of TMF in the amount of US$ 68,000 in 2006 alone. Stoffel did not timely inform Vistra of these donations of cash and office space.

53. None of these payments and donations were ever made, authorized or approved by Vistra.

13

E.    Unlawful Transfers in Stoffel's Favor Following His Removal as an Officer and Director of the Plaintiff Companies

54. Following his removal as an officer and director of the Plaintiff Companies on December 6 and 7, 2006, described more fully below, Stoffel has continued to misappropriate assets properly belonging to the Companies.

55. On December 13 and 18, 2006, Stoffel transferred a total of US $1.8 million from a Deutsche Bank account maintained in New York and belonging to Colleen LLC to himself and to entities he believed were acting as his agents. Also on December 18, 2006, Stoffel directed the transfer of $300,000 from a Wachovia securities account held by Colleen AG to a First Republic Bank account held in Stoffel's name and the payment of another $300,000 to the Swiss account of attorney R.A. Dallafior. Stoffel has refused demands to return these funds.

F.    Unauthorized Payments to BPDRF and TMF

56. Stoffel caused payments to be made to BPDRF and TMF without proper authorization. Since the Jersey Trusts' inception, more than $21 million in Plaintiffs' assets have been improperly transferred to BPDRF and TMF.

57. In September 1999, Stoffel proposed that an additional class of beneficiaries be added to the terms of the Jersey Trusts to enable charitable donations to be made to BPDRF and TMF. When Stoffel's proposal was not adopted by Vistra, Stoffel simply proceeded to act as if it had been, making enormous payments of Plaintiffs' assets to BPDRF and TMF that were palpably improper.

58. Stoffel did not timely inform Vistra of his actions in causing at least US$ 21 million in Trust assets to be transferred to BPDRF and TMF.

59. On November 20, 2006, Stoffel provided Vistra with a "report" of payments made to the beneficiaries of the Jersey Trusts, reflecting four payments totaling US$ 1.4 million to BPDRF and TMF and purporting to provide a full account of payments to these entities. Vistra at no time exercised any powers of distribution from the Jersey Trusts with respect to any such payments. This November 20, 2006 report was false because it failed to account for millions of dollars worth of Plaintiffs' assets that had been unlawfully transferred to BPDRF and TMF.

60. At all times relevant herein, Stoffel has controlled BPDRF and TMF. Stoffel founded BPDRF in 1999, and BPDRF's "offices" are in his home. He has also served, and continues to act, as President of both BPDRF and TMF, positions he also held while acting as an officer and director for the Plaintiff Companies.

61. Stoffel routinely exploited this tenure as management of both the Plaintiff Companies and the Foundations. For example, TMF is listed as a donor of "$100,000 or more" to the Human Rights Watch. This donation, which was made from Plaintiffs' assets, and other similar donations, including donations of Plaintiffs' assets to establish a scholarship named after Stoffel himself, were never authorized by Vistra.

G.    Vistra Effects Changes to Plaintiff Company Management and Engages in Other Efforts
to Protect Plaintiffs' Assets

62. On November 15, 2006 Vistra obtained an order from the Royal Court of the
Island of Jersey which, *inter alia*, suspended the powers of the Protector of the Jersey Trusts and
empowered Vistra to take steps to locate, secure and recover assets of the Trusts.

63. On December 6, 2006, each of the Swiss Companies resolved to dismiss Messrs.
Marco Stoffel, Guido Banholzer and Georges Phillipe from their respective Boards of Directors
and appointed directors chosen by Vistra as Trustee.

64. Immediately following this resolution, Colleen AG caused the removal of any
and all persons currently authorized to act as officers of either of the LLCs and appointed new
managers chosen by Vistra as Trustee. As a result of these consents, the LLCs are now under
the exclusive control of Vistra.

### AS AND FOR THE FIRST CAUSE OF ACTION
(Plaintiff Vistra Against Stoffel)
(Fraud)

65. Plaintiff Vistra repeats and realleges each and every allegation contained in
paragraphs 1 through 64 hereof as though fully set forth herein.

66. At all times from the inception of the Trusts until Stoffel's removal from his
positions of responsibility in relation to the Jersey Trusts in December of 2006, Stoffel had a
confidential and fiduciary relationship with Plaintiff Vistra, giving rise to a duty to fully disclose
material facts and events relating to the Jersey Trusts, their assets, and the affairs of the Plaintiff
Companies. Stoffel also had a duty to refrain from making material misstatements of fact to
Plaintiff Vistra.

67. Stoffel breached these duties by omitting to inform Vistra regarding (i) Stoffel's siphoning of funds via Albe and Bluecolt on the basis of more than one hundred "fake invoices"; (ii) Stoffel's actions in attempting to cause the transfer of the Trust assets to Capricorn and Aquarius; (iii) Stoffel's actions in attempting to substitute Orconsult for Vistra as the Trustee managing and overseeing the assets of the Jersey Trusts; (iv) Stoffel's self-dealing transactions pursuant to which Lauramca received payments for office space, furniture and other purposes; (v) Stoffel's receipt of unauthorized loans ultimately derived from Plaintiffs' assets to purchase a home in Scarsdale, New York and with respect to property at 340 W. 12th Street in the City of New York, and the purported repayment of the Scarsdale loan by means of the charging of excessive management fees by New Eagle, and (vi) Stoffel's transfers to BPDRF of enormous sums derived from Plaintiffs' assets. Had Vistra been informed of these matters, Vistra would have taken steps to prevent Stoffel from taking each of these actions.

68. Stoffel also breached his fiduciary duties to Vistra by affirmatively misrepresenting (i) that his plan to contribute assets of the Trusts and the Plaintiff Companies to BPDRF and TMF was a prospective and unfinished proposal rather than a *fait accompli*; (ii) that he intended to act as if a transfer of Jersey Trust assets had occurred whether or not Vistra carried out any such transfer; (iii) that Cedrick and Clarissa had no desire to meet with Vistra; and (iv) that a far smaller sum of Plaintiffs' Assets had been transferred to the Foundations than was actually the case.

69. Vistra relied upon these misrepresentations to its detriment because Vistra would have taken steps to prevent Stoffel from dissipating assets of the Trusts and purporting to

17

transfer assets to Capricorn and Aquarius had Stoffel provided truthful information regarding these matters.

### AS AND FOR THE SECOND CAUSE OF ACTION
(Plaintiff Vistra Against Lauramca, Albe, and Bluecolt)
(Aiding and Abetting Fraud)

70. Plaintiff Vistra repeats and realleges each and every allegation contained in paragraphs 1 through 69 hereof as though fully set forth herein.

71. Defendant Lauramca knowingly aided and abetted Stoffel's frauds by omission concerning (i) Stoffel's siphoning of funds via Albe and Bluecolt on the basis of more than one hundred "fake invoices"; (ii) Stoffel's self-dealing transactions pursuant to which Lauramca received payments for office space, furniture and other purposes; and (iii) Stoffel's receipt of an unauthorized loan ultimately derived from Plaintiffs' assets with respect to property located at 340 W. 12th Street in the City of New York. Lauramca aided and abetted Stoffel's frauds by knowingly receiving, and holding on Stoffel's behalf, the fruits of fraudulent conduct and by providing modified and inaccurate invoices with respect to the provision of office space to the LLCs.

72. Defendants Albe and Bluecolt aided and abetted Stoffel's fraud concerning Stoffel's siphoning of funds via Albe and Bluecolt on the basis of more than one hundred "fake invoices." Albe and Bluecolt knowingly received the siphoned funds, held them on Stoffel's behalf, and acted to conceal both the source of the funds and Stoffel's status as the beneficial owner of Albe and Bluecolt.

73. By engaging in the aforementioned activities, Lauramca, Albe and Bluecolt rendered substantial assistance to Stoffel's fraud.

74. Plaintiff Vistra was injured by the acts of Lauramca, Albe and Bluecolt to aid and abet Stoffel's fraud, insofar as without those acts, the fraud would not have occurred or would have been discovered and stopped more rapidly.

### AS AND FOR THE THIRD CAUSE OF ACTION
(Plaintiff Mr. Tacon Against Stoffel)
(Fraud)

75. Plaintiff Mr. Tacon repeats and realleges each and every allegation contained in paragraphs 1 through 74 hereof as though fully set forth herein

76. Stoffel served as the "controlling mind" of the BVI Companies from these entities' inception until late 2006. Stoffel's domination and control over the BVI Companies were such that Stoffel had a relationship of trust and confidence with the BVI Companies and was obligated to fully disclose material facts to both entities and refrain from making misrepresentations of fact to them.

77. Stoffel breached these duties by forwarding, for payment from assets held by the BVI Companies, hundreds of what Stoffel has characterized as "fake invoices." The "fake invoices" were issued, and the resultant payments were made, for the ultimate benefit of Stoffel via Albe and Bluecolt. These invoices recited fictitious services that were never rendered and failed to disclose that the real reason for the invoices was to serve as a cover for unlawful payments to intermediaries for forwarding to Albe and Bluecolt, entities owned and controlled by Stoffel and which held funds for his benefit.

78. The BVI Companies paid in excess of US$ 13 million for Stoffel's benefit in reliance on these fictitious invoices and were accordingly injured by Stoffel's presentation of the invoices for payment. Mr. Tacon has standing, under the orders of the BVI Court, to recover damages on behalf of the BVI Companies for these injuries.

## AS AND FOR THE FOURTH CAUSE OF ACTION
### (Plaintiff Mr. Tacon Against Albe, Bluecolt and Lauramca)
### (Aiding and Abetting Fraud)

79. Plaintiff Mr. Tacon repeats and realleges each and every allegation contained in paragraphs 1 through 78 hereof as though fully set forth herein.

80. Defendant Lauramca knowingly aided and abetted Stoffel's frauds by omission concerning Stoffel's siphoning of funds belonging to the Trusts via Albe and Bluecolt on the basis of more than one hundred "fake invoices". Lauramca aided and abetted Stoffel's frauds by knowingly receiving the fruits of fraudulent conduct and holding them on Stoffel's behalf.

81. Defendants Albe and Bluecolt aided and abetted Stoffel's fraud concerning Stoffel's siphoning of funds belonging to the Trusts via Albe and Bluecolt on the basis of hundreds of "fake invoices." Albe and Bluecolt knowingly received the siphoned funds, held them on Stoffel's behalf, and acted to conceal both the source of the funds and Stoffel's status as the beneficial owner of Albe and Bluecolt.

82. By engaging in the aforementioned acts, Albe and Bluecolt rendered substantial assistance to Stoffel's fraud.

83. The BVI Companies were injured by the acts of Lauramca, Albe and Bluecolt to aid and abet Stoffel's fraud, insofar as without those acts, the fraud would not have occurred or

would have been discovered and stopped more rapidly.  Mr. Tacon has standing, under the

orders of the BVI Court, to recover damages on behalf of the BVI Companies for these injuries.

### AS AND FOR THE FIFTH CAUSE OF ACTION
(Plaintiffs Vistra and Mr. Tacon Against Stoffel and John Does 1-10)
(Breach of Fiduciary Duty)

84. Plaintiffs Vistra and Mr. Tacon repeat and reallege each and every allegation

contained in paragraphs 1 through 83 hereof as though fully set forth herein.

85. Until December 11, 2006, defendants Stoffel and John Does 1-10 (the "John

Does") acted as directors, officers or agents of the BVI Companies in administering the assets of

each of these entities.

86. In their capacities as directors, officers, or agents of the BVI Companies, these

defendants owed to the BVI Companies and Vistra fiduciary duties of loyalty, fidelity, honesty

and care.  In particular, Stoffel and the John Does owed to the BVI Companies and Vistra the

duty to refrain from transferring their funds without authority.

87. Stoffel and the John Does were subject to duties to act only pursuant to valid

instructions, and  to refrain from making material misrepresentations to Maytown, Plympton,

Vistra and the beneficiaries of the Trusts.

88. Stoffel and the John Does have made or permitted unlawful transfers of

Plaintiffs' assets from the BVI Companies, including transfers to BPDRF, TMF, Stoffel,

Bluecolt and Albe.  These transfers were not authorized by Vistra.  These defendants also failed

to provide accurate, complete and timely information to Vistra or to Mr. Tacon regarding the

disposition of funds held by the BVI Companies.

89. Vistra and Mr. Tacon are entitled to a declaration that Stoffel and the John Does have breached their fiduciary duties with regard to Plaintiffs' assets, and an order directing that the wrongfully transferred assets be returned to Mr. Tacon, or, in the alternative, an award of compensatory damages from these defendants in an amount to be determined at trial sufficient to compensate Mr. Tacon for all funds unlawfully transferred from the BVI Companies.

### AS AND FOR THE SIXTH CAUSE OF ACTION
(Mr. Tacon and the LLC Plaintiffs Against Stoffel and John Does 1-10)
(Accounting)

90. Plaintiffs Mr. Tacon, Colleen LLC and Logany LLC repeat and reallege each and every allegation contained in paragraphs 1 through 89 hereof as though fully set forth herein.

91. In their capacities as directors, officers, or agents of the BVI Companies, Stoffel and the John Does owed to Maytown, Plympton, and Vistra as Trustee fiduciary duties of loyalty, fidelity, honesty and care. In particular, Stoffel and the John Does owed to Maytown, Plympton and Vistra as Trustee the duties to refrain from transferring funds held on behalf of Plaintiffs without authority and to provide truthful and complete information regarding the disposition of the Trusts' assets.

92. In their capacities as directors, officers, or agents of each of the LLCs, Stoffel and the John Does owed each of the LLCs fiduciary duties of loyalty, fidelity, honesty and care. In particular, Stoffel and the John Does owed each of the LLCs a duty to expend corporate resources only for proper business purposes, and to refrain from wasting corporate assets.

93. Prior to December 7, 2006, Stoffel and the John Does, as fiduciaries of the LLCs, exercised control over the LLCs and other entities owned, controlled and/or affiliated with

22

Vistra. Even after their removal, Stoffel and the John Does wrongfully continued to conduct transactions on behalf of the LLCs and misrepresent to third parties that they remained in positions of authority to act on the LLCs' behalf.

94. Stoffel's and the John Does' management of the LLCs and of the BVI Companies resulted in substantial misappropriations of their assets. An accounting is necessary to determine the extent to which Stoffel and the John Does have misappropriated, improperly distributed and wasted the assets of these entities and to determine the funds properly owed to these entities by the Individual Defendants.

95. As a result of Stoffel's and the John Does' breaches of their fiduciary duty owed to the LLCs and the BVI Companies, Mr. Tacon and the LLCs are entitled to an accounting of Stoffel's and the John Does' activities, and by extension, the financial and business details of the LLCs and the BVI Companies, during their tenure as officers, directors and/or agents of the LLCs and the BVI Companies.

### AS AND FOR THE SEVENTH CAUSE OF ACTION
(LLCs Against the Stoffel and John Does 1-10)
(Breach of Fiduciary Duty)

96. The LLCs repeat and reallege each and every allegation contained in paragraphs 1 through 96 hereof as though fully set forth herein.

97. Until their recent removals from such positions, Stoffel and the John Does acted as directors, officers or agents of the LLCs in administering the assets of each of these entities.

98. Stoffel and the John Does have breached their fiduciary duties owed to the LLCs through their mismanagement of the LLCs' affairs, their self-dealing, and their waste and/or

23

misappropriation of the LLCs' assets, and these acts of Stoffel and the John Does had no proper business purpose.

99. The LLCs are entitled to a declaration that Stoffel and the John Does have breached their fiduciary duties to the LLCs and, following the requested accounting, an order directing that the assets be returned to the LLCs, or, in the alternative, an award of compensatory damages from Stoffel and the John Does in an amount to be determined at trial sufficient to compensate the LLCs for the damages they have suffered as a result of Stoffel's and the John Does' breaches of fiduciary duty, plus an award of punitive damages in an amount to be determined at trial.

### AS AND FOR THE EIGHTH CAUSE OF ACTION
(All Plaintiffs Against All Defendants)
(Unjust Enrichment)

100. Plaintiffs repeat and reallege each and every allegation contained in paragraphs 1 through 99 hereof as though fully set forth herein.

101. Defendants have been unjustly enriched by their withdrawals of the assets of the Plaintiff Companies and the BVI Companies for Defendants' personal use and by Defendants' self-dealing with the Plaintiff Companies and the BVI Companies to those entities' detriment.

102. Defendants have been unjustly enriched at the expense of Plaintiffs, and the circumstances are such that equity and good conscience require Defendants to make restitution to Plaintiffs.

103.    Plaintiffs are entitled to a declaration that Defendants have been unjustly enriched at the expense of Plaintiffs, and following the requested accounting, an order directing that the assets be returned to Plaintiffs, or, in the alternative, an award of compensatory damages from these defendants in an amount to be determined at trial sufficient to provide Plaintiffs with the appropriate restitution for such unjust enrichment.

### AS AND FOR THE NINTH CAUSE OF ACTION
(LLCs and Mr. Tacon Against All Defendants)
(Constructive Trust)

104.    The LLCs and Mr. Tacon repeat and reallege each and every allegation contained in paragraphs 1 through 103 hereof as though fully set forth herein.

105.    A relationship of trust and confidence existed between the LLCs and the BVI Companies on the one hand, and Stoffel and the John Does, who served as officers, agents and directors of said companies, on the other hand.  Accordingly, these defendants owed each of the LLCs as well as the BVI Companies fiduciary duties of loyalty, fidelity, honesty and care.

106.    Stoffel and the John Does breached that duty by (a) causing unlawful payments to be made to *inter alia*, BPDRF, TMF, Bluecolt, and Albe from assets belonging to the LLCs and the BVI Companies, (b) causing unauthorized payments to be made to themselves from assets belonging to the LLCs and the BVI Companies, (c) using the funds of the LLCs and the BVI Companies to fund their personal expenses, (d) providing free rental space at the LLCs' expense to, *inter alia,* TMF, and (e) executing agreements between the LLCs and the BVI Companies on the one hand and entities with which they possess a personal interest on the other hand, benefitting Defendants at the expense of the LLCs and the BVI Companies.

25

107.    As a result of the breaches, Defendants have been unjustly enriched.

108.    The LLCs and Mr. Tacon are entitled to a constructive trust over all monies in Defendants' possession, as well as all monies received by Defendants in the future that are owed or will be due and owing to the LLCs and the BVI Companies.

## AS AND FOR THE TENTH CAUSE OF ACTION
(The Plaintiff Companies and Tacon Against All Defendants)
(Conversion)

109.    The Plaintiff Companies and Mr. Tacon repeat and reallege each and every allegation contained in paragraphs 1 through 108 hereof as though fully set forth herein.

110.    Defendants unlawfully transferred, received, possessed, retained, and converted funds belonging to the Plaintiff Companies, Maytown, and Plympton for their individual purposes and have refused to return such funds.

111.    The Plaintiff Companies and Mr. Tacon are entitled to a declaration that Defendants have converted assets belonging to the Plaintiff Companies, Maytown, and Plympton and an order directing the return of these assets to Plaintiff Companies, or, in the alternative, an award of compensatory damages from these defendants in an amount to be determined at trial sufficient to provide the Plaintiff Companies and Mr. Tacon with the appropriate relief for such conversion.

## AS AND FOR THE ELEVENTH CAUSE OF ACTION
(Plaintiff Companies and Tacon Against All Defendants)
(Money Had and Received)

112.    The Plaintiff Companies and Mr. Tacon repeat and reallege each and every allegation contained in paragraphs 1 through 111 hereof as though fully set forth herein.

113.    Defendants have received funds properly belonging to Plaintiffs that were unlawfully distributed to Defendants but were paid to them through transfers to Albe and Bluecolt.

114.    On information and belief, all relevant times herein, Stoffel controlled and had a beneficial interest in Lauramca, Albe and Bluecolt.

115.    In light of Stoffel's conduct with respect to Plaintiffs, the circumstances are such that equity and good conscience require Defendants to make restitution to the Plaintiff Companies and Mr. Tacon.

116.    The Plaintiff Companies and Mr. Tacon are entitled to a declaration that they are entitled to recover their assets transferred to Stoffel, Lauramca, Albe and Bluecolt under a theory of monies had and received and, following the requested accounting, an order directing that the assets be returned to Plaintiffs, or, in the alternative, an award of compensatory damages from these defendants in an amount to be determined at trial sufficient to provide plaintiffs with the appropriate restitution.

WHEREFORE, Plaintiffs respectfully demand judgment in their favor as follows: (i) an order directing the return of any Trust assets improperly held or controlled by Defendants, or, in the alternative, awarding Plaintiffs damages in an amount to be determined at trial, but not less than $30,000,000; (ii) an award of punitive damages in an amount to be determined at trial, but not less than $75,000,000; (iii) preliminary and permanent injunctive relief barring Defendants from transferring or dissipating assets derived from Plaintiffs; (iv) an order permanently enjoining Stoffel and the John Does from (a) acting or purporting to act on behalf

27

of the Jersey Trusts or any of Maytown, Plympton or the Swiss Companies; (b) holding

themselves out as agents of the Trusts or any of any of Maytown, Plympton or the Swiss

Companies; (c) and receiving or transferring funds or things of value, on behalf of the Trusts or

any of their subsidiaries, or attempting or purporting to do the same; (v) an order directing

Stoffel and the John Does to provide Plaintiffs with all documents in their possession relating or

pertaining to (a) the property or business of the Trusts, Maytown, Plympton, or any of the

Plaintiff Companies and (b) without limiting the generality of the foregoing, all transfers of

money or property belonging to Maytown, Plympton, or any of the Plaintiff Companies; (vi) an

order requiring Stoffel and the John Does to account to the LLCs; (vii) an order imposing a

constructive trust on the assets of all Defendants; and (viii) such other relief as the Court may

order.

Dated:  New York, New York
        December 21, 2007

CHADBOURNE & PARKE LLP

By _____
        Scott  S. Balber
        Member of the Firm
        Jonathan C. Cross
        Tamara Stevenson
        Robert E. Grossman
30 Rockefeller Plaza
New York, New York  10112
Tel. (212) 408-5100

Attorneys for Plaintiffs Vistra Trust
Company (Jersey) Limited,  Colleen
Investment AG, Alsam Holding AG,
Penny Asset AG, Logany Equity AG,
Vierwaldstatter Beteiligungen AG, Clarick
AG, Colleen Investment, L.L.C., and
Logany, L.L.C.

29

Index No. _____
(Hon. _____ )

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED,
COLLEEN INVESTMENT AG, ALSAM HOLDING AG,
PENNY ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM B TACON,

Plaintiffs,

-against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES CORPORATION,
LAURAMCA HOLDINGS, L.L.C., and JOHN DOES 1-
10,

Defendants.

## COMPLAINT

**CHADBOURNE & PARKE LLP**

ATTORNEYS FOR

Plaintiffs

Vistra Trust Company (Jersey) Limited, et al.

## COPY

OFFICE AND P.O. ADDRESS
30 ROCKEFELLER PLAZA
NEW YORK, N.Y. 10112
(212) 408 5100

# Exhibit 2

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK                    Present:  _The Honorable Richard B._
COMMERCIAL DIVISION: IAS PART _56_ _____        Justice           _Lou_

-----------------------------------------x

_Vitra Trust Company,_
                                    _et al_                    Index No. _116985/07_

                                    Plaintiff(s),        **DCM Track : COMPLEX**

        - against -                            **Preliminary Conference Order**

_Marco Steffel, et al._                        (Section 202.8 [f], 202.12, 202.70
                                                of the Uniform Rules for the Trial
                                    Defendant(s).            Courts) (Implementation of
                                                Commercial Division Rules in
                                                New York County, June 8, 2007)

-----------------------------------------x


## COMPLETE ALL ITEMS ON THE FORM UNLESS INAPPLICABLE, UNKNOWN OR NOT REQUIRED BY THE PRESIDING JUSTICE.)


(1)    **Appearances:**

        Include addresses, telephone numbers and e-mail addresses.

        Attorney for Plaintiff(s)    _Scott S. Balber / Chadbourne &_
                                    _30 Rockefeller Plaza, NY, NY 10112    Parke_
                                                                _LLP_
                                    _212-408-5466_
                                    _SBALBER @ CHADBOURNE.COM_

        Attorney for Defendant(s)    _Thomas M. Mueller   Morrison + Foerster LLP_
_Marco Steffel /_                    _1290 Ave. of the Americas  NY NY 10104_
_Lauramca_
                                    _212.468.8164  t mueller @ mofo.com_
                                    _John Fellas   Hughes Hubbard + Reed LLP_
        Attorney for Defendant(s)    _ONE BATTERY PARK PLAZA  NY NY 10004_
                                    _212 837-6075   fellas @ hugheshubbard._
                                                                _com_

        Attorney for Defendant(s)    _____

                                    _____

(2)    **Nature of case:**

Fraud, breach of fiduciary
duty/conversion

(3)    **Bill of Particulars:**

Demanded by _N/A_ and served by _N/A_.

(4)    **Preservation of Evidence:**

Attorneys shall confer about preservation of evidence before finalizing the Preliminary Conference Order and provide a report of their conference to the court.

(5)    **Discovery and Inspection:**

(a)    All demands for Discovery and Inspection shall be served by
April 2, 2008

(b)    All responses to Discovery and Inspection demands shall be served by
May 2, 2008

(6)    **Interrogatories**

No more than 25 interrogatories, including subparts, shall be served on or before _April 2, 2008_. Answers to interrogatories shall be served on or before _May 2, 2008_.

(7)    **Depositions:**

(a)    Depositions shall be held as follows:

| Party | Date |
|---|---|
| All depositions shall be held between June 16 and September 12, 2008. | |

(Add additional sheets, if needed)

2

Depositions shall end by _September 19, 2008_.

(b)    Depositions shall be conducted in accordance with Part 221 of the Uniform Rules for Trial Parts.

(8)    **Other Disclosure:**

(a)    Commissions or letters rogatory (CPLR 3108): identify and set forth the location of each witness, if known.

_Guido Banholzer, Georges Philippe, Bernhard Lotscher, Aline Wey, Marco Bezzani, STM (The parties reserve the right to supplement this list._

(b)    Expert disclosure (CPLR 3101[d]), if applicable:

Plaintiff(s) shall provide expert disclosure by _October 1, 2008_

Defendant(s) shall provide expert disclosure by _October 1, 2008_

Depositions: _To be concluded by October 29, 200._

(9)    **End Date for All Disclosure:** _November 28, 2008_

(10)    **Conferences:**

Compliance Conference shall be held: _6/19/08 at 2:30_

Pre-Trial Conference shall be held: _____

(11)    **Note of Issue:**

Note of Issue shall be filed: _3/23/09_ . This date, the end date for all discovery and conference dates, may not be changed without a court order.

(12)    **Discovery Disputes and Motions:**

Counsel by joint letter shall present discovery disputes to the court. Parties shall communicate with the court before making discovery motions.

3

(13)  **Dispositive Motions:**

All dispositive motions shall be made no more than 30 days after the filing of the Note of Issue.  Dispositive motions shall contain Commercial Rule 19-a Statements of Undisputed Facts and Memoranda of Law with Tables of Contents and Tables of Authorities.

(14)  **E-Filing:**

Parties are expected to E-File.

(15)  **Mediation:**

(16)  **Confidentiality/Nondisclosure Agreement:**

In the event there is a need for a Confidentiality/Nondisclosure Agreement and Order prior to disclosure, the parties shall use the Agreement at *www.nycbar.org/pdf/report/modelconfidentiality.pdf* unless parties provide reason otherwise. If the parties cannot agree, they shall promptly notify the Court.  The failure to promptly seek a confidentiality agreement may result in a waiver.  The Agreement may not provide for sealing absent Court order (22 NYCRR 216.1).

(17)  **Miscellaneous:**

(a)    If the matter settles, the parties shall promptly notify the court and promptly forward a courtesy copy of the Stipulation of Discontinuance to the Court.

(b)    The failure of any party to comply with any of the requirements contained in this Order shall not excuse any other party(ies) from complying with any other requirement.

(18)  **Trial:**

(a)    Plaintiff anticipates the trial of this matter to be __10__ days.

Defendant _S_____ anticipates the trial of this matter to be __10__ days.   (Add additional sheets, if needed)

(b)    The matter is hereby set down for trial on _____.

(19)   This Order includes the attached _____page(s) that is/are incorporated by
       reference.

Dated: _____3/5/07_____

SO ORDERED:

RICHARD B. LOWE III

J.S.C.

5

**RE:** _____ **v.** _____

Index No. _____

SUPREME COURT : NEW YORK COUNTY
COMMERCIAL DIVISION: IAS PART _____
PRELIMINARY CONFERENCE ORDER/STIPULATION

<u>ADDITIONAL SHEET</u>

ITEM NO.

PAGE ___ OF _____

SO ORDERED

_____

_____
J.S.C.

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:    _YORK_    PART _2_
                                    _Justice_

VISTRA TRUST Co.,
Et Al.                                  INDEX NO. _116985/07_

                    - v -                MOTION DATE _____

DR. Marco Stoffel,                       MOTION SEQ. NO. _1_
Et Al.
                                         MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

                                                                PAPERS NUMBERED

**FILED**

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...

Answering Affidavits — Exhibits _____    DEC 28 2007

Replying Affidavits _____    NEW YORK
                                       COUNTY CLERKS OFFICE

Cross-Motion:    ☐ Yes    ☐ No

Upon the foregoing papers, it is ordered that this motion is referred to the Commercial Part to the Commercial Division Support office for reassignment to a Commercial Part.

When this case came in by order to show cause, I was unable to consult with Justice Freedman, the acting Administrative Justice because she was busy doing motions. I spoke to her later in the afternoon and she gave me permission to send it to the Commercial Division.

Please note that at the time the parties were here, I was forced to (I found it necessary,) in view of Justice Freedman's unavailability to sign the order to show cause with a return day of Jan. 11 and a TRO.

Dated: _12/24/07_                    _York_    J.S.C.

                                     **LOUIS B. YORK**
                                     **J.S.C.**

Check one:    ☐ FINAL DISPOSITION    ☐ NON-FINAL DISPOSITION

Check if appropriate:    ☐ DO NOT POST    ☐ REFERENCE

*(left margin, vertical text)* MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE    FOR THE FOLLOWING REASON(S):

At the IAS Part of the Supreme Court of the
State of New York, held in and for the
County of New York, at the New York
County Courthouse, located at ~~60 Centre~~ 71 Thomas
Street, New York, New York, on the
21st day of December, 2007

PRESENT: Hon. _____, Justice

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

                                    Plaintiffs,

                    -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

                                    Defendants.

Index No. 116985/07

**ORDER TO SHOW CAUSE
WITH TEMPORARY
RESTRAINING ORDER**

UPON reading and filing the Summons and Complaint herein, the Affirmation of

Scott S. Balber in Support of Temporary Restraining Order and Preliminary Injunction, dated

December 21, 2007, and the exhibits thereto, the Affirmation of Exigent Circumstances of Scott

S. Balber, dated December 21, 2007, the Affidavit of Tanya Scott-Tomlin sworn to on

December 19, 2007, and the accompanying Memorandum of Law, and sufficient cause

appearing therefore,

NOW, upon the application of Chadbourne & Parke LLP, attorneys for plaintiffs, it

is hereby

ORDERED that defendants, Dr. Marco Stoffel ("Stoffel"), Albe Associates Limited

("Albe"), Bluecolt Securities Corporation ("Bluecolt"), Lauramca Holdings, L.L.C.

("Lauramca"), and John Does 1-10 (together, "Defendants"), or their attorneys show cause

before this Court at Part 2, Room 205 of the Courthouse located at 60 Centre Street, New

York, County of New York, on Jan 11 at 10:00 a.m., or as soon thereafter as counsel can

be heard, why an Order should not be issued pursuant to New York Civil Practice Law and

Rules §§ 6301, 6311 and 6313:

(1)    preliminarily enjoining and restraining the Defendants, their agents, servants,

employees, and all other persons acting on their behalf, during the pendency

of this action and until final judgment herein, from taking any action, directly

or indirectly, to remove, transfer, sell, pledge, assign, destroy or otherwise

dispose of certain assets as specifically identified in Schedule A attached

hereto (the "Enumerated Assets"); and

(2)    granting such other relief as this Court may deem just and proper.

IT BEING ALLEGED in the aforesaid papers that temporary relief is necessary to

prevent irreparable harm to plaintiffs pending the hearing and determination of the within

2

application for a preliminary injunction and plaintiffs alleging that they are entitled to a

preliminary injunction under CPLR § 6301 et seq. to enjoin defendants as stated above; and it is

further hereby

ORDERED, pursuant to CPLR §§ 6301 and 6313, that pending the hearing and

determination of this Order to Show Cause, the defendants, their agents, servants, employees,

and all other persons acting on their behalf, are hereby temporarily enjoined and restrained from

taking any action, directly or indirectly, to remove, transfer, sell, pledge, assign, destroy or

otherwise dispose of the aforesaid Enumerated Assets; and it is further hereby

ORDERED, that personal service of the Summons and Complaint, and of a copy of

this Order to Show Cause with Temporary Restraining Order and the papers upon which it is

based, upon Defendants Dr. Marco Stoffel, Albe Associates Limited, Bluecolt Securities

Corporation, and Lauramca Holdings, L.L.C., on or before 5:30 p.m. on December 2 4, 2007,

shall be deemed good and sufficient service and notice of this application; and it is further

hereby

ORDERED, that papers in opposition to this application, if any, be served by hand

upon plaintiffs' counsel no later than 5:30 p.m. on December ~~27~~ Jan 2, 2008 2007, and that reply papers

be served no later than ~~December~~ Jan 4, 2007.

Dated: New York, New York
        December 2 , 2007

                                        E N T E R :

[ ........................................ ]
[ ...PANT(S) ON LESS THAN ]
[ _ DAY(S) BEFORE THE RETURN DATE. ]

                            Eby

                        **LOUIS B. YORK**
                                    **J.S.C.**

3

## Schedule A

1.    Art and antiquities purchased by Stoffel:

    (a)    Artwork entitled "Rosignano 98 Sea 3 Piccola, 1998," purchased on or about March 17, 2001 for US$ 8,100.

    (b)    Three pieces of artwork entitled "Buochs, 1956," "Stansstad 1959," and "Hergiswil 1971," purchased on or about March 27, 2001 for US$ 3,650.

    (c)    Artwork entitled "Architecture: Reflections on Claustrophobia, Paranoia and Conspiracy Theory, #4, 2001," purchased on or about June 26, 2001 for US$ 15,000.

    (d)    Artwork entitled "L.P., IV, 2000," purchased on or about June 26, 2001 for US$ 26,000.

    (e)    Artwork entitled "Marble Floor, 1999," purchased on or about June 26, 2001 for US$ 8,800.

    (f)    Artwork entitled "Fusion, 2001," purchased on or about June 26, 2001 for CHF 11,000.

    (g)    Artwork entitled "Chairs (Red)," purchased on or about June 28, 2001 for US$ 36,000.

    (h)    Artwork entitled "Schnorkel Drawing, 2000," purchased on or about July 13, 2001 for GBP 4,500.

    (i)    Artwork entitled "A Treasury of Human Inheritance, Levy's Case, 2001," purchased on or about July 13, 2001 for GBP 4,500.

(j)     Artwork entitled "Salmon Pink with Frilly Aubergine Vase, 2000,"
        purchased on or about July 20, 2001 for GBP 4,500.

(k)     Artwork entitled "1 Kopf eines Junglings, Marmor, romisch, 2,"
        purchased on or about March 5, 2003 for EUR 4,000.

(l)     Artwork entitled "Weibliche Statuette," purchased on or about March 6,
        2003 for EUR 6,040.89.

(m)     Artwork entitled "1 terracotta figure of a dancer, late-Minoaen, 14th cent.
        BC," purchased on or about March 14, 2003 for EUR 6,000.

(n)     Artwork (title unknown) purchased for GBP 10,000 on or about May 10,
        2003 from the Miro gallery.

(o)     Artwork (title unknown) purchased for EUR 22,000 on or about December
        29, 2003 from the Roswitha Eberwein gallery.

(p)     Artwork (title unknown) purchased for US$ 60,000 on or about January
        28, 2004 from the Safani Gallery.

(q)     Artwork (title unknown) purchased for US$ 42,800 on or about January
        31, 2004 from M. Eisenberg Inc.

(r)     Artwork entitled "Domain XXXIII, 2003," purchased on or about March
        22, 2004 for EUR 110,000.

(s)     Artwork entitled "Sled, 2004," purchased on or about April 17, 2004 for
        US$ 64,000.

(t)     Artwork entitled "Ich halte alle Indien in meiner Hand, 2004," purchased on or about April 17, 2004 for EUR 250,000.

(u)     Artwork entitled "Group of twenty-eight figures, Ming Dynasty, 16th century," purchased on or about June 30, 2004 for US$ 64,500.

(v)     Artwork (title unknown) purchased for US$ 28,000 on or about September 21, 2004 from the Safani Gallery.

(w)     Artwork (title unknown) purchased for US$ 45,106.53 on or about November 30, 2004 from the Sean Kelly Gallery.

(x)     Artwork entitled "Stonehenge," purchased on or about May 28, 2005 for US$ 26,964.

(y)     Artwork (title unknown) purchased for US$ 7,100 on or about October 21, 2006 from Red Gate (Int'l) Ltd, Hong Kong.

(z)     Artwork entitled "Talisman, 2006-2007," purchased on or about October 21, 2006 for US$ 60,000.

(aa)    Artwork entitled "Work No. 1 of 2004," purchased on or about October 31, 2006 for US$ 47,500.

(bb)    Artwork entitled "Mongolians, 2006," purchased on or about November 9, 2006 for EUR 23,750.

(cc)    Artwork entitled "Man with White Shirt and Black Trousers, Relief 4 Circles, 2006," purchased on or about November 19, 2006 for EUR 88,000;

(dd)    Artwork entitled "Egyptian Old Kingdom," purchased on or about January 30, 2004 for US$ 37,500;

(ee)    Artwork entitled "Etruscan terracotta head of Herakles," purchased on or about January 30, 2004 for US$ 12,500;

(ff)    Artwork entitled "Attic white-ground lekythos," purchased on or about May 27, 2004 for US$ 6,420.

2.  The following automobiles purchased by Stoffel:

(a)    Aston Martin 1965 Coupé, Serial No. DB5/1835/R purchased on or about May 14, 2001 for US$ 64,859.37.

(b)    AC Bristol, 1958, Serial # BEX 487 purchased on or about August 22, 2001 for US$ 78,073.

(c)    Rolls Royce 1922 Silver Ghost Chassis No. 11BG purchased on or about July 15, 2002 for GBP 67,500.

(d)    Rolls Royce Silver Ghost 1912 Chassis 1905E purchased on or about December 12, 2003 for GBP 182,500.

(e)    Bentley 1924 Chassis No. 615 purchased on or about February 18, 2004 for GBP 155,000.

(f)    BMW 530 xi purchased on or about December 20, 2006 for CHF 86,800.

(g)    BMW X5, 2004 purchased on or about May 31, 2004 for US$ 83,642.50.

(h)    Bentley 1949 Mark 6 purchased on or around May 15, 2002 for USD $15,000;

3.  An apartment at 47 Park Street, London, England, purchased by Albe;

4.  Lloyds TSB bank accounts held in the name of Albe with account numbers 11358707, 86065558, and 1936979 and Bank Leu bank accounts held in the name of Albe with account numbers 619606-82, 619696-82-1, and 619606-85;

5.  VP bank accounts held in the name of Bluecolt with account numbers 346.377.010, 346.377.013, 346.377.016, and 346.377.900;

6.  Furniture purchased for a townhouse located at 340 W. 12th Street, New York, New York;

7.  First Republic Bank account held in the name of Lauramca with account number 97100063381;

8.  First Republic Bank accounts held in the name of Stoffel with account numbers 97100063373, 97900044482;

9.  UBS AG Bank accounts held in the name of Stoffel, including account number 230-253441.01F;

10. Real property located at 340 W. 12th Street, New York, New York.

1

```
 1   SUPREME COURT OF THE STATE OF NEW YORK
     COUNTY OF NEW YORK : TRIAL TERM PART 56
 2   ---------------------------------------------X
     VISTRA TRUST COMPANY (JERSEY) LIMITED AS
 3   TRUSTEE OF THE ALSAM, COLLEEN AND LOGANY
     SETTLEMENTS; COLLEEN INVESTMENT AG; ALSAM
 4   HOLDING AG; PENNY ASSET AG; LOGANY EQUITY AG;
     VIERWALDSTATTER BETEILIGUNGEN AG; CLARICK
 5   AG; COLLEEN INVESTMENT, L.L.C.; LOGANY, L.L.C.
     and WILLIAM B. TACON, RECEIVER AND
 6   MANAGER OF THE ASSETS OF MAYTOWN UNIVERSAL
     SA AND PLYMPTON UNIVERSAL SA,
 7
                         Plaintiffs
 8
             -against-                        Index No.
 9                                            116985/07
     DR. MARCO STOFFEL; ALBE ASSOCIATES
10   LIMITED; BLUECOLT SECURITIES
     CORPORATION; LAURAMCA HOLDINGS, L.L.C.
11   and JOHN DOES 1-10

12                    Defendants
     ---------------------------------------------X
13                    60 Centre Street
                      New York, New York, 10007
14                    January 11, 2008

15   B E F O R E:      HON. RICHARD B. LOWE, III, Justice.

16
     A P P E A R A N C E S:
17

18       CHADBOURNE & PARKE, LLP
                 Attorneys for Plaintiffs
19               30 Rockefeller Plaza
                 New York, New York
20       BY:     SCOTT BALBER, ESQ., and
                 JONATHAN CROSS, ESQ.
21

22       MORRISON & FOERSTER, LLP
                 Attorneys for Defendants Stoffel and
23               Lauramca Holdings
                 1290 Avenue of the Americas
24               New York, New York
         BY:     THOMAS M. MUELLER, ESQ.
25
                             VAN SEDACCA, RPR-CM
26                           OFFICIAL COURT REPORTER
```

2

```
 1                    Proceedings
 2          THE CLERK:  Step up on Vistra.
 3          MR. BALBER:  Good morning, your Honor.
 4          THE COURT:  Good morning.
 5          MR. BALBER:  Your Honor, I'm Scott
 6     Balber from Chadbourne & Parke on behalf of the
 7     plaintiffs.
 8          MR. MUELLER:  And I'm Thomas Mueller
 9     from Morrison Foerster on behalf of the defendant
10     Stoffel and Lauramca Holdings, LLC.
11          MR. BALBER:  We're here today on
12     plaintiff's application for preliminary
13     injunction.  Plaintiffs are a Jersey Island
14     trustee who is a trustee of three Jersey Island
15     trusts, six Swiss companies, two U.S. LLC's and a
16     receiver of 2 BVI companies appointed by the
17     Court in the British Virgin Islands.
18          We seek restraint over approximately
19     30 pieces of art and antiquities, eight antique
20     cars, Rolls Royces, Bentleys, Aston Martins and
21     the like, a New York townhouse and its contents,
22     a London apartment and a handful of bank accounts
23     both here and elsewhere.
24          All we're asking for, your Honor, is
25     that the defendant Stoffel not be permitted to
26     transfer, encumber or assign these assets.  These
```

3

```
1                         Proceedings
2       are assets that he's held for years.  He can
3       continue to live in his multi-million dollar
4       townhouse.  He can sit on his sofa, put his feet
5       up on the coffee table, look at the millions of
6       dollars of art hanging on the walls, take his
7       Rolls Royce and Bentleys for a spin.  We just
8       want an injunction preventing him from selling,
9       transferring or encumbering them.
10               THE COURT:  Do they belong to him?
11               MR. BALBER:  Well, we don't believe they
12      do.  In fact, we have ample evidence that every
13      single item we're seeking an injunction over has
14      been purchased with our money in a breach of
15      trust and through an elaborate fraudulent scheme
16      I'm about to lay out for your Honor.
17               Your Honor, Dr. Stoffel, the primary
18      defendant, held positions as a fiduciary within
19      the trust structure as a protector of the Jersey
20      Island Trust and as a fiduciary and manager in
21      Swiss companies and the U.S. LLC's.
22               We have put before your Honor voluminous
23      evidence that Dr. Stoffel used what can only be
24      described as an elaborate money laundering scheme
25      to misappropriate about $30 million of assets
26      from the trust structure.
```

4

| | |
|---|---|
| 1 | Proceedings |
| 2 | THE COURT:  When I was reading the |
| 3 | papers, the first question that came to my mind |
| 4 | was:  Was there any complaint made to the |
| 5 | criminal authorities? |
| 6 | MR. BALBER:  Well -- |
| 7 | THE COURT:  What you describe is blatant |
| 8 | theft. |
| 9 | MR. BALBER:  The answer is yes, your |
| 10 | Honor. |
| 11 | THE COURT:  And? |
| 12 | MR. BALBER:  I don't know what the |
| 13 | criminal authorities are doing.  Understand, |
| 14 | Judge, it's literally only been in the last 30 to |
| 15 | 40 days that we have obtained from Orconsult the |
| 16 | actual documents that show the fraud.  And let me |
| 17 | tell you the kind of chronology of how we've |
| 18 | learned this.  I think it will help answer your |
| 19 | Honor's question. |
| 20 | We were aware for several months, |
| 21 | probably four to five months, of these fictitious |
| 22 | invoices sent to -- under Scottish partnership |
| 23 | names, sent to these Albe and Bluecolt entities, |
| 24 | one is a Panamanian company and a BVI company, |
| 25 | which we understood without documentary evidence, |
| 26 | ended up in Dr. Stoffel's pocket. |

5

```
 1                    Proceedings
 2          When I deposed Dr. Stoffel in early
 3     August in connection with an application by the
 4     BVI receive to take discovery in the United
 5     States, I showed him the stack of 190 fictitious
 6     invoices.  I asked Dr. Stoffel what are these?
 7     He used the words -- he said, ""They are fake,
 8     fake invoices."  I asked him, "Dr. Stoffel, were
 9     any services rendered for this work?"  "No."
10          At that moment, all I had was the
11     invoices.  In the aftermath of that deposition,
12     Orconsult, which is a Swiss entity that was
13     facilitating claims unbeknownst to it,
14     Dr. Stoffel's fraud, they produced to us
15     voluminous documents which now show not only that
16     Dr. Stoffel was aware of these fake invoices, not
17     only that he knew about them, but that he sent
18     them with fax cover sheets signed by him with his
19     office fax line on top to Orconsult directing
20     Orconsult to pay third parties on his behalf.  We
21     attached 82 of those fictitious invoices, each
22     with a fax cover sheet signed by Dr. Stoffel with
23     his fax line on top as Exhibit 27 to our opening
24     brief, judge.
25          Now, when I deposed Dr. Stoffel the
26     second time, I asked him again blindly about
```

6

```
1                    Proceedings
2    these fictitious invoices.  Never saw them.  No
3    services were rendered.  A fraud.
4            Then I pulled out the same invoices
5    which were attached to fax cover sheets signed by
6    him with his fax line on it.  You know what he
7    said, Judge?  "Well, it's my signature, it's my
8    fax line, but I'm not sure these pages that have
9    the same fax line on top were actually sent by
10   me."  That was his answer.
11           Now, in opposition to our preliminary
12   injunction application he tells a different
13   story.  He now claims that the art, the cars, the
14   antiquities, the real estate, was purchased with
15   his family fortune.  Now, if I had a family
16   fortune, Judge, I suspect I would be able to
17   produce an account statement anywhere showing a
18   dollar of it.  No such account statements are
19   produced.
20           He claims the money's been held by
21   Orconsult.  Orconsult does not corroborate any of
22   it.  In fact, what Orconsult says, and we attach
23   the letters in our application, your Honor, this
24   was a fraud perpetrated by Stoffel, a fraud.
25   That's their words.
26           And in that regard, Judge, I direct your
```

7

```
 1              Proceedings
 2   Honor to the Withers letters which are, I
 3   believe, Exhibit 1 and 2 of my second
 4   affirmation.  They say the money was procured by
 5   fraud.  No reference to some mysterious family
 6   fortune.
 7        Now, we have in Exhibit 27 -- it's
 8   actually letters one, two, three and 14, exhibits
 9   to my second affirmation.  The 82 invoices,
10   Scottish partnership invoices, that we attach
11   that all showed the transfer of monies to
12   Dr. Stoffel is only part of the story.  We have
13   in our papers -- I'm happy to go through every
14   single asset and show you every single document,
15   but it all appears essentially as Exhibits 27 to
16   91 of our opening application -- our money going
17   into either the Scottish partnerships, these Albe
18   and Bluecolt entities or otherwise into assets
19   purchased by Dr. Stoffel.  That's our case.
20   That's our case in the merits, Judge.
21        In terms of -- and, yes, your Honor, my
22   understanding the criminal authorities have been
23   contacted and yes, your Honor, my understanding
24   is that they are looking into it.  Beyond that, I
25   don't have any insights into where this is going
26   from their perspective.
```

8

```
 1              Proceedings
 2          As to irreparable harm, I think it's
 3     obvious, your Honor, but these assets are being
 4     held here and we have a direct claim, a direct
 5     tracing of our money into those assets.  Under
 6     New York law, we have a claim for specific
 7     performance and we believe at the end of the day
 8     we're going to recover those assets.
 9          Now, my concerns about those assets
10     going missing are not just speculative.  I think
11     you need to understand what Dr. Stoffel has done
12     in the year since he was caught with his hand in
13     the till.  He was discharged from all positions
14     of authority, I believe December 6, 2006.  That's
15     when everyone woke up and understood what was
16     going on here, although we hadn't been able to
17     put together the pieces.
18          After he is discharged from all
19     positions of authority, what does he do?  He
20     transfers more than $2 million in trust assets to
21     his Swiss lawyer, friend and Swiss lawyer, and to
22     other accounts in the United States.  This is
23     after he's fired, after he acknowledges he has no
24     position of authority, millions of dollars out
25     the door.
26          We then bring an action in Delaware, a
```

9

```
 1              Proceedings
 2    books and records action, because the two LLCs
 3    are Delaware entities, to get back our books and
 4    records.  He has been -- Stoffel has been the guy
 5    maintaining the books and records for the LLCs
 6    for years.  Vice-chancellor Strine in Delaware
 7    directs him to maintain the status quo, hold the
 8    books and records until we work out a methodology
 9    and give everyone access.
10              What does Dr. Stoffel do?  He sends
11    26 boxes of our books and records to Switzerland.
12    That subject is now the crux of a sanctions
13    motion which Vice Chancellor Strine is
14    entertaining.  When we were before Vice
15    Chancellor Strine a month ago, he described
16    Dr. Stoffel as an effective card dealer with
17    documents.  He analogized him to Saddam Hussein
18    moving his weapons of mass destruction from silo
19    to silo in order to avoid detection.
20              Even after the TRO was entered on
21    December 21st, your Honor, Dr. Stoffel -- and we
22    have it attached to our second affirmation -- has
23    been asking his ex-wife who is in physical
24    possession of some of the art and antiquities to
25    sell it and give him the money.  That's my
26    Exhibit 13 to my second affirmation.
```

10

<pre>
 1              Proceedings
 2         Now, if there's any doubt at all, Judge,
 3    that every single asset that I am seeking a
 4    preliminary injunction over came from the trust
 5    structure, you don't need to look any further,
 6    your Honor, than Dr. Stoffel's own words when he
 7    was served with our TRO on December 21, 2007.  I
 8    want to read to you from Exhibit 12 to my second
 9    affirmation.  This is the day he's served, Judge.
10    And I'm just going -- you can read the whole
11    thing yourself, but I want to highlight one
12    thing.  He's writing to his children, copying his
13    ex-wife.  This is on page two of Exhibit 12 to
14    the second affirmation, second sentence of that
15    paragraph.
16         "All art and all my bank accounts and
17    the townhouse are seized.  Obviously your mother
18    made a deal with the other side as they did not
19    seize the Scarsdale house which was funded from
20    my income from the Blickle Trust just like
21    everything else."
22         I can't think of any clearer indicia of
23    Dr. Stoffel acknowledging that the money that is
24    in these assets that we're seeking to restrain
25    came from us.
26         Now, he does claim that he was paid
</pre>

11

```
 1                        Proceedings
 2        $6.9 million legitimate money from the trust
 3        structure over an eight- or nine-year period.
 4        Now, he basis that upon a contract drafted by him
 5        and signed by him which, obviously, we don't give
 6        any credence to, and he claims that under that
 7        contract he was entitled to make $800,000 a year.
 8        Well, in other documents he submitted, like, for
 9        example, the interrogatories in his divorce
10        settlement indicate he was entitled to $200,000 a
11        year.  But let's take him at his word for ten
12        seconds, Judge, and let's believe that he really
13        was entitled to receive $6.9 million from the
14        trust structure despite the fact the trustee
15        didn't authorize it, the beneficiaries didn't
16        authorize it, no one who had authority authorized
17        it, take him at his word, $6.9 million.  He
18        claims he paid taxes on it.  Also I have some
19        skepticism about that as well, your Honor.  Let's
20        take him on his word on that, too.
21             That leaves him with roughly four and a
22        half million dollars of net income over an
23        eight-year period.  With that he purchased a two
24        and a half million dollar house in Scarsdale, a
25        million dollar apartment in the MOMA museum
26        complex, a four to $5 million townhouse, millions
```

12

```
 1              Proceedings
 2    of dollars in Bentleys, Rolls Royces, Aston
 3    Martins, 30 pieces of art and antiquities.  I
 4    assume he had to eat, pay private school tuition,
 5    buy clothes, have dry cleaning done.  It's just
 6    not an explanation for the kind of life-style
 7    this gentleman has led over the past eight or
 8    nine years with our money.
 9              Let me move for a second, if I can, to
10    the balance of the equities and then I want to
11    make sure I give your Honor a chance to ask me
12    questions.
13              I think the balance of the equities is
14    self-evident.  Putting aside the mountain of
15    evidence that we have linking him to this absurd
16    fraud, despite the fact that none of these monies
17    were taken with the imprimatur of the trustee or
18    the trust, there is no harm whatsoever that
19    Dr. Stoffel is going to suffer if he is just
20    required to do exactly what he's been doing for
21    the last several years, which is, again, living
22    in his townhouse, using the furniture, looking at
23    the art, until we get adjudication on the merits.
24              By contrast, as I indicated a moment
25    ago, the irreparable harm in letting him move
26    things to Switzerland, and, again, we have
```

13

```
 1                    Proceedings
 2    e-mails before he brought the preliminary
 3    injunction application in which he asked his wife
 4    to send the art and antiquities to Switzerland
 5    where it will be out of this Court's
 6    jusisdiction.  The harm to us is obvious and
 7    irreparable.
 8              The last thing before I stop, your
 9    Honor, is the issue of the bond.  Dr. Stoffel
10    claims that the plaintiff should be required to
11    post a bond equaling the amount of the assets.
12    That's just not what New York law requires.  As
13    your Honor knows, New York law requires the bond
14    to approximate the potential injury that the
15    defendant will suffer during the pendency of the
16    injunction and, again, your Honor, I'm hard
17    pressed to understand what injury Dr. Stoffel is
18    going to suffer by simply living the same life
19    he's lived over the last eight years.
20              One last factor in the bond is even
21    after Dr. Stoffel's removal in December of '06
22    and even after he's admitted, and we have the
23    correspondence in our papers, he's admitted he
24    was removed, he continues to be an
25    obstructionist, preventing the plaintiffs from
26    having access to their assets.  There are liquid
```

14

```
 1                      Proceedings

 2        monies and real estate partnerships and other

 3        funds that he and his lawyers have prevented

 4        Vistra and the other plaintiffs from having

 5        access to with some veiled allusion to a claim to

 6        entitlement to the money.

 7              So, we also would ask that when your

 8        Honor considers the bond, you take into account

 9        Dr. Stoffel's own efforts to prevent us from

10        having access to our money and it will be a

11        burden to require us to post anything more than a

12        de minimus bond.

13              Thank you, your Honor.

14              MR. MUELLER:  The plaintiffs throw up a

15        lot of dirt hoping some of it will stick

16        sufficient to justify their preliminary

17        injunction request.

18              First of all, with regard to the basic

19        allegation of fraud here, these invoices.

20        Dr. Stoffel said at his first deposition back in

21        August what those invoices were and what his

22        understanding was of the purpose of those

23        invoices, and that is it was a means of funding

24        Mrs. Blickle's charitable donation because of the

25        way it was structured that was -- that this means

26        of funding, it was devised by Orconsult and run
```

15

1                        Proceedings

2     through various entities by Orconsult.

3            Now, when we take a look at the bank

4     account, Mr. Balber has said, well, we can trace

5     the purchase of Dr. Stoffel's art and cars to the

6     funds that were taken out of Maytown and

7     Plympton.  I don't think that's right, because if

8     you take a look at the record that's been

9     submitted, there are invoices paid on behalf of

10    Dr. Stoffel back in 2000 and 2001.  So Orconsult

11    paid money for Dr. Stoffel's art purchases and

12    car purchases back in 2000 and 2001.

13           The first invoice that is in the record

14    at Balber Exhibit 27 is dated October 2001 and

15    was not paid until November 28, 2001.  So

16    Orconsult paid that money out of Albe.  It didn't

17    do so with money that came from those fake

18    invoices.  That money came from someplace else.

19    Do we know where that money came from?  No, the

20    record doesn't show that.  But what it clearly

21    does show it did not come Maytown and Plympton.

22           Similarly, if you take a look at the

23    back end, if you take a look at --

24           THE COURT:  Let me just ask you.  Can

25    your client establish the means by which he has

26    been able to purchase all of these assets?

16

```
1                    Proceedings
2          MR. MUELLER:  It is difficult, but he is
3    working on trying to do that.
4          THE COURT:  By what justification did
5    your client continue to act after he was
6    discharged?
7          MR. MUELLER:  Your Honor, there is a
8    dispute pending in Switzerland as to whether or
9    not the discharge was properly authorized.
10   There's a dispute in Switzerland right now,
11   several lawsuits pending.
12         THE COURT:  Why is the dispute in
13   Switzerland?
14         MR. MUELLER:  Because the ultimate
15   companies are Swiss companies.
16         THE COURT:  When the trust was
17   established, where was it established?
18         MR. MUELLER:  The original trust was
19   established by a Swiss citizen in the Island of
20   Jersey.  It was then transferred to two trusts
21   that were based in Bermuda.
22         THE COURT:  And do you dispute that the
23   Chancellor of the Court in Delaware directed that
24   the books and records be maintained status quo?
25         MR. MUELLER:  Your Honor, I don't
26   dispute that the books and records be maintained.
```

17

1               Proceedings

2          THE COURT:  Do you dispute that after

3     that directive, your client transported books and

4     records to Switzerland?

5          MR. MUELLER:  Your Honor, my client has

6     said that he gave that directive before the

7     proceeding in Delaware was commenced.  He ordered

8     his secretary to send those documents to

9     Switzerland because his understanding was he had

10    an obligation to return them back to the

11    corporate seat in Switzerland.  They apparently

12    were not shipped until after the proceeding was

13    commenced.

14         THE COURT:  How could they be

15    transferred after the directive of the

16    Chancellory Court?

17         MR. MUELLER:  I don't know.  I was not

18    Dr. Stoffel's counsel at the time.  All I can

19    tell you is what I've been told is he gave the

20    directive and he's testified to that, he gave the

21    directive to his secretary before he left for

22    Switzerland.

23         THE COURT:  Tell me, then, what the harm

24    is to your client to simply maintain the status

25    quo until this litigation is concluded?

26         MR. MUELLER:  The harm is, basically,

18

                              Proceedings

1

2         that he is facing -- he's been through a nasty

3         divorce, so he's lost a bunch of assets as a

4         result of that.  He has three children who are

5         going to college.  He has to pay for their

6         college tuition.  He's got to make his mortgage

7         payments on the townhouse and he has to pay for

8         the defense of all of these cases that are

9         pending all over the place.  And that's a

10        tremendous drain on his resources.

11              Now, does he have immediate plans to

12        sell the townhouse?  No, he doesn't.  Does he

13        have plans to sell the art?  No, he doesn't.

14              Mr. Balber refers to the e-mail with his

15        ex-wife.  That is a dispute between him and his

16        ex-wife about whether or not she still owes him

17        as a result of the divorce certain money that

18        was --

19              THE COURT:  Well, then it strikes me

20        that you're establishing one of the elements of

21        the plaintiff's obligation, that is irreparable

22        harm.  You're asking for the opportunity to sell

23        off assets which then, if it is ultimately

24        determined that your client, in fact, paid for

25        these assets through monies truly belonging to

26        the trust, there's no way for them to collect on

19

1                          Proceedings

2       a judgment.

3                 MR. MUELLER:  But I think that's the

4       case in every type of -- in this kind of

5       injunctive relief.  If people are requesting the

6       freezing of assets --

7                 THE COURT:  No, no.  Look, the Court has

8       to consider the three elements for a preliminary

9       injunction:  The probability of success on the

10      merits, balancing of the equities and irreparable

11      harm.

12                You're saying because that's the gamble

13      in every circumstance, I should not consider the

14      irreparable harm that would inure to the

15      plaintiff if, in fact, it is established at the

16      end of the day that your client stole this money.

17      It's fractured logic.

18                MR. MUELLER:  I'm not saying you can't

19      consider it.  Clearly, that is one of the

20      elements that you should consider.

21                THE COURT:  Let me show you some other

22      things that are presented to the Court.  It is

23      already evident that your client violated a

24      directive of the Chancellory Court with an

25      explanation that is just, to be kind,

26      unpersuasive.  He prepared to ship these

20

```
 1                    Proceedings
 2    documents to Switzerland.  Then in the interim,
 3    there was a directive of the Chancellory Court,
 4    but because the preparation of the transfer of
 5    these documents to Switzerland had been made
 6    prior to the directive of the Chancellory Court,
 7    somehow the subsequent shipment of these
 8    documents after the directive of the Chancellory
 9    Court was inadvertent?
10         MR. MUELLER:  Two points on that, your
11    Honor.
12         First of all, the directive of the
13    Chancellory Court was the preservation of the
14    documents.  There was no directive to keep the
15    documents in any particular place.  And there's
16    nothing that prevents a party, whether they are
17    under a subpoena or under a document preservation
18    obligation, to move the documents from place A to
19    place B provided that the movement of the
20    documents does not alter the ability to access or
21    the ability to preserve.
22         In this case, it didn't.  And the notion
23    that plaintiffs have by shipping it to
24    Switzerland he somehow created --
25         THE COURT:  I don't want to, sort of,
26    step into the shoes of the Chancellor in the
```

```
 1                    Proceedings
 2     Chancellory Court, but if you presented that
 3     argument to me, meaning if I had issued that
 4     directive and you came to me with an argument
 5     having shipped the documents to Switzerland that,
 6     Judge, there's no harm there because I'm
 7     maintaining the status quo, I just shipped the
 8     documents where they can't get to them.
 9               MR. MUELLER:  They were given access to
10     them.  They were offered copies of those
11     documents.
12               THE COURT:  And, in addition, what is
13     your position with regard to the letter that was
14     written to the family, in effect, acknowledging
15     that the source of his funds came from the trust?
16               MR. MUELLER:  Your Honor, I have no
17     explanation for Dr. Stoffel's statement.
18               THE COURT:  Unfortunately for you, you
19     don't seem to have adequate explanations for a
20     lot of things that your client did.  Let me say
21     that it is clear to me that the request that is
22     being sought is minimally invasive on your client
23     and it will protect the remaining assets of the
24     trust.  So I will grant this injunction and I
25     will give you this opportunity, if you will:  If
26     there is a circumstance under which you feel,
```

22

```
 1                        Proceedings
 2       and/or your client feels, necessities the selling
 3       of an asset for whatever reason, I give you leave
 4       to petition the Court to approve the sale of
 5       those assets after first notifying the plaintiffs
 6       and the plaintiff has an opportunity to dispute
 7       it, et cetera.
 8              Now, I will, however, require the
 9       posting of a bond and it will not be equivalent
10       to the amount that you are seeking, but generally
11       in New York, we require something in the nature
12       of five percent of whatever it is that you're
13       seeking.  And, remember, counselor is right, that
14       the purpose of the bond is to protect the one
15       against whom the injunction is directed as to
16       losses as a result of the injunction.  It has
17       nothing to do with the amount that is sought by
18       the plaintiff or what is considered to be the
19       damages they are requesting.
20              Thank you, gentlemen.
21              MR. MUELLER:  Your Honor, one request?
22       There is about $80,000 in cash in various bank
23       accounts.  Is there a possibility to unfreeze
24       those so that he can make his mortgage payments
25       on one of the assets that's being enjoined here
26       with the townhouse?
```

23

```
 1                        Proceedings
 2              THE COURT:  Why don't the two of you sit
 3      down and discuss it and then come back to me.
 4      I'm not going to parse this.  At this juncture,
 5      these are allegations and the only reason I can
 6      make the determination at this stage is based on
 7      the proof submitted by plaintiff and the
 8      absolute -- if not absolute, the minimal
 9      explanations for conduct that seems to be
10      supported by evidence admitted by the plaintiff.
11              MR. BALBER:  Thank you, your Honor.
12              THE COURT:   By the way, do you know the
13      value of the enjoined property?
14              MR. BALBER:  Present value or purchase
15      value, your Honor?
16              THE COURT:  Present value.
17              MR. BALBER:  Present value is somewhere
18      in the neighborhood of 18 to $20 million.
19              THE COURT:  Thank you.
20                   C E R T I F I C A T E
21         I, Van Sedacca, an official court reporter of
22      the State of New York, do hereby state that the
23      foregoing is a true and accurate transcript of my
24      stenographic notes.
25
26
```

24

| $ | 3 | accounts [4] - 2:22, 8:22, 10:16, 22:23 | approximate [1] - 13:14 |
|---|---|---|---|

**$20** [1] - 23:18
**$200,000** [1] - 11:10
**$30** [1] - 3:25
**$80,000** [1] - 22:22
**$800,000** [1] - 11:7

**30** [4] - 1:19, 2:19, 4:14, 12:3

**accurate** [1] - 23:23
**acknowledges** [1] - 8:23
**acknowledging** [1] - 10:23, 21:14
**act** [1] - 16:5
**action** [2] - 8:26, 9:2
**actual** [1] - 4:16
**addition** [1] - 21:12
**adequate** [1] - 21:19
**adjudication** [1] - 12:23
**admitted** [3] - 13:22, 13:23, 23:10
**affirmation** [6] - 7:4, 7:9, 9:22, 9:26, 10:9, 10:14
**aftermath** [1] - 5:11
**AG** [6] - 1:3, 1:4, 1:4, 1:5
**ago** [2] - 9:15, 12:25
**ALBE** [1] - 1:9
**Albe** [3] - 4:23, 7:17, 15:16
**allegation** [1] - 14:19
**allegations** [1] - 23:5
**allusion** [1] - 14:5
**ALSAM** [2] - 1:3, 1:3
**alter** [1] - 20:20
**Americas** [1] - 1:23
**amount** [3] - 13:11, 22:10, 22:17
**ample** [1] - 3:12
**analogized** [1] - 9:17
**AND** [3] - 1:3, 1:5, 1:6
**answer** [3] - 4:9, 4:18, 6:10
**antique** [1] - 2:19
**antiquities** [6] - 2:19, 6:14, 9:24, 12:3, 13:4
**apartment** [2] - 2:22, 11:25
**application** [6] - 2:12, 5:3, 6:12, 6:23, 7:16, 13:3
**appointed** [1] - 2:16
**approve** [1] - 22:4

**argument** [2] - 21:3, 21:4
**art** [11] - 2:19, 3:6, 6:13, 9:24, 10:16, 12:3, 12:23, 13:4, 15:5, 15:11, 18:13
**AS** [1] - 1:2
**aside** [1] - 12:14
**asset** [3] - 7:14, 10:3, 22:3
**ASSET** [1] - 1:4
**assets** [20] - 2:26, 3:2, 3:25, 7:18, 8:3, 8:5, 8:8, 8:9, 8:20, 10:24, 13:11, 13:26, 15:26, 18:3, 18:23, 18:25, 19:6, 21:23, 22:5, 22:25
**ASSETS** [1] - 1:6
**assign** [1] - 2:26
**ASSOCIATES** [1] - 1:9
**assume** [1] - 12:4
**Aston** [2] - 2:20, 12:2
**attach** [2] - 6:22, 7:10
**attached** [3] - 5:21, 6:5, 9:22
**Attorneys** [2] - 1:18, 1:22
**August** [2] - 5:3, 14:21
**authorities** [3] - 4:5, 4:13, 7:22
**authority** [4] - 8:14, 8:19, 8:24, 11:16
**authorize** [2] - 11:15, 11:16
**authorized** [2] - 11:16, 16:9
**Avenue** [1] - 1:23
**avoid** [1] - 9:19
**aware** [2] - 4:20, 5:16

| | 4 | | |
|---|---|---|---|

**40** [1] - 4:15

| '06 [1] - 13:21 | 5 | | |
|---|---|---|---|

**5** [1] - 11:26
**56** [1] - 1:1

| 1 | 6 | | |
|---|---|---|---|

**1** [1] - 7:3
**1-10** [1] - 1:11
**10007** [1] - 1:13
**11** [1] - 1:14
**116985/07** [1] - 1:9
**12** [2] - 10:8, 10:13
**1290** [1] - 1:23
**13** [1] - 9:26
**14** [1] - 7:8
**18** [1] - 23:18
**190** [1] - 5:5

**6** [1] - 8:14
**6.9** [3] - 11:2, 11:13, 11:17
**60** [1] - 1:13

| 2 | 8 | | |
|---|---|---|---|

**82** [2] - 5:21, 7:9

**2** [3] - 2:16, 7:3, 8:20
**2000** [2] - 15:10, 15:12
**2001** [4] - 15:10, 15:12, 15:14, 15:15
**2006** [1] - 8:14
**2007** [1] - 10:7
**2008** [1] - 1:14
**21** [1] - 10:7
**21st** [1] - 9:21
**26** [1] - 9:11
**27** [4] - 5:23, 7:7, 7:15, 15:14
**28** [1] - 15:15

| | 9 | | |
|---|---|---|---|

**91** [1] - 7:16

| | A | | B |
|---|---|---|---|

**ability** [2] - 20:20, 20:21
**able** [3] - 6:16, 8:16, 15:26
**absolute** [2] - 23:8
**absurd** [1] - 12:15
**access** [6] - 9:9, 13:26, 14:5, 14:10, 20:20, 21:9
**account** [4] - 6:17, 6:18, 14:8, 15:4

**balance** [2] - 12:10, 12:13
**balancing** [1] - 19:10

**BALBER** [11] - 1:20, 2:3, 2:5, 2:11, 3:11, 4:6, 4:9, 4:12, 23:11, 23:14, 23:17
**Balber** [4] - 2:6, 15:4, 15:14, 18:14
**bank** [4] - 2:22, 10:16, 15:3, 22:22
**based** [2] - 16:21, 23:6
**basic** [1] - 14:18
**basis** [1] - 11:4
**behalf** [4] - 2:6, 2:9, 5:20, 15:9
**belong** [1] - 3:10
**belonging** [1] - 18:25
**beneficiaries** [1] - 11:15
**Bentleys** [3] - 2:20, 3:7, 12:2
**Bermuda** [1] - 16:21
**BETEILIGUNGEN** [1] - 1:4
**between** [1] - 18:15
**Beyond** [1] - 7:24
**blatant** [1] - 4:7
**Blickie** [1] - 10:20
**Blickie's** [1] - 14:24
**blindly** [1] - 5:26
**BLUECOLT** [1] - 1:10
**Bluecolt** [2] - 4:23, 7:18
**bond** [5] - 13:9, 13:11, 13:13, 13:20, 14:8, 14:12, 22:9, 22:14
**books** [9] - 9:2, 9:3, 9:5, 9:8, 9:11, 16:24, 16:26, 17:3
**boxes** [1] - 9:11
**breach** [1] - 3:14
**brief** [1] - 5:24
**bring** [1] - 8:26
**British** [1] - 2:17
**brought** [1] - 13:2
**bunch** [1] - 18:3
**burden** [1] - 14:11
**buy** [1] - 12:5
**BVI** [3] - 2:16, 4:24, 5:4
**BY** [2] - 1:20, 1:24

# C

**car** [1] - 15:12
**card** [1] - 9:16
**cars** [3] - 2:20, 6:13, 15:5
**case** [4] - 7:19, 7:20, 19:4, 20:22
**cases** [1] - 18:8
**cash** [1] - 22:22
**caught** [1] - 8:12
**Centre** [1] - 1:13
**certain** [1] - 18:17
**cetera** [1] - 22:7
**CHADBOURNE** [1] - 1:18
**Chadbourne** [1] - 2:6
**chance** [1] - 12:11
**chancellor** [1] - 9:6
**Chancellor** [4] - 9:13, 9:15, 16:23, 20:26
**Chancellory** [7] - 17:16, 19:24, 20:3, 20:6, 20:8, 20:13, 21:2
**charitable** [1] - 14:24
**children** [2] - 10:12, 18:4
**chronology** [1] - 4:17
**circumstance** [2] - 19:13, 21:26
**citizen** [1] - 16:19
**claim** [4] - 8:4, 8:6, 10:26, 14:5
**claims** [6] - 5:13, 6:13, 6:20, 11:6, 11:18, 13:10
**CLARICK** [1] - 1:4
**cleaning** [1] - 12:5
**clear** [1] - 21:21
**clearer** [1] - 10:22
**Clearly** [1] - 19:19
**clearly** [1] - 15:20
**CLERK** [1] - 2:2
**client** [1] - 15:25, 16:5, 17:3, 17:5, 17:24, 18:24, 19:16, 19:23, 21:20, 21:22,

22:2
**clothes** [1] - 12:5
**CM** [1] - 1:25
**coffee** [1] - 3:5
**collect** [1] - 18:26
**COLLEEN** [3] - 1:3, 1:3, 1:5
**college** [2] - 18:5, 18:6
**commenced** [2] - 17:7, 17:13
**companies** [5] - 2:15, 2:16, 3:21, 16:15
**company** [2] - 4:24
**COMPANY** [1] - 1:2
**complaint** [1] - 4:4
**complex** [1] - 11:26
**concerns** [1] - 8:9
**concluded** [1] - 17:25
**conduct** [1] - 23:9
**connection** [1] - 5:3
**consider** [4] - 19:8, 19:13, 19:19, 19:20
**considered** [1] - 22:18
**considers** [1] - 14:8
**contacted** [1] - 7:23
**contents** [1] - 2:21
**continue** [2] - 3:3, 16:5
**continues** [1] - 13:24
**contract** [2] - 11:4, 11:7
**contrast** [1] - 12:24
**copies** [1] - 21:10
**copying** [1] - 10:12
**corporate** [1] - 17:11
**CORPORATION** [1] - 1:10
**correspondence** [1] - 13:23
**corroborate** [1] - 6:21
**counsel** [1] - 17:18
**counselor** [1] - 22:13
**COUNTY** [1] - 1:1
**court** [1] - 23:21
**COURT** [25] - 1:1, 1:26, 2:4, 3:10, 4:2, 4:7, 4:11, 15:24, 16:4, 16:12, 16:16, 16:22,

17:2, 17:14, 17:23, 18:19, 19:7, 19:21, 20:25, 21:12, 21:18, 23:2, 23:12, 23:16, 23:19
**Court** [12] - 2:17, 16:23, 17:16, 19:7, 19:22, 19:24, 20:3, 20:6, 20:9, 20:13, 21:2, 22:4
**Court's** [1] - 13:5
**cover** [3] - 5:18, 5:22, 6:5
**created** [1] - 20:24
**credence** [1] - 11:6
**criminal** [3] - 4:5, 4:13, 7:22
**CROSS** [1] - 1:20
**crux** [1] - 9:12

# D

**damages** [1] - 22:19
**dated** [1] - 15:14
**days** [1] - 4:15
**de** [1] - 14:12
**deal** [1] - 10:18
**dealer** [1] - 9:16
**December** [4] - 8:14, 9:21, 10:7, 13:21
**defendant** [4] - 2:9, 2:25, 3:18, 13:15
**Defendants** [2] - 1:12, 1:22
**defense** [1] - 18:8
**Delaware** [3] - 8:26, 9:3, 9:6, 16:23, 17:7
**deposed** [2] - 5:2, 5:25
**deposition** [2] - 5:11, 14:20
**describe** [1] - 4:7
**described** [2] - 3:24, 9:15
**despite** [2] - 11:14, 12:16
**destruction** [1] - 9:18
**detection** [1] - 9:19
**determination** [1] -

23:6
determined [1] - 18:24
devised [1] - 14:26
different [1] - 6:12
difficult [1] - 16:2
direct [3] - 6:26, 8:4
directed [2] - 16:23, 22:15
directing [1] - 5:19
directive [12] - 17:3, 17:6, 17:15, 17:20, 17:21, 19:24, 20:3, 20:6, 20:8, 20:12, 20:14, 21:4
directs [1] - 9:7
dirt [1] - 14:15
discharge [1] - 16:9
discharged [2] - 8:13, 8:18, 16:6
discovery [1] - 5:4
discuss [1] - 23:3
dispute [8] - 16:8, 16:10, 16:12, 16:22, 16:26, 17:2, 18:15, 22:6
divorce [3] - 11:9, 18:3, 18:17
document [2] - 7:14, 20:17
documentary [1] - 4:25
documents [15] - 4:16, 5:15, 9:17, 11:8, 17:8, 20:2, 20:5, 20:8, 20:14, 20:15, 20:18, 20:20, 21:5, 21:8, 21:11
DOES [1] - 1:11
dollar [3] - 3:3, 6:18, 11:24, 11:25
dollars [4] - 3:6, 8:24, 11:22, 12:2
donation [1] - 14:24
done [2] - 8:11, 12:5
door [1] - 8:25
doubt [1] - 10:2
down [1] - 23:3
Dr [29] - 3:17, 3:23, 4:26, 5:2, 5:6, 5:8,

5:14, 5:16, 5:22, 5:25, 7:12, 7:19, 8:11, 9:10, 9:16, 9:21, 10:6, 10:23, 12:19, 13:9, 13:17, 13:21, 14:9, 14:20, 15:5, 15:10, 15:11, 17:18, 21:17
DR [1] - 1:9
drafted [1] - 11:4
drain [1] - 18:10
dry [1] - 12:5
during [1] - 13:15

E

e-mail [1] - 18:14
e-mails [1] - 13:2
early [1] - 5:2
eat [1] - 12:4
effect [1] - 21:14
effective [1] - 9:16
efforts [1] - 14:9
eight [5] - 2:19, 11:3, 11:23, 12:7, 13:19
eight-year [1] - 11:23
either [1] - 7:17
elaborate [2] - 3:15, 3:24
elements [3] - 18:20, 19:8, 19:20
elsewhere [1] - 2:23
encumber [1] - 2:26
encumbering [1] - 3:9
end [3] - 8:7, 15:23, 19:16
ended [1] - 4:26
enjoined [2] - 22:25, 23:13
entered [1] - 9:20
entertaining [1] - 9:14
entities [4] - 4:23, 7:18, 9:3, 15:2
entitled [1] - 11:7, 11:10, 11:13
entitlement [1] - 14:6
entity [1] - 5:12
equaling [1] - 13:11
equities [3] - 12:10,

12:13, 19:10
EQUITY [1] - 1:4
equivalent [1] - 22:9
ESQ [3] - 1:20, 1:20, 1:24
essentially [1] - 7:15
establish [1] - 15:25
established [4] - 16:17, 16:19, 19:15
establishing [1] - 18:20
estate [2] - 6:14, 14:2
et [1] - 22:7
evidence [5] - 3:12, 3:23, 4:25, 12:15, 23:10
evident [2] - 12:14, 19:23
ex [4] - 9:23, 10:13, 18:15, 18:16
ex-wife [4] - 9:23, 10:13, 18:15, 18:16
exactly [1] - 12:20
example [1] - 11:9
Exhibit [7] - 5:23, 7:3, 7:7, 9:26, 10:8, 10:13, 15:14
exhibits [1] - 7:8
Exhibits [1] - 7:15
explanation [3] - 12:6, 19:25, 21:17
explanations [2] - 21:19, 23:9

F

facilitating [1] - 5:13
facing [1] - 18:2
fact [6] - 3:12, 6:22, 11:14, 12:16, 18:24, 19:15
factor [1] - 13:20
fake [4] - 5:7, 5:8, 5:16, 15:17
family [4] - 6:15, 7:5, 21:14
fax [2] - 5:18, 5:19, 5:22, 5:23, 6:5, 6:6,

6:8, 6:9
feet [1] - 3:4
fictitious [4] - 4:21, 5:5, 5:21, 6:2
fiduciary [2] - 3:18, 3:20
fired [1] - 8:23
First [2] - 14:18, 20:12
first [4] - 4:3, 14:20, 15:13, 22:5
five [2] - 4:21, 22:12
FOERSTER [1] - 1:22
Foerster [1] - 2:9
foregoing [1] - 23:23
fortune [1] - 6:15, 6:16, 7:6
four [4] - 4:21, 11:21, 11:26
fractured [1] - 19:17
fraud [8] - 4:16, 5:14, 6:3, 6:24, 7:5, 12:16, 14:19
fraudulent [1] - 3:15
freezing [1] - 19:6
friend [1] - 8:21
funded [1] - 10:19
funding [2] - 14:23, 14:26
funds [3] - 14:3, 15:6, 21:15
furniture [1] - 12:22

G

gamble [1] - 19:12
generally [1] - 22:10
gentleman [1] - 12:7
gentlemen [1] - 22:20
given [1] - 21:9
grant [1] - 21:24
guy [1] - 9:4

H

half [2] - 11:22, 11:24
hand [1] - 8:12
handful [1] - 2:22

hanging [1] - 3:6
happy [1] - 7:13
hard [1] - 13:16
harm [10] - 8:2, 12:18, 12:25, 13:6, 17:23, 17:26, 18:22, 19:11, 19:14, 21:6
held [4] - 3:2, 3:18, 6:20, 8:4
help [1] - 4:18
hereby [1] - 23:22
highlight [1] - 10:11
hold [1] - 9:7
HOLDING [1] - 1:4
Holdings [2] - 1:23, 2:10
HOLDINGS [1] - 1:10
HON [1] - 1:15
Honor [29] - 2:3, 2:5, 2:24, 3:16, 3:17, 3:22, 4:10, 6:23, 7:2, 7:21, 7:23, 8:3, 9:21, 10:6, 11:19, 12:11, 13:9, 13:13, 13:16, 14:8, 14:13, 16:7, 16:25, 17:5, 20:11, 21:16, 22:21, 23:11, 23:15
Honor's [1] - 4:19
hoping [1] - 14:15
house [2] - 10:19, 11:24
Hussein [1] - 9:17

## I

III [1] - 1:15
immediate [1] - 18:11
imprimatur [1] - 12:17
inadvertent [1] - 20:9
income [2] - 10:20, 11:22
Index [1] - 1:8
indicate [1] - 11:10
indicated [1] - 12:24
indicia [1] - 10:22
injunction [12] - 2:13, 3:8, 3:13, 6:12, 10:4, 13:3, 13:16, 14:17,

19:9, 21:24, 22:15, 22:16
injunctive [1] - 19:5
injury [2] - 13:14, 13:17
insights [1] - 7:25
interim [1] - 20:2
interrogatories [1] - 11:9
inure [1] - 19:14
invasive [1] - 21:22
INVESTMENT [2] - 1:3, 1:5
invoice [1] - 15:13
invoices [15] - 4:22, 5:6, 5:8, 5:11, 5:16, 5:21, 6:2, 6:4, 7:9, 7:10, 14:19, 14:21, 14:23, 15:9, 15:18
irreparable [6] - 8:2, 12:25, 13:7, 18:21, 19:10, 19:14
Island [4] - 2:13, 2:14, 3:20, 16:19
Islands [1] - 2:17
issue [1] - 13:9
issued [1] - 21:3
item [1] - 3:13

## J

January [1] - 1:14
JERSEY [1] - 1:2
Jersey [4] - 2:13, 2:14, 3:19, 16:20
JOHN [1] - 1:11
JONATHAN [1] - 1:20
judge [1] - 5:24
Judge [3] - 4:14, 6:7, 6:16, 6:26, 7:20, 10:2, 10:9, 11:12, 21:6
judgment [1] - 19:2
juncture [1] - 23:4
jurisdiction [1] - 13:6
Justice [1] - 1:15
justification [1] - 16:4
justify [1] - 14:16

## K

keep [1] - 20:14
kind [4] - 4:17, 12:6, 19:4, 19:25
knows [1] - 13:13

## L

L.L.C [3] - 1:5, 1:10
last [5] - 4:14, 12:21, 13:8, 13:19, 13:20
laundering [1] - 3:24
LAURAMCA [1] - 1:10
Lauramca [2] - 1:23, 2:10
law [3] - 8:6, 13:12, 13:13
lawsuits [1] - 16:11
lawyer [1] - 8:21
lawyers [1] - 14:3
lay [1] - 3:16
learned [1] - 4:18
leave [1] - 22:3
leaves [1] - 11:21
led [1] - 12:7
left [1] - 17:21
legitimate [1] - 11:2
letter [1] - 21:13
letters [3] - 6:23, 7:2, 7:8
letting [1] - 12:25
life [2] - 12:6, 13:18
life-style [1] - 12:6
LIMITED [2] - 1:2, 1:10
line [5] - 5:19, 5:23, 6:6, 6:8, 6:9
linking [1] - 12:15
liquid [1] - 13:26
literally [1] - 4:14
litigation [1] - 17:25
live [1] - 3:3
lived [1] - 13:19
living [2] - 12:21, 13:18
LLC [1] - 2:10

LLC's [2] - 2:15, 3:21
LLCs [2] - 9:2, 9:5
LLP [2] - 1:18, 1:22
LOGANY [3] - 1:3, 1:4, 1:5
logic [1] - 19:17
London [1] - 2:22
Look [1] - 19:7
look [6] - 3:5, 10:5, 15:3, 15:8, 15:22, 15:23
looking [2] - 7:24, 12:22
losses [1] - 22:16
lost [1] - 18:3
LOWE [1] - 1:15

## M

mail [1] - 18:14
mails [1] - 13:2
maintain [2] - 9:7, 17:24
maintained [2] - 16:24, 16:26
maintaining [2] - 9:5, 21:7
MANAGER [1] - 1:6
manager [1] - 3:20
MARCO [1] - 1:9
Martins [2] - 2:20, 12:3
mass [1] - 9:18
MAYTOWN [1] - 1:6
Maytown [2] - 15:6, 15:21
meaning [1] - 21:3
means [3] - 14:23, 14:25, 15:25
merits [3] - 7:20, 12:23, 19:10
methodology [1] - 9:8
million [11] - 3:3, 3:25, 8:20, 11:2, 11:13, 11:17, 11:22, 11:24, 11:25, 11:26, 23:18
millions [3] - 3:5, 8:24, 11:26
mind [1] - 4:3

**minimal** [1] - 23:8
**minimally** [1] - 21:22
**minimus** [1] - 14:12
**misappropriate** [1] - 3:25
**missing** [1] - 8:10
**MOMA** [1] - 11:25
**moment** [2] - 5:10, 12:24
**money** [18] - 3:14, 3:24, 7:4, 7:16, 8:5, 9:25, 10:23, 11:2, 12:8, 14:6, 14:10, 15:11, 15:16, 15:17, 15:18, 15:19, 18:17, 19:16
**money's** [1] - 6:20
**monies** [4] - 7:11, 12:16, 14:2, 18:25
**month** [1] - 9:15
**months** [2] - 4:20, 4:21
**morning** [2] - 2:3, 2:4
**MORRISON** [1] - 1:22
**Morrison** [1] - 2:9
**mortgage** [2] - 18:6, 22:24
**mother** [1] - 10:17
**motion** [1] - 9:13
**mountain** [1] - 12:14
**move** [3] - 12:9, 12:25, 20:18
**movement** [1] - 20:19
**moving** [1] - 9:18
**MR** [28] - 2:3, 2:5, 2:8, 2:11, 3:11, 4:6, 4:9, 4:12, 14:14, 16:2, 16:7, 16:14, 16:18, 16:25, 17:5, 17:17, 17:26, 19:3, 19:18, 20:10, 21:9, 21:16, 22:21
**MUELLER** [17] - 1:24, 2:8, 14:14, 16:2, 16:7, 16:14, 16:18, 16:25, 17:5, 17:17, 17:26, 19:3, 19:18, 20:10, 21:9, 21:16, 22:21

**Mueller** [1] - 2:8
**multi** [1] - 3:3
**multi-million** [1] - 3:3
**museum** [1] - 11:25
**mysterious** [1] - 7:5

## N

**names** [1] - 4:23
**nasty** [1] - 18:2
**nature** [1] - 22:11
**necessities** [1] - 22:2
**need** [2] - 8:11, 10:5
**neighborhood** [1] - 23:18
**net** [1] - 11:22
**Never** [1] - 6:2
**NEW** [2] - 1:1, 1:1
**New** [12] - 1:13, 1:19, 1:24, 2:21, 8:6, 13:12, 13:13, 22:11, 23:22
**nine** [2] - 11:3, 12:8
**nine-year** [1] - 11:3
**none** [1] - 12:16
**notes** [1] - 23:24
**nothing** [2] - 20:16, 22:17
**notifying** [1] - 22:5
**notion** [1] - 20:22
**November** [1] - 15:15

## O

**obligation** [3] - 17:10, 18:21, 20:18
**obstructionist** [1] - 13:25
**obtained** [1] - 4:15
**obvious** [2] - 8:3, 13:6
**Obviously** [1] - 10:17
**obviously** [1] - 11:5
**October** [1] - 15:14
**OF** [6] - 1:1, 1:1, 1:3, 1:6
**offered** [1] - 21:10
**office** [1] - 5:19
**official** [1] - 23:21

**OFFICIAL** [1] - 1:26
**One** [1] - 13:20
**one** [8] - 4:24, 7:8, 10:11, 11:16, 18:20, 19:19, 22:14, 22:21, 22:25
**opening** [2] - 5:23, 7:16
**opportunity** [3] - 18:22, 21:25, 22:6
**opposition** [1] - 6:11
**Orconsult** [11] - 4:15, 5:12, 5:19, 5:20, 6:21, 6:22, 14:26, 15:2, 15:10, 15:16
**order** [1] - 9:19
**ordered** [1] - 17:7
**original** [1] - 16:18
**otherwise** [1] - 7:18
**owes** [1] - 18:16
**own** [2] - 10:6, 14:9

## P

**page** [1] - 10:13
**pages** [1] - 6:8
**paid** [7] - 10:26, 11:18, 15:9, 15:11, 15:15, 15:16, 18:24
**Panamanian** [1] - 4:24
**papers** [3] - 4:3, 7:13, 13:23
**paragraph** [1] - 10:15
**PARKE** [1] - 1:18
**Parke** [1] - 2:6
**parse** [1] - 23:4
**part** [1] - 7:12
**PART** [1] - 1:1
**particular** [1] - 20:15
**parties** [1] - 5:20
**partnership** [2] - 4:22, 7:10
**partnerships** [2] - 7:17, 14:2
**party** [1] - 20:16
**past** [1] - 12:7
**pay** [4] - 5:20, 12:4, 18:5, 18:7

**payments** [2] - 18:7, 22:24
**pendency** [1] - 13:15
**pending** [3] - 16:8, 16:11, 18:9
**PENNY** [1] - 1:4
**people** [1] - 19:5
**percent** [1] - 22:12
**performance** [1] - 8:7
**period** [2] - 11:3, 11:23
**permitted** [1] - 2:25
**perpetrated** [1] - 6:24
**perspective** [1] - 7:26
**petition** [1] - 22:4
**physical** [1] - 9:23
**pieces** [3] - 2:19, 8:17, 12:3
**place** [4] - 18:9, 20:15, 20:18, 20:19
**plaintiff** [6] - 13:10, 19:15, 22:6, 22:18, 23:7, 23:10
**plaintiff's** [2] - 2:12, 18:21
**Plaintiffs** [3] - 1:7, 1:18, 2:13
**plaintiffs** [6] - 2:7, 13:25, 14:4, 14:14, 20:23, 22:5
**plans** [2] - 18:11, 18:13
**Plaza** [1] - 1:19
**PLYMPTON** [1] - 1:6
**Plympton** [2] - 15:7, 15:21
**pocket** [1] - 4:26
**points** [1] - 20:10
**position** [2] - 8:24, 21:13
**positions** [3] - 3:18, 8:13, 8:19
**possession** [1] - 9:24
**possibility** [1] - 22:23
**post** [2] - 13:11, 14:11
**posting** [1] - 22:9
**potential** [1] - 13:14
**preliminary** [5] - 2:12, 6:11, 10:4, 13:2,

14:16, 19:8
  preparation [1] - 20:4
  prepared [1] - 19:26
  Present [3] - 23:14, 23:16, 23:17
  presented [2] - 19:22, 21:2
  preservation [2] - 20:13, 20:17
  preserve [1] - 20:21
  pressed [1] - 13:17
  prevent [1] - 14:9
  prevented [1] - 14:3
  preventing [2] - 3:8, 13:25
  prevents [1] - 20:16
  primary [1] - 3:17
  private [1] - 12:4
  probability [1] - 19:9
  proceeding [2] - 17:7, 17:12
  procured [1] - 7:4
  produce [1] - 6:17
  produced [2] - 5:14, 6:19
  proof [1] - 23:7
  properly [1] - 16:9
  property [1] - 23:13
  protect [2] - 21:23, 22:14
  protector [1] - 3:19
  provided [1] - 20:19
  pulled [1] - 6:4
  purchase [2] - 15:5, 15:26, 23:14
  purchased [4] - 3:14, 6:14, 7:19, 11:23
  purchases [2] - 15:11, 15:12
  purpose [2] - 14:22, 22:14
  put [3] - 3:4, 3:22, 8:17
  Putting [1] - 12:14

## Q

  questions [1] - 12:12
  quo [4] - 9:7, 16:24,

17:25, 21:7

## R

  read [2] - 10:8, 10:10
  reading [1] - 4:2
  real [2] - 6:14, 14:2
  really [1] - 11:12
  reason [2] - 22:3, 23:5
  receive [2] - 5:4, 11:13
  receiver [2] - 2:16
  RECEIVER [1] - 1:5
  record [3] - 15:8, 15:13, 15:20
  records [8] - 9:2, 9:4, 9:5, 9:8, 9:11, 16:24, 16:26, 17:4
  recover [2] - 8:8
  reference [2] - 7:5
  refers [1] - 18:14
  regard [3] - 6:26, 14:18, 21:13
  relief [1] - 19:5
  remaining [1] - 21:23
  remember [2] - 22:13
  removal [1] - 13:21
  removed [1] - 13:24
  rendered [2] - 5:9, 6:3
  reporter [2] - 23:21
  REPORTER [1] - 1:26
  request [3] - 14:17, 21:21, 22:21
  requesting [2] - 19:5, 22:19
  require [3] - 14:11, 22:8, 22:11
  required [2] - 12:20, 13:10
  requires [2] - 13:12, 13:13
  resources [1] - 18:10
  restrain [1] - 10:24
  restraint [1] - 2:18
  result [3] - 18:4, 18:17, 22:16
  return [1] - 17:10
  RICHARD [1] - 1:15
  Rockefeller [1] - 1:19

Rolls [3] - 2:20, 3:7, 12:2
  roughly [1] - 11:21
  Royce [1] - 3:7
  Royces [2] - 2:20, 12:2
  RPR [1] - 1:25
  RPR-CM [1] - 1:25
  run [1] - 14:26

## S

  SA [2] - 1:6
  Saddam [1] - 9:17
  sale [1] - 22:4
  sanctions [1] - 9:12
  saw [1] - 6:2
  Scarsdale [2] - 10:19, 11:24
  scheme [2] - 3:15, 3:24
  school [1] - 12:4
  SCOTT [1] - 1:20
  Scott [1] - 2:5
  Scottish [3] - 4:22, 7:10, 7:17
  seat [1] - 17:11
  second [5] - 5:26, 7:3, 7:9, 9:22, 9:26, 10:8, 10:14, 12:9
  seconds [1] - 11:12
  secretary [2] - 17:8, 17:21
  SECURITIES [1] - 1:10
  SEDACCA [1] - 1:25
  seek [1] - 2:18
  seeking [3] - 3:13, 10:3, 10:24, 22:10, 22:13
  seem [1] - 21:19
  seize [1] - 10:19
  seized [1] - 10:17
  self [1] - 12:14
  self-evident [1] - 12:14
  sell [4] - 9:25, 18:12, 18:13, 18:22
  selling [2] - 3:8, 22:2
  send [2] - 13:4, 17:8

sends [1] - 9:10
  sent [4] - 4:22, 4:23, 5:17, 6:9
  sentence [1] - 10:14
  served [2] - 10:7, 10:9
  services [2] - 5:9, 6:3
  settlement [1] - 11:10
  SETTLEMENTS [1] - 1:3
  several [2] - 4:20, 12:21, 16:11
  sheet [1] - 5:22
  sheets [2] - 5:18, 6:5
  ship [1] - 19:26
  shipment [1] - 20:7
  shipped [3] - 17:12, 21:5, 21:7
  shipping [1] - 20:23
  shoes [1] - 20:26
  show [6] - 4:16, 5:15, 7:14, 15:20, 15:21, 19:21
  showed [2] - 5:5, 7:11
  showing [2] - 6:17
  side [1] - 10:18
  signature [1] - 6:7
  signed [4] - 5:18, 5:22, 6:5, 11:5
  silo [2] - 9:18, 9:19
  Similarly [1] - 15:22
  simply [2] - 13:18, 17:24
  single [4] - 3:13, 7:14, 10:3
  sit [2] - 3:4, 23:2
  six [1] - 2:15
  skepticism [1] - 11:19
  sofa [1] - 3:4
  someplace [1] - 15:18
  somewhere [1] - 23:17
  sort [1] - 20:25
  sought [2] - 21:22, 22:17
  source [1] - 21:15
  specific [1] - 8:6
  speculative [1] - 8:10
  spin [1] - 3:7
  stack [1] - 5:5

**stage** [1] - 23:6
**STATE** [1] - 1:1
**State** [1] - 23:22
**state** [1] - 23:22
**statement** [2] - 6:17, 21:17
**statements** [1] - 6:18
**States** [2] - 5:5, 8:22
**status** [4] - 9:7, 16:24, 17:24, 21:7
**stenographic** [1] - 23:24
**Step** [1] - 2:2
**step** [1] - 20:26
**stick** [1] - 14:15
**still** [1] - 18:16
**STOFFEL** [1] - 1:9
**Stoffel** [25] - 1:22, 2:10, 2:25, 3:17, 3:23, 5:2, 5:6, 5:8, 5:16, 5:22, 5:25, 6:24, 7:12, 7:19, 8:11, 9:4, 9:10, 9:16, 9:21, 10:23, 12:19, 13:9, 13:17, 14:20, 15:10
**Stoffel's** [9] - 4:26, 5:14, 10:6, 13:21, 14:9, 15:5, 15:11, 17:18, 21:17
**stole** [1] - 19:16
**stop** [1] - 13:8
**story** [2] - 6:13, 7:12
**Street** [1] - 1:13
**strikes** [1] - 18:19
**Strine** [3] - 9:6, 9:13, 9:15
**structure** [5] - 3:19, 3:26, 10:5, 11:3, 11:14
**structured** [1] - 14:25
**style** [1] - 12:6
**subject** [1] - 9:12
**submitted** [3] - 11:8, 15:9, 23:7
**subpoena** [1] - 20:17
**subsequent** [1] - 20:7
**success** [1] - 19:9
**suffer** [3] - 12:19, 13:15, 13:18
**sufficient** [1] - 14:16

**supported** [1] - 23:10
**SUPREME** [1] - 1:1
**suspect** [1] - 6:16
**Swiss** [7] - 2:15, 3:21, 5:12, 8:21, 16:15, 16:19
**Switzerland** [14] - 9:11, 12:26, 13:4, 16:8, 16:10, 16:13, 17:4, 17:9, 17:11, 17:22, 20:2, 20:5, 20:24, 21:5

### T

**table** [1] - 3:5
**TACON** [1] - 1:5
**taxes** [1] - 11:18
**ten** [1] - 11:11
**TERM** [1] - 1:1
**terms** [1] - 7:21
**testified** [1] - 17:20
**THE** [27] - 1:1, 1:3, 1:6, 2:2, 2:4, 3:10, 4:2, 4:7, 4:11, 15:24, 16:4, 16:12, 16:16, 16:22, 17:2, 17:14, 17:23, 18:19, 19:7, 19:21, 20:25, 21:12, 21:18, 23:2, 23:12, 23:16, 23:19
**theft** [1] - 4:8
**third** [1] - 5:20
**THOMAS** [1] - 1:24
**Thomas** [1] - 2:8
**three** [4] - 2:14, 7:8, 18:4, 19:8
**throw** [1] - 14:14
**today** [1] - 2:11
**together** [1] - 8:17
**top** [3] - 5:19, 5:23, 6:9
**townhouse** [8] - 2:21, 3:4, 10:17, 11:26, 12:22, 18:7, 18:12, 22:26
**trace** [1] - 15:4
**tracing** [1] - 8:5
**transcript** [1] - 23:23

**transfer** [3] - 2:26, 7:11, 20:4
**transferred** [2] - 16:20, 17:15
**transferring** [1] - 3:9
**transfers** [1] - 8:20
**transported** [1] - 17:3
**tremendous** [1] - 18:10
**TRIAL** [1] - 1:1
**TRO** [2] - 9:20, 10:7
**true** [1] - 23:23
**truly** [1] - 18:25
**trust** [13] - 3:15, 3:19, 3:26, 8:20, 10:4, 11:2, 11:14, 12:18, 16:16, 16:18, 18:26, 21:15, 21:24
**TRUST** [1] - 1:2
**Trust** [2] - 3:20, 10:20
**trustee** [4] - 2:14, 11:14, 12:17
**TRUSTEE** [1] - 1:3
**trusts** [2] - 2:15, 16:20
**trying** [1] - 16:3
**tuition** [2] - 12:4, 18:6
**two** [7] - 2:15, 7:8, 9:2, 10:13, 11:23, 16:20, 23:2
**Two** [1] - 20:10
**type** [1] - 19:4

### U

**U.S** [2] - 2:15, 3:21
**ultimate** [1] - 16:14
**ultimately** [1] - 18:23
**unbeknownst** [1] - 5:13
**Under** [1] - 8:5
**under** [5] - 4:22, 11:6, 20:17, 21:26
**understood** [2] - 4:25, 8:15
**Unfortunately** [1] - 21:18
**unfreeze** [1] - 22:23
**United** [2] - 5:4, 8:22

**UNIVERSAL** [2] - 1:6, 1:6
**unpersuasive** [1] - 19:26
**up** [5] - 2:2, 3:5, 4:26, 8:15, 14:14

### V

**value** [5] - 23:13, 23:14, 23:15, 23:16, 23:17
**VAN** [1] - 1:25
**Van** [1] - 23:21
**various** [2] - 15:2, 22:22
**veiled** [1] - 14:5
**Vice** [3] - 9:6, 9:13, 9:14
**Vice-chancellor** [1] - 9:6
**VIERWALDSTATTER** [1] - 1:4
**violated** [1] - 19:23
**Virgin** [1] - 2:17
**VISTRA** [1] - 1:2
**Vistra** [2] - 2:2, 14:4
**voluminous** [1] - 3:22, 5:15

### W

**walls** [1] - 3:6
**weapons** [1] - 9:18
**whatsoever** [1] - 12:18
**whole** [1] - 10:10
**wife** [5] - 9:23, 10:13, 13:3, 18:15, 18:16
**WILLIAM** [1] - 1:5
**Withers** [1] - 7:2
**woke** [1] - 8:15
**word** [2] - 11:11, 11:17, 11:20
**words** [5] - 5:7, 6:25, 10:6
**writing** [1] - 10:12
**written** [1] - 21:14

31

# Y

**year** [5] - 8:12, 11:3,
11:7, 11:11, 11:23
**years** [5] - 3:2, 9:6,
12:8, 12:21, 13:19
**York** [12] - 1:13, 1:19,
1:24, 2:21, 8:6, 13:12,
13:13, 22:11, 23:22
**YORK** [2] - 1:1, 1:1
**yourself** [1] - 10:11

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____          PART _56_

_____
                    *Justice*

Vistra Trust Co
    et al

- v -

Dr Marco Stoffel et al

INDEX NO. _116985/07_

MOTION DATE _1/11/08_

MOTION SEQ. NO. _001_

MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|  | PAPERS NUMBERED |
|---|---|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____ |
| Answering Affidavits — Exhibits _____ | _____ |
| Replying Affidavits _____ | _____ |

**Cross-Motion:** ☐ Yes  ☐ No

Upon the foregoing papers, it is ordered that this motion

Motion is granted on the
record. Plaintiff to post
a bond in the amount of
$1,000,000.00

Settle Order

MU I ION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

Dated: _1/11/08_

RICHARD B. LOWE III
                                    J.S.C.

Check one: ☐ FINAL DISPOSITION    ☒ NON-FINAL DISPOSITION

Check if appropriate: ☐ DO NOT POST    ☐ REFERENCE

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE ALSAM, COLLEEN, AND LOGANY SETTLEMENTS, COLLEEN INVESTMENT AG, ALSAM HOLDING AG, PENNY ASSET AG, LOGANY EQUITY AG, VIERWALDSTATTER BETEILIGUNGEN AG, CLARICK AG, COLLEEN INVESTMENT, L.L.C., LOGANY, L.L.C., and WILLIAM TACON, RECEIVER AND MANAGER OF THE ASSETS OF MAYTOWN UNIVERSAL SA AND PLYMPTON UNIVERSAL SA, | Index No. 116985/07<br>I.A.S. Part 56<br><br>(Hon. Richard B. Lowe III) |

                                    Plaintiffs,

                    -against-                                    **NOTICE OF SETTLEMENT**

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES CORPORATION,
LAURAMCA HOLDINGS, L.L.C., and JOHN DOES 1-10,

                                    Defendants.

PLEASE TAKE NOTICE that the annexed proposed order will be presented to the

Honorable Richard B. Lowe III on February 11, 2008, at 9:30 a.m., in Part 56,

Courtroom 218, located at 60 Centre Street, New York, New York, for settlement and signature.

Dated: New York, New York
         February 4, 2008

CHADBOURNE & PARKE LLP

By

Scott S. Balber
Member of the Firm
Jonathan C. Cross
Attorneys for Plaintiffs Vistra Trust
Company (Jersey) Limited, Colleen
Investment AG, Alsam Holding AG,
Penny Asset AG, Logany Equity AG,
Vierwaldstatter Beteiligungen AG, Clarick
AG, Colleen Investment, L.L.C., Logany,
L.L.C. and William Tacon, Receiver and
Manager of the Assets of Maytown
Universal SA and Plympton Universal SA
30 Rockefeller Plaza
New York, New York 10112
Tel. (212) 408-5100

To:    MORRISON & FOERSTER LLP
       1290 Avenue of the Americas
       New York, New York 10104-0050
       (212) 468-7900
       Attn: Thomas M. Mueller, Esq.

       Attorneys for Defendants Dr. Marco Stoffel
       and Lauramca Holdings LLC

2

At IAS Part 56 of the Supreme Court of the
State of New York, held in and for the
County of New York, at the New York
County Courthouse, located at 60 Centre
Street, New York, New York, on the 11th
day of February, 2008

PRESENT:  <u>Richard B. Lowe III</u>, Justice

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM R. TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

Index No. 116985/07

**Order Granting Preliminary
Injunction** _____

Plaintiffs,

-against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

Defendants.

Plaintiffs having moved this Court for a preliminary injunction pursuant to Sections

6301 and 6311 of the Civil Practice Law and Rules, enjoining the Defendants, their agents,

servants, employees, and all other persons acting on their behalf, during the pendency of this

action and until final judgment herein, from taking any action, directly or indirectly, to remove,

transfer, sell, pledge, assign, encumber, destroy or otherwise dispose of certain assets as specifically identified in Schedule A attached hereto (the "Enumerated Assets"), and granting such other and further relief as the Court shall deem just and equitable, and the motions having regularly come on to be heard before me,

NOW, upon considering the Summons and Complaint, the Affirmations of Scott S. Balber sworn to on December 21, 2007 and January 4, 2008, the Affidavit of Tanya Scott-Tomlin, sworn to on December 19, 2007, Plaintiffs' Memorandum of Law and Reply Memorandum of Law, the Affidavit of Marco Stoffel sworn to on January 2, 2008 and Defendants' Memorandum of Law, and upon hearing oral argument from the parties on January 11, 2008;

And it appearing that, pursuant to Sections 6301 et seq. of the Civil Practice Law and Rules, causes of action exist for injunctive relief and Plaintiffs have demonstrated (i) a likelihood of prevailing on the merits of their claims, (ii) that they will suffer irreparable harm if a preliminary injunction were not granted, and (iii) that a balancing of the equities favors the imposition of a preliminary injunction, it is hereby

ORDERED, that Plaintiffs' motion for a preliminary injunction is GRANTED and that, during the pendency of this action and until final judgment herein, the Defendants, their agents, servants, employees, and all other persons acting on their behalf, be and each of them hereby is enjoined and restrained from taking any action, directly or indirectly, to remove, transfer, sell, pledge, assign, encumber, destroy or otherwise dispose of the aforesaid Enumerated Assets; and it is further hereby

ORDERED, that the amount of the undertaking to be filed by Plaintiffs is fixed at one

million dollars ($1,000,000).

Dated:    New York, New York
          February __, 2008

                              E N T E R:


                              _____
                                  Justice Richard B. Lowe III

<u>Schedule A</u>

1.   Art and antiquities purchased by Stoffel:

   (a)   Artwork entitled "Rosignano 98 Sea 3 Piccola, 1998," purchased on or
         about March 17, 2001 for US$ 8,100.

   (b)   Three pieces of artwork entitled "Buochs, 1956," "Stansstad 1959," and
         "Hergiswil 1971," purchased on or about March 27, 2001 for US$ 3,650.

   (c)   Artwork entitled "Architecture: Reflections on Claustrophobia, Paranoia
         and Conspiracy Theory, #4, 2001," purchased on or about June 26, 2001
         for US$ 15,000.

   (d)   Artwork entitled "L.P., IV, 2000," purchased on or about June 26, 2001
         for US$ 26,000.

   (e)   Artwork entitled "Marble Floor, 1999," purchased on or about June 26,
         2001 for US$ 8,800.

   (f)   Artwork entitled "Fusion, 2001," purchased on or about June 26, 2001 for
         CHF 11,000.

   (g)   Artwork entitled "Chairs (Red)," purchased on or about June 28, 2001 for
         US$ 36,000.

   (h)   Artwork entitled "Schnorkel Drawing, 2000," purchased on or about July
         13, 2001 for GBP 4,500.

   (i)   Artwork entitled "A Treasury of Human Inheritance, Levy's Case, 2001,"
         purchased on or about July 13, 2001 for GBP 4,500.

(j)    Artwork entitled "Salmon Pink with Frilly Aubergine Vase, 2000," purchased on or about July 20, 2001 for GBP 4,500.

(k)    Artwork entitled "1 Kopf eines Junglings, Marmor, romisch, 2," purchased on or about March 5, 2003 for EUR 4,000.

(l)    Artwork entitled "Weibliche Statuette," purchased on or about March 6, 2003 for EUR 6,040.89.

(m)    Artwork entitled "1 terracotta figure of a dancer, late-Minoaen, 14th cent. BC," purchased on or about March 14, 2003 for EUR 6,000.

(n)    Artwork (title unknown) purchased for GBP 10,000 on or about May 10, 2003 from the Miro gallery.

(o)    Artwork (title unknown) purchased for EUR 22,000 on or about December 29, 2003 from the Roswitha Eberwein gallery.

(p)    Artwork (title unknown) purchased for US$ 60,000 on or about January 28, 2004 from the Safani Gallery.

(q)    Artwork (title unknown) purchased for US$ 42,800 on or about January 31, 2004 from M. Eisenberg Inc.

(r)    Artwork entitled "Domain XXXIII, 2003," purchased on or about March 22, 2004 for EUR 110,000.

(s)    Artwork entitled "Sled, 2004," purchased on or about April 17, 2004 for US$ 64,000.

2

(t)    Artwork entitled "Ich halte alle Indien in meiner Hand, 2004," purchased on or about April 17, 2004 for EUR 250,000.

(u)    Artwork entitled "Group of twenty-eight figures, Ming Dynasty, 16th century," purchased on or about June 30, 2004 for US$ 64,500.

(v)    Artwork (title unknown) purchased for US$ 28,000 on or about September 21, 2004 from the Safani Gallery.

(w)    Artwork (title unknown) purchased for US$ 45,106.53 on or about November 30, 2004 from the Sean Kelly Gallery.

(x)    Artwork entitled "Stonehenge," purchased on or about May 28, 2005 for US$ 26,964.

(y)    Artwork (title unknown) purchased for US$ 7,100 on or about October 21, 2006 from Red Gate (Int'l) Ltd, Hong Kong.

(z)    Artwork entitled "Talisman, 2006-2007," purchased on or about October 21, 2006 for US$ 60,000.

(aa)   Artwork entitled "Work No. 1 of 2004," purchased on or about October 31, 2006 for US$ 47,500.

(bb)   Artwork entitled "Mongolians, 2006," purchased on or about November 9, 2006 for EUR 23,750.

(cc)   Artwork entitled "Man with White Shirt and Black Trousers, Relief 4 Circles, 2006," purchased on or about November 19, 2006 for EUR 88,000;

3

(dd)    Artwork entitled "Egyptian Old Kingdom," purchased on or about January 30, 2004 for US$ 37,500;

(ee)    Artwork entitled "Etruscan terracotta head of Herakles," purchased on or about January 30, 2004 for US$ 12,500;

(ff)    Artwork entitled "Attic white-ground lekythos," purchased on or about May 27, 2004 for US$ 6,420.

2.    The following automobiles purchased by Stoffel:

(a)    Aston Martin 1965 Coupé, Serial No. DB5/1835/R purchased on or about May 14, 2001 for US$ 64,859.37.

(b)    AC Bristol, 1958, Serial # BEX 487 purchased on or about August 22, 2001 for US$ 78,073.

(c)    Rolls Royce 1922 Silver Ghost Chassis No. 11BG purchased on or about July 15, 2002 for GBP 67,500.

(d)    Rolls Royce Silver Ghost 1912 Chassis 1905E purchased on or about December 12, 2003 for GBP 182,500.

(e)    Bentley 1924 Chassis No. 615 purchased on or about February 18, 2004 for GBP 155,000.

(f)    BMW 530 xi purchased on or about December 20, 2006 for CHF 86,800.

(g)    BMW X5, 2004 purchased on or about May 31, 2004 for US$ 83,642.50.

(h)    Bentley 1949 Mark 6 purchased on or around May 15, 2002 for USD $15,000;

4

3. An apartment at 47 Park Street, London, England, purchased by Albe;

4. Lloyds TSB bank accounts held in the name of Albe with account numbers 11358707, 86065558, and 1936979 and Bank Leu bank accounts held in the name of Albe with account numbers 619606-82, 619696-82-1, and 619606-85;

5. VP bank accounts held in the name of Bluecolt with account numbers 346.377.010, 346.377.013, 346.377.016, and 346.377.900;

6. Furniture purchased for a townhouse located at 340 W. 12th Street, New York, New York;

7. First Republic Bank account held in the name of Lauramca with account number 97100063381;

8. First Republic Bank accounts held in the name of Stoffel with account numbers 97100063373, 97900044482;

9. UBS AG Bank accounts held in the name of Stoffel, including account number 230-253441.01F;

10. Real property located at 340 W. 12th Street, New York, New York.

SCANNED ON 2/5/2008

Bond No. KO751857 2

# UNDERTAKING ON PRELIMINARY INJUNCTION BOND

**Supreme Court of the State of New York**
**County of New York**

----------------------------------------------------------

**Vistra Trust Company (Jersey) Limited as**
**Trustee of the Alsam, Colleen, and Logany**
**Settlements, Colleen Investment AG, Alsam**          Index No. 116985/07
**Holding AG, Penny Asset AG, Logany**
**Equity AG, Vierwaldstatter Beteiligungen AG,**
**Clarick AG, Colleen Investment, L.L.C.,**
**Logany, L.L.C., and William Tacon, Receiver**
**and Manager of the Assets of Maytown**
**Universal SA and Plympton Universal SA,**

                                        **Plaintiffs,**

        - against -

**Dr. Marco Stoffel, Albe Associates Limited,**
**Bluecolt Securities Corporation, Lauramca**
**Holdings, L.L.C., and John Does 1-10,**

                                        **Defendants.**

----------------------------------------------------------

**WHEREAS,** on the 11th day of January, 2008, the Plaintiffs, Logany, L.L.C. and Colleen Investment, L.L.C., the above named, were granted a preliminary injunction, upon the posting of a bond in the sum of $1,000,000.00, in the above entitled action, restraining the Defendants from doing certain things as more fully set forth in the order to show cause dated December 21st, 2007.

**NOW, THEREFORE,** the **Westchester Fire Insurance Co., Inc.,** having an office and principal place of business for the State of New York at **140 Broadway, 41st Floor, New York, N.Y., 10005,** does hereby, pursuant to the Statute in such case made and provided, undertake that the Plaintiffs, Logany, L.L.C. and Colleen Investment, L.L.C. will pay to the Defendants so enjoined, such damages and costs not exceeding the sum of **One Million and No/100---($1,000,000.00)---Dollars** as it may sustain by reason of the injunction, if the Court shall finally decide that the Plaintiffs, Logany, L.L.C. and Colleen Investment, L.L.C. were not entitled thereto; such damages and costs to be ascertained by a reference, or otherwise as the Court shall direct.

DATED: **January 25th, 2008**

                        Westchester Fire Insurance Co., Inc.

                        By: _Annie Sawh_
                        _____
                        **Annie Sawh, Attorney-in-fact**

form#

## ACKNOWLEDGMENT OF SURETY

**STATE OF NEW YORK }**
**COUNTY OF ___New York_____ }**
SS:
    On the ___25th___ day of ___January___ in year _2008___ before me personally came
___Annie Sawh_____ to me known, who being by me duly sworn, did
depose and say that he/she resides at _140 Broadway - 41st Floor, New York, N.Y., 10005_____ ,
that he/she is the Attorney-in-Fact of _Westchester Fire Insurance Company, Inc._____ , the
corporation described in and which executed the above instrument; that he/she knows the corporate seal of said
corporation, that the seal affixed to such instrument is such corporate seal: that it was so affixed by order of the
Board of Directors of said corporation, and, that he/she signed his/her name thereto by like order; and that said
corporation is duly authorized to transact business in the State of New York in pursuance of the statutes of such
case made and provided, that the Superintendent of insurance of the State of New York, has, pursuant to Chapter
28 of the Consolidated Laws of the State of new York, known as the Insurance Law, issued to
_Westchester Fire Insurance Company, Inc._____
a Certificate of Solvency and qualification to become surety or guarantor on all bonds. undertakings,
recognizances. guaranties and other obligations required or permitted by law and that such certificate has not been
evoked.

 

_____
Notary Public

COLETTE M. BLAIKIE
Notary Public, State of New York
No. 01 BL6085337
Qualified in New York County
Certificate Filed in New York County
Commission Expires December 16, 20 10

**Power of Attorney**

278494

WESTCHESTER FIRE INSURANCE COMPANY  1162899

**Know all men by these presents:** That WESTCHESTER FIRE INSURANCE COMPANY , a corporation of the State of New York , having its principal office in the City of Atlanta , Georgia , pursuant to the following Resolution, adopted by the Board of Directors of the said Company on November 8, 1999, to wit:

"RESOLVED, that the following Rules shall govern the execution for the Company of bonds, undertakings, recognizances, contracts and other writings in the nature thereof:

(1) That the President, any Senior Vice President, any Vice President, and Assistant Vice President, or any Attorney-in-Fact, may execute for and on behalf of the Company any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof, the same to be attested when necessary by the Corporate Secretary, or any Assistant Corporate Secretary, and the seal of the Company affixed thereto; and that the President, any Senior Vice President, any Vice President or any Assistant Vice President may appoint and authorize any other Officer (elected or appointed) of the Company, as Attorney-in-Fact to so execute or attest to the execution of all such writings on behalf of the Company and to affix the seal of the Company thereto.

(2) Any such writing executed in accordance with these Rules shall be as binding upon the Company in any case as though signed by the President and attested to by the Corporate Secretary.

(3) The signature of the President, or a Senior Vice President, or a Vice President, or an Assistant Vice President and the seal of the Company may be affixed by facsimile on any power of attorney granted pursuant to this Resolution, and the signature of a certifying Officer and the seal of the Company may be affixed by facsimile to any certificate of any such power, and any such power or certificate bearing such facsimile signature and seal shall be valid and binding on the Company.

(4) Such other Officers of the Company, and Attorneys-in-Fact shall have authority to certify or verify copies of this Resolution, the By-Laws of the Company, and any affidavit or record of the Company secretary to the discharge of their duties.

(5) The passage of this Resolution does not revoke any earlier authority granted by Resolutions of the Board of Directors."

Does hereby nominate, constitute and appoint COLETTE M. BLAIKIE, D. NICHOLAS BLAIKIE, ANNIE SAWH and ELIZABETH ROUSSEAU all of the City of New York City, State of New York , each individually if there be more than one named, its true and lawful attorney-in-fact, to make, execute, seal and deliver on its behalf, and as its act and deed any and all bonds, undertakings, recognizances, contracts and other writings in the nature thereof in penalties not exceeding Five Million Dollars ($5,000,000) and the execution of such writings in pursuance of these presents shall be as binding upon said Company, as fully and amply as if they had been duly executed and acknowledged by the regularly elected officers of the Company at its principal office.

IN WITNESS WHEREOF, the said Stephen M. Haney , Vice-President, has hereunto subscribed his name and affixed the corporate seal of the said WESTCHESTER FIRE INSURANCE COMPANY this 6th day of July 2006 .

WESTCHESTER FIRE INSURANCE COMPANY



Stephen M. Haney , Vice President

COMMONWEALTH OF PENNSYLVANIA
COUNTY OF PHILADELPHIA        ss.

On this 6th day of July , A.D. 2006 , before me, a Notary Public of the Commonwealth of Pennsylvania in and for the County of Philadelphia came Stephen M. Haney , Vice-President of the WESTCHESTER FIRE INSURANCE COMPANY to me personally known to be the individual and officer who executed the preceding instrument, and he acknowledged that he executed the same, and that the seal affixed to the preceding instrument is the corporate seal of said Company; that the said corporate seal and his signature were duly affixed by the authority and direction of the said corporation, and that Resolution, adopted by the Board of Directors of said Company, referred to in the preceding instrument, is now in force.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my official seal at the City of Philadelphia the day and year first above written.



NOTARIAL SEAL
Kathleen Tirri, Notary Public
Philadelphia, Philadelphia County
My commission expires September 22, 2007

_Kathleen Tirri_
Notary Public

I, the undersigned Secretary of WESTCHESTER FIRE INSURANCE COMPANY , do hereby certify that the original POWER OF ATTORNEY, of which the foregoing is a substantially true and correct copy, is in full force and effect.

In witness whereof, I have hereunto subscribed my name as Secretary, and affixed the corporate seal of the Corporation, this 25th day of January 2008 .



_George D. Mulligan_
George D. Mulligan , Secretary

THIS POWER OF ATTORNEY MAY NOT BE USED TO EXECUTE ANY BOND WITH AN INCEPTION DATE AFTER July 6, 2008 .

THE BACK OF THIS DOCUMENT LISTS VARIOUS SECURITY FEATURES        THAT WILL PROTECT AGAINST COPY COUNTERFEIT AND ALTERATION.

**WESTCHESTER FIRE INSURANCE COMPANY**

**FINANCIAL STATEMENT**                               **DECEMBER 31, 2006**

### ADMITTED ASSETS

| | |
|---|---:|
| BONDS | $1,729,763,005 |
| SHORT - TERM INVESTMENTS | 25,153,792 |
| STOCKS | 154,887,336 |
| REAL ESTATE | 0 |
| CASH ON HAND AND IN BANK | (74,947) |
| PREMIUM IN COURSE OF COLLECTION* | 116,402,754 |
| INTEREST ACCRUED | 16,895,983 |
| OTHER ASSETS | 254,645,146 |
|      TOTAL ASSETS | $2,297,673,069 |

### LIABILITIES

| | |
|---|---:|
| RESERVE FOR UNEARNED PREMIUMS | $391,811,211 |
| RESERVE FOR LOSSES | 1,243,956,960 |
| RESERVE FOR TAXES | 8,090,954 |
| FUNDS HELD UNDER REINSURANCE TREATIES | 0 |
| OTHER LIABILITIES | (3,963,619) |
|     TOTAL LIABILITIES | 1,639,895,506 |

| | |
|---|---:|
| CAPITAL: SPECIAL SURPLUS | 200,132,500 |
| CAPITAL: 928,592 SHARES, $4.85 PAR VALUE | 4,503,671 |
| CAPITAL: PAID IN | 179,710,659 |
| SURPLUS (UNASSIGNED) | 273,430,733 |
| SURPLUS TO POLICYHOLDERS | 657,777,563 |
|     TOTAL | $2,297,673,069 |

(*EXCLUDES PREMIUM MORE THAN 90 DAYS DUE.)

STATE OF PENNSYLVANIA

COUNTY OF PHILADELPHIA

John P. Taylor, being duly sworn, says that he is Vice President of
Westchester Fire Insurance Company and that to the best of his knowledge and belief the
foregoing is a true and correct statement of the said Company's financial condition as of the
31 st day of December, 2006.

Sworn before me this        18th day of April, 2007.

_____
Vice President

_____                    _____
Notary Public                               My commission expires

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Danielle M. Darden, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Oct. 21, 2009
Member, Pennsylvania Association of Notaries

Index No. 116985/07
(Hon. Richard B. Lowe)

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, et al.,

Plaintiffs,

-against-

DR. MARCO STOFFEL, et al.,

Defendants.

UNDERTAKING ON PRELIMINARY INJUNCTION
BOND

CHADBOURNE & PARKE LLP
ATTORNEYS FOR
Plaintiffs
Vistra Trust Company (Jersey) Limited, et al.

ORIGINAL

OFFICE AND P.O. ADDRESS
30 ROCKEFELLER PLAZA
NEW YORK, N.Y. 10112
(212) 408-5100

FILED
NEW YORK
COUNTY CLERK
2008 JAN 28  PM 12:33

JAN 0 0 00

hand delivery
July 48 Am.
Richard Howell.

Exhibit 3

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

VISTRA TRUST COMPANY (JERSEY)
LIMITED AS TRUSTEE OF THE
ALSAM, COLLEEN AND LOGANY
SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING
AG, PENNY ASSET AG, LOGANY
EQUITY AG, VIERWALDSTATTER
BEITEILIGUNGEN AG, CLARICK AG,
COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C. and WILLIAM
TACON, RECEIVER AND MANAGER
OF THE ASSETS OF MAYTOWN
UNVIERSAL SA AND PLYMPTON
UNIVERSAL SA,

                              Plaintiff,

           -against-

DR. MARCO STOFFEL, ALBE
ASSOCIATES LIMITED, BLUECOLT
SECURITIES CORPORATION,
LAURAMCA HOLDINGS, L.L.C., AND
JOHN DOES 1-10,

Defendant.

Index No.  116985/07
I.A.S. Part 56

Commercial Division
(Lowe, J.)

**NOTICE OF MOTION TO DISMISS**

**Oral Argument Requested**

PLEASE TAKE NOTICE that, upon the attached Affidavit of Dr. Marco Stoffel

sworn to January 22, 2008, and the exhibits attached thereto; the accompanying

Memorandum of Law of Defendants Marco Stoffel and Lauramca Holdings, L.L.C.,

dated January 22, 2008, submitted herewith; the complaint filed in the above-entered

action; and upon all pleadings and other papers in the above-captioned action, Defendants

Dr. Marco Stoffel and Lauramca Holdings, L.L.C., will move this Court, at the

courthouse, 60 Centre Street, New York, New York, Motion Support Office, Room 130,

ny-796197

on Wednesday, February 13, 2008, at 9:30 a.m. or as soon thereafter as counsel may be

heard, for an Order pursuant to C.P.L.R. §§ 3211, 7805, and Rule 327:

    (1) dismissing the complaint with prejudice; or

    (2) staying all proceedings; or

    (3) dismissing the complaint with prejudice and compelling arbitration; or

    (4) staying all proceedings and compelling arbitration; and

    (5) granting such other and further relief as the Court deems proper.

    Pursuant to CPLR 2214(b), answering affidavits, if any, are required to be served

upon the undersigned on Wednesday, February 6, 2008.  And the reply, if any, shall be

served on Tuesday, February 12, 2008.


Dated: New York, NY           MORRISON & FOERSTER LLP
       January 22, 2008

                               By: _____
                                 Thomas M. Mueller

                               1290 Avenue of the Americas
                               New York, NY  10104-0050
                               212.468.8000
                               *Attorneys for Defendants*
                               *Dr. Marco Stoffel and Lauramca*
                               *Holdings, L.L.C.*


TO:    Scott Balber, Esq.
        Chadbourne & Park LLP
        30 Rockefeller Plaza
        New York, New York 10112
        *Attorneys for Plaintiffs*


ny-796197                  -2-

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

-----------------------------------------------------------x

|  |  |
|---|---|
| VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE ALSAM, COLLEEN AND LOGANY SETTLEMENTS, COLLEEN INVESTMENT AG, ALSAM HOLDING AG, PENNY ASSET AG, LOGANY EQUITY AG, VIERWALDSTATTER BEITEILIGUNGEN AG, CLARICK AG, COLLEEN INVESTMENT, L.L.C., LOGANY, L.L.C. and WILLIAM TACON, RECEIVER AND MANAGER OF THE ASSETS OF MAYTOWN UNVIERSAL SA AND PLYMPTON UNIVERSAL SA, | Index No.  116985/07 I.A.S. Part 56 <br><br> Commercial Division (Lowe, J.) |

Plaintiff,

-against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS,
L.L.C., AND JOHN DOES 1-10,

Defendant.

MEMORANDUM OF LAW OF
DEFENDANTS MARCO
STOFFEL AND LAURAMCA
HOLDINGS, L.L.C. IN SUPPORT
OF MOTION TO DISMISS

-----------------------------------------------------------x

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

------------------------------------------------------- x
:
VISTRA TRUST COMPANY (JERSEY) LIMITED :     Index No. 116985/07
AS TRUSTEE OF THE ALSAM, COLLEEN AND :      I.A.S. Part 56
LOGANY SETTLEMENTS, COLLEEN         :
INVESTMENT AG, ALSAM HOLDING AG,    :       Commercial Division
PENNY ASSET AG, LOGANY EQUITY AG,   :       (Lowe, J.)
VIERWALDSTATTER BEITEILIGUNGEN AG,  :
CLARICK AG, COLLEEN INVESTMENT, L.L.C., :
LOGANY, L.L.C. and WILLIAM TACON,   :
RECEIVER AND MANAGER OF THE ASSETS  :       MEMORANDUM OF LAW OF
OF MAYTOWN UNVIERSAL SA AND         :       DEFENDANTS MARCO
PLYMPTON UNIVERSAL SA,              :       STOFFEL AND LAURAMCA
                                    :       HOLDINGS, L.L.C. IN SUPPORT
            Plaintiff,              :       OF MOTION TO DISMISS
                                    :
        -against-                   :
                                    :
DR. MARCO STOFFEL, ALBE ASSOCIATES  :
LIMITED, BLUECOLT SECURITIES        :
CORPORATION, LAURAMCA HOLDINGS,     :
L.L.C., AND JOHN DOES 1-10,         :
                                    :
            Defendant.              :
                                    :
                                    :
------------------------------------------------------- x

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................ 1

STATEMENT OF FACTS ..................................................................................... 2

ARGUMENT ...................................................................................................... 8

I.    THE CONFLICTS IN THE COMPLAINT SHOULD BE HEARD IN
SWITZERLAND ........................................................................................... 9

    A.    The Conflicts in the Complaint Should Be Heard by Courts or Tribunals in
Switzerland, Pursuant to the Contracts From Which They Arise ...................... 9

    B.    Substantial Justice Requires That the Issues Underlying the Complaint Be
Heard in Swiss Courts or Tribunals Applying Swiss Law ............................... 10

           1.    The Complaint Raises Issues That Would Be Unduly Burdensome
For The Court ....................................................................................... 11

           2.    The Complaint Must Be Dismissed Because of the Potential
Hardship to Defendants Dr. Stoffel and Lauramca ................................. 14

II.   THE CONFLICTS IN THE COMPLAINT SHOULD BE HEARD IN
ARBITRATION, PER THE AGREEMENTS FROM WHICH THEY ARISE ............. 18

    A.    Agreements to Arbitrate are Valid, Irrevocable, and Enforceable ...................... 18

    B.    Arbitration Agreements Govern the Issues Raised by the Complaint .................. 19

CONCLUSION .................................................................................................... 21

ny-795886

# TABLE OF AUTHORITIES

## CASES

*Bewers v. Am. Home Products Corp.*,
  99 A.D.2d 949 (1st Dep't 1984) .................................................................................11, 12, 17

*Boss v. Am. Express Fin. Advisors*,
  811 N.Y.S.2d 620; 6 N.Y.3d 242 (N.Y. 2006) .............................................................14

*Brooke Group Ltd. V. JCH Syndicate 488*,
  87 N.Y.2d 530 (N.Y. 1996) ...................................................................................9, 17

*Buckeye Check Cashing, Inc. v. Cardegna*,
  546 U.S. 440 (2006)...........................................................................................19

*Citigroup Global Markets, Inc. v. Metals Holding Corp.*,
  820 N.Y.S.2d 841 (Sup. Ct. N.Y. County 2006) .............................................................17

*Cooper v. Bruckner*,
  21 A.D.3d 758 (1st Dep't 2005) ...............................................................................19

*Flanagan v. Prudential-Bache Securities, Inc.*,
  67 N.Y.2d 500 (1986) ..........................................................................................19

*Garmendia v. O'Neill*,
  2007 N.Y. App. Div. LEXIS 12721 (App. Div. 1st Dep't Dec. 18, 2007)......................................11

*Islamic Rep. of Iran v. Pahlavi*,
  62 N.Y.2d 474 (N.Y. 1984) .....................................................................................11

*Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*,
  473 U.S. 614 (1985).............................................................................................19

*Moses H. Cones Memorial Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)...............................................................................................19

*Southland Corp. v. Keating*,
  465 U.S. 1 (1984)...............................................................................................19

*Sterling Nat'l Bank as Assignee of NorVergence, Inc. v. E. Shipping Worldwide, Inc.*,
  35 A.D.3d 222, 826 N.Y.S.2d 235 (1st Dep't 2006)...........................................................9

ii

**STATUTES**

9 U.S.C. §2 ........................................................................................................................18

N.Y.C.P.L.R. 327(a) (2006).......................................................................................8, 14

**OTHER AUTHORITIES**

2 Jack B. Weinstein, Harold L. Korn, Arthur R. Miller,
    New York Civil Practice: CPLR ¶ 327.01 (2d ed. 2007) ........................................10, 11

iii

Defendants Marco Stoffel and Lauramca Holdings, LLC ("Lauramca") respectfully submit this memorandum of law in support of their Motion to Dismiss the Complaint of Plaintiffs Vistra Trust Company (Jersey) Limited as Trustee of the Alsam, Colleen, and Logany Settlements, Colleen Investment AG, Alsam Holding AG, Penny Asset AG, Logany Equity AG, Vierwaldstatter Beiteiligungen AG, Clarick AG, Colleen Investment, LLC, Logany, LLC and William Tacon, Receiver and Manager of the Assets of Maytown Universal SA and Plympton Universal SA (collectively, "Plaintiffs"), dated December 21, 2007 (the "Complaint").

## PRELIMINARY STATEMENT

This dispute simply does not belong in a New York court. Various agreements from which the issues in the Complaint arise specify that disputes arising under the agreements must be adjudicated in either Switzerland or the Channel island of Jersey. Plaintiffs were signatory to many of these documents.

The nexus of this dispute is clearly in Switzerland and not in New York. Based on the agreements and transactions at issue, Swiss law governs most of the dispute, including the threshold question of Plaintiffs' standing to assert these claims. Various agreements previously executed by the parties require that Swiss law govern virtually all of the relationships among the parties. The vast majority of the parties to this dispute are Swiss citizens and residents. Potential third parties reside in Switzerland, such as Clarissa and Cedrick Blickle, the beneficiaries of the trust structures at issue, and Orconsult SA ("Orconsult") and its owners and directors, who own and manage several entities that are intricately tied to Plaintiffs' allegations. Witnesses such as majority of Plaintiffs' board of directors, Plaintiffs' bankers and Plaintiffs' accountants are located in Switzerland. The bulk of the documents, both those held by the parties as well as those in the custody of third parties, are located in Switzerland. Thus, Switzerland, not New York, has the substantial interest in the adjudication of this dispute.

1

Moreover, most of the agreements governing the parties' relationships that form the basis of the Complaint contain broad arbitration clauses that provide for any disputes arising out of the agreements to be arbitrated in Switzerland. Indeed, legal proceedings addressing some, if not all of the issues raised in Plaintiffs' complaint are already pending in Switzerland. Those proceedings involve all of the parties to this lawsuit. Thus, Plaintiffs' attempt to litigate this dispute in New York is not only inconvenient and needlessly duplicative, but runs a significant risk of inconsistent judgments being entered, leading only to further uncertainty and litigation.

Plaintiffs will surely point out that a number of assets that are the subject of this dispute are located in New York. While true, that fact does not outweigh all of the other factors pointing to Switzerland as the appropriate forum for resolution of this dispute. Where, as here, Plaintiffs have either control of the assets or, through legal proceedings, have frozen those assets during the pendency of the dispute, the mere location of assets should not dictate forum. As injunctive relief is available in aid of foreign proceedings, a dismissal or stay of this action pending the resolution of the dispute in Switzerland will not affect the injunction imposed by this Court on January 11, 2008. Accordingly, the fact that certain assets are located in New York should not be a factor in this forum analysis.

Accordingly, this Court should dismiss the Complaint on forum non conveniens grounds. Alternatively, this lawsuit should be stayed pending resolution of the dispute in the proper forum. To ensure that the parties do in fact resolve their disputes in an appropriate forum, this Court should also compel plaintiffs to arbitrate the dispute in Switzerland in accordance with the governing agreements.

## STATEMENT OF FACTS

This dispute arises out of a trust structure created by a wealthy German family living in Switzerland. While the trusts themselves were at various times organized under the laws of the

2

island of Jersey and Bermuda, the assets of the trust were principally held by at first four and ultimately six Swiss companies, each of which is a plaintiff in this action. (Aff. of Dr. Marco Stoffel in Opp. to Pls.' Application for a TRO and a Prelim. Inj. with Exs. and Certified Translations ¶ 18, Jan. 2, 2008.) ("Stoffel TRO Aff." ¶ 18.) The relationships at issue here, including the rights of and obligations owed to the various parties to this dispute are almost universally governed, pursuant to the agreement of the parties, by the laws of Switzerland. In accordance with these agreements, Dr. Stoffel and Lauramca have commenced arbitration proceedings in Switzerland seeking declaratory relief related to all of the issues raised by the Complaint.[1] Further, arbitration proceedings brought by the two charitable foundations before the Swiss Chamber of Commerce have been pending against Maytown Universal SA, Plympton Universal SA, Colleen Investment AG, and Colleen Investment LLC since April of 2007.[2] These proceedings seek a determination that will resolve any questions about the propriety of contributions from the trust structure to the charitable foundations. Id.

---

[1] (Affidavit of Marco Stoffel In Support of Motion to Dismiss, Ex. A, Notice of Arbitration before the Zurich Chamber of Commerce, between Marco Stoffel and Lauramca Holdings LLC, on the one hand, and Maytown Universal SA, Plympton Universal SA, Vistra Trust Co. (Jersey) Ltd., Alsam Holding AG, Penny Asset AG, Logany Equity AG, Vierwaldstaetter Beteiligungen AG, Clarick AG, Colleen Inv. AG, Colleen Inv. LLC, Logany LLC, Albeag Foundation, Albe Assocs. Ltd., Bluecolt Sec., Orconsult SA, and Orconsult Ltd, as trustee for Aquarius and Capricorn trusts, on the other, dated January 21, 2008.) ("Stoffel Aff., Ex. A").

[2] (Stoffel Aff., Ex. H, (1) the Demand for Arbitration Before the Zurich Chamber of Commerce, between Borderline Personality Disorder Research Foundation and Third Millennium Foundation, on the one hand, and Maytown Universal SA, Plympton Universal SA, Colleen Investment AG, and Colleen Investment LLC, on the other hand, dated April 25, 2007; (2) Procedural Order No. 3 (Including Provisional Timetable), Borderline Personality Disorder Research Foundation v. Maytown Universal SA, Swiss Chambers Case No. 600094-2007, dated Dec. 14, 2007; and (3) Constitution Order, Borderline Personality Disorder Research Foundation v. Maytown Universal SA, Swiss Chambers Case No. 60094-2007, Dec. 14, 2007.)

Various agreements regarding the disputed trust structures call for adjudication of the disputes in either Switzerland or the Channel island of Jersey. For example, agreements directly between the plaintiffs and defendants at issue in the proceeding include forum selection, choice of law, and arbitration clauses specifying Swiss law and Swiss arbitration proceedings:

- The Employment Agreement between Colleen Investment AG and Dr. Stoffel (Stoffel TRO Aff., Ex. 49 ¶15), for example, calls for the agreement to be "exclusively subject to Swiss law, the place of the arbitration being Zurich," and says that "any claim or controversy that arises out of or relates to this agreement, or breach of it, shall be settled exclusively by arbitration in accordance with the rules of the Zurich Chamber of Commerce."
- The Adoptation [sic] of Escrow Confirmation between Maytown Universal SA, Plympton Universal SA, Colleen Investment AG, Colleen Investment LLC and Dr. Stoffel (on behalf of the Third Millennium Foundation and the Personality Disorder Research Foundation) (Stoffel TRO Aff. Ex. 7, ¶5), calls for disputes to be resolved in "Zurich/Switzerland," and states that "[d]isputes under this Agreement are subject to arbitration according to the rules of the Zurich Chamber of Commerce."

Seven of the trust agreements at issue contain arbitration clauses specifying arbitration in Switzerland and all of them contain either forum selection clauses, choice of law clauses, or both, specifying either Swiss law, Jersey law, or Bermuda law as the governing law and Switzerland, Jersey, or Bermuda as the appropriate jurisdiction for resolving any dispute arising out of the agreements:

- The Engagement Letter between Angela Blickle and Dr. Stoffel (Stoffel TRO Aff. Ex. 50 ¶48) states that the "place of jurisdiction is London," and that "[a]ny disputes arising from this agreement are subject to the sole jurisdiction of an arbitration court according to the ICC rules."
- The Trust Agreement between Orcunsult Limited (on behalf of the Aquarius and Capricorn Trusts) and Dr. Stoffel as Fiduciary Shareholder and member of the Board of Directors of [Logany Equity AG] and its subsidiaries (Stoffel TRO Aff., Ex. 39) is "exclusively subject to SWISS LAW, the place of arbitration being ZURICH," and "[i]n the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Zurich Chamber of Commerce." (emphasis in original.)
- The Trust Agreement between Orcunsult Limited (on behalf of the Aquarius and Capricorn Trusts) and Dr. Stoffel as Fiduciary Shareholder and member

4

of the Board of Directors of Alsam Holding AG and its subsidiaries (Stoffel TRO Aff., Ex. 39) is "exclusively subject to SWISS LAW, the place of arbitration being ZURICH," and "[i]n the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Zurich Chamber of Commerce." (emphasis in original.)

- The Fiduciary Agreement between Chiltern Trust Company as Limited Trustees of the Alsam Settlement and Dr. Stoffel as a member of the Board of Directors of Colleen Investment AG and General Attorney of Madison Corporation Development Ltd. (Affirmation of Scott S. Balber in Supp. of TRO and Prelim Inj., Dec. 21, 2007, Ex. 15) ("Balber TRO Aff., Ex. 15") calls for the agreement to be "exclusively subject to SWISS LAW," "the place of the arbitration being ZURICH," and "[i]n the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law." (emphasis in original.)

- The Fiduciary Agreement between Chiltern Trust Company (predecessor of plaintiff Vistra Trust Company (Jersey) Ltd.) as Limited Trustees of the Logany Settlement and Dr. Stoffel as a member of the Board of Directors of Logany Equity AG and General Attorney of Millennium Import/Export Ltd. (Balber TRO Aff., Ex. 16) calls for the agreement to be "exclusively subject to SWISS LAW," "the place of the arbitration being ZURICH," and "[i]n the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law." (emphasis in original.)

- The Fiduciary Agreement between Chiltern Trust Company as Limited Trustees of the Colleen Settlement and Dr. Stoffel as a member of the Board of Directors of Colleen Investment AG and General Attorney of Madison Corporation Development Ltd. (Balber TRO Aff., Ex. 17) calls for the agreement to be "exclusively subject to SWISS LAW," "the place of the arbitration being ZURICH," and "[i]n the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law." (emphasis in original.)

- The Service Agreement between Orconsult Limited on behalf of the Aquarius and Capricorn Trusts and the New Eagle Corporation Ltd. as Protector of the Aquarius and Capricorn Trust (Stoffel TRO Aff., Ex. 50 ¶43) calls for "English law" to apply, with "seat of the arbitrators in Hamilton, Bermuda," and "[d]isputes are to be solved by arbitration."

- The Settlement Agreement between Angela Blickle and the Chiltern Trust Company (for the Alsam Settlement) (Balber TRO Aff. Ex. 3) calls for "the proper law of the Settlement shall be the laws of the Island of Jersey the Courts of which said island shall be the forum for the administration hereof."

- The Settlement Agreement between Holger Blickle and the Chiltern Trust Company (for the Colleen Settlement) (Balber TRO Aff. Ex. 4) states that

5

"the proper law of the Settlement shall be the laws of the Island of Jersey the Courts of which said island shall be the forum for the administration hereof."

- The Settlement Agreement between Holger Blickle and the Chiltern Trust Company (for the Logany Settlement) (Balber TRO Aff. Ex. 5) states that "the proper law of the Settlement shall be the laws of the Island of Jersey the Courts of which said island shall be the forum for the administration hereof."

- The Deed of Appointment of Beneficiaries signed by the Chiltern Trust Company (for the Alsam Settlement) (Stoffel TRO Aff. Ex. 34) states that "[t]his deed shall be governed by and construed in accordance with the law of the Island of Jersey."

- The Deed of Appointment of Beneficiaries signed by the Chiltern Trust Company (for the Colleen Settlement) (Stoffel TRO Aff. Ex. 35) states that "[t]his deed shall be governed by and construed in accordance with the law of the Island of Jersey."

- The Deed of Appointment of Beneficiaries signed by the Chiltern Trust Company (for the Logany Settlement) (Stoffel TRO Aff. Ex. 36) states that "[t]his deed shall be governed by and construed in accordance with the law of the Island of Jersey."

- The Agreement between Chiltern Trust Company (for the Alsam Settlement) and First Aim Management states that "[t]his agreement shall be governed by Jersey law." (Stoffel Aff. Ex. B.)

- The Agreement between Chiltern Trust Company (for the Alsam Settlement) and Millennium Import/Export Limited states that "[t]his agreement shall be governed by Jersey law." (Stoffel Aff. Ex. C.)

- The Agreement between Chiltern Trust Company (for the Colleen Settlement) and Madison Corporate Development Limited states that "[t]his agreement shall be governed by Jersey law." (Stoffel Aff. Ex. D.)

- The Deed of Trust between Kim Raymond White and Orconsult Limited (regarding The Capricorn Trust) states that the "settlement is made under the laws of the Islands of Bermuda and subject to any change in the proper law of the Settlement duly made according the laws and provisions hereinafter declared the proper law of the Settlement shall be the laws of the Islands of Bermuda the courts of which said Islands shall be the forum for the administration hereof." (Stoffel Aff. Ex. E.)

- The Deed of Trust between Kim Raymond White and Orconsult Limited (regarding The Aquarius Trust) states that the "settlement is made under the laws of the Islands of Bermuda and subject to any change in the proper law of the Settlement duly made according the laws and provisions hereinafter declared the proper law of the Settlement shall be the laws of the Islands of Bermuda the courts of which said Islands shall be the forum for the administration hereof." (Stoffel Aff. Ex. F.)

6

The donations from the various trust structures also contain arbitration clauses and forum selection clauses specifying arbitration in Switzerland, and one also contains a choice of law clause providing that Swiss law govern that agreement:

- The Donation to Borderline Foundation (Stoffel TRO Aff. Ex. 8) calls for "[a]ll relationships of our family, the trusts (including trustees, protectors and beneficiaries) and its various entities with the officers and directors of the entities as well as with the foundation are subject to Swiss law," with "exclusive jurisdiction fall[ing] to arbitration in Zurich/Switzerland according to the rules of the Zurich Chamber of Commerce including the mandatory submission to its Mini-Trial."
- The Escrow Confirmation between Madison Corporate Developments Limited and the Personality Disorder Research Foundations (Stoffel TRO Aff. Ex. 7 ¶5) calls for "the seat of the arbitration tribunal [to] be in Zurich/Switzerland," "[i]n case of disputes," to be set up according to the rules of the Zurich Chamber of Commerce.

The loans between Dr. Stoffel and Orconsult contain arbitration clauses providing for Swiss arbitration and either or both forum and choice of law clauses specifying Switzerland:

- The Credit Line Confirmation between Orconsult and Dr. and Mrs. Stoffel (Stoffel TRO Aff. Ex. 50 at Tab 8) calls for the "agreement [to] be governed by and construed in accordance with the laws of Switzerland," and "[a]ll disputes arising out of and in connection with this agreement [to] be finally settled according to the conciliation and arbitration rules of the Zurich Chamber of Commerce."
- The loan assignment from Orconsult to Mr. and Mrs. Stoffel (Stoffel TRO Aff. Ex. 51 at Tab 4) calls for "[a]ll disputes arising out and in connection with this agreement [to] be finally settled according to the conciliation and arbitration rules of the Swiss Chamber of Commerce, Zurich."[3]

---

[3] Because this dispute involves several entities and numerous transactions across a lengthy period of time, there may be other documents that involve the parties to this dispute that are not discussed herein. For example, the loan agreement from HypoVereinsbank Luxembourg (which is not a party to this case) to Dr. Stoffel (Stoffel TRO Aff. Ex. 51 at Tab 3 (Stoffel 020986-020987) specifies that the "laws of the Grand Duchy of Luxemburg apply, Luxemburg, or another location of our choosing has jurisdiction." Similarly, two promissory notes to Lauramca from Orconsult specify that they are governed by Delaware law. (Stoffel TRO Aff. Ex. 51 at Tabs 5 and 6.) However, Orconsult is also not a party to this case. It is clear that the overwhelming majority of documents relating to this dispute support the arguments made herein.

7

## ARGUMENT

Pursuant to CPLR 327(a),[4] the Complaint should be dismissed in the interest of substantial justice, because New York is not an appropriate forum for the resolution of issues raised by the Complaint. The vast majority of the documents relating to the trust structures clearly call for the application of the laws of either Switzerland or the Channel island of Jersey.[5] Moreover, the documents that govern the specific relationships at issue in the complaint call for arbitration of disputes in Switzerland. To the extent that parts of the dispute may fall outside of the broad arbitration provisions in the parties' various agreements, those disputes should be litigated in Swiss courts, the more convenient and appropriate forum for this dispute. To the extent that the law of the Channel island of Jersey or Bermuda controls certain issues, these considerations can be taken into consideration in a Swiss arbitration (whereas a proceeding in Jersey cannot facilitate a Swiss arbitration). To the extent that Plaintiffs contend that parts of this dispute should best be adjudicated in a Jersey forum, the result in the instant case does not change: the Court should dismiss or stay this proceeding in favor of the foreign proceeding.

---

[4]     The New York Civil Practice Law and Rules state that:

> When the court finds that in the interest of substantial justice the action should be heard in another forum, the court, on the motion of any party, may stay or dismiss the action in whole or in part on any conditions that may be just. The domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action.

N.Y.C.P.L.R. 327(a) (2006).

[5] Certain releases signed by Clarissa and Cedrick Blickle state that they are governed by New York law, but neither Cedrick nor Clarissa are parties to this action.

## I. THE CONFLICTS IN THE COMPLAINT SHOULD BE HEARD IN SWITZERLAND

Dr. Stoffel and Lauramca respectfully submit that the Complaint should be dismissed in the interest of substantial justice, so that the issues can be addressed by Swiss tribunals, pursuant to the contracts from which the issues in the Complaint arise. Moreover, the legal issues and the location of the parties, witnesses, and evidence relevant to the Complaint require that the dispute be adjudicated in Switzerland. At a minimum, this lawsuit should be stayed until a final determination is reached by the courts of, or before the arbitral tribunals in, Switzerland.

### A. The Conflicts in the Complaint Should Be Heard by Courts or Tribunals in Switzerland, Pursuant to the Contracts From Which They Arise

"Although once disfavored by the courts, it is now recognized that parties to a contract may freely select a forum which will resolve any disputes over the interpretation or performance of the contract." Brooke Group Ltd. v. JCH Syndicate 488, 87 N.Y.2d 530, 534 (N.Y. 1996). The First Department has plainly stated that "it is the well-settled policy of the courts of this State to enforce contractual provisions for choice of law and selection for a forum for litigation." Sterling Nat'l Bank as Assignee of NorVergence, Inc. v. E. Shipping Worldwide, Inc., 35 A.D.3d 222, 826 N.Y.S.2d 235, 237 (1st Dep't 2006) (internal citations omitted). Citing a long list of cases, the First Department in Sterling emphatically expressed its view about the enforceability of forum selection clauses:

> Forum selection clauses, which are prima facie valid, are enforced because they provide certainty and predictability in the resolution of disputes, and are not to be set aside unless a party demonstrates that the enforcement of such would be unreasonable and unjust or that the clause is invalid because of fraud or overreaching, such that a trial in the contractual forum would be so gravely difficult and inconvenient that the challenging party would, for all practical purposes, be deprived of his or her day in court.

Id. at 222 (internal citations omitted).

9

In the instant case, the documents relating to the structure call for adjudication of disputes either in Switzerland or the Channel island of Jersey. The documents that govern the issues underlying the complaint – the relationship of Dr. Stoffel to the various trust entities – are clearly subject to choice-of-forum clauses that evidence the parties' agreement (Plaintiffs' included) to have any issues addressed by Swiss courts or Swiss tribunals. For example, the Employment Agreement between Colleen Investment AG and Dr. Stoffel (Stoffel TRO Aff., Ex. 49 ¶15), calls for the "the place of the arbitration [to be] Zurich." The fiduciary agreements executed between Dr. Stoffel and Plaintiff Vistra similarly state that the agreement will be "exclusively subject to SWISS LAW," the place of arbitration being ZURICH." (Balber TRO Aff., Ex. 15) (emphasis in original). The other agreements between the interested parties clearly indicate the wishes of the signatory parties regarding the forum for resolving their disputes. (discussed, supra, at pp. 4-7.)

**B. Substantial Justice Requires That the Issues Underlying the Complaint Be Heard in Swiss Courts or Tribunals Applying Swiss Law**

In addition to the numerous contractual agreements evidencing the parties' agreement to adjudicate issues relating to the Complaint in Switzerland, justice, fairness, and convenience require that the Complaint be dismissed so that the issues can be properly adjudicated before Swiss tribunals.

In considering whether "substantial justice" requires that an action be heard in another forum, courts have considered several factors, which include but are not limited to: the burden on the New York courts; the potential hardship to the defendant; the unavailability of an alternative forum in which the plaintiff may commence the action; whether the parties to the action are nonresidents; and where the transaction of which the cause of action arose. 2 JACK B. WEINSTEIN, HAROLD L. KORN, ARTHUR R. MILLER NEW YORK CIVIL PRACTICE: CPLR ¶ 327.01

10

(2007) ("WEINSTEIN, KORN, & MILLER ¶ 327.01"). <u>See</u> <u>also</u> <u>Islamic Rep. of Iran v. Pahlavi</u>, 62

N.Y.2d 474, 479 (N.Y. 1984) (internal citations omitted). "Justice, fairness and convenience"

are the primary considerations that determine the issue and no one factor is controlling. <u>Pahlavi</u>,

62 N.Y.2d at 479 (internal citations omitted) (dismissing suit for forum non conveniens, despite

the fact that plaintiffs alleged that assets were in New York and there was no alternative forum

for the adjudication of the claims).

      <u>Garmendia v. O'Neill</u>, recently decided by the First Department, considered facts very

similar to those that are currently before the Court.  2007 NY Slip Op 9930; 2007 N.Y. App.

Div. LEXIS 12721 (App. Div. 1st Dep't Dec. 18, 2007).  In <u>Garmendia</u>, plaintiffs alleged that

defendants breached their duties to a bank in Uruguay, resulting in fraudulent conduct by one of

its inside directors, who drained the bank of its assets.  <u>Id.</u> at 1.  The lower court granted the

defendants' motion to dismiss based on forum non conveniens and was affirmed by the First

Department.  <u>Id.</u>  In so doing, the First Department noted that "Uruguay has an interest in

adjudicating claims involving its own banking institutions." <u>Id.</u> (internal citations omitted).

Further, most of the evidence was located in Uruguay – including witnesses and documents of

the bank's auditors.  <u>Id.</u>  Consequently, the First Department found that litigating the case in

New York would pose a hardship to the defendants and the case should be heard in Uruguay.  <u>Id.</u>

      In the instant case, substantial justice clearly requires that the issues underlying the

Complaint be heard in Switzerland, rather than the courts of New York.

## 1. The Complaint Raises Issues That Would Be Unduly Burdensome For The Court

      This Court would be unduly burdened if the Complaint were not dismissed because it

would have to apply Swiss law, which clearly governs significant aspects of this litigation. <u>See</u>,

<u>e.g.</u>, <u>Bewers v. Am. Home Products Corp.</u>, 99 A.D.2d 949, 950; 472 N.Y.S.2d 637, 639 (1st

Dep't 1984) ("It would, in the circumstances of these cases, constitute an unnecessary burden on

11

our courts to be compelled to apply foreign law, as the case demands, in our own courts.")
(internal citations omitted).[6]  The documents between the parties clearly demonstrate that it was
their intention to have disputes settled under foreign law, primarily the laws of Switzerland.  For
example, in the Employment Agreement between Colleen Investment AG and Dr. Stoffel
(Stoffel TRO Aff., Ex. 49 ¶15) the parties agree that all claims and controversies arising under
the agreement are to be resolved "exclusively subject to Swiss law."  The other agreements
between the interested parties clearly indicate the wishes of the signatory parties regarding the
choice of law. (discussed, supra, at pp. 4-7.)

Apart from the significant number of agreements that express the parties' agreement and
intent that Swiss law govern their various actions, obligations and relationships, Swiss law also
governs a threshold issue in this case: Plaintiffs' own standing to represent the Swiss companies
turns on a conflict that must be determined under Swiss corporate law.  Vistra, the Trustee of the
Jersey Trusts, staged a series of shareholder meetings on December 6, 2006 for each of the six
Swiss companies, in which they purportedly removed Dr. Stoffel and other directors from the
Boards of the companies and installed new leadership.  (Balber TRO Aff., Ex. 98.)  Each of the
plaintiffs' purported shareholder meetings was held at the offices of CMS von Erlach Henrici
("CMS"), the Swiss counsel of Vistra.  (Stoffel TRO Aff. ¶ 31.)  Under applicable Swiss law,
bearer shares belong to the individual or entity that has possession of the shares. (Stoffel TRO
Aff. ¶ 33.)  However, the CMS junior associate that served as Secretary for the purported

_____

[6] Defendants do not intend to imply that the Court is incapable of applying Swiss law to a
dispute, but rather that doing so would constitute a significant burden to the Court.  Indeed, the
test is not whether the Court is able to adjudicate this dispute, but rather whether doing so would
impose a burden upon the Court. See, e.g., Bewers, 99 A.D.2d at 950.

12

meetings has testified that she had no idea who was in physical possession of the bearer shares for any of the Swiss companies at the time of the purported shareholder meetings. (Stoffel TRO Aff., Ex. 38 at 28:4-20, 36.) It is beyond dispute that, at all times after the summer of 2004, all of the outstanding shares of each of the Swiss Companies were "bearer" shares. (Stoffel TRO Aff. ¶ 32.)[7] Consequently, the legitimacy of the very shareholder meeting that purportedly established Plaintiffs' authority to represent the Swiss companies is an open issue that is governed by Swiss law. This issue, at the very minimum, must be decided before moving on to the allegations in the Complaint.

Other Swiss law issues also permeate this matter. For example, Dr. Stoffel is accused of violating fiduciary duties that were created by his contract with the Swiss parent of the U.S. companies, Colleen Investment AG The scope of his obligations and the general principles of the fiduciary duties that he owed will likely need to be determined under Swiss law. Similarly, the Swiss law distinction between legal and beneficial owner and their respective rights, duties and obligations, are highly relevant to the issues in this case. Indeed, Plaintiffs' purported inability to differentiate between the concepts of legal and beneficial owner has already sown much confusion in this case – the discussion of Dr. Stoffel's will in Plaintiffs' briefs in support of their request for a preliminary injunction is but one egregious example. (Stoffel TRO Aff. ¶ 54.)

The TRO application and defendants' response thereto also demonstrate an additional burden to litigating this case in New York, namely that of translation. Many of the documents at

---

[7] This issue is discussed more thoroughly in the memorandum of law of Dr. Stoffel and Lauramca Holdings LLC submitted in opposition to the Plaintiffs' application for a preliminary injunction. (Mem. of Law In Opp. to Pls.' Application for a TRO and a Prelim. Inj. 6-9, Jan. 2, 2008.)

issue in this dispute, from bank records to contracts to correspondence, are in German.  Those

documents need to be translated at a cost of tens of thousands of dollars, thereby adding

substantial costs and complexity to these proceedings.  Moreover, the accuracy of translations is

likely to become an issue, which will lead to litigation of collateral disputes that will further

burden this Court and increase the expense to the parties.

In addition, New York's interest in adjudicating this dispute pales in comparison to the

interests of Switzerland.  A final resolution of this dispute will require adjudication of Swiss

shareholder rights and legal principles, determinations of legal and beneficial ownership rights

and obligations under Swiss law and delineation of fiduciary rights and obligations under Swiss

law.  A final determination will also involve inquiry into and analysis of Swiss banking records,

an issue of much greater interest to Switzerland than to New York.

Finally, the Court of Appeals has recognized that any interests that New York may have

in a dispute can be taken into consideration and safeguarded by non-New York courts.  See, e.g.,

Boss v. Am. Express Fin. Advisors, 811 N.Y.S.2d 620; 6 N.Y.3d 242, 247 (N.Y. 2006) ("If New

York's interest in applying its own law to this transaction is as powerful as Plaintiffs contend, we

cannot assume that Minnesota courts would ignore it, any more than we would ignore the

interests or policies of the State of Minnesota where they were implicated.").  Thus, the interest

of Switzerland in adjudicating this dispute far outweigh those of the State of New York.

### 2. The Complaint Must Be Dismissed Because of the Potential Hardship to Defendants Dr. Stoffel and Lauramca

Other factors considered by courts in determining motions to dismiss under CPLR 327(a)

also require that the Complaint be dismissed.

The majority of the plaintiffs are Swiss companies.  (Mem. of Law in Supp. of Pls.' App.

for a TRO and a Prelim. Inj. at 1.)  Plaintiff Colleen AG, a Swiss company, owns plaintiffs

14

Colleen LLC and Logany LLC, two Delaware LLC's that are the only two U.S. entities among the plaintiffs. Id. at 5. None of the other plaintiffs are residents of the United States or U.S. companies, much less residents of New York or New York companies. Id. at 1-6. Even defendant Dr. Stoffel is a citizen of Switzerland. Id. at 5.

A transaction that could be dispositive of this entire litigation, the disputed shareholder meeting, occurred in Switzerland. (Mem. of Law In Opp. to Pls.' Application for a TRO and a Prelim. Inj. 7.) Indeed, the trust structure was conceived and formed in Switzerland. (Stoffel TRO Aff. Exs. 1-3.)

In fact, almost all of the relevant witnesses relating to the Complaint are located in Switzerland. For example, when Plaintiffs arranged for the purported shareholder meetings of the six Swiss companies, the only attendees at each of the meetings were attorneys from Vistra's Swiss counsel: Mr. Bernhard Lotscher, a partner, and Aline Wey Speirs, a junior associate. (Mem. of Law In Opp. to Pls.' Application for a TRO and a Prelim. Inj. 7.) A majority of the members of the board purportedly elected by Vistra are also all located in Switzerland and none of them are located in the United States, much less in New York. Similarly, the members of the board of directors, other than Dr. Stoffel, who were removed by Vistra, Mr. Georges Philippe (a Swiss attorney and owner of the Swiss company Orconsult) and Mr. Guido Banholzer (the CEO of Orconsult), reside in Switzerland. (Stoffel TRO Aff. ¶ 29.) Their actions on behalf of Orconsult and the various plaintiffs, as well as their actions regarding defendants Stoffel, Lauramca, Albe Assocs. Ltd., and Bluecolt Sec. occurred while they resided in Switzerland. (Stoffel TRO Aff. Ex. 63.) Swiss auditors have conducted annual reviews of the records of all six of the Swiss companies for nearly a decade. (Stoffel Aff. Ex. G, Aff. of Marco Stoffel, Colleen Inv. AG, Colleen Inv. LLC, and Logany, LLC v. Stoffel, No. 2672-VCS Del. Court of

15

Chancery Aug. 31, 2007 ¶7.) In light of the allegations of misappropriation of funds belonging directly or indirectly to those Swiss companies, the audits by those companies' Swiss auditors will likely be highly relevant. Orconsult, which owns the off-shore entities at issue here, managed the bank accounts at issue in this dispute, owns Orconsult Ltd., the trustee of the Aquarius and Capricorn Trusts, acted as trust manager and managed Dr. Stoffel's personal accounts, is also located in Switzerland. (Stoffel TRO Aff. ¶ 37.) Finally, the beneficiaries of the trusts, Cedric and Clarissa Blickle, are located in Switzerland. (Stoffel TRO Aff. ¶ 29.)

The majority of the relevant documentary evidence is also in Switzerland. In that regard, Dr. Stoffel has sent copies of the books and records of the U.S. plaintiffs to Switzerland for auditing on a yearly basis since 1999. (Stoffel Aff. Ex. G ¶7.) Indeed, plaintiffs have alleged that Dr. Stoffel has improperly moved most if not all of the LLC's relevant records to Switzerland. (Mem. of Law in Supp. of Pls.' App. for a TRO and a Prelim. Inj. 3.) The records of all of the six Swiss companies have always been maintained by a custodian in Switzerland. Id. The documents of the Swiss companies' Swiss auditors also are located in Switzerland. Id. Similarly Orconsult's records regarding the trusts and its management of Dr. Stoffel's personal funds are presumably located in Switzerland. Finally, Cedric and Clarissa Blickle's records are presumably located in Switzerland. The only records that presumably are not located in Switzerland are those of plaintiffs Vistra, Maytown, and Plympton, to the extent they are not with the trust manager Orconsult in Switzerland. But it is more than likely that the documents of those plaintiffs also are not located in New York, but rather in their offices on the Channel island of Jersey or in Bermuda. As such, the burden to those plaintiffs of transporting those records from their offices to Switzerland is likely to be comparable to transporting them to New York.

16

Plaintiffs already have able and sophisticated counsel in Switzerland that have been involved in this dispute from the start, are up to speed, and have the ability to handle the dispute in Switzerland. Indeed, Plaintiffs are represented in Switzerland by the CMS von Erlach Henrici, a member of the CMS network of firms that describes itself as a network of "nine top law firms" that form "one of the world's largest legal service organizations" with over 2,000 lawyers. http://www.cms-veh.com (last visited Jan. 17, 2008).

Regarding the availability of another forum, there simply is no question that Switzerland, arbitration proceedings in Switzerland, and arbitration proceedings generally, are available, proper and acceptable alternative forums. Citigroup Global Markets, Inc. v. Metals Holding Corp., 820 N.Y.S.2d 841 (Sup. Ct. N.Y. County 2006) (dismissing action because the dispute should have been heard in Swiss arbitration) (unpublished decision). See also Brooke Group Ltd. V. JCH Syndicate 488, 87 N.Y.2d 530 (N.Y. 1996) (affirming forum non conveniens dismissal of action because action should have been heard in foreign arbitration). Dr. Stoffel and Lauramca are willing to waive any objections that they might have to suit being brought in Switzerland for the relief sought in the complaints herein and to waive objections to the jurisdiction of the courts of Switzerland. Bewers, 99 A.D.2d at 949. They also are willing to accept service of process in Switzerland. Id. They will waive objections to making witnesses and documents available in Switzerland. Id. They consent to the full faith and credit for any judgment obtained against them in Switzerland. Id. And they are willing to waive any defense based on limitations of time that would be triggered between the time period of the filing of this Complaint and the commencement of the Swiss action, provided that any Swiss action be commenced within ninety days of this Court's dismissal or stay of this action. Id. Indeed, Dr.

17

Stoffel and Lauramca are already involved in legal proceedings with plaintiffs in Switzerland

that address many if not all of the same issues raised in the complaint.

## II. THE CONFLICTS IN THE COMPLAINT SHOULD BE HEARD IN ARBITRATION, PER THE AGREEMENTS FROM WHICH THEY ARISE.

Not only should the Complaint be dismissed or at a minimum stayed, but Plaintiffs

should be compelled to arbitrate this dispute in accordance with the arbitration provisions found

in the various agreements that gave rise to this dispute. The parties in this action, as well as

other parties in transactions that relate to this proceeding, have executed a number of agreements,

the overwhelming majority of which call for arbitration of disputes relating to those agreements.

As discussed below, those agreements encompass the claims Plaintiffs raise in the Complaint.

### A. Agreements to Arbitrate are Valid, Irrevocable, and Enforceable

This dispute arises out of the contractual relationships among the parties. As discussed

previously, virtually all of the various agreements among the parties contain broad and

comprehensive arbitration clauses. The Federal Arbitration Act ("FAA") broadly mandates that

arbitration agreements between parties are to be valid, irrevocable, and enforceable. 9 U.S.C. §2.

The FAA, in relevant part, says that

> A written provision in any . . . contract evidencing a transaction involving
> commerce to settle by arbitration a controversy thereafter arising out of such
> contract or transaction, or the refusal to perform the whole or any part thereof,
> or an agreement in writing to submit to arbitration an existing controversy
> arising out of such a contract, transaction, or refusal, shall be valid, irrevocable,
> and enforceable, save upon such grounds as exist at law or in equity for the
> revocation of any contract. Id.

This provision of the FAA has been read to mean that arbitration provisions are to be

construed broadly and parties to agreements containing arbitration clauses are bound by them.

Interpreting the FAA, the Supreme Court said "[c]ontracts to arbitrate are not to be avoided by

18

allowing one party to ignore the contract and resort to the courts." Southland Corp. v. Keating, 465 U.S. 1 (1984).

The FAA applies to both federal and state court actions. Id. at 15-16. More recently, the Supreme Court has reiterated the applicability of FAA in state courts. Buckeye Check Cashing, Inc. v. Cardegna, 546 U.S. 440, 445 (2006) (stating "[the FAA] appli[es] in state and federal courts."). In the present case, Plaintiffs seek to do exactly what the Supreme Court instructed against in Southland: bring a dispute to court when the dispute should rightly be resolved by an arbitration tribunal, as agreed upon by the parties.

The FAA establishes that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration. Moses H. Cone Memorial Hosp. v. Mercury Const. Corp., 460 U.S. 1, 25 (1983). New York Courts are in accord with this analysis of the FAA. In Flanagan v. Prudential-Bache Securities, Inc., the Court of Appeals of New York reaffirmed the Supreme Court's broad reading of the FAA, citing a litany of Supreme Court cases for the propositions that: (1) arbitration agreements are applicable in state and federal courts; (2) "[q]uestions of arbitrability are 'to be addressed with a healthy regard for the federal policy favoring arbitration;' and (3) 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'" 67 N.Y.2d 500 (1986) (citing Cone Hosp., 460 U.S. 1 (1983); Southland, 465 U.S. 1 (1984); Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614 (1985)).

**B. Arbitration Agreements Govern the Issues Raised by the Complaint**

The arbitration clauses in the agreements between Plaintiffs and defendants are very broad and encompass all of the claims against defendant. See Flanagan, 67 N.Y.2d 500, 509 (arbitration clauses governing disputes "arising out of" or "respecting" an agreement are to be read very broadly, even encompassing disputes arising after the termination of a contract or relationship). Consequently, the only pertinent issue for this court to decide in relation to the

19

arbitration agreements is whether the parties entered valid agreements, which they clearly did. See, e.g., Cooper v. Bruckner, 21 A.D.3d 758 (1st Dep't 2005) (internal citations omitted).

The documents between the parties clearly demonstrate that it was their intention to have disputes resolved through arbitration. For example, the Employment Agreement between Colleen Investment AG and Dr. Stoffel (Stoffel TRO Aff., Ex. 49 ¶15), calls for "any claim or controversy that arises out of or relates to this agreement, or breach of it, [to] be settled exclusively by arbitration in accordance with the rules of the Zurich Chamber of Commerce." The other agreements between the interested parties clearly indicate the wishes of the signatory parties regarding the arbitrability of disputes among them. (discussed, supra, at pp. 4-7.) These clauses are sufficiently broad to govern all of Plaintiffs' allegations and their eleven causes of action. Moreover, each of the plaintiffs is a party, or stands in the shoes of a party, to at least one of these arbitration provisions. The FAA and subsequent case law clearly indicate that the will of the parties, evidenced by these arbitration clauses, should be given effect.

Plaintiffs' attempt to have the present dispute resolved in the courts of New York is directly contrary to the express agreements between the parties and the well-established case law of both the New York Supreme Court and the Court of Appeals. These arbitration clauses make it clear that it is the intention of the parties to have the present dispute, and any other disputes arising out of their contractual relationships, resolved through binding arbitration. If any other forum would be appropriate, it would be the Channel island of Jersey, whose law is specified as controlling in several of the documents related to the creation of the trust structure and the trust structures' designation of beneficiaries (as opposed to the documents that govern Dr. Stoffel's relationship to the trust structure, which almost universally call for Swiss arbitration). To the extent that Jersey law applies to certain issues, Jersey law can be taken into consideration by the

20

Swiss arbitrators (whereas Jersey court proceedings cannot take the place of the Swiss arbitration called for by the relevant agreements). However, to the extent that the plaintiffs contend that this dispute would best be adjudicated in the Channel island of Jersey, the result in the instant case does not change: the Court should dismiss or stay this proceeding in favor of the foreign proceeding.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety without leave to amend. Or, in the alternative, the proceedings before this Court should be stayed, pending final determination of either the Swiss arbitration or proceeding.

Dated: New York, NY
      January 22, 2008

MORRISON & FOERSTER LLP

By: _____
     Thomas M. Mueller

Attorneys for Defendant
Dr. Marco Stoffel and Lauramca
Holdings, L.L.C.
1290 Avenue of the Americas
New York, NY  10104-0050
212.468.8000

21

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK: COMMERCIAL DIVISION

----------------------------------------------------x
                            :

VISTRA TRUST COMPANY (JERSEY) LIMITED :
AS TRUSTEE OF THE ALSAM, COLLEEN AND :
LOGANY SETTLEMENTS, COLLEEN :
INVESTMENT AG, ALSAM HOLDING AG, :
PENNY ASSET AG, LOGANY EQUITY AG, :
VIERWALDSTATTER BEITEILIGUNGEN AG, :
CLARICK AG, COLLEEN INVESTMENT, L.L.C., :
LOGANY, L.L.C. and WILLIAM TACON, :
RECEIVER AND MANAGER OF THE ASSETS :
OF MAYTOWN UNIVERSAL SA AND :
PLYMPTON UNIVERSAL SA, :
                            :

              Plaintiffs,     :

        -against-       :

DR. MARCO STOFFEL, ALBE ASSOCIATES :
LIMITED, BLUECOLT SECURITIES :
CORPORATION, LAURAMCA HOLDINGS, :
L.L.C., AND JOHN DOES 1-10, :

             Defendants.    :
                            :
                            :
----------------------------------------------------x

Index No. 116985/07
I.A.S. Part 56

Commercial Division
(Lowe, J.)


MEMORANDUM OF LAW OF
DEFENDANTS MARCO
STOFFEL AND LAURAMCA
HOLDINGS, L.L.C. IN
FURTHER SUPPORT OF
MOTION TO DISMISS

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 2

I.  THE ISSUES IN THE COMPLAINT SHOULD BE HEARD BY SWISS
    TRIBUNALS PURSUANT TO THE CONTRACTS FROM WHICH THEY
    ARISE ......................................................................................................... 2

    A.  Plaintiffs Are Bound by Documents Calling for Swiss Arbitration ...................... 2

    B.  The Claims Set Forth in the Complaint Are Encompassed by the
        Agreements ................................................................................................ 5

II. SUBSTANTIAL JUSTICE REQUIRES THAT THE ISSUES UNDERLYING
    THE COMPLAINT BE HEARD IN SWISS COURTS OR TRIBUNALS ...................... 7

    A.  Switzerland Is an Available Alternative Forum ................................................ 7

    B.  The Complaint Raises Issues That Would Be Unduly Burdensome for the
        Court ...................................................................................................... 10

    C.  The Complaint Must Be Dismissed Because of the Potential Hardship to
        Defendants .............................................................................................. 12

    D.  The Majority of Relevant Documents are Foreign ......................................... 13

    E.  This Dispute Has No Substantial Nexus to New York ..................................... 14

    F.  The Majority of Relevant Witnesses Reside in Switzerland ............................. 14

CONCLUSION ..................................................................................................... 15

# TABLE OF AUTHORITIES

## CASES                                                                 Page(s)

*Adriana Dev. Corp. N.V. v. Gaspar,*
   81 A.D.2d 235 (1st Dep't 1981)..................................................14

*Apollo Computer, Inc. v. Berg,*
   886 F.2d 469 (1st Cir. 1989)......................................................7

*Contec Corp. v. Remote Solution Co., Ltd.,*
   398 F.3d 205 (2d Cir. 2005) .....................................................6

*Daley v. Related Cos., Inc.,*
   198 A.D.2d 118 (1st Dep't 1993)................................................5

*First Options of Chicago, Inc. v. Kaplan,*
   514 U.S. 938 (1995)...............................................................6

*Flanagan v. Prudential-Bache Secs., Inc.,*
   67 N.Y.2d 500 (N.Y. 1986) ....................................................5

*Gilstrap v. Radianz Ltd.,*
   443 F. Supp. 2d 474 (S.D.N.Y. 2006) .........................................13

*IDS Life Ins. Co. v. SunAmerica, Inc.,*
   103 F.3d 524 (7th Cir. 1996) ...................................................3

*Internet Law Libr., Inc. v. Southridge Capital Mgmt. LLC,*
   223 F. Supp. 2d 474 (S.D.N.Y. 2002) .........................................11

*Islamic Republic of Iran v. Pahlavi,*
   62 N.Y.2d 474 (N.Y. 1984) ....................................................7

*Neuter, Ltd. V. Citibank, N.A.,*
   239 A.D.2d 213 (1st Dep't 1997)................................................8

*Prince Faisal Saud v. PIA Invs., Ltd.,*
   2007 U.S. Dist. LEXIS 92119 (S.D.N.Y. 2007)................................14

*PromoFone, Inc. v. PCC Mgmt., Inc.,*
   224 A.D.2d 259 (1st Dep't 1996)................................................4

*Smith Barney Shearson Inc. v. Sacharow,*
   91 N.Y.2d 39 (N.Y. 1997) ......................................................6

i

**CASES**                                                                                                **Page(s)**

*Troni v. Banca Popolare di Milano,*
  129 A.D.2d 502 (1st Dep't 1987)..............................................................................14

*Wyser-Pratte Mgmt. Co., Inc. v. Babcock Borsig AG,*
  7 Misc. 3d 1012(A) 2004 WL 3312835 (Sup. Ct. N.Y. Cty. 2004) ..........................8, 9, 11, 14

## STATUTES

28 U.S.C. § 1782...........................................................................................................13

In re Application of William Tacon and Vistra Trust Co. (Jersey) Ltd. For an Order of
  Judicial Assistance pursuant to 28 U.S.C. § 1782 (M19-139) (S.D.N.Y. 2007) ......................13

## OTHER AUTHORITIES

Rule 25 of the Zurich Chamber of Commerce (1989)..................................................................7

ny-801209

Defendants[1] respectfully submit this Memorandum of Law in Further Support of their

Motion to Dismiss the Complaint of Plaintiffs, dated December 21, 2007.

## PRELIMINARY STATEMENT

Plaintiffs, unable to pound the law and unable to pound the facts, pound the table instead.

Their opposition brief is rife with salacious innuendo about Dr. Marco Stoffel's lifestyle and

reputation.[2]  They focus on two U.S. companies, which they first describe as "New York

companies," then "New York-based US LLCs," then simply "US LLCs" (Pls.' Mem. of Law in

Opp. to Defs.' Mot. to Dismiss ("Opp") p. 4).  These companies, which are actually incorporated

in Delaware, are only small parts of a vast international structure firmly rooted in Switzerland.

(Mem. of Law in Supp. of Pls.' App. for a TRO and a Prelim. Inj. p 5.)

Plaintiffs' own characterization of the facts illustrate that this dispute has only tangential

connections to New York.  In that regard, Plaintiffs allege that Stoffel violated his contractual

obligations to them (governed by contracts calling for the application of Swiss law and

arbitration of any disputes before a Swiss tribunal) by using a British Virgin Islands ("BVI")

company (Albe), a Panamanian company (Bluecolt), and a Liechtenstein entity (Albeag) to

transfer assets from the U.K. bank accounts of the two BVI companies (Maytown and Plympton)

---

[1] Capitalized terms and abbreviations refer to the definitions set forth in Defendants' moving papers.

[2] Plaintiffs' allegations as to the merits are not relevant to Defendants' motion to dismiss. However, Plaintiffs' allegations conveniently ignore the fact that Stoffel had substantial personal funds under management with Orconsult prior to the creation of the trust structure. (Mem. of Law in Opp. to Pls.' App. for a TRO and a Prelim. Inj. ("TRO Opp.") p. 22.)  Those personal funds derived from earnings and investments as well as an inheritance from his family. (Id.) Plaintiffs use Orconsult's practice of commingling its clients' funds to incorrectly imply misappropriation of trust assets by Stoffel.  (Id. p. 20.)  Yet, Stoffel's personal funds were more than adequate to pay for the disputed transactions at issue here.  (Id. p. 22.)

1

through the U.K. bank accounts of seven Scottish partnerships, operated and owned by another Swiss company, Orconsult. (Id. pp. 4-8.)

This structure is in fact part of a large family trust formed by a German family, which holds certain funds in escrow for two charitable foundations. In that regard, three Jersey trusts were created by Angela Blickle in 1998 (Alsam, Logany, and Colleen Settlements, the "Jersey Trusts"). After a family dispute over these assets emerged after Ms. Blickle's death, three trusts were established in Bermuda in 1999, one for each family member (Aquarius, Capricorn, and Francis Trusts, the "Bermuda Trusts.") In addition to holding assets for the family members, various entities related to these trusts hold two charitable donations made by Ms. Blickle prior to their formation: a $24 million donation, of December 16, 1998, held by Maytown, Plympton, and the two DE LLCs; and a $12 million donation, held in escrow by Albe and Bluecolt.

Numerous agreements govern the relationships between these entities, the majority of which require application of Swiss law and adjudication of disputes in Swiss arbitration. Plaintiffs have not cited a single document, e-mail, or even conversation indicating that any parties ever contemplated an American forum for dispute resolution. Critical witnesses and documents are located in Switzerland. Swiss legal issues dominate this dispute. Consequently, Defendants' motion to dismiss must be granted.

<b>ARGUMENT</b>

**I. THE ISSUES IN THE COMPLAINT SHOULD BE HEARD BY SWISS TRIBUNALS PURSUANT TO THE CONTRACTS FROM WHICH THEY ARISE**

**A. Plaintiffs Are Bound by Documents Calling for Swiss Arbitration**

Citing twenty-four different documents, Defendants showed that several agreements illustrate that the issues in the Complaint should be addressed by Swiss arbitration tribunals. (Mem. of Law of Defs.' Marco Stoffel and Lauramca Holdings, L.L.C. in Supp. of Mot. to

2

Dismiss ("MTD") pp. 4-7.)    In response, Plaintiffs fail to cite a single document that contemplates dispute resolution in a U.S. court.   Instead, Plaintiffs mischaracterize the cited agreements in an unsuccessful attempt to distinguish them. (Opp. pp. 6-8, 19-21.)

For example, Plaintiffs incorrectly state that five of the agreements are "wholly between non-parties to this lawsuit." (Opp. p. 6.)  However, Stoffel signed each of these documents on behalf of either the Protector of the trust structure (Stoffel Aff. Exs. E, F; Stoffel TRO Aff. Ex. 50) or the Irish companies, which were owned by Plaintiffs.   (Stoffel TRO Aff. Ex. 7, 8.) Plaintiffs also assert that certain agreements are between Stoffel and nonparties to this action, which is not fully accurate. (Opp. p. 6.)  Two Trust Agreements were signed by Stoffel and Orconsult Limited, the latter signing on behalf of the Swiss companies that are plaintiffs here. (Stoffel TRO Aff. Ex. 39.)[3]  Finally, Plaintiffs assert that other agreements are between Plaintiffs and nonparties to this action.   (Opp. p. 7.)  However, several of these documents discuss the rights of the Protector of the trusts (who acted through Stoffel). (Balber TRO Aff. Exs. 3-5.)  In others, Stoffel signed for trust entities for whom he served as fiduciary. (Stoffel TRO Aff. Ex. 7; Stoffel Aff. Exs. B, C, D.)

Even assuming that certain Plaintiffs and Defendants are not signatories to these agreements, a party cannot evade an arbitration clause by teaming up and suing with a non-signatory to the agreements. See, e.g., IDS Life Ins. Co. v. SunAmerica, Inc., 103 F.3d 524, 530 (7th Cir. 1996) ("[S]uch a maneuver should not be allowed to succeed . . . [and] the court should

---

[3]  Orconsult is currently in litigation with Vistra in Switzerland determining who properly represented the Swiss companies, in whose name Vistra brings the Complaint. (Declaration of Marco Bazzani re Status of Swiss Proceedings  ("Bazzani Status Decl.") Ex. A. ¶ 24). This Swiss litigation is separate and distinct from the recently resolved Swiss litigation discussed below, which challenged the January 16, 2007 shareholder meetings in which Vistra's illegitimately "elected" directors of the Swiss Companies were removed from office.

3

stay the proceedings before it and let the arbitration go forward unimpeded.")  Further, New York courts frequently hold non-signatories to arbitration clauses.  See, e.g., PromoFone, Inc. v. PCC Mgmt., Inc., 224 A.D.2d 259, 260 (1st Dep't 1996) (upholding order to stay litigation and compel arbitration where the proceeding "included parties who were not signatories to the arbitration agreement, where the nonsigning party . . . is closely related to the signatories and is alleged to have engaged in substantially the same improper conduct.")  Swiss law, which Plaintiffs argue is controlling, similarly holds that nonparties may be bound to arbitration agreements.  (Declaration of Messrs Knoeplfer and Schweizer ("Knoeplfler/Schweizer Decl.") ¶ F.)  At the very least, all of the rights, duties, and relationships at issue here are derivative of, related to, and predicated upon two fundamental agreements: the original December 1998 donation agreement by Angela Blickle and the January 1999 escrow confirmation, which form the basis for the trust structure and the charitable donations being challenged by Plaintiffs. (Stoffel TRO Aff. Exs. 7, 8.) Both agreements apply to both charitable donations, expressly bind all successors and assigns, and call for Swiss arbitration pursuant to the rules of the Zurich Chamber of Commerce.  (Id.)

Plaintiffs also concede that they are signatories to Stoffel's Employment Agreement related to Colleen AG and the DE LLCs; however, they weakly argue that Stoffel has "no explanation" as to why Hans Ottiger, Director of Alsam Holding AG, could sign on behalf of Colleen AG and the DE LLCs.  (Opp. pp. 7-8, 17 n.5.)  The answer is simple:  Alsam Holding AG is the parent company of Colleen AG with its US subsidiaries, the DE LLCs.. Consequently,

4

Ottiger was perfectly able to enter into legal obligations that contained provisions binding the subsidiaries. Cf. Daley v. Related Cos., Inc., 198 A.D.2d 118, 118-19 (1st Dep't 1993).[4]

## B. The Claims Set Forth in the Complaint Are Encompassed by the Agreements

Plaintiffs also argue that certain of the claims presented by the Complaint fall outside the scope of the agreements. (Opp. p. 8, 19-24.) For example, Plaintiffs concede that, in addition to the Employment Agreement, they signed several Fiduciary Agreements with Dr. Stoffel, but argue the agreements were terminated and are limited in scope. (Id.)

Plaintiffs are wrong. The majority of the Complaint's allegations took place prior the termination of the Fiduciary Agreements, entered on January 5, 1999 and ostensibly terminated by letter on December 12, 2006. (Balber TRO Aff., Ex. 121.) Further, the agreements' obligations survive their termination and they (and other documents) feature expansive language that clearly encompasses the claims at issue. See, e.g., Flanagan v. Prudential-Bache Secs., Inc., 67 N.Y.2d 500, 509 (N.Y. 1986) (arbitration clause applied to tort claims because it governed disputes "arising out of" or "respecting" a contract; also holding that termination of contract did not alter its applicability). In that regard, the Fiduciary Agreements govern Stoffel's obligations as a fiduciary of the Swiss companies and his relationships with almost all of the Plaintiffs. Moreover, they clearly address "unlawful behavior" and "gross negligence," which surely encompass Plaintiffs' allegations of breach of fiduciary duties, fraud through breach of fiduciary duties, unjust enrichment at the expense of the trusts, conversion of trust assets, and other unlawful receipt of Plaintiffs' assets. (Complaint at ¶¶ 65-116; Balber TRO Aff. Exs. 15-17.)

---

[4] Ottiger also signed a separate document, the Adoptation of Escrow Confirmation, on behalf of Alsam Holding AG, and Plaintiffs had no problem conceding that his signature was sufficient to bind them. (Opp. p. 7) (classifying the document as an agreement between certain Plaintiffs and nonparties).

Plaintiffs also argue that the Court has "exclusive jurisdiction" to determine whether the parties agreed to arbitrate and if so, whether such agreements encompass the Complaint's claims. (Opp. p. 19.)[5]  However, "exclusive jurisdiction" to determine the scope of the arbitration agreements lies with an arbitrator, rather than the Court.  The requirement of judicial deference to parties' intent to "arbitrate arbitrability" was articulated by a unanimous U.S. Supreme Court in First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 943 (1995) ("Just as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute . . . so the question 'who has the primary power to decide arbitrability' turns upon what the parties agreed about that matter.").  Many of the agreements make clear that the scope or validity of their arbitration clauses must be determined through arbitration.  For example, the Employment Agreement states that "any claim or controversy that arises out of or relates to this agreement, or breach of it, shall be settled exclusively by arbitration . . ." (Stoffel TRO Aff. Ex. 49 ¶ 15) (emphasis added); the Fiduciary Agreements state that disputes "in connection with" the agreements will be submitted to arbitration.  (Balber TRO Aff. Exs. 15-17) (emphasis added).

Further, courts consistently hold that when parties contract for specific arbitration rules, they necessarily agree to all of the rules; this includes any and all rules regarding an arbitrator's ability to determine its own jurisdiction.  See, e.g., Smith Barney Shearson Inc. v. Sacharow, 91 N.Y.2d 39, 46-47 (N.Y. 1997) (incorporation of NASD Code interpreted as "'clear and unmistakable' expression of intent to leave the question of arbitrability to the arbitrators"); Contec Corp. v. Remote Solution Co., Ltd., 398 F.3d 205, 208 (2d Cir. 2005) (incorporation of

---

[5] Plaintiffs also characterize the pending arbitration proceedings as an attempt to "circumvent" this Court's jurisdiction.  However, Defendants only filed the action to put Plaintiffs' claims before the tribunal previously agreed to in the parties' contracts; accordingly, Plaintiffs should not have been surprised by the similarity in issues.  (Opp. p. 18.)

6

American Arbitration Association rules served as "clear and unmistakable evidence of the parties' intent" to arbitrate validity of the contract and arbitrability of issues); Apollo Computer, Inc. v. Berg, 886 F.2d 469, 473 (1st Cir. 1989) ("By contracting to have all disputes resolved according to the Rules of the ICC . . . Apollo agreed to be bound by . . . provisions [that] clearly and unmistakably allow the arbitrator to determine her own jurisdiction . . ."). In that regard, the Employment Agreement and several other documents call for arbitration in accordance with the rules of the Zurich Chamber of Commerce. (MTD pp. 4-7.) Rule 25 of the Zurich Chamber of Commerce clearly states that the arbitrators have the power to rule on their own jurisdiction. Juris Int'l – Int'l Arb. Rules of the Zurich Chamber of Commerce (1989), available at http://www.jurisint.org/doc/html/reg/en/2000/2000jiregen32.html (last visited Feb. 25, 2008). Similarly, the Fiduciary Agreements call for arbitration "according to the rules of the Swiss Code on International Private Law." (MTD p. 5.) Article 186 of such rules unmistakably states that the "Arbitral Panel shall rule on its own jurisdiction." Switzerland's Fed. Code on Prv. Int'l Law (CPIL) of December 18, 1987, available at http://www.umbricht.ch/pdf/SwissPIL.pdf (last visited Feb. 25, 2008). See also, (Knoeplfler/Schweizer Decl. ¶¶ C, D, G).

## II. Substantial Justice Requires That the Issues Underlying the Complaint Be Heard in Swiss Courts or Tribunals

Defendants also illustrated that each of the factors typically considered by courts in weighing substantial justice call for a dismissal on forum non conveniens grounds.

### A. Switzerland Is an Available Alternative Forum

Surprisingly, Plaintiffs argue that Switzerland is not available as an alternative forum, stating that "[t]his shortcoming is fatal to [Defendants'] forum non conveniens argument." (Opp. p. 10.) However, it is well settled that the lack of an alternative forum is not fatal to a forum non conveniens dismissal. See, e.g., Islamic Republic of Iran v. Pahlavi, 62 N.Y.2d 474, 481 (N.Y.

7

1984) ("Nor should proof of the availability of another forum be required in all cases before dismissal is permitted. That would place an undue burden on New York courts, forcing them to accept foreign-based actions unrelated to this State merely because a more appropriate forum is unwilling or unable to accept jurisdiction."). Moreover, Plaintiffs' only argument about such unavailability is a vague argument that a Swiss court might not have jurisdiction over certain parties. Defendants have already submitted to the jurisdiction of a Swiss arbitration panel. Id. at *4. See, e.g., Neuter, Ltd. V. Citibank, N.A., 239 A.D.2d 213 (1st Dep't 1997) ("There is no dispute that an alternative forum is available; defendant has consented to the jurisdiction of the Swiss courts.")[6] Regarding other defendants, courts have dismissed actions where foreign jurisdiction over all defendants was unclear, by providing that the plaintiffs may renew the actions against any defendants not amenable to foreign jurisdiction. Wyser-Pratte Mgmt. Co., Inc. v. Babcock Borsig AG, 7 Misc. 3d 1012(A), 2004 WL 3312835, *7 (Sup. Ct. N.Y. Cty. 2004).

---

[6] As to jurisdiction in Switzerland over Plaintiffs, they are six Swiss companies; two DE LLCs owned and controlled by one of the Swiss Companies; three Jersey Island trusts that Plaintiffs contend still hold as their principal assets the six Swiss companies; the purported trustee of the trusts that allegedly hold the six Swiss companies and the receiver of two BVI companies that hold assets on behalf of the trusts and the six Swiss companies. Thus, putting aside Plaintiffs' ability to consent to jurisdiction in Switzerland, it is clear that a Swiss court or tribunal would have jurisdiction over many more of the parties than would this Court.

Of course, the question of whether an alternate forum has jurisdiction is actually a question for the alternate forum to determine. In that regard, the arbitration proceeding pending in Switzerland, is currently determining whether it has jurisdiction over the same issues and relationships as those set forth in the Complaint. (Decl. of Thomas Mueller, Ex. A.) Defendants respectfully submit, should the Court have any questions as to the jurisdiction of the foreign tribunal, that the Court should stay the proceedings in the instant case until the foreign tribunal has made its determination regarding its jurisdiction. Defendants will stipulate to maintaining the current injunction against Stoffel's assets, as well as agreeing to allow disclosure to move forward.

8

Plaintiffs inexplicably cite <u>Wyser-Pratte Mgmt. Co., Inc.</u> for the proposition that the alternate forum must afford "complete relief as to the claims alleged in the Complaint." (Opp. p. 10.) However, the case stands for exactly the opposite proposition: "a given forum is not inadequate merely because it does not recognize certain claims . . . ." <u>Wyser-Pratte Mgmt. Co., Inc.</u>, 7 Misc. 3d 1012(A) at *6. Regardless, Switzerland's adequacy is illustrated by the several pending Swiss proceedings related to the issues set forth in the Complaint. <u>Id.</u> (dismissing complaint, in part, because the plaintiffs had previously commenced actions in the foreign jurisdiction "based on at least some of the events underlying the current action").

Moreover, Switzerland is actually a better forum than New York for adjudication of this dispute. The majority of critical witnesses are located in Switzerland. They include, but are not limited to: the beneficiaries of the disputed trust entities (Holger, Clarissa, and Cedrick Blickle); the lawyers, bankers, and accountants that participated in the establishment of the trust structure on behalf of the Blickle family (Messrs. Hug, Topf, et al.); the majority of the purported directors of the Swiss companies "installed" in Plaintiffs' illegitimate December 6, 2006 shareholder meetings (Damiano della Ca, Ernst Blatter, and Gabrieal Krug)[7]; the sole participants of the disputed December 6, 2006 shareholder meetings (Bernhard Loetscher and Aline Wey Speirs); all of the legitimate prior directors of the Swiss companies other than Stoffel (Urs Christen, Hans Ottiger, Georges Phillip, and Guido Banholzer); all of the accountants of the Swiss companies (Christen, Ottiger, Treuhand Mettler, and STM Treuhand); the auditors of the Swiss companies and trust assets (Rinderer, Auditco, Gebert, Gebert Treuhand); and Orconsult, the manager of the disputed trust assets, and its principals Philip Banholzer and Georges Philippe, who managed

---

[7] The remaining two directors of the Swiss companies and the only managers of the two DE LLCs appointed by Vistra are Rodney Hodges and Lisa Scott-Tomlin, both of whom reside in the United Kingdom.

9

Stoffel's private funds, owned the trustee Orconsult Ltd., operated the offshore entities at issue here, and were integral to and carried out the bank transfers that are central to all of Plaintiffs' claims. (Complaint at ¶¶ 65-111.)[8]

If this dispute were to proceed in New York, such witnesses' testimony would be available only through the Hague Convention on the Taking of Evidence Abroad. (Decl. of M. Bazzani re: Witnesses in Switzerland ¶ 3.) The Convention requires that such examination be conducted by a Swiss judge, rather than through counsel. (Id. ¶¶ 4-7.) No transcript of such examination would be available; instead a judge prepares a summary of each examination, putting Defendants at a severe disadvantage in refuting Plaintiffs' claims. (Id.) In contrast, Swiss citizens must testify in Swiss proceedings if they are called. (Id. ¶ 9.) Further, Orconsult is even now a party to the Swiss arbitration. (Decl. of Thomas Mueller, Ex. A; Stoffel Aff. in Supp. of Mot. to Dismiss Aff Ex. A.)[9] Accordingly, obtaining testimony in connection with a Swiss proceeding would be infinitely easier than doing so in support of a lawsuit in this Court.

**B. The Complaint Raises Issues That Would Be Unduly Burdensome for the Court**

Defendants demonstrated the undue burden on the Court of having to apply Swiss law, which clearly governs significant aspects of this litigation. (MTD pp. 11-12.) Plaintiffs counter

---

[8] Orconsult indisputably is at the center of this dispute. Plaintiffs allege that Stoffel accessed trust assets via faxes to Orconsult in eighty-two purported transactions in which Stoffel allegedly instructed Orconsult (in Switzerland) to pay invoices from foreign partnerships out of the funds of two BVI companies. (Balber TRO Aff. ¶ 19, Ex. 27.) All of the purported transactions involved payments from a bank account in the United Kingdom. (Id.) The only connection to New York that Plaintiffs draw from these transactions is the tepid assertion that "Stoffel used a fax machine in his New York office to seek payment . . ." (Opp. p 4.)

[9] Orconsult's status as a party to the Swiss arbitration also enhances the possibility of an enforceable award. It directs access to the accounts of Albe and Bluecolt, which, according to Plaintiffs, include disputed assets. (Balber TRO Aff. Exs. 38-79.) Whether an award by this Court would be enforceable against Orconsult (not a named party here) or Albe and Bluecolt (neither has appeared here) in Switzerland or any other foreign jurisdiction is questionable.

that some claims may not be governed by Swiss law. (Opp. pp. 12-13.) Plaintiffs are wrong. New York courts have declared that fraud, tort, and other "non-contract" claims are governed by choice-of-law provisions when those provisions are coupled with broad forum-selection clauses. See, e.g., Internet Law Libr., Inc. v. Southridge Capital Mgmt. LLC, 223 F. Supp. 2d 474 (S.D.N.Y. 2002). Further, even if some of the claims asserted in the Complaint do not involve Swiss law, clearly the core claims of who owed what duties and obligations to whom require a thorough understanding of Swiss law.

While the Court is capable of applying Swiss law, a Swiss court "is more familiar with such law and thus better equipped to apply that law." Wyser-Pratte Mgmt. Co., Inc., 7 Misc.3d 1012(A), at *5. There is no question that Swiss legal issues dominate this dispute. The most critical example is Plaintiffs' own standing to act on behalf of the Swiss companies and the other trust entities. [10] In the time period between Defendants' filing of their motion to dismiss and the filing of this reply, events in litigation pending in Switzerland confirm that Plaintiffs indeed lack standing before this Court, or any court, to bring claims on behalf of the disputed trust entities. The directors of the Swiss companies improperly appointed by plaintiff Vistra on December 6, 2006, were removed in a properly conducted shareholders' meeting on January 16, 2007. (Bazzani Status Decl. ¶ 8.) Vistra's challenge to the January 16 shareholders' meeting has been abandoned. (Id. ¶ 10-11.) The Swiss statute of limitations for any other challenges to the January meetings has expired. (Id. ¶ 12.) Consequently, as a matter of Swiss law, due to their

---

[10] Plaintiffs attempted to obfuscate this proceeding by arguing that Stoffel has supposedly "admitted" that he was removed in statements in a related proceeding. (Opp. p. 18.) Plaintiffs grossly mischaracterize his statements, as Stoffel has clearly stated that he disputes the legitimacy of the December 6, 2006 meetings. (Stoffel TRO Aff. ¶ 31-33.) Second and more importantly, even assuming that Stoffel conceded that he was properly removed, such an admission would not confirm Plaintiffs' standing to represent the Swiss companies.

11

removal in January 2007, Plaintiffs do not properly represent the Swiss companies in whose name they bring the Complaint. (Id. ¶ 13, 15, 16.)

Plaintiffs' own arguments further illustrate that Swiss legal questions dominate this dispute. (Opp. pp. 21-23.) They argue that under Swiss law: (1) agreements to arbitrate bind only the parties that entered the agreements; (2) nonsignatories to arbitration provisions may not invoke them; (3) arbitrable claims are severable from non-arbitrable claims; and (4) arbitration clauses encompass only claims "in connection with" the agreements and not related torts. (Id.)

In interpreting Swiss law, Plaintiffs even stretch the statements of their own "expert."[11] For example, in considering whether arbitration provisions encompass similar claims sounding in tort, Plaintiffs fail to acknowledge their expert's statement that when non-contract claims arise from the same facts as the contract claims, the non-contract claims will be considered in the arbitration "to avoid inconsistent judgments of arbitral and state courts." (Loetscher Decl. ¶ 10.) This case certainly fits that standard. But, as pointed out above, that interpretation of Swiss law – and the many others this case requires – could best be decided by a Swiss tribunal.

## C. The Complaint Must Be Dismissed Because of the Potential Hardship to Defendants

Plaintiffs argue that Stoffel will not suffer hardship if required to litigate in New York because he is a "New York resident of substantial means." (Opp. pp. 10-11.) Plaintiffs also cite previous New York litigation in which he participated. (Opp. p. 11.) Plaintiffs neglect to point out that Stoffel's "substantial means" are subject to an injunction in this proceeding.

---

[11] Mr. Loetscher certainly is no independent expert. Not only is he counsel for Plaintiffs in the various pending Swiss proceedings, but also he is a witness and an interested party. In that regard, Mr. Loetscher and his junior associate Aline Wey Speirs were the only two purported shareholder representatives at each of the six December 6, 2006 sham shareholder meetings in which Vistra purportedly elected directors that in turn authorized Plaintiffs' pursuit of Stoffel. (TRO Opp. p. 7.)

12

Consequently, vis-à-vis an expedited, simplified arbitration proceeding – one that he contracted for with Plaintiffs – a proceeding before this Court indeed poses certain and substantial hardship. Further, Stoffel's previous litigations in New York have nothing to do with whether this dispute is properly before the Court. See, e.g., Gilstrap v. Radjanz Ltd., 443 F. Supp. 2d 474, 489 (S.D.N.Y. 2006) ("[P]rior litigation in this District should not carry much weight in the forum non conveniens analysis, as the inquiry is necessarily fact-specific."). The first litigation identified by Plaintiffs was a landlord/tenant dispute over a building in downtown Manhattan. (Opp. p. 11.) The second litigation was a divorce dispute. (Id.) Unlike this dispute, neither litigation had anything to do with foreign entities or Swiss law.

More importantly, as set forth above, the real hardship to Stoffel in defending this suit is compounded by the unavailability of crucial third-party witnesses located in Switzerland who would be available and could be compelled to testify in a Swiss court or arbitral proceeding. The inability to compel such testimony before this Court would severely prejudice Stoffel's ability to defend against Plaintiffs' allegations. [12]

### D. The Majority of Relevant Documents are Foreign

Plaintiffs imply that Stoffel cannot, in good faith, make arguments based on the fact that the majority of the relevant documents in this proceeding are located in Switzerland. (Opp. 14-15.) Further, Plaintiffs argue that foreign documents can be translated into English. (Id. p. 14.) Plaintiffs' focus on the DE LLCs' documents uses the tail to wag the dog. The DE LLCs are only two small members of a sprawling international structure. Documents for all of the trust

---

[12] Plaintiffs, by contrast, have already conducted extensive U.S. discovery in this and other related actions; further, they can continue to do so pursuant to 28 U.S.C. § 1782, which they have already taken advantage of to obtain deposition testimony and documents from Stoffel. See, e.g., In re Application of William Tacon and Vistra Trust Co. (Jersey) Ltd. For an Order of Judicial Assistance pursuant to 28 U.S.C. § 1782 (M19-139) (S.D.N.Y. 2007).

13

entities are relevant to this dispute, not just those for the two DE LLCs. Moreover, there is no dispute that all of those documents are now located in Switzerland. Further, the fact that documents <u>can</u> be translated into English does not change the fact that such translation would be unduly burdensome. The need for extensive translation is commonly held to be a factor in dismissing actions for forum non conveniens. See <u>Wyser-Pratte Mgmt. Co., Inc.</u>, 7 Misc. 3d 1012(A), at *4; <u>Troni v. Banca Popolare di Milano</u>, 129 A.D.2d 502 (1st Dep't 1987).

**E. This Dispute Has No Substantial Nexus to New York**

Plaintiffs argue that their claims are "strongly tied" to New York because Defendants and the two "New York-based" companies are in the state. (Opp. p. 15.) They also argue that New York's interest is "heightened" because many disputed assets are also in the state. (Opp. p. 16.)

As to Stoffel's citizenship and that of the two DE LLCs, CPLR 327(a) sets forth the standard for dismissals due to inconvenient forum: the "domicile or residence in this state of any party to the action shall not preclude the court from staying or dismissing the action." Similarly, the location of property in New York is not, on its own, grounds for maintaining litigation that should be adjudicated elsewhere. See, e.g., <u>Adriana Dev. Corp. N.V. v. Gaspar</u>, 81 A.D.2d 235 (1st Dep't 1981) (dismissing the case despite the fact that the real property at issue was located in New York); <u>Prince Faisal Saud v. PIA Invs., Ltd.</u>, 2007 U.S. Dist. LEXIS 92119 (S.D.N.Y. 2007) (same). If the Court would rather stay the proceedings than dismiss them outright, Defendants are amenable to the Court maintaining its injunction against the disputed assets, thereby protecting the state's interests over them.

**F. The Majority of Relevant Witnesses Reside in Switzerland**

Plaintiffs also argue that many relevant witnesses are located in New York, as illustrated by their recently served thirty-three subpoenas. (Opp. pp. 13-14.) They also argue that foreign witnesses may be able to testify in English. (Opp. p. 14.) Plaintiffs also argue that many

individuals related to the DE LLCs are located in New York – again ignoring the fact that the DE LLCs are but one small facet of a multi-entity, multi-national dispute. (Opp. pp. 4-5.)

Plaintiffs' subpoenas are no indication of who the relevant witnesses are in this proceeding. The subpoenas almost uniformly are requests to parties that will not and could not testify as to the Complaint's allegations. Of the thirty-three subpoenas, three are to the foundations, which are headed by Stoffel. The remaining thirty subpoenas only seek documents from banks, investment managers, tax preparers, art galleries, car dealerships, and grant recipients. In contrast, as set forth above, almost all of the key figures and witnesses in this dispute are located in Switzerland. Many of these witnesses may testify in German, French or Italian, possibly requiring translation to English. But regardless of what language they use, obtaining meaningful testimony from such critical third-party witnesses under the Hague Convention procedures would be costly, difficult and highly prejudicial to the defense.

### CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety without leave to amend. Or, in the alternative, the proceedings before this Court should be stayed, pending final determination of the Swiss arbitration.

Dated: New York, NY
February 26, 2008

MORRISON & FOERSTER LLP

By: _____
Thomas M. Mueller

Attorneys for Defendants
Dr. Marco Stoffel and Lauramca
Holdings, L.L.C.
1290 Avenue of the Americas
New York, NY  10104-0050
212.468.8000

15

ny-801209

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE
OF THE ALSAM, COLLEEN, AND LOGANY SETTLEMENTS,
COLLEEN INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG, VIERWALDSTATTER
BETEILIGUNGEN AG, CLARICK AG, COLLEEN INVESTMENT,
L.L.C., and WILLIAM B. TACON, RECEIVER AND MANAGER
OF THE ASSETS OF MAYTOWN UNIVERSAL SA AND
PLYMPTON UNIVERSAL SA,

Plaintiffs,

- against -

DR. MARCO STOFFEL, ALBE ASSOCIATES LIMITED,
BLUECOLT SECURITIES CORPORATION, LAURAMCA
HOLDINGS, LLC, and JOHN DOES 1 - 10

Defendants.

Index No. 116985/07
I.A.S. Part 56

Commercial Division
(Lowe, J.)

---

MEMORANDUM OF LAW OF DEFENDANTS MARCO STOFFEL AND
LAURAMCA HOLDINGS, L.L.C. IN FURTHER SUPPORT OF MOTION TO DISMISS

---

Morrison & Foerster LLP
Attorneys for Defendants Dr. Marco Stoffel and
Lauramca Holdings LLC
1290 Avenue of the Americas, New York, New York 10104
(212) 468-8000

All communications should be referred to:
Thomas M. Mueller, Esq.

Exhibit 4

# FIDUCIARY AGREEMENT

between

Chiltern Trust Company (Jersey) Limited as Trustees of the Alsam Settlement

(hereinafter called the Principal)

and

Dr. Marco Stoffel (Zurich)

(hereinafter called the Trustee)

concerning

the Trustee's activity as

Member of the Board of Directors of Alsam Holding AG and Penny Asset AG
and General Attorney of First Aim Management Ltd.

(hereinafter referred to as the Activity
resp.as the Company)

**Commencement of the Agreement**

This Agreement shall become effective, if need be retroactively, upon receipt by the Trustee of the Principal's instructions with respect to the Trustee's Activity.

**Duties and Obligations of the Trustee**

The Trustee undertakes to act according to the instructions from the Principal. He may also act on instructions received from third parties provided the Principal has informed the Trustee that such third parties are entitled to give instructions on his behalf.

The Trustee shall be entitled to act at his own discretion a) in the case of contradictory instructions, b) if it is not possible to ask for instructions or if the instructions are not received in due course, and c) whenever special instructions are not required.

In all cases the applicable legislation, the Trustee's moral standards and the rules of his professional and social standing shall prevail.

**Duties and Obligations of the Principal**

The Principal undertakes to meet without reservation and in their entirety all liabilities, costs and other financial duties and obligations the Trustee might incur because of the Activity.

Neither the Principal nor third parties on whom the Principal can have an influence, shall hold the Trustee liable for any damages whatsoever resulting from the Activity.

The Principal shall assume and pay at first request the Trustee's expenses from any legal proceedings with regard to his Activity, and such obligation shall not be affected by any termination of the Agreement.

349

2

The Trustee is liable for unlawful behaviour or in gross negligence (article 100, para. 1 of the Swiss Code of Obligations).

The principal shall inform the Trustee at least twice a year of the status and the development of the Company should the Trustee not receive or be in possession of such information anyway.

In the event of the Company's insolvency the Principal will subordinate his present and future claims against the Company in favour of all other persons and entities, including the Trustee. The Principal undertakes to make sure that the Company always has sufficient means to promptly meet its commitments, in particular the claims of the Company's creditors, the tax authorities and the Trustee, etc.

**Payment to the Trustee**

The Trustee shall receive a sum of Fr. 30'000.- as compensation for his assuming the function or functions defined as Activity. Further, he shall be entitled to a regular adjustment for inflation. Additional services and expenses shall be reimbursed separately.

**Termination of the Trust Agreement**

This Agreement can be terminated at any time with immediate effect by either party; for termination by the Principal the consent of the Protector New Eagle Corporation Limited is needed to be effective. The Principal's obligations remain in force for as long as the Trustee, as result of the Activity, has a responsibility towards the Company or third parties, or for as long as any claims from his Activity can be made against him.

The Principal undertakes to bind over to any successor all of his obligations resulting from this Agreement. He shall be liable for the Trustee's claims until the latter expressly releases him from his obligation.

**Final Provisions**

The Trustee may, if legally obliged, submit this Agreement to the Swiss authorities.

This Agreement is exclusively subject to SWISS LAW. In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being ZURICH.

Place/Date

The Principal                                          The Trustee

350

# FIDUCIARY AGREEMENT

between

Chiltern Trust Company (Jersey) Limited as Trustees of the Colleen Settlement

(hereinafter called the Principal)

and

Dr. Marco Stoffel (Zurich)

(hereinafter called the Trustee)

concerning

the Trustee's activity as

**Member of the Board of Directors of Colleen Investment AG
and General Attorney of Madison Corporation Development Ltd.**

(hereinafter referred to as the Activity
resp as the Company)

---

**Commencement of the Agreement**

This Agreement shall become effective, if need be retroactively, upon receipt by the Trustee of the Principal's instructions with respect to the Trustee's Activity.

**Duties and Obligations of the Trustee**

The Trustee undertakes to act according to the instructions from the Principal. He may also act on instructions received from third parties provided the Principal has informed the Trustee that such third parties are entitled to give instructions on his behalf.

The Trustee shall be entitled to act at his own discretion a) in the case of contradictory instructions, b) if it is not possible to ask for instructions or if the instructions are not received in due course, and c) whenever special instructions are not required.

In all cases the applicable legislation, the Trustee's moral standards and the rules of his professional and social standing shall prevail.

**Duties and Obligations of the Principal**

The Principal undertakes to meet without reservation and in their entirety all liabilities, costs and other financial duties and obligations the Trustee might incur because of the Activity.

Neither the Principal nor third parties on whom the Principal can have an influence, shall hold the Trustee liable for any damages whatsoever resulting from the Activity.

The Principal shall assume and pay at first request the Trustee's expenses from any legal proceedings with regard to his Activity, and such obligation shall not be affected by any termination of the Agreement.

351

2

The Trustee is liable for unlawful behaviour or in gross negligence (article 100, para. 1 of the Swiss Code of Obligations).

The principal shall inform the Trustee at least twice a year of the status and the development of the Company should the Trustee not receive or be in possession of such information anyway.

In the event of the Company's insolvency the Principal will subordinate his present and future claims against the Company in favour of all other persons and entities, including the Trustee. The Principal undertakes to make sure that the Company always has sufficient means to promptly meet its commitments, in particular the claims of the Company's creditors, the tax authorities and the Trustee, etc.

**Payment to the Trustee**

The Trustee shall receive a sum of Fr. 20'000.-- as compensation for his assuming the function or functions defined as Activity. Further, he shall be entitled to a regular adjustment for inflation. Additional services and expenses shall be reimbursed separately.

**Termination of the Trust Agreement**

This Agreement can be terminated at any time with immediate effect by either party; for termination by the Principal the consent of the Protector New Eagle Corporation Limited is needed to be effective. The Principal's obligations remain in force for as long as the Trustee, as result of the Activity, has a responsibility towards the Company or third parties, or for as long as any claims from his Activity can be made against him.

The Principal undertakes to bind over to any successor all of his obligations resulting from this Agreement. He shall be liable for the Trustee's claims until the latter expressly releases him from his obligation.

**Final Provisions**

The Trustee may, if legally obliged, submit this Agreement to the Swiss authorities.

This Agreement is exclusively subject to SWISS LAW. In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being ZURICH.

Place/Date   July, Jun 7, 99

The Principal                                    The Trustee   

352

# FIDUCIARY AGREEMENT

between

Chiltern Trust Company (Jersey) Limited as Trustees of the Logany Settlement

(hereinafter called the Principal)

and

Dr. Marco Stoffel (Zurich)

(hereinafter called the Trustee)

concerning

the Trustee's activity as

**Member of the Board of Directors of Logany Equity AG
and General Attorney of Millenium Import/Export Ltd.**

(hereinafter referred to as the Activity
resp. as the Company)

---

**Commencement of the Agreement**

This Agreement shall become effective, if need be retroactively, upon receipt by the Trustee of the Principal's instructions with respect to the Trustee's Activity.

**Duties and Obligations of the Trustee**

The Trustee undertakes to act according to the instructions from the Principal. He may also act on instructions received from third parties provided the Principal has informed the Trustee that such third parties are entitled to give instructions on his behalf.

The Trustee shall be entitled to act at his own discretion a) in the case of contradictory instructions, b) if it is not possible to ask for instructions or if the instructions are not received in due course, and c) whenever special instructions are not required.

In all cases the applicable legislation, the Trustee's moral standards and the rules of his professional and social standing shall prevail.

**Duties and Obligations of the Principal**

The Principal undertakes to meet without reservation and in their entirety all liabilities, costs and other financial duties and obligations the Trustee might incur because of the Activity.

Neither the Principal nor third parties on whom the Principal can have an influence, shall hold the Trustee liable for any damages whatsoever resulting from the Activity.

The Principal shall assume and pay at first request the Trustee's expenses from any legal proceedings with regard to his Activity, and such obligation shall not be affected by any termination of the Agreement.

353

2

The Trustee is liable for unlawful behaviour or in gross negligence (article 100, para. 1 of the Swiss Code of Obligations).

The principal shall inform the Trustee at least twice a year of the status and the development of the Company should the Trustee not receive or be in possession of such information anyway.

In the event of the Company's insolvency the Principal will subordinate his present and future claims against the Company in favour of all other persons and entitles, including the Trustee. The Principal undertakes to make sure that the Company always has sufficient means to promptly meet its commitments, in particular the claims of the Company's creditors, the tax authorities and the Trustee, etc.

**Payment to the Trustee**

The Trustee shall receive a sum of Fr. 20'000.- as compensation for his assuming the function or functions defined as Activity. Further, he shall be entitled to a regular adjustment for inflation. Additional services and expenses shall be reimbursed separately.

**Termination of the Trust Agreement**

This Agreement can be terminated at any time with immediate effect by either party; for termination by the Principal the consent of the Protector New Eagle Corporation Limited is needed to be effective. The Principal's obligations remain in force for as long as the Trustee, as result of the Activity, has a responsibility towards the Company or third parties, or for as long as any claims from his Activity can be made against him.

The Principal undertakes to bind over to any successor all of his obligations resulting from this Agreement. He shall be liable for the Trustee's claims until the latter expressly releases him from his obligation.

**Final Provisions**

The Trustee may, if legally obliged, submit this Agreement to the Swiss authorities.

This Agreement is exclusively subject to SWISS LAW. In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being ZURICH.

Place/Date        _Zurich, Jan 5, 99_

The Principal                                    The Trustee

354

Exhibit 5

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM R. TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

Index No. 116985/07

I.A.S. Part 56

Commercial Division

(Lowe, J.)

                                    Plaintiffs,

                        -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

                                    Defendants.

**PLAINTIFFS' MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS MARCO STOFFEL AND
LAURAMCA HOLDINGS, L.L.C.'S MOTION TO DISMISS**

CHADBOURNE & PARKE LLP
Attorneys for Plaintiffs
30 Rockefeller Plaza
New York, New York 10112
(212) 408-5100

# TABLE OF CONTENTS

Page

PRELIMINARY STATEMENT ................................................................................2

COUNTERSTATEMENT OF FACTS ....................................................................3

    A.    This Case Has Substantial Connections To New York ..........................4

    B.    Stoffel Seeks To Rely On Third Party Agreements To Require The Parties To Litigate In Switzerland ...............................................................5

        1.    Stoffel Seeks To Rely On Agreements Wholly Between Non-Parties ...........................................................................6

        2.    Stoffel Seeks To Rely On Agreements Between Himself And Non-Parties...................................................................6

        3.    Stoffel Seeks To Rely On Agreements Between Certain Plaintiffs And Non-Parties..................................................7

    C.    The Remaining Agreements Do Not Mandate That Plaintiffs Litigate This Dispute In Switzerland.................................................................7

ARGUMENT.............................................................................................................8

I.    NEW YORK IS THE PROPER FORUM FOR THE RESOLUTION OF THIS DISPUTE ..............................................................................................8

    A.    Switzerland Is Not An Available Alternative Forum ..........................9

    B.    Stoffel Will Suffer No Hardship If This Case Is Permitted To Proceed In New York, His Place Of Residence........................................................10

    C.    Litigation Of This Action In New York Will Not Place A "Heavy And Inappropriate" Burden On The New York Courts ................................11

        1.    This Court Is Qualified To Address Any Questions Of Foreign Law.........................................................................12

| | 2. | Stoffel Provides No Evidence Supporting His Claim That Many Of The Relevant Documents Are In Switzerland Or That Witnesses Would Be Unable To Testify In English ........................................ 13 |
|---|---|---|
| D. | | A Substantial Nexus Exists Between Plaintiffs' Claims And New York .. 15 |
| | 1. | This Is Not An Action Between Nonresidents ................................... 15 |
| | 2. | New York Has A Substantial Interest In Adjudicating This Dispute .......................................................................... 15 |
| E. | | No Forum Selection Clause Mandates That This Dispute Be Litigated In Switzerland ............................................................................ 17 |
| F. | | Stoffel Cannot Maintain His Standing Argument ...................................... 18 |
| II. | | STOFFEL'S ATTEMPT TO CIRCUMVENT THIS COURT'S JURISDICTION BY FILING A SWISS ARBITRATION PROCEEDING SHOULD BE REJECTED ............................................................... 18 |
| A. | | Stoffel Cannot Compel Plaintiffs To Arbitrate Based Upon An Agreement To Which He And Plaintiffs Are Not Both Parties ................ 19 |
| B. | | The Fiduciary Agreements Do Not Require Arbitration of Vistra's Claims ..................................................................... 21 |
| CONCLUSION ............................................................................ 25 | | |

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page(s)**

Anagoustou v. Stifel,
    204 A.D.2d 61 (1st Dep't 1994) ................................................................10, 13

Banco Ambrosiano, S.p.A. v. Artoc Bank & Trust Ltd.,
    62 N.Y.2d 65 (1984) ........................................................................................8

Bata v. Bata,
    304 N.Y. 51 (1952) ........................................................................................16

Coastal Caisson Corp. v. E.E. Cruz/NAB/Frontier-Kemper,
    No. 05 Civ. 7462, 2007 WL 2285936 (S.D.N.Y. Aug. 10, 2007) ................19

Collins & Aikman Prods. Co. v. Building Sys., Inc.,
    58 F.3d 16 (2d Cir. 1995) ..............................................................................23

Continental Pac. Shipping v. CIT Group/Equip. Fin.,
    96 Civ. 2646, 1996 U.S. Dist. LEXIS 14736
    (S.D.N.Y. Oct. 17, 1996) ......................................................................10-11, 15

David J. Threlkeld & Co. v. Metallgesellshaft Ltd.,
    923 F.2d 245 (2d Cir. 1991) ..........................................................................19

Fantis Foods, Inc. v. Standard Importing Co.,
    63 A.D.2d 52 (1st Dep't 1978), rev'd on other grounds 49 N.Y.2d 317
    (1980) .............................................................................................................23

Finance One Public Co. v. Lehman Bros. Special Fin., Inc.,
    414 F.3d 325 (2d Cir. 2005) ..........................................................................12

Garmendia v. O'Neill,
    2007 N.Y. App. Div. LEXIS 12721 (1st Dep't Dec. 18, 2007) .....................16

Greater New York Mut. Ins. Co. v. Rankin,
    298 A.D.2d 263 (1st Dep't 2002) ..................................................................20

Gulf Oil Corp. v. Gilbert,
    330 U.S. 501 (1947) ........................................................................................8

Gyenes v. Zionist Org. of America,
    169 A.D.2d 451 (1st Dep't 1991) ................................................................14

Hartford Accident & Ind. Co. v. Swiss Reinsurance Am. Corp.,
    246 F.3d 219 (2d Cir. 2001) ....................................................................19

Islamic Rep. of Iran v. Pahlavi,
    62 N.Y.2d 474 (1984) ..............................................8, 9, 11, 12, 15

J.A.O. Acquisition Corp. v. Stavitsky,
    192 Misc. 2d 7 (Sup. Ct. N.Y. Co. 2001) ....................................13

Kenyon & Kenyon v. Logany LLC,
    No. 600949/05, 2005 WL 3501562 (Sup. Ct. N.Y. Co. Dec. 21, 2005)..........11

L-3 Communs. Corp. v. Channel Techs., Inc.,
    291 A.D.2d 276 (1st Dep't 2002) ............................................17

Mandelbaum v. Mandelbaum,
    151 A.D.2d 727 (2d Dep't 1989) ............................................10

Markov v. Markov,
    274 A.D.2d 870 (3d Dep't 2000) ............................................16

Montrose Global Assets, Inc. v. Bennington Foods, LLC,
    No. 4044-07, 2007 WL 2874952 (Sup. Ct. Nassau Co. Sept. 28, 2007) .........20

Motorola Credit Corp. v. Uzan,
    388 F.3d 39 (2d Cir. 2004).....................................................19

Phillips v. Audio Active, Ltd.,
    494 F.3d 378 (2d Cir. 2007).....................................................23

Reid v. Ernst & Young Global Ltd.,
    No. 604028/2005, 2006 NY Slip Op. 52298 (Sup. Ct. N.Y. Co. Nov.
    15, 2006) ........................................................................10

Republic of Lebanon v. Sotheby's,
    167 A.D.2d 142 (1st Dep't 1990) ............................................16

Shipping Corp. of India, Ltd. v. America Bureau of Shipping,
    603 F. Supp. 801 (S.D.N.Y. 1985) ..............................................................16

Singh v. Swan,
    225 A.D.2d 1057 (4th Dep't 1996)..............................................................9

Stoffel v. Stoffel,
    Index No. 019142/05, (Sup. Ct. N.Y. Westchester Co. settled Apr. 9,
    2007)..........................................................................................................11

Twinlab Corp. v. Paulson,
    283 A.D.2d 570 (2d Dep't 2001) ....................................................... 12-13, 23

Waterways Ltd. v. Barclays Bank PLC,
    174 A.D.2d 324 (1991) ................................................................................8

Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home &
    Allied Servs. Union, 788 F.2d 894 (2d Cir. 1986)........................................23

Wyser-Pratte Mgmt. Co. v. Babcock Borsig AG,
    No. 603364/02, 2004 WL 3312835 (Sup. Ct. N.Y. Co. Jul. 8, 2004)..............10

Yoshida Printing Co. v. Aiba,
    213 A.D.2d 275 (1st Dep't 1995) ...............................................9, 13, 14

**Statutes**

Convention on the Recognition and Enforcement of Foreign Arbitral
    Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 3 ...............................19

**Other Authority**

Restatement (Second) of Conflict of Laws § 218 (1971) .......................................19

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM R. TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

Index No. 116985/07

I.A.S. Part 56

Commercial Division
(Lowe, J.)

                                        Plaintiffs,

              -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

                                        Defendants.

**PLAINTIFFS'
MEMORANDUM OF LAW IN
OPPOSITION TO
DEFENDANTS MARCO
STOFFEL AND LAURAMCA
HOLDINGS, L.L.C.'S
MOTION TO DISMISS**

Plaintiffs Vistra Trust Company (Jersey) Limited ("Vistra"), Colleen

Investment AG ("Colleen AG"), Alsam Holding AG, Penny Asset AG, Logany Equity

AG, Vierwaldstätter Beteiligungen AG and Clarick AG (the "Swiss Companies"), and

Colleen Investment, L.L.C. and Logany, L.L.C. (the "US LLCs"), and William R. Tacon

("Tacon"), Receiver and Manager of the assets of Maytown Universal SA ("Maytown")

and Plympton Universal SA ("Plympton") (together, "Plaintiffs"), by their attorneys,

Chadbourne & Parke LLP, respectfully submit this memorandum of law in opposition to

the motion of defendants Marco Stoffel and Lauramca Holdings, L.L.C. ("Lauramca" and collectively "Stoffel") to dismiss this action.

## PRELIMINARY STATEMENT

This lawsuit belongs in this Court. Plaintiffs seek to recoup tens of millions of dollars misappropriated by a New York resident and a New York-based company through an elaborate fraudulent scheme conceived, planned and executed in New York and targeted against, among others, two New York companies. That scheme resulted in Stoffel's purchase of real estate, art, luxury automobiles and financial assets located in New York, the disposition of which has been preliminarily enjoined by this Court. Virtually all of the evidence relevant to this case -- both party and non party witnesses and documents -- is located in New York and New York law will govern Plaintiffs' tort claims arising from Stoffel's misconduct.

Despite the overwhelming factual and legal nexus to New York, Stoffel strains mightily to argue that this case should be adjudicated elsewhere. First, Stoffel points to a hodgepodge of nearly two dozen "agreements" which he claims require, alternatively, that this case be litigated in the courts of Switzerland or before an arbitration panel. But -- by his own admission -- most of these agreements are either wholly between non-parties, are between Stoffel and non-parties, or are between certain Plaintiffs and non-parties, and therefore cannot be relied upon by Stoffel to compel Plaintiffs to arbitrate. The remaining agreements either are not signed by any representative of Plaintiffs or have no relationship to the causes of action asserted by Plaintiffs in the Complaint. There is not a single

2

agreement between Stoffel and any of the Plaintiffs which contains a choice of forum provision or arbitration clause that governs the claims here.

Stoffel also contends that New York would be an inconvenient forum in which to litigate this case. Of course, New York has not been an inconvenient place for Stoffel to lead a lavish lifestyle with Plaintiffs' money or to litigate when it has suited his purposes. Stoffel alludes to some unspecified burden that he and this Court will suffer if the case proceeds in this Court. But a New York resident, such as Stoffel, is hard pressed to claim that it would be burdensome to litigate a few blocks from his $10 million townhouse, and Stoffel does not explain why this Court should refrain from presiding over a case involving a $30 million fraud perpetrated in New York on, among others, two New York companies. Stoffel also contends that documents and witnesses are located abroad. But the fact that Stoffel himself shipped 26 boxes of documents to Switzerland in violation of an order of the Delaware Court of Chancery does not create a basis for dismissal of this action on forum non conveniens grounds. And most of the key witnesses (including numerous third parties) reside in New York. Accordingly, dismissal of this action on forum non conveniens grounds would be wholly unwarranted.

Stoffel's motion should be denied in its entirety.

## COUNTERSTATEMENT OF FACTS

This case arises from Stoffel's misappropriation of Plaintiffs' assets. Although the Plaintiffs include various foreign entities, including three trusts established in the

3

Jersey Channel Islands (the "Jersey Trusts"), the connections between New York and this dispute are deep and robust.

**A.**     **This Case Has Substantial Connections To New York**

Defendant Stoffel is a resident of New York and Lauramea is a company based in New York. (Affirmation of Scott S. Balber in Support of Temporary Restraining Order and Preliminary Injunction, dated December 21, 2007, (the "Balber TRO Aff.") Exs. 25, 85.) The massive fraud enumerated in the Complaint finds its epicenter in New York. Two of the Plaintiffs -- the US LLCs -- were New York companies defrauded by Stoffel in New York and the majority of the Jersey Trusts' assets are located in New York. (Balber TRO Aff. Exs. 9 at p. 6, 87.) Stoffel used a fax machine in his New York office to seek payment of more than a hundred fake invoices, and directed that monies be wired to third parties in New York for the purchase of art, automobiles, furniture and renovations on real property. (See e.g., Balber TRO Aff. Ex. 27, 2002 tab 5; see also Affirmation of Scott S. Balber, dated February 13, 2008, (the "Balber Aff.") Ex. A, Tr. 259:23-260:17). The fruits of this fraud -- a townhouse, art and antiquities, automobiles and bank accounts -- are substantially located in New York.

Moreover, Stoffel contends that he received approximately $1.69 million in "compensation" for his alleged role in managing New York real estate, securities and financial investments for the New York-based US LLCs. (Balber Aff. Ex. A, Tr. 51:9-51:18.) Other former officers of the US LLCs -- Ray Merritt and David Jones -- reside in New York, as do the US LLCs' former accountants and law firms. (Balber TRO Aff. Ex.

11, Tr. 147:16-148:16; 152:7-9.) There is also ample evidence that Stoffel used the New York bank account of one of the Plaintiff companies to pay for virtually every meal and cocktail he consumed and every parking garage and limousine service he utilized over a six year period. (See e.g., Balber TRO Aff. Ex. 88.) And until his shipment of documents to Switzerland -- in violation of an order of the Delaware Chancery Court -- the books and records of the US LLCs were maintained in New York. (Balber TRO Aff. Exs. 104-106.)

Finally, Stoffel has contended (albeit falsely) that defendants Albe Associates Limited ("Albe") and Bluecolt Securities Corporation ("Bluecolt") belong to two New York-based foundations which Stoffel controls, the Borderline Personality Disorder Research Foundation and the Third Millennium Foundation (the "Foundations") (Balber TRO Aff. Ex. 11, Tr. 189:12-190:7; 102:15-103:16, 115:10-11).[1]

**B.    Stoffel Seeks To Rely On Third Party Agreements To Require The Parties To Litigate In Switzerland**

Faced with the voluminous connections that this case has to New York (and desperate to have this dispute decided elsewhere) Stoffel points to a grab-bag of two dozen

---

[1]    The Borderline Personality Disorder Research Foundation ("BPDRF") is located in Stoffel's New York city residence, see BPDRF Home Page, http://www.borderlineresearch.org/about_org/contact.html (last visited Feb. 5, 2008), and the Third Millennium Foundation is likewise "located in New York City." Seeds of Tolerance Home Page, http://www.spreadtolerance.org/content/index.php (follow "About Us" hyperlink) (last visited Feb. 5, 2008).

documents that he suggests mandate that this dispute be litigated in Switzerland, before

either a Swiss court or an arbitration panel.  But even a cursory review of these 24

documents reveals that they have no bearing whatsoever on this dispute.  Rather, Stoffel's

reliance on these documents demonstrates that his appetite for duplicity remains unsated.

**1.    Stoffel Seeks To Rely On Agreements Wholly Between Non-Parties**

Five of the purported agreements relied on by Stoffel are, on their face, wholly

between non-parties to this lawsuit.  Those agreements are:

1, 2.    Two Deeds of Trust between Kim Raymond White and Orconsult Limited with respect to the Capricorn and Aquarius Trusts (Stoffel Aff. Exs. E, F);

3.    A purported "Escrow Confirmation" between Madison Corporate Developments Limited, Ireland and the "Personality Disorder Research Foundations in formation" (Stoffel TRO Aff. Ex. 7);

4.    A purported "donation" document between Angela Blickle, three now-defunct Irish companies, and the "BPD Foundation," described as "in formation" (Stoffel TRO Aff. Ex. 8);

5.    A "Service Agreement" (Stoffel TRO Aff. Ex. 50) between Orconsult and New Eagle Corporation Limited ("New Eagle").

**2.    Stoffel Seeks To Rely On Agreements Between Himself And Non-Parties**

Stoffel next relies upon five agreements between Stoffel and nonparties to this

action:

6.    An "engagement letter" purportedly between Stoffel and the late Angela Blickle (Stoffel TRO Aff. Ex. 50);

7, 8.    Two "Trust Agreements" between Stoffel and Orconsult Limited (Stoffel TRO Aff. Ex. 39);

6

9, 10.    Two alleged loan agreements between Stoffel and Orconsult (Stoffel TRO Aff. Ex. 51 at Tabs 4, 7).

### 3.    Stoffel Seeks To Rely On Agreements Between Certain Plaintiffs And Non-Parties

Finally, Stoffel relies upon ten purported agreements between certain Plaintiffs and nonparties to this action:

11, 12, 13.    Three deeds of settlement between Angela and Holger Blickle and Vistra establishing the Jersey Trusts (Balber TRO Aff. Exs. 3-5);

14, 15, 16.    Three Deeds of Beneficiary Appointment between Vistra and New Eagle, none of which add Stoffel as a beneficiary (Stoffel TRO Aff. Exs. 34-36);

17.    A purported "Adoptation of Escrow Confirmation" between Maytown Universal SA and the Borderline Personality Disorder Research Foundation (Stoffel TRO Aff. Ex. 7);

18, 19, 20.    Three "Nominee Agreements" between Vistra and three defunct Irish companies (Stoffel Aff. Exs. B, C, D).

Although Stoffel concedes, in footnotes, that these agreements with and between non-parties are irrelevant, he does not explain why he puts them before the Court in support of his motion to dismiss. (Stoffel Mem. at 7, 8, nn. 3, 5.)

### C.    The Remaining Agreements Do Not Mandate That Plaintiffs Litigate This Dispute In Switzerland

The remaining documents relied upon by Stoffel are (i) an alleged "Employment Agreement" that purports to govern Stoffel's activities as a manager of Colleen AG and the US LLCs, and (ii) three "Fiduciary Agreements," all of which have been terminated (Balber TRO Aff. Ex. 101), relating to Stoffel's former role as a Director

of the Swiss Companies and attorney for the three defunct Irish companies. (Balber TRO

Aff. Exs. 15-17.) The "Employment Agreement" was not signed by any officer, director or

agent of any of the Plaintiffs that are supposedly parties to it. (Stoffel TRO Aff. Ex. 49.)

Stoffel offers no explanation as to the basis upon which such a document could be signed

on behalf of Colleen AG and the US LLCs by "Hans Ottiger, Director, Alsam Holding

AG." The Fiduciary Agreements, in addition to having been terminated, are strictly

limited in scope and on their face do not apply to the claims brought by Plaintiffs in this

case.

## ARGUMENT

### I.

### NEW YORK IS THE PROPER FORUM FOR THE RESOLUTION OF THIS DISPUTE

Under Rule 327 of the New York Civil Practice Law and Rules, a court is

permitted -- but never required -- to dismiss an action "in the interest of substantial justice"

if the action should be heard in another forum. The New York Court of Appeals has held

that "[t]he burden rests upon the defendant challenging the forum to demonstrate relevant

private or public interest factors which militate against accepting litigation . . . ." Islamic

Rep. of Iran v. Pahlavi, 62 N.Y.2d 474, 479 (1984). This has been characterized as a

"heavy burden." See Banco Ambrosiano, S.p.A. v. Artoc Bank & Trust Ltd., 62 N.Y.2d

65, 74 (1984). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's

choice of forum should rarely be disturbed." Waterways Ltd. v. Barclays Bank PLC, 174

A.D.2d 324, 327 (1991) (quoting Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947); see

also <u>Singh</u> v. <u>Swan</u>, 225 A.D.2d 1057, 1057 (4th Dep't 1996) (a lawsuit should be dismissed for <u>forum</u> <u>non</u> <u>conveniens</u> "<u>only</u> when it plainly appears that New York is an inconvenient forum <u>and</u> that the action has no nexus to this State") (citation omitted) (emphasis added); <u>Yoshida Printing Co.</u> v. <u>Aiba</u>, 213 A.D.2d 275, 275 (1st Dep't 1995) (defendants must meet "the heavy burden of demonstrating that plaintiffs' selection of New York is not in the interest of substantial justice").

In <u>Pahlavi</u>, the Court of Appeals set forth the factors New York courts are to consider when ruling upon a <u>forum</u> <u>non</u> <u>conveniens</u> motion. The primary factors include (1) the availability of an alternative forum in which plaintiff may bring suit; (2) the potential hardship to the defendant; and (3) the burden on the New York courts. The courts may also consider (4) whether both parties to the action are nonresidents; and (5) whether the transaction out of which the causes of action arose occurred primarily in a foreign jurisdiction. <u>Pahlavi</u>, 62 N.Y.2d at 479.

Stoffel has fallen far short of meeting the heavy burden necessary to obtain dismissal of this action for <u>forum</u> <u>non</u> <u>conveniens</u>. To the contrary, the interests of justice, fairness and convenience, all weigh strongly in favor of allowing this action to proceed in New York. For these reasons, Stoffel's motion should be denied.

**A.    <u>Switzerland Is Not An Available Alternative Forum</u>**

Stoffel makes no effort to show that any alternative forum would be able to fully hear the claims alleged in the Complaint. Stoffel cannot demonstrate that the Swiss courts would have jurisdiction over Plaintiffs Vistra, Tacon and the US LLCs, or

defendants Lauramea, Bluecolt or Albe, or that the courts of any other jurisdiction would be able to afford complete relief as to the claims alleged in the Complaint. See Wyser-Pratte Mgmt. Co. v. Babcock Borsig AG, No. 603364/02, 2004 WL 3312835, at *5 (Sup. Ct. N.Y. Co. Jul. 8, 2004). This shortcoming is fatal to his forum non conveniens argument.

**B.     Stoffel Will Suffer No Hardship If This Case Is Permitted To Proceed In New York, His Place Of Residence**

Stoffel, a New York resident of substantial means, is hard pressed to claim that he will suffer hardship if required to litigate in New York. A motion to dismiss on forum non conveniens grounds brought by a resident of the forum is regarded as highly suspect by New York courts.[2] See Anagoustou v. Stifel, 204 A.D.2d 61, 61 (1st Dep't 1994) (denying defendants' motion to dismiss on forum non conveniens grounds because, *inter alia*, "moving defendants are New York domiciliaries"); Reid v. Ernst & Young Global Ltd., No. 604028/2005, 2006 NY Slip Op. 52298, *3 (Sup. Ct. N.Y. Co. Nov. 15, 2006) (denying defendants' motion to dismiss on forum non conveniens grounds despite the fact that Plaintiff was "a non-resident of New York" because the fact "that the two moving

---

[2]    Furthermore, Stoffel cannot avoid litigation in New York simply by moving out of the jurisdiction. See Mandelbaum v. Mandelbaum, 151 A.D.2d 727, 728 (2d Dep't 1989) ("The residence of a party for purposes of venue must be determined as of the time of commencement of the action and indicia of residence acquired after the commencement of the action are irrelevant. . . .") (citations omitted).

defendants . . . both maintain offices in New York City undermines any contention that litigating this action here would cause hardship to them"); see also Continental Pac. Shipping v. CIT Group/Equip. Fin., 96 Civ. 2646, 1996 U.S. Dist. LEXIS 14736, *19 (S.D.N.Y. Oct. 17, 1996) ("It would be odd to require [a foreign plaintiff] to bring its case in the [alternative forum proposed by defendant] when it chose the forum where defendant . . . maintains its principal place of business").  Moreover, Stoffel has had no difficulty litigating in New York in the past, see Kenyon & Kenyon v. Logany LLC, No. 600949/05, 2005 WL 3501562 (Sup. Ct. N.Y. Co. Dec. 21, 2005) (landlord-tenant dispute between Logany LLC and a third party; Stoffel provided deposition testimony and served as Logany's primary point of contact with Plaintiffs);[1] Stoffel v. Stoffel, Index No. 019142/05 (Sup. Ct. N.Y. Westchester Co. settled Apr. 9, 2007), nor can he demonstrate any such difficulty now.

**C.      Litigation Of This Action In New York Will Not Place A "Heavy And Inappropriate" Burden On The New York Courts**

Stoffel cannot show that retention of this action would cause the Court a "heavy and inappropriate" or "undue" burden.  Stoffel's Motion sets forth several of the Pahlavi

---

[1]    In that case, Justice York held that the contentions of "Logany's president, Dr. Stoeffel [sic]" were a "red herring" in that Stoffel's testimony was "created out of whole cloth in a desperate attempt to obtain leverage over the defendants. . . ." Kenyon & Kenyon, 2005 WL 3501562, at *3.

factors courts consider in determining whether there is such a burden -- application of foreign law, the size and complexity of the litigation, the nexus of the litigation to New York and the ability of the courts of New York to properly afford relief to the parties. (Stoffel Mem. at 10-11 (citing Pahlavi, 62 N.Y.2d at 482-83).)  Despite Stoffel's contentions, none of these factors weigh in favor of dismissal for forum non conveniens in this case.

### I.    This Court Is Qualified To Address Any Questions Of Foreign Law

Stoffel asserts that Plaintiffs' claims will be governed by Swiss law, contending that the "documents between the parties clearly demonstrate that it was their intention to have disputes settled under foreign law, primarily the laws of Switzerland."⁴ (Stoffel Mem. at 12.)  However, Stoffel's reliance on any purported contractual choice of law provision is misplaced, because it is well established that under "New York law . . . tort claims are outside the scope of contractual choice-of-law provisions that specify what law governs construction of the terms of the contract."  Fin. One Pub. Co. v. Lehman Bros. Special Fin., Inc., 414 F.3d 325, 335 (2d Cir. 2005); see also Twinlab Corp. v. Paulson,

---

⁴    Stoffel's support for this claim is the "Employment Agreement" between Stoffel and Colleen AG, which was signed by Hans Ottiger, an alleged officer of Alsam Holding AG who had no authority to enter into any agreement on Colleen AG's behalf.  (Balber Aff. Ex. B at ¶ 5.)  Stoffel also references the "wishes" of other non-parties to have Swiss law apply to their disputes with Stoffel but does not argue that these preferences have any bearing on the choice of law applied in this action.  (Stoffel Mem. at 10.)

283 A.D.2d 570, 571 (2d Dep't 2001) ("As the plaintiffs' tort cause of action was based on the [defendant's] alleged criminal activities, which were unrelated to his duties as a consultant, we conclude that the contractual choice of law provision [in the parties' consultant agreement] does not govern the law to be applied to that cause of action"). Accordingly, New York law governs the tort-based causes of action -- sounding in fraud, conversion, unjust enrichment, money had and received, and breach of fiduciary duty -- pled in the Complaint. See e.g., J.A.O. Acquisition Corp. v. Stavitsky, 192 Misc. 2d 7, 11 (Sup. Ct. N.Y. Co. 2001) ("fraud claims sound in tort, not contract, so the contractual choice of law provision in the [agreement] is inapplicable to the fraud causes of action").

However, even if Swiss law governed the substantive dispute, it would create no impediment to the pendency of this case before this Court. Rather, "the courts of New York are frequently called upon to apply the law of foreign jurisdictions and, should the necessity arise, will be fully capable of applying" whatever law is appropriate. Anagoustou, 204 A.D.2d at 62. See also Yoshida, 213 A.D.2d at 275 (holding that New York courts are fully able to apply Japanese law and denying forum non conveniens dismissal).

    **2.**    **Stoffel Provides No Evidence Supporting His Claim That Many Of The Relevant Documents Are In Switzerland Or That Witnesses Would Be Unable To Testify In English**

Stoffel alleges that "much" of the documentary and testamentary evidence relevant to this action is in the German language and that original documents are located in Switzerland. (See Stoffel Mem. at 12.) On the contrary, however, many of the witnesses,

including Stoffel himself, are located in New York. Indeed, no fewer than 33 subpoenas

duces tecum have been served on witnesses located in New York in connection with the

instant action. (Balber Aff. Ex. C.)

 Moreover, Stoffel does not provide the name of a single witness who would be

unable to testify in English, let alone explain why or how testimony from any such

individuals would be important here. See Yoshida, 213 A.D.2d at 275 (holding dismissal

inappropriate where "defendant failed to make any showing with respect to the materiality

of the testimony of certain potential witnesses" located in Japan, and noting that

documents could be translated into English if necessary). To the contrary, the bulk of the

relevant evidence to this action, including key witnesses, are in New York City. Any

German language documents could easily be translated into English. See Gyenes v.

Zionist Org. of Am., 169 A.D.2d 451, 452 (1st Dep't 1991) (denying dismissal and

observing that "[a]ny statements or documents taken from Israeli citizens and entities could

be easily translated into English").

 Finally, in light of his conduct, Stoffel's argument that dismissal is appropriate

because relevant documents are located in Switzerland is bold, to say the least. Stoffel

himself shipped twenty-six boxes of documents belonging to the US LLCs to Switzerland

after Plaintiffs had instituted an action in Delaware to recover them, leading Vice-

Chancellor Strine of the Delaware Court of Chancery to suggest that Stoffel is a "card

dealer of documents" who can be expected to "ship things all over the place" to evade his

discovery obligations. (Balber TRO Aff. Ex. 107, Tr. 34:16-18.) Stoffel cannot rely on his

own wrongful removal of documents from the United States to achieve a <u>forum</u> <u>non</u> <u>conveniens</u> dismissal here.

**D.    A Substantial Nexus Exists Between Plaintiffs' Claims and New York**

As set forth at pp. 4-5 <u>supra</u>, Plaintiffs' claims are strongly tied to New York. This action centers around New York conduct and principally involves tort claims to which New York law unquestionably applies. Thus, Stoffel cannot show that the fourth <u>Pahlavi</u> factor -- whether the action is entirely between nonresidents of New York -- or the fifth <u>Pahlavi</u> factor -- whether "the transaction out of which the cause of action arose occurred primarily in a foreign jurisdiction" -- supports dismissal here. <u>Pahlavi</u>, 62 N.Y.2d at 479.

**1.    This Is Not An Action Between Nonresidents**

As noted above, two of the Defendants here are New York residents accused of defrauding Plaintiffs, including two New York-based companies. The fourth <u>Pahlavi</u> factor therefore supports retention of this action. <u>Id.</u>

**2.    New York Has A Substantial Interest In Adjudicating This Dispute**

Stoffel contends without explication that "New York's interest in adjudicating this dispute pales in comparison to the interests of Switzerland." (Stoffel Mem. at 14.) However, New York courts have not hesitated to reject similar contentions by New York wrongdoers seeking the solace of a foreign forum to adjudicate the consequences of their wrongdoing here. <u>See</u> <u>Continental Pac. Shipping</u>, 1996 U.S. Dist. LEXIS 14736, at *19 (denying motion for <u>forum</u> <u>non</u> <u>conveniens</u> dismissal of an action brought by a foreign plaintiff because "this Court has a substantial interest in adjudicating a case involving the

alleged tortious conduct of a New York corporation engaged in international finance");
Shipping Corp. of India, Ltd. v. Am. Bureau of Shipping, 603 F. Supp. 801, 806 (S.D.N.Y. 1985) (denying motion for forum non conveniens dismissal in part because New York was "the ultimate authority" on defendants' behavior since their principal place of business was in New York City).

   New York's interest in adjudicating this dispute is heightened by the New York situs of the majority of Plaintiffs' assets and most of the proceeds of, or assets representing, Stoffel's misappropriations. See Republic of Lebanon v. Sotheby's, 167 A.D.2d 142, 144 (1st Dep't 1990) (denying a motion to dismiss for forum non conveniens where a foreign plaintiff had obtained an injunction over property located in New York and observing that "New York, as the situs of the disputed Treasure . . . has a valid and compelling interest in resolving the conflicting claims of possession and ownership"); Bata v. Bata, 304 N.Y. 51, 56 (1952) (denying a forum non conveniens motion where a bank account and real property at issue in the dispute were located in New York); Markov v. Markov, 274 A.D.2d 870, 871 (3d Dep't 2000) (declining to dismiss on forum non conveniens grounds because plaintiff had an interest in real property located in New York).

   Stoffel's reliance upon Garmendia v. O'Neill, 2007 NY Slip Op. 9930, 2007 N.Y. App. Div. LEXIS 12721 (1st Dep't Dec. 18, 2007) is misplaced.  In Garmendia, a bank organized and regulated in Uruguay sought to recover against one of its own directors for alleged fraud.  The alleged damages consisted of the misappropriated funds of a Uruguayan bank rather than, as here, the assets of New York-based corporations and

16

certain nominee companies. In <u>Garmendia</u>, most of the witnesses and evidence were located in Uruguay, whereas here, the central figures in Stoffel's fraud and the most relevant documents are located in New York.

### E. No Forum Selection Clause Mandates That This Dispute Be Litigated In Switzerland

While Stoffel relies upon two dozen miscellaneous documents in support of his motion for dismissal (Stoffel Mem. at 4-7), only some of these documents contain forum-selection clauses (Stoffel TRO Aff. Exs. 7, 8, 39, 50; Balber TRO Aff. Exs. 3-5, 15-17; Stoffel Aff. Exs. E-F) and <u>none</u> of these documents are agreements between the parties to this action calling for a judicial forum outside of the United States. Stoffel cites <u>no</u> authority (nor can he) for his reliance on forum selection clauses in agreements with nonparties as a basis for dismissal of this action. <u>See</u> <u>L-3 Communs. Corp.</u> v. <u>Channel Techs., Inc.</u>, 291 A.D.2d 276, 277 (1st Dep't 2002) (declining to enforce a forum selection clause on a corporation because the corporation was not "named in the contract as being subject to the forum selection clause"). Accordingly, Stoffel cannot claim that any agreement cited in his memorandum contains an enforceable forum selection clause.[5]

---

[5]  The Colleen AG "Employment Agreement" is inapplicable, because as stated above, Hans Ottiger plainly had no authority to execute that agreement on Colleen AG's behalf.

17

**F.    Stoffel Cannot Maintain His Standing Argument**

Stoffel makes a halfhearted claim (Stoffel Mem. at 12-13, 15) that the Plaintiffs somehow lack standing to sue in their own names because of an imagined dispute over the validity of Stoffel's removal as a manager of those entities in December 2006. Stoffel's own response to Requests for Admission propounded in the Delaware proceedings fatally undermines these contentions: Stoffel has admitted that he was removed by Plaintiff Vistra from the management of Plaintiffs Colleen AG and the US LLCs in December of 2006 pursuant to shareholders' meetings which Vistra held for the Swiss Companies to elect new management as the initial step in correcting Stoffel's misdeeds. (Balber Aff. Ex. D, Responses to Requests No. 3-5.) Stoffel cannot be permitted to abandon his sworn admissions in one proceeding by seeking to maintain a wholly contrary argument here.

## II.

## STOFFEL'S ATTEMPT TO CIRCUMVENT THIS COURT'S JURISDICTION BY FILING A SWISS ARBITRATION PROCEEDING SHOULD BE REJECTED

On January 21, 2008, a month after this action was filed and ten days after this Court granted Plaintiffs' application for a preliminary injunction, Stoffel filed a putative arbitration proceeding before the Zurich Chamber of Commerce (the "Putative Arbitration"). In the Putative Arbitration, Stoffel seeks to address precisely the same issues raised by Plaintiffs in the Complaint, framing Plaintiffs' claims for damages here as his own claims for declaratory relief there. Stoffel's gambit in asking a foreign arbitral tribunal to block the relief sought here should be rejected.

18

Plaintiffs have sued Stoffel for misappropriating funds, not for providing deficient services as a director of the Swiss Companies or for acting beyond the scope of the power of attorney in his favor granted by defunct Irish entities. Indeed, Stoffel has characterized his actions as having been taken pursuant to a multitude of roles other than those as a director of the Swiss Companies. See e.g., (Balber Aff. Ex. A, Tr. 346:11-355:2) (Stoffel claims that his involvement with Albe and Bluecolt pertained to his positions as President and Treasurer of the Foundations); (Balber TRO Aff. Ex. 11, Tr. 142:8-152:11) (Stoffel claims that his unauthorized withdrawal of $2.4 million from the US LLCs' financial accounts was undertaken in his role as President of the Foundations); (Balber Aff. Ex. E, Tr. 15:15-19:17) (Stoffel claims that his actions in converting the Swiss Company shares to bearer shares were pursuant to a purported role as "nominee shareholder" of the Swiss Companies); (Balber TRO Aff. Ex. 11, Tr. 53:9-55:19) (Stoffel claims that his actions were taken in his purported role as attorney-at-law for the Blickle family).

Stoffel cannot pick and choose his positions in different litigations with Plaintiffs, contending that he was wearing numerous hats extraneous to the Fiduciary Agreements when it suits him and then arguing to this Court that the misconduct alleged in the Complaint was within the scope of his duties as a director of the Swiss Companies. Stoffel's effort to circumvent an adjudication on the merits of the Complaint in New York must be rejected.

## CONCLUSION

For the reasons set forth above, Stoffel and Lauramca's motion to dismiss should

be denied.

Dated:  February 13, 2008

CHADBOURNE & PARKE LLP

By _____

Scott S. Balber
A Member of the Firm
Jonathan C. Cross
Tamara Stevenson
Robert Grossman
Attorneys for Plaintiffs
30 Rockefeller Plaza
New York, New York  10112
(212) 408-5100

25

CERTIFICATE OF SERVICE

I hereby certify that I caused a true and correct copy of the foregoing Notice of

Removal, dated March 18, 2008, to be served by hand on this 18th day of March, 2008, to the

following:

      Thomas M. Mueller, Esq.
      Scott S. Balber, Esq.
      Chadbourne & Parke LLP
      30 Rockefeller Plaza
      New York, NY 10112

      Martin J. Murray, Esq.
      Law Offices of Martin J. Murray
      475 Park Avenue South, 23rd Floor
      New York, NY 10011

      ATTORNEYS FOR PLAINTIFFS VISTRA TRUST COMPANY (JERSEY) LIMITED
      AS TRUSTEE OF THE ALSAM; COLLEEN AND LOGANY SETTLEMENTS;
      COLLEEN INVESTMENT AG; ALSAM HOLDING AG; PENNY ASSET AG;
      LOGANY EQUITY AG; VIERWALDSTATTER BETEILIGUNGEN AG; CLARICK
      AG; COLLEEN INVESTMENT, L.L.C.; LOGANY, L.L.C.; AND WILLIAM
      TACON, RECEIVER AND MANAGER OF THE ASSETS OF MAYTOWN
      UNIVERSAL SA AND PLYMPTON UNIVERSAL SA

      I declare under penalty of perjury that the foregoing is true and correct.

Dated: March 18, 2008
      New York, New York

                           Nkasi Okafor

Under the Federal Arbitration Act (the "FAA") and the Convention on the

Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517,

330 U.N.T.S. 3 (the "New York Convention"), this Court has exclusive jurisdiction to

determine "whether the parties agreed to arbitrate and if so, whether the scope of that

agreement encompasses the asserted claims." David J. Threlkeld & Co. v.

Metallgesellshaft Ltd., 923 F.2d 245, 249 (2d Cir. 1991); see also Hartford Accident &

Ind. Co. v. Swiss Reinsurance Am. Corp., 246 F.3d 219, 226 (2d Cir. 2001). Here, this

Court should find that there is no basis upon which Plaintiffs may be compelled to arbitrate

the claims set forth in the Complaint.

**A.    Stoffel Cannot Compel Plaintiffs To Arbitrate Based Upon An Agreement To Which He And Plaintiffs Are Not Both Parties**

Where a contract containing an arbitration clause also includes a choice-of-law

clause, the interpretation of the arbitration clause is governed by the law chosen by the

parties to the contract. Motorola Credit Corp. v. Uzan, 388 F.3d 39, 51 (2d Cir. 2004)

(applying Swiss law in construing agreement to arbitrate; holding that "if defendants wish

to invoke the arbitration clauses in the agreements at issue, they must also accept the Swiss

choice-of-law clauses that govern those agreements."); accord Coastal Caisson Corp. v.

E.E. Cruz/NAB/Frontier-Kemper, No. 05 Civ. 7462 (DLC), 2007 WL 2285936, at *4

(S.D.N.Y. Aug. 10, 2007); see also Restatement (Second) of Conflict of Laws § 218

(applying choice of law analysis to the law governing "the validity of an arbitration

agreement, and the rights created thereby.") Indeed, Stoffel contends at length that each of

the purported agreements containing Swiss arbitration clauses is governed by Swiss law (though he fails to analyze the purported agreements to arbitrate under the law which he urges this Court to apply).[6]

       Under Swiss law, it is well-established that an agreement to arbitrate binds only the parties that have entered into the agreement.[7] (Declaration of Bernhard Loetscher in Opposition to Defendants' Motion to Dismiss (the "Loetscher Decl.") ¶ 6.) Subject to certain limited exceptions that are not implicated here, under Swiss law a nonsignatory to an arbitration agreement may not invoke the provision, nor may a signatory to an arbitration agreement seek to invoke it against nonsignatories. (Loetscher Decl. ¶¶ 6-7.) Accordingly, purported agreements between Stoffel and nonparties here, or between the parties here and persons other than Stoffel -- the case for 20 of the 24 agreements relied on by Stoffel -- cannot render the claims asserted in the Complaint arbitrable.

---

[6]    While Plaintiffs' tort claims are governed by New York law (see pp. 12-13 supra), the question of arbitrability is governed by Swiss law, the choice of law in the contract containing the arbitration clause.

[7]    The same is true under New York law. See Greater New York Mut. Ins. Co. v. Rankin, 298 A.D.2d 263, 263 (1st Dep't 2002) ("Under New York law, the right to compel arbitration does not extend to a party that has not signed the agreement pursuant to which arbitration is sought unless the right of the nonsignatory is expressly provided for in the agreement."); Montrose Global Assets, Inc. v. Bennington Foods, LLC, No. 4044-07, 2007 WL 2874952, at *5 (Sup. Ct. Nassau Co. Sept. 28, 2007) (same).

Furthermore, under Swiss law, any arbitrable claims must be severed from nonarbitrable claims. (Loetscher Decl. ¶ 8.) Nonparties to an arbitration agreement retain the full right to pursue their claims in a judicial forum and may not be required to arbitrate because other persons or entities, even if also parties to a lawsuit, have been required to arbitrate their disputes. (Id.) Under no circumstances could the Swiss Companies, the US LLCs, or Tacon ever be compelled to arbitrate pursuant to the Fiduciary Agreements, to which they are not parties.[8] Nor could Defendants Lauramca, Albe, or Bluecolt demonstrate any right to arbitrate any disputes with any Plaintiffs under the Fiduciary Agreements, to which they are not parties either.

## B.    The Fiduciary Agreements Do Not Require Arbitration of Vistra's Claims

In light of the foregoing, the only agreements that could even theoretically result in arbitration of any claims asserted in the Complaint would be the Fiduciary Agreements between Vistra and Stoffel. However, the Fiduciary Agreements are, by their plain terms, exceptionally narrow in scope and remote from Plaintiffs' claims in the Complaint. The Agreements expressly "concern" only Stoffel's "activity as Member of the Board of Directors of" the Swiss Companies and "General Attorney" of Millennium,

---

[8]    The Employment Agreement, which was not agreed to by any Plaintiffs here, also cannot be used as a basis to compel any of the Plaintiffs to arbitrate.

21

First Aim and Madison, three defunct Irish companies that are not parties to this action.[9]

(Balber TRO Aff. Exs. 15-17.) The Fiduciary Agreements do not support dismissal of the

Complaint because Plaintiffs are not suing Stoffel for, or even alleging, any breach of

those agreements.

Under Swiss law, arbitration clauses of the sort contained in the Fiduciary

Agreements encompass only claims "in connection with" the Agreements and do not

extend to tort-based claims relating to activities which may be the subject of the

Agreements. (Loetscher Decl. ¶¶ 9-10.) To the contrary, such clauses generally apply

only to claims asserting a breach of the agreements containing the arbitration clauses

themselves, or having as a necessary component claims arising under such agreements.

(Loetscher Decl. ¶ 10.) Had the parties to the Fiduciary Agreements wished to agree to

arbitrate claims based on any of Stoffel's activities with respect to the Swiss Companies,

crafting a broad clause of this sort would have been easy to accomplish. Instead, the

Fiduciary Agreements impose certain obligations upon Stoffel pursuant to a narrowly

defined set of activities -- his duties as a director of the Swiss Companies and attorney for

---

[9]   Stoffel claims to have assigned the nominee agreements of Millennium, First Aim and
      Madison to Maytown and Personality Disorder Research Corporation pursuant to
      agreements that conspicuously omit any arbitration clause. (Stoffel Aff. Exs. B-D.)

three now-defunct Irish companies. Plaintiffs' claims do not even arise out of these activities, let alone assert claims under the Fiduciary Agreements themselves.

Precedent under New York law and the FAA is not to the contrary. "[C]laims that present no question involving construction of the contract, and no questions in respect of the parties' rights and obligations under it, are beyond the scope of the arbitration agreement." Collins & Aikman Prods. Co. v. Bldg. Sys., Inc., 58 F.3d 16, 23 (2d Cir. 1995). This Court should examine the scope of the Fiduciary Agreements themselves, rather than limiting its inquiry to the language of the Agreements' arbitration clauses, as the clauses' "scope may be limited by language elsewhere in the agreement clearly and unambiguously negating or limiting it with respect to a matter in dispute." Woodcrest Nursing Home v. Local 144, Hotel, Hosp., Nursing Home & Allied Servs. Union, 788 F.2d 894, 898 (2d Cir. 1986).

The narrow scope of the Fiduciary Agreements and the arbitration clauses contained therein cannot compel Plaintiffs to arbitrate these claims. See Loetscher Decl. ¶ 10; see also Phillips v. Audio Active, Ltd., 494 F.3d 378, 391-92 (2d Cir. 2007) (unjust enrichment, copyright, and unfair competition claims were not covered by forum selection clause in a recording contract because plaintiff "has asserted no rights or duties under that contract") (emphasis added); Fantis Foods, Inc. v. Standard Importing Co., 63 A.D.2d 52, 58 (1st Dep't 1978), rev'd on other grounds 49 N.Y.2d 317 (1980) ("The alleged conversion by [defendant] subsequent to the contract constitutes an undisputed act not arising out of the contract."); cf. Twinlab Corp., 283 A.D.2d at 571.

23

COUNTY CLERK'S INDEX

No. INDEX 116985/07

# Supreme Court

### COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM; COLLEEN AND LOGANY
SETTLEMENTS; COLLEEN INVESTMENT AG; ALSAM
HOLDING AG; PENNY ASSET AG; LOGANY EQUITY
AG; VIERWALDSTATTER BETEILIGUNGEN AG;
CLARICK AG; COLLEEN INVESTMENT, L.L.C.;
LOGANY, L.L.C.; AND WILLIAM TACON, RECEIVER
AND MANAGER OF THE ASSETS OF MAYTOWN
UNIVERSAL SA AND PLYMPTON UNIVERSAL SA,

Plaintiff,

- against -

DR. MARCO STOFFEL; ALBE ASSOCIATES LIMITED;
BLUECOLT SECURITIES CORPORATION;
LAURAMCA HOLDINGS, L.L.C.; AND JOHN DOES 1-
10,

Defendant

---

## NOTICE OF FILING OF NOTICE OF REMOVAL.

---

**ORIGINAL**

---

## Hughes Hubbard & Reed LLP

One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212 837-6000

Attorneys for Defendants
Dr. Marco Stoffel and Lauramca Holdings, LLC

By: _Sarah Barrett_
Sarah Barrett

FILED

MAR 1 8 2008

NEW YORK
COUNTY CLERK'S OFFICE