UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS,  COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM R. TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

Plaintiffs,

-against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

Defendants.

---

Case No. 08 CV 02844

**DECLARATION OF SCOTT
S.  BALBER IN SUPPORT OF
PLAINTIFFS' MOTION TO
REMAND**

---

SCOTT S. BALBER, hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am a member of the Bar of this Court and a partner of the law firm of

Chadbourne & Parke LLP, attorneys for Plaintiffs Vistra Trust Company (Jersey) Limited

("Vistra") and Colleen Investment AG ("Colleen AG"), Alsam Holding AG, Penny Asset AG,

Logany Equity AG, Vierwaldstätter Beteiligungen AG and Clarick AG (the "Swiss

Companies"), Colleen Investment, L.L.C. ("Colleen LLC") and Logany, L.L.C. ("Logany

LLC," and together with Colleen LLC, the "LLCs"), and William R. Tacon, Receiver and

Manager of the assets of Maytown Universal SA ("Maytown) and Plympton Universal SA ("Plympton") (together, "Plaintiffs"). I am fully familiar with all the facts set forth herein. I make this affirmation in support of Plaintiffs' motion to remand this action against Defendants Dr. Marco Stoffel ("Stoffel"), Albe Associates Limited ("Albe"), Bluecolt Securities Corporation ("Bluecolt"), Lauramca Holdings, L.L.C. ("Lauramca"), and John Does 1-10 (together, "Defendants").

2. Attached hereto as Exhibit 1 is a copy of the Affidavit of Service filed by Plaintiffs in the Commercial Division of the New York Supreme Court, New York County (the "State Court") in this action, reflecting service of the Complaint on Stoffel.

3. Attached hereto as Exhibit 2 is a copy of the temporary restraining order entered against Defendants in this action on December 21, 2007.

4. Attached hereto as Exhibit 3 is a copy of the January 11, 2008 order granting a preliminary injunction against Defendants in this action. This exhibit also includes a copy of the settled order granting the preliminary injunction and the schedule of enjoined assets.

5. Attached hereto as Exhibit 4 is copy of excerpts from Stoffel's November 9, 2007 deposition testimony in the matter captioned *Colleen Investment AG et al.* v. *Marco Stoffel*, C.A. No. 2672-VCS (Del. Ch. Ct.) (the "Delaware Action").

6. Attached hereto as Exhibit 5 is a copy of the Preliminary Conference Order entered by the State Court in this action on March 3, 2008.

7.  Attached hereto as Exhibit 6 is a copy of the statement of facts set forth in the Memorandum of Law in Support of Plaintiffs' Application for a Temporary Restraining Order and a Preliminary Injunction dated December 21, 2007, which was submitted by Plaintiffs in this action.

8.  Attached hereto as Exhibit 7 is a copy of a letter from Withers LLP to William Tacon dated October 3, 2007.

9.  Attached hereto as Exhibit 8 is a copy of a Uniform Residential Loan Application filed by Stoffel on May 21, 2007.

10. Attached hereto as Exhibits 9-11 are copies of the Alsam, Colleen and Logany Settlement Deeds dated December 18, 1998.  The material terms of these Settlement Deeds are identical.  The first paragraph of each of the Settlement Deeds evidences that Vistra was the Trustee of the Alsam, Colleen and Logany Trusts at their inception (prior to 2006, Vistra operated under the name of Chiltern Trust Company (Jersey) Limited).

11. Attached hereto as Exhibit 12 is a copy of the Stipulation and Order Regarding Access to Books and Records entered in the Delaware Action on March 1, 2007.  Paragraph 3 of this order states that Stoffel will receive access to third party disclosures of Plaintiffs' own books and records to Plaintiffs.

12. Attached hereto as Exhibit 13 is a copy of Albe's Bank Leu account opening form dated January 15, 2002. The form states that Marco Stoffel is the beneficial owner of the assets held in Albe's name by Bank Leu.

13. Attached hereto as Exhibit 14 is a copy of an addendum to Stoffel's last Will and Testament dated March 16, 2002. On the first page of the Will Addendum, Stoffel states that he is the owner of Albe and lists its shares as part of his undeclared assets.

14. Attached hereto as Exhibit 15 is a copy of Bluecolt's VP Bank account opening form dated June 22, 2006. The form states that Stoffel is the beneficial owner of the assets held in Bluecolt's name by VP bank.

15. Attached hereto as Exhibits 16 and 17 are copies of letters from Stoffel to Orconsult dated December 6 and 28, 2006. The letters state that Stoffel is conferring the shares of Albe and Bluecolt to the Albeag Foundation.

16. Attached hereto as Exhibit 18 is a copy of excerpts from Stoffel's August 2, 2007 deposition testimony in the matter captioned *Application of Vistra Trust Company (Jersey) Limited and William Tacon, Receiver and Manager, for an Order of Judicial Assistance Pursuant to 28 U.S.C. Section 1782*, No. M-139 (S.D.N.Y.).

17. Attached hereto as Exhibit 19 is a copy of a facsimile from Stoffel to Guido Banholzer of Orconsult SA ("Banholzer") dated January 22, 2002 and a certified translation thereof.  The facsimile states that Banholzer should arrange for Maytown and Plympton to pay the attached invoices.  The exhibit also includes bank statements evidencing Maytown and Plympton's payment of those invoices and the immediate transfer of such payments to Albe.

18. Attached hereto as Exhibit 20 is a copy of a facsimile from Stoffel to Banholzer dated May 15, 2002 and a certified translation thereof.  The facsimile states that Banholzer should arrange for payment of the attached invoices.  The exhibit also includes bank statements evidencing Maytown and Plympton's payment of those invoices and the immediate transfer of such payments to Albe.

19. Attached hereto as Exhibit 21 is a copy of a facsimile from Stoffel to Banholzer dated March 26, 2004 and a certified translation thereof.  The facsimile states that Banholzer should arrange for payment of the attached invoices.  The exhibit also includes bank statements evidencing Maytown and Plympton's payment of those invoices and the immediate transfer of such payments to Albe.

20. Attached hereto as Exhibit 22 is a copy of a facsimile from Stoffel to Banholzer dated June 25, 2006 and a certified translation thereof.  The facsimile states that Banholzer should arrange for payment of the attached invoices.  The exhibit also includes bank statements evidencing Maytown and Plympton's payment of those invoices.

21. Attached hereto as Exhibit 23 is a copy of excerpts from Stoffel's December 20, 2007 deposition testimony in the matter captioned *Application of Vistra Trust Company (Jersey) Limited and William Tacon, Receiver and Manager, for an Order of Judicial Assistance Pursuant to 28 U.S.C. Section 1782*, No. M-139 (S.D.N.Y.).

22. Attached hereto as Exhibit 24 is a copy of an excerpt from Connie Kendig's February 15, 2008 deposition testimony in the Delaware Action.

23. Attached hereto as Exhibit 25 is a copy of an Order entered by the Royal Court of Jersey on November 15, 2006 in the matter captioned *In the Matter of the Representation of Vistra Trust Company (Jersey) Limited, Formerly Known as Chiltern Trust Company (Jersey) Limited as Trustee of the Alsam, Colleen and Logany Settelements and in the Matter of Articles 51 and 53 of the Trusts (Jersey) Law 1984 (as amended)*, No. 2006/352. Paragraph one of that Order states that the powers of New Eagle Limited, the Protector of the Jersey Trusts, are suspended.

24. Attached hereto as Exhibit 26 are copies of meeting minutes from the Swiss Companies' December 6, 2006 board meetings. The meeting minutes state that each of the Swiss Companies resolved to dismiss Messrs. Stoffel, Banholzer and Georges Phillipe from their respective Boards of Directors and appointed directors chosen by Vistra as Trustee. The minutes also state that Aline Wey Spiers served as Secretary at these meetings.

25.   Attached hereto as Exhibit 27 is a copy of the written consent of Colleen AG, the sole member of Colleen LLC, dated December 7, 2006.  This consent states that Rodney Hodges is the Manager of Colleen LLC.

26.   Attached hereto as Exhibit 28 are copies of the written consents of the new Managers of Colleen LLC and Logany LLC dated December 7, 2006.  These consents state that any and all persons authorized at that time to act as officers of Colleen LLC and Logany LLC are replaced with Rodney Hodges and Tanya Scott-Tomlin.

27. Attached hereto as Exhibit 29 is a copy of an excerpt of the November 20, 2007 deposition of Aline Wey Spiers taken by Stoffel's counsel in the Delaware Action.  Ms. Spiers is an attorney at CMS von Erlach Henrici, Plaintiffs' Swiss Counsel.

28. Attached hereto as Exhibit 30 is a copy of an excerpt from the November 21, 2007 deposition of Urs Christen in the Delaware Action.  The excerpt evidences Stoffel's counsel, Mr. Mueller, examining Mr. Christen.

29. Attached hereto as Exhibit 31 are copies of motions made by Stoffel in the Delaware Action for orders directing that commissions be issued for testimony outside Delaware of Abbe David Lowell (Plaintiffs' former counsel), Scott S. Balber (Plaintiffs' current counsel), Willkie Farr & Gallagher LLP (the LLCs' former agent), and Fulvio & Associates, LLP (the LLCs' former accountant).

30. Attached hereto as Exhibit 32 is a copy of an excerpt from the Reply Memorandum of Law in Further Support of Marco Stoffel's Motion to Quash Subpoenas dated June 5, 2007, which was submitted in the action captioned *Application of Vistra Trust Company (Jersey) Limited and William Tacon, Receiver and Manager, for an Order of Judicial Assistance Pursuant to 28 U.S.C. Section 1782*, No. M-139 (S.D.N.Y.).

31. Attached hereto as Exhibit 33 is a copy of the Declaration of Dr. Marco Stoffel dated January 18, 2008, which was submitted in the action captioned *In re: Application Pursuant to 28 U.S.C. § 1782 of Urs Christen to take discovery of Holger Blickle*, 1:07-mc-10263 (D. Mass.).

32. Attached hereto as Exhibit 34 is a copy of the Declaration of Urs Christen in Support of Application for Order to Take Discovery Pursuant to 28 U.S.C. § 1782 dated October 23, 2007, which was submitted in the action captioned *In re: Application Pursuant to 28 U.S.C. § 1782 of Urs Christen to take discovery of Holger Blickle*, 1:07-mc-10263 (D. Mass.).

33. Attached hereto as Exhibit 35 is a copy of a letter from Withers LLP to Appleby, a Bermuda law firm, dated November 21, 2007.

34. Attached hereto as Exhibit 36 is a copy of a letter from Withers LLP to Appleby, a Bermuda law firm, dated November 27, 2007.

35. Attached hereto as Exhibit 37 is a copy of the Second Witness Statement of Graeme Kleiner dated July 20, 2007, which was submitted in an action in the High Court of England and Wales, Chancery Division in the matter entitled *William Richard Tacon* v. *Lloyds TSB Bank PLC*.

36. Attached hereto as Exhibit 38 is a copy of the Agreement on the Takeover and Administration of a Foundation between Stoffel and Orconsult SA dated November 24, 2006 and a certified translation thereof.

37. Attached hereto as Exhibit 39 is a copy of a letter from Hughes Hubbard & Reed, Stoffel's counsel in this action, to this Court dated April 10, 2008.

38. Attached hereto as Exhibit 40 is a copy of a letter from Hughes Hubbard & Reed LLP to this Court dated April 14, 2008.

39. Attached hereto as Exhibit 41 is a copy of an agreement entitled Mandate for the Incorporation and Management of a Company dated November 6, 2000 by and between Stoffel and Orconsult SA. This agreement states that it pertains to the management of Albe.

40. Attached hereto as Exhibit 42 is a copy of a letter from Potter, Anderson & Corroon LLP, Plaintiffs' Delaware counsel, to Richards, Layton & Finger, Stoffel's Delaware counsel, dated April 3, 2008. The letter states that plaintiffs in the Delaware Action will make twenty-seven boxes of documents available to Stoffel in response to his document request in that action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
April 17, 2008

_____
Scott S. Balber

# EXHIBIT 1

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE ALSAM, COLLEEN, AND LOGANY SETTLEMENTS, COLLEEN INVESTMENT AG, ALSAM HOLDING AG, PENNY ASSET AG, LOGANY EQUITY AG, VIERWALDSTATTER BETEILIGUNGEN AG, CLARICK AG, COLLEEN INVESTMENT, L.L.C., LOGANY, L.L.C., and WILLIAM TACON, RECEIVER AND MANAGER OF THE ASSETS OF MAYTOWN UNIVERSAL SA AND PLYMPTON UNIVERSAL SA,

                       Plaintiffs,

                 -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES LIMITED, BLUECOLT SECURITIES CORPORATION, LAURAMCA HOLDINGS, L.L.C., and JOHN DOES 1-10,

                    Defendants.

---

Index No. 116985/07

(Hon. Louis B. York)

**AFFIDAVIT OF SERVICE**

---

STATE OF NEW YORK    )
                     :   ss.:
COUNTY OF NEW YORK  )

     ALFRED MC NEILL, being duly sworn deposes and says:

     1. I am not a party to this action, am over the age of eighteen, and reside in the State of New York.

     2. On the 21st day of December, 2007, I served true copies of Vistra Trust Company (Jersey) Limited as Trustee of the Alsam, Colleen, and Logany Settlements, Colleen Investment

AG, Alsam Holding AG, Penny Asset AG, Logany Equity AG, Vierwaldstatter Beteiligungen AG, Clarick AG, Colleen Investment, L.L.C., Logany, L.L.C., and William Tacon's Summons and Complaint, Order to Show Cause with Temporary Restraining Order, Memorandum of Law in Support of Plaintiffs' Application for a Temporary Restraining Order and a Preliminary Injunction, Affirmation of Scott S. Balber in Support of Temporary Restraining Order, Preliminary Injunction and Affirmation of Exigent Circumstances of Scott S. Balber and Request for Judicial Intervention by hand, on defendant, Dr. Marco Stoffel, by personally delivering true copies of the same upon him at the address shown below:

> Dr. Marco Stoffel
> 340 West 12th Street
> New York, NY 10014

Alfred Mc Neill

Sworn to before me this
26 th day of December 2007

ESTA FISCHER
NOTARY PUBLIC, State of New York
No. 31-4957113
Qualified in New York County
Commission Expires Oct. 10, 20 09

2

# EXHIBIT 2

At the IAS Part of the Supreme Court of the
State of New York, held in and for the
County of New York, at the New York
County Courthouse, located at 60 Centre 71 Thomas
Street, New York, New York, on the
21st day of December, 2007

PRESENT: Hon. _____, Justice

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

                                        Plaintiffs,

                    -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

                                        Defendants.

Index No. 116985 | 07

**ORDER TO SHOW CAUSE
WITH TEMPORARY
<u>RESTRAINING ORDER</u>**

        UPON reading and filing the Summons and Complaint herein, the Affirmation of

Scott S. Balber in Support of Temporary Restraining Order and Preliminary Injunction, dated

December 21, 2007, and the exhibits thereto, the Affirmation of Exigent Circumstances of Scott

S. Balber, dated December 21, 2007, the Affidavit of Tanya Scott-Tomlin sworn to on December 19, 2007, and the accompanying Memorandum of Law, and sufficient cause appearing therefore,

NOW, upon the application of Chadbourne & Parke LLP, attorneys for plaintiffs, it is hereby

ORDERED that defendants, Dr. Marco Stoffel ("Stoffel"), Albe Associates Limited ("Albe"), Bluecolt Securities Corporation ("Bluecolt"), Lauramca Holdings, L.L.C. ("Lauramca"), and John Does 1-10 (together, "Defendants"), or their attorneys show cause before this Court at Part _2_, Room _225_ of the Courthouse located at 60 Centre Street, New York, County of New York, on _Jan 11_ at _10:00_ a.m., or as soon thereafter as counsel can be heard, why an Order should not be issued pursuant to New York Civil Practice Law and Rules §§ 6301, 6311 and 6313:

(1)    preliminarily enjoining and restraining the Defendants, their agents, servants, employees, and all other persons acting on their behalf, during the pendency of this action and until final judgment herein, from taking any action, directly or indirectly, to remove, transfer, sell, pledge, assign, destroy or otherwise dispose of certain assets as specifically identified in Schedule A attached hereto (the "Enumerated Assets"); and

(2)    granting such other relief as this Court may deem just and proper.

IT BEING ALLEGED in the aforesaid papers that temporary relief is necessary to prevent irreparable harm to plaintiffs pending the hearing and determination of the within

application for a preliminary injunction and plaintiffs alleging that they are entitled to a preliminary injunction under CPLR § 6301 et seq. to enjoin defendants as stated above; and it is further hereby

ORDERED, pursuant to CPLR §§ 6301 and 6313, that pending the hearing and determination of this Order to Show Cause, the defendants, their agents, servants, employees, and all other persons acting on their behalf, are hereby temporarily enjoined and restrained from taking any action, directly or indirectly, to remove, transfer, sell, pledge, assign, destroy or otherwise dispose of the aforesaid Enumerated Assets; and it is further hereby

ORDERED, that personal service of the Summons and Complaint, and of a copy of this Order to Show Cause with Temporary Restraining Order and the papers upon which it is based, upon Defendants Dr. Marco Stoffel, Albe Associates Limited, Bluecolt Securities Corporation, and Lauramca Holdings, L.L.C., on or before 5:30 p.m. on December 24, 2007, shall be deemed good and sufficient service and notice of this application; and it is further hereby

ORDERED, that papers in opposition to this application, if any, be served by hand upon plaintiffs' counsel no later than 5:30 p.m. on December ~~31~~ Jan 2, 2008, 2007, and that reply papers be served no later than ~~December~~ Jan 4, 2007.

Dated: New York, New York
       December 21, 2007

ENTER:

_____
LOUIS B. YORK
                   J.S.C.

ALL PAPERS TO BE FILED IN IA PART 2 NO LATER THAN 1 DAY(S) BEFORE THE RETURN DATE.

3

## Schedule A

1.    Art and antiquities purchased by Stoffel:

    (a)    Artwork entitled "Rosignano 98 Sea 3 Piccola, 1998," purchased on or about March 17, 2001 for US$ 8,100.

    (b)    Three pieces of artwork entitled "Buochs, 1956," "Stansstad 1959," and "Hergiswil 1971," purchased on or about March 27, 2001 for US$ 3,650.

    (c)    Artwork entitled "Architecture: Reflections on Claustrophobia, Paranoia and Conspiracy Theory, #4, 2001," purchased on or about June 26, 2001 for US$ 15,000.

    (d)    Artwork entitled "L.P., IV, 2000," purchased on or about June 26, 2001 for US$ 26,000.

    (e)    Artwork entitled "Marble Floor, 1999," purchased on or about June 26, 2001 for US$ 8,800.

    (f)    Artwork entitled "Fusion, 2001," purchased on or about June 26, 2001 for CHF 11,000.

    (g)    Artwork entitled "Chairs (Red)," purchased on or about June 28, 2001 for US$ 36,000.

    (h)    Artwork entitled "Schnorkel Drawing, 2000," purchased on or about July 13, 2001 for GBP 4,500.

    (i)    Artwork entitled "A Treasury of Human Inheritance, Levy's Case, 2001," purchased on or about July 13, 2001 for GBP 4,500.

(j)     Artwork entitled "Salmon Pink with Frilly Aubergine Vase, 2000,"

        purchased on or about July 20, 2001 for GBP 4,500.

(k)     Artwork entitled "1 Kopf eines Junglings, Marmor, romisch, 2,"

        purchased on or about March 5, 2003 for EUR 4,000.

(l)     Artwork entitled "Weibliche Statuette," purchased on or about March 6,

        2003 for EUR 6,040.89.

(m)     Artwork entitled "1 terracotta figure of a dancer, late-Minoaen, 14th cent.

        BC," purchased on or about March 14, 2003 for EUR 6,000.

(n)     Artwork (title unknown) purchased for GBP 10,000 on or about May 10,

        2003 from the Miro gallery.

(o)     Artwork (title unknown) purchased for EUR 22,000 on or about December

        29, 2003 from the Roswitha Eberwein gallery.

(p)     Artwork (title unknown) purchased for US$ 60,000 on or about January

        28, 2004 from the Safani Gallery.

(q)     Artwork (title unknown) purchased for US$ 42,800 on or about January

        31, 2004 from M. Eisenberg Inc.

(r)     Artwork entitled "Domain XXXIII, 2003," purchased on or about March

        22, 2004 for EUR 110,000.

(s)     Artwork entitled "Sled, 2004," purchased on or about April 17, 2004 for

        US$ 64,000.

(t)     Artwork entitled "Ich halte alle Indien in meiner Hand, 2004," purchased on or about April 17, 2004 for EUR 250,000.

(u)     Artwork entitled "Group of twenty-eight figures, Ming Dynasty, 16th century," purchased on or about June 30, 2004 for US$ 64,500.

(v)     Artwork (title unknown) purchased for US$ 28,000 on or about September 21, 2004 from the Safani Gallery.

(w)     Artwork (title unknown) purchased for US$ 45,106.53 on or about November 30, 2004 from the Sean Kelly Gallery.

(x)     Artwork entitled "Stonehenge," purchased on or about May 28, 2005 for US$ 26,964.

(y)     Artwork (title unknown) purchased for US$ 7,100 on or about October 21, 2006 from Red Gate (Int'l) Ltd, Hong Kong.

(z)     Artwork entitled "Talisman, 2006-2007," purchased on or about October 21, 2006 for US$ 60,000.

(aa)    Artwork entitled "Work No. 1 of 2004," purchased on or about October 31, 2006 for US$ 47,500.

(bb)    Artwork entitled "Mongolians, 2006," purchased on or about November 9, 2006 for EUR 23,750.

(cc)    Artwork entitled "Man with White Shirt and Black Trousers, Relief 4 Circles, 2006," purchased on or about November 19, 2006 for EUR 88,000;

3

(dd)    Artwork entitled "Egyptian Old Kingdom," purchased on or about January 30, 2004 for US$ 37,500;

(ee)    Artwork entitled "Etruscan terracotta head of Herakles," purchased on or about January 30, 2004 for US$ 12,500;

(ff)    Artwork entitled "Attic white-ground lekythos," purchased on or about May 27, 2004 for US$ 6,420.

2.    The following automobiles purchased by Stoffel:

(a)    Aston Martin 1965 Coupé, Serial No. DB5/1835/R purchased on or about May 14, 2001 for US$ 64,859.37.

(b)    AC Bristol, 1958, Serial # BEX 487 purchased on or about August 22, 2001 for US$ 78,073.

(c)    Rolls Royce 1922 Silver Ghost Chassis No. 11BG purchased on or about July 15, 2002 for GBP 67,500.

(d)    Rolls Royce Silver Ghost 1912 Chassis 1905E purchased on or about December 12, 2003 for GBP 182,500.

(e)    Bentley 1924 Chassis No. 615 purchased on or about February 18, 2004 for GBP 155,000.

(f)    BMW 530 xi purchased on or about December 20, 2006 for CHF 86,800.

(g)    BMW X5, 2004 purchased on or about May 31, 2004 for US$ 83,642.50.

(h)    Bentley 1949 Mark 6 purchased on or around May 15, 2002 for USD $15,000;

4

3. An apartment at 47 Park Street, London, England, purchased by Albe;

4. Lloyds TSB bank accounts held in the name of Albe with account numbers 11358707, 86065558, and 1936979 and Bank Leu bank accounts held in the name of Albe with account numbers 619606-82, 619696-82-1, and 619606-85;

5. VP bank accounts held in the name of Bluecolt with account numbers 346.377.010, 346.377.013, 346.377.016, and 346.377.900;

6. Furniture purchased for a townhouse located at 340 W. 12th Street, New York, New York;

7. First Republic Bank account held in the name of Lauramca with account number 97100063381;

8. First Republic Bank accounts held in the name of Stoffel with account numbers 97100063373, 97900044482;

9. UBS AG Bank accounts held in the name of Stoffel, including account number 230-253441.01F;

10. Real property located at 340 W. 12th Street, New York, New York.

5

# EXHIBIT 3

SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT: _____        PART _56_
                          *Justice*

*Vistra Trust Co*
        *et al*                    INDEX NO. _116985/07_

                                   MOTION DATE _1/11/08_

        - v -                      MOTION SEQ. NO. _001_

*Dr Marco Stoffel et al*           MOTION CAL. NO. _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

                                                    PAPERS NUMBERED

Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ...    _____

Answering Affidavits — Exhibits _____    _____

Replying Affidavits _____    _____

Cross-Motion:    ☐ Yes    ☐ No

Upon the foregoing papers, it is ordered that this motion

    *Motion is granted on the*
*record. Plaintiff to post*
*a bond in the amount of*
*$1,000,000.00*

        *Settle Order*

Dated: ___1/11/08___                RICHARD B. LOWE III
                                                        J.S.C.

Check one:    ☐ FINAL DISPOSITION    ☒ NON-FINAL DISPOSITION
Check if appropriate:    ☐ DO NOT POST    ☐ REFERENCE

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE FOR THE FOLLOWING REASON(S):

At IAS Part 56 of the Supreme Court of the
State of New York, held in and for the
County of New York, at the New York
County Courthouse, located at 60 Centre
Street, New York, New York, on the 11th
day of February, 2008

PRESENT: <u>Richard B. Lowe III</u>, Justice

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS,  COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM R. TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

                                        Plaintiffs,

            -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

                                        Defendants.

Index No. 116985/07

**Order Granting Preliminary
Injunction**



Plaintiffs having moved this Court for a preliminary injunction pursuant to Sections

6301 and 6311 of the Civil Practice Law and Rules, enjoining the Defendants, their agents,

servants, employees, and all other persons acting on their behalf, during the pendency of this

action and until final judgment herein, from taking any action, directly or indirectly, to remove,

transfer, sell, pledge, assign, encumber, destroy or otherwise dispose of certain assets as specifically identified in Schedule A attached hereto (the "Enumerated Assets"), and granting such other and further relief as the Court shall deem just and equitable, and the motions having regularly come on to be heard before me,

NOW, upon considering the Summons and Complaint, *the order to show cause dated Dec 12, 2007,* the Affirmations of Scott S. Balber sworn to on December 21, 2007 and January 4, 2008, the Affidavit of Tanya Scott-Tomlin, sworn to on December 19, 2007, Plaintiffs' Memorandum of Law and Reply Memorandum of Law, the Affidavit of Marco Stoffel sworn to on January 2, 2008 and Defendants' Memorandum of Law, and upon hearing oral argument from the parties on January 11, 2008;

And it appearing that, pursuant to Sections 6301 et seq. of the Civil Practice Law and Rules, causes of action exist for injunctive relief and Plaintiffs have demonstrated (i) a likelihood of prevailing on the merits of their claims, (ii) that they will suffer irreparable harm if a preliminary injunction were not granted, and (iii) that a balancing of the equities favors the imposition of a preliminary injunction, it is hereby

ORDERED, that Plaintiffs' motion for a preliminary injunction is GRANTED and that, during the pendency of this action and until final judgment herein, the Defendants, their agents, servants, employees, and all other persons acting on their behalf, be and each of them hereby is enjoined and restrained from taking any action, directly or indirectly, to remove, transfer, sell, pledge, assign, encumber, destroy or otherwise dispose of the aforesaid Enumerated Assets; and it is further hereby

*Ordered, That defendants Stoffel and Laurance Holdings, shall have the right to petition the court, upon notice to plaintiffs, for leave to sell an enjoined asset should circumstances necessitate said sale; and it is further*

2

ORDERED, that the amount of the undertaking to be filed by Plaintiffs is fixed at one

million dollars ($1,000,000).

~~Dated:~~      ~~New York, New York~~
            ~~February     2008~~

ENTER:

RICHARD B. LOWE III
_____
Justice Richard B. Lowe III

☐ DO NOT POST



FILED

APR 14 2008

COUNTY CLERK'S OFFICE
NEW YORK

## Schedule A

1.  Art and antiquities purchased by Stoffel:

    (a)   Artwork entitled "Rosignano 98 Sea 3 Piccola, 1998," purchased on or about March 17, 2001 for US$ 8,100.

    (b)   Three pieces of artwork entitled "Buochs, 1956," "Stansstad 1959," and "Hergiswil 1971," purchased on or about March 27, 2001 for US$ 3,650.

    (c)   Artwork entitled "Architecture: Reflections on Claustrophobia, Paranoia and Conspiracy Theory, #4, 2001," purchased on or about June 26, 2001 for US$ 15,000.

    (d)   Artwork entitled "L.P., IV, 2000," purchased on or about June 26, 2001 for US$ 26,000.

    (e)   Artwork entitled "Marble Floor, 1999," purchased on or about June 26, 2001 for US$ 8,800.

    (f)   Artwork entitled "Fusion, 2001," purchased on or about June 26, 2001 for CHF 11,000.

    (g)   Artwork entitled "Chairs (Red)," purchased on or about June 28, 2001 for US$ 36,000.

    (h)   Artwork entitled "Schnorkel Drawing, 2000," purchased on or about July 13, 2001 for GBP 4,500.

    (i)   Artwork entitled "A Treasury of Human Inheritance, Levy's Case, 2001," purchased on or about July 13, 2001 for GBP 4,500.

(j)     Artwork entitled "Salmon Pink with Frilly Aubergine Vase, 2000," purchased on or about July 20, 2001 for GBP 4,500.

(k)     Artwork entitled "1 Kopf eines Junglings, Marmor, romisch, 2," purchased on or about March 5, 2003 for EUR 4,000.

(l)     Artwork entitled "Weibliche Statuette," purchased on or about March 6, 2003 for EUR 6,040.89.

(m)     Artwork entitled "1 terracotta figure of a dancer, late-Minoaen, 14th cent. BC," purchased on or about March 14, 2003 for EUR 6,000.

(n)     Artwork (title unknown) purchased for GBP 10,000 on or about May 10, 2003 from the Miro gallery.

(o)     Artwork (title unknown) purchased for EUR 22,000 on or about December 29, 2003 from the Roswitha Eberwein gallery.

(p)     Artwork (title unknown) purchased for US$ 60,000 on or about January 28, 2004 from the Safani Gallery.

(q)     Artwork (title unknown) purchased for US$ 42,800 on or about January 31, 2004 from M. Eisenberg Inc.

(r)     Artwork entitled "Domain XXXIII, 2003," purchased on or about March 22, 2004 for EUR 110,000.

(s)     Artwork entitled "Sled, 2004," purchased on or about April 17, 2004 for US$ 64,000.

(t)     Artwork entitled "Ich halte alle Indien in meiner Hand, 2004," purchased on or about April 17, 2004 for EUR 250,000.

(u)     Artwork entitled "Group of twenty-eight figures, Ming Dynasty, 16th century," purchased on or about June 30, 2004 for US$ 64,500.

(v)     Artwork (title unknown) purchased for US$ 28,000 on or about September 21, 2004 from the Safani Gallery.

(w)     Artwork (title unknown) purchased for US$ 45,106.53 on or about November 30, 2004 from the Sean Kelly Gallery.

(x)     Artwork entitled "Stonehenge," purchased on or about May 28, 2005 for US$ 26,964.

(y)     Artwork (title unknown) purchased for US$ 7,100 on or about October 21, 2006 from Red Gate (Int'l) Ltd, Hong Kong.

(z)     Artwork entitled "Talisman, 2006-2007," purchased on or about October 21, 2006 for US$ 60,000.

(aa)    Artwork entitled "Work No. 1 of 2004," purchased on or about October 31, 2006 for US$ 47,500.

(bb)    Artwork entitled "Mongolians, 2006," purchased on or about November 9, 2006 for EUR 23,750.

(cc)    Artwork entitled "Man with White Shirt and Black Trousers, Relief 4 Circles, 2006," purchased on or about November 19, 2006 for EUR 88,000;

3

(dd)    Artwork entitled "Egyptian Old Kingdom," purchased on or about January 30, 2004 for US$ 37,500;

(ee)    Artwork entitled "Etruscan terracotta head of Herakles," purchased on or about January 30, 2004 for US$ 12,500;

(ff)    Artwork entitled "Attic white-ground lekythos," purchased on or about May 27, 2004 for US$ 6,420.

2.    The following automobiles purchased by Stoffel:

(a)    Aston Martin 1965 Coupé, Serial No. DB5/1835/R purchased on or about May 14, 2001 for US$ 64,859.37.

(b)    AC Bristol, 1958, Serial # BEX 487 purchased on or about August 22, 2001 for US$ 78,073.

(c)    Rolls Royce 1922 Silver Ghost Chassis No. 11BG purchased on or about July 15, 2002 for GBP 67,500.

(d)    Rolls Royce Silver Ghost 1912 Chassis 1905E purchased on or about December 12, 2003 for GBP 182,500.

(e)    Bentley 1924 Chassis No. 615 purchased on or about February 18, 2004 for GBP 155,000.

(f)    BMW 530 xi purchased on or about December 20, 2006 for CHF 86,800.

(g)    BMW X5, 2004 purchased on or about May 31, 2004 for US$ 83,642.50.

(h)    Bentley 1949 Mark 6 purchased on or around May 15, 2002 for USD $15,000;

3.    An apartment at 47 Park Street, London, England, purchased by Albe;

4.    Lloyds TSB bank accounts held in the name of Albe with account numbers

11358707, 86065558, and 1936979 and Bank Leu bank accounts held in the name of

Albe with account numbers 619606-82, 619696-82-1, and 619606-85;

5.    VP bank accounts held in the name of Bluecolt with account numbers 346.377.010,

346.377.013, 346.377.016, and 346.377.900;

6.    Furniture purchased for a townhouse located at 340 W. 12th Street, New York, New

York;

7.    First Republic Bank account held in the name of Lauramca with account number

97100063381;

8.    First Republic Bank accounts held in the name of Stoffel with account numbers

97100063373, 97900044482;

9.    UBS AG Bank accounts held in the name of Stoffel, including account number 230-

253441.01F;

10.    Real property located at 340 W. 12th Street, New York, New York.

# EXHIBIT 4

MARCO STOFFEL

Page 1

IN THE COURT OF CHANCERY
OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

------------------------------x
COLLEEN INVESTMENT AG,
COLLEEN INVESTMENT, L.L.C.,
and LOGANY, L.L.C.,

                    Plaintiffs,

                              Civil Action
        -against-            No. 2672-N

MARCO STOFFEL,

                    Defendant.
------------------------------x

                         November 9, 2007
                         9:27 a.m.


        Deposition of MARCO STOFFEL, at the

offices of Chadbourne & Parke, LLP, 30

Rockefeller Plaza, New York, New York, before

Roberta Caiola, a Shorthand Reporter and Notary

Public within and for the State of New York.

MARCO STOFFEL

| Page 2 | Page 4 |
|---|---|

**Page 2**

```
 1          A P P E A R A N C E S :
 2
 3    CHADBOURNE & PARKE, LLP
 4    Attorneys for Plaintiffs
         30 Rockefeller Plaza
 5       New York, New York
 6    BY:  SCOTT S. BALBER, ESQ.
         JONATHAN C. CROSS, ESQ.
 7       ROBERT GROSSMAN, ESQ.
 8
 9    MORRISON & FOERSTER LLP
      Attorneys for Defendant
10       1290 Avenue of the Americas
         New York, New York 10104-0050
11
      BY:  THOMAS M. MUELLER, ESQ.
12
13
      ALSO PRESENT:
14       HEATHER ZAMORA-HEGG, Videographer
15
16
17
18
19
20
21
22
23
24
25
```

**Page 4**

```
                      Marco Stoffel
09:28:43 2    swear the witness.
08:49:25 3    Marco Stoffel, having been duly sworn by the
08:49:25 4    Notary Public, (Roberta Caiola), was examined
08:49:25 5    and testified as follows:
09:19:37 6    EXAMINATION BY MR. BALBER:
09:28:45 7        Q.   Dr. Stoffel, you brought a series
09:28:51 8    of documents with you today.  What I will do is
09:28:55 9    let's just mark these as exhibits and you can
09:28:58 10   keep your originals.
09:29:01 11       MR. BALBER:  Let's mark this as
09:29:45 12   Exhibit 1.
09:29:45 13            (Copies of documents, marked
09:29:47 14   Exhibit 1 for identification.)
09:29:47 15       MR. BALBER:  Mark this as Exhibit
09:29:48 16   2.
09:29:48 17            (Copies of documents, marked
09:29:49 18   Exhibit 2 for identification.)
09:29:49 19       Q.   Dr. Stoffel, I placed in front of
09:29:51 20   you Exhibit 1 and Exhibit 2, which are the
09:29:54 21   copies of the documents you brought with you
09:29:56 22   today.  Can you tell me what Exhibit 1 is?
09:30:03 23       A.   I'm checking all the copies of the
09:30:06 24   documents that were made because I see some
09:30:09 25   white pages that they are not in the same order
```

**Page 3**

```
 1                    Marco Stoffel
09:27:17 2        THE VIDEOGRAPHER:  This is the
09:27:24 3    video operator speaking, Heather Zamora-Hegg of
09:27:31 4    Merrill Legal Solutions, 25 West 45th Street,
09:27:35 5    New York, New York.  Today is November 9, 2007
09:27:38 6    and the time is 9:27 a.m.
09:27:40 7        We are at the offices of Chadbourne
09:27:43 8    & Parke LLP, 30 Rockefeller Plaza, New York, New
09:27:47 9    York, to take the videotaped deposition of Marco
09:27:51 10   Stoffel, in the matter of Colleen Investments AG
09:27:54 11   et al. versus Marco Stoffel, in the Court of
09:27:58 12   Chancery of the State of Delaware in and for New
09:28:01 13   Castle County.  Will counsel please introduce
09:28:04 14   themselves for the record.
09:28:06 15       MR. BALBER:  Scott Balber from
09:28:10 16   Chadbourne & Parke on behalf of Colleen
09:28:12 17   Investment AG, Colleen, L.L.C. and Logany,
09:28:17 18   L.L.C.
09:28:18 19       MR. MUELLER:  Tom Mueller of
09:28:23 20   Morrison & Foerster, on behalf of Marco Stoffel.
09:28:25 21       MR. BALBER:  With me are Jonathan
09:28:27 22   Cross and Rob Grossman, also from Chadbourne.
09:28:30 23       THE VIDEOGRAPHER:  The court
09:28:31 24   reporter today is Roberta Caiola of Merrill
09:28:34 25   Legal Solutions.  Will the court reporter please
```

**Page 5**

```
 1                    Marco Stoffel
09:31:13 2    so I have a hard time.  Would it be better to
09:31:16 3    work from the original because something is
09:31:18 4    missing.
09:31:20 5        MR. BALBER:  Put it aside, we'll
09:31:21 6    have it done again.  Why don't you give me the
09:31:24 7    original back and we'll have it done again.  I
09:31:24 8    want to make sure it's done right, so why don't
09:31:33 9    we have it done again.
09:31:33 10       Q.   Why don't we move to Exhibit 2
09:31:35 11   then.  Will you confirm for me that Exhibit 2 is
09:31:38 12   correct?
09:31:39 13       A.   It was probably just the wrong
09:31:41 14   order.
09:31:42 15       Q.   Okay, that's fine.
09:31:43 16       A.   Yes, that's complete.
09:32:05 17       Q.   Exhibit 2 appears to be a
09:32:08 18   compilation of several inventories of documents,
09:32:12 19   is that right?
09:32:12 20       A.   That's correct.
09:32:13 21       Q.   What are the first two pages, what
09:32:17 22   do those represent?
09:32:18 23       A.   The first two pages is an inventory
09:32:21 24   that my assistant, Connie Kendig, made on
09:32:26 25   December 19 of the files that were in the
```

2  (Pages 2 to 5)

MARCO STOFFEL

Page 50

MARCO STOFFEL

1  Cedrick, so that's why the first named "may be"
2  beneficiary was Cedrick. And then this first
3  trust, Capricorn, the first "may be" beneficiary
4  was Clarissa.
5       Q.   Why does it matter who's first,
6  second or third?
7       A.   It doesn't.
8       Q.   Both, by the way -- both deeds of
9  trust enumerate New Eagle as the protector,
10  right?
11       A.   Yes.
12       Q.   Let's talk about August 13, 1999.
13  You said there was a meeting with Chiltern
14  beneficiaries, correct?
15       A.   Yes.
16       Q.   Where was that meeting held?
17       A.   I think in London. But I'm not
18  quite sure.
19       Q.   Do you remember where in London?
20  Were you in a restaurant, a bar, a hotel room?
21       A.   We were not in a restaurant or bar.
22  I think at the offices of Chiltern, but it's a
23  long time ago.
24       Q.   Do you remember the date?

Page 51

MARCO STOFFEL

1       A.   Yes, I remember the date, yes.
2       Q.   How do you remember the date?
3       A.   Because there was minutes
4  established, and in that minutes of 16th of
5  August it refers to Thursday, and Thursday was
6  the 13th. That's the only way I remember it.
7       Q.   And who from Chiltern was present
8  at the meeting?
9       A.   John Skilton must have been
10  present. To the best of my recollection, maybe
11  Rodney Hodges, he was a clerk at that time.
12  Maybe Sarikhani was there.
13       Q.   And the beneficiaries who were
14  present were --
15       A.   I'm not sure. The beneficiaries
16  and I were present.
17       Q.   And the purpose of the meeting was
18  what?
19       A.   The purpose of the meeting was that
20  Holger Blickle, the father of Cedrick and
21  Clarissa, through the lawyer had filed a
22  complaint against his two children for
23  $100 million D-marks, that they have embezzled
24  his funds, and I brought that to the attention

Page 52

MARCO STOFFEL

1  of the trustees. That was the purpose.
2       Q.   And I thought you mentioned that
3  there was a decision made as a result of that
4  meeting regarding the new trusts.
5       A.   Yes.
6       Q.   How did that come to be that such a
7  decision was made?
8       A.   At Chiltern's advice was to make a
9  new start and set up three trusts, one for each
10  of the two children and one for Holger Blickle
11  to start new and to solve this litigation.
12  Which wasn't made -- I was given a draft by
13  Holger Blickle's lawyer with a major lawsuit
14  against his own children. It wasn't made
15  pendant. And I avoided lis pendens by
16  immediately calling or Chiltern to find and help
17  a solution.
18       Q.   Did you give Chiltern a copy of the
19  draft lawsuit?
20       A.   Yes.
21       Q.   Do you still have a copy of the
22  draft lawsuit?
23       A.   I must have.
24       MR. BALBER:  We'd like a copy of

Page 53

MARCO STOFFEL

1  that.
2  INFORMATION REQUESTED TO BE SUPPLIED:
3  --------------------------
4       A.   That will be client attorney
5  privilege.
6       Q.   A draft lawsuit is client
7  attorney --
8       A.   Yes, because I was representing, as
9  always -- until June of last year, I was an
10  attorney of the Blickle family, and the lawyer,
11  his name was Harmon, sent it to me as an
12  attorney, and it clearly says confidential. It
13  was a bold move of his to try to resolve this.
14  I received that as a representative attorney of
15  Clarissa and Cedrick.
16       Q.   Just so I'm clear, you were the
17  lawyer for Clarissa and Cedrick through June of
18  '06?
19       A.   Correct.
20       Q.   Is there a date in June of '06?
21       A.   Yes.
22       Q.   What's the date?
23       A.   She revoked my power as attorney.
24       Q.   On what date?

14  (Pages 50 to 53)

MARCO STOFFEL

Page 54

```
 1          MARCO STOFFEL
 2     A.   I don't remember.
 3     Q.   When was the inception date of your
 4  representation of Cedrick and Clarissa?
 5     A.   Well, you could say '92, whenever I
 6  started to be a lawyer for the Blickle family.
 7     Q.   You were their lawyers individually
 8  as well.
 9     A.   For Clarissa and Cedrick.
10     Q.   Yes.
11     A.   Yes, correct.
12     Q.   You rendered legal advice to them
13  throughout that period of time?
14     A.   Yes.
15     Q.   And I'm sorry, was there some kind
16  of engagement letter or power of attorney
17  document that gave you that authority?
18     A.   Of course.
19     Q.   And do you still have copies of
20  that?
21     A.   Of course.
22     Q.   And can you tell me without
23  revealing any client confidences or any
24  attorney-client communications what the scope of
25  your power of attorney was on behalf of the
```

Page 55

```
 1          MARCO STOFFEL
 2  children?
 3     A.   There's two things.  There's a
 4  mandate to assist Clarissa and Cedrick in all
 5  legal matters, which involve litigations, real
 6  estate matters, banking matters, family office
 7  matters.  This was a full mandate.
 8          And once in a while there was also
 9  a power of attorney to represent them in say,
10  for example, registering real estate ownership
11  for an apartment or a house or something.  Not
12  always did I have a power attorney of something
13  specific.
14     Q.   Sure.  And you have in your
15  possession a complete set of the, whatever,
16  engagement letters, powers of attorney that you
17  had had on behalf of the children over the
18  years.
19     A.   I must have.
20     Q.   So back to August 13, '99, the
21  decision was made to set up the Bermuda trusts,
22  right?
23     A.   Yes.
24     Q.   And to transfer the assets of the
25  Jersey Trust to the Bermuda trusts?
```

Page 56

```
 1          MARCO STOFFEL
 2     A.   Well, that's a technicality that
 3  was then opened how to do it.  Transfer or make
 4  the Bermuda trust beneficiaries.  But the
 5  decision was to make three trusts and divide all
 6  the assets of these three Jersey trusts into
 7  three trusts, one from Holger, one from Cedrick.
 8     Q.   How was that effectuated?
 9     A.   It was effectuated with memorandum
10  of addition, signed by Orconsult Limited, that
11  stipulate that the shares of the four Swiss
12  companies were added to these two Bermuda
13  trusts, Aquarius and Capricorn Trust.  The date
14  of this I don't remember.
15     Q.   Now, this is a document signed by
16  Orconsult Limited.
17     A.   Limited.  Yes.
18     Q.   Not by Chiltern.
19     A.   No.
20     Q.   Did the beneficiaries sign it?
21     A.   No.
22     Q.   So this is Orconsult agreeing to
23  receive the shares of the four Swiss companies.
24  Yes?
25     A.   I guess, yes.
```

Page 57

```
 1          MARCO STOFFEL
 2     Q.   I'm asking.
 3     A.   Agreeing is even too weak.  They
 4  took the shares into their possession because
 5  they had an internal agreement with Jersey
 6  Trust.  Of course.
 7     Q.   What was the internal agreement
 8  with the Jersey Trust?
 9     A.   I don't know.  I don't know the
10  internal things.  These two companies worked
11  together on many different clients.
12     Q.   Which two companies?
13     A.   Orconsult and Chiltern.
14     Q.   Just so I'm clear.  You have never
15  seen a document indicating an agreement between
16  Chiltern and Orconsult to transfer the shares of
17  the four Swiss companies into the Bermuda trust.
18     A.   I've seen at least two agreements,
19  and one I just mentioned.  August 16 memorandum
20  of Rodney Hodges, signed, it is decided to
21  transfer the three trusts.  Then I've seen
22  another agreement, or an authorization by
23  Orconsult acting on behalf of the shareholder,
24  which is Jersey Trust, to transfer registered
25  shares into bearer shares which ultimately ended
```

15 (Pages 54 to 57)

# EXHIBIT 5

SUPREME COURT OF THE STATE OF NEW YORK  Present: _The Honorable Richard b.___
COUNTY OF NEW YORK
COMMERCIAL DIVISION: IAS PART _56___                    Justice            Lew

------------------------------------------------------------x

_Vitra Trust Company,_
_et al_

                                            Plaintiff(s),

Index No. _116985/07_

**DCM Track : COMPLEX**

- against -

_Marco Stoffel, et al._

                                            Defendant(s).

**Preliminary Conference** Order

(Section 202.8 [f], 202.12, 202.70
of the Uniform Rules for the Trial
Courts) (Implementation of
Commercial Division Rules in
New York County, June 8, 2007)

------------------------------------------------------------x

**COMPLETE ALL ITEMS ON THE FORM UNLESS INAPPLICABLE, UNKNOWN OR
NOT REQUIRED BY THE PRESIDING JUSTICE.)**

(1)    **Appearances**:

Include addresses, telephone numbers and e-mail addresses.

Attorney for Plaintiff(s)    _Scott S. Balber / Chadbourne &_
_30 Rockefeller Plaza, NY, NY 10112  Parke_
_                                         LLP_
_212-408-5466_
_SBALBER @ CHADBOURNE. COM_

Attorney for Defendant(s)    _Thomas M. Mueller Morrison + Foerster LLP_
_Marco Stoffel_    _1290 Ave. of the Americas  NY NY 10104_
_hand med_    _212.468.8164  t mueller @ mofo.com  Hughes LLP_
_                  John Fellas  Hughes Hubbard + Reed LLP_
Attorney for Defendant(s)    _ONE BATTERY PARK PLAZA  NY NY 10004_
_212 837-6075  fellas @ hugheshubbard._
_                                             com_

Attorney for Defendant(s)    _____

                             _____

(2)    **Nature of case:** Fraud, breach of fiduciary duty, conversion

(3)    **Bill of Particulars:**

Demanded by N/A and served by N/A.

(4)    **Preservation of Evidence:**

Attorneys shall confer about preservation of evidence before finalizing the Preliminary Conference Order and provide a report of their conference to the court.

(5)    **Discovery and Inspection:**

(a)    All demands for Discovery and Inspection shall be served by April 2, 2008

(b)    All responses to Discovery and Inspection demands shall be served by May 2, 2008

(6)    **Interrogatories**

No more than 25 interrogatories, including subparts, shall be served on or before April 2, 2008. Answers to interrogatories shall be served on or before May 2, 2008.

(7)    **Depositions:**

(a)    Depositions shall be held as follows:

| Party | Date |
|-------|------|
| All depositions shall be held between June 18 and September 12, 2008. | |

(Add additional sheets, if needed)

2

Depositions shall end by *September 12, 2008*.

(b)    Depositions shall be conducted in accordance with Part 221 of the Uniform Rules for Trial Parts.

(8)    **Other Disclosure:**

(a)    Commissions or letters rogatory (CPLR 3108): identify and set forth the location of each witness, if known.

~~Christoph~~ *Guido* Banholzer, George Philippe, Bernhard Lotscher, Aline Wey, Marco Bezzani, STM (The parties reserve the right to supplement this list.)

(b)    Expert disclosure (CPLR 3101[d]), if applicable:

Plaintiff(s) shall provide expert disclosure by *October 1, 2008*

Defendant(s) shall provide expert disclosure by *October 1, 2008*

Depositions: *To be concluded by October 29, 200*

(9)    **End Date for All Disclosure:** *November 28, 2008*

(10)   **Conferences:**

Compliance Conference shall be held: *6/19/08 at 2:30*

Pre-Trial Conference shall be held: _____

(11)   **Note of Issue:**

Note of Issue shall be filed: *3/~~23~~3/09*. This date, the end date for all discovery and conference dates, may not be changed without a court order.

(12)   **Discovery Disputes and Motions:**

Counsel by joint letter shall present discovery disputes to the court. Parties shall communicate with the court before making discovery motions.

3

(13)    **Dispositive Motions**:

All dispositive motions shall be made no more than 30 days after the filing of the Note of Issue.  Dispositive motions shall contain Commercial Rule 19-a Statements of Undisputed Facts and Memoranda of Law with Tables of Contents and Tables of Authorities.

(14)    **E-Filing**:

Parties are expected to E-File.

(15)    **Mediation:**

(16)    **Confidentiality/Nondisclosure Agreement:**

In the event there is a need for a Confidentiality/Nondisclosure Agreement and Order prior to disclosure, the parties shall use the Agreement at *www.nycbar. org/pdf/report/modelconfidentiality.pdf* unless parties provide reason otherwise. If the parties cannot agree, they shall promptly notify the Court.  The failure to promptly seek a confidentiality agreement may result in a waiver.  The Agreement may not provide for sealing absent Court order (22 NYCRR 216.1).

(17)    **Miscellaneous:**

(a)    If the matter settles, the parties shall promptly notify the court and promptly forward a courtesy copy of the Stipulation of Discontinuance to the Court.

(b)    The failure of any party to comply with any of the requirements contained in this Order shall not excuse any other party(ies) from complying with any other requirement.

(18)    **Trial:**

(a)    Plaintiff anticipates the trial of this matter to be __10__ days.

Defendant __5_____anticipates the trial of this matter to be __10__ days.   (Add additional sheets, if needed)

(b)    The matter is hereby set down for trial on _____.

4

(19)  This Order includes the attached _____ page(s) that is/are incorporated by reference.

Dated: _____3/3/0Y_____

SO ORDERED:

RICHARD B. LOWE III
J.S.C.

5



THIS SETTLEMENT is made the 8th day of *December*  One thousand nine hundred and ninety- eight BETWEEN **ANGELA BLICKLE** of Landweg 3, CH – 6052 Hergiswil (hereinafter called "the Settlor") of the one part and **CHILTERN TRUST COMPANY (JERSEY) LIMITED** of Union House, Union Street, St Helier, Jersey, Channel Islands (hereinafter called "the Original Trustee") of the other part.

**WHEREAS** the Settlor has or will cause to be transferred to the Original Trustee the property specified in the First Schedule hereto with the intent that said property shall be held upon the trusts of the irrevocable settlement hereinafter contained which shall be known as **"THE ALSAM SETTLEMENT"** (hereinafter referred to as "the Settlement").

INTERPRETATION

1.      **IN THESE PRESENTS** wherever the context permits the following words shall have the following meanings:-

(a)     "Beneficiaries" means:-

(i)     All and any of the persons specified in the Second Schedule hereto.

(ii)    Such other persons as are added to the class of Beneficiaries in exercise of the power conferred upon the Trustees by Clause 5 hereof.

(b)     "Charities" shall mean organisations or institutions whether corporate or otherwise established for charitable purposes in accordance with the laws of the jurisdiction wherein they are established and recognised as charitable in the place where they are situate registered incorporated or established.

(c)     "Excluded Persons" means:-

(i)     All and any persons specified in the Third Schedule hereto;

(ii)    Any person constituted an Excluded Person pursuant to Clause 6 hereof.

(d)     the "Protector" means the first Protector named in Clause 12 hereof or other Protector or Protectors for the time being of the Settlement as shall be appointed under the said clause.

(e)     the "Trustees" means the Original Trustee or other the trustee or trustees for the time being of the Settlement and "Trustee" shall be construed accordingly.

(f)     the "Trust Fund" means:-

(i)     the initial property specified in the First Schedule hereto;

(ii)    all money investments or other property hereafter paid or transferred by any person to or so as to be under the control of and (in either case) accepted by the Trustees as additions to the Trust Fund;

        (iii)    the money investments and property from time to time representing the same;

        (iv)    any income accumulated pursuant to clause 4(b) hereof.

(g)    "the Trust Period" means the period commencing on the date of execution of these presents and ending on whichever of the following dates shall first occur namely:-

        (i)    the day on which shall expire the period of one hundred years from the said date;

        (ii)    such day (if any) prior to the date specified in paragraph (i) of this sub-clause as the Trustees may at their discretion appoint by deed.

## PROPER LAW AND POWER TO CHANGE PROPER LAW

2.    (a)    THE Settlement is made under the laws of the Island of Jersey and subject to any change in the proper law of the Settlement duly made according to the laws and provisions hereinafter declared the proper law of the Settlement shall be the laws of the Island of Jersey the Courts of which said Island shall be the forum for the administration hereof.

    (b)    The Trustees may at any time or times and from time to time during the Trust Period by deed declare that the Settlement shall from the date of such declaration or from such date as is specified therein or upon the occurrence of such circumstances as are specified therein take effect in accordance with the law of some other state or territory in any part of the world and that the forum for the administration thereof shall thenceforth be the Courts of that state or territory AND as from the date of such declaration or from such date as is specified therein or upon the occurrence of such circumstances as are specified therein the law of the state or territory named therein shall be the law applicable to the Settlement and the Courts thereof shall be the forum for the administration thereof but subject to the power conferred by this Clause and until any further declaration be made hereunder PROVIDED ALWAYS that so often as any such declaration as aforesaid shall be made the Trustees shall be at liberty to make such consequential alterations or additions in or to the trusts powers and provisions of the Settlement as the Trustees may consider necessary or desirable to ensure that the trusts powers and provisions of the Settlement shall (mutatis mutandis) be as valid and effective as they are under the law of the Island of Jersey.

2

<u>DEED OF TRUST</u>

3.    THE Trustees shall stand possessed of the Trust Fund upon with and subject to the trusts powers and provisions herein contained.

<u>TRUSTS OF THE INCOME AND CAPITAL OF THE TRUST FUND</u>

4.    (a)    THE Trustees shall during the Trust Period have the following powers of dealing with the capital and income of the Trust Fund, which they may exercise from time to time at their absolute discretion:

(i)    The Trustees may pay or apply the whole or any part of the income to or in any manner which is in their opinion for the benefit of all or any one or more of the Beneficiaries;

(ii)    The Trustees may pay, transfer, apply or deal with the whole or any part of the capital to or in any manner which is in their opinion for the benefit of all or any one or more of the Beneficiaries;

(iii)    In the exercise of the power in (ii) above, the Trustees may transfer the whole or any part of the capital to another settlement created either by the   Trustees or by any other person in any part of the world.

(b)    The Trustees shall during the Trust Period accumulate any part of the income which is not dealt with under (a) (i) above by investing it and adding the accumulations to the capital of the Trust Fund.

(c)    At the expiration of the Trust Period the Trustees shall transfer any undistributed capital and income of the Trust Fund to all or any one or more of the Beneficiaries then living in such shares (if any) as the Trustees shall prior to such expiration determine, and in default of determination prior to such expiration then equally. If at such expiration there are no Beneficiaries living, any undistributed capital and income shall be distributed by the Trustees to such Charities as they think fit.

<u>POWER OF ADDITION</u>

5.    (a)    THE Trustees shall have power at any time or times during the Trust Period to add to the class of Beneficiaries such one or more persons (not being an Excluded Person) as the Trustees shall in their absolute discretion determine.

(b)    Any such addition shall be made by declaration in writing signed by the Trustees and:-

3

105

(i)    naming or describing the person or persons to be thereby added to the class of Beneficiaries; and

(ii)    specifying the date (not being earlier than the date of the declaration but during the Trust Period) from which such person or persons shall be so added.

## POWERS OF EXCLUSION

6.    THE Trustees may by declaration in writing made at any time or times during the Trust Period declare that any person or member of a class named or specified (whether or not ascertained) in such declaration who is would or might but for this Clause be or become a Beneficiary or be otherwise able to benefit hereunder as the case may be:-

(a)    shall be wholly or partially excluded from future benefit hereunder; or

(b)    shall cease to be a Beneficiary ; or

(c)    shall be an Excluded Person;

and any such declaration may be irrevocable or revocable during the Trust Period and shall have effect from the date specified in the said declaration provided that this power shall not be capable of being exercised so as to derogate from any interest to which any Beneficiary has previously become indefeasibly entitled whether in possession or in reversion or otherwise.

## POWERS OF THE TRUSTEES

7.    IN the management and administration of the Trust Fund for the benefit of the Beneficiaries the Trustees in addition to the powers herein expressly contained shall have the widest powers of investing, disposing of and dealing with the Trust Fund and of carrying out any transaction whatever in connection with the Trust Fund which are conferred on trustees by the Proper Law and the Trustees may act to exercise or omit to exercise all or any of such powers in their absolute and uncontrolled discretion as if they were the absolute beneficial owners of the Trust Fund and notwithstanding that specified powers are particularised as follows:-

(a)    The Trustees shall not be obliged to diversify its investment policy with respect to the Trust Fund

(b)    The Trustees may elect to make investments that produce no income or maximise the production of income

4

106

(c) The Trustees shall not be under any duty to interfere or be in any way actively involved in the business of any company in which the Trust Fund is in any way invested and irrespective of whether or not the Trustees have assumed control of that said company and providing that the Trustees have no actual knowledge of any dishonesty or malpractice by the Directors of the said company the Trustees may leave the management of the said company to those persons and no beneficiary shall be entitled to compel the Trustees to exercise or refrain from exercising any rights they might have relating to the said Company.

## DELEGATION OF POWERS

8. THE Trustees shall have power revocable during the Trust Period or irrevocable thereafter to delegate in writing to any person the execution or exercise of all or any trusts powers and discretions hereby or by law conferred on the Trustees PROVIDED HOWEVER that the Trustees shall not delegate without the prior consent of the Protector such powers and discretions the exercise of which in accordance with Clause 13 hereunder requires the written consent of the Protector. The Trustees shall not however be liable for any loss to the Trust Fund arising from a delegation hereunder made or continued in good faith and without neglect.

## POWER OF DISMISSAL AND APPOINTMENT OF NEW OR ADDITIONAL TRUSTEES

9. THE persons named in the Fourth Schedule hereto shall have power in order of priority to dismiss and appoint additional trustees and new trustees where a Trustee is dead, dismissed, or retires or refuses or is unfit to act.

## TRUSTEE INDEMNITY

10. (a) IN the execution of the trusts and powers hereof no trustee shall be liable for any loss to the Trust Fund arising in consequence of the failure depreciation or loss of any investments made in good faith or by reason of any mistake or omission made in good faith or of any other matter or thing except any individual breach of trust on the part of the trustee who is sought to be made liable.

(b) If a trustee ceases to be a Trustee hereof in accordance with the provisions of the preceding clause such trustee shall be released from liability to any Beneficiary, trustee or person interested under the Settlement for any act or omission in relation to the Trust Fund or his duty as a trustee except actions:-

5

107

(i)    arising from any breach of trust to which such trustee (or in the case of a corporate trustee any of its officers or employees) was a party or to which he was privy;

(ii)    to recover from such trustee trust property or the proceeds of trust property in the possession of such trustee or previously received by such trustee (or in the case of a corporate trustee by any of its officers or employees) and converted to his or its use or not surrendered.

## TRUSTEES REMUNERATION

11.    EVERY Trustee shall be entitled to remuneration in accordance with his or its normal scale of charges (if applicable) at that time in accordance with normal custom.

## THE PROTECTOR

12.    (a)    THE first Protector shall be New Eagle Corporation Limited of 15 Herbert Street, Dublin 2, with registration number 297051

(b)    The persons named in the Fifth Schedule hereto shall have power in order of priority to appoint a new Protector where a Protector is dead, or retires or is unfit to act.

## CONSENT OF PROTECTOR

13.    ALL and every power and discretion vested in the Trustees by such provisions of the Settlement as are specified in the Sixth Schedule hereto shall only be exercisable by them with the prior or simultaneous written consent of the Protector.

## RELEASE OR ABEYANCE OF THE PROTECTOR'S POWERS

14.    (a)    THE Protector may by written notice to the Trustees (a memorandum of which shall be endorsed on or permanently attached to the Settlement) declare that any act or acts herein declared to require the consent of the Protector shall not require such consent either permanently or for such period as shall be specified in the said notice.

(b)    If and whenever and so long as there is no Protector capable of acting a memorandum to that effect shall be endorsed on or permanently attached to the Settlement all the provisions of which (other than Clause 12 and this present Clause) shall be read and have effect as though references to the Protector or the consent of the Protector were omitted.

6

## PROVISIONS AS TO EXCLUDED PERSONS

15.     SUBJECT only to the provisions for the remuneration of Trustees no Excluded Person shall be capable of taking any benefit of any kind by virtue or in consequence of the Settlement.

## IRREVOCABILITY

16.     THE Settlement shall be irrevocable.

## AMENDMENT

17.     THE Trustees may at any time or times during the Trust Period by writing make any alterations or additions to the provisions of the Settlement which they consider in their absolute discretion to be for the benefit of any one or more of the Beneficiaries.

## DISCLOSURE

18.     THE Trustees shall not without the prior consent of the Protector during the Trust Period or thereafter disclose to any person or authority (except with the authority of all the Beneficiaries or unless ordered to do so by a Court of competent jurisdiction) any information relating to the Trust Fund, the Beneficiaries or other matters of a confidential nature of which the Trustees may in the course of their duties hereunder or otherwise become possessed save for such information as is necessary to administer the Settlement.

## PRELIMINARY EXPENSES

19.     THE Trustees shall have power to pay out of the Trust Fund all expenses of whatever nature incidental to the creation of the Settlement.

* * * * * * * * *

109

FIRST SCHEDULE

1.  £10,000 (Ten Thousand Pounds)

2.  The entire issued share capital of Alsam Holding AG - c/o Lopper Immobilien und Trehaud AG, Seestrasse 40, 6052 Hergiswil, Switzerland.

3.  The entire issued share capital of Penny Asset AG - c/o Lopper Immobilien und Trehaud AG, Seestrasse 40, 6052 Hergiswil, Switzerland.

SECOND SCHEDULE

(the Beneficiaries)

1.    ANGELA BLICKLE born 31st December 1947
2.    CEDRICK BLICKLE born 14th February 1979
3.    CLARISSA BLICKLE born 16th January 1976
4.    The direct descendants of CEDRICK BLICKLE
5.    The direct descendants of CLARISSA BLICKLE

THIRD SCHEDULE

(Excluded Persons)

1.    The Trustees and Protectors (in the case of Protectors, the Protectors for the time being), their employees, their spouses and children and any entity in which the Trustees and Protectors (in the case of Protectors, the Protectors for the time being), their employees, their spouses and children have any direct or indirect interest.

FOURTH SCHEDULE

(Power of Dismissal and Appointment of New or Additional Trustees)

1.    The Protector for the time being.

FIFTH SCHEDULE

(Power of Appointment of a new Protector)

1.    The outgoing Protector by deed including by way of an instrument of testamentary nature

8

110

SIXTH SCHEDULE

(Consent of Protector)

The consent of the Protector shall be required in the exercise of all and every power and discretion vested in the Trustees by the following provisions of the Settlement:

-    2 (b)
-    4 (a) (iii)
-    5 (a)
-    6
-    17

Any purported exercise of such powers and discretions by the Trustees without the written consent of the Protector shall be null and void.

IN WITNESS whereof this settlement has been duly executed by the parties the day and year first above written:

SIGNED as a deed by the said Settlor

in the presence of:

_____          _____
Witness                            Witness

Heidi Rümmele                      Christian Ammann
Name                               Name

c/o Augustinergasse 5              Lehensberg 59 8037 Zürich
Basel
Address                            Address

The Common Seal of
CHILTERN TRUST COMPANY (JERSEY) LIMITED
was hereunto affixed
in the presence of:

_____          _____
Authorised Officer                 Authorised Officer



9

111

# EXHIBIT 10

THIS SETTLEMENT is made the 8th day of December One thousand nine hundred and ninety-eight BETWEEN Mr HOLGER BLICKLE of Landweg 3, CH – 6052 Hergiswil (hereinafter called "the Settlor") of the one part and CHILTERN TRUST COMPANY (JERSEY) LIMITED of Union House, Union Street, St Helier, Jersey, Channel Islands (hereinafter called "the Original Trustee") of the other part.

WHEREAS the Settlor has or will cause to be transferred to the Original Trustee the property specified in the First Schedule hereto with the intent that said property shall be held upon the trusts of the irrevocable settlement hereinafter contained which shall be known as "THE COLLEEN SETTLEMENT" (hereinafter referred to as "the Settlement").

## INTERPRETATION

1.    IN THESE PRESENTS wherever the context permits the following words shall have the following meanings:-

(a)    "Beneficiaries" means:-

   (i)    All and any of the persons specified in the Second Schedule hereto.

   (ii)    Such other persons as are added to the class of Beneficiaries in exercise of the power conferred upon the Trustees by Clause 5 hereof.

(b)    "Charities" shall mean organisations or institutions whether corporate or otherwise established for charitable purposes in accordance with the laws of the jurisdiction wherein they are established and recognised as charitable in the place where they are situate registered incorporated or established.

(c)    "Excluded Persons" means:-

   (i)    All and any persons specified in the Third Schedule hereto;

   (ii)    Any person constituted an Excluded Person pursuant to Clause 6 hereof.

(d)    the "Protector" means the first Protector named in Clause 12 hereof or other Protector or Protectors for the time being of the Settlement as shall be appointed under the said clause.

(e)    the "Trustees" means the Original Trustee or other the trustee or trustees for the time being of the Settlement and "Trustee" shall be construed accordingly.

(f)    the "Trust Fund" means:-

   (i)    the initial property specified in the First Schedule hereto;

115

(ii)    all money investments or other property hereafter paid or transferred by any person to or so as to be under the control of and (in either case) accepted by the Trustees as additions to the Trust Fund;

    (iii)    the money investments and property from time to time representing the same;

    (iv)    any income accumulated pursuant to clause 4(b) hereof.

(g)    "the Trust Period" means the period commencing on the date of execution of these presents and ending on whichever of the following dates shall first occur namely:-

    (i)    the day on which shall expire the period of one hundred years from the said date;

    (ii)    such day (if any) prior to the date specified in paragraph (i) of this sub-clause as the Trustees may at their discretion appoint by deed.

## PROPER LAW AND POWER TO CHANGE PROPER LAW

2.    (a)    THE Settlement is made under the laws of the Island of Jersey and subject to any change in the proper law of the Settlement duly made according to the laws and provisions hereinafter declared the proper law of the Settlement shall be the laws of the Island of Jersey the Courts of which said Island shall be the forum for the administration hereof.

(b)    The Trustees may at any time or times and from time to time during the Trust Period by deed declare that the Settlement shall from the date of such declaration or from such date as is specified therein or upon the occurrence of such circumstances as are specified therein take effect in accordance with the law of some other state or territory in any part of the world and that the forum for the administration thereof shall thenceforth be the Courts of that state or territory AND as from the date of such declaration or from such date as is specified therein or upon the occurrence of such circumstances as are specified therein the law of the state or territory named therein shall be the law applicable to the Settlement and the Courts thereof shall be the forum for the administration thereof but subject to the power conferred by this Clause and until any further declaration be made hereunder PROVIDED ALWAYS that so often as any such declaration as aforesaid shall be made the Trustees shall be at liberty to make such consequential alterations or additions in or to the trusts powers and provisions of the Settlement as the Trustees may consider necessary or desirable to ensure that the trusts powers and provisions of the Settlement shall (mutatis mutandis) be as valid and effective as they are under the law of the Island of Jersey.

2

116

## DEED OF TRUST

3.  THE Trustees shall stand possessed of the Trust Fund upon with and subject to the trusts powers and provisions herein contained.

### TRUSTS OF THE INCOME AND CAPITAL OF THE TRUST FUND

4.  (a)  THE Trustees shall during the Trust Period have the following powers of dealing with the capital and income of the Trust Fund, which they may exercise from time to time at their absolute discretion:

     (i)   The Trustees may pay or apply the whole or any part of the income to or in any manner which is in their opinion for the benefit of all or any one or more of the Beneficiaries SAVE THAT no Beneficiary may be considered for any distribution hereunder until such time as that Beneficiary shall have attained the age of 28 years;

     (ii)  The Trustees may pay, transfer, apply or deal with the whole or any part of the capital to or in any manner which is in their opinion for the benefit of all or any one or more of the Beneficiaries SAVE THAT no Beneficiary may be considered for any distribution hereunder until such time as that Beneficiary shall have attained the age of 28 years;

     (iii) In the exercise of the power in (ii) above, the Trustees may transfer the whole or any part of the capital to another settlement created either by the  Trustees or by any other person in any part of the world.

    (b)  The Trustees shall during the Trust Period accumulate any part of the income which is not dealt with under (a) (i) above by investing it and adding the accumulations to the capital of the Trust Fund.

    (c)  At the expiration of the Trust Period the Trustees shall transfer any undistributed capital and income of the Trust Fund to all or any one or more of the Beneficiaries then living in such shares (if any) as the Trustees shall prior to such expiration determine, and in default of determination prior to such expiration then equally. If at such expiration there are no Beneficiaries living, any undistributed capital and income shall be distributed by the Trustees to such Charities as they think fit.

### POWER OF ADDITION

5.  (a)  THE Trustees shall have power at any time or times during the Trust Period to add to the class of Beneficiaries such one or more persons (not

3

117

being an Excluded Person) as the Trustees shall in their absolute discretion determine.

(b)    Any such addition shall be made by declaration in writing signed by the Trustees and:-

(i)     naming or describing the person or persons to be thereby added to the class of Beneficiaries; and

(ii)    specifying the date (not being earlier than the date of the declaration but during the Trust Period) from which such person or persons shall be so added.

## POWERS OF EXCLUSION

6.    THE Trustees may by declaration in writing made at any time or times during the Trust Period declare that any person or member of a class named or specified (whether or not ascertained) in such declaration who is would or might but for this Clause be or become a Beneficiary or be otherwise able to benefit hereunder as the case may be:-

(a)    shall be wholly or partially excluded from future benefit hereunder; or

(b)    shall cease to be a Beneficiary ; or

(c)    shall be an Excluded Person;

and any such declaration may be irrevocable or revocable during the Trust Period and shall have effect from the date specified in the said declaration provided that this power shall not be capable of being exercised so as to derogate from any interest to which any Beneficiary has previously become indefeasibly entitled whether in possession or in reversion or otherwise.

## POWERS OF THE TRUSTEES

7.    IN the management and administration of the Trust Fund for the benefit of the Beneficiaries the Trustees in addition to the powers herein expressly contained shall have the widest powers of investing, disposing of and dealing with the Trust Fund and of carrying out any transaction whatever in connection with the Trust Fund which are conferred on trustees by the Proper Law and the Trustees may act to exercise or omit to exercise all or any of such powers in their absolute and uncontrolled discretion as if they were the absolute beneficial owners of the Trust Fund and notwithstanding that specified powers are particularised as follows:-

(a)    The Trustees shall not be obliged to diversify its investment policy with respect to the Trust Fund

4

118

(b) The Trustees may elect to make investments that produce no income or maximise the production of income

(c) The Trustees shall not be under any duty to interfere or be in any way actively involved in the business of any company in which the Trust Fund is in any way invested and irrespective of whether or not the Trustees have assumed control of that said company and providing that the Trustees have no actual knowledge of any dishonesty or malpractice by the Directors of the said company the Trustees may leave the management of the said company to those persons and no beneficiary shall be entitled to compel the Trustees to exercise or refrain from exercising any rights they might have relating to the said Company.

## DELEGATION OF POWERS

8. THE Trustees shall have power revocable during the Trust Period or irrevocable thereafter to delegate in writing to any person the execution or exercise of all or any trusts powers and discretions hereby or by law conferred on the Trustees PROVIDED HOWEVER that the Trustees shall not delegate without the prior consent of the Protector such powers and discretions the exercise of which in accordance with Clause 13 hereunder requires the written consent of the Protector. The Trustees shall not however be liable for any loss to the Trust Fund arising from a delegation hereunder made or continued in good faith and without neglect.

## POWER OF DISMISSAL AND APPOINTMENT OF NEW OR ADDITIONAL TRUSTEES

9. THE persons named in the Fourth Schedule hereto shall have power in order of priority to dismiss and appoint additional trustees and new trustees where a Trustee is dead, dismissed, or retires or refuses or is unfit to act.

## TRUSTEE INDEMNITY

10. (a) IN the execution of the trusts and powers hereof no trustee shall be liable for any loss to the Trust Fund arising in consequence of the failure depreciation or loss of any investments made in good faith or by reason of any mistake or omission made in good faith or of any other matter or thing except any individual breach of trust on the part of the trustee who is sought to be made liable.

(b) If a trustee ceases to be a Trustee hereof in accordance with the provisions of the preceding clause such trustee shall be released from liability to any Beneficiary, trustee or person interested under the Settlement for any act or omission in relation to the Trust Fund or his duty as a trustee except actions:-

5

(i)   arising from any breach of trust to which such trustee (or in the case of a corporate trustee any of its officers or employees) was a party or to which he was privy;

(ii)  to recover from such trustee trust property or the proceeds of trust property in the possession of such trustee or previously received by such trustee (or in the case of a corporate trustee by any of its officers or employees) and converted to his or its use or not surrendered.

### TRUSTEES REMUNERATION

11.   EVERY Trustee shall be entitled to remuneration in accordance with his or its normal scale of charges (if applicable) at that time in accordance with normal custom.

### THE PROTECTOR

12.   (a)   THE first Protector shall be New Eagle Corporation Limited of 15 Herbert Street, Dublin 2, with registration number 297051

      (b)   The persons named in the Fifth Schedule hereto shall have power in order of priority to appoint a new Protector where a Protector is dead, or retires or is unfit to act.

### CONSENT OF PROTECTOR

13.   ALL and every power and discretion vested in the Trustees by such provisions of the Settlement as are specified in the Sixth Schedule hereto shall only be exercisable by them with the prior or simultaneous written consent of the Protector.

### RELEASE OR ABEYANCE OF THE PROTECTOR'S POWERS

14.   (a)   THE Protector may by written notice to the Trustees (a memorandum of which shall be endorsed on or permanently attached to the Settlement) declare that any act or acts herein declared to require the consent of the Protector shall not require such consent either permanently or for such period as shall be specified in the said notice.

      (b)   If and whenever and so long as there is no Protector capable of acting a memorandum to that effect shall be endorsed on or permanently attached to the Settlement all the provisions of which (other than Clause 12 and this present Clause) shall be read and have effect as though references to the Protector or the consent of the Protector were omitted.

6

120

## PROVISIONS AS TO EXCLUDED PERSONS

15.     SUBJECT only to the provisions for the remuneration of Trustees no Excluded Person shall be capable of taking any benefit of any kind by virtue or in consequence of the Settlement.

## IRREVOCABILITY

16.     THE Settlement shall be irrevocable.

## AMENDMENT

17.     THE Trustees may at any time or times during the Trust Period by writing make any alterations or additions to the provisions of the Settlement which they consider in their absolute discretion to be for the benefit of any one or more of the Beneficiaries.

## DISCLOSURE

18.     THE Trustees shall not without the prior consent of the Protector during the Trust Period or thereafter disclose to any person or authority (except with the authority of all the Beneficiaries or unless ordered to do so by a Court of competent jurisdiction) any information relating to the Trust Fund, the Beneficiaries or other matters of a confidential nature of which the Trustees may in the course of their duties hereunder or otherwise become possessed save for such information as is necessary to administer the Settlement.

## PRELIMINARY EXPENSES

19.     THE Trustees shall have power to pay out of the Trust Fund all expenses of whatever nature incidental to the creation of the Settlement.

7

121

\* \* \* \* \* \* \* \* \* \*

## FIRST SCHEDULE

1. £10,000

2. The entire issued share capital of Colleen Investments AG - c/o Lopper Immobilien und Trehaud AG, Seestrasse 40, 6052 Hergiswil, Switzerland.

## SECOND SCHEDULE

### (the Beneficiaries)

1.  CEDRICK BLICKLE born 14th February 1979
2.  The direct descendants of CEDRICK BLICKLE
3.  CLARISSA BLICKLE born 16th January 1976
4.  The direct descendants of CLARISSA BLICKLE
5.  ANGELA BLICKLE born 31st December 1947

## THIRD SCHEDULE

### (Excluded Persons)

1.    The Trustees and Protectors (in the case of Protectors, the Protectors for the time being), their employees, their spouses and children and any entity in which the Trustees and Protectors (in the case of Protectors, the Protectors for the time being), their employees, their spouses and children have any direct or indirect interest.

## FOURTH SCHEDULE

### (Power of Dismissal and Appointment of New or Additional Trustees)

1.    The Protector for the time being.

## FIFTH SCHEDULE

### (Power of Appointment of a new Protector)

1.    The outgoing Protector by deed including by way of an instrument of testamentary nature

8

122

## SIXTH SCHEDULE

### (Consent of Protector)

The consent of the Protector shall be required in the exercise of all and every power and discretion vested in the Trustees by the following provisions of the Settlement:

-    2 (b)
-    4 (a) (iii)
-    5 (a)
-    6
-    17

Any purported exercise of such powers and discretions by the Trustees without the written consent of the Protector shall be null and void.

IN WITNESS whereof this settlement has been duly executed by the parties the day and year first above written:

SIGNED as a deed by the said Settlor
Represented by Angela Blickle

in the presence of:

*M. Rümmele*
Witness

*Heidi Rümmele*
Name

*c/o Augustinergasse 5*
*Basel*
Address

*C. Amman*
Witness

*Christine Amman*
Name

*Lehenstrasse 59 8037 Zürich*
Address

The Common Seal of
CHILTERN TRUST COMPANY (JERSEY) LIMITED
was hereunto affixed
in the presence of:

*Juliet N Stevens*
Authorised Officer

*[signature]*
Authorised Officer



9

123

# EXHIBIT 11

THIS SETTLEMENT is made the 18th day of *December* One thousand nine hundred and ninety- eight BETWEEN Mr HOLGER BLICKLE of Landweg 3, CH – 6052 Hergiswil (hereinafter called "the Settlor") of the one part and **CHILTERN TRUST COMPANY (JERSEY) LIMITED** of Union House, Union Street, St Helier, Jersey, Channel Islands (hereinafter called "the Original Trustee") of the other part.

WHEREAS the Settlor has or will cause to be transferred to the Original Trustee the property specified in the First Schedule hereto with the intent that said property shall be held upon the trusts of the irrevocable settlement hereinafter contained which shall be known as **"THE LOGANY SETTLEMENT"** (hereinafter referred to as "the Settlement").

## INTERPRETATION

1.  IN THESE PRESENTS wherever the context permits the following words shall have the following meanings:-

    (a)  "Beneficiaries" means:-

        (i)  All and any of the persons specified in the Second Schedule hereto.

        (ii)  Such other persons as are added to the class of Beneficiaries in exercise of the power conferred upon the Trustees by Clause 5 hereof.

    (b)  "Charities" shall mean organisations or institutions whether corporate or otherwise established for charitable purposes in accordance with the laws of the jurisdiction wherein they are established and recognised as charitable in the place where they are situate registered incorporated or established.

    (c)  "Excluded Persons" means:-

        (i)  All and any persons specified in the Third Schedule hereto;

        (ii)  Any person constituted an Excluded Person pursuant to Clause 6 hereof.

    (d)  the "Protector" means the first Protector named in Clause 12 hereof or other Protector or Protectors for the time being of the Settlement as shall be appointed under the said clause.

    (e)  the "Trustees" means the Original Trustee or other the trustee or trustees for the time being of the Settlement and "Trustee" shall be construed accordingly.

    (f)  the "Trust Fund" means:-

        (i)  the initial property specified in the First Schedule hereto;

94

(ii)    all money investments or other property hereafter paid or transferred by any person to or so as to be under the control of and (in either case) accepted by the Trustees as additions to the Trust Fund;

     (iii)    the money investments and property from time to time representing the same;

     (iv)    any income accumulated pursuant to clause 4(b) hereof.

(g)    "the Trust Period" means the period commencing on the date of execution of these presents and ending on whichever of the following dates shall first occur namely:-

     (i)    the day on which shall expire the period of one hundred years from the said date;

     (ii)    such day (if any) prior to the date specified in paragraph (i) of this sub-clause as the Trustees may at their discretion appoint by deed.

## PROPER LAW AND POWER TO CHANGE PROPER LAW

2.    (a)    THE Settlement is made under the laws of the Island of Jersey and subject to any change in the proper law of the Settlement duly made according to the laws and provisions hereinafter declared the proper law of the Settlement shall be the laws of the Island of Jersey the Courts of which said Island shall be the forum for the administration hereof.

    (b)    The Trustees may at any time or times and from time to time during the Trust Period by deed declare that the Settlement shall from the date of such declaration or from such date as is specified therein or upon the occurrence of such circumstances as are specified therein take effect in accordance with the law of some other state or territory in any part of the world and that the forum for the administration thereof shall thenceforth be the Courts of that state or territory AND as from the date of such declaration or from such date as is specified therein or upon the occurrence of such circumstances as are specified therein the law of the state or territory named therein shall be the law applicable to the Settlement and the Courts thereof shall be the forum for the administration thereof but subject to the power conferred by this Clause and until any further declaration be made hereunder PROVIDED ALWAYS that so often as any such declaration as aforesaid shall be made the Trustees shall be at liberty to make such consequential alterations or additions in or to the trusts powers and provisions of the Settlement as the Trustees may consider necessary or desirable to ensure that the trusts powers and provisions of the Settlement shall (mutatis mutandis) be as valid and effective as they are under the law of the Island of Jersey.

2

## DEED OF TRUST

3.    THE Trustees shall stand possessed of the Trust Fund upon with and subject to the trusts powers and provisions herein contained.

## TRUSTS OF THE INCOME AND CAPITAL OF THE TRUST FUND

4.    (a)    THE Trustees shall during the Trust Period have the following powers of dealing with the capital and income of the Trust Fund, which they may exercise from time to time at their absolute discretion:

(i)    The Trustees may pay or apply the whole or any part of the income to or in any manner which is in their opinion for the benefit of all or any one or more of the Beneficiaries SAVE THAT no Beneficiary may be considered for any distribution hereunder until such time as that Beneficiary shall have attained the age of 28 years;

(ii)    The Trustees may pay, transfer, apply or deal with the whole or any part of the capital to or in any manner which is in their opinion for the benefit of all or any one or more of the Beneficiaries SAVE THAT no Beneficiary may be considered for any distribution hereunder until such time as that Beneficiary shall have attained the age of 28 years;

(iii)    In the exercise of the power in (ii) above, the Trustees may transfer the whole or any part of the capital to another settlement created either by the Trustees or by any other person in any part of the world.

(b)    The Trustees shall during the Trust Period accumulate any part of the income which is not dealt with under (a) (i) above by investing it and adding the accumulations to the capital of the Trust Fund.

(c)    At the expiration of the Trust Period the Trustees shall transfer any undistributed capital and income of the Trust Fund to all or any one or more of the Beneficiaries then living in such shares (if any) as the Trustees shall prior to such expiration determine, and in default of determination prior to such expiration then equally. If at such expiration there are no Beneficiaries living, any undistributed capital and income shall be distributed by the Trustees to such Charities as they think fit.

## POWER OF ADDITION

5.    (a)    THE Trustees shall have power at any time or times during the Trust Period to add to the class of Beneficiaries such one or more persons (not

3

being an Excluded Person) as the Trustees shall in their absolute discretion determine.

(b)  Any such addition shall be made by declaration in writing signed by the Trustees and:-

    (i)  naming or describing the person or persons to be thereby added to the class of Beneficiaries; and

    (ii)  specifying the date (not being earlier than the date of the declaration but during the Trust Period) from which such person or persons shall be so added.

## POWERS OF EXCLUSION

6.  THE Trustees may by declaration in writing made at any time or times during the Trust Period declare that any person or member of a class named or specified (whether or not ascertained) in such declaration who is would or might but for this Clause be or become a Beneficiary or be otherwise able to benefit hereunder as the case may be:-

(a)  shall be wholly or partially excluded from future benefit hereunder; or

(b)  shall cease to be a Beneficiary; or

(c)  shall be an Excluded Person;

and any such declaration may be irrevocable or revocable during the Trust Period and shall have effect from the date specified in the said declaration provided that this power shall not be capable of being exercised so as to derogate from any interest to which any Beneficiary has previously become indefeasibly entitled whether in possession or in reversion or otherwise.

## POWERS OF THE TRUSTEES

7.  IN the management and administration of the Trust Fund for the benefit of the Beneficiaries the Trustees in addition to the powers herein expressly contained shall have the widest powers of investing, disposing of and dealing with the Trust Fund and of carrying out any transaction whatever in connection with the Trust Fund which are conferred on trustees by the Proper Law and the Trustees may act to exercise or omit to exercise all or any of such powers in their absolute and uncontrolled discretion as if they were the absolute beneficial owners of the Trust Fund and notwithstanding that specified powers are particularised as follows:-

(a)  The Trustees shall not be obliged to diversify its investment policy with respect to the Trust Fund

4

97

(b)    The Trustees may elect to make investments that produce no income or maximise the production of income

(c)    The Trustees shall not be under any duty to interfere or be in any way actively involved in the business of any company in which the Trust Fund is in any way invested and irrespective of whether or not the Trustees have assumed control of that said company and providing that the Trustees have no actual knowledge of any dishonesty or malpractice by the Directors of the said company the Trustees may leave the management of the said company to those persons and no beneficiary shall be entitled to compel the Trustees to exercise or refrain from exercising any rights they might have relating to the said Company.

## DELEGATION OF POWERS

8.    THE Trustees shall have power revocable during the Trust Period or irrevocable thereafter to delegate in writing to any person the execution or exercise of all or any trusts powers and discretions hereby or by law conferred on the Trustees PROVIDED HOWEVER that the Trustees shall not delegate without the prior consent of the Protector such powers and discretions the exercise of which in accordance with Clause 13 hereunder requires the written consent of the Protector. The Trustees shall not however be liable for any loss to the Trust Fund arising from a delegation hereunder made or continued in good faith and without neglect.

## POWER OF DISMISSAL AND APPOINTMENT OF NEW OR ADDITIONAL TRUSTEES

9.    THE persons named in the Fourth Schedule hereto shall have power in order of priority to dismiss and appoint additional trustees and new trustees where a Trustee is dead, dismissed, or retires or refuses or is unfit to act.

## TRUSTEE INDEMNITY

10.    (a)    IN the execution of the trusts and powers hereof no trustee shall be liable for any loss to the Trust Fund arising in consequence of the failure depreciation or loss of any investments made in good faith or by reason of any mistake or omission made in good faith or of any other matter or thing except any individual breach of trust on the part of the trustee who is sought to be made liable.

(b)    If a trustee ceases to be a Trustee hereof in accordance with the provisions of the preceding clause such trustee shall be released from liability to any Beneficiary, trustee or person interested under the Settlement for any act or omission in relation to the Trust Fund or his duty as a trustee except actions:-

5

98

(i)    arising from any breach of trust to which such trustee (or in the case of a corporate trustee any of its officers or employees) was a party or to which he was privy;

(ii)    to recover from such trustee trust property or the proceeds of trust property in the possession of such trustee or previously received by such trustee (or in the case of a corporate trustee by any of its officers or employees) and converted to his or its use or not surrendered.

## TRUSTEES REMUNERATION

11.    EVERY Trustee shall be entitled to remuneration in accordance with his or its normal scale of charges (if applicable) at that time in accordance with normal custom.

## THE PROTECTOR

12.    (a)    THE first Protector shall be New Eagle Corporation Limited of 15 Herbert Street, Dublin 2, with registration number 297051

      (b)    The persons named in the Fifth Schedule hereto shall have power in order of priority to appoint a new Protector where a Protector is dead, or retires or is unfit to act.

## CONSENT OF PROTECTOR

13.    ALL and every power and discretion vested in the Trustees by such provisions of the Settlement as are specified in the Sixth Schedule hereto shall only be exercisable by them with the prior or simultaneous written consent of the Protector.

## RELEASE OR ABEYANCE OF THE PROTECTOR'S POWERS

14.    (a)    THE Protector may by written notice to the Trustees (a memorandum of which shall be endorsed on or permanently attached to the Settlement) declare that any act or acts herein declared to require the consent of the Protector shall not require such consent either permanently or for such period as shall be specified in the said notice.

      (b)    If and whenever and so long as there is no Protector capable of acting a memorandum to that effect shall be endorsed on or permanently attached to the Settlement all the provisions of which (other than Clause 12 and this present Clause) shall be read and have effect as though references to the Protector or the consent of the Protector were omitted.

6

99

## PROVISIONS AS TO EXCLUDED PERSONS

15.    SUBJECT only to the provisions for the remuneration of Trustees no Excluded Person shall be capable of taking any benefit of any kind by virtue or in consequence of the Settlement.

## IRREVOCABILITY

16.    THE Settlement shall be irrevocable.

## AMENDMENT

17.    THE Trustees may at any time or times during the Trust Period by writing make any alterations or additions to the provisions of the Settlement which they consider in their absolute discretion to be for the benefit of any one or more of the Beneficiaries.

## DISCLOSURE

18.    THE Trustees shall not without the prior consent of the Protector during the Trust Period or thereafter disclose to any person or authority (except with the authority of all the Beneficiaries or unless ordered to do so by a Court of competent jurisdiction) any information relating to the Trust Fund, the Beneficiaries or other matters of a confidential nature of which the Trustees may in the course of their duties hereunder or otherwise become possessed save for such information as is necessary to administer the Settlement.

## PRELIMINARY EXPENSES

19.    THE Trustees shall have power to pay out of the Trust Fund all expenses of whatever nature incidental to the creation of the Settlement.

* * * * * * * * *

7

## FIRST SCHEDULE

1. £10,000 (Ten Thousand Pounds)

2. The entire issued share capital of Logany Equity AG - c/o Lopper Immobilien und Trehaud AG, Seestrasse 40, 6052 Hergiswil, Switzerland.

## SECOND SCHEDULE

### (the Beneficiaries)

1.   CLARISSA BLICKLE born 16th January 1976.
2.   The direct descendants of CLARISSA BLICKLE
3.   CEDRICK BLICKLE born 14th February 1979
4.   The direct descendants of CEDRICK BLICKLE
5.   ANGELA BLICKLE born 31st December 1947

## THIRD SCHEDULE

### (Excluded Persons)

1.   The Trustees and Protectors (in the case of Protectors, the Protectors for the time being), their employees, their spouses and children and any entity in which the Trustees and Protectors (in the case of Protectors, the Protectors for the time being), their employees, their spouses and children have any direct or indirect interest.

## FOURTH SCHEDULE

### (Power of Dismissal and Appointment of New or Additional Trustees)

The Protector for the time being.

## FIFTH SCHEDULE

### (Power of Appointment of a new Protector)

1.   The outgoing Protector by deed including by way of an instrument of testamentary nature

## SIXTH SCHEDULE

### (Consent of Protector)

The consent of the Protector shall be required in the exercise of all and every power and discretion vested in the Trustees by the following provisions of the Settlement:

-     2 (b)
-     4 (a) (iii)
-     5 (a)
-     6
-     17

Any purported exercise of such powers and discretions by the Trustees without the written consent of the Protector shall be null and void.

IN WITNESS whereof this settlement has been duly executed by the parties the day and year first above written:

SIGNED as a deed by the said Settlor
Represented by Angela Blickle

in the presence of:

_A. Runnele_                      _C. Amm___
Witness                           Witness

Heidi Runnele                     Christiane Ammann
Name                              Name

c/o Augustinergasse 5             Lehenstrass 59   8037 Zürich
Basel
Address                           Address

The Common Seal of
CHILTERN TRUST COMPANY (JERSEY) LIMITED
was hereunto affixed
in the presence of:

_Juliet N Stevenson_      _____
Authorised Officer        Authorised Officer



9

102

# EXHIBIT 12



GRANTED WITH MODIFICATIONS

# EXHIBIT A

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

COLLEEN INVESTMENT AG            )
COLLEEN INVESTMENT L.L.C., and   )
LOGANY, L.L.C.,                  )
                                 )
                Plaintiffs,      )
                                 )        Civil Action No. 2672-N
        v.                       )
                                 )
MARCO STOFFEL,                   )
                                 )
                Defendant.       )

## STIPULATION AND ORDER REGARDING ACCESS
## TO BOOKS AND RECORDS

WHEREAS, on January 12, 2007, Plaintiffs Colleen Investment AG, Colleen Investment, L.L.C. and Logany, L.L.C. ("Plaintiffs") commenced an action in the Court of Chancery of the State of Delaware in and for New Castle County, CA No. 2672-N (the "Delaware Proceeding"), to require Defendant Marco Stoffel to turn over the books and records of Colleen Investment, L.L.C. and Logany, L.L.C. (the "LLCs"); and

WHEREAS, on February 12, 2007 Plaintiffs filed a Motion For Escrow Of Books And Records in the Delaware Proceeding; and

NOW THEREFORE, Dr. Stoffel and Plaintiffs hereby stipulate and agree, subject to Court approval, to arrange for access to the books and records of the LLCs (but not authorizing third parties to provide access to any documents that do not constitute the corporate books and records of the LLCs) under the terms set forth herein:

1.      The term "Books and Records" as used herein refers to all documents that constitute the corporate books and records of the LLCs, including, but not limited to, bank and brokerage account records and statements, banking and financial transaction records, records of funds paid or received, tax returns, financial statements (including without limitation income statements, balance sheets and statements of cash flows), work papers of accountants, documents sufficient to show the location of all assets of the LLCs and all assets purchased with funds of the LLCs, bills or demands for payment, real estate title documents, corporate resolutions, contracts or other agreements including rental or lease agreements, correspondence, business plans, architectural drawings, pleadings or court filings, documents relating to business disputes, documents relating to insurance coverage or disputes, employee pay and personnel records, documents relating to the

1

building located at One Broadway in the City of New York, and documents relating to the ownership or custody of shares of or membership interests in the LLCs.

2.    The parties hereby agree that access to any and all Books and Records in the custody of the following third parties shall be made available, for review and copying, to each of Dr. Stoffel and Plaintiffs and their respective counsel at the request of either party:

a. Corporate Formation and Other Legal Documents:  Willkie Farr & Gallagher LLP, attention: Doug Ulene, 787 Seventh Avenue, New York, New York 10019; former Willkie Farr & Gallagher partner Raymond Merritt; David Jones, 104 Ranborne Road, New Canaan, Connecticut;

b. Operational Documents: for Logany, L.L.C.: CB Richard Ellis, attention: Andrew Lofredo, 200 Park Avenue, New York, New York 10166;

c. Other LLC Books and Records: Books and Records held by Christen & Zobrist Treuhand AG, attention: Urs Christen, Achereggstrasse 10, 6362 Stansstad, Switzerland;

d. Financial Statements: Fulvio & Associates, attention: John Fulvio, 60 East 42nd Street, New York, New York 100165, and Eisner LLP, attention: Aaron Kaiser, 750 Third Avenue, New York, New York 10017;

e. Tax Documents: Fulvio & Associates, attention: John Fulvio, 60 East 42nd Street, New York, New York 100165;

f. Bank Accounts and Other Investments: for (i) Colleen Investment L.L.C.: Deutsche Bank Securities, Inc., attention: Brian Conway, 60 Wall Street, 22nd Floor, New York, New York 10005; (ii) Logany, L.L.C.: Chase Manhattan Bank, contact through CB Richard Ellis, Andrew Lofredo; (iii) Sentinel Realty Partners IV, contact: Gary Sheehan; (iv) Aslan Realty Partners, contact: Doug Lyons; (v) Apollo Real Estate Investment Fund, contact: Jason Tighe; (vi) Blackstone Real Estate Partners, contact: Kenneth Whitney; (vii) State Street Bank, and (viii) Bankers Trust.

3.    The parties agree that each of the third parties identified in Paragraph 2 above, as well as any other third parties holding Books and Records, shall grant counsel to Plantiffs and Dr. Stoffel equal reasonable access, for review and copying, to the Books and Records in accordance with the terms of this Stipulation and Order.

4.    On or before March 5, 2007, Dr. Stoffel will provide to counsel for Plaintiffs copies of all Books and Records in his possession and will maintain in safe custody the originals of all such Books and Records.

2

5.      Nothing in this Stipulation and Order constitutes an admission as to the
right of any party to own, manage or otherwise control any of the Plaintiff entities or a
waiver of any right, claim or defense of any of the parties in the Delaware Proceeding or
any other pending proceeding in any jurisdiction.

6.      For the sake of clarity, the parties do not authorize any third parties to
provide access to any documents that do not constitute the books and records of the
LLCs.

7.      The parties hereto have reviewed this Stipulation and Order and have
consented to their counsel's execution of the Stipulation and Order on their behalf. The
parties hereby consent to the jurisdiction of the Court of Chancery of the State of
Delaware solely to enforce compliance with the terms of this Stipulation and Order,
provided, however, that Dr. Stoffel's agreement to enter into this Stipulation and Order
shall not be deemed as a waiver of any defense he may have as to the personal
jurisdiction of this Court over him or any attempt to serve process upon him in this
action, or in any future action brought against him in Delaware.

AGREED and stipulated, this 28th day of February, 2007.


POTTER ANDERSON & CORROON LLP        RICHARDS, LAYTON & FINGER, P.A.


  /s/ Berton W. Ashman, Jr.                     /s/ Daniel A. Dreisbach
Michael D. Goldman (No. 268)           Daniel A. Dreisbach (No. 2583)
Stephen C. Norman (No. 2686)           One Rodney Square
Berton W. Ashman, Jr. (No. 4681)       920 North King Street
1313 North Market Street, 6th Floor    Wilmington, Delaware 19801
P.O. Box 951                           (302) 651-7700
Wilmington, Delaware 19899
(302) 984-6000

OF COUNSEL:                            OF COUNSEL:

Abbe David Lowell                      Lisa   Schweitzer
Jonathan Cross                         CLEARY GOTTLIEB
CHADBOURNE & PARKE LLP                 HAMILTON LLP
30 Rockefeller Plaza                   One Liberty Plaza
New York, New York 10112               New York, NY 10006

*Attorneys for Plaintiffs*             *Attorneys for Defendant*


3

SO ORDERED this _____ day of _____, 2007:

_____
Vice Chancellor Leo E. Strine, Jr.

780359

723_200703012016320096.txt

Court: DE Court of Chancery

Judge: Strine, Leo E

File & Serve reviewed Transaction ID: 13963494

Current date: 3/1/2007

Case number: 2672-N

Case name: Colleen Investment AG et al vs Marco Stoffel

The parties shall seek a scheduling conference if they so desire by contacting my
assistant, Elane Boulden, jointly and discussing available dates.

/s/ Judge Leo E Strine

# EXHIBIT 13

**Bank Leu** 🦁

CIF

## Form A

**Establishment of the beneficial owner's identity**
(Form A as per art. 3 and 4 CDB)

Account/safe custody account no.

Contracting partner

Albe Asscoiates Ltd., B.V.I.

The undersigned hereby declares:

☐ that the contracting partner is the beneficial owner of the assets concerned.

☒ that the beneficial owner of the assets concerned is:

Name, first name/company

STOFFEL Marco, 650 Madison Ave., New York, NY 10022

Address/country (domicile)

☒ Mark with a cross where appropriate.

The contracting partner undertakes to inform the bank of his own account, about any changes.

Albe Associates Ltd.

ALBE ASSOCIATES
LTD

15.1.2002

Place, date                                    Signature

(13)

**Bank Leu**

## Signatures

| Name of firm | Incorporated in |
|---|---|
| Albe Associates Ltd. | Tortola, B.V.I. |

Address
The Lake Building, 2nd Floor, Wickhams Cay I, Road Town, Tortola, B.V.I.

The following persons have full authority to represent the undersigned firm with the bank. In particular they are authorized to dispose of any sums deposited in the account maintained with the bank, to borrow on behalf of the firm, to sign drafts or acceptances, and to sell, pledge or withdraw securities. This arrangement is not valid for safe-deposit boxes and management mandates.

If several persons are authorized to sign, it has to be expressly stated whether these persons legally bind the corporation with their single signature or jointly. Without such instructions the bank regards each person as authorized to sign alone.
The signatures listed below are independent from any publications in any official register and valid until the bank is notified in writing.

| Full name of signature holder | | | Signature |
|---|---|---|---|
| Orconsult SA | | | as per signature list in your hands |

| Date of birth | Nationality | Form of signature |
|---|---|---|
| | | ☐ individually ☐ jointly by two |

| Full name of signature holder | | | Signature |
|---|---|---|---|

| Date of birth | Nationality | Form of signature |
|---|---|---|
| | | ☐ individually ☐ jointly by two |

| Full name of signature holder | | | Signature |
|---|---|---|---|

| Date of birth | Nationality | Form of signature |
|---|---|---|
| | | ☐ individually ☐ jointly by two |

| Full name of signature holder | | | Signature |
|---|---|---|---|

| Date of birth | Nationality | Form of signature |
|---|---|---|
| | | ☐ individually ☐ jointly by two |

| Full name of signature holder | | | Signature |
|---|---|---|---|

| Date of birth | Nationality | Form of signature |
|---|---|---|
| | | ☐ individually ☐ jointly by two |

| Full name of signature holder | | | Signature |
|---|---|---|---|

| Date of birth | Nationality | Form of signature |
|---|---|---|
| | | ☐ individually ☐ jointly by two |

| Full name of signature holder | | | Signature |
|---|---|---|---|

| Date of birth | Nationality | Form of signature |
|---|---|---|
| | | ☐ individually ☐ jointly by two |

| Full name of signature holder | | | Signature |
|---|---|---|---|

| Date of birth | Nationality | Form of signature |
|---|---|---|
| | | ☐ individually ☐ jointly by two |

This signature sheet    ☐ is new    ☐ supersedes previous signature arrangements    ☐ amends previous signature arrangements
The genuineness and validity of the above signatures and their authority to sign as indicated are hereby certified.
We acknowledge receipt of the General conditions and accept them, in particular the provision governing jurisdiction pursuant to section 15.

| Place, date | Signature of firm    Albe Associates Ltd. |
|---|---|
| 15.1.2002 | ALBE ASSOCIATES LTD |

Visum

R 019750   4.00.0

# EXHIBIT 14

— 1 —

*March 16, 2002*

**To Sue or my children or my heirs**

**Here are my undeclared assets:**

**1. Albe Associates:**

Albe holds my liquid moneys
(It came out of Ardesol and Mirlo Peace, which were liquidated)

I own 100% of the shares and they are with Banholzer/Orconsult

Albe has accounts with Tremont (USD 500'000), Lloyds ( ), HypoLux, FLB

*plus share funds, all of Anholzer*

**2a. New Eagle Corp.**

New Eagle is the Protector of all the Blickle Trusts: Capricorn/Aquarius, Bermudas, Alsam/Logany/Colleen, Channel Islands. It receives USD 200'000 annually from these trusts which is credited against the mortgages from HypoLux for the Scarsdale house and the Museum Tower Apt. (Banholzer has the service fee agreement)

I own 100% of the shares and they are with Martina Rooney at Gorman, Dublin

**2b. Francis Ltd.**

Francis is the trust company that is in charge of the annuity for Holger Blickle.

I own 100% of the shares and they are with Gordon Hill of the law firm Wilkinson Hallett in Bermudas

**3. Quartet Shares (USD 50'000)**

Contact is Lester Hochberg At R&R Capital Partners NY (465-8220). File is in my Scarsdale drawer.

**4. Prudential Account in the name of Orconsult**

Contact is Banholzer, Orconsult

**5. Darier Hentsch Account**

There are 2 accounts under Stoffel&Partner: one is mine and one is Blickle.
Contact is Nahmani/Stucki in Zurich



All of these assets go to my wife and my 3 children as per today and are thus not part of my estate. They also are entitled to give the instructions for New Eagle and Francis as I have specifically assured with the Blickles in any event as shareholders they have the say for the exercising of the roles that these 2 companies have.

My declared assets are known:
- account with BoNY
- 4 oldtimer cars
- retirement funds in Colleen
- life insurance in family trust

In the family and gifts trusts Deutsche Bank Trust has been made trustee yesterday. David Jones should be the investment advisor for all the trusts.

Executor of my will is my wife Sue and if she does not survive me it is Ray Merritt of Willkie Farr & Gallagher.

I love my wife Sue and my daughters Laura, Amanda and Carla. We will all see each other in haven again. Until then I am sure all angels are protecting you and I will "laugh my legs off" haven. I would like to be buried in that graveyard overlooking the Hudson and George Washington bridge where I fell in love with Sue.

March 16, 2002

# EXHIBIT 15

## Account/custody account opening form

**VP BANK**

**Account holder**

☐ Mr.    ☐ Ms.    ☒ Company

Family name(s)  **Bluecolt Securities Corp.**

First name(s)

Profession

Residential address  **Edificio Salduba, Calle 53 Este,**

**Urbanizacion Obarrio, Panama**

Post code/place/country  **Panama**

Date of birth

Nationality

| Type of account | Currency | Account no. |
|---|---|---|
| Current account | USD | |
| Current account | EUR | |

☐ Securities custody account

Reference currency

Account designation (heading/reference) – max. 20 characters

Language of correspondence  ☐ German  ☒ English  ☐ French

Remarks (please leave blank, will be completed by the bank)
**Sonderkonditionen**

I/we have read VP Bank's General Business Conditions and agree to be bound by them.

**Zurich, 22.06.2006 BA/sv**

Place / Date

---

**Mailing address**

☐ As on the left

☒ Mail to the following address:
**Orconsult SA**

**Postfach, Wengistrasse 7**

**8026 Zürich**

☐ Mail a copy to the following address:

_____

_____

_____

☐ Mail to be retained by the bank (fee will be charged)

Contact possibility (address, telephone, fax, e-mail) for urgent cases (necessary if mail is retained by the bank.

_____

_____

**QI-Status**

**Private individual**

| | | |
|---|---|---|
| US citizen | ☐ yes | ☐ no |
| US resident or residence permit (green card) | ☒ yes | ☐ no |
| Other reasons for classification as US person | ☐ yes | ☐ no |

If any of the above questions are answered with "yes", investments in US securities are only possible after a completed IRS form ("W-9") legally signed by the account holder, has been submitted.

**Declaration concerning the establishment of the identity of the beneficial owner(s)**
The undersigned hereby declare(s)

☐ that the account holder(s) he/her/themselves is/are the ultimate beneficial owner(s) of the deposited assets.

☐ that in this case an exception to the obligation to establish the identity of the beneficial owner(s) exists according to Art. 6, Para. 1 lit. b) and/or Art. 6, Para. 2 of the Due Diligence Law or Art. 20, Para. 2 of the Due Diligence Implementing Ordinance.

☒ that a third party or parties is/are the ultimate beneficial owner of the deposited assets.

☐ Joint account "and/or"

Account holder 2 _____

Account holder 3 _____

VP Bank is to be notified of any changes.

Bluecolt Securities Corp.

Signature(s)

Tel  +800 066 055 00
Fax +423 235 65 00
info@vpbank.com · www.vpbank.com

Verwaltungs- und Privat-Bank Aktiengesellschaft
FL-9490 Vaduz · Aeulestrasse 6 · LIECHTENSTEIN · MwSt-Nr. 51.263 · ÖR-Nr. H. 44/73

**Profile of business relationship**
pursuant to Art. 6 of the Due Diligence Ordinance

# VP BANK

Account holder 1  Bluecoll Securities Corp.

Account holder 2 _____

Account holder 3 _____

**1. Information about the account holder / contractual partner**

☐ Private individual    ☐ Active company (manufacturing, trading, services, holding co.)    ☒ non-active company (foundation, trust, holding co. etc.)

Profession/business _____    Approx. number of staff

Main business activity of main object of the company (employer, products, services, main markets/countries with market data such as sales figures etc.)

_____

_____

_____

**2. Information about the beneficial owner**
Year of birth, nationalities, profession and business activity (only to be completed if the beneficial owner is not identical with the contractual partner)

1951, Swiss, business lawyer and consultant

**3. Economic background and origin of the deposited assets**

☐ Employment salary    ☒ Business activity    ☐ Participations    ☐ Inheritance/gift    ☐ Financial earnings    ☐ Sale of company    ☐ Intangible goods    ☐ Real estate

Exact details or other background information (activity through which the assets were earned, company name, executor, donor etc.)

The assets to be brought in have been and are being earned through the BO's activity as independent real estate investment

consultant of three substantial trusts and other professional services

_____

The assets will be deposited via/from (money orders, cash deposit, transfers/delivery of securities, company/bank, place/country, currency)

Transfers totalling approximately EUR 2 Mio. from ING Bank Den Haag (closing of account Bluecoll) and sporadic transfers totalling

approx. EUR 1-1,5 Mio. p.a. from Lloyds Bank TSB, London resulting from the BO's business activity

**4. Purpose/employment of assets**

☒ Investment counselling/portfolio management    ☒ Commercial account (loans, payment transfers)    ☐ Salary/savings account    ☐ Loan/mortgage account    ☐ Other (please specify)

Exact details or other background information (investment horizon, payment transfer, commercial transactions, expected sales)

Funds will be invested in time deposit and securities and used partly for the BO's personal needs.

_____

**5. Additional details which substantiate the plausibility of the transaction (references etc.)**

_____

Orcansult SA

Received: (please leave blank; will be completed by VP Bank)

Zurich, 22.06.2006 BA/av

Place / date / person providing reference

Signature of contractual partner/initials of VP Bank adviser

Verwaltungs- und Privat-Bank Aktiengesellschaft

Tel  +800 066 055 00
Fax +423 235 65 00
info@vpbank.com · www.vpbank.com

FL-9490 Vaduz · Aeulestrasse 6 · LIECHTENSTEIN - MwSt-Nr. 51.263 · ÖR-Nr. H. 44/73

9036.03.03



21

## Declaration concerning the establishment of the identity of the beneficial owner(s)

upon establishing business relations and when transacting business with VP Bank
(pursuant to Art. 5 of the Due Diligence Law and Art. 18 of the Due Diligence
Implementing Ordinance)



Account holder 1 — **Bluecolt Securities Corp.**

Account holder 2 —

Account holder 3 —

The undersigned hereby declare(s)    (please tick Box A), Box B) or Box C))

A)    ☐ that the account holder(s) mentioned above is/are he/her/themselves the ultimate beneficial owner(s) of the deposited assets. [1]

B)    ☐ that in this case an exception to the obligation to establish the identity of the beneficial owner(s) exists according to Art. 6, Para. 1 lit. b) and/
or Art 6, Para. 2 of the Due Diligence Law or Art. 20, Para. 2 of the Due Diligence Implementing Ordinance. [2]

C)    ☒ that the following person(s) is/are the beneficial owners of the deposited assets
(please complete in block letters; please provide a copy of the person's passport):

|  | 1st person | 2nd person | 3rd person |
|---|---|---|---|
| Family name | Stoffel | | |
| First name | Marco | | |
| Residential address | 340 West 12th Street | | |
| Post code/place | New York N.Y. 10014 | | |
| Country of residence | USA | | |
| Date of birth | 24.06.1951 | | |
| Nationalities | Swiss | | |

The undersigned take(s) note of the fact

that legally protected banking secrecy cannot lay claim to absolute validity and that the establishment of accounts and custody accounts under numbers or code-
words is purely an internal measure taken by the bank. The executive organs, employees and agents of banks are obliged to give evidence and information to the
authorities inasmuch as legal provisions stipulate an obligation to give evidence or information, for example, in criminal proceedings. This also applies vis-à-vis
the authorities of foreign countries to the extent that the Principality of Liechtenstein has undertaken to provide judicial assistance to other countries.

The account holder(s) / contractual partner(s) undertake to notify VP Bank immediately of any changes.

Bluecolt Securities Corp.

Zurich, 22.06.2006 BA/av                    _M. A. Vaccaro_

Place / date                                 Signature(s) of the account holder(s) / contractual partner(s)

[1] Subject to Art. 20, Para. 2 of the Due Diligence Ordinance, a legal entity (juridical person) or a trust can only be regarded as a beneficial owner if it conducts a trading or manufacturing operations or another type of com-
mercial business in its country of domicile. The business activity specified is to be evidenced by means of a trading licence or other official document. In all other cases, Box B) or Box C) is to be ticked.
[2] If the mentioned bank relationship relates to an attorney licensed in Liechtenstein and engaged in forensic activities, please specify the type of mandate as a reference with the client master file number.

Verwaltungs- und Privat-Bank Aktiengesellschaft        Tel +800 066 055 00
FL-9490 Vaduz - Aeulestrasse 6 - LIECHTENSTEIN - MwSt-Nr. 51.263 - ÖR-Nr. H. 44/73    Fax +423 235 65 00
info@vpbank.com - www.vpbank.com

(23.)

# Signature card and power of attorney

**VP BANK**

Account holder 1  **Bluecolt Securities Corp.**

Account holder 2  _____

Account holder 3  _____

A power of attorney over the accounts, custody accounts and/or safe deposit boxes contain under the master file number stated above is hereby granted to.

| Family name / first name / date of birth / nationality | Signature | Individual or joint |
|---|---|---|
| 1. **Orconsult SA, as per our signature list in your possession** | _____ | **Individual** |
| 2. | _____ | |
| 3. | _____ | |
| 4. | _____ | |
| 5. | _____ | |
| 6. | _____ | |

Remarks _____

## Conditions governing the right of disposal

The term «holder» in the following refers to the holder of accounts, custody accounts and/or safe deposit boxes.

The holder grants the above named persons a power of attorney over the assets contained in his accounts, custody accounts and/or safe deposit boxes under his master file number, to dispose of freely in accordance with the signatory power regulations and to perform all banking transactions, in particular: cash, lending, foreign exchange, securities, cheque, bill, documentary, precious metal and time deposit transactions, payment transactions, pledging of assets, securities subscriptions and transfers, all types of investments and all types of forward transactions. In addition, the authorised agent may issue the following instructions regarding the business relationships: the changing of mailing instructions, the closure of accounts and custody accounts, the opening and closing of safe deposit boxes, as well as the setting up of additional accounts and custody accounts with the same signatory power.

A power of substitution is excluded.

In the case of private individuals, if the account holder does not appear under the authorised agents, he signs individually. In the case of legal entities, only those persons who are expressly listed as authorised agents are authorised to sign.

The powers granted herewith remain valid and fully effective even following the death or incapacity to act of the account holder/ principal. The right of the legal representative or heirs to legally revoke them remains reserved.

The presentation of an new signature card/power of attorney to the bank automatically cancels all previous ones. Alternatively, supplementary cards may be submitted; however, they are to be designated as such, otherwise they shall be regarded as new signature cards.

In the absence of information to the contrary, it shall be deemed that the above authorised agents have individual signatory power. All other types of signatory power must be specified exactly. Unless instructions to the contrary are issued, in the case of joint signatory power it shall be deemed that each authorised agent shall sign jointly with a second authorised agent.

The bank undertakes to examine the power of disposal of the client and the authorised agents. However, damage resulting from failure by the bank to discover forgeries or other defects, particularly defects in identification, shall be borne by the holder, provided the bank is not guilty of gross negligence. The bank is not obligated to undertake any further checks of identity.

The bank is to be notified immediately of any changes to the powers of attorney.

The bank's General Business Conditions and these conditions apply to all business transactions with the bank. The authenticity of the above signatures as well as the powers arising from this signature card and power of attorney are hereby confirmed.

Zurich, 22.08.2006 BA/av

Place / date / person

Bluecolt Securities Corp.

_A. Vaccaro_

Signature(s) of the account holder(s)

Received:
(please leave blank; will be completed by VP Bank)

Erf _____

Kontr. _____

V013.03.03

Verwaltungs- und Privat-Bank Aktiengesellschaft
FL-9490 Vaduz · Aeulestrasse 6 · LIECHTENSTEIN · MwSt-Nr. 51.263 · ÖR-Nr. H. 44/73

Tel +800 066 055 00
Fax +423 235 65 00
info@vpbank.com · www.vpbank.com

# EXHIBIT 16

*Dr. Marco Stoffel*

340 West 12th Street
New York, NY 10014

Orconsult SA
Wengistrasse 7
8004 Zürich

December 6, 2006

Re: Albe Associates Ltd.

Dear Sirs

This is to confirm that I am conferring the shares (100%) of Albe Associates Ltd. to Albeag Foundation Vaduz, effective January 1, 2006.

Please arrange for the replacement of the existing bearer shares into registered shares made out to Albeag Foundation.

In accordance with the existing laws in the British Virgin Islands, the registered shares will have to be deposited with an authorised custodian.

Thank you for taking care of that.

Sincerely Yours

Dr. Marco Stoffel

# EXHIBIT 17

*Original*

*Dr. Marco Stoffel*

340 West 12th Street
New York NY 10014

Orconsult SA
Wengistrasse 7
8004 Zürich

December 28, 2006

Re: Bluecolt Securities Inc., Panama

Dear Sirs

This is to confirm that I am conferring the shares (100%) of Bluecolt Securities Inc. represented by bearer share certificates no 1 + 2 dated September 23, 2005 (50 shares each) to Albeag Foundation Vaduz, effective January 1, 2006.

Thank you for taking care of that.

Sincerely yours

Dr. Marco Stoffel

# EXHIBIT 18

MARCO STOFFEL

Page 1

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

APPLICATION OF

VISTRA TRUST COMPANY (JERSEY)
LIMITED and WILLIAM TACON,
RECEIVER AND MANAGER

FOR AN ORDER OF JUDICIAL ASSISTANCE
PURSUANT TO 28 U.S.C. SECTION 1782

------------------------------------x

                    August 2, 2007
                    9:06 a.m.


    Videotaped Deposition of MARCO STOFFEL, taken

by Applicant, pursuant to notice, at the offices

of Chadbourne & Parke, LLP, 30 Rockefeller

Plaza, New York, New York, before SUZANNE

PASTOR, a Shorthand Reporter and Notary Public

within and for the State of New York.

MARCO STOFFEL

---

Page 2

```
1  A P P E A R A N C E S:
2     CHADBOURNE & PARKE, LLP
         Attorneys for Applicants William Tacon
3     and Vistra Trust Company Limited
           30 Rockefeller Plaza
4        New York, New York 10112
5     BY:   SCOTT S. BALBER, ESQ.
       AND:   JONATHAN C. CROSS, ESQ.
6       AND:   ROBERT GROSSMAN, ESQ.
7
8     MORRISON & FOERSTER, LLP
         Attorneys for Dr. Marco Stoffel
9          1290 Avenue of the Americas
           New York, New York 10104-0050
10
       BY:   THOMAS M. MUELLER, ESQ.
11     AND:   KELVIN D. CHEN, ESQ.
12
13
14
    ALSO PRESENT:
15
     DAVID BROWNBILL
16
     NIGEL SANDERS
17
     SOPHIE HOFFSTADT
18
     MARGUERITE HOWELL, Videographer
19        MERRILL LEGAL SOLUTIONS
20
21
22
23
24
25
```

---

Page 4

```
1         MARCO STOFFEL
2         MR. BALBER:  Vistra Trust Company.
3         MR. MUELLER:  This is Thomas
4  Mueller, Morrison & Foerster on behalf of
5  Dr. Stoffel.  With me are Calvin Chen and Sophie
6  Hoffstadt, also from our office.
7         THE VIDEOGRAPHER:  Will the court
8  reporter, Sue Pastor, of Merrill please swear
9  the witness.
10        MARCO STOFFEL,
11 having been first duly sworn by the Notary
12 Public (Suzanne Pastor), was examined and
13 testified as follows:
14 EXAMINATION BY
15 MR. BALBER:
16     Q.   Good morning, Dr. Stoffel.
17     A.   Good morning.
18     Q.   Dr. Stoffel, do you recall
19 submitting an affidavit in support of motions to
20 intervene filed by two foundations with which
21 you're associated?
22     A.   Could you help me with this
23 document?
24     Q.   No document, Mr. Stoffel --
25     A.   I don't remember.
```

---

Page 3

```
1         MARCO STOFFEL
2         THE VIDEOGRAPHER:  This is the
3  video operator speaking, Marguerite Howell of
4  Merrill Legal Solutions, 25 West 45th Street,
5  New York, New York.  Today is August 2nd, 2007,
6  and the time is 9:06 a.m.
7         We're at the offices of
8  Chadbourne & Parke, 30 Rockefeller Plaza, New
9  York, New York to take the videotaped deposition
10 of Marco Stoffel in the matter of the
11 application of Vistra Trust Company Jersey
12 limited, et al., for an order of judicial
13 assistance pursuant to 28 U.S.C, section 1782
14 in the United States District Court, Southern
15 District of New York.
16        Will counsel please introduce
17 themselves for the record.
18        MR. BALBER:  Scott Balber from
19 Chadbourne & Parke on behalf of Vistra and
20 William Tacon.  Also in attendance are Jonathan
21 Cross and Robert Grossman from Chadbourne &
22 Parke, as well as David Brownbill, London
23 Barrister and Nigel Sanders from OGA.
24        MR. MUELLER:  Just for the record,
25 Mr. Sanders and Mr. Brownbill represent?
```

---

Page 5

```
1         MARCO STOFFEL
2     Q.   You do not recall submitting an
3  affidavit in support of a motion to intervene on
4  behalf of the Borderline Personality Disorder
5  Research Foundation --
6     A.   Yes, I do remember.  I don't know
7  the content anymore.
8     Q.   Great.  The only question is did
9  you remember it.  This will be nice and easy,
10 okay?
11        MR. BALBER:  Let's mark this as
12 Exhibit 1.
13        (Stoffel Exhibit 1 for
14 identification, Affidavit in Support of Motion
15 to Intervene.)
16     Q.   I'd like to turn your attention to
17 paragraph 7 of that affidavit.  This affidavit
18 you submitted under oath on or about April 25th,
19 2007, is that right?
20     A.   That's correct.
21     Q.   And in paragraph 7 of this
22 affidavit, Exhibit 1, you indicate that "in or
23 about December 1998 Angela Blickle pledged to
24 charity the amount in German marks approximately
25 U.S. 24,130,846.11 for research into borderline
```

2   (Pages 2 to 5)

fe733ac1-37d3-4499-8c62-066af3a38ad2

MARCO STOFFEL

Page 198

MARCO STOFFEL

1      payments?
2          A.    As loans.  I remember loans from
3      Albe Associates.  I do.
4          Q.    And Albe Associates was holding
5      money for the foundations.
6          A.    Foundations.  And loans were then
7      repaid.
8          Q.    And loans were made to you by Albe
9      Associates.  How much?
10         A.    I don't know.
11         Q.    Are there documents that reflect
12     those loans?
13         A.    Yes, of course.
14         Q.    Was it hundreds of thousands of
15     dollars, millions of dollars, tens of millions
16     of dollars?
17         A.    No.
18         Q.    How much was it?
19         A.    I don't know.
20         Q.    And those loans were made from Albe
21     Associates holding money for the foundations to
22     you, right?  And repaid them.
23         A.    Actually, on the loan documents,
24     it's Orconsult that is the creditor.  But I know

Page 199

MARCO STOFFEL

1      they received those monies out of -- partially
2      out of Albe.  But Albe was not my creditor.
3      Orconsult was.  Similar to the situation we
4      discussed before.
5          Q.    But the money that Orconsult --
6      your understanding that the money Orconsult was
7      using to give you the loan was Albe Associates
8      money.
9          A.    Partially.
10         Q.    Which was owned by the foundation?
11         A.    Yes.
12         Q.    Was that loan to you from the
13     foundation disclosed on the Form 990s that were
14     filed on behalf of the foundations?
15         A.    No.  The loan came from Orconsult.
16     But as in a back-to-back situation, Orconsult
17     must have taken some of the monies from these
18     escrow amounts, yes.
19         Q.    And I'm sorry, you said that there
20     are documents that reflect these loans?
21         A.    Yes.
22         MR. BALBER:  We'd like a copy of
23     those documents.
24         A.    I don't think so.

Page 200

MARCO STOFFEL

1          Q.    Excuse me?
2          MR. MUELLER:  We'll take that under
3      advisement.
4      INFORMATION REQUESTED TO BE SUPPLIED:
5      ---------------------------
6          Q.    Let's look --
7          A.    Confer with counsel.
8          Q.    Let's do this because this will be
9      good.  Let's start with the first page of
10     Exhibit 23.  That's a May 15, 2002 invoice to
11     Maytown Universal, right?
12         A.    Correct.
13         Q.    By Industrial Planning and
14     Marketing Group Limited.
15         A.    Yes.
16         Q.    And in the amount of $129,500.
17     That's not work you performed?  I'm sorry, is
18     Planning and Marketing of Medical Research
19     Foundation work that you performed for this
20     invoice?
21         A.    Planning and marketing of -- no.
22         Q.    Do you know what that reference
23     means?
24         A.    They're all fake invoices by

Page 201

MARCO STOFFEL

1      Orconsult.
2          Q.    Fake invoices --
3          A.    I just explained that before.
4          Q.    They're fake invoices --
5          A.    I think I explained it.
6          MR. MUELLER:  Stick to what you
7      know.  Not what you assume or speculate.
8          A.    As I explained before, Mr. Philippe
9      had 11.9 million of debt acknowledgment plus 3.5
10     percent interest personally obliged himself to
11     the foundations.  To the best of my knowledge,
12     he got to that money by making invoices to
13     Maytown and Plympton which at that time belonged
14     to Orconsult Limited as trustee for Aquarius and
15     Capricorn Trust.
16         Q.    Just so I'm clear about that last
17     point, Orconsult owned Maytown and Plympton?
18         A.    Yeah, we discussed that before.
19     The famous memorandum of addition mentions that
20     the shares of Maytown and Plympton were added to
21     the Orconsult Limited as trustee of Aquarius and
22     Capricorn Trust.
23         Q.    So Maytown and Plympton is an
24     entity owned by Orconsult, yes?

51 (Pages 198 to 201)

MARCO STOFFEL

Page 142

```
 1              MARCO STOFFEL
 2   transfer --
 3        A.   I don't know how.
 4        Q.   -- which is on page 62 as well.
 5   Where is the furniture now, by the way, that you
 6   purchased from Poli --
 7        A.   Townhouse.
 8        Q.   If you look at the last two entries
 9   on page 62 -- on page 62, last two entries under
10   electronic funds transfer, $300,000 wire to UBS
11   AG, do you see that?
12        A.   Yes.
13        Q.   Was that your Stoffel & Partners
14   UBS account?
15        A.   Because I also have a UBS AG
16   account in my own name. I don't know for sure.
17        Q.   You don't know what this transfer
18   on 12/18/06 to UBS in the amount of $300,000
19   was? You don't know what it is?
20        A.   Your question was to which account.
21   And I'm not sure because I have two accounts at
22   UBS.
23        Q.   Are you certain it was one of your
24   two UBS accounts?
25        A.   Yes.
```

Page 143

```
 1              MARCO STOFFEL
 2        Q.   Why did you make that $300,000
 3   transfer to your accounts?
 4        A.   Upon advice of my lawyer.
 5        Q.   Who was your lawyer?
 6        A.   Ray Merritt.
 7        Q.   Ray Merritt advised you to transfer
 8   $300,000 to your account?
 9        A.   He advised me to transfer more
10   monies, but to my account, these two.
11        Q.   And then there's the entry below
12   that, $300,000 wire to First Republic.
13        A.   Yes.
14        Q.   Is that also an account in your
15   name?
16        A.   It's an account in my name.
17        Q.   How long have you held that
18   account?
19        A.   2003, 2004.
20        Q.   And what was the purpose of that
21   wire?
22        A.   Same thing. These were as per the
23   advice of the lawyer monies from the
24   foundation's fund in -- why are you laughing?
25        Q.   I'm listening.
```

Page 144

```
 1              MARCO STOFFEL
 2        A.   I'm repeating my answer.
 3             MR. MUELLER: But I caution you, to
 4   the extent you're talking about the advice of
 5   counsel, I don't want you to reveal privileged
 6   information. So --
 7        A.   So we have identified that twice
 8   $300,000 went to an account of Marco Stoffel.
 9   In one case I didn't know which account. UBS
10   Zurich. And the other account is First
11   Republic.
12             I have stated that I was advised by
13   my lawyer to do so. I have also stated that I
14   had power to instruct payments from this
15   Wachovia account based on the escrow agreement
16   which we had earlier in the day, I'll give you
17   the exhibit, Exhibit 3.
18        Q.   And it's on that document you rely
19   on Exhibit 3 -- Exhibit 3?
20        A.   I rely on Exhibit 3, page 1,
21   article 2, "Escrow agent will pay out the
22   amounts to the principals and/or their grantees
23   upon written instructions of the treasurer of
24   the two foundations." So this was the basis on
25   which I transferred monies out of these -- out
```

Page 145

```
 1              MARCO STOFFEL
 2   of the escrow funds held at the Wachovia account
 3   of Colleen Investment AG.
 4        Q.   And these were monies that were
 5   foundation monies?
 6        A.   Foundation monies.
 7        Q.   How were you sure they were
 8   foundation monies and not the Colleen monies?
 9        A.   I identified them as foundation
10   monies.
11        Q.   Based on what? How did you
12   identify them?
13        A.   By destruction. By deduction,
14   sorry. I'm distracted. By deduction. The
15   foundations still had $11 million plus dollars
16   in these escrow funds. And so up to the 11
17   million, the foundation could always withdraw
18   money upon payment instructions of the
19   treasurer. That's exactly what happened.
20        Q.   Was Ray Merritt the treasurer as of
21   December '06?
22        A.   No, I was the treasurer.
23        Q.   So based upon your own
24   instructions. I don't understand the transfers
25   to UBS AG and First Republic to be accounts to
```

37 (Pages 142 to 145)

MARCO STOFFEL

Page 146

1         MARCO STOFFEL
2   the foundations.  I think you testified they
3   were your personal accounts.
4       A.    My personal accounts.  Of course.
5   But that doesn't mean I held it for myself.
6       Q.    So these monies --
7       A.    The monies.
8       Q.    Can I ask my questions?
9       A.    Sorry.
10      Q.    Are you taking the position that
11  these -- the monies held in the UBS AG account
12  and the First Republic account are monies of the
13  foundation?
14      A.    Yes.
15      Q.    Why did you not transfer them to
16  the foundation?
17      A.    I did.
18      Q.    So those monies are no longer in
19  the UBS AG account?
20      A.    Correct.
21      Q.    When were they transferred to the
22  foundation?
23      A.    They were transferred to the
24  lawyers of the foundation, if not in December,
25  then January.

Page 147

1         MARCO STOFFEL
2       Q.    Both quantities of money.
3       A.    Yes.
4       Q.    Why did you not transfer them
5   directly to the foundation from the Colleen
6   account?  Why didn't you transfer them to the
7   J.P. Morgan account?
8       A.    The money was needed -- one amount
9   was needed in Switzerland for the lawyer in
10  Switzerland for the foundations.  They filed an
11  arbitration.  So I needed an account in
12  Switzerland and I used my account for that
13  purpose and then wired the money from there to
14  the lawyer.
15        And the second account is the First
16  Republic account, I didn't have a lawyer at that
17  time yet for the foundations.  He was appointed
18  later.  His name was Barry Friedberg, as you
19  know.  And he was appointed much later, I think
20  in March maybe, April.  And then he received
21  funds as well.
22      Q.    Was Ray Merritt acting as lawyer
23  for the foundations or as your personal lawyer
24  when he gave you that advice in December '06?
25      A.    Both.

Page 148

1         MARCO STOFFEL
2       Q.    Both?
3       A.    Both.
4       Q.    How long has Ray Merritt been
5   lawyer for the foundations?
6       A.    For every.  From day 1.
7       Q.    How long has Ray Merritt been your
8   lawyer?
9       A.    Forever.
10      Q.    Was he also a fiduciary of Colleen
11  LLC?
12      A.    Yes.  He was a secretary of Colleen
13  Investment LLC.
14      Q.    How about Logany?
15      A.    He was a secretary of Logany LLC,
16  yes.
17        MR. MUELLER:  During what period of
18  time?
19      A.    That's a good question.  I would
20  say from '02 to '06 he was secretary in the
21  foundations and in the two U.S. entities.  '02
22  to '06.  In there.
23        MR. BALBER:  Mark that, please.
24        (Stoffel Exhibit 19 for
25  identification, December 12, 2006 Letter from

Page 149

1         MARCO STOFFEL
2   Mr. Stoffel to Mr. Sherrill, Wachovia
3   Securities.)
4       Q.    Dr. Stoffel, I've placed in front
5   of you Exhibit 19 which is a letter from you to
6   Wachovia Securities dated December 12, 2006.
7       A.    Yes.
8       Q.    Right?
9       A.    That's correct.
10      Q.    And that's signed by you?
11      A.    Correct.
12      Q.    And this is the instruction to
13  transfer the $300,000 to your First Republic
14  account, right?
15      A.    Yes.
16      Q.    Right?
17      A.    Yes.
18      Q.    That is in fact your account -- the
19  account number of your First Republic bank
20  account?
21      A.    Must be, yes.
22      Q.    And the reference name is escrow
23  for Colleen, right?
24      A.    Say that again.
25      Q.    Under reference, reference, colon,

38  (Pages 146 to 149)

fe733ac1-37d3-4499-8c62-066af3a38ad2

MARCO STOFFEL

Page 150

1          MARCO STOFFEL
2  "escrow for Colleen."
3      A.    Escrow for Colleen.
4      Q.    Doesn't say foundations, does it?
5      A.    No, it doesn't say foundations.
6  And I like to --
7      MR. MUELLER:  There's no question
8  pending.  So why don't we wait for a question.
9      A.    Can I correct or specify something?
10     Q.    No, there's no question pending.
11 But I do have a follow-up question.
12     MR. MUELLER:  He wants to correct
13 an answer based on the document.
14     Q.    That's fine.
15     A.    Because now you're just giving me
16 the account where the $300,000 went.  And it
17 went straight to the lawyer of the foundations.
18 I thought it went first to mine and then to him.
19     Q.    He had the UBS AG account.
20     A.    That's a coincidence.  It went
21 straight to him.  It went directly to him.
22     Q.    I'm sorry, I'm still confused about
23 something.  When Ray Merritt told you to
24 transfer these two tranches of $300,000, was he
25 acting as lawyer for the foundation, for you or

Page 151

1          MARCO STOFFEL
2  for both?
3      A.    Again, to specify, I had been made
4  a joint appointee of the escrow agent Colleen
5  and of the owners of the funds, the foundations
6  in that document, the escrow agreement of
7  January 2000.  In there it says that whoever the
8  treasurer is at that time can make instructions
9  for payments.  So that was my function.
10     So now Ray Merritt, being secretary
11 in Third Millennium, secretary in Borderline
12 Foundation, secretary in Colleen, not in AG, in
13 Colleen Investment LLC, because this is an AG
14 account, so he was not the lawyer of AG, advises
15 that based on this, I can and should make
16 transfers so that the foundations have enough
17 money to defend allegations that maybe some
18 donations were not properly made.
19     (Counsel and witness confer.)
20     Q.    You made additional transfers to
21 third parties in December '06, correct?
22     A.    Correct.
23     Q.    You transferred $800,000 to Willkie
24 Farr?
25     A.    Correct.

Page 152

1          MARCO STOFFEL
2      Q.    And you transferred a million
3  dollars to Stoffel partners, correct?
4      A.    Correct.
5      Q.    What was the purpose of the
6  $800,000 transfer?
7      A.    Same thing.  Upon advice of Ray
8  Merritt, a transfer was made to Willkie, Farr &
9  Gallagher to pay for legal defense costs which
10 we would incur through this December 13 notice
11 of court orders in Jersey.
12     MR. MUELLER:  Again, I want to
13 caution the witness -- I'm going to let you
14 answer this because I don't think this waives
15 any privilege, but I want to be careful here
16 because we're getting close to a privilege issue
17 here.
18     So I'll let him answer this,
19 understanding that this is not going to
20 constitute subject matter waiver that you can
21 now go into whatever Ray Merritt advised him on.
22     MR. BALBER:  Okay.
23     MR. MUELLER:  Is that agreed?
24     MR. BALBER:  I'm not agreeing to
25 that.  I have to take it question by question.

Page 153

1          MARCO STOFFEL
2      MR. MUELLER:  Well, then under
3  those circumstances, we'll take it question by
4  question.
5      MR. BALBER:  I'm saying let's take
6  it question by question.
7      Q.    Did you finish your answer?
8      A.    I did.
9      MR. BALBER:  Could you read it
10 back, please.
11     (The preceding answer was read.)
12     Q.    This was legal defense costs for
13 whom?
14     MR. MUELLER:  Again, to the extent
15 you are going to be disclosing conversations
16 that you had with Mr. Merritt who was your
17 lawyer, I want to caution you to not discuss
18 legal advice.
19     A.    Yes, it's a privileged --
20     Q.    I'm sorry?
21     A.    It's a privileged fact so I can't
22 answer.
23     Q.    I don't want to know in this
24 context at this moment what Mr. Merritt advised
25 you in this situation.

39  (Pages 150 to 153)

# EXHIBIT 19

# Dr. Marco Stoffel

650 Madison Avenue, 18th Floor New York, NY 10022
212-937-1955 Fax: 212-937-1956 mstoffel@mstoffel.com

| To: Guido Banholzer | From: Marco Stoffel |
|---|---|
| Fax: 297 27 00 | Date: 1/22/02 |
| Tel: | Pages: |
| Re: | |

Lieber Guido

Bitte veranlasse die Zahlung der beiden Maytown und der einen Plympton Rechnung gemaess Beilage.

Besten Dank

 1-800-Translate

865 United Nations Plaza, New York, NY 10017-1809
1-800-872-6752 Fax: 1-888-872-6752  info@1-800-translate.com

Dr. Marco Stoffel
650 Madison Ave., 18th Floor New York, NY 10022
212-937-1955 Fax: 212-937-1956 mstoffel@mstoffel.com

| To: Guido Banholzer | From: Marco Stoffel |
|---|---|
| Fax: 297 27 00 | Date: 1/22/02 |
| Phone: | Pages: |
| Re: | |

Dear Guido:

Please arrange for the payment of the 2 Maytown and the one Plympton invoices as enclosed herewith.

Thank you very much.

[Signature]

Susanna Bunzel-Harris, a professional translator of German into English, has translated the attached document under contract to 1-800-Translate, an American Translators Association (ATA) corporate membership company. We have examined the document and have found it to be a complete and accurate translation of the original provided to us.

Charlie Hoag, Project Manager

State of New York, County of New York
Sworn to me before me this 19 day of Dec. 2007

Fei-Xue Qian, Notary Public

Fei-Xue Qian
No. 01QI6057818
Qualified in New York County
Commission Expires April 23, 20__

01/22/2002  17:21   2129371956        DR STOFFEL                    PAGE  02/04

# IPMG (INDUSTRIAL PLANNING AND MARKETING GROUP) LTD.

P.O. Box 958, Pasea Estate,
Road Town, Tortola, B.V.I.

Tel.: + 1 809 494 2011
Fax: + 1 809 494 2015

Maytown Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

January 22, 2002

**Setting up Network in Tolerance Education**

For our services rendered in the period of 5/1/01 through 12/31/01:

| | | |
|---|---|---|
| Fees | USD | 62'450.00 |
| Cash reimbursements | USD | 4'120.00 |
| | | --------------- |
| Balance in our favour | USD | 66'570.00 |
| | | --------------- |

at - 87 = €  76517-

Please transfer to our account with Lloyds Bank, Wimbledon, account no. 11307959

paid 5.2.02

01/22/2002  17:21    2129371956          DR STOFFEL                    PAGE  03/04

# P.B. PARTNERS & CO.

Registered in Edinburgh, No. 1971

Correspondence Address:
23 Bullscroft Road, Edgware
Middlesex HA8 8RN

Telephone  +44 171 414 0403
Facsimile   +44 171 930 7444

Maytown Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

January 22, 2002

**Invoice for Real Estate Advisory Fees re USA**

| | |
|---|---|
| Fees 2nd Semester 2001 | USD 100'000.00 |
| Cash reimbursements | USD   1'000.00 |
| | |
| Balance in our favour | USD 101'000.00 |

*at - 17 - € 116 092.-*

Please transfer to our account with Lloyds Bank, Wimbledon, account no. 11129589

*paid 5.2 M*

Registered Office - 60 Lothian Road, Festival Square, Edinburgh EH3 9WJ .

01/22/2002  17:21    2129371956                DR STOFFEL                        PAGE  04/04

# P.B. PARTNERS & CO.

Registered in Edinburgh, No. 1971

Correspondence Address:
23 Bullscroft Road, Edgware
Middlesex HA8 8RN

Telephone  +44 171 414 0405
Facsimile   +44 171 930 7444

Plympton Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

January 22, 2002

## Invoice for Real Estate Advisory Fees re USA

| | |
|---|---|
| Fees 2nd Semester 2001 | USD 100'000.00 |
| Cash reimbursements | USD    1'000.00 |
| | |
| Balance in our favour | USD 101'000.00 |

*at –87 = € 116092.–*

Please transfer to our account with Lloyds Bank, Wimbledon, account no. 11129589

*paid 5.2 02*

Registered Office · 50 Lothian Road, Festival Square, Edinburgh EH3 9WJ

 Lloyds TSB

Phone number
020 8971 5000

Fax number
020 8946 1293

Answerphone number

12/04 9966

IPMG LTD BVI
C/O ORCONSULT SA
WENGISTRASSE 7
8026 ZURICH
SWITZERLAND

Branch name
ST GEORGE'S ROAD WIMBLEDON (309966)

your **account statement**
IPMG LTD BVI

Account number
86037473

Sort code
30-99-66

Account Details
CURRENT ACCOUNT
EURO

28 FEB 2002          X

Sheet no.    2

A value date does not indicate final payment of cheques/drafts etc.

| Date   Your reference Narrative | Our reference | Value Date | Debits/Credits A minus sign indicates a debit | Balance Overdrawn Balances marked D |
|---|---|---|---|---|
| 2002 FORWARD | | | | 989.81 X |
| 06FEB TFR TO ALBE ASSOC REF | CCB604905 | 06FEB02 | 75752.00- | |
| 06FEB TFR FR MAYTOWN UNIVERSAL | CCB604911 | 06FEB02 | 76517.00 | 1754.81 X |
| 11FEB FP71597240306464 CHARGES | FT54431535271 | 11FEB02 | 26.20- | |
| 11FEB FP71597240306464 | FT54431535271 | 11FEB02 | 765.00- | 963.61 X |
| 28FEB VALUE DATE ADJUSTED BALANCE | | | | 963.61 X |

The items and balance shown on this statement should be verified and the Bank notified promptly of any discrepancy.
Details of rates and calculation of any interest charged are available on request.
The Bank is not liable for loss or delay caused directly or indirectly by industrial action or by circumstances beyond its control.

Lloyds TSB Bank plc, 71 Lombard Street, London, EC3P 3BS. Lloyds TSB Scotland plc, Henry Duncan House, 120 George Street, Edinburgh, EH2 4LH.

 Lloyds TSB

Phone number
020 8971 5000

Fax number
01245 704705

Answerphone number

12/04 9966
P B PARTNERS AND CO
C/O ORCONSULT SA
WENGISTRASSE 7, POSTFACH
CH-8026 ZURICH
SWITZERLAND

Branch name
ST GEORGE'S ROAD WIMBLEDON (309966)

## your account statement
P B PARTNERS AND CO

Account number
86028857

Sort code
30-99-66

Account Details
CURRENT ACCOUNT
EURO

28 MAR 2002          X

Sheet no.    1

A value date does not indicate final payment of cheques/drafts etc.

| Date Your reference Narrative | Our reference | Value Date | Debits/Credits A minus sign indicates a debit | Balance Overdrawn Balances minus D |
|---|---|---|---|---|
| 2001 FORWARD | | | | 288.07 X |
| 25JAN INWARD CREDIT 0/0 | FT54145614251 .TD | 25JAN02 | 12601.04 | 12889.11 X |
| 28JAN | | 28JAN02 | 587.50 | |
| 28JAN | | 28JAN02 | 1822.30 | |
| 28JAN | | 28JAN02 | 10391.24 | 288.07 X |
| 05FEB INWARD CREDIT 0/0 | FT54326598251 LTD | 05FEB02 | 7738.40 | 8026.47 X |
| 06FEB TFR TO ALBE ASSOC LTD | CCB604907 | 06FEB02 | 114931.00 | |
| 06FEB TFR TO ALBE ASSOC | CCB604906 | 06FEB02 | 114931.00 | |
| 06FEB TFR FR MAYTOWN UNIVERSAL | CCB604910 | 06FEB02 | 116092.00 | |
| 06FEB TFR FR PLYMPTON UNIVERSAL | CCB604909 | 06FEB02 | 116092.00 | 10348.47 X |
| 11FEB FP71597241306464 CHARGES | FT54451387271 | 11FEB02 | 26.20 | |
| 11FEB FP71597241306464 | FT54451387271 | 11FEB02 | 2322.00 | 8000.27 X |
| 22FEB CHARGES | | 22FEB02 | 26.49 | |
| 22FEB FP88700421308838 | FT54630165271 | 22FEB02 | 775.00 | 7198.78 X |
| 26FEB FP71306384306464 RETURNED PAYMENT | LBPEX24898101. | 26FEB02 | 775.00 | 7973.78 X |
| 11MAR FP88700984308789 | FT54923516271 | 11MAR02 | 773.84 | 7199.94 X |

The items and balance shown on this statement should be verified and the Bank notified promptly of any discrepancy.
Details of rates and calculation of any interest charged are available on request.
The Bank is not liable for loss or delay caused directly or indirectly by industrial action or by circumstances beyond its control.

Lloyds TSB Bank plc, 71 Lombard Street, London, EC3P 3BS. Lloyds TSB Scotland plc. Henry Duncan House, 120 George Street, Edinburgh, EH2 4LH.

# EXHIBIT 20

05/15/2002 14:41    212-937-1956    DR STOFFEL    PAGE 01

# Dr. Marco Stoffel

650 Madison Avenue, 18th Floor New York, NY 10022
212-937-1955 Fax: 212-937-1956 mstoffel@mstoffel.com

| To: Guido Banholzer | From: Marco Stoffel |
|---|---|
| Fax: 297 27 00 | Date: 15.5.02 |
| Tel: | Pages: |
| Re: Plympton/Maytown | |

Lieber Guido

Im Bereich der von den Klienten unterstuerzten Forschung habe ich einen risen Erfolg zu vermelden. Das US Government hat am 9.Mai Mitteilung gemacht, dass es in eine Kollaboration mit der Borderline Stiftung tritt. Unsere Kampagne zu einem fund raising von zusaetzlichen USD 3 Mill (zu den USD 3 Mill der Klienten) ist also ein grosses Stueck weitergekommen, abgesehen davon, dass nun BPD dank der bisherigen Arbeit eine wissenschaftlich anerkannte Stoerung geworden ist. Damit Du siehst, wie das fundraising organisiert ist, lege ich Dir einen Brief bei, wie ich ihn gestern an eine Versicherungs-gesellschaft geschrieben habe.

Beiliegend auch die Rechnungen der Firma, welche dieses Fundraising konzeptiert hat. Auf den Tag genau wird wieder wie letztes Jahr das ganze Jahr abgerechnet, wobei die Rechnung rund 25'000 hoeher ist als letztes Mal. Angesichts der Tatsache, dass der Stiftung 6 Mill. gespart werden durch den Zugewinn weiterer Sponsoren, ist dies sicherlich gerechtfertigt.

Beste Gruesse

 1-800-Translate

865 United Nations Plaza, New York, NY 10017-1809
1-800-872-6752 Fax: 1-888-872-6752  info@1-800-translate.com

Dr. Marco Stoffel
650 Madison Ave., 18th Floor New York, NY 10022
212-937-1955 Fax: 212-937-1956 mstoffel@mstoffel.com

| To: Guido Banholzer | From: Marco Stoffel |
|---|---|
| Fax: 297 27 00 | Date: 5/15/02 |
| Phone: | Pages: |
| Re: Plympton/Maytown | |

Dear Guido:

With regards to the research supported by the clients, I can announce an enormous success. The U.S. Government announced on May 9th, that they will enter into a collaboration with the Borderline Foundation. Our fundraising campaign for an additional USD 3 million (in addition to the USD 3 million from the clients) has therefore made great progress, in addition to the fact that due to the work accomplished so far, BPD has become a scientifically recognized disturbance. For you to see how the fundraising works, I enclose a letter that I sent to an insurance company yesterday.

Enclosed herewith are also the invoices from the company that came up with the fundraising concept. Invoice date for the entire year is the very same day as last year, with the invoice being some 25,000 higher than last time. In view of the fact that the foundation saves 6 million by winning additional sponsors, this is certainly justified.

Best regards,

[Signature]

---

Susanna Bunzel-Harris, a professional translator of German into English, has translated the attached document under contract to 1-800-Translate, an American Translators Association (ATA) corporate membership company. We have examined the document and have found it to be a complete and accurate translation of the original provided to us.

[Signature]
Charlie Hoag, Project Manager

State of New York, County of New York
Sworn to me before me this 1 day of Dec. 2007

[Signature]
Fei-Xue Qian, Notary Public

Fei-Xue Qian
No. 01QI6057615
Qualified in New York County
Commission Expires April 23, 20___

# IPMG (INDUSTRIAL PLANNING AND MARKETING GROUP) LTD.

P.O. Box 958, Pasea Estate,                                    Tel.: + 1 809 494 2011
Road Town, Tortola, B.V.I.                                     Fax: +1 809 494 2015

Maytown Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

May 15, 2002

**Planning and Marketing of Medical Research Foundation**

For our services of 2002:

| | |
|---|---|
| Fees | USD 125'000.00 |
| Cash reimbursements | USD   4'500.00 |
| | ------------------- |
| Balance in our favour | USD 129'500.00 |
| | ------------------- |

Please transfer to our account with Lloyds Bank, Wimbledon, account no. 11307959

05/15/2002  14:41    212-937-1956          DR STOFFEL                    PAGE  03

# IPMG (INDUSTRIAL PLANNING AND MARKETING GROUP) LTD.

P.O. Box 958, Pasea Estate,                          Tel.: + 1 809 494 2011
Road Town, Tortola, B.V.I.                           Fax: +1 809 494 2015

Plympton Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

May 15, 2002

**Planning and Marketing of Medical Research Foundation**

For our services of 2002:

| | |
|---|---|
| Fees | USD 125'000.00 |
| Cash reimbursements | USD   4'500.00 |

| | |
|---|---|
| Balance in our favour | USD 129'500.00 |

Please transfer to our account with Lloyds Bank, Wimbledon, account no.11307959

 **Lloyds TSB**

Phone number
020 8971 5000

Fax number
01245 704705

Answerphone number

12/04  9966

IPMG LTD BVI
C/O ORCONSULT SA
WEHOISTRASSE 7
8026 ZURICH
SWITZERLAND

Branch name
ST GEORGE'S ROAD WIMBLEDON (309966)

## your **account statement**
IPMG LTD BVI

Account number
11307959

Sort code
30-99-66

Account Details
CURRENT ACCOUNT
US DOLLAR

28 JUN 2002              X

Sheet no.    6

A value date does not indicate final payment of cheques/drafts etc.

| Date  Your reference  Narrative | Our reference | Value Date | Debits/Credits  A minus sign indicates a debit | Balance  Overdrawn Balances marked D |
|---|---|---|---|---|
| 2002 FORWARD | | | | 574.99 |
| 11JUN | CC8616151 | | | |
| TFR TO ALBE ASSOC REF MAYTOWN | | 11JUN02 | 128205.00- | |
| 11JUN | CC8616075 | | | |
| TFR TO ALBE ASSOC | | 13JUN02 | 128205.00- | |
| 11JUN | CC8616071 | | | |
| TFR FR MAYTOWN UNIVERSAL SA | | 11JUN02 | 129500.00 | |
| 11JUN | CC8616154 | | | |
| PLYMPTON UNIVERSAL INV | | 11JUN02 | 129500.00 | 3164.99 |
| 19JUN FP887038113O8776 | FT56618484271 | | | |
| CHARGES | | 20JUN02 | 19.40- | |
| 19JUN FP887038113O8776 | FT56618484271 | | | |
| | | 20JUN02 | 2500.00- | 645.59 |
| 28JUN VALUE DATE ADJUSTED BALANCE | | | | 645.59 |

The items and balance shown on this statement should be verified and the Bank notified promptly of any discrepancy.
Details of rates and calculation of any interest charged are available on request.
The Bank is not liable for loss or delay caused directly or indirectly by industrial action or by circumstances beyond its control.

Lloyds TSB Bank plc, 71 Lombard Street, London, EC3P 3BS. Lloyds TSB Scotland plc, Henry Duncan House, 120 George Street, Edinburgh, EH2 4LH.

# EXHIBIT 21

03/26/2004  00:51    212-937-1956          DR STOFFEL                    PAGE  01

# Dr. Marco Stoffel

650 Madison Avenue, 18th Floor New York, NY 10022
212-937-1955 Fax: 212-937-1956 mstoffel@mstoffel.com

| To:  Guido Banholzer | From:  Marco Stoffel |
|---|---|
| Fax:  297 27 00 | Date:  3/26/04 |
| Tel: | Pages: 7 |
| Re: Maytown/Plympton | Cc: |

Lieber Guido

Bitte veranlasse die bezahlung beiliegender Rechnungen.

Vielen Dank



**1-800-Translate**

865 United Nations Plaza, New York, NY 10017-1809
1-800-872-6752 Fax: 1-888-872-6752 info@1-800-translate.com

Dr. Marco Stoffel
650 Madison Ave., 18th Floor New York, NY 10022
212-937-1955 Fax: 212-937-1956 mstoffel@mstoffel.com

| To: Guido Banholzer | From: Marco Stoffel |
|---|---|
| Fax: 297 27 00 | Date: 3/26/04 |
| Phone: | Pages: 7 |
| Re: Maytown/Plympton | Cc: |

Dear Guido:

Please arrange for payment of the invoices attached hereto.

Thank you,

[Signature]

---

Susanna Bunzel-Harris, a professional translator of German into English, has translated the attached document under contract to 1-800-Translate, an American Translators Association (ATA) corporate membership company. We have examined the document and have found it to be a complete and accurate translation of the original provided to us.

[Signature]
Charlie Hoag, Project Manager

State of New York, County of New York
Sworn to me before me this 17 day of Dec. 2007

[Signature]
Fei-Xue Qian, Notary Public

Fei-Xue Qian
No. 01QI6057916
Qualified in New York County
Commission Expires April 23, 20 11

# P.B. PARTNERS & CO.

Registered in Edinburgh, No. 1971

Correspondence Address:
23 Bullscroft Road, Edgware
Middlesex HA8 8RN

Telephone  +44 171 414 0405
Facsimile   +44 171 930 7444

Plympton Universal S.A.
Road Town, Pasca Estate
Tortola, BVI

April 6, 2004

**Invoice for Real Estate Advisory Fees re USA**

| | | |
|---|---|---|
| Fees 1st Semester 2004 | USD | 145'000.00 |
| Cash reimbursements | USD | 4'200.00 |
| Balance in our favour | USD | 149'200.00 |

Please transfer to our account with Lloyds Bank, Wimbledon, account no. 11129589

£ 125907 — à 1,1850

*bal £64.04*

Registered Office · 60 Lothian Road, Festival Square, Edinburgh EH3 9WJ

03/26/2004  00:51    212-937-1956    DR STOEFEL    PAGE  03

# P.B. PARTNERS & CO.

Registered in Edinburgh. No. 1971

Correspondence Address:
23 Bullcroft Road, Edgware
Middlesex HA8 8RN

Telephone  +44 171 414 0403
Facsimile   +44 171 930 7444

Maytown Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

April 6, 2004

**Invoice for Real Estate Advisory Fees re USA**

| | |
|---|---|
| Fees 1st Semester 2004 | USD 145'000.00 |
| Cash reimbursements | USD   4'200.00 |
| | ------------------ |
| Balance in our favour | USD 149'200.00 |
| | ------------------ |

*a' 1.1840 = EUR  125'907,—*

Please transfer to our account with Lloyds Bank, Wimbledon, account no. 11129589

Registered Office - 60 Lothian Road, Festival Square, Edinburgh EH3 9WJ

03/26/2004  00:51    212-937-1956            DR STOFFEL                    PAGE  04

## ITC INTERNATIONAL TRADERS CORPORATION & CO

6 Babmaec Street, Picadilly, London SW1Y 6HD   Tel: 0171 321 2577, Fax: 0171 287 0637

Plympton Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

April 16, 2004

**Investment Consulting**

For our services rendered in the 1st Semester of 2004:

| | | |
|---|---|---|
| Fees | USD | 82'500.00 |
| Cash reimbursements | USD | 3'500.00 |
| | | ------------- |
| Balance in our favour | USD | 86'000.00 |
| | | ------------- |

a` 1.1850 = € 72'574.—

Please transfer to our account with Lloyds Bank, Wimbledon, account no. 11032666

Registered Office - 50 Lothian Road, Festival Square, Edinburgh EH3 9WJ - Registration No. 1865

VAT No. GB 606 1185 67

## ITC INTERNATIONAL TRADERS CORPORATION & CO

6 Babmaze Street, Picadilly, London SW1Y 6HD   Tel: 0171 321 2577, Fax: 0171 287 0637

Maytown Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

April 16, 2004

**Investment Consulting**

For our services rendered in the 1st Semester of 2004:

| | | |
|---|---|---|
| Fees | USD | 82'500.00 |
| Cash reimbursements | USD | 3'500.00 |
| | | |
| Balance in our favour | USD | 86'000.00 |

a` 1.1870 = € 72'474.—

Please transfer to our account with Lloyds Bank, Wimbledon, account no.11032666

Registered Office - 50 Lothian Road, Festival Square, Edinburgh EH3 9WJ - Registration No. 1865
VAT No. GB 606 1185 67

03/26/2004  08:51     212-937-1956          DR STOFFEL               PAGE  06

# —— INTERCONSULTANTS & ASSOCIATES ——

Suite 205 • Moghul House • 57 Grosvenor Street • Mayfair • London WIX 3JA
Tel. +20 7930 7662 • Fax: +20 7287 5670

Maytown Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

April 12, 2004

**INVOICE**

Consulting services rendered
in the period of 1.1. – 30.6.2004:

| | | |
|---|---|---|
| Fees | EUR | 58'000.00 |
| Cash reimbursements | EUR | 3'200.00 |
| | | ------------- |
| Balance in our favour | EUR | 61'200.00 |
| | | ------------- |

Please transfer to our account with Lloyds Bank, Wimbledon, account no.309966

Registered in Edinburgh No. 3407  •  Registered Office: 247 West George Street • Glasgow
VAT-Number: 630 7736 35

# INTERCONSULTANTS & ASSOCIATES

Suite 205 · Moghul House · 57 Grosvenor Street · Mayfair · London W1K 3JA
Tel. +20 7930 7662 · Fax: +20 7287 5679

Plympton Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

April 12, 2004

**INVOICE**

Consulting services rendered
in the period of 1.1. – 30.6.2004:

| | | |
|---|---|---|
| Fees | EUR | 58'000.00 |
| Cash reimbursements | EUR | 3'200.00 |
| Balance in our favour | EUR | 61'200.00 |

Please transfer to our account with Lloyds Bank, Wimbledon, account no.309966

Registered in Edinburgh No. 7403 · Registered Office: 247 West George Street · Glasgow
VAT-Number: 650 7736 35


Lloyds TSB

12/04 9966

P B PARTNERS AND CO
C/O ORCONSULT SA
NENOISTRASSE 7, POSTFACH
CH-8026 ZURICH
SWITZERLAND

**Phone number**
0845 072 3333

**Fax number**
01245 704705

**Answerphone number**

**Account number**
86028857

**Sort code**
30-99-66

Branch name
ST GEORGE'S ROAD WIMBLEDON (309966)

**Account Details**
CURRENT ACCOUNT
EURO

your **account statement**
P B PARTNERS AND CO

**BIC**
LOYDGB21070

**IBAN**
GB79 LOYD 3099 6686 0288 57

30 APR 2004                         X

Sheet no.    4

A value date does not indicate final payment of cheques/drafts etc.

| Date  Your reference  Narrative | Our reference | Value Date | Debits/Credits  A minus sign indicates a debit | Balance  Overdrawn balances marked D | |
|---|---|---|---|---|---|
| 2004 FORWARD | | | | 2144.55 | x |
| 13APR H/YEAR MAIN FEE | FT68020784261 | 13APR04 | 18.41- | 2126.14 | x |
| 23APR | FT63266355251 | | | | |
| O/O MAYTOWN UNIVERSAL SA | | 23APR04 | 125907.00 | 128033.14 | x |
| 26APR CCA675070 | FT68294784251 | | | | |
| O/O PLUMPTON UNIVERSAL SA | | 26APR04 | 125907.00 | 253940.14 | x |
| 27APR CCA675129 | FT68321182251 | | | | |
| TFR TO ALBE ASSOCIATES REF PLUMPTO | | 27APR04 | 124648.00- ✓ | | |
| 27APR CCA675128 | FT68321170251 | | | | |
| TFR TO ALBE ASSOCIATES REF MAYTOWN | | 27APR04 | 124648.00- ✓ | 4644.14 | x |
| 30APR VALUE DATE ADJUSTED BALANCE | | | | 4644.14 | x |

The items and balance shown on this statement should be verified and the Bank notified promptly of any discrepancy.
Details of rates and calculation of any interest charged are available on request.
The Bank is not liable for loss or delay caused directly or indirectly by industrial action or by circumstances beyond its control.

Lloyds TSB Bank plc, 25 Gresham Street, London, EC2V 7HN. Lloyds TSB Scotland plc, Henry Duncan House, 120 George Street, Edinburgh, EH2 4LH.

```
74 WED 14:46 FAX 0121 625 5826        CCA ACCOUNTS                      @012
R 001 033100          ACCOUNT STATEMENT ENQUIRY
                      Entry date order from 31 MAR 2004          AEDS007
5026668          ITC INT TRADERS CORP CURRENT ACCOUNT      EUR
--------------------------------------------------------------------------
ENTRY  OUR REF ------- THEIR REF -------  VALUE ---------------- AMOUNT  F

  26 APR 2004   Intermediate Ledger Balance                    80,222.57

      FT68294970251     CCA675067        040426 PLYMTON         12,759.80-
  27 APR 2004  B/f Ledger Balance                              72,574.00
      FT68321105251     CCA675125 TFR TO  040427 HAYTOWN       140,036.77
      FT68321130251     CCA675124 TFR TO  040427 PLYMPTON       71,849.00-
  05 MAY 2004  B/f Ledger Balance                               71,849.00-
                        INWARD CREDIT                            3,661.23-
  05 MAY 2004  C/f Ledger Balance         040505               113,189.48
                                                               109,528.25


    Int accrued  DR 0.00          OPTIONS:    A  Customer   D  ISOG header int
                 CR 0.00                      B  Account    E  Value stmt
    Last update  05 MAY 2004 ISOG ref        C  Interest   F  Up (balance)
-------------------------------------------------------------  ENTER CHOICE:
  05 MAY 2004   14:30:59   USER-ID           TERMID ACJU        PAGE  01 OF 01
ACTION
8402 No more details
```

```
WED 14:40 FAX 0121 626 6626        CCA  ACCOUNTS                    @011
          001 033100        ACCOUNT STATEMENT ENQUIRY                    AEDB007
    026668              Entry date order from 31 MAR 2004
                     ITC INT TRADERS CORP CURRENT ACCOUNT          EUR

ENTRY   OUR REF -------- THEIR REF --------   VALUE -------------- AMOUNT  F
  23 AP                                                      52,538.49
                                                040423        2,100.00-
                                                040423        2,162.33-
                                                040423        2,401.39-
  26 APR  FT68266326251    CCA675015 HAYTOWN    040423       38,184.30-
                                                040423       72,574.00
                                                             80,264.47
  26 APR                                        040426           10.00-
                                                040426           31.90-
                                                             80,222.57
    Int ac                                   A:  Customer   D  ISOG header int
              CR 0.00                         B:  Account    E  Value stmt
    Last update  05 MAY 2004 ISOG ref         C:  Interest   F  Up(balance)
                                                             ENTER CHOICE:
---------------------------------------------------------------------
05 MAY 2004   14:30:51  USER-ID          TERMID ACJU          PAGE  01 OF 01
ACTION
8403 Press enter for next page
```

 Lloyds TSB

**Phone number**
0845 072 3333

**Fax number**
01245 704705

**Answerphone number**

12/04 9966
INTERCONSULTANTS AND ASSOCIATES
C/O ORCONSULT S.A
HENGISTRASSE 7,
POSTFACH CH-8026
ZURICH SWITZERLAND

**Account number**
86028849

**Sort code**
30-99-66

**Branch name**
ST GEORGE'S ROAD WIMBLEDON (309966)

**Account Details**
CURRENT ACCOUNT
EURO

## your **account statement**
INTERCONSULTANTS AND ASSOCIATES

**BIC**
LOYDGB21070

**IBAN**
GB04 LOYD 3099 6686 0288 49

14 MAY 2004                    X

Sheet no.   9

A value date does not indicate final payment of cheques/drafts etc.

| Date  Your reference<br>Narrative | Our reference | Value Date | Debits/Credits<br>A minus sign indicates a debit | Balance<br>Overdrawn Balances marked D |
|---|---|---|---|---|
| 2004 FORWARD | | | | 43636.39 |
| 05MAY | | | | |
| CHARGES | | 05MAY04 | 37.49- | |
| 05MAY | | | | |
| | | 05MAY04 | 15000.00- | 33598.90 |
| 11MAY CCA675581 | FT68573010251 | | | |
| O/O MAYTOWN UNIVERSAL SA | | 11MAY04 | 61200.00 | 94798.90 |
| 12MAY CCA675662 | FT68605487251 | | | |
| TFR TO ALBE ASSOCIATES | | 12MAY04 | 60588.00- | 34210.90 |
| 14MAY VALUE DATE ADJUSTED BALANCE | | | | 34210.90 |

The items and balance shown on this statement should be verified and the Bank notified promptly of any discrepancy.
Details of rates and calculation of any interest charged are available on request.
The Bank is not liable for loss or delay caused directly or indirectly by industrial action or by circumstances beyond its control.

Lloyds TSB Bank plc, 25 Gresham Street, London, EC2V 7HN.  Lloyds TSB Scotland plc, Henry Duncan House, 120 George Street, Edinburgh, EH2 4LH.



## Lloyds TSB

12/04 9966
INTERCONSULTANTS AND ASSOCIATES
C/O ORCONSULT S.A
WENGISTRASSE 7,
POSTFACH CH-8026
ZURICH SWITZERLAND

Phone number
0845 072 3333

Fax number
01245 704705

Answerphone number

Account number
86028849

Sort code
30-99-66

**Branch name**
ST GEORGES ROAD WIMBLEDON (309966)

## your **account statement**
INTERCONSULTANTS AND ASSOCIATES

Account Details
CURRENT ACCOUNT
EURO

BIC
LOYDGB21070

IBAN
GB04 LOYD 3099 6686 0288 49

30 APR 2004                    X

Sheet no.   8

A value date does not indicate final payment of cheques/drafts etc.

| Date  Your reference Narrative | Our reference | Value Date | Debits/Credits A minus sign indicates a debit | Balance Overdrawn Balances marked D | |
|---|---|---|---|---|---|
| 2004 FORWARD | | | | 48024.39 | X |
| 26APR CCA675068 | FT68294898251 | 26APR04 | 61200.00 | 109224.39 | X |
| O/D PLYMPTON UNIVERSAL | | | | | |
| 27APR CCA675150 | FT68321192251 | 27APR04 | 60588.00- | 48636.39 | X |
| TFRE TO ALBE ASSOC REF PLYMPTON/CO | | | | | |
| 30APR VALUE DATE ADJUSTED BALANCE | | | | 48636.39 | X |

The items and balance shown on this statement should be verified and the Bank notified promptly of any discrepancy.
Details of rates and calculation of any interest charged are available on request.
The Bank is not liable for loss or delay caused directly or indirectly by industrial action or by circumstances beyond its control.

Lloyds TSB Bank plc, 25 Gresham Street, London. EC2V 7HN. Lloyds TSB Scotland plc, Henry Duncan House, 120 George Street, Edinburgh, EH2 4LH.

# EXHIBIT 22

06/25/2006  12:43    2129371956              STOFFEL                    PAGE  01/07

# Dr. Marco Stoffel

### 650 Madison Avenue, 18th Floor New York, NY 10022
### Tel: 212-937-1955 Fax: 212-937-1956 stoffelusa@aol.com

Guido Banholzer
Orconsult SA

7 pages

6/25/06

**Maytown/Plympton**

Lieber Guido

In der Beilage leite ich Dir Rechnungen fuer das erste Semester 2006 zur bezahlung weiter.

Thanks

 1-800-Translate

865 United Nations Plaza, New York, NY 10017-1809
1-800-872-6752 Fax: 1-888-872-6752  info@1-800-translate.com

Dr. Marco Stoffel
650 Madison Ave., 18th Floor New York, NY 10022
212-937-1955 Fax: 212-937-1956 stoffelusa@aol.com

Guido Banholzer
Orconsult SA

7 pages

6/25/06

**Maytown/Plympton**

Dear Guido:

I am herewith forwarding to you the invoices of the first semester 2006 for payment.

Thanks

[Signature]

---

Susanna Bunzel-Harris, a professional translator of German into English, has translated the attached document under contract to 1-800-Translate, an American Translators Association (ATA) corporate membership company. We have examined the document and have found it to be a complete and accurate translation of the original provided to us.

Charlie Hoag, Project Manager

State of New York, County of New York
Sworn to me before me this /7 day of Dec. 2007

Fei-Xue Qian, Notary Public

Fei-Xue Qian
No. 01QI6057818
Qualified in New York County
Commission Expires April 23, 20 11

# —— INTERCONSULTANTS & ASSOCIATES ——

Suite 205 · Moghul House · 57 Grosvenor Street · Mayfair · London WIK 3JA
Tel. +20 7930 7662 · Fax: +20 7287 5679

Maytown Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

June 26, 2006

**INVOICE**    # 109/06

Consulting services rendered
in the period of 1.1. – 30.6.2006:

| | | |
|---|---|---|
| Fees | EUR | 89,000.00 |
| Cash reimbursements | EUR | 6,400.00 |
| Balance in our favour | EUR | 95,400.00 |

Please transfer to our account with Lloyds Bank, Wimbledon, account no.309966

Registered in Edinburgh N·. 2483 · Registered Office 247 West George Street · Glasgow
VAT-Number: 630 7736 35

06/25/2006  12:43  2129371956              STOFFEL                    PAGE  03/07

## ─── INTERCONSULTANTS & ASSOCIATES ───

Suite 205 · Maghul House · 57 Grosvenor Street · Mayfair · London W1K 3JA
Tel. +20 7930 7662 · Fax: +20 7287 5679

Plympton Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

June 26, 2006

**INVOICE**    # 110/06

Consulting services rendered
in the period of 1.1. – 30.6.2006:

| | | |
|---|---|---|
| Fees | EUR | 89,000.00 |
| Cash reimbursements | EUR | 6,400.00 |
| | | ------------------- |
| Balance in our favour | EUR | 95,400.00 |
| | | ------------------- |

Please transfer to our account with Lloyds Bank; Wimbledon, account no.309966

Registered in Edinburgh No. 2603 · Registered Office: 242 West George Street · Glasgow
VAT-Number: 630 7736 35

# P.B. PARTNERS & CO.

Registered in Edinburgh, No. 1971

Correspondance Address:
23 Butscroft Road, Edgware
Middlesex HA8 8RN

Telephone  +44 171 414 0403
Facsimile  +44 171 930 7444

Plympton Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

June 25, 2006

**Invoice for Real Estate Advisory Fees re USA**

| | |
|---|---|
| Fees 1st Semester 2006 | Euro 181'000.00 |
| Cash reimbursements | Euro    7'500.00 |
| | |
| Balance in our favour | Euro 188'500.00 |

Please transfer to our account with Lloyds Bank, Wimbledon, account no. 11129589

Registered Office - 50 Lothian Road, Festival Square, Edinburgh EH3 9WJ

06/25/2006  12:43    2129371956              STOFFEL                    PAGE  05/07

# P.B. PARTNERS & CO.

Registered in Edinburgh, No. 1971

Correspondence Address:
23 Bullscroft Road, Edgware
Middlesex HA8 8RN

Telephone  +44 171 414 0403
Facsimile   +44 171 930 7444

Maytown Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

June 25, 2006

**Invoice for Real Estate Advisory Fees re USA**

| | |
|---|---|
| Fees 1st Semester 2006 | Euro 181'000.00 |
| Cash reimbursements | Euro    7'500.00 |
| | ----------------------- |
| Balance in our favour | Euro 188'500.00 |
| | ----------------------- |

Please transfer to our account with Lloyds Bank, Wimbledon, account no. 11129589

Registered Office - 50 Lothian Road, Festival Square, Edinburgh EH3 9WJ

## ITC INTERNATIONAL TRADERS CORPORATION & CO

6 Babmaes Street, Piccadilly, London SW1Y 6HD   Tel: 0171 321 2577, Fax: 0171 287 0637

Maytown Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

June 25, 2006

**Investment Consulting**

For our services rendered in the 1st Semester of 2006:

| | | |
|---|---|---|
| Fees | EUR | 140'000.00 |
| Cash reimbursements | EUR | 5,500.00 |
| | | |
| Balance in our favour | EUR | 145,500.00 |

Please transfer to our account with Lloyds Bank, Wimbledon, account no.86026668

Registered Office - 50 Lothian Road, Festival Square, Edinburgh EH3 9WJ - Registration No. 1865
VAT No. GB 606 1185 67

# ITC INTERNATIONAL TRADERS CORPORATION & CO

5 Babmaes Street, Picadilly, London SW1Y 6HD   Tel: 0171 321 2577, Fax: 0171 287 0637

Plympton Universal S.A.
Road Town, Pasea Estate
Tortola, BVI

June 25, 2006

**Investment Consulting**

For our services rendered in the 1st Semester of 2006:

| | | |
|---|---|---|
| Fees | EUR | 140'000.00 |
| Cash reimbursements | EUR | 5,500.00 |
| | | ----------------- |
| Balance in our favour | EUR | 145,500.00 |
| | | ----------------- |

Please transfer to our account with Lloyds Bank, Wimbledon, account no.86026668

Registered Office - 50 Lothian Road, Festival Square, Edinburgh EH3 9WJ - Registration No. 1865

VAT No. GB 606 1185 67

 **Lloyds TSB**

11/10 9966

P B PARTNERS AND CO
C/O ORCONSULT SA
HENGISTRASSE 7, POSTFACH
CH-8026 ZURICH
SWITZERLAND

Phone number
**0845 3 000 000**

Fax number
**01245 704705**

Answerphone number

Account number
**86028857**

Sort code
**30-99-66**

Account Details
**CURRENT ACCOUNT
EURO**

Branch name
ST GEORGE'S ROAD WIMBLEDON (309966)

## your **account statement**
P B PARTNERS AND CO

BIC
**LOYDGB21070**

IBAN
**GB79 LOYD 3099 6686 0288 57**

15 SEP 2006                              X

Sheet no.    17

A value date does not indicate final payment of cheques/drafts etc.

| Date Your reference Narrative | Our reference | Value Date | Debits/Credits A minus sign indicates a debit | Balance Overdrawn Balances marked D |
|---|---|---|---|---|
| 2006 FORWARD | | | | 6164.90 X |
| 15SEP | CCB255224 | | | |
| TFR FR MAYTOWN UNIVERSAL SA | | 15SEP06 | 188500.00 | |
| 15SEP | CCB255223 | | | |
| TFR FR PLYMPTON UNIVERSAL SA | | 15SEP06 | 188500.00 | 383164.90 X |
| 15SEP VALUE DATE ADJUSTED BALANCE | | | | 383164.90 X |

The items and balance shown on this statement should be verified and the Bank notified promptly of any discrepancy.
Details of rates and calculation of any interest charged are available on request.
The Bank is not liable for loss or delay caused directly or indirectly by industrial action or by circumstances beyond its control.

Lloyds TSB Bank plc, 25 Gresham Street, London, EC2V 7HN. Lloyds TSB Scotland plc, Henry Duncan House, 120 George Street, Edinburgh, EH2 4LH.

# Lloyds TSB

11/10 9966
INTERCONSULTANTS AND ASSOCIATES
C/O ORCONSULT S.A
HENGISTRASSE 7,
POSTFACH CH-8026
ZURICH SWITZERLAND

**Phone number**
0845 3 000 000

**Fax number**
01245 704705

**Answerphone number**

**Account number**
86028849

**Sort code**
30-99-66

**Branch name**
ST GEORGE'S ROAD WIMBLEDON (309966)

**Account Details**
CURRENT ACCOUNT
EURO

## your **account statement**
INTERCONSULTANTS AND ASSOCIATES

**BIC**
LOYDGB21070

**IBAN**
GB04 LOYD 3099 6686 0288 49

15 SEP 2006                              X

Sheet no.     17

A value date does not indicate final payment of cheques/drafts etc.

| Date | Your reference / Narrative | Our reference | Value Date | Debits/Credits A minus sign indicates a debit | Balance Overdrawn Balances marked D |
|------|---------------------------|---------------|------------|-----------------------------------------------|--------------------------------------|
| 2006 FORWARD 05SEP | | | | | 105009.28 | x |
| 05SEP. | | | 05SEP06 | 2310.00- | |
| 05SEP. | | | 05SEP06 | 30650.00- | 72049.28 | x |
| 15SEP | TFR FR MAYTOWN UNIVERSAL SA | CCB255222 | 15SEP06 | 95400.00 | |
| 15SEP | TFR FR PLYMPTON UNIVERSAL SA | CCB255221 | 15SEP06 | 95400.00 | 262849.28 | x |
| 15SEP VALUE DATE ADJUSTED BALANCE | | | | | 262849.28 | x |

The items and balance shown on this statement should be verified and the Bank notified promptly of any discrepancy.
Details of rates and calculation of any interest charged are available on request.
The Bank is not liable for loss or delay caused directly or indirectly by industrial action or by circumstances beyond its control.

Lloyds TSB Bank plc, 25 Gresham Street, London, EC2V 7HN. Lloyds TSB Scotland plc, Henry Duncan House, 120 George Street, Edinburgh, EH2 4LH.

 **Lloyds TSB**

11/10 9966
ITC INTERNATIONAL TRADERS
CORPORATION + CO
C/O ORCONSULT SA
HENGISTRASSE 7, POSTFACH
CH 8026 ZURICH   SWITZERLAND

**Phone number**
**0845 3 000 000**

**Fax number**
**01245 704705**

Answerphone number

**Account number**
**86026668**

**Sort code**
**30-99-66**

**Account Details**
**CURRENT ACCOUNT**
**EURO**

**Branch name**
ST GEORGE'S ROAD WIMBLEDON (309966)

**your account statement**
ITC INTERNATIONAL TRADERS
CORPORATION AND CO

**BIC**
**LOYDGB21070**

**IBAN**
**GB12 LOYD 3099 6686 0266 68**

15 SEP 2006                X

Sheet no.   19

A value date does not indicate final payment of cheques/drafts etc.

| Date Your reference Narrative | Our reference | Value Date | Debits/Credits A minus sign indicates a debit | Balance Overdrawn Balances marked D | |
|---|---|---|---|---|---|
| 2006 FORWARD | | | | 7556.85 | X |
| 11SEP | FT84219153291 | 11SEP06 | 10000.00 | 17556.85 | X |
| 15SEP | CCB255220 | | | | |
| TFR FROM PLYMPTON UNIVERSAL SA | | 15SEP06 | 145500.00 | | |
| 15SEP | CCB255228 | | | | |
| TFR FROM MAYTOWN UNIVERSAL SA | | 15SEP06 | 145500.00 | 308556.85 | X |
| 15SEP VALUE DATE ADJUSTED BALANCE | | | | 308556.85 | X |

The items and balance shown on this statement should be verified and the Bank notified promptly of any discrepancy.
Details of rates and calculation of any interest charged are available on request.
The Bank is not liable for loss or delay caused directly or indirectly by industrial action or by circumstances beyond its control.

Lloyds TSB Bank plc, 25 Gresham Street, London, EC2V 7HN. Lloyds TSB Scotland plc, Henry Duncan House, 120 George Street, Edinburgh, EH2 4LH.

# EXHIBIT 23

Page 1

MARCO STOFFEL

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| APPLICATION OF VISTRA TRUST | : | Index Number |
| COMPANY (JERSEY)LIMITED & | : | M19-139 |
| WILLIAM TACON, RECEIVER AND | : | |
| MANAGER FOR AN ORDER OF I | : | |
| JUDICIAL ASSISTANCE | : | |
| PURSUANT TO 28 U.S.C., | : | |
| SECTION 1782 | : | |
| | : | |

----
Thursday, December 20, 2007
----

Pretrial Video Examination of MARCO

STOFFEL, held in the offices of Chadbourne

& Parke, LLP, 30 Rockefeller Plaza, New

York, New York, commencing at 9:13 a.m.,

on the above date, before Mickey Dinter,

Certified Court Reporter, Registered

Professional Reporter and Notary Public for

the State of New York.

----
MERRILL LEGAL SOLUTIONS
25 West 45th Street
Suite 900
New York, New York 10036
212.557.7400
----

# MARCO STOFFEL

## Page 2

1    MARCO STOFFEL
2
APPEARANCES:
3
4
CHADBOURNE & PARKE, LLP.
5    Attorneys for Applicants William Tacon
and Vistra Trust Company Limited
6    30 Rockefeller Plaza
New York, New York 10112
7    BY: SCOTT S. BALBER, ESQUIRE
JONATHAN C. CROSS, ESQUIRE
8       ROBERT GROSSMAN, ESQUIRE
9
MORRISON & FOERSTER, LLP
10   Attorneys for Dr. Marco Stoffel
1290 Avenue of the Americas
11   New York, New York 10104-0050
BY: THOMAS M. MUELLER, ESQUIRE
12
13   ALSO PRESENT:
14   David Brownbill
Kelly Lawrence
15   Nigel Sanders
16
VIDEOGRAPHER:  Doug Huebner
17
18
19
20
21
22
23
24
25

## Page 3

1       MARCO STOFFEL
2       INDEX
3
WITNESS:  MARCO STOFFEL
4
PAGE LINE
5   BY MR. BALBER        9   10
6
EXHIBITS
7
8   DESCRIPTION        PAGE LINE
Exhibit 46, a document    12   17
9   entitled Memorandum and
Articles of Association of
10   Albe Associated Ltd.
11   Exhibit 47, a Confirmation   24   8
12   Exhibit 48, a letter dated   27   5
December 6, 2006 from Dr.
13   Stoffel to Dear Sirs of
Albe Associates SA
14
Exhibit 49, a letter dated   27   9
15   December 28, 2006, from Dr.
Stoffel to Dear Sirs of
16   Bluecolt Securities Inc.,
Panama
17
Exhibit 50, a Table of   46   3
18   Contents
19   Exhibit 51, handwritten   67   17
amounts of money on a piece
20   of paper
21   Exhibit 52, a memo dated   81   22
July 10, 2006
22
Exhibit 53, Minutes of   95   19
23   Annual Meeting of
Logany/Colleen/Alsam Trusts
24   for Approval for Business
Year 2005
25

## Page 4

1       MARCO STOFFEL
2   Exhibit 54, a document   161   12
entitled Agreement on the
3   Takeover and Administration
of a Foundation
4
Exhibit 55, a four-page   164   10
5   document from Mr. Frick
6   Exhibit 56, a letter dated   166   17
June 29, 2007, from Mr.
7   Frick to Dr. Wanger
Exhibit 57, a e-mail dated   178   12
8   July 19, 2007, from Dr.
Stoffel to Dear Colleague
9   Schatz
10
Exhibit 58, invoices   184   7
11
Exhibit 59, invoices   185   6
12
Exhibit 60, an invoice   185   21
13
Exhibit 61, invoices   186   10
14
Exhibit 62, loan number 1   212   5
15   from ATC to Dr. Stoffel
16   Exhibit 63, a letter dated   217   12
August 27, 2002, from Dr.
17   Stoffel to Professor
Pletscher
18
Exhibit 64, a letter dated   221   12
19   December 18, 1998, from
Angela Blickle to Professor
20   Pletscher
21   Exhibit 65, a Bank Leu   237   7
account opening document
22   for Albe Associates,
Limited
23
Exhibit 66, a VP Bank Fiduz   238   22
24   account opening form for
Bluecolt Securities Corp
25

## Page 5

1       MARCO STOFFEL
2
3   Exhibit 67, a letter from   241   20
Dr. Stoffel to Sue Stoffel
4
Exhibit 68, a fax dated   254   7
5   March 26, 2004, from Dr.
Stoffel to Guido Banholzer
6   with attached invoices
7   Exhibit 69, a fax dated   259   18
January 22, 2002, from Dr.
8   Stoffel to Mr. Banholzer
9   Exhibit 70, a fax dated May   264   12
15, 2002, from Dr. Stoffel
10   to Mr. Banholzer
11   Exhibit 71, a fax dated   268   15
June 25, 2004, from Dr.
12   Stoffel to Mr. Banholzer
with attached invoices
13
Exhibit 72, a fax dated   275   5
14   February 13, 2004, from Dr.
Stoffel to Mr. Banholzer
15   with attached transfers
16   Exhibit 73, a fax dated   285   15
August 13, 2001, from Dr.
17   Stoffel to Mr. Banholzer
and Ms. Pfenninger
18
Exhibit 74, a fax dated   287   24
19   December 11, 2003, from Mr.
Glew to Dr. Stoffel
20
Exhibit 75, a fax dated May   292   20
21   7, 2001, from Dr. Stoffel to
Mr. Banholzer
22
Exhibit 76, a letter dated   296   12
23   December 18, 2006, from Dr.
Stoffel to Mr. Banholzer
24   with attached transfer of
monies
25

2  (Pages 2 to 5)

MERRILL LEGAL SOLUTIONS
(800) 325-3376    www.MerrillCorp.com
8cdd86a3-ef56-49f9-a546-83913f6a0985

MARCO STOFFEL

Page 254

MARCO STOFFEL

02:13:04  2  stick to what I said ?
02:13:05  3      Q. Absolutely right.
02:13:07  4      A. Good.
02:13:08  5      Q. I'm really sorry.  Let's do
02:13:09  6  something different.
02:13:20  7          (Exhibit 68, a fax dated
      8      March 26, 2004, from Dr. Stoffel to
      9      Guido Banholzer with attached
02:13:24 10      invoices, marked for identification.)
02:13:25 11  BY MR. BALBER:
02:13:25 12      Q. Dr. Stoffel, I have placed in front
02:13:35 13  of you Exhibit 68.  Why don't you have
02:13:39 14  Exhibit 58 handy as well.
02:13:40 15      A. 58 or 68?
02:13:42 16      Q. Well, you got 68 in front of you.
02:13:44 17  Let's pull out 58 so we have it all nice
02:13:47 18  and handy, okay?  Here is 58.
02:13:51 19          Now, first page of Exhibit
02:13:54 20  68, Dr. Stoffel, is a March 26, 2004, fax
02:13:58 21  from you to Guido Banholzer, yes?
02:14:05 22      A. It says so, yes.
02:14:06 23      Q. That's your signature, right?
02:14:07 24      A. That's my signature.
02:14:08 25      Q. That's the fax line, your fax line

Page 255

MARCO STOFFEL

02:14:10  2  on top?
02:14:11  3      A. It's my fax number.
02:14:17  4      Q. Okay.  And then the next page of
02:14:18  5  the translation, and then what was faxed,
02:14:21  6  Dr. Stoffel, by you to Guido Banholzer on
02:14:24  7  March 26, 2004, were, lo and be hold,
02:14:30  8  Exhibit 58, right?
02:14:32  9      A. I don't know what it says.  It
02:14:36 10  says, "Please arrange for payment of the
02:14:37 11  invoices attached."  That's all it says.
02:14:40 12      Q. The attached invoices are the
02:14:42 13  $149,000 payment invoiced for PB Partners
02:14:46 14  and Co., yes?
02:14:48 15      A. That's what you say.  I don't know
02:14:49 16  what was attached.
02:14:49 17      Q. It's got the same fax line on top,
02:14:51 18  Dr. Stoffel.
02:14:52 19      A. I don't know what was attached here.
02:14:54 20      Q. I'm telling you what was attached.
02:14:55 21      A. You are telling me.
02:14:56 22      Q. Are you denying that?  Are you
02:14:58 23  denying that --
02:14:59 24      A. I under oath.
02:15:00 25      Q. Are you denying, Dr. Stoffel, that

Page 256

MARCO STOFFEL

02:15:03  2  you faxed the very same invoices that you
02:15:07  3  claimed when they were given to you in 58
02:15:09  4  were fake to Guido Banholzer and demanded
02:15:11  5  payment?
02:15:11  6      A. I say I don't know what the
02:15:13  7  enclosures to my fax were of March 26, '04.
02:15:18  8      Q. You don't know?
02:15:19  9      A. That's all I'm saying.
02:15:20 10      Q. You still don't know whether you
02:15:22 11  sent these?
02:15:22 12      A. No.
02:15:23 13      Q. What invoices did you ask Guido
02:15:27 14  Banholzer to pay?
02:15:28 15      A. No clue.  We, then, ask Orconsult
      16  what it was or Banholzer.
02:15:30 17      Q. I already asked Orconsult.
02:15:32 18  Orconsult already told me.
02:15:32 19      A. Fine.
02:15:32 20      Q. So, I wouldn't waste my time with
02:15:34 21  that.  Let's look at the last few pages.
      22      A. What pages?
02:15:38 23      Q. After we get through the invoices
02:15:40 24  you told me were fake and you never sent.
02:15:42 25  At the end of that, there is a Lloyd's

Page 257

MARCO STOFFEL

02:15:44  2  Bank statement, do you see that?
02:15:47  3      A. Leu or Lloyd's?
02:15:48  4      Q. Lloyd's.
02:15:49  5      A. I see that, yeah.
02:15:51  6      Q. That reflects a $124,000 debit from
02:16:00  7  Plympton to Albe, I'm sorry, from the
02:16:02  8  Scottish partnership to Plympton, right,
02:16:04  9  and then Plympton to Albe Associates?
02:16:06 10      A. I have never seen this.  It's an
02:16:09 11  account of P.B. Partners at Lloyd's,
02:16:13 12  right?  Is that the one you are talking
02:16:15 13  about?  What is your question?
02:16:18 14          I have nothing to do with
02:16:19 15  this statement.  I have never seen this
02:16:20 16  document.
02:16:20 17      Q. You never got this money?
      18      A. No.
02:16:22 19      Q. Are you sure about that?
02:16:23 20      A. No.  What is the question?  I see a
02:16:26 21  Lloyd's account.
02:16:27 22      Q. My question is very simple, Dr.
02:16:29 23  Stoffel:  Did you receive payment from
02:16:31 24  Orconsult for the monies referenced in the
02:16:33 25  invoices attached as Exhibit 68?

65 (Pages 254 to 257)

8cdd86a3-ef56-49f9-a546-83913f6a0985

MARCO STOFFEL

Page 258

MARCO STOFFEL

```
         1
02:16:38 2    A. What invoices?
02:16:41 3        I see a bank account
02:16:42 4  statement that you just giving me of P.B.
02:16:48 5  Partners at Lloyd's with an amount of
02:16:50 6  124,000 going to Albe Associates, is that
02:16:52 7  the question?
02:16:54 8    Q. Nope. I've got a better question
02:16:56 9  for you.
02:16:56 10   A. I got no money here. I send money
02:16:58 11 to Stoffel.
02:16:58 12   Q. Okay. You did not receive any
02:17:00 13 money from Orconsult in satisfaction of
02:17:04 14 the invoices which are part of Exhibit 68?
02:17:09 15   A. That is correct.
02:17:09 16   Q. Okay. And you didn't -- you deny
02:17:12 17 faxing those invoices to Guido Banholzer
02:17:14 18 and asking for payment?
02:17:15 19   A. I repeat my testimony. I do not
02:17:18 20 know what was attached to this fax.
02:17:23 21   Q. Do you deny faxing the invoices
02:17:24 22 that bear your fax number at the same date
02:17:28 23 and same time as the fax cover sheet
02:17:31 24 signed by you, do you deny sending those
02:17:33 25 to Orconsult?
```

Page 259

MARCO STOFFEL

```
         1
02:17:33 2    A. I said I don't know what the
02:17:34 3  enclosures to this fax cover sheet were.
02:17:36 4  That's all I have say. I can't say
02:17:38 5  anything more, sorry. This account
02:17:40 6  certainly was not part of this fax.
02:17:42 7  Certainly not.
02:17:44 8    Q. Okay. So your testimony is --
02:17:45 9    A. It says --
02:17:46 10   Q. You did not receive payment of
02:17:47 11 these invoices?
02:17:48 12   A. That's correct.
02:17:50 13   Q. Okay.
02:17:50 14   A. It even says so. It went to Albe.
02:17:54 15   Q. Right.
02:17:55 16       Why don't you get 59 handy,
02:18:01 17 too, if you don't mind.
02:18:05 18       (Exhibit 69, a fax dated
         19  January 22, 2002, from Dr. Stoffel to
02:18:06 20 Mr. Banholzer, marked for
02:18:07 21 identification.)
02:18:07 22 BY MR. BALBER:
02:18:07 23   Q. Dr. Stoffel, I've placed in front
02:18:17 24 of you Exhibit 69. That's also your
02:18:20 25 signature on the first page, yes?
```

Page 260

MARCO STOFFEL

```
         1
02:18:22 2    A. It is.
02:18:23 3    Q. And this is a fax from you to Guido
02:18:27 4  Banholzer on January 22nd, 2002, correct?
02:18:32 5    A. It says on the stamp, so let's hope
02:18:35 6  the stamp says when it was sent.
02:18:37 7    Q. Well, you signed the page, right?
02:18:38 8    A. Yes.
02:18:39 9    Q. And the page says date, January 22,
02:18:41 10 '02, yes?
02:18:42 11   A. Correct.
02:18:43 12   Q. And the fax line says January 22,
02:18:45 13 '02, right?
02:18:45 14   A. Yes.
02:18:46 15   Q. And it's your fax number, right, at
02:18:50 16 the top of the page?
02:18:50 17   A. Definitely.
02:18:51 18   Q. And the letter from -- the fax to
02:18:53 19 you from Guido Banholzer says, "Please
02:18:55 20 arrange for the payment of the two Maytown
02:18:56 21 and the one Plympton invoices as enclosed
02:19:00 22 herewith," right, that's what it says?
02:19:00 23   A. That's what the fax says.
02:19:01 24   Q. Right. The same fax has an invoice
02:19:04 25 from Industrial Planning and Marketing
```

Page 261

MARCO STOFFEL

```
         1
02:19:06 2  Group Limited dated January 26, 2002?
02:19:09 3    A. I don't know whether it's the same
02:19:10 4  fax. I only see the cover sheet. I don't
02:19:14 5  know what invoices of Maytown and Plympton
02:19:17 6  were included.
02:19:18 7    Q. You see the cover sheet and the fax
02:19:19 8  line on the cover sheet that you signed,
02:19:20 9  right?
02:19:20 10   A. Yes.
02:19:21 11   Q. And then you see the fax line the
02:19:24 12 same minute for the Industrial Planning
02:19:26 13 and Marketing Group invoice, right?
02:19:28 14   A. I see, I see what you're saying. I
02:19:31 15 also see a bank account that doesn't have
02:19:33 16 any fax numbers, so I don't know what is
02:19:35 17 happening here.
02:19:35 18   Q. I'm telling you what's happening
02:19:37 19 here.
02:19:37 20   A. Good.
02:19:37 21   Q. I want you to answer me truthfully.
02:19:40 22   A. It doesn't say how many pages. It
02:19:41 23 doesn't say anything. The truth is, I do
02:19:43 24 not know what the enclosures to this fax
02:19:46 25 of January 22, '02, were.
```

66 (Pages 258 to 261)

8cdd86a3-ef56-49f9-a546-83913f6a0985

MARCO STOFFEL

Page 262

MARCO STOFFEL

02:19:48  2    Q. The document that you signed, it
02:19:49  3  says that you signed it. "Please, Dear
02:19:53  4  Guido, please arrange for the payment of
02:19:54  5  the two Maytown and one Plympton invoices
02:19:57  6  as enclosed herewith," yes?
02:19:59  7    A. Absolutely. That's what it says.
02:20:00  8    Q. You had signed it, right? Okay.
02:20:01  9  And then attached with documents with the
02:20:03 10  fax line with the same minute are, one,
02:20:08 11  IPMG to Maytown Universal, January 22nd,
02:20:12 12  2002. That's what it says, right?
02:20:14 13    A. I answered the question truthfully.
02:20:17 14  I don't know what enclosures that Maytown
02:20:20 15  and Plympton invoices were.
02:20:22 16    Q. The next one, the next page is a
02:20:24 17  January 22nd, 2002, invoice, from P.B.
02:20:28 18  Partners and Co., to Maytown Universal,
02:20:31 19  same minute, for $101,000, right? That's
02:20:35 20  what it says.
02:20:36 21    A. I don't think -- I don't know
02:20:37 22  whether this was ever enclosed in this
02:20:39 23  fax. I don't know.
02:20:40 24    Q. And the next one --
02:20:40 25    A. Actually, there is handwriting of

Page 263

MARCO STOFFEL

02:20:42  2  Mr. Banholzer. I don't know what this is.
02:20:44  3    Q. And the next one is a Plympton, a
02:20:47  4  P.B. Partners and Co., invoice to Plympton
02:20:51  5  Universal dated January 22nd, 2002, also
02:20:54  6  at the same minute.
02:20:55  7    A. I'm not answering the question.
02:20:57  8  You're answering the question. I can
02:20:59  9  under oath not say that these enclosures
02:21:02 10  you say are enclosures to my fax were,
02:21:05 11  indeed, enclosures on January 22nd, '02.
02:21:07 12    Q. Do you deny it?
02:21:08 13    A. Same answer again like three times.
02:21:11 14  I do not know what was enclosed to this
02:21:14 15  fax of January 22nd, '02. That's all I
02:21:18 16  can say.
02:21:18 17    Q. Okay.
02:21:18 18    A. That's all I can say.
02:21:20 19    Q. Do you deny under oath that you
02:21:22 20  faxed these three invoices in the amounts
02:21:25 21  of $66,000, 101,000 and 101,000 to Guido
02:21:32 22  Banholzer on or about January 26, 2002,
02:21:34 23  and demanded payment of them? Can you
02:21:37 24  deny that?
02:21:37 25    A. My answer stays the same under

Page 264

MARCO STOFFEL

02:21:40  2  oath. I do not know what the enclosures
02:21:42  3  were to this fax of January 22nd, '02.
02:21:48  4    Q. Okay. So it could have been that
02:21:49  5  you faxed --
02:21:50  6    A. My answer stays the same. I do not
02:21:52  7  know what the enclosures were.
02:21:53  8    Q. Let's keep going for a little
02:21:55  9  while. Maybe one will ring a bell because
02:21:57 10  I have a lot of them.
02:22:01 11    A. Whatever you like.
02:22:04 12        (Exhibit 70, a fax dated
02:22:05 13    May 15, 2002, from Dr. Stoffel to Mr.
02:22:05 14    Banholzer, marked for identification.)
02:22:06 15  BY MR. BALBER:
02:22:19 16    Q. This is the one you testified
02:22:21 17  you've never seen as well. This is the
02:22:25 18  same one as encompassed in Exhibit 70.
02:22:27 19        MR. MUELLER: Objection to
02:22:29 20  form. Mischaracterizes his testimony.
         21  BY MR. BALBER:
02:22:34 22    Q. Do you need help there, Dr. Stoffel?
02:22:38 23    A. Yes, I do need help.
02:22:40 24    Q. I will be happy to help you. Here
02:22:46 25  you go.

Page 265

MARCO STOFFEL

02:22:53  2        Exhibit 70, that's your
02:22:57  3  signature again, right? Yes?
02:22:59  4    A. It is my signature.
02:23:00  5    Q. That's your fax number at the top
02:23:01  6  of the page, yes?
02:23:03  7    A. Correct.
02:23:03  8    Q. And this a fax from you to Guido
02:23:08  9  Banholzer dated May 15, 2002, in which you
02:23:13 10  also enclose "invoices from the company
02:23:15 11  that came up with the fundraising concept.
02:23:19 12  Invoice date for the entire year is the
02:23:21 13  very same day as last year with the
02:23:23 14  invoice being some $25,000 higher than
02:23:27 15  last time. In view of the fact the
         16  foundation saved $6 million by winning
02:23:30 17  additional sponsors, this is certainly
02:23:30 18  justified."
02:23:32 19        Enclosed is an Industrial
02:23:36 20  Planning and Marketing Group Limited
02:23:38 21  invoice dated May 15, 2002, to Maytown
02:23:42 22  Universal in the amount of $129,500,
02:23:46 23  right?
02:23:46 24    A. I don't know whether this was an
02:23:47 25  enclosure to this fax.

67  (Pages 262 to 265)

8cdd86a3-ef56-49f9-a546-83913f6a0985

MARCO STOFFEL

Page 266

MARCO STOFFEL

02:23:48 2    Q. But this one also coincidentally
02:23:51 3 was sent the same minute as the fax cover
02:23:53 4 sheet you signed, yes?
02:23:55 5    A. I don't know what the enclosure to
02:23:56 6 this fax was.
02:23:57 7    Q. But I'm telling you --
02:23:57 8    A. This must be a bill that is 25,000
02:24:01 9 higher than last time. That's what it
02:24:02 10 says.
02:24:02 11    Q. And encloses --
02:24:03 12    A. So, what do I know? 2002.
02:24:06 13    Q. Right. And it encloses a planning,
02:24:09 14 Industrial Planning Marketing Group
02:24:10 15 invoice in the amount of $129,500 to
02:24:11 16 Maytown, May 15, 2002, and $129,500 to
02:24:19 17 Plympton, May 15, 2002, right?
02:24:21 18    A. You enclosing something. I don't
02:24:24 19 know what was enclosed to the fax.
02:24:26 20    Q. Right. Does anybody -- do you know
02:24:28 21 if Guido Banholzer snuck into your
02:24:35 22 townhouse and faxed things from your fax
02:24:37 23 machine?
02:24:38 24        MR. MUELLER: Objection to
02:24:38 25 the form.

Page 267

MARCO STOFFEL

1    MARCO STOFFEL
2 BY MR. BALBER:
3    Q. Has that ever happened, to your
4 knowledge?
02:24:39 5    A. What does this have to do with the
02:24:41 6 townhouse? 650 Madison is on 59th Street
02:24:44 7 and Madison and Mr. Banholzer has been
02:24:45 8 many times in that office. What is the
9 question?
02:24:46 10    Q. Has he snuck into your fax machine
02:24:49 11 and faxed things to himself?
02:24:49 12    A. I hope not.
02:24:50 13    Q. You have never seen him do that,
02:24:52 14 right?
02:24:52 15    A. No.
02:24:53 16    Q. And then attached is, at the last
02:24:55 17 page, a Lloyd's account statement
02:24:58 18 referencing --
02:24:58 19    A. Who attached it, you? Who attached
02:25:01 20 it?
02:25:01 21    Q. Your good friends at Orconsult.
02:25:03 22    A. Oh, fine. But now you are saying
02:25:06 23 there is no fax stamp. This says there is
02:25:08 24 a fax stamp, there is no fax stamp. How
02:25:09 25 do I know what the enclosures are?

Page 268

MARCO STOFFEL

02:25:11 2    Q. But it doesn't matter because you
02:25:11 3 claim you didn't send the faxes in the
02:25:13 4 first place.
02:25:14 5    A. I never said that. I said I don't
6 know what was enclosed in the fax.
02:25:17 7    Q. You don't know whether, in fact,
02:25:18 8 Lloyd's made these transfers in the same
02:25:22 9 amounts you requested to Albe Associates?
02:25:24 10    A. No clue. It says so here, though.
02:25:26 11    Q. No idea. All right.
02:25:28 12    A. I see it here.
02:25:30 13    Q. Let's just do one or two more.
02:25:32 14 Maybe something will ring a bell.
02:25:39 15        (Exhibit 71, a fax dated
16 June 25, 2006, from Dr. Stoffel to Mr.
17 Banholzer with attached invoices,
02:25:40 18 marked for identification.)
02:25:41 19 BY MR. BALBER:
02:25:49 20    Q. If you can have 61 handy, too. I
02:25:52 21 will help you find it.
02:26:17 22        So Exhibit 71, this is,
02:26:21 23 again, signed by you, correct, Dr. Stoffel?
02:26:23 24    A. Correct.
02:26:23 25    Q. And, again, it has the 650 Madison

Page 269

MARCO STOFFEL

02:26:27 2 fax number at the top of the page, right?
02:26:29 3    A. Correct.
02:26:29 4    Q. And this is a seven-page fax from
02:26:33 5 you to Guido Banholzer dated 6/25/06,
02:26:37 6 right.
02:26:37 7    A. It says seven pages were faxed, yes.
02:26:39 8    Q. And dated 6/25/06?
02:26:41 9    A. It says so, yeah.
02:26:43 10    Q. And your signed letter says
11 Maytown/Plympton, correct?
12    A. Correct.
02:26:46 13    Q. And then there's invoices dated
02:26:52 14 June 26, 2006, from Interconsultants and
02:26:55 15 Associates to Maytown Universal in the
02:26:58 16 amount of 95,400 Euro's attached, right?
02:27:01 17    A. Not to my fax, but to your fax,
02:27:04 18 yeah.
02:27:04 19    Q. Well, again --
02:27:04 20    A. I don't know what is enclosed. It
02:27:08 21 just says I'm forwarding invoices for the
02:27:09 22 first semester '06 for payment. That's
02:27:11 23 all it says. I don't know what invoices
02:27:13 24 it was. It could be any invoices.
02:27:16 25    Q. Well, the six invoices that are

68 (Pages 266 to 269)

MARCO STOFFEL

Page 270

MARCO STOFFEL

02:27:18 2  attached, right?  Yes?  There are six
02:27:21 3  invoices attached to the --
02:27:22 4    A. To the Exhibit 71 are six invoices
02:27:25 5  attached.  I don't know what six invoices
02:27:27 6  or four or five invoices were attached to
02:27:30 7  my fax.  All I know is, there were seven
02:27:33 8  pages including the first page.  It says
02:27:36 9  so.  I assume it's correct.  And I sent
02:27:39 10  the fax to Mr. Banholzer on June 25, '06.
02:27:42 11  That's all it says.  I don't know what the
02:27:44 12  enclosures were.  It doesn't list them
02:27:46 13  here, so I don't know.
02:27:46 14    Q. But you sent seven pages, correct?
02:27:49 15    A. I must have because I wrote seven
02:27:51 16  pages.
02:27:51 17    Q. And you sent it, right?
02:27:53 18    A. Yes.
02:27:53 19    Q. The fax line at the top says page 1
02:27:55 20  of 7, right?
02:27:56 21    A. Which page?
02:27:57 22    Q. The fax line at the top says page 1
02:27:59 23  of 7.
02:28:00 24    A. Here, yeah.
02:28:01 25    Q. And dated the same date as your

Page 271

MARCO STOFFEL

02:28:05 2  letter, cover letter, that you signed,
02:28:07 3  right?
02:28:07 4    A. Yeah, correct.
02:28:10 5    Q. And then if you follow through the
02:28:13 6  Interconsultants and Associates invoice,
02:28:16 7  page 2 of 7 on top, right?  Do you see
02:28:19 8  that?  Page 2 of 7, right-hand corner.
02:28:22 9    A. Yes, I see it.
02:28:23 10    Q. And 6/25/06, right?
02:28:26 11    A. Everything you are saying is right.
02:28:28 12  I see what you are saying there is.  But
02:28:30 13  that's not my testimony.
02:28:31 14    Q. Okay.  What is your testimony?
02:28:32 15    A. My testimony was, I do not know
02:28:34 16  what the enclosures to my letter in
02:28:36 17  Exhibit 71 dated June 25, '06, were.
02:28:40 18    Q. Okay.  Tell me what other invoices
02:28:42 19  from May 10 Plympton do you think you were
02:28:44 20  sending to Guido Banholzer in June 2006.
02:28:47 21    A. I don't know.  We have to find out.
02:28:49 22  I have no clue.
02:28:50 23    Q. I'm asking you, Dr. Stoffel.
02:28:51 24    A. Could be anything from electricity
02:28:54 25  to courier service.  How do I know?

Page 272

MARCO STOFFEL

02:28:55 2    Q. And none of these documents were
02:28:57 3  produced, why is that, Dr. Stoffel?
02:28:58 4    A. What do you mean none of these
02:28:59 5  documents were produced?
02:28:59 6    Q. None of these documents signed by
02:29:02 7  you asking for Maytown and Plympton to pay
02:29:05 8  invoices, whether they were electricity or
02:29:08 9  millions and millions of dollars --
02:29:10 10    A. No, no, no, no.  I don't have them.
02:29:12 11  Otherwise, I would have produced them.
02:29:13 12    Q. Where are they?
02:29:14 13    A. I don't know.  That's actually a
02:29:16 14  very good explanation.  I don't know.  I
02:29:17 15  don't have them.
02:29:17 16    Q. But you signed it?
02:29:18 17    A. Yeah, definitely my signature.
02:29:19 18    Q. What happened to it?
02:29:20 19    A. I don't have them.
02:29:21 20    Q. Because if you did have it, that
02:29:23 21  would answer the question, wouldn't it?
02:29:24 22    A. Yeah.  I don't have them.
02:29:25 23    Q. You don't have any of them?
02:29:— 24    A. No.
02:29:27 25    Q. And if I were to spend the next

Page 273

MARCO STOFFEL

02:29:29 2  hour going through a stack, this stack --
02:29:32 3    A. Let's do it, though.
02:29:35 4    Q. Are you going to remember any of
02:29:36 5  them, Dr. Stoffel?
02:29:37 6    A. I don't know what the stack is you
02:29:38 7  are holding, but if you show me, I'm
02:29:43 8  admitted attorney to the bar, a fax that
02:29:46 9  says I am enclosing invoices, how do I
02:29:49 10  know that the invoices you are attaching
02:29:50 11  here are the ones I enclosed in June '06?
02:29:54 12  That's just not --
02:29:55 13    Q. It's called circumstantial evidence.
02:29:57 14    A. Let's leave it at that.
02:29:59 15    Q. If you have another copy of those
02:30:00 16  letters with the same fax line on the same
02:30:03 17  day with different invoices attached for
02:30:06 18  electricity bills, I would love to see
02:30:08 19  them because you know what, we asked for
02:30:11 20  them, Dr. Stoffel.
02:30:11 21    A. Me, too.
02:30:13 22    Q. And all I have is all these
02:30:15 23  documents you've called fake invoices
02:30:16 24  coming from your fax machine, going to
02:30:18 25  Orconsult and references to payments made

69 (Pages 270 to 273)

8cdd86a3-ef56-49f9-a546-83913f6a0985

MARCO STOFFEL

Page 346

MARCO STOFFEL

03:55:41 | 2 | Q. Can we get a copy of the insurance
03:55:43 | 3 | list, too, please?
03:55:44 | 4 | MR. MUELLER: We will take
03:55:46 | 5 | it under advisement.
| 6 | MR. BALBER: Thank you.
03:56:50 | 7 | (Exhibit 83, Defendant's
| 8 | First Set of Interrogatories, marked
03:56:52 | 9 | for identification.)
03:56:52 | 10 | BY MR. BALBER:
03:56:52 | 11 | Q. Dr. Stoffel, I have placed in front
of you Exhibit 83. Do you recall
03:57:02 | 12 | submitting interrogatories signed by you
03:57:05 | 13 | under oath in connection with your divorce
03:57:08 | 14 | proceeding?
03:57:12 | 15 | 
03:57:12 | 16 | A. I do remember.
03:57:13 | 17 | Q. Is this a copy of that document?
03:57:15 | 18 | A. I don't know. I don't remember.
03:57:17 | 19 | On this document is a signature of mine.
| 20 | Q. Is that your signature?
03:57:19 | 21 | A. At the end, yeah.
03:57:19 | 22 | Q. It was notarized on July 27, 2006.
03:57:24 | 23 | And were the statements
03:57:25 | 24 | made in this interrogatory response true?
03:57:27 | 25 | A. I hope so.

Page 347

MARCO STOFFEL

03:57:32 | 2 | Q. Why don't we go through some of
03:57:33 | 3 | them. Let's start with page 31, little
03:57:59 | 4 | "e." Are you there on page 31?
03:58:00 | 5 | A. No, not yet. I want to get a sense
03:58:02 | 6 | of the document.
03:58:03 | 7 | Q. Sure. Take your time.
03:58:05 | 8 | A. It has been a while ago. July '06.
03:58:27 | 9 | Page 31 you want me to go?
03:58:28 | 10 | Q. Yes.
03:58:29 | 11 | A. Yeah, I'm on there now.
03:58:30 | 12 | Q. Do you see little (e)? This is
03:58:33 | 13 | actually interrogatory 15(e).
03:58:35 | 14 | A. Yes.
03:58:35 | 15 | Q. The question was, "Explain the
03:58:37 | 16 | reason why if the 'liquid monies' in Albe
03:58:41 | 17 | were held for the Blickle's they were
03:58:44 | 18 | referred to the in the assets letter as
03:58:46 | 19 | 'my liquid monies.'" Your answer, "As
03:58:49 | 20 | nominee, Swiss law made me the legal owner
03:58:52 | 21 | for the benefit of the Blickle family."
03:58:53 | 22 | Is that a true statement?
03:58:54 | 23 | A. Yes, that's a true statement.
03:58:56 | 24 | Q. But not the foundations?
03:58:58 | 25 | A. What do you mean?

Page 348

MARCO STOFFEL

03:59:00 | 2 | Q. You were legal owner for the
03:59:03 | 3 | benefit of the Blickle family, not for the
03:59:05 | 4 | benefit of the foundations, right?
03:59:06 | 5 | A. Well, the trusts were held for the
03:59:08 | 6 | benefit of the Blickle families. The
03:59:10 | 7 | donations came from the Blickle family.
03:59:13 | 8 | For me, it's all Blickle family. That's a
03:59:16 | 9 | true statement, yes. Donations were not
03:59:19 | 10 | from the trusts. They came from the
03:59:20 | 11 | family. They were done before the trust.
03:59:23 | 12 | That is a true statement.
03:59:24 | 13 | Q. The liquid monies in Albe, you
03:59:27 | 14 | were -- your statement in your
03:59:28 | 15 | interrogatories is that you were legal
03:59:30 | 16 | owner for the benefit of the Blickle
03:59:32 | 17 | family?
03:59:32 | 18 | A. In the sense that I told, yes,
03:59:34 | 19 | meaning -- I don't repeat myself. It was
03:59:38 | 20 | donated money from the Blickle's and,
03:59:39 | 21 | therefore, I called everything Blickle
03:59:41 | 22 | family. I never explained the trust
03:59:43 | 23 | structure to a U.S. court.
03:59:45 | 24 | To this day, we don't even
03:59:48 | 25 | quite understand it. Blickle family is

Page 349

MARCO STOFFEL

03:59:50 | 2 | the right word. For this kind of
03:59:52 | 3 | proceeding, explaining what is this all,
03:59:54 | 4 | this is all the client, Blickle, that
03:59:55 | 5 | Stoffel had.
03:59:55 | 6 | Q. Not the foundations? U.S. court
03:59:58 | 7 | wouldn't understand the foundations?
03:59:59 | 8 | A. That was not the question here.
04:00:05 | 9 | Q. Was the money held for the
04:00:06 | 10 | Blickle's or is the money held for the
04:00:09 | 11 | foundations?
04:00:09 | 12 | A. Both, in a since. In this answer
04:00:11 | 13 | here in this context, it's all Blickle as
04:00:13 | 14 | a client. So, I didn't define, "Here we
04:00:16 | 15 | got this entity, we got Bermuda trust, we
04:00:20 | 16 | got Jersey trust, we got this and that, we
04:00:22 | 17 | got Albeag." All of this, I did not
04:00:25 | 18 | explain. For me, this is the client,
04:00:27 | 19 | Blickle. That was the issue here. Is
| 20 | this personal money of Stoffel? As I told
| 21 | you before, that's going to my estate upon
04:00:32 | 22 | my death. No. Whose money is it? A
04:00:33 | 23 | client of mine. Who is the client?
04:00:34 | 24 | Blickle. Then, explaining Jersey trust --
04:00:37 | 25 | I didn't. It's a correct statement under

88 (Pages 346 to 349)

MARCO STOFFEL

Page 350

MARCO STOFFEL

1
04:00:42 2    these.
04:00:48 3        Q. Why on your death would money
04:00:50 4    belonging to a company, Albe Associates,
04:00:53 5    go anywhere?
04:00:54 6        A. The question was what happens --
04:01:00 7    well, money doesn't go anywhere to me.
04:01:03 8    But, I had certain functions in all these
04:01:06 9    entities and something might be considered
04:01:09 10   mine. That's why I probably -- this whole
04:01:11 11   interrogatory is probably about all these
04:01:13 12   assets saying they are not mine. And
04:01:17 13   that's why Blickle family is sort of the
04:01:20 14   term that encompasses that all, every of
04:01:23 15   these entities. In a divorce case, to
04:01:25 16   explain all these entities, try to, how
04:01:27 17   this was structured, it's fruitless. It's
04:01:30 18   not the issue. The issue in the divorce
04:01:33 19   is, is this money of the husband or wife
04:01:35 20   or is it somebody else? And when you are
04:01:38 21   an attorney, it's just important to just
04:01:40 22   identify it's a client. From my general
04:01:41 23   term for everything was Blickle family.
04:01:43 24       My wife had no idea about
04:01:45 25   all these entities and things. This was

Page 351

MARCO STOFFEL

1
04:01:48 2    how it was identified, basically. We are
04:01:51 3    not going to go any further. I can only
04:01:53 4    explain it that way. This is what I
04:01:54 5    meant, and it's true the way in this
04:01:57 6    context.
04:01:58 7        Q. And you were the legal owner of
04:02:00 8    Albe?
04:02:00 9        A. No, I was not the legal owner of
04:02:03 10   Albe, but I had some powers. For example,
04:02:06 11   I instructed or consulted.
04:02:07 12       Q. Right. So we are clear, you were
04:02:08 13   not the legal owner of Albe?
04:02:    14       A. No.
04:02:11 15       Q. Okay. Let's look at (f.) "Explain
04:02:13 16   the basis for the statement in the assets
04:02:15 17   letter that I own one-hundred percent of
04:02:17 18   the shares and therewith Banholzer
04:02:19 19   Orconsult." Answer: "Again, as nominee,
04:02:21 20   I was the legal owner. I never had
04:02:23 21   possession of the shares. They remained
04:02:25 22   with Orconsult Limited."
04:02:27 23       A. Exactly.
04:02:28 24       Q. Were you the legal owner or not the
04:02:30 25   legal owner?

Page 352

MARCO STOFFEL

1
04:02:31 2        A. In this context, I was not the
04:02:34 3    legal owner. When you asked me that here,
04:02:36 4    the key is, I was not the legal owner, but
04:02:38 5    I had some instruction powers. We saw
04:02:40 6    that.
04:02:40 7        Q. All I'm using is the words that are
04:02:42 8    in the documents you signed under oath in
04:02:44 9    2006.
04:02:45 10       A. Right.
04:02:45 11       Q. Am I correct that you said at that
04:02:48 12   time you were the legal owner of Albe?
04:02:50 13       A. Hold on. We did this in August.
04:02:52 14   We have provided -- listen. It's a
04:02:55 15   problem of explaining the concept of
04:02:57 16   nominee and beneficial shareholder.
04:03:00 17       We had a document that I
04:03:01 18   gave the instruction to Orconsult to set
04:03:04 19   up Albe signed by Marco Stoffel. And you
04:03:08 20   asked me then. I think you even asked
04:03:09 21   today again why. I said, well, for the
04:03:12 22   foundations. Probably is Maraco Stoffel
04:03:15 23   signed that document, those two-page
04:03:16 24   document, I think you did show it to me
04:03:18 25   today, with Orconsult.

Page 353

MARCO STOFFEL

1
04:03:19 2        So, how do I explain that?
04:03:21 3    It says "Client: Marco Stoffel.
04:03:23 4    Orconsult, please set up Albe." That's
04:03:25 5    the only way I could explain it to you.
04:03:27 6    Obviously, I have some instruction powers
04:03:29 7    because of my position as treasurer of the
04:03:31 8    foundation and this being escrowed money.
04:03:33 9    So, it's all I can explain.
04:03:34 10       Q. But you weren't legal owner?
04:03:36 11       A. Legal owner of what? I mean --
04:03:38 12       Q. Of Albe.
04:03:39 13       A. How do I answer that?
04:03:40 14       Q. Truthfully. How about that?
04:03:41 15       A. This is truthfully in the context I
04:03:44 16   explained it now. I had powers,
04:03:46 17   obviously, to instruct.
04:03:47 18       Q. Sir, you are a lawyer, yes?
04:03:49 19       A. Yes, I'm a lawyer.
04:03:51 20       Q. You have used the most interesting
04:03:53 21   terminology for the different
04:03:54 22   relationships between being a beneficial
04:03:56 23   owner and a nominee owner and a legal
04:03:59 24   owner. Were you the legal owner of Albe
04:04:02 25   at any point in time, yes or no?

89 (Pages 350 to 353)

8cdd86a3-ef56-49f9-a546-83913f6a0985

MARCO STOFFEL

Page 354

MARCO STOFFEL

04:04:05 2    A. I don't know, because that's
04:04:08 3    whatever Orconsult did with those shares.
04:04:10 4    What do I know?  I could be the legal
04:04:13 5    owner for a certain period of time.  The
04:04:15 6    way they handled it, it's possible.  None
04:04:15 7    of the funds were ever mine.
04:04:18 8    Q. Okay.  But when you signed --
04:04:18 9    A. That's the key.
04:04:19 10    Q. When you signed this document under
04:04:21 11    oath on July 27, 2006, you said, "I was
04:04:25 12    the legal owner of Albe."  That's what you
04:04:27 13    said.  You said -- it's right there.
04:04:29 14    A. I even said it in that document you
04:04:32 15    showed it.  I said it's not going to be in
04:04:35 16    my estate.  That's what I said.
04:04:43 17    Q. Okay.  How about Bluecolt, were you
04:04:45 18    the legal owner of Bluecolt?
04:04:46 19    A. In that context -- is there a
04:04:48 20    question on Bluecolt here?
04:04:49 21    Q. I'm asking for your truthful
04:04:52 22    testimony.
04:04:52 23    A. It's the same concept with Bluecolt.
04:04:54 24    Q. So, yes?
04:04:56 25    A. Same, no.  Same concept the way I

Page 355

MARCO STOFFEL

04:04:57 2    explained it.
3    Q. Okay.
04:05:20 4    (Exhibit 84, a letter dated
5    November 20, 2006, from Dr. Stoffel
04:05:21 6    to Dennis Lavin of Vistra, marked for
04:05:21 7    identification.)
04:05:22 8    BY MR. BALBER:
04:05:22 9    Q. Dr. Stoffel, I have placed in front
04:05:31 10    of you Exhibit 84.  Don't lose track of
04:05:36 11    83.  We are going to be coming back to it
04:05:39 12    in a minute.
04:05:40 13    Exhibit 84 is a letter from
04:05:42 14    you to Dennis Lavin of Vistra dated
04:05:46 15    November 20, 2006, right?
04:05:47 16    A. Yes.
17    Q. Is that correct?
04:05:48 18    A. Yes, correct.
04:05:49 19    Q. And you signed it, yes?
04:05:50 20    A. Yes.
04:05:51 21    Q. And this was faxed by Stoffel &
04:05:53 22    Partner?
04:05:53 23    A. Looks like it, yeah.
04:05:55 24    Q. Okay.  And were the statements you
04:05:58 25    made in this letter truthful?

Page 356

MARCO STOFFEL

04:06:00 2    A. I have to read them.
04:06:02 3    Q. You need to read it to know?
04:06:04 4    A. Because you asked me the
04:06:06 5    statements.
6    Q. Okay.
04:06:07 7    A. How can I say they were true if I
04:06:10 8    don't read them?
04:06:10 9    Q. Well, either you were being
04:06:11 10    truthful at the time or you weren't
04:06:15 11    truthful at the time.
04:06:15 12    A. I haven't read it.
04:06:18 13    Q. Take your time.
04:06:45 14    A. It's a report about the
04:06:47 15    distributions in '06 and it's backed up
04:06:49 16    with enclosures.
04:06:49 17    Q. Is it true?
04:06:50 18    A. It's got to be true.
04:06:51 19    Q. Got to be true?
04:06:52 20    A. Got to be true.
04:06:52 21    Q. All right.  So you say, fifth entry
04:06:57 22    down, "Capricorn Trust, Distributions to
04:07:01 23    the six beneficiaries," correct?
04:07:05 24    A. By that time, the transfer would
04:07:09 25    have been made, that's correct.

Page 357

MARCO STOFFEL

04:07:10 2    Q. Okay.
04:07:10 3    A. This was new as of June '06 or
04:07:13 4    July.
04:07:14 5    Q. What was new of '06?
04:07:15 6    A. Hodges draft, well, signed.  This
04:07:18 7    document that then made specifically the
04:07:20 8    foundations and acquired the Capricorn
04:07:24 9    beneficiaries of the Jersey trusts.
04:07:26 10    That's why this is true.  This is pretty
04:07:27 11    new.
04:07:27 12    Q. Because they weren't beneficiaries
04:07:29 13    before?
04:07:29 14    A. Well, they were not listed in the
04:07:31 15    schedule there.  I mean there were drafts
16    and everything.
04:07:33 17    Q. But they weren't beneficiaries
04:07:35 18    until July of '06?
04:07:36 19    A. Named beneficiaries, no.  I think
04:07:39 20    so, no.
04:07:40 21    Q. So, is it a true statement that the
04:07:43 22    first time Capricorn Trust made a
04:07:46 23    distribution to the Third Millenium
04:07:48 24    Foundation was October 2006?
04:07:51 25    A. Capricorn Trust -- I mean, first

90 (Pages 354 to 357)

# EXHIBIT 24

Page 1

IN THE COURT OF CHANCERY

OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY


COLLEEN INVESTMENT AG,

COLLEEN INVESTMENT, LLC,

And LOGANY, LLC,

              Plaintiffs,         Civil Action No.

              vs.                 #2672-N

MARCO STOFFEL,

              Defendant.



              33 South Seventh Street

              Allentown, Pennsylvania

              February 15, 2008

                   11 a.m.


         DEPOSITION of CONNIE KENDIG, before

S. Arielle Santos, Certified Shorthand Reporter and

Notary Public.

Page 2

APPEARANCES:

FOR THE PLAINTIFFS:
BY: JONATHAN CROSS, ESQ.
E-mail: Jcross@chadbourne.com
CHADBOURNE & PARKE, LLP
30 Rockefeller Plaza
New York, New York 10112
Tel: 212-408-5100

FOR THE DEFENDANTS:
BY: THOMAS M. MUELLER, ESQ.
E-mail: Tmueller@mofo.com
MORRISON & FOERSTER, LLP
1290 Avenue of the Americas
New York, New York 10104

BY: MALCOLM J. GROSS, ESQ.
E-mail: Mgross@gmle.com
GROSS, MCGINLEY, LABARRE & EATON, LLP
33 South Seventh Street
P.O. Box 4060
Allentown, Pennsylvania 18105
Tel: 610-820-5450
Representing the Witness.

Page 3

STIPULATIONS

IT IS HEREBY STIPULATED AND AGREED by and
Between the attorneys for the respective
Parties herein that the filing and sealing of
The within deposition be waived.
IT IS FURTHER STIPULATED AND AGREED that all
Objections, except as to the form of the
Question, shall be reserved to the time of the
Trial.
IT IS FURTHER STIPULATED AND AGREED that the
Within deposition may be sworn to and signed
Before any officer authorized to administer an
Oath with the same force and effect as if
Signed and sworn to before the Court.

Page 4

CONNIE KENDIG
CONNIE KENDIG,
Having been duly sworn,
Testifies as follows:

(Whereupon the Witness is Sworn In.)
MR. GROSS:  Before we get started, I
represent the deponent, Connie Kendig.
And it has come to her attention that
there's an employment agreement in this
matter, which has a confidentiality
provision in it.
I have spoken to counsel about
that and I understand within limits
that her employer's not -- her former
employer is not asserting that
provision.  Although, you reserve the
right to object depending on, I guess,
the extent and limits of the
deposition.
MR. MUELLER:  That is correct.
MR. GROSS:  So with that
understanding, she will be willing to
testify.
MR. CROSS:  And just to be clear, in

Page 5

CONNIE KENDIG
the event that any instructions given
on that basis, Mr. Mueller will be
conferring with you and it will be
Mr. Mueller making an objection.
MR. GROSS:  Exactly.  My client is
willing to testify but only -- only
with the understanding that she is not,
in any way, violating the agreement.
MR. CROSS:  Okay.

EXAMINATION
BY MR. CROSS:
Q    Ms. Kendig, I am going to ask you a
number of questions today.  I don't know if you have
been deposed before.  And I will try to be as clear
as possible.  If you don't understand any of my
questions, please ask me for clarification.  If you
don't say anything, I will assume you understand.
Please indicate your response verbally and not by
nodding your head or motioning or whatever because
the court reporter can't pick up things that are not
verbal.
What is your educational background?
A    I have a bachelor's degree and I have a

2  (Pages 2 to 5)

2ed7c362-3468-4da1-ac6e-c97acdbc6c1b

Page 106

CONNIE KENDIG

1
2    MR. MUELLER: I am stating the
3    grounds for my objection. It's totally
4    inappropriate for you to be pursuing a
5    line of questioning pertaining to
6    another proceed -- a different
7    proceeding that has nothing to do with
8    the proceeding in Delaware and has
9    nothing to do with the Delaware
10   sanctions motion.
11       MR. CROSS: Are you objecting to
12   form?
13       MR. MUELLER: Accordingly, what I
14   would like to do is stop this line of
15   questioning. If you want to get the
16   Vice-Chancellor on -- on the line and
17   get a ruling on whether or not this is
18   appropriate, I am happy to do that.
19   But if that -- if you don't want to do
20   that, I would basically request that
21   the witness not answer any further
22   questions along this line.
23       MR. CROSS: You're asking the witness
24   -- what question are you asking the
25   witness not to answer?

Page 107

CONNIE KENDIG

1
2    MR. MUELLER: Which question is
3    pending?
4        MR. CROSS: I believe there were
5    no -- the question that was pending
6    that was answered, and so there's
7    currently -- I don't believe any
8    question is pending.
9        (Question was read back.)
10       MR. CROSS: No. Your objecting to
11   the question whether -- which I think
12   that you repeat, in fact, whether Ms.
13   Kendig has a fax machine or had a fax
14   machine during her employment that she
15   used or had a fax machine during her
16   employment that was used for the
17   business of LLCs.
18       MR. MUELLER: I will allow you to
19   answer that -- I will withdraw my
20   request for the witness not to answer
21   that question. But I caution you,
22   don't go any further than this because
23   you're way out of bounds again on what
24   this -- this deposition's supposed to
25   be about.

Page 108

CONNIE KENDIG

1
2    MR. CROSS: I would like to get a bit
3    of clarity on Ms. Kendig's counsel has
4    made the decision to respect
5    Mr. Mueller's.
6        MR. GROSS: Yes. I -- we are here
7    based on an agreement of counsel as I
8    understand it. We wish -- we would
9    observe no legal process and we are
10   here based on the agreement of counsel.
11   So my client, while she is perfectly
12   willing to answer all questions, cannot
13   answer questions when counsel can't
14   agree on whether the question should be
15   asked or not. Because counsel
16   obviously have a disagreement as to the
17   scope of their agreement as to what
18   this deposition's to be about and not
19   about. She will answer questions but
20   she can't answer questions beyond what
21   counsel can agree to is the scope of
22   this deposition.
23       MR. CROSS: Okay. I think there's --
24   there's a question pending, there's not
25   an instruction not to answer. Would

Page 109

CONNIE KENDIG

1
2    you -- would you like it read back?
3        THE WITNESS: There's or is not?
4    BY MR. CROSS:
5    Q    There's a question pending.
6        MR. GROSS: Your question was about
7        whether she has her own fax machine.
8        Maybe you want to be more precise, I
9        don't know.
10   BY MR. CROSS:
11   Q    Did you have a fax machine that you used
12   in connection with the business of Colleen and Logany
13   when you were employed under Dr. Stoffel's direction?
14   A    Yes.
15   Q    And was that a different fax machine
16   from the fax machine that we discussed earlier with
17   this (212) 937-1956 number?
18   A    Yes.
19   Q    And where was that fax machine located,
20   the one that you used differently?
21   A    In 650 Madison, that number was in
22   Marco's office.
23   Q    Hm-hm.
24   A    And then at 340 West, it was 10 feet
25   behind me in my office space.

28 (Pages 106 to 109)

2ed7c362-3468-4da1-ac6e-c97acdbc6c1b

CONNIE KENDIG

1    Q    Okay.  So the fax machine that you used
2  at 650 Madison, just to get clarity, was a different
3  fax machine from the one in Dr. Stoffel's office or
4  the same?
5    A    I use both.
6    Q    Okay.
7    A    The --
8    Q    But there were two?
9    A    Yeah.
10   Q    Okay.  And one of them was this (212)
11 937-1656 number?
12   A    1956.
13   Q    1956 number?
14   A    Yes.
15   Q    And another one was a different number?
16   A    Yes.
17   Q    And that is the one you typically used?
18       MR. MUELLER:  Objection as to form.
19       THE WITNESS:  Um.
20 BY MR. CROSS:
21   Q    The one that was not this (212) 937-1956
22 number?
23       MR. MUELLER:  I think -- I think the
24       problem is the word "typically," but go

CONNIE KENDIG

1  ahead.
2       THE WITNESS:  At -- at 340 West 12th,
3       I typically used the other fax number.
4  BY MR. CROSS:
5    Q    Okay.  And was there any log kept of
6  faxes?
7    A    Not on my fax machine.
8    Q    Was there a log kept of faxes on the
9  other fax machine located at Dr. Stoffel's office?
10   A    I know that it printed one out every
11 month or so.
12   Q    Was there any policy or practice of
13 filing that log?
14   A    No.
15   Q    Not at any time?
16   A    Never during my tenure.
17   Q    And not after the litigation began?
18   A    No.
19   Q    And there was not a log with respect to
20 the fax machine that was closer to your work space
21 that you typically used at 340 West 12th?
22   A    That is correct.  There was no log.
23   Q    Was any other form of record kept of
24 faxes that came in and out?

CONNIE KENDIG

1    A    Faxes that I sent, I kept copies of.
2    Q    Okay.  And you filed them?
3    A    Yeah, in the appropriate places.
4    Q    Faxes that were received?
5    A    If they were for me, I would fax them
6  when appropriate.
7    Q    And if they were for -- for Dr. Stoffel
8  you would give them to him?
9    A    Yes.
10   Q    And he would give -- give them to you in
11 all cases, in some cases for filing?
12   A    No, if I gave him something that was for
13 him to deal with those, it had nothing to do with my
14 responsibilities.
15   Q    But he sometimes gave you documents to
16 file?
17   A    Yes.
18   Q    And might those documents sometimes --
19 sometimes have included faxes that have been received
20 by him?
21   A    Yes.
22   Q    Now, if documents relating to the LLCs
23 came to Dr. -- to the fax machine in Dr. Stoffel's
24 work space at 340 West 12th, was there any practice

CONNIE KENDIG

1  regarding him giving them to you for filing on a
2  routine basis?
3    A    No.
4    Q    Was this (212) 937-1956 fax number used
5  for LLC business?
6    A    Primarily, yes.
7    Q    Okay.  Did you have any filing system
8  with respect to invoices issued to Maytown Universal,
9  S.A. or to Plympton?
10   A    No.
11   Q    Did you keep any files for Maytown or
12 Plympton?
13   A    No.
14   Q    I ask that you look at page 3 of the
15 attachments?
16   A    (Reviewing.)
17   Q    Have you ever seen an invoice from
18 International Consultants and Associates?
19   A    No.
20   Q    Never filed any such invoices?
21   A    I have never seen this company before.
22   Q    So as far as you know, that was Dr.
23 Stoffel's business and he took care of it?
24       MR. MUELLER:  Objection as to form.

29  (Pages 110 to 113)

2ed7c362-3468-4da1-ac6e-c97acdbc6c1b

# EXHIBIT 25

# *In the Royal Court of Jersey*

**Samedi Division**                                      2006/352

In the year two thousand and six, the fifteenth day of November.

Before Michael Cameron St. John Birt, Esquire, Deputy Bailiff of Jersey, assisted by Jurats Philip John de Veulle, O.B.E., and Stanley John Le Cornu.

IN THE MATTER OF THE REPRESENTATION OF VISTRA TUST COMPANY (JERSEY) LIMITED, FORMERLY KNOWN AS CHILTERN TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE ALSAM, COLLEEN AND LOGANY SETTLEMENTS
AND IN THE MATTER OF ARTICLES 51 AND 53 OF THE TUSTS (JERSEY) LAW 1984 (AS AMENDED)

## IN PRIVATE

Vistra Trust Company Limited ("Vistra") of 38 Esplanade, St Helier, Jersey (hereinafter called "the Representor") presented to the Court a representation in the following terms:-

"1    The Alsam Settlement ("Alsam") was created by agreement between the Representor and Angela Blickle on 18th December, 1998.

2     The Colleen and Logany Settlements ("Colleen") ("Logany") were created by agreement between the Representor and Holger Blickle also on 18th December, 1998, though the deeds were signed by Angela Blickle on Holger Blickle's behalf pursuant to a power of attorney.

3     By clause 2(a) of each of the three Settlements ("the Settlements") the proper law of the Settlements is Jersey law.

4     By clause 1(a) and Schedule 2 of the Settlements the beneficiaries were named as follows:

(i)     Angela Blickle

(ii)    Cedrick Blickle ("Cedrick") son of Angela and Holger

(iii)   Clarissa Blickle ("Clarissa") daughter of Angela and Holger

     (iv)     Direct descendants of Cedrick

     (v)     Direct descendants of Clarissa

5     (i)     By clause 5(a) of the Settlements the trustee has a power to add to the class of beneficiaries, such power which, by clause 13 and the 6th Schedule may only be exercised with the consent of the Protector.

     (ii)     By deeds of appointment dated 7th July, 2006, the following were added to the class of beneficiaries to Settlements:

          (a)     Orconsult Limited of Bermuda as trustee of the Aquarius Trust

          (b)     Orconsult Limited of Bermuda as trustee of the Capricorn Trust.

          (c)     Third Millennium Foundation of ?40 W. 12th St. New York

          (d)     Borderline Personality Disorder Research Foundation of ?40W .12th St. New York

          (e)     Universities and Foundations with programs in tolerance, education, human rights and scientific research.

     (iii)     Angela Blickle died in February 1999.

6     (i)     By clause 1(d) and 12 of the Settlements there is appointed a Protector, namely New Eagle Corporation Limited of 15, Herbert St. Dublin.

     (ii)     A Dr Marco Stoffel ("Stoffel") a lawyer who had advised the Blickle family for many years before the Trusts were created, has, since Angela Blickle's death, held himself out as the agent and/or owner of the Protector and has behaved as the Protector.

     (iii)     In addition, Stoffel has occupied, and it is believed continues to occupy, positions within the underlying structure of the Settlements which give him control over the assets of the Settlements.

7     (i)     By clause 9 and 4th Schedule of the Settlements, the Protector has the power to dismiss and appoint additional trustees and new trustees.

     (ii)     By clause 12(b) and the 5th Schedule of the Settlements, the power to appoint a new Protector vests in the current Protector.

     (iii)     By clause 13 and the 6th Schedule of the Settlements the Protector's consent is required to:

          (a)     Change the Proper Law of the Settlements (2(b)).

          (b)     Transfer capital to another settlement (4(a)(iii)).

          (c)     Add beneficiaries (5(a)).

          (d)     Exclude/remove beneficiaries (6).

          (e)     Alter or add to the provisions of the Deeds (17).

      (f)    Disclose information relating to the Trusts/the beneficiary to any person/authority unless by Court order or where necessary to administer the Settlements.

8    (i)    By clause 14(a) of the Settlements the Protector may declare that acts requiring Protector consent shall not require such consent.

    (ii)    By clause 14(b) of the Settlements, in the event there is no Protector capable of acting, the provisions of the Settlements are to be read as if reference to the Protector were omitted.

9    (i)    By clause 1(c) and the 3rd Schedule of the Settlements, the Protectors, its employees (if corporate) spouses, children and any entity in which the Protector, its employees, spouses or children have any direct or indirect interest are Excluded Persons.

    (ii)    By clause 15 of the Settlements, no Excluded Person is capable of taking any benefit, of any kind by virtue or in consequence of the Settlement.

10    Certain matters have come to the attention of the Representor which give cause for concern in relation to the actions of Stoffel, qua Protector and/or by reason of other positions he occupies/has occupied within the underlying trust structure.

11    By reason of these concerns it has become necessary or expedient for the Representor to apply to the Court in accordance with the provisions of Article 51 of the Law for directions and orders concerning the administration of the Settlements.

12    By reason of these concerns it has become necessary or expedient for the Representor to apply to Court in accordance with the provisions of Article 53 of the Law for directions as to whether the costs of and incidental to its Representation should be paid out of trust assets.

WHEREFORE the Representor prays for the following relief:

1)    For directions and orders concerning the manner in which the Representor should act in connection with matters concerning the Settlements.

2)    For directions/orders regarding the Protector.

3)    For directions as to who, if any person, should be convened in respect of the application herein.

4)    For directions as to whether hearings should be before the Court sitting in public or in private.

5)    For directions concerning the payment of costs.

6)    For such further and other relief as the Court deems appropriate."

Upon reading the said representation and upon hearing the representor's advocate, the

Court, sitting in private:-

1.  ordered that, until further order of this Court, no powers vested in the Protector of the Alsam, Logany and Colleen Settlements, ("the Settlements") may be exercised by the Protector nor any person or company acting or purporting to act on behalf of the Protector, which for avoidance of doubt shall include one Dr Marco Stoffel ("Dr Stoffel");

2.  ordered that, until further order of this Court, the Settlements shall be read and have effect as though references to the Protector or the consent of the Protector were omitted;

3.  ordered that, until further order of this Court, the Representor shall not exercise any of its powers which, but for paragraph 2. above, would require the consent of the Protector, without the approval of the Court;

4.  ordered that any document executed by the Protector, or any person or company acting or purporting to act on behalf of the Protector, specifically including Dr Stoffel, in the purported exercise of the Protector's powers under the Settlements which has not already been communicated to the Representor shall be of no effect, and this irrespective of its date. Without prejudice to the generality of the foregoing, this order shall specifically include any document purporting to remove the Representor as trustee of the Settlements or any of them, or to appoint additional trustees, it being noted by the Court that as at the date of this Order, no such document has been communicated to the Representor;

5.  pursuant to paragraph 3. above, authorised the Representor to execute deeds pursuant to Clause 6(b) of the Settlements, whereby the following beneficiaries or any of them, revocably appointed to the class of beneficiaries of the Settlements by Deeds dated 7th July, 2006, cease to be beneficiaries, and this on a revocable basis:

    (a)  Orconsult Limited of Bermuda as trustee of the Aquarius Trust

    (b)  Orconsult Limited of Bermuda as trustee of the Capricorn Trust

    (c)  Third Millennium Foundation of 340 W. 12th St. New York

    (d)  Borderline Personality Disorder Research Foundation of 340W .12th St. New York

    (e)  Universities and Foundations with programs in tolerance, education, human rights and scientific research.

6.  ordered that, subject to paragraph 11. below, Cedrick Blickle, Clarissa Blickle, New Eagle Corporation Limited (the Protector) ("New Eagle") and Dr Stoffel should be served with a copy of the Representation and this Act of Court and be provided, in

due course with such affidavits (which, in the event of a further order of the Court, may be in redacted form) and/or other documents as may be relevant, and be convened to a date to be fixed for the further hearing of this Representation;

7.    ordered service out of the jurisdiction upon Cedrick Blickle and Clarissa Blickle, and this by way of posting by registered post to their English lawyers, Messrs Baker & McKenzie of 100 New Bridge Street, London EC4V 6JA;

8.    ordered service out of the jurisdiction upon New Eagle Corporation Limited and this by way of delivery by courier to their offices at 15 Herbert St, Dublin, 2, Republic of Ireland;

9.    ordered service out of the jurisdiction on Dr Stoffel and this by way of delivery either by courier or by hand to his offices at 340 West 12th St, New York, NY 10014;

10.   ordered that the Representor need not effect service upon New Eagle or Dr Stoffel until such time as the Representor believes that to do so is unlikely to prejudice the Representor's actions in confirming its control over the assets in the underlying Settlements' structures;

11.   pursuant to RCR 4/4 appointed Cedrick Blickle and Clarissa Blickle to represent the interests of their respective unborn issue;

12.   ordered that Dr Stoffel shall, within fourteen days of service upon him of this Order, deliver to the Representor, in respect of the Settlements and each of them, the following information:

(a)    a complete chart of the underlying corporate structure of each of the Settlements, including the precise percentage shareholdings by one entity in any other entity, and whether those shares are bearer shares or registered shares, such that a complete picture of the entire shareholding (whether owned ultimately by the Settlements or any third parties) of all entities identified is provided.  Without prejudice to the generality of the foregoing, that structure to include references to the following entities:

(i)     Alsam Holding AG

(ii)    Colleen Investment AG

(iii)   Penny Asset AG

(iv)    Logany Equity AG

(v)     Clarick AG

(vi)    Investa-Casa AG

(vii)   Vierwaldstatter Beteiligungen AG

(viii)  Blickle GmBH

    (ix)    Maytown Universal SA and/or Maytown Trust

    (x)    Plympton Universal SA and/or Plympton Trust

    (xi)    Colleen Investments LLC / Colleen LLC

    (xii)    Logany LLC

    (xiii)    Lauramca Holdings LLC / Lauranca Holdings LLC / Lauranca LLC / Lauramca LLC

    (xiv)    Partnerships LLC

    (xv)    Personality Disorder Research Corporation

(b)    A description of the function of each entity within the structure, together with a list of its assets/investments;

(c)    Confirmation of in whose name all registered shares in all the entities identified pursuant to paragraph 12.(a) above are held, and, if held under a nominee or other fiduciary arrangement, a copy of the agreement showing for whom the nominee/fiduciary holds the shares;

(d)    Full details of the whereabouts of any shares which are bearer shares, with copies of custody agreements showing for whom they are held;

(e)    The registered office of every entity in the structure;

(f)    The directors, officers and administrators of every entity identified pursuant to paragraph 12.(a) above, and where these directors, officers or administrators are corporate, their registered office;

(g)    The details of all banks accounts held in the name or for the benefit of each entity identified pursuant to paragraph 12.(a) above, including the Settlements and each of them, with name and address of bank, name and number of the account and name of person(s) on the mandate;

(h)    In the event any bank accounts are in the name of any form of nominee or fiduciary for the benefit of any entity identified pursuant to paragraph 12.(a) above, including the Settlements, the full details of that nominee or fiduciary and a copy of the agreement between the nominee and the beneficial owner of the account;

13.    ordered that Dr Stoffel shall, within fourteen days of the of service upon him of this Order, deliver to the Representor, a schedule of all monies which have been paid out of any entity within the structure underlying the Settlements and each of them since the date they were created to or for the benefit of:

(a)    The Capricorn Trust;

(b)    The Acquarius Trust;

(c)     Third Millenium Foundation;

(d)     Borderline Personality Disorder Research Foundation;

(e)     Any other Charity/Foundation;

identifying the amount paid, the date paid, and the entity from which and to which the monies were paid;

14.    ordered that, whether by reason of his knowledge or role within the underlying corporate structure, Dr Stoffel is to afford all possible assistance to the Representor to enable it to confirm its control over, and obtain delivery up of all corporate records and papers of all entities within the underlying corporate structure:

(a)     which are wholly owned by the Representor as trustee of a Settlement, or collectively as trustee of the Settlements, whether this be directly or through a chain of other corporate entities; and

(b)     in which the Representor as trustee of a Settlement, or collectively as trustee of the Settlements, whether this be directly or through a chain of other corporate entities, have a majority interest.

15.    ordered that irrespective of this hearing having occurred in private, the Representor may show this Act of Court and any judgment or other papers it deems appropriate to any person if in the view of the Representor such disclosure will assist the Representor in its confirming control over the entities in the structures underlying the Settlements and/or tracing the whereabouts of assets emanating from such entities;

16.    adjourned the question of an indemnity for the Representor from the assets of the Settlements in respect of the internal and external fees and disbursements incurred in relation to the matters with which this Representation is concerned until a future hearing; and

17.    there shall be liberty to apply to the Court generally, and specifically for extension of time for compliance with the orders contained herein.

*H. Woodside.*

Greffier Substitute

Ogier (KJL) ✓

# EXHIBIT 26

**Alsam Holding AG**
**Stansstad**

# MINUTES

of the extraordinary shareholders' meeting, held on December 6, 2006, at the offices of the law firm CMS von Erlach Henrici, Dreikoenigstrasse 7, 8002 Zurich

# *PROTOKOLL*

*der ausserordentlichen Generalversammlung der Aktionäre, abgehalten am 6. Dezember 2006, in den Räumlichkeiten des Advokaturbüros CMS von Erlach Henrici, Dreikönigstrasse 7, 8002 Zürich*

| | | | |
|---|---|---|---|
| **Present:** | Vistra Trust Company (Jersey) Ltd., St. Helier, Jersey, represented by Mr Bernhard Lötscher | 100 | shares |
| | Total of shares present or represented: | 100 | shares |

The aforementioned shares are all bearer shares of CHF 1'000.-- par value each.

**Chairman:**    Bernhard Lötscher

**Secretary:**    Aline Wey Speirs

# I.    AGENDA

1.  Constitution of the Meeting
2.  Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
3.  Election to the Board of Directors
4.  Miscellaneous

## II.    BUSINESS TRANSACTED AND RESOLUTIONS PASSED

### 1.    Constitution of the Meeting

Mr Bernhard Lötscher acts as Chairman of the meeting. Ms Aline Wey Speirs is designated Secretary.

The Chairman states and directs the record to show that all shareholders are either present or validly represented and that the meeting therefore is a plenary meeting in the sense of Article 701 of the Swiss Code of Obligations and of the articles of incorporation which meeting may validly vote and pass resolutions on all matters falling within the powers of the shareholders' meeting without observing the formalities for the calling of a meeting. The Chairman states for the record that the original certificates of the bearer shares of all shareholders present or represented are deposited with STM Steuerberatung & Treuhand Mettler AG, Zurich (see depository agreement "Hinterlegungsvertrag" of July 10, 2006) and are blocked until after this extraordinary shareholders' meeting. The Chairman orders the proxy given by Vistra Trust Company (Jersey) Ltd. to be annexed to the minutes of the meeting as Exhibit A. The minutes may be consulted by the shareholders at the domicile of the company during regular business hours.

The meeting does not object against the above statements of the Chairman.

### 2.    Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
### ("Abwahl der Herren Marco Stoffel, Guido Banholzer and Georges Philippe aus dem Verwaltungsrat")

The meeting unanimously resolves to dismiss Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors with immediate effect.

*("Die Generalversammlung beschliesst einstimmig, die Herren Marco Stoffel, Guido Banholzer und Georges Philippe mit sofortiger Wirkung aus dem Verwaltungsrat abzuwählen.")*

### 3.    Election to the Board of Directors
### ("Wahl des Verwaltungsrates")

The meeting unanimously resolves to elect Ms Tanja Scott-Tomlin, Ms Gabriela Krug and Messrs Rodney Hodges, Damiano Della Ca and Ernst Blatter as new members of the Board of Directors for a term of office to last through the next ordinary shareholders' meeting. Copies of their declarations of acceptance and specimen of signature are attached hereto as Exhibit B1 - B5.

*("Die Generalversammlung beschliesst einstimmig, Frau Tanja Scott-Tomlin, Frau Gabriela Krug und die Herren Rodney Hodges, Damiano Della Ca und Ernst Blatter als neue Mitglieder des Verwaltungsrates für eine Amtsdauer bis zur nächsten ordentlichen Generalversammlung zu wählen. Kopien ihrer Annahme- und Zeichnungserklärungen sind diesem Protokoll als Beilagen B1 - B5 angeheftet".)*

**4.     Miscellaneous**

There being no further items brought before the meeting and there being no further business to be transacted and there being no request for information pursuant to Article 697 of the Swiss Code of Obligations, the meeting is closed.

Date:   6. December 2006, 11.40 Uhr

The Chairman of the meeting:
*("Der Vorsitzende:")*

The Secretary of the meeting:
*("Die Protokollführerin:")*

Bernhard Lötscher

Aline Wey Speirs

**Enclosures:**
A:          Proxy
B1-B5:  Copies of the declarations of acceptance and specimen of signature

**Distribution:**
Alsam Holding AG
Vistra Trust Company (Jersey) Ltd.
M. Stoffel
G. Banholzer
G. Philippe
T. Scott-Tomlin
G. Krug
R. Hodges
D. Della Ca
E. Blatter

**Clarick AG**
**Stansstad**

# MINUTES

of the extraordinary shareholders' meeting, held on December 6, 2006, at the offices of the law firm CMS von Erlach Henrici, Dreikoenigstrasse 7, 8002 Zurich

# *PROTOKOLL*

*der ausserordentlichen Generalversammlung der Aktionäre, abgehalten am 6. Dezember 2006, in den Räumlichkeiten des Advokaturbüros von Erlach Henrici, Dreikönigstrasse 7, 8002 Zürich*

| **Present:** | Logany Equity AG, Stansstad,<br>represented by Mr Bernhard Lötscher | 100 | shares |
|---|---|---|---|
| | Total of shares present or represented: | 100 | shares |

The aforementioned shares are all bearer shares of CHF 1'000.-- par value each.

| **Chairman:** | Bernhard Lötscher |
|---|---|
| **Secretary:** | Aline Wey Speirs |

## I.    AGENDA

1. Constitution of the Meeting
2. Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
3. Election to the Board of Directors
4. Miscellaneous

## II.   BUSINESS TRANSACTED AND RESOLUTIONS PASSED

### 1.   Constitution of the Meeting

Mr Bernhard Lötscher acts as Chairman of the meeting. Ms Aline Wey Speirs is designated Secretary.

The Chairman states and directs the record to show that all shareholders are either present or validly represented and that the meeting therefore is a plenary meeting in the sense of Article 701 of the Swiss Code of Obligations and of the articles of incorporation which meeting may validly vote and pass resolutions on all matters falling within the powers of the shareholders' meeting without observing the formalities for the calling of a meeting. The Chairman states for the record that the original certificates of the bearer shares of all shareholders present or represented are deposited with STM Steuerberatung & Treuhand Mettler AG, Zurich (see depository agreement "Hinterlegungsvertrag" of July 10, 2006) and are blocked until after this extraordinary shareholders' meeting. The Chairman orders the proxy given by Logany Equity AG to be annexed to the minutes of the meeting as Exhibit A. The minutes may be consulted by the shareholders at the domicile of the company during regular business hours.

The meeting does not object against the above statements of the Chairman.

### 2.   Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
   *("Abwahl der Herren Marco Stoffel, Guido Banholzer and Georges Philippe aus dem Verwaltungsrat")*

The meeting unanimously resolves to dismiss Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors with immediate effect.

*("Die Generalversammlung beschliesst einstimmig, die Herren Marco Stoffel, Guido Banholzer und Georges Philippe mit sofortiger Wirkung aus dem Verwaltungsrat abzuwählen.")*

### 3.   Election to the Board of Directors
   *("Wahl des Verwaltungsrates")*

The meeting unanimously resolves to elect Ms Tanja Scott-Tomlin, Ms Gabriela Krug and Messrs Rodney Hodges, Damiano Della Ca and Ernst Blatter as new members of the Board of Directors for a term of office to last through the next ordinary shareholders' meeting. Copies of their declarations of acceptance and specimen of signature are attached hereto as Exhibit B1 - B5.

*("Die Generalversammlung beschliesst einstimmig, Frau Tanja Scott-Tomlin, Frau Gabriela Krug und die Herren Rodney Hodges, Damiano Della Ca und Ernst Blatter als neue Mitglieder des Verwaltungsrates für eine Amtsdauer bis zur nächsten ordentlichen Generalversammlung zu wählen. Kopien ihrer Annahme- und Zeichnungserklärungen sind diesem Protokoll als Beilagen B1 - B5 angeheftet".)*

- 3 -

**4.    Miscellaneous**

There being no further items brought before the meeting and there being no further business to be transacted and there being no request for information pursuant to Article 697 of the Swiss Code of Obligations, the meeting is closed.

Date:   *6. Dezember 2006, 12.00 Uhr*

The Chairman of the meeting:          The Secretary of the meeting:
*("Der Vorsitzende:")*                    *("Die Protokollführerin:")*


_____          _____
Bernhard Lötscher                        Aline Wey Speirs



**Enclosures:**
A:        Proxy
B1-B5:  Copies of the declarations of acceptance and specimen of signature



**Distribution:**
Clarick AG
Logany Equity AG
M. Stoffel
G. Banholzer
G. Philippe
T. Scott-Tomlin
G. Krug
R. Hodges
D. Della Ca
E. Blatter

**Colleen Investment AG**
**Stansstad**

# MINUTES

of the extraordinary shareholders' meeting, held on December 6, 2006, at the offices of the law firm CMS von Erlach Henrici, Dreikoenigstrasse 7, 8002 Zurich

# *PROTOKOLL*

*der ausserordentlichen Generalversammlung der Aktionäre, abgehalten am 6. Dezember 2006, in den Räumlichkeiten des Advokaturbüros CMS von Erlach Henrici, Dreikönigstrasse 7, 8002 Zürich*

| | | | |
|---|---|---|---|
| **Present:** | Alsam Holding AG, Stansstad, represented by Mr Bernhard Lötscher | 100 | shares |
| | Total of shares present or represented: | 100 | shares |

The aforementioned shares are all bearer shares of CHF 1'000.-- par value each.

**Chairman:**   Bernhard Lötscher

**Secretary:**   Aline Wey Speirs

## I.   AGENDA

1.   Constitution of the Meeting
2.   Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
3.   Election to the Board of Directors
4.   Miscellaneous

- 2 -

## II.    BUSINESS TRANSACTED AND RESOLUTIONS PASSED

### 1.    Constitution of the Meeting

Mr Bernhard Lötscher acts as Chairman of the meeting. Ms Aline Wey Speirs is designated Secretary.

The Chairman states and directs the record to show that all shareholders are either present or validly represented and that the meeting therefore is a plenary meeting in the sense of Article 701 of the Swiss Code of Obligations and of the articles of incorporation which meeting may validly vote and pass resolutions on all matters falling within the powers of the shareholders' meeting without observing the formalities for the calling of a meeting. The Chairman states for the record that the original certificates of the bearer shares of all shareholders present or represented are deposited with STM Steuerberatung & Treuhand Mettler AG, Zurich (see depository agreement "Hinterlegungsvertrag" of July 10, 2006) and are blocked until after this extraordinary shareholders' meeting. The Chairman orders the proxy given by Alsam Holding AG to be annexed to the minutes of the meeting as Exhibit A. The minutes may be consulted by the shareholders at the domicile of the company during regular business hours.

The meeting does not object against the above statements of the Chairman.

### 2.    Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
*("Abwahl der Herren Marco Stoffel, Guido Banholzer and Georges Philippe aus dem Verwaltungsrat")*

The meeting unanimously resolves to dismiss Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors with immediate effect.

*("Die Generalversammlung beschliesst einstimmig, die Herren Marco Stoffel, Guido Banholzer und Georges Philippe mit sofortiger Wirkung aus dem Verwaltungsrat abzuwählen.")*

### 3.    Election to the Board of Directors
*("Wahl des Verwaltungsrates")*

The meeting unanimously resolves to elect Ms Tanja Scott-Tomlin, Ms Gabriela Krug and Messrs Rodney Hodges, Damiano Della Ca and Ernst Blatter as new members of the Board of Directors for a term of office to last through the next ordinary shareholders' meeting. Copies of their declarations of acceptance and specimen of signature are attached hereto as Exhibit B1 - B5.

*("Die Generalversammlung beschliesst einstimmig, Frau Tanja Scott-Tomlin, Frau Gabriela Krug und die Herren Rodney Hodges, Damiano Della Ca und Ernst Blatter als neue Mitglieder des Verwaltungsrates für eine Amtsdauer bis zur nächsten ordentlichen Generalversammlung zu wählen. Kopien ihrer Annahme- und Zeichnungserklärungen sind diesem Protokoll als Beilagen B1 - B5 angeheftet".)*

- 3 -

**4.    Miscellaneous**

There being no further items brought before the meeting and there being no further business to be transacted and there being no request for information pursuant to Article 697 of the Swiss Code of Obligations, the meeting is closed.

Date:  *6. Dezember 2006, 11.45 Uhr*

The Chairman of the meeting:
*("Der Vorsitzende:")*

The Secretary of the meeting:
*("Die Protokollführerin:")*

Bernhard·Lötscher

Aline Wey Speirs

**Enclosures:**
A:        Proxy
B1-B5:  Copy of the declarations of acceptance

**Distribution:**
Colleen Investment AG
Alsam Holding AG
M. Stoffel
G. Banholzer
G. Philippe
T. Scott-Tomlin
G. Krug
R. Hodges
D. Della Ca
E. Blatter

**Logany Equity AG**
**Stansstad**


# MINUTES

of the extraordinary shareholders' meeting, held on December 6, 2006, at the offices of the law firm CMS von Erlach Henrici, Dreikoenigstrasse 7, 8002 Zurich


# *PROTOKOLL*

*der ausserordentlichen Generalversammlung der Aktionäre, abgehalten am 6. Dezember 2006, in den Räumlichkeiten des Advokaturbüros CMS von Erlach Henrici, Dreikönigstrasse 7, 8002 Zürich*


| **Present:** | Vistra Trust Company (Jersey) Ltd., St. Helier, Jersey, represented by Mr Bernhard Lötscher | 100 | shares |
| --- | --- | --- | --- |
| | Total of shares present or represented: | 100 | shares |

The aforementioned shares are all bearer shares of CHF 1'000.-- par value each.


| **Chairman:** | Bernhard Lötscher |
| --- | --- |
| **Secretary:** | Aline Wey Speirs |


## I.    AGENDA

1.    Constitution of the Meeting
2.    Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
3.    Election to the Board of Directors
4.    Miscellaneous

## II.   BUSINESS TRANSACTED AND RESOLUTIONS PASSED

### 1.   Constitution of the Meeting

Mr Bernhard Lötscher acts as Chairman of the meeting. Ms Aline Wey Speirs is designated Secretary.

The Chairman states and directs the record to show that all shareholders are either present or validly represented and that the meeting therefore is a plenary meeting in the sense of Article 701 of the Swiss Code of Obligations and of the articles of incorporation which meeting may validly vote and pass resolutions on all matters falling within the powers of the shareholders' meeting without observing the formalities for the calling of a meeting. The Chairman states for the record that the original certificates of the bearer shares of all shareholders present or repre-sented are deposited with STM Steuerberatung & Treuhand Mettler AG, Zurich (see depository agreement "Hinterlegungsvertrag" of July 10, 2006) and are blocked until after this extraordinary shareholders' meeting. The Chairman orders the proxy given by Vistra Trust Company (Jersey) Ltd. to be annexed to the minutes of the meeting as Exhibit A. The minutes may be consulted by the shareholders at the domicile of the company during regular business hours.

The meeting does not object against the above statements of the Chairman.

### 2.   Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
   *("Abwahl der Herren Marco Stoffel, Guido Banholzer and Georges Philippe aus dem Verwaltungsrat")*

The meeting unanimously resolves to dismiss Messrs Marco Stoffel, Guido Banholzer and Geor-ges Philippe from the Board of Directors with immediate effect.

*("Die Generalversammlung beschliesst einstimmig, die Herren Marco Stoffel, Guido Banholzer und Georges Philippe mit sofortiger Wirkung aus dem Verwaltungsrat abzuwählen.")*

### 3.   Election to the Board of Directors
   *("Wahl des Verwaltungsrates")*

The meeting unanimously resolves to elect Ms Tanja Scott-Tomlin, Ms Gabriela Krug and Messrs Rodney Hodges, Damiano Della Ca and Ernst Blatter as new members of the Board of Directors for a term of office to last through the next ordinary shareholders' meeting. Copies of their declarations of acceptance and specimen of signature are attached hereto as Exhibit B1 - B5.

*("Die Generalversammlung beschliesst einstimmig, Frau Tanja Scott-Tomlin, Frau Gabriela Krug und die Herren Rodney Hodges, Damiano Della Ca und Ernst Blatter als neue Mitglieder des Verwaltungsrates für eine Amtsdauer bis zur nächsten ordentlichen Generalversammlung zu wählen. Kopien ihrer Annahme- und Zeichnungserklärungen sind diesem Protokoll als Beilagen B1 - B5 angeheftet".)*

- 3 -

**4.     Miscellaneous**

There being no further items brought before the meeting and there being no further business to be transacted and there being no request for information pursuant to Article 697 of the Swiss Code of Obligations, the meeting is closed.

Date:  *6. Dezember 2006, 11.55 Uhr*

The Chairman of the meeting:      The Secretary of the meeting:
*("Der Vorsitzende:")*      *("Die Protokollführerin:")*

Bernhard Lötscher      Aline Wey Speirs

**Enclosures:**
A:      Proxy
B1-B5:  Copies of the declarations of acceptance and specimen of signature


**Distribution:**
Logany Equity AG
Vistra Trust Company (Jersey) Ltd.
M. Stoffel
G. Banholzer
G. Philippe
T. Scott-Tomlin
G. Krug
R. Hodges
D. Della Ca
E. Blatter

Vierwaldstätter Beteiligungen AG
Stansstad

# MINUTES

of the extraordinary shareholders' meeting, held on December 6, 2006, at the offices of the law firm CMS von Erlach Henrici, Dreikoenigstrasse 7, 8002 Zurich

# *PROTOKOLL*

*der ausserordentlichen Generalversammlung der Aktionäre, abgehalten am 6. Dezember 2006, in den Räumlichkeiten des Advokaturbüros CMS von Erlach Henrici, Dreikönigstrasse 7, 8002 Zürich*

| **Present:** | Logany Equity AG, Stansstad, represented by Mr Bernhard Lötscher | 100 | shares |
|---|---|---|---|
| | Total of shares present or represented: | 100 | shares |

The aforementioned shares are all bearer shares of CHF 1'000.-- par value each.

| **Chairman:** | Bernhard Lötscher |
|---|---|
| **Secretary:** | Aline Wey Speirs |

# I.    AGENDA

1.    Constitution of the Meeting
2.    Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
3.    Election to the Board of Directors
4.    Miscellaneous

## II.    BUSINESS TRANSACTED AND RESOLUTIONS PASSED

### 1.    Constitution of the Meeting

Mr Bernhard Lötscher acts as Chairman of the meeting. Ms Aline Wey Speirs is designated Secretary.

The Chairman states and directs the record to show that all shareholders are either present or validly represented and that the meeting therefore is a plenary meeting in the sense of Article 701 of the Swiss Code of Obligations and of the articles of incorporation which meeting may validly vote and pass resolutions on all matters falling within the powers of the shareholders' meeting without observing the formalities for the calling of a meeting. The Chairman states for the record that the original certificates of the bearer shares of all shareholders present or represented are deposited with STM Steuerberatung & Treuhand Mettler AG, Zurich (see depository agreement "Hinterlegungsvertrag" of July 10, 2006) and are blocked until after this extraordinary shareholders' meeting. The Chairman orders the proxy given by Logany Equity AG to be annexed to the minutes of the meeting as Exhibit A. The minutes may be consulted by the shareholders at the domicile of the company during regular business hours.

The meeting does not object against the above statements of the Chairman.

### 2.    Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
### *("Abwahl der Herren Marco Stoffel, Guido Banholzer and Georges Philippe aus dem Verwaltungsrat")*

The meeting unanimously resolves to dismiss Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors with immediate effect.

*("Die Generalversammlung beschliesst einstimmig, die Herren Marco Stoffel, Guido Banholzer und Georges Philippe mit sofortiger Wirkung aus dem Verwaltungsrat abzuwählen.")*

### 3.    Election to the Board of Directors
### *("Wahl des Verwaltungsrates")*

The meeting unanimously resolves to elect Ms Tanja Scott-Tomlin, Ms Gabriela Krug and Messrs Rodney Hodges, Damiano Della Ca and Ernst Blatter as new members of the Board of Directors for a term of office to last through the next ordinary shareholders' meeting. Copies of their declarations of acceptance and specimen of signature are attached hereto as Exhibit B1 - B5.

*("Die Generalversammlung beschliesst einstimmig, Frau Tanja Scott-Tomlin, Frau Gabriela Krug und die Herren Rodney Hodges, Damiano Della Ca und Ernst Blatter als neue Mitglieder des Verwaltungsrates für eine Amtsdauer bis zur nächsten ordentlichen Generalversammlung zu wählen. Kopien ihrer Annahme- und Zeichnungserklärungen sind diesem Protokoll als Beilagen B1 - B5 angeheftet".)*

- 3 -

**4.    Miscellaneous**

There being no further items brought before the meeting and there being no further business to be transacted and there being no request for information pursuant to Article 697 of the Swiss Code of Obligations, the meeting is closed.

Date:    *6. Dezember 2006, 12.05 Uhr*

The Chairman of the meeting:    The Secretary of the meeting:
*("Der Vorsitzende:")*    *("Die Protokollführerin:")*


Bernhard Lötscher    Aline Wey Speirs


**Enclosures:**
A:    Proxy
B1-B5:  Copies of the declarations of acceptance and specimen of signature


**Distribution:**
Vierwaldstätter Beteiligungen AG
Logany Equity AG
M. Stoffel
G. Banholzer
G. Philippe
T. Scott-Tomlin
G. Krug
R. Hodges
D. Della Ca
E. Blatter


200946/gv/06/00105343.doc/AWE/mme

**Penny Asset AG**
**Stansstad**

# MINUTES

of the extraordinary shareholders' meeting, held on December 6, 2006, at the offices of the law firm CMS von Erlach Henrici, Dreikoenigstrasse 7, 8002 Zurich

# *PROTOKOLL*

*der ausserordentlichen Generalversammlung der Aktionäre, abgehalten am 6. Dezember 2006, in den Räumlichkeiten des Advokaturbüros CMS von Erlach Henrici, Dreikönigstrasse 7, 8002 Zürich*

| | | | |
|---|---|---|---|
| **Present:** | Alsam Holding AG, Stansstad, represented by Mr Bernhard Lötscher | 100 | shares |
| | Total of shares present or represented: | 100 | shares |

The aforementioned shares are all bearer shares of CHF 1'000.-- par value each.

**Chairman:**    Bernhard Lötscher

**Secretary:**    Aline Wey Speirs

## I.    AGENDA

1.  Constitution of the Meeting
2.  Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
3.  Election to the Board of Directors
4.  Miscellaneous

## II.    BUSINESS TRANSACTED AND RESOLUTIONS PASSED

### 1.    Constitution of the Meeting

Mr Bernhard Lötscher acts as Chairman of the meeting. Ms Aline Wey Speirs is designated Secretary.

The Chairman states and directs the record to show that all shareholders are either present or validly represented and that the meeting therefore is a plenary meeting in the sense of Article 701 of the Swiss Code of Obligations and of the articles of incorporation which meeting may validly vote and pass resolutions on all matters falling within the powers of the shareholders' meeting without observing the formalities for the calling of a meeting. The Chairman states for the record that the original certificates of the bearer shares of all shareholders present or represented are deposited with STM Steuerberatung & Treuhand Mettler AG, Zurich (see depository agreement "Hinterlegungsvertrag" of July 10, 2006) and are blocked until after this extraordinary shareholders' meeting. The Chairman orders the proxy given by Alsam Holding AG to be annexed to the minutes of the meeting as Exhibit A. The minutes may be consulted by the shareholders at the domicile of the company during regular business hours.

The meeting does not object against the above statements of the Chairman.

### 2.    Dismissal of Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors
    (*"Abwahl der Herren Marco Stoffel, Guido Banholzer and Georges Philippe aus dem Verwaltungsrat"*)

The meeting unanimously resolves to dismiss Messrs Marco Stoffel, Guido Banholzer and Georges Philippe from the Board of Directors with immediate effect.

(*"Die Generalversammlung beschliesst einstimmig, die Herren Marco Stoffel, Guido Banholzer und Georges Philippe mit sofortiger Wirkung aus dem Verwaltungsrat abzuwählen."*)

### 3.    Election to the Board of Directors
    (*"Wahl des Verwaltungsrates"*)

The meeting unanimously resolves to elect Ms Tanja Scott-Tomlin, Ms Gabriela Krug and Messrs Rodney Hodges, Damiano Della Ca and Ernst Blatter as new members of the Board of Directors for a term of office to last through the next ordinary shareholders' meeting. Copies of their declarations of acceptance and specimen of signature are attached hereto as Exhibit B1 - B5.

(*"Die Generalversammlung beschliesst einstimmig, Frau Tanja Scott-Tomlin, Frau Gabriela Krug und die Herren Rodney Hodges, Damiano Della Ca und Ernst Blatter als neue Mitglieder des Verwaltungsrates für eine Amtsdauer bis zur nächsten ordentlichen Generalversammlung zu wählen. Kopien ihrer Annahme- und Zeichnungserklärungen sind diesem Protokoll als Beilagen B1 - B5 angeheftet".*)

**4.    Miscellaneous**

There being no further items brought before the meeting and there being no further business to be transacted and there being no request for information pursuant to Article 697 of the Swiss Code of Obligations, the meeting is closed.

Date: *6. Dezember 2006, 11.50 Uhr*

The Chairman of the meeting:
*("Der Vorsitzende:")*

The Secretary of the meeting:
*("Die Protokollführerin:")*

Bernhard Lötscher

Aline Wey Speirs

**Enclosures:**
A:       Proxy
B1-B5:  Copies of the declarations of acceptance

**Distribution:**
Penny Asset AG
Alsam Holding AG
M. Stoffel
G. Banholzer
G. Philippe
T. Scott-Tomlin
G. Krug
R. Hodges
D. Della Ca
E. Blatter

# EXHIBIT 27

## COLLEEN INVESTMENT, L.L.C.

### Written Consent of Sole Member

The undersigned, the sole member of Colleen Investment, L.L.C., a Delaware limited liability company (the "Company"), in accordance with Section 18-302(d) of the Delaware Limited Liability Company Act, hereby consents to the taking of the following actions and directs that this consent be filed with the minutes of proceedings of the Company:

RESOLVED, that any limited liability company agreement (as defined by Section 18-101(7) of the Delaware Limited Liability Company Act) of the Company existing as of the date hereof be and the same hereby is replaced in its entirety by the Limited Liability Company Agreement of Colleen Investment, L.L.C. in the form attached hereto as Exhibit A (the "Limited Liability Agreement"); and further

RESOLVED, that the number of managers that shall constitute the whole Board of Managers (as defined in the Limited Liability Agreement) shall be one (1); and further

RESOLVED, that Rodney Hodges be and he hereby is elected the Manager of the Company, to hold office until his successor is elected and qualified, unless he shall sooner die, resign or be removed from office; and further

RESOLVED, that the Manager of the Company be and he hereby is authorized and directed to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, documents, instruments and other papers, and to do or cause to be done on behalf of the Company all such acts as he may deem necessary or appropriate to carry out the purposes and intent of the foregoing resolutions.

Date:   December 7, 2006

COLLEEN INVESTMENT, A.G.

By_____
Director

Tanya Scott-Tomlin
Director

NY2 - 461227.01

# EXHIBIT 28

**COLLEEN INVESTMENT, L.L.C.**

_____

**Written Consent of Manager**

_____

The undersigned, the Manager of Colleen Investment, L.L.C., a Delaware limited

liability company (the "Company"), in accordance with the Limited Liability Company

Agreement of the Company dated as of December 7 , 2006, hereby consents to the taking

of the following actions and directs that this consent be filed with the minutes of proceedings

of the Company:

RESOLVED, that any and all persons currently authorized to act as an officer of
the Company as of the date hereof be and the same hereby are replaced with the following
persons who are elected to the offices set forth opposite their name, each to hold office until
his or her successor is elected and qualified, unless he or she shall sooner die, resign or be
removed from office:

| Name | Office |
|------|--------|
| Rodney Hodges | President and Treasurer |
| Tanya Scott-Tomlin | Vice President and Secretary |

; and further

RESOLVED, that the Company be and it hereby is authorized and directed to
change its registered office and registered agent to Corporation Service Company, 2711
Centreville Road, Suite 400, Wilmington, Delaware 19808, and in connection with the
foregoing, the Certificate of Amendment to the Certificate of Formation of the Company in
the form attached hereto as Exhibit A be and the same hereby is approved (the "Certificate
Amendment"); and further

RESOLVED, that the President of the Company be and he hereby is authorized
and directed to execute and deliver in the name and on behalf of the Company the Certificate
of Amendment, with such changes as he by his execution may approve, his execution and
delivery thereof to be conclusive evidence that the same has been authorized by the Company;
and further

RESOLVED, that the proper officers of the Company be and each of them hereby is authorized and directed to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, documents, instruments and other papers, and to do or cause to be done on behalf of the Company all such acts as they may deem necessary or appropriate to carry out the purposes and intent of the foregoing resolutions.

Date:   December 7 , 2006

_____
Rodney Hodges

2

**LOGANY, L.L.C.**

---

**Written Consent of Manager**

---

The undersigned, the Manager of Logany, L.L.C., a Delaware limited liability company (the "Company"), in accordance with the Limited Liability Company Agreement of the Company dated as of December 7, 2006, hereby consents to the taking of the following actions and directs that this consent be filed with the minutes of proceedings of the Company:

RESOLVED, that any and all persons currently authorized to act as an officer of the Company as of the date hereof be and the same hereby are replaced with the following persons who are elected to the offices set forth opposite their name, each to hold office until his or her successor is elected and qualified, unless he or she shall sooner die, resign or be removed from office:

| Name | Office |
|------|--------|
| Rodney Hodges | President and Treasurer |
| Tanya Scott-Tomlin | Vice President and Secretary |

; and further

RESOLVED, that the Company be and it hereby is authorized and directed to change its registered office and registered agent to Corporation Service Company, 2711 Centreville Road, Suite 400, Wilmington, Delaware 19808, and in connection with the foregoing, the Certificate of Amendment to the Certificate of Formation of the Company in the form attached hereto as Exhibit A be and the same hereby is approved (the "Certificate Amendment"); and further

RESOLVED, that the President of the Company be and he hereby is authorized and directed to execute and deliver in the name and on behalf of the Company the Certificate of Amendment, with such changes as he by his execution may approve, his execution and delivery thereof to be conclusive evidence that the same has been authorized by the Company; and further

RESOLVED, that the proper officers of the Company be and each of them hereby is authorized and directed to make, execute and deliver, or cause to be made, executed and delivered, all such agreements, documents, instruments and other papers, and to do or cause to be done on behalf of the Company all such acts as they may deem necessary or appropriate to carry out the purposes and intent of the foregoing resolutions.

Date:   December 7, 2006

_____
Rodney Hodges

2

# EXHIBIT 29

```
 1
 2     IN THE COURT OF CHANCERY OF THE STATE OF
       DELAWARE
 3
       IN AND FOR NEW CASTLE COUNTY
 4
 5     ------------------------------------x
 6     COLLEEN INVESTMENT AG,
       COLLEEN INVESTMENT L.L.C.,   and
 7     LOGANY, L.L.C.,
                                  Plaintiffs,
 8
                      vs.
 9
       MARCO STOFFEL,
10
                                  Defendant.
11
       ------------------------------------x
12
13                     November 20, 2007
14                     10:10 a.m.
15
16
17        Deposition of ALINE WEY SPEIRS, held
18     at the offices of Chadbourne & Parke, 30
19     Rockefeller Plaza, New York, New York,
20     before David Henry, a Certified Shorthand
21     Reporter and Notary Public of the State of
22     New York.
23
24
25
```

Page 2

1
2  A P P E A R A N C E S :
3
4  CHADBOURNE & PARKE, LLP
5  Attorneys for Plaintiffs
6    30 Rockefeller Plaza
7    New York, New York 10112
8  BY: SCOTT S. BALBER, ESQ.
9
10  MORRISON & FOERSTER, LLP
11  Attorneys for Defendant
12    1290 Avenue of the Americas
13    New York, New York 10104-0050
14  BY: THOMAS M. MUELLER, ESQ.
15
16
17
18
19
20
21
22
23
24
25

Page 4

1          Wey Speirs
2  cannot testify truthfully and accurately
3  here today?
4    A.  No
5    Q.  Okay, are you under any
6  medication that might inhibit your ability
7  to testify?
8    A.  No.
9    Q.  Okay.  Could you state your full
10  name for the record, please?
11    A.  Aline Wey Speirs.
12    Q.  And are you an attorney?
13    A.  Yes.
14    Q.  And where are you admitted to
15  practice?
16    A   At the Zurich bar.
17    Q.  And when were you admitted to
18  practice in Zurich?
19    A.  2005.
20    Q.  And whom are you employed by
21  currently?
22    A.  By CMS von Erlach Henrici.
23    Q.  And what is your position at the
24  firm?
25    A   I am an associate.

Page 3

1          Wey Speirs
2  A L I N E   W E Y   S P E I R S ,  called as
3    a witness, having been duly sworn, was
4    examined and testified as follows:
5
6  EXAMINATION BY MR. MUELLER:
7    Q.  Good morning, Ms. Speirs.  My
8  name is Tom Mueller, I'm a lawyer with
9  Morrison & Foerster representing
10  Dr. Stoffel in these disputes.  I'm going
11  to be asking you some questions today.
12  Have you ever had your deposition taken?
13    A.  No.
14    Q.  Okay, I will ask questions.
15  Obviously if you don't understand the
16  question, please let me know and I'll try
17  and rephrase it.  I understand English is
18  not your native language?
19    A.  That's true.
20    Q.  Again, if I speak too quickly,
21  let me know and I will try to slow down.
22  And if there is anything that you don't
23  understand, let me know.  I will try to
24  keep the questions intelligible.
25          Is there any reason why you

Page 5

1          Wey Speirs
2    Q.  And how long have you been with
3  the firm?
4    A.  More than one year.
5    Q.  And before that did you have a
6  job or were you a student?
7    A.  No, I was working, I was a court
8  clerk.
9    Q.  Do you have any particular
10  specialty at your firm, litigation,
11  transactional work, anything along those
12  lines?
13    A.  Right, mostly doing litigation
14  arbitration.
15    Q.  Is CMS von Erlach Henrici a
16  member of the CMS Group?
17    A.  Yes
18    Q.  Could you describe the CMS Group,
19  what it is?
20    A.  It's an alliance of European law
21  firms
22    Q.  And approximately how many
23  lawyers are in this alliance?
24    A   I'm sorry, I don't know
25  Thousands. I don't know

2 (Pages 2 to 5)

# EXHIBIT 30

# URS CHRISTEN

URS CHRISTEN

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

IN AND FOR NEW CASTLE COUNTY

| | |
|---|---|
| COLLEEN INVESTMENT AG,<br>COLLEEN INVESTMENT, L.L.C.,<br>and LOGANY, L.L.C., | )<br>)Civil Action<br>)No. 2672-N |
| Plaintiffs, | )<br>) |
| vs. | )<br>) |
| MARCO STOFFEL, | )<br>) |
| Defendant. | ) |
| ---------------------------- | ) |

Wednesday, November 21, 2007
9:21 a.m.

Deposition of URS CHRISTEN,
held at the offices of Chadbourne &
Parke, LLP, 30 Rockefeller Plaza, New
York, New York 10016, pursuant to
Notice, before Otis Davis, a Notary
Public of the State of New York.

URS CHRISTEN

Page 2

URS CHRISTEN
1
2  A P P E A R A N C E S:
3  CHADBOURNE & PARKE, LLP
4  Counsel for Plaintiffs
5      30 Rockefeller Plaza
6      New York, New York 10112
7  BY:  SCOTT S. BALBER, ESQ.
8  AND: JONATHAN C. CROSS, ESQ.
9
10  CMS von ERLACH HENRICI
11  Counsel for plaintiffs
12      Dreikonigstrasse 7
13      Postfach/P.O. Box 2991
14      CH-8022 Zurich
15  BY:  ALINE WEY SPEIRS, ESQ.
16
17  MORRISON & FOERSTER, LLP
18  Counsel for Defendant
19      1290 Avenue of the Americas
20      New York, New York 10104
21  BY:  THOMAS M. MUELLER, ESQ.
22
23  ALSO PRESENT:
24      HARRIS TERAN, Videographer
25      PETRA S. GEHRUNG, German Interpreter

Page 4

URS CHRISTEN
1
2      MS. SPEIRS:  Aline Wey Speirs
3  for the plaintiffs from CMS von Erlach
4  Henrici.
5      MR. MUELLER:  Thomas Mueller
6  for Marco Stoffel.  And for purposes
7  of this deposition, I am also
8  representing Mr. Christens.
9      THE VIDEOGRAPHER:  Our court
10  reporter is Otis Davis.
11      Mr. Court reporter, would you
12  please swear in the interpreter and
13  the witness.
14  P E T R A    S.   G E H R U N G, was
15  duly sworn to interpret the questions
16  from English into German and the
17  answers from German into English.
18  U R S     C H R I S T E N, called as a
19  witness, having been duly sworn by
20  Otis Davis, a Notary Public of the
21  State of New York, was examined and
22  testified through the interpreter as
23  follows:
24  EXAMINATION BY
25  MR. BALBER:

Page 3

URS CHRISTEN
1
2      THE VIDEOGRAPHER:  Good
3  morning.  We're now on the record.  My
4  name is Harris Teran of Merrill Legal
5  Solutions, 25 West 45th Street, New
6  York, New York 10036.
7      Today is November 21, 2007.
8  The time is currently 9:21 a.m.  We
9  are at the offices of Chadbourne &
10  Parke, 30 Rockefeller Plaza in New
11  York City to take the videotaped
12  deposition of Mr. Urs Christen, in the
13  matter of Colleen Investment AG, et
14  al. versus Marco Stoffel, In The Court
15  of Chancery, State of Delaware, In And
16  For New Castle County, Action Number
17  2672-N.
18      Will counsel present please
19  introduce themselves.
20      MR. BALBER:  Scott Balber from
21  Chadbourne & Parke on behalf of
22  Colleen Investment AG, Colleen
23  Investment, LLC and Logany, LLC; and
24  with me from Chadbourne & Parke is
25  Jonathan Cross.

Page 5

URS CHRISTEN
1
2      Q.   Good morning, Mr. Christen.
3  Today, I am going to ask you a series of
4  questions, and you need to answer my
5  questions completely and truthfully.
6      Is that okay?
7      A.   Yes.
8      Q.   If at any time I ask you a
9  question that you do not understand, please
10  let me know, and I will try to rephrase it
11  for you.
12      A.   Yes.
13      Q.   You need to answer all of my
14  questions orally, the court reporter can't
15  transcribe a nod of the head or a gesture.
16      A.   Yes.
17      Q.   And if you need to take a break
18  at any time, please let me know, and we
19  will try to accommodate you.
20      You are represented by
21  Mr. Mueller today?
22      A.   Yes.
23      Q.   Mr. Mueller is also
24  Dr. Stoffel's attorney, correct?
25      A.   Yes.

2  (Pages 2 to 5)

b2f13438-4b13-4239-8a14-437cbff01918

URS CHRISTEN

Page 138

URS CHRISTEN

1     URS CHRISTEN
2     A.   Most of the time.
3     Q.   Then why wouldn't you let the
4  representatives of the registered directors
5  take copies of the documents like you let
6  Stoffel do in May?  Why not?
7         MR. MUELLER:  Objection.  Asked
8     and answered.  But you can answer
9     again.
10    A.   It's not exactly the same.
11 Firstly, we have this Swiss legal
12 proceedings; and then secondly, Mr. Stoffel
13 was here as one single person and it
14 allowed him to make a few dozen copies.
15       When we got in the
16 representatives of Vistra and KPMG, there
17 were five to ten people and they wanted to
18 copy entire boxes.
19    Q.   You, Mr. Christen, has had
20 absolutely unfettered access to all the
21 documents in your firm's possession since
22 you obtained them in February or March of
23 2007, right?
24    A.   Yes, that's in the nature of
25 the matter.

Page 139

URS CHRISTEN

1     URS CHRISTEN
2         MR. BALBER:  I have no further
3     questions.
4         THE VIDEOGRAPHER:  Any
5     follow-up, counsel?
6         MR. MUELLER:  I just have a
7     couple.
8  EXAMINATION BY
9  MR. MUELLER:
10    Q.   Mr. Christen, you testified
11 earlier that Dr. Stoffel presented himself
12 as the hundred percent shareholder before
13 the January 16th shareholders' meeting,
14 correct?
15       MR. BALBER:  Object to the form
16    of the question.
17    A.   Yes.
18    Q.   What did you mean by "presented
19 himself"?  How did he present himself?
20    A.   Before we were able to have a
21 shareholder meeting on January 16, we had
22 to provide proof before a notary regarding
23 the property of the shares, and according
24 to the minutes of the meeting, of that
25 shareholder meeting, he provided proof of

Page 140

URS CHRISTEN

1     URS CHRISTEN
2  that.  And thirdly, he had then, according
3  to that, delivered or shipped those shares
4  to my attorney in Switzerland.
5     Q.   Earlier today, you spoke about
6  a conversation with Dr. Stoffel regarding
7  the delays at the customs or airport or
8  with the shipper relating to the 26 boxes
9  that were sent to you from New York.
10       Do you recall that?
11    A.   Yes.
12    Q.   At the time, you testified that
13 you assumed that that conversation with
14 Dr. Stoffel had happened sometime in
15 January.
16       Do you recall that?
17    A.   Yes.
18       MR. BALBER:  Object to the form
19    of the question.
20    Q.   Do you know when that
21 conversation took place?
22    A.   This information I received
23 about the delivery of files was somewhere
24 in between January and before the
25 extraordinary shareholder meeting of

Page 141

URS CHRISTEN

1     URS CHRISTEN
2  January 16.
3     Q.   And that was a discussion with
4  Dr. Stoffel about his sending you the
5  documents, correct?
6         MR. BALBER:  Object to the form
7     of the question.
8         MR. MUELLER:  Strike the
9     question.
10    Q.   I'm differentiating here
11 between two different conversations.  You
12 testified this morning that you had a
13 conversation with Dr. Stoffel about him
14 sending you documents, you then testified
15 about a separate conversation in which you
16 talked about the delay in the shipment at
17 customs and at the airport.
18       My question pertains to the
19 second conversation.  The second
20 conversation about the delay of the
21 shipment of boxes at the shipper or at
22 customs or at the airport, do you know when
23 that conversation occurred?
24       MR. BALBER:  Object to the form
25    of the question.

36  (Pages 138 to 141)

b2f13438-4b13-4239-8a14-437cbff01918

## URS CHRISTEN

Page 142

```
 1         URS CHRISTEN
 2    A.   This occurred, as I recall, in
 3 the second half of January 2007.
 4    Q.   Finally, if I can show you
 5 Exhibit 5, which is your fax to Mr. Lowell
 6 at Chadbourne and Ms. Schweitzer at Cleary
 7 Gottlieb.
 8         The cost estimate of 140,000
 9 Swiss francs that you gave, was that for
10 paper copies of the documents or something
11 else?
12    A.   The idea here was that we are
13 not supposed to have paper copies, but to
14 deliver electronic data.
15    Q.   And these costs were for the
16 preparation of the electronic files?
17    A.   That was an estimate for the
18 cost for the preparation of electronic
19 files, as I stated in this e-mail.
20         MR. MUELLER:  Thank you.  No
21 further questions.
22         MR. BALBER:  I have just a
23 couple more.
24 EXAMINATION BY
25 MR. BALBER:
```

Page 143

```
 1         URS CHRISTEN
 2    Q.   Mr. Christen, have you received
 3 or sent e-mails in your capacity as a
 4 director of the Swiss companies?
 5         MR. MUELLER:  Objection as to
 6 form.
 7         What's the relevance to the
 8 sanctions motion for that question?
 9         MR. BALBER:  What?
10         MR. MUELLER:  What's the
11 relevance to the sanctions motion for
12 that question?
13         MR. BALBER:  I want to know if
14 those documents have been preserved.
15    A.   I can't recall.
16    Q.   Does your firm maintain
17 electronic records of the e-mails sent and
18 received?
19         MR. MUELLER:  Please don't
20 assume.  If you know, you know.  If
21 you don't know, don't guess.
22    A.   I am not an IT specialist.  I
23 assume that those data is kept.
24         MR. BALBER:  I have no further
25 questions.  Thanks.
```

Page 144

```
 1         URS CHRISTEN
 2         THE VIDEOGRAPHER:  Anything
 3 else, counsel?
 4         MR. MUELLER:  No further
 5 questions.
 6         THE VIDEOGRAPHER:  This
 7 concludes today's videotaped
 8 deposition.  The time is 2:35 p.m.,
 9 this is the end of tape 3 of 3.  We're
10 now off the record.
11         (Time noted: 2:35 p.m.)
12
13         _____
14           URS CHRISTEN
15
16
17 Subscribed and sworn to before me
18 this ____ day of _____ 2007.
19
20 _____
21
22
23
24
25
```

Page 145

```
 1
 2         *** ERRATA SHEET ***
 3
 4
 5
   NAME OF CASE:  Colleen Investment vs. Stoffel
 6 DATE OF DEPOSITION:  November 21, 2007
   NAME OF WITNESS:  URS CHRISTEN
 7 PAGE  LINE       FROM          TO
 8 |____|____|_____|_____|
 9 |____|____|_____|_____|
10 |____|____|_____|_____|
11 |____|____|_____|_____|
12 |____|____|_____|_____|
13 |____|____|_____|_____|
14 |____|____|_____|_____|
15 |____|____|_____|_____|
16 |____|____|_____|_____|
17 |____|____|_____|_____|
18 _____
          URS CHRISTEN
19
20 Subscribed and sworn to before me
   This _____ day of _____, 2007.
21
22 _____
   (Notary Public)     My Commission Expires:
23
24
25
```

37 (Pages 142 to 145)

b2f13438-4b13-4239-8a14-437cbff01918

# EXHIBIT 31

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

COLLEEN INVESTMENT AG   )
COLLEEN INVESTMENT L.L.C., and )
LOGANY, L.L C.,      )
            )
    Plaintiffs,    )
            )  Civil Action No. 2672-VCS
  v.        )
            )
MARCO STOFFEL,    )
            )
    Defendant.    )

## MOTION FOR COMMISSION FOR ABBE D. LOWELL

   Defendant Marco Stoffel ("Defendant") hereby moves this Court, pursuant to 10 *Del. C* § 368, for an order, in the form attached hereto, directing that a Commission be issued for testimony outside of the State of Delaware from non-party Abbe D. Lowell, of McDermott Will & Emery, 600 W. 13th Street, N.W., Washington, D.C., 20005-3096, and for the issuance of a subpoena *ad testificandum* relating thereto.  Unless otherwise agreed to by the parties or ordered by a court, the deposition shall commence at 9:00 a.m. on November 6, 2007, at the offices of Morrison & Foerster, LLP ("Morrison & Foerster"), 1290 Avenue of the Americas, New York, New York, 10104, shall continue from day to day until completed, and shall be recorded via analog or digital video and audio methods and/or stenographic methods.

   The grounds for this motion are as follows:  Mr. Lowell is an out-of-state individual and is not a party to this action.  Mr. Lowell is a former attorney of Plaintiffs, and corresponded with custodians of the books and records of the Delaware LLCs to arrange for access to these documents.  His testimony is necessary in order to ascertain the efforts that Plaintiffs have made to access the documents they claim Defendant has wrongfully prevented

them from seeing, the reasons for their failure to seek access to the documents, and any access that Plaintiffs may in fact have had to the documents. Such testimony thus is relevant and material to the issues involved in the pending Motion for Sanctions. Finally, compulsory process is required to compel the necessary testimony.

WHEREFORE, Defendant respectfully requests that the Court issue an order directing that a commission be issued permitting him to obtain the deposition of Mr. Lowell.

OF COUNSEL:

Thomas M. Mueller
MORRISON & FOERSTER, LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000

Dated: October 23, 2007

THE BAYARD FIRM, P.A.

_____
Peter B. Ladig (#3513)
222 Delaware Avenue, Suite 900
P.O. Box 25310
Wilmington, Delaware 19899
(302)655-5000
*Attorneys for Defendant*

2

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

COLLEEN INVESTMENT AG          )
COLLEEN INVESTMENT L.L.C., and )
LOGANY, L.L.C.,                )
                               )
            Plaintiffs,        )
                               )        Civil Action No. 2672-VCS
      v.                       )
                               )
MARCO STOFFEL,                 )
                               )
            Defendant.         )

## MOTION FOR COMMISSION FOR SCOTT BALBER

Defendant Marco Stoffel ("Defendant") hereby moves this Court, pursuant to 10 *Del C* § 368, for an order, in the form attached hereto, directing that a Commission be issued for the production of documents and for testimony outside of the State of Delaware from non-party Scott Balber, of Chadbourne & Parke, LLP, 30 Rockefeller Plaza, New York, New York, 10112, and for the issuance of subpoenas *duces tecum* and *ad testificandum* relating thereto. Unless otherwise agreed to by the parties or ordered by a court, the production of documents shall take place on or before November 3, 2007, at the offices of Morrison & Foerster, LLP ("Morrison & Foerster"), 1290 Avenue of the Americas, New York, New York, 10104, and the deposition shall commence at 9:00 a.m. on November 5, 2007, at the offices of Morrison & Foerster, shall continue from day to day until completed, and shall be recorded via analog or digital video and audio methods and/or stenographic methods.

The grounds for this motion are as follows:  Mr. Balber is an out-of-state individual and is not a party to this action.  As a representative of Plaintiffs in this and in the related actions, Mr. Balber has knowledge of all efforts Plaintiffs have made to access the

documents they claim Defendant has wrongfully prevented them from seeing. Mr. Balber will be able to testify as to any communications Plaintiffs have had with the custodians of the documents or with Mr. Urs Christen. He will be able to explain whether Plaintiffs have attempted to access the documents, the efforts they have made to access the documents, any failure to seek access to the documents, and any access that Plaintiffs may in fact have had to the documents. Such testimony thus is relevant and material to the issues involved in the pending Motion for Sanctions, because it goes to the heart of whether Defendant has attempted to withhold any documents from Plaintiffs. Finally, compulsory process is required to compel the necessary testimony.

WHEREFORE, Defendant respectfully requests that the Court issue an order directing that a commission be issued permitting him to obtain the production of documents from, and the deposition of, Mr. Balber.

OF COUNSEL:

Thomas M. Mueller
MORRISON & FOERSTER, LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000

Dated: October 23, 2007

THE BAYARD FIRM, P.A.

Peter B. Ladig (#3513)
222 Delaware Avenue, Suite 900
P.O. Box 25310
Wilmington, Delaware 19899
(302)655-5000
*Attorneys for Defendant*

2

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY

| | | |
|---|---|---|
| COLLEEN INVESTMENT AG | ) | |
| COLLEEN INVESTMENT L.L.C., and | ) | |
| LOGANY, L.L.C., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2672-VCS |
| v. | ) | |
| | ) | |
| MARCO STOFFEL, | ) | |
| | ) | |
| Defendant. | ) | |

## MOTION FOR COMMISSION FOR WILLKIE FARR & GALLAGHER LLP

Defendant Marco Stoffel ("Defendant") hereby moves this Court, pursuant to 10 *Del. C.* § 368, for an Order in the form attached hereto directing that a Commission be issued for the production of documents and for testimony outside of the State of Delaware of non-party Willkie Farr & Gallagher LLP ("Willkie Farr"), 787 Seventh Avenue, New York, New York 10019, by and through a person most knowledgeable concerning the information requested in Schedule A, and for the issuance of subpoenas *duces tecum* and *ad testificandum* relating thereto. Unless otherwise agreed to by the parties or ordered by a court, the production of documents shall take place on or before November 3, 2007, at the offices of Morrison & Foerster, LLP ("Morrison & Foerster"), 1290 Avenue of the Americas, New York, New York, 10104, and the deposition shall commence at 9:00 a.m. on November 7, 2007, at the offices of Morrison & Foerster, shall continue from day to day until completed, and shall be recorded via analog or digital video and audio methods and/or stenographic methods.

The grounds for this motion are as follows: Willkie Farr is not a party to this action. Willkie Farr is an agent for Colleen Investment, L.L.C. and for Logany, L.L.C. (the "Delaware LLCs"), and has custody of certain books and records of the Delaware LLCs as

reflected in a Court Order from March 1, 2007 granting the parties to this action access to the documents under Willkie Farr's control. The representative from Willkie Farr is expected to offer testimony as to what documents Willkie Farr has or has had under its control, and as to Plaintiffs' ability to access these documents, including their efforts to gain access, and any access they may have actually have had. This testimony is necessary to Defendant's argument that he has never impeded Plaintiffs ability to inspect the documents of the Delaware LLCs, and thus is relevant and material to the issues involved in the pending Motion for Sanctions. Finally, compulsory process is required to compel the necessary testimony.

WHEREFORE, Defendant respectfully requests that the Court issue an order directing that a commission be issued permitting him to obtain the production of documents from Willkie Farr and to take the deposition of a representative from Willkie Farr through a person most knowledgeable concerning the information requested in Schedule A.

OF COUNSEL:

Thomas M. Mueller
MORRISON & FOERSTER, LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000

Dated: October 23, 2007

THE BAYARD FIRM, P.A.

Peter B. Ladig (#3513)
222 Delaware Avenue, Suite 900
P.O. Box 25310
Wilmington, Delaware 19899
(302)655-5000
*Attorneys for Defendant*

EFiled: Oct 23 2007  4:03PM EDT
Transaction ID 16782768
Case No. 2672-VCS

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE
IN AND FOR NEW CASTLE COUNTY**

| | | |
|---|---|---|
| COLLEEN INVESTMENT AG | ) | |
| COLLEEN INVESTMENT L.L.C., and | ) | |
| LOGANY, L.L.C., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action No. 2672-VCS |
| v. | ) | |
| | ) | |
| MARCO STOFFEL, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>MOTION FOR COMMISSION</u>

Defendant ("Defendant") hereby moves this Court, pursuant to 10 *Del. C.* § 368, for an Order in the form attached hereto directing that a Commission be issued for the production of documents and for testimony outside of the State of Delaware of non-party Fulvio & Associates, LLP ("Fulvio & Associates"), 60 East 42nd Street, New York, New York 10165, by and through a person knowledgeable concerning the information requested in Schedule A, and for the issuance of subpoenas *duces tecum* and *ad testificandum* relating thereto. Unless otherwise agreed to by the parties or ordered by a court, the production of documents shall take place on or before November 3, 2007, at the offices of Morrison & Foerster, LLP ("Morrison & Foerster"), 1290 Avenue of the Americas, New York, New York, 10104, and the deposition shall commence at 9:00 a.m. on November 9, 2007, at the offices of Morrison & Foerster, shall continue from day to day until completed, and shall be recorded via analog or digital video and audio methods and/or stenographic methods.

The grounds for this motion are as follows: Fulvio & Associates is not a party to this action. Fulvio & Associates is an agent for Colleen Investment, L.L.C. and for Logany, L.L.C. (the "Delaware LLCs"), and has custody of certain books and records of the Delaware

LLCs as reflected in a Court Order from March 1, 2007 granting the parties to this action access to the document under Fulvio & Associates' control.   The representative from Fulvio & Associates is expected to offer testimony as to what documents Fulvio & Associates has or has had under its control, and as to Plaintiffs' ability to access these documents, including their efforts to gain access, and any access they may have actually have had.   This testimony is necessary to Defendant's argument that he has never impeded Plaintiffs ability to inspect the documents of the Delaware LLCs, and thus is relevant and material to the issues involved in the pending Motion for Sanctions.   Finally, compulsory process is required to compel the necessary testimony.

**WHEREFORE**, Defendant respectfully requests that the Court issue an order directing that a commission be issued permitting him to obtain the production of documents from Fulvio & Associates and to take the deposition of a representative from Fulvio & Associates through a person most knowledgeable concerning the information requested in Schedule A.

RICHARDS, LAYTON & FINGER, P.A.

OF COUNSEL:
Thomas M. Mueller
MORRISON & FOERSTER, LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000

Dated: October 23, 2007

Daniel A. Dreisbach (#2583)
Meghan M. Dougherty (#4787)
One Rodney Square
920 North King Street
Wilmington, DE 19801
(302)651-7700
*Attorneys for Defendant*

2

# EXHIBIT 32

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------

In re                                                    :
                                                         :
                                                         :
Application of William Tacon and Vistra Trust            :
Company (Jersey) Limited for an Order of                 :        M19-139
Judicial Assistance pursuant to 28 USC § 1782            :
                                                         :
                                                         :
                                                         :
                                                         :
-------------------------------------------------------------    :



**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT
OF MARCO STOFFEL'S MOTION TO QUASH SUBPOENAS**

certain relevant agreements before bringing an arbitration proceeding, the foundations and

Stoffel have commenced a Swiss mediation against the Blickle children, Vistra and others.

Stoffel Decl., Ex. C; Stoffel Reply Decl. ¶ 17, Ex. B).

Petitioners' arguments about arbitration miss the point. It does not matter that

arbitrations were not commenced before Petitioners filed their § 1782 application, or that there

purportedly is no arbitration agreement between Stoffel and the BVI Companies.[5] Petitioners'

Mem. at 12, 14-15. As stated in Stoffel's opening brief, what is important is that disputes

between Vistra and Stoffel are subject to arbitration. Stoffel Mem. at 6-7. Since Vistra has

admitted that it has many disputes with Stoffel for which it intends to commence legal action –

and since arbitration is the forum for resolving those disputes – there is a serious risk that Vistra

will improperly attempt to introduce any § 1782 discovery it obtains here against Stoffel in

arbitration.

In an attempt to cast doubt on the holding of the Second Circuit in NBC,

Petitioners cite a district court case from Georgia, In re Roz Trading Ltd., 469 F. Supp. 2d 1221

(N.D. Ga. 2006), which is the first and only case to hold that § 1782 applies to private

arbitration. Petitioners' Mem. at 15 n.3. This case's holding is obviously not the law in this

Circuit. See NBC, 165 F.3d 184. Furthermore, the Roz Trading case did not discuss the policy

considerations motivating the NBC decision, namely that the broad discovery allowed in U.S.

federal courts is unheard of in arbitration. Id. at 190-91.

In an arbitration, Vistra would never be able to serve on Stoffel the kind of

expansive document requests it has served here, and Vistra would certainly never be able to

obtain a pre-hearing deposition of Stoffel. See IBA Rules on the Taking of Evidence in

---

[5]        In fact, the Donation Agreement facially binds Maytown and Plympton as successors to certain parties to
that agreement. See Stoffel Reply Decl., Ex. I.

# EXHIBIT 33

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

------------------------------------------------------------x

*In re*:  Application Pursuant to 28 U.S.C. § 1782                  :
of Urs Christen,                                                                        :
                                                                                                 :
                                         Petitioner,                               :          Case No. 1:07-mc-10263-PBS
                                                                                                 :
                        - to take discovery of -                                  :
                                                                                                 :
Holger Blickle,                                                                       :
                                                                                                 :
                                        Respondent.                               :
                                                                                                 :
------------------------------------------------------------x

## DECLARATION OF DR. MARCO STOFFEL

I, Dr. Marco Stoffel, hereby swear and state:

1.       I was the holder of all bearer shares of the following Swiss companies: Alsam

Holding AG, Penny Asset AG, Vierwaldstaetter Beteiligungen AG, Logany Equity AG, Colleen

Investment AG, and Clarick AG (the "Swiss Companies"), from October 24, 2006, until late

January 2007, at which point I gave the shares to my counsel in Switzerland, Marco Bazzani, to

hold in escrow.  I held the bearer shares pursuant to a fiduciary agreement with Orconsult Ltd.,

the trustee of the trusts which held the Swiss Companies.

2.       On December 6, 2006, alleging possession of the bearer shares of the six Swiss

Companies, Vistra Trust Company (Jersey) Limited purported to call shareholders meetings in

which it purported to "elect" replacements for the officers and directors of the Swiss Companies.

Without possession of the bearer shares, such a meeting was unlawful.

3.       In light of these unlawful actions, I called shareholder meetings on January 16,

2007 pursuant to my authority as the legitimate holder of the bearer shares of the Swiss

Companies. During the January 16, 2007 shareholder meetings the officers and directors that

had purportedly been elected on December 6, 2006 were removed.

4.      Acting pursuant to my authority as the legitimate holder of the bearer shares of

the Swiss Companies, I appointed Urs Christen as the sole director of each of the Swiss

Companies.

5.      At all times relevant to these proceedings, Mr. Christen, as my agent, has owed

fiduciary duties to me.

6.      Acting on my instructions, on January 24, 2007, Mr. Christen initiated lawsuits in

the Cantonal Court in Switzerland ("the Swiss Actions"), which asked the Swiss court to cancel

the resolutions of the December 6, 2006 shareholder meetings and to remove the officers and

directors purportedly "elected" at those meetings.

7.      At all times, Mr. Christen was obligated to pursue the Swiss Actions and any

related proceedings in strict conformance with his fiduciary obligations to the Swiss Companies,

represented by me as legitimate holder of all bearer shares.

8.      In order to obtain documents and testimony from Respondent Holger Blickle

("Blickle") that are directly relevant to and of great importance for the prosecution of the Swiss

Actions, I directed Mr. Christen to initiate the present § 1782 proceedings.

9.      I retained Foley Hoag LLP to act as counsel for the § 1782 proceedings, and have

paid the legal fees.

10.     Mr. Christen has disclosed to me that he has come under tremendous personal

pressure to dismiss § 1782 proceedings. Mr. Christen has told me that this personal pressure has

manifested itself, among other things, by being named as the defendant in a specious

multimillion dollar lawsuit in New York brought by entities associated with Respondent Blickle

- 2 -

shortly after the § 1782 proceedings commenced. In that regard, Mr. Christen told me that he was contacted by counsel for these Blickle-affiliated entities, who threatened to obtain a multimillion dollar judgment against him personally unless Mr. Christen -- in breach of his fiduciary obligations -- dismissed the § 1782 proceedings.

11.    Although I am personally sympathetic to Mr. Christen's situation, I directed him to continue to § 1782 proceedings and not to take any action that would prejudice the interests of the Swiss Companies.

12.    During the afternoon of January 18, 2008, I learned that Mr. Christen had signed a Stipulation of Dismissal, which was filed with this Court by counsel for Blickle. Regrettably, Mr. Christen has apparently succumbed to the extreme duress to which he was subjected, and as a result, has disregarded my express instructions to continue the § 1782 proceedings. By doing so, Mr. Christen acted outside his authority and in breach of his fiduciary obligations.

13.    In light of the personal pressure that has been placed upon Mr. Christen, I have intervened as plaintiff in the Swiss Actions and expect that Mr. Christen will withdraw from those actions. In light of my longstanding position as the legitimate holder of the bearer shares of the Swiss Companies with a substantial interest in the Swiss Actions, and my current status as plaintiff in the Swiss Actions, I respectfully request that this Court allow the present § 1782 proceedings to continue, and to permit me to substitute as the Petitioner for Mr. Christen in the present § 1782 proceedings, or in the alternative, that I be permitted to intervene.

Signed under the penalties of perjury this 18th day of January, 2008.

_____
Marco Stoffel

- 3 -

# EXHIBIT 34

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
------------------------------------------------x
                                                 :    Case No. _____
In re:  Application Pursuant to 28 U.S.C. § 1782 of :
Urs Christen,                                    :    DECLARATION OF URS
                                                 :    CHRISTEN IN SUPPORT OF
                              Petitioner,        :    APPLICATION FOR ORDER TO
                                                 :    TAKE DISCOVERY PURSUANT
            - to take discovery of -             :    TO 28 U.S.C. § 1782
                                                 :
Holger Blickle,                                  :
                                                 :
                              Respondent.        :
------------------------------------------------x
```

URS CHRISTEN, being duly sworn, deposes and says:

1.     I submit this declaration in support of my application for an order, pursuant to

28 U.S.C. § 1782, directing Holger Blickle ("Respondent") to produce documents and give

testimony for use in actions that I have filed against six Swiss companies (the "Swiss

Companies") that are pending in the Swiss Cantonal Court (the "Swiss Actions").[1]

2.     Attached hereto as Exhibit A is a certified copy of the complaint against one of

the companies, Alsam Holding AG, which is in German.  Attached hereto as Exhibit B is an

English translation of the complaint.  I hereby confirm that all six complaints in the Swiss

Actions are substantively the same.

3.     Because this declaration is submitted only for the purpose of applying for an order

to obtain evidence under Section 1782, it sets forth only those facts relevant to the claims

asserted in the Swiss Actions.

---

[1] The actions are: Urs Christen v. Logany Equity AG; Urs Christen v. Alsam Holding AG; Urs Christen v.
Colleen Inv. AG; Urs Christen v. Penny Asset AG; Urs Christen v. Vierwaldstaetter Beteiligungen AG; and Urs
Christen v. Clarick AG.

1

**My Connection to the Blickle Family, Their Trusts and the Trust Entities**

4.      I served as director of four of the six Swiss Companies from November 2000 to May 2002 (Clarick AG, Colleen Investment AG, Penny Asset AG and Vierwaldstätter Beteiligungs AG).

5.      I was the accountant for two of the six Swiss Companies from 1999 to 2001 (Penny Asset AG and Vierwaldstätter Beteiligungs AG).

6.      I was the representative of Holger Blickle, Angela Blickle, Clarissa Blickle, and Cedrick Blickle with respect to the Swiss tax authorities from 1999 to 2006.

7.      I was the tax representative of the six Swiss Companies from 1999 to 2006.

8.      I was the representative of Penny Asset AG with respect to the property managers of German real estate held by Blickle GmbH & Co.KG ("Blickle GmbH") from November 1999 to May 2002.

9.      I have served as the holder of the statutory domicile of the six Swiss Companies, for Vierwaldstätter Beteiligungen AG since August 1999, for Penny Asset AG since March 2001, and for the other four Swiss Companies since June 2004.

10.      I have knowledge of the following information based on the services I have provided for the Swiss Companies and the Blickle family as director, accountant, tax advisor, and holder of the statutory domicile.

**The Trusts and Their Ownership of the Swiss Companies**

11.      In the summer of 1998 the Blickle family established four of the Swiss Companies: Alsam Holding AG ("Alsam"), Colleen Investment AG ("Colleen"), Penny Asset AG ("Penny"), and Logany Equity AG ("Logany").

12.      Two additional Swiss Companies were later created: Vierwaldstaetter Beteiligungen AG ("Vierwaldstaetter") and Clarick AG ("Clarick").

2

13.    In addition, three Irish companies -- First Aim Management Ltd, Millennium Import/Export Ltd, and Madison Corporation Development Ltd -- were also established.

14.    Angela Blickle, until her death, and then her children, Clarissa Blickle and Cedrick Blickle, held management positions in Alsam, Colleen, Penny, and Logany, and received salaries for their management positions. They received no salaries from Vierwaldstaetter and Clarick.

15.    On December 18, 1998, Angela Blickle established three trusts under the jurisdiction of Jersey, Channel Islands (the "Jersey trusts"). She established one of the trusts acting in her own name and the other two trusts under a power of attorney granted her by her husband, Holger Blickle. The shares of the original four Swiss Companies were placed into these trusts. The shares of the two additional Swiss Companies were later also placed into the Jersey trusts. The Swiss Company Penny Asset AG bought the shares of Blickle GmbH. Upon information and belief, the three Irish companies were also part of the trusts.

16.    Upon information and belief, the Irish companies held the Jersey trusts' bank accounts. In addition, the Irish companies held in escrow monies that had been donated by Angela Blickle to the Borderline Research Foundation and the Third Millennium Foundation (the "Foundations") in December 1998.

17.    Angela Blickle passed away on February 19, 1999. Upon information and belief, her former husband, Holger Blickle, demanded access to the Jersey trusts' assets shortly thereafter. In that regard, he claimed to have revoked the power of attorney that he had granted to Angela Blickle, which she had used to create two of the Jersey trusts.

18.    Upon information and belief, Holger Blickle and the Blickle children split the assets of the Jersey trusts, resulting in the creation of three Bermuda trusts. The Jersey trusts

3

were deactivated.  Two Bermuda trusts were designated for Clarissa Blickle and Cedrick Blickle.
A third Bermuda trust held an annuity policy for Holger Blickle.

19.    Orconsult Limited ("Orconsult") was established to serve as trustee for the newly
created Bermuda trusts.

20.    In 1999, changes in Irish law necessitated a reorganization of the various
companies that held accounts and assets for the trusts.  In this reorganization, Orconsult replaced
the three Irish companies with two BVI companies -- Maytown Universal SA ("Maytown") and
Plympton Universal SA ("Plympton").  Orconsult transferred the trusts' bank accounts from the
three Irish companies to Maytown and Plympton.  The BVI companies also held in escrow the
donations to the Foundations that had originally been held by the Irish companies.  New Eagle
Corp. ("New Eagle"), represented by Dr. Marco Stoffel, became the Protector of the Bermuda
trusts.

21.    In 2004, I received instructions from Georges Philippe and Guido Banholzer, both
directors at that time of the six Swiss Companies, to hold shareholder meetings for the purpose
of changing the companies' registered shares into bearer shares.  In various notarized acts the
shares were converted and Philippe and Banholzer issued new share certificates, which they
delivered to Ottiger Treuhand und Unternehmungsberatung AG ("Ottiger").  On September 3,
2004, Ottiger issued a deposit confirmation.  In 2005, Ottiger transferred the shares to STM, the
successor escrow agent.  In October 2006, STM transferred the shares to New Eagle.

### The Swiss Action

22.    Upon information and belief, Clarissa and Cedrick Blickle demanded that all
assets belonging to the Bermuda trusts be distributed to them.  This demand was rejected by
Orconsult and New Eagle.  Undeterred, Clarissa and Cedrick Blickle then collaborated with
Holger Blickle and Vistra Trust Co. (Jersey) Ltd ("Vistra") – which had not exercised any

4

function concerning the trust assets – to dismantle the trusts and block payment of the donations made by Angela Blickle to the Foundations. Upon information and belief, the Jersey trusts, made inactive in 1999 (when the Bermuda trusts were created), were reactivated by Vistra and Clarissa and Cedrick Blickle.

23.     Alleging possession of bearer shares, Vistra held shareholder meetings on December 6, 2006 in which it purported to "elect" replacements for the officers and directors of the Swiss Companies containing trust assets. The new directors were employees or other representatives of Vistra.

24.     However, at that time all the shares of the Swiss Companies were actually in the possession of New Eagle, the Protector company, which had them placed in escrow with the attorney Marco Bazzani of Luzern, Switzerland. Dr. Stoffel of New Eagle had a fiduciary shareholder agreement with Orconsult and thus rightfully claimed legal ownership in all shares of the six Swiss Companies. Based on this ownership and possession of the bearer shares, shareholder meetings were held on January 16, 2007 in the offices of Marco Bazzani in Luzern, under the supervision and seal of a notary. It was resolved that the December 6, 2006 board members were removed. In addition, I was elected the sole member of the boards of directors because the Protector wanted a board member who was independent from Vistra and Orconsult.

25.     Because of the various historical roles I had performed for the Swiss Companies and the Blickle famile, the expectation was that the Blickle family and Vistra would appreciate the conciliatory move by the Protector and accept the resolutions. However, they blocked my entry into the commercial register and thus were able to have the Vistra representatives formally remain as directors of the six Swiss Companies, despite their election clearly being null and void.

5

26. This left me with no alternative other than to file the Swiss Actions to nullify the shareholder meetings and to remove the board members "elected" at the meeting. Vistra countered by filing complaints for the nullity of the shareholder meetings which elected me.

27. Upon information and belief, at the instruction of Clarissa and Cedrick Blickle, the reactivated Jersey trust entities have deleted the Foundations as beneficiaries. This suggests that Clarissa and Cedrick Blickle are improperly liquidating trust entities on a widespread basis and are attempting to obtain other funds to which they have no rights.

28. The conflict over control of the trust-related entities has led to numerous legal proceedings world-wide, of which the following, upon information and belief, are pending:

A.    Proceedings in Switzerland

    (1)    Challenges to the Shareholders' Meeting held by Vistra on December 6, 2006

        a.    Urs Christen v. Logany Equity AG (Swiss Cantonal Court);

        b.    Urs Christen v. Alsam Holding AG (Swiss Cantonal Court);

        c.    Urs Christen v. Colleen Inv. AG (Swiss Cantonal Court);

        d.    Urs Christen v. Penny Asset AG (Swiss Cantonal Court); and

        e.    Urs Christen v. Vierwaldstaetter Beteiligungen AG (Swiss Cantonal Court); and

        f.    Urs Christen v. Clarick AG (Swiss Cantonal Court).

    (2)    Challenges to Shareholders' Meetings held by Dr. Stoffel on behalf of protector, New Eagle, on January 16, 2007

        a.    Vistra Trust Co. (Jersey) Ltd. v. Logany Equity AG (Swiss Cantonal Court);

        b.    Vistra Trust Co. (Jersey) Ltd. v. Alsam Holding AG (Swiss Cantonal Court);

6

      c.     <u>Vistra Trust Co. (Jersey) Ltd. v. Colleen Inv. AG</u> (Swiss Cantonal Court);

      d.     <u>Vistra Trust Co. (Jersey) Ltd. v. Penny Asset AG</u> (Swiss Cantonal Court);

      e.     <u>Vistra Trust Co. (Jersey) Ltd. v. Vierwaldstaetter Beteiligungen AG</u> (Swiss Cantonal Court); and

      f.     <u>Vistra Trust Co. (Jersey) Ltd. v. Clarick AG</u> (Swiss Cantonal Court).

(3)     Disputes Regarding the Ownership of Shares of Companies Involved in the Trust Structure

      a.     <u>Vistra Trust Co. (Jersey) Ltd., Alsam Holding AG, Logany Equity AG v. Urs Christen and Marco Bazzani</u> (Swiss Cantonal Court); and

      b.     <u>Marco Bazzani v. Orconsult Ltd. Bermuda and Vistra Trust Co.</u> (Swiss Cantonal Court).

(4)     Offshore Proceedings

      a.     <u>Vistra Trust Co. (Jersey) Ltd. (As Trustee of the Alsam Settlement, the Colleen Settlement, and the Logany Settlement), Alsam Holding AG, Colleen Inv. AG, Penny Asset AG, Logany Equity AG, Clarick AG, and Vierwaldstaetter Beteiligungen AG v. Orconsult Ltd., New Eagle Corp. Ltd. and Stoffel</u> (Supreme Court of Bermuda) (ex parte applications for injunctions and other orders);

      b.     <u>Clarissa Antonia Blickle and Cedrick Blickle v. New Eagle Corp. Ltd., Marco Stoffel, Orconsult Limited and Her Majesty's Attorney General</u> (Supreme Court of Bermuda) (action to remove protector, Dr. Stoffel, and prohibit Dr. Stoffel from acting on behalf of the trust structure); and

      c.     <u>In the Matter of the Representation of Vistra Trust Co. (Jersey) Ltd. f/k/a/ Chiltern Trust Co., as Trustee of the Alsam, Colleen, and Logany Settlements and in the Matter of Articles 51 and 53 of The Trusts Law 1984 (As Amended)</u> (Royal Court of Jersey) (action to remove protector, Dr. Stoffel, and prohibit Dr. Stoffel from acting on behalf of the trust structure).

(5)     U.S. Proceedings

a. <u>Colleen Inv. AG, Colleen Inv., LLC and Logany, LLC v.</u>
   <u>Stoffel</u> (Delaware Chancery Court) (action to require Dr.
   Stoffel to turn over the books and records of Colleen
   Investment LLC and Logany LLC);

b. <u>Deutsche Bank Securities Inc. and Deutsche Bank Trust</u>
   <u>Co. Am. v. Colleen Inv., LLC, Colleen Inv. AG, and</u>
   <u>Stoffel</u> (New York State Supreme Court) (Interpleader
   action regarding accounts of Colleen Inv. LLC with
   Deutsche Bank); and

c. Application of William Tacon and Vistra Trust Co. (Jersey)
   Ltd. for an Order of Judicial Assistance Pursuant to 28
   U.S.C. § 1782 (S.D.N.Y.) (§ 1782 action brought against
   Dr. Stoffel related to proceeding in Eastern Caribbean
   Supreme Court, High Court of Justice, British Virgin
   Islands).

29.    In addition, the Foundations have commenced an arbitration proceeding in Zurich,
Switzerland and a debt collection proceeding in Schaffhausen, Switzerland, both concerning the
donations to the Foundations.

**The Relevance of the Requested Discovery**

30.    The discovery requested in this petition seeks documents that concern: (a) Mrs.
Blickle's intent in her creation of the trust structure, and her intended disposition of the
underlying assets; (b) the intent of Holger Blickle, Clarissa Blickle, and Cedrick Blickle's
actions with respect to trust-related entities; and (c) the location and amount of assets related to
the trust structure.  Such documents will be relevant to answering the central contested question
in the Swiss Actions; namely, what party seeking to assert control over the six Swiss Companies
properly and best represents the interests of the trusts established by Angela Blickle.

31.    Mrs. Blickle's intent in her creation of the trust structure is central to the Swiss
Action.  It is likely that Mr. Blickle, her former husband, has documents and information that
will assist the Swiss Court with its examination of that critical issue.

8

32.     Upon information and belief, Mr. Blickle was also involved with attempts by Clarissa and Cedrick Blickle to seize the assets of various trust entities.  Consequently, it is likely that Mr. Blickle will have information relevant to the Blickle children's attempts to dismantle the trust structure.  Similarly, Mr. Blickle is likely to have information about the location and amount of assets related to the trust structure.

### Conclusion

33.     For the foregoing reasons, I respectfully request that this Court grant Mr. Christen's application for an Order pursuant to 28 U.S.C. § 1782.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Stansstad. Switzerland on October 23, 2007.

_____
Urs Christen

9

# EXHIBIT 35

# withers LLP

16 Old Bailey, London EC4M 7EG
Telephone: +44 (0)20 7597 6000
Fax: +44 (0)20 7597 6543
DX 160 London/Chancery Lane

gxk/gxs/LN62086.1
JER/mw/129985.4

21 November 2007

Appleby

Canon's Court

22 Victoria Street

PO Box HM 1179

Hamilton HM EX

Bermuda

**Also by fax:  00 1 441 292 8666**

Dear Sirs

**Orconsult Ltd – Aquarius and Capricorn Trusts
Albe Associates Limited ('Albe')**

This is the sixth in the series of letters we are sending you, providing you with information you have requested in your letter of 15 October 2007 and other related information in the possession of our clients. Once again, we are copying this letter to Baker & McKenzie, and for practical reasons the enclosure is being provided to Baker & McKenzie alone.

The subject of this letter and the file which accompanies it is the information and documentation you have requested concerning Albe, as set out in paragraphs 1 to 12 of your letter.   Information and documentation concerning Bluecolt will be the subject of a further letter later this week.  As you will see, there are certain outstanding matters and some relevant documentation is missing, however in view of the forthcoming deposition of Dr Stoffel, we considered it sensible to send you what we have prepared at this stage, on the basis that further information can follow later.

**Formation, ownership and administration of Albe**

Section A of the accompanying bundle contains documents relating to the formation, ownership and administration of Albe.

As appears from the enclosed certificate of incorporation (divider 1), Albe was founded on 10 May 1999 as an International Business Company pursuant to the law of the BVI.  It was established as a shelf company by the law firm Quijano & Associates (BVI) Limited, Tortola, BVI ("Quijano"), which was the

direct: 020 7597 6178
e-mail: graeme.kleiner@withersworldwide.com

Withers LLP is a limited liability partnership registered in England and Wales with registered number OC301149 and is regulated by the Solicitors Regulation Authority.  A full list of members' names and their professional qualifications may be inspected at our registered office, 16 Old Bailey.  All members of Withers LLP are solicitors or US lawyers.

document number: LN62086/1-L-728382/2

Geneva: +41 (0)22 593 7777
Milan: +39 02 2906601

Withers Bergman LLP
New York: +1 212 848 9800
Greenwich: +1 203 302 4100
New Haven: +1 203 789 1320

www.withersworldwide.com

initial subscriber for the company: see the enclosed Memorandum and Articles of Association (divider 2). The company's share capital is $50,000, divided into 50,000 bearer shares of $1 each: see paragraph 7 of the Memorandum of Association. Mr Vernon Emmanuel Salazar Zurita ('Mr Salazar') was appointed as the sole director pf the company in October 1999: see the minutes of a meeting of the board of directors of 29 October 1999 (divider 3).

Orconsult SA acquired the bearer shares in Albe from Quijano on 6 November 2000 on behalf of Dr Stoffel, after he asked to be provided with a shelf company. On the same date, Orconsult SA entered into a mandate agreement with Dr Stoffel (divider 4), under which Orconsult SA held the bearer shares in Albe on his behalf and undertook to follow his instructions. The following day, a power of attorney was executed by Mr Salazar as Albe's sole director (divider 5), conferring wide powers on Orconsult SA to administer the company. Orconsult SA thereafter administered Albe pursuant to the instructions of Dr Stoffel, until the mandate agreement was terminated by Dr Stoffel on 16 February 2007. Mr Banholzer and Mr Philippe do not know what (if any) alternative arrangements Dr Stoffel has made for the administration of Albe since that date.

The information and documentation set out above answers questions 1, 2 and 7 in your letter of 15 October 2007. As regards question 8, we are instructed that so far as Mr Banholzer and Mr Philippe are aware no accounts have been prepared in respect of Albe. As regards question 9, we are instructed that so far as Mr Banholzer and Mr Philippe are aware there have been no dealings between Albe and Maytown or Plympton other than receipt of funds paid by Maytown and Plympton to the Scottish partnerships and IPMG, of which you are already aware.

### Bank accounts of Albe and associated information

Section B of the accompanying file contains documentation relating to the bank accounts of Albe.

Prior to its acquisition from Quijano, Albe carried out no activities and did not maintain any bank account. Over the period since late 2000, Albe has maintained accounts with two banks: Lloyds TSB (in Wimbledon) and Bank Leu (in Zurich). Account opening forms for the accounts at these banks are at dividers 6 and 7 of the accompanying file. (It should be noted that the account opening documentation for Bank Leu identifies Dr Stoffel as the beneficial owner of the assets.) As explained below, with only one exception, all Albe's accounts at both banks had been closed by the end of 2006.

### (1) Lloyds TSB accounts

Albe had three accounts with Lloyds TSB: a USD account (Account No 11358707), a Euro account (Account No 86065558) and a GBP account (Account No 1936979). All three accounts were opened by Orconsult SA on behalf of Albe, and the signatories on the accounts were those with signatory powers at Orconsult SA. A list of signatories on the Lloyds TSB accounts is annexed to the account opening documentation at divider 6. Besides the assets held in these accounts (namely securities and cash deposits), Lloyds TSB held no other assets on behalf of Albe.

Bank statements in respect of each of the three Lloyds TSB accounts appear at dividers 8-23 of the accompanying file, arranged as follows:

(a) USD account (Account No 11358707) 2001 – 2006 (dividers 8-13);

(b)  Euro account (Account No 86065558) 2001 – 2006 (dividers 14-19);

(c)  GBP account (Account No 1936979) 2004 – 2007 (dividers 20-23).

You will see that both the USD account and the Euro account were closed at the end of December 2006. The GBP account remains open, but since March 2007 has held a balance of less than £400.  We have not provided sheets 1-36 of the GBP account statements because the account was empty throughout the period covered by those sheets.  In a few other instances, individual pages of the statements are missing despite extensive searches; our clients will request copies of these from Lloyds TSB.

We draw specific attention to two matters arising from these bank statements.

First, Mr Banholzer and Mr Philippe have pointed out to us that the bank statements show that there were some additional transfers of funds to Albe from Maytown and Plympton prior to the ones which were the subject of your (and Mr Tacon's) earlier requests, dealt with in the first of this series of letters.  We have listed these additional transfers in Appendix 1 to this letter.  We understand that Orconsult SA is now collating the associated documentation necessary to enable us to prepare a further file of information relating to these additional payments similar in form and content to the file which accompanied our first letter.  We will send this to you as soon as it has been prepared.

Second, you will see from the bank statements that there are various transfers of funds made from Albe to an account of Orconsult SA.  We understand that the account in question was a fiduciary account and that in each case the funds were transferred to it on the instructions of Dr Stoffel for onward transmission at his direction.  Some of these transfers were made for the purposes of purchases of works of art or motor vehicles by Dr Stoffel, which have already been dealt with in earlier letters.  However, transfers were also made for other purposes.  Again, Mr Banholzer and Mr Philippe are collating the material relating to these transfers (where it is available) to enable us to prepare a further file which we will send to you as soon as it has been prepared.

Aside from these specific points, the bank statements disclose a number of transfers to transferees other than Orconsult SA.  We understand that, in most of these cases, the records of Orconsult SA do not disclose any more information than is apparent from the relevant entry on the bank statements.  However, we are instructed that Orconsult SA will provide further information in relation to those transfers where it is able to do so.

**(2)  Bank Leu accounts**

Albe also had three accounts with Bank Leu: a USD account (Account No 619606-82), a Euro account (Account No 619606-82-1) and a safekeeping account (Account No 619606-85).  Again, all three accounts were opened by Orconsult SA on behalf of Albe, and the signatories on the accounts were those with signatory powers at Orconsult SA.  Again, besides the assets held in these accounts (namely securities and cash deposits), Bank Leu held no other assets on behalf of Albe.

Bank statements in respect of each of the three Bank Leu accounts appear at dividers 24-34 of the accompanying file, arranged as follows:

(a)  USD account (Account No 619606-82) 2004 – 2006 (dividers 24-26);

(b)  Euro account (Account No 619606-82-1) 2002 – 2006 (dividers 27-31);

21 November 2007

Appleby

(c)  Safekeeping account (Account No 619606-85) 2002 – 2004 (dividers 32-34).

Although the bank statements are not complete, we understand that all 3 of these accounts were closed in December 2006.  In the cases of the USD and Euro accounts, there are final debit advices dated 27 December 2006 in an amount equivalent to the closing balance shown on the previous statements as at 22 December 2006.  In the case of the safekeeping account, despite extensive searches Mr Banholzer and Mr Philippe have been unable to locate any bank statements in respect of the period since 2004. They have however located a series of debit advices referring to instructions given on 6 December 2006, whereby securities remaining in the account at that date were transferred to an account of Bluecolt.  Mr Banholzer and Mr Philippe believe that the securities referred to in those debit advices represent the entirety of the assets held in the safekeeping account at that date.  However, they are writing to Bank Leu to obtain copies of the missing bank statements to confirm the position in this regard.

The information and documentation referred to above answers questions 3, 4, 5, 6, and 10 in your letter of 15 October 2007.  As regards questions 11 and 12, given the volume of information and documentation potentially involved, we suggest it may be helpful if we discuss with you or with Baker & McKenzie the best way of dealing with these questions in an efficient and cost-effective manner.

Yours faithfully,

Withers LLP

cc       Mr Anthony Poulton, Baker & McKenzie LLP (also by fax: 020 7919 1999)

# EXHIBIT 36

# withers LLP

16 Old Bailey, London EC4M 7EG
Telephone: +44 (0)20 7597 6000
Fax: +44 (0)20 7597 6543
DX 160 London/Chancery Lane

gxk/gxs/LN62086.1
JER/mw/129985.4

27 November 2007

Appleby

Canon's Court

22 Victoria Street

PO Box HM 1179

Hamilton HM EX

Bermuda

**Also by fax:  00 1 441 292 8666**

Dear Sirs

**Orconsult Ltd – Aquarius and Capricorn Trusts
Bluecolt Securities Corp ('Bluecolt')**

This is the seventh in the series of letters we are sending you, providing you with information you have requested in your letter of 15 October 2007 and other related information in the possession of our clients. Once again, we are copying this letter to Baker & McKenzie, and for practical reasons the enclosure is being provided to Baker & McKenzie alone.

The subject of this letter and the file which accompanies it is the information and documentation you have requested concerning Bluecolt, as set out in paragraphs 13 to 24 of your letter. We should make clear that the information we have provided in this letter is in certain respects incomplete, in particular because of continuing concerns on the part of Mr Banholzer and Mr Philippe as to the constraints imposed upon them by Liechtenstein law. We hope that those concerns will shortly have been resolved and that it will be possible to disclose further relevant information in a subsequent letter.

**Formation, ownership and administration of Bluecolt**

Section A of the accompanying bundle contains documents relating to the formation, ownership and administration of Bluecolt.

As appears from the enclosed deed of incorporation (divider 1), Bluecolt was founded on 23 March 2004 pursuant to the law of Panama. It was established as a shelf company by the law firm Quijano & Associates of Panama ("Quijano Panama"), two members of which were the initial subscribers for the

Geneva: +41 (0)22 593 7777
Milan: +39 02 2906601

direct: 020 7597 6178
e-mail: graeme.kleiner@withersworldwide.com

Withers LLP is a limited liability partnership registered in England and Wales with registered number OC301149 and is regulated by the Solicitors Regulation Authority. A full list of members' names and their professional qualifications may be inspected at our registered office, 16 Old Bailey. All members of Withers LLP are solicitors or US lawyers.

document number: LN62086/1-L-729926/1

Withers Bergman LLP
New York: +1 212 848 9800
Greenwich: +1 203 302 4100
New Haven: +1 203 789 1320

www.withersworldwide.com

company.   The company's share capital is $10,000, divided into 100 bearer shares of $100 each: see page 4 of the deed.   The original directors of the company were Mr Vernon Emmanuel Salazar Zurita (President), Lilia Judith Tovar de Leon (Secretary) and Delio Jose de Leon Mela (Treasurer): see page 7 of the deed.

On 23 September 2005, two bearer share certificates were issued for 50 shares each, which were acquired by Orconsult SA on behalf of Dr Stoffel (see divider 2).   On the same date Orconsult SA entered into a verbal mandate agreement to administer Bluecolt on the instructions of Dr Stoffel on similar terms to the terms on which it administered Albe.  It did so pursuant to a power of attorney dated 27 September 2005 granted to it by the directors of Bluecolt (divider 3).   Orconsult SA thereafter administered Bluecolt for Dr Stoffel's benefit, until the mandate agreement was terminated by Dr Stoffel on 16 February 2007 (although, as appears below, Orconsult SA employees remained signatories on certain Bluecolt bank accounts after that date).   During that time there were no changes in the directors of Bluecolt.   Mr Banholzer and Mr Philippe do not know what (if any) alternative arrangements Dr Stoffel has made for the administration of Bluecolt since 16 February 2007, or whether there have been any subsequent changes in the directors of the company.

The information and documentation set out above answers questions 13 and 14 in your letter of 15 October 2007.   As regards question 19, although (unlike in the case of Albe) there was no written mandate agreement identifying Dr Stoffel as the beneficial owner of Bluecolt, he was identified as such by account opening documentation referred to below.   As regards question 20, we are instructed that so far as Mr Banholzer and Mr Philippe are aware no accounts have been prepared in respect of Bluecolt.   As regards question 21, we are instructed that so far as Mr Banholzer and Mr Philippe are aware there have been no dealings between Bluecolt and Maytown or Plympton other than receipt of funds paid by Maytown and Plympton to the Scottish partnerships and IPMG, of which you are already aware.

### Bank accounts of Bluecolt and associated information

Section B of the accompanying file contains documentation relating to the bank accounts of Bluecolt.

Prior to its acquisition from Quijano Panama, Bluecolt carried out no activities and did not maintain any bank account.   Since that date, Bluecolt has maintained accounts with two banks: ING Bank in The Hague and VP Bank in Vaduz.

### (1) Accounts with ING Bank

Bluecolt had 2 accounts with ING Bank, namely a US dollar account (account number 02.00.34.849) and a Euro account (account number 68.01.49.805).   These accounts were opened in February 2006: see the board minutes and account opening documentation at divider 4.   As appears from those documents, the signatories on the accounts were Mr Banholzer, Mrs Sandrine Carme and Mrs Antica Vaccaro (Mrs Carme and Mrs Vaccaro were both Orconsult SA employees).

Because of dissatisfaction with the services provided by ING Bank (in particular their failure to perform money transfers in a timely way) the funds in these accounts were transferred to VP Bank in early October 2006 and the accounts were subsequently closed.   Correspondence relating to the closure of the ING Bank accounts is at divider 5.

Bank statements for the ING Bank accounts are at dividers 6 and 7. Insofar as Mr Banholzer and Mr Philippe have further information about specific onward transfers out of the accounts which has not already been disclosed to you, they will provide that further information as soon as it has been collated.

### (2) Accounts with VP Bank

As a result of the dissatisfaction with ING Bank referred to above, Bluecolt opened accounts with VP Bank in June 2006. Documentation relating to the opening of these accounts is at divider 8. We draw attention to the fact that the account opening documentation identified Dr Stoffel as the beneficial owner of the assets to be deposited. We also draw attention to the statement at paragraph 3, which represented the understanding of Mr Banholzer and Mr Philippe, that the assets to be transferred to the account had been and were being earned through the beneficial owner's activity as an independent real estate investment consultant of three substantial trusts and other professional services.

Bluecolt opened 4 accounts with VP Bank: a US dollar account (account number 346.377.010), a Euro account (account number 346.377.013) a sterling account (account number 346.377.016) and a safe custody account (account number 346.377.900). The signatories on the accounts were and are those with signatory powers at Orconsult SA (including Mr Banholzer and Mr Philippe together with various other Orconsult SA employees – the precise list of signatories changes from time to time). Given those signatory powers, the accounts are effectively blocked at present, and Orconsult SA will continue to ensure that they remain blocked, in view of the potential claims to the assets which they contain.

Bank statements for these 4 accounts are at dividers 9-12. We will forward further more recent statements during the course of tomorrow. Again, insofar as Mr Banholzer and Mr Philippe have further information about specific onward transfers out of the accounts which has not already been disclosed to you, they will provide that further information as soon as it has been collated.

The information and documentation referred to above answers questions 15, 16, 17, 18 and 22 in your letter of 15 October 2007. As regards questions 23 and 24, as with the corresponding questions relating to Albe, we suggest it may be helpful if we discuss with you or with Baker & McKenzie the best way of dealing with these questions in an efficient and cost-effective manner.

Yours faithfully

*Withers LLP*

cc       Mr Anthony Poulton, Baker & McKenzie LLP (also by fax: 020 7919 1999)

# EXHIBIT 37

G Kleiner

Second

Exhibit ' GK 2'

20 July 2007

<u>IN THE HIGH COURT OF JUSTICE</u>                                    <u>CLAIM NO. HC07C00228</u>

<u>CHANCERY DIVISION</u>

B E T W E E N:


WILLIAM RICHARD TACON

(Receiver of the assets of Plympton Universal SA and Maytown Universal SA by Order of the Eastern Caribbean Supreme Court, British Virgin Islands made on 11 December 2006 and continued on 8 January 2007)

<u>Claimant/Applicant</u>

- and -

LLOYDS TSB BANK PLC

<u>Defendant/Respondent</u>

---

## <u>SECOND WITNESS STATEMENT OF GRAEME KLEINER</u>

I, Graeme Kleiner of 16 Old Bailey, London EC4A 7EG will state as follows:

1.   I am a solicitor and a principal in the firm of Withers LLP, whose London offices are at the above address. I have conduct of this matter on behalf of seven corporate entities, namely Istalla International Limited, PB Partners & Co, Interconsultants & Associates, ATC Advanced Technology Consultants & Co, Nevis Corporation & Co, ITC International Traders Corporation & Co and IMPG (Industrial Planning and Marketing Group) Limited. In this witness statement, I will refer to these entities collectively as "the Recipient Entities".

2. I make this second witness statement further to my first witness statement dated 11 July 2007 in respect of the application made by Mr Tacon, as receiver of Plympton Universal SA and Maytown Universal SA by Order of the Eastern Caribbean Supreme Court, British Virgin Islands made on 11 December 2006 against Lloyds TSB Bank Plc ('Lloyds') for disclosure of all the accounts held by the Recipient Entities with Lloyds in the UK and related relief.

3. There is now shown to me the exhibit marked 'GK 2', comprising a copy of a letter sent to Lawrence Graham, solicitors to the Claimant by fax and by hand together with enclosures and documents referred to therein.

**Statement of Truth**

I believe that the facts stated in this witness statement are true.

Signed .......................................................................

Graeme Kleiner

Dated .......20.7.07.......................................................

G Kleiner

Second

Exhibit ' GK 2'

20 July 2007

<u>IN THE HIGH COURT OF JUSTICE</u>

<u>CLAIM NO. HC07C00228</u>

<u>CHANCERY DIVISION</u>

B E T W E E N :

**WILLIAM RICHARD TACON**
**(Receiver of the assets of Plympton Universal SA**
**and Maytown Universal SA by Order of the Eastern**
**Caribbean Supreme Court, British Virgin Islands**
**made on 11 December 2006 and continued on**
**8 January 2007)**
<u>Claimant/Applicant</u>

- and -

**LLOYDS TSB BANK PLC**
<u>Defendant/Respondent</u>

SECOND WITNESS STATEMENT
OF
GRAEME KLEINER

# withers ᴸᴸᴾ

**16 Old Bailey**

**London**

**EC4M 7EG**

Tel: +44 (0)20 7597 6000

Fax: +44 (0)20 7597 6543

Ref:  gxk/LN61903.1

20-07-07   15:45   FROM-                                                        T-852   P.005/010   F-562

# withers LLP

16 Old Bailey, London EC4M 7EG
Telephone: +44 (0)20 7597 6000
Fax: +44 (0)20 7597 6543
DX 160 London/Chancery Lane

Our ref: gxk/orc (LN61903.1)
Your ref: AW/KZM/K174/1

20 July 2007

**By Fax & By Hand**

Lawrence Graham LLP

4 More London Riverside

London

SE1 2AY

**Fax:  020 7379 6854**

Dear Sirs

**Disclosure Application - Tacon v TSB Lloyds PLC**

We refer to your letter of 12 July 2007 in connection with your client's above proceedings.  As you know, we have now been formally instructed to act on behalf of the 6 Scottish limited partnerships and a BVI limited company identified in paragraph 3 of the draft order annexed to your client's application notice (**"the Recipient Entities"**).

The purpose of this letter is (a) to respond substantively to your request for information concerning the payments received by our clients which are the subject of the existing proceedings against Lloyds TSB Bank plc (**"Lloyds"**), and (b) to set out our clients' position concerning those proceedings more generally. As we make clear below, our clients' concern at this stage is to provide your client with as much of the information he seeks as they can, whilst respecting their obligations of confidentiality to third parties.

Although we have now had the opportunity to take more detailed instructions from our clients, we are conscious that we are still new to what is clearly a complex matter involving litigation in several jurisdictions other than this one.  In the circumstances, we may well wish in due course to supplement what we say below.  For similar reasons, we have not attempted to respond to all the matters raised in your client's evidence; no inference should be drawn from any omission to deal with a particular matter at this stage.

There are a substantial number of enclosures to this letter.  For convenience, we have included these in a separate bundle behind numbered dividers.

direct: 020 7597 6178
e-mail: graeme.kleiner@withersworldwide.com

Withers LLP is a limited liability partnership registered in England and Wales with registered number OC301149 and is regulated by the Solicitors Regulation Authority.  A list of the members' names and their professional qualifications may be inspected at our registered office, 16 Old Bailey.  All members of Withers LLP are solicitors of the Supreme Court of England and Wales, solicitors in Scotland, or US lawyers.

document number: LN61903/1-L-718120/1

Geneva: +41 (0)22 593 7777
Milan: +39 02 2906601

Withers Bergman LLP
New York: +1 212 848 9800
Greenwich: +1 203 302 4100
New Haven: +1 203 789 1320

www.withersworldwide.com

## Background

1.  In the second witness statement of your client served in the above proceedings, a number of references are made to apparent connections between, on the one hand, Dr Marco Stoffel and, on the other, Orconsult SA (a Swiss company), Orconsult Limited (a Bermudian company) and our clients, the Recipient Entities. The position is as follows:

    1.1.  Orconsult SA is long established independent company, engaged in the provision of financial, tax, legal, management, investment and trust services to high net worth individual and corporate clients. The company commenced business in 1977 under the direction of Mr Georges Philippe, a Swiss attorney who is the former managing director of a UBS Bank subsidiary and CEO of its fiduciary division. It is now owned by Mr Philippe together with Ms Nives Zanotto, an Italian national, who is also president of the Board of Directors. Mr Guido Banholzer is the company's CEO. We enclose the relevant extracts from the Zurich cantonal companies register (tab 1). Dr Stoffel has never been a director of Orconsult SA, nor has he ever had any interest in the company; rather he became a client of Orconsult SA in 1999 in the circumstances described shortly below.

    1.2.  Orconsult Limited is owned by Mr Philippe. It was established by him in 1999 for the purposes of becoming trustee of the Aquarius and Capricorn Trusts. The sole directors of the company are Mr Philippe and Mr Banholzer: see the attached Certificate of Incumbency (tab 2). Again, Dr Stoffel has never been a director of Orconsult Limited or had any interest in the company.

    1.3.  Each of the Recipient Entities is beneficially owned by Orconsult SA. Each of them was established for the purposes of providing nominee services to clients of Orconsult SA who wish their identities to remain confidential, including Dr Stoffel but also including numerous other clients with no connection whatever with Dr Stoffel or the current litigation. The information set out in your client's second witness statement as to the identity of the general and limited partners of the 6 Scottish limited partnerships is correct. The directors of IPMG (Industrial Planning and Marketing Group) Limited (**"IPMG"**) are Luis A. Davis and Pamela D. Hall and the shareholder is Orconsult SA. None of the Recipient Entities is or has been associated with Dr Stoffel other than in his capacity as a client of Orconsult SA who made use of their nominee services, as further described below.

2.  Although for obvious reasons we have not yet had the opportunity to investigate matters in depth, we understand from Orconsult SA that the circumstances in which it became involved in the affairs of the Blickle family were, in bare outline, as follows. We should emphasise that the knowledge of Orconsult SA as to some of the matters referred to below is in turn derived from what it has previously been told by Dr Stoffel and documents which Dr Stoffel provided to him.

3.  In December 1998, Mrs Angela Blickle settled a substantial part of the Blickle family fortune into the 3 Jersey discretionary trusts referred to in your client's witness statements, namely the Aslam, Colleen and Logany settlements (**"the Jersey Trusts"**), of which Clarissa and Cedrick Blickle (**"the children"**) are the principal beneficiaries and Vistra Trust Company Limited (formerly Chiltern Trust Company (Jersey) Limited) (**"Vistra"**) is the trustee. The person principally entrusted with the

20-07-07    15:45    FROM-    T-852    P.007/010    F-562

Lawrence Graham LLP

establishment of the Jersey Trusts and their administration thereafter was Dr Stoffel. In particular, a mandate agreement dated 1 November 1998 (tab 3) provided that Dr Stoffel was to act directly or indirectly (through a corporate entity) as protector of the trusts and conferred a broad discretion upon him. These provisions were carried into effect by the trust instruments: the appointed protector of each trust was an Irish company controlled by Dr Stoffel (New Eagle Corporation Limited) with extensive powers, and in practice the administration of the trusts' affairs was largely delegated to him. The mandate agreement also provided for substantial remuneration for Dr Stoffel.

4.   In February 1999, Angela Blickle died. Her estranged husband, Mr Holger Blickle, then threatened to contest the Jersey Trusts. In response to this threat, discussions took place between the children, Vistra and Dr Stoffel as a result of which it was agreed in August 1999 that a new trust structure would be established to which the assets of the Jersey Trusts would be transferred: see the note of the meeting of 16 August 1999 prepared by Rodney Hodges of Vistra (tab 4). In the latter part of 1999, Orconsult SA was engaged to assist Dr Stoffel with the establishment of such a new trust structure, which it was decided should be located in Bermuda rather than the Bahamas (as referred to in Mr Hodges' note). This led in due course to the establishment of the Aquarius and Capricorn Trusts on 2 December 1999 ("the Bermuda Trusts") by a nominal settlor, with Orconsult Limited as trustee, New Eagle Corporation Limited again as protector, and the children again as beneficiaries (together with medical research and educational charities).

5.   Between December 1999 and February 2000, steps were taken to transfer the assets of the Jersey Trusts to Orconsult Limited as trustee of the Bermuda Trusts. These assets included certain Swiss companies. They also included substantial funds previously held by 3 Irish nominee companies which had been transferred to 2 BVI companies established by Mr Stoffel, namely Maytown Universal SA ("Maytown") and Plympton Universal SA ("Plympton"). The shares in Maytown and Plympton were transferred to Orconsult SA, which on 3 December 1999 formally acknowledged that it held them on behalf of Orconsult Limited as trustee of the Bermuda Trusts (tab 5); see also the enclosed Memoranda of Addition dated 20 January 2000 (tab 6).

6.   Between 2000 and 2006, the administration of the trust assets was carried out by Dr Stoffel and Orconsult Limited (and not Vistra), on the footing that the assets of the Jersey Trusts had been effectively transferred to the Bermuda Trusts. Over this period, the assets of the trusts increased very substantially in value. The financial statements of the Bermuda Trusts were discussed annually with the children and approved by them. These statements clearly showed, amongst other things, the profit made by Maytown and Plympton as income of the Bermuda Trusts (see for example the attached statements for the year ending 31 December 2001 (tab 7). They also showed the payment of substantial administration expenses, including the fees charged to the trusts directly or indirectly by Dr Stoffel.

7.   In the course of 2006, a dispute broke out between Dr Stoffel and the children, concerning amongst other things payments which had been made to certain charities with which Dr Stoffel was associated, and the effectiveness of the transfer of the Swiss companies to the Bermuda Trusts was also thrown into doubt. In this context, it was proposed that to regularise the position, Orconsult Limited would acknowledge that it held the shares in Maytown and Plympton and the

Swiss companies on the trusts of the Jersey Trusts and that the Bermuda Trusts would be added as beneficiaries of the Jersey Trusts. Documents effecting these proposals were signed in June and July 2006, however following a subsequent deterioration in relations between Dr Stoffel and the children, the Bermuda Trusts were then removed as beneficiaries of the Jersey Trusts. After unsuccessful negotiations with Vistra, Orconsult Limited and Orconsult SA have now themselves withdrawn and revoked the acknowledgments and declarations which they signed in the summer of 2006. Accordingly, contrary to what is stated in your client's witness statement, it is certainly in issue whether Maytown and Plympton and their assets belong to the Jersey Trusts.

8.   There are ongoing proceedings in various jurisdictions involving the children, Dr Stoffel, Vistra and Orconsult Limited concerning these events. The proceedings have included the proceedings brought in the BVI by Vistra for the appointment of your client as receiver over the assets of Maytown and Plympton, as well as other proceedings in Switzerland, in Jersey and in Bermuda. In its approach to these proceedings, Orconsult Limited has been mindful of the fact that, whatever the merits of that dispute and of the various allegations which have been made about the conduct of Dr Stoffel, the children are in any event the principal beneficiaries of both the Jersey and the Bermuda Trusts. In these circumstances, and despite what we have stated in paragraph 5 above, neither Orconsult Limited nor Maytown and Plympton through their directors have hitherto taken any steps to contest the appointment of your client as receiver over Maytown and Plympton's assets. Rather, they have co-operated extensively with your client in his efforts to trace and obtain control over funds of Maytown and Plympton. This is quite contrary to the impression sought to be created by your client in his second witness statement, and indeed by your Counsel at the recent hearing before Briggs J. Indeed, the correspondence with Mr Banholzer exhibited to your client's own witness statement gives an entirely different impression of the matter from that given in the witness statement itself.

**The information now sought by your client**

9.   Against this background, we consider that the manner in which your client has approached the question of disclosure of further information concerning the various payments received by our clients over the period between 2001 and 2006 is unfortunate. As we have stated, your client has previously received a high degree of co-operation. Having waited nearly 2 months after learning of the payments before seeking any information about them, we can see no good reason why he could not have awaited the outcome of the inquiries referred to in the letter dated 22 June 2007 from SMP Partners (to whom all 7 of the letters addressed to our client's registered offices were forwarded) before applying to the court. Your client then chose to proceed against Lloyds without giving our clients sufficient notice to enable them to consider their position with the benefit of advice from English solicitors, or indeed supplying them with the vast bulk of the material on which he relied until several days after the application had actually been heard. Furthermore, he sought an order which was on any view far too wide and supported his application with a witness statement which appears to us to have been misleading in important respects.

10. Be that as it may, our clients' primary concern now, as it has been in the past, is to provide your client with as much of the information he seeks as they consider they can, in view of their obligations of confidentiality to third parties.

11. In short, the payments made to our clients by Maytown and Plympton as detailed in the appendices to your letters of 15 June 2007 were made in respect of fees charged by Dr Stoffel for services rendered to Orconsult Limited as trustee of the Bermuda Trusts. The fees in question were charged by Dr Stoffel through two corporate entities, namely Albe Associates Limited (a BVI company) ("Albe") and Bluecolt Securities Limited (a Panamanian company) ("Bluecolt"), which he beneficially owned and controlled.

12. The role of our clients was simply to act as nominees for the purposes of invoicing and receiving the fees, pursuant to mandate agreements entered into between Orconsult SA and Albe and Bluecolt respectively, under which our clients charged a fee of 1%. In each case, Orconsult SA was permitted to designate substitutes for the execution of the mandate and nominated one of our clients for this purpose. Copies of these mandate agreements are enclosed herewith (tab 8). We understand from Orconsult SA that the payment structure set out above was proposed by Dr Stoffel.

13. The services in respect of which Dr Stoffel's fees were charged were identified in very general terms on the invoices submitted by our clients, in accordance with information provided to them by Dr Stoffel. Copies of these invoices are also enclosed herewith (tab 9). Payment of the invoices was approved by Orconsult Limited, which was provided with more detailed information justifying the fees charged, and as we have stated above the financial statements for the Bermuda Trusts were audited on an annual basis and reviewed with the children themselves.

14. We understand from Orconsult SA that the services in respect of which the fees were charged related to the administration and management of a complex trust fund which included substantial assets in the form of real property, securities, loans, other investments and cash. This fund was worth some 80 million euros in 2001 and increased in value very substantially thereafter, we understand to well over 100 million euros although our clients do not have a recent valuation. The annual fees charged by Dr Stoffel were accordingly of the order of 1-2% of the value of the fund.

15. As regards what became of the funds received by our clients, the answer is that in each case they were transferred on to an account of Albe or Bluecolt, as the case may be, less the 1% fee retained by our clients. We enclose a schedule setting out in the case of each and every payment to our clients referred to in the appendices to your letters of 15 June 2007 the date and amount of the onward payment to the principal concerned (tab 10). We further enclose copies of bank statements evidencing the payments in question, these statements being redacted to remove references to other principals for whom our clients were also providing nominee services, which are of course confidential (tab 11). The payments to Albe were made to a further account at Lloyds in England, whilst the payments to Bluecolt were made to an account of ING Bank in the Netherlands. Details of those accounts appear from the bank statements. As regards what became of the payments thereafter, your client will have to seek this information from Albe and Bluecolt.

Lawrence Graham LLP

**Our clients' position as regards your client's proceedings**

16. It appears to us that the information we have provided above renders your existing application against Lloyds in respect of our clients' accounts superfluous. On the one hand, it includes considerably more relevant material than your client could have hoped to obtain from Lloyds, whilst on the other excluding a large quantity of irrelevant and confidential material which would have fallen within the scope of the order which you were previously seeking. We would add that, for the reasons set out shortly in our client's Skeleton Argument for the hearing which took place on 11 July 2007, we do not consider that proceedings against Lloyds under the *Bankers Trust v Shapira* jurisdiction in respect of our clients' accounts were ever appropriate. In the circumstances, we would invite your client now to agree that the application should be dismissed. We would further invite your proposals concerning our clients' costs.

17. Only in the event that this cannot be agreed and your client persists with his existing application will it be necessary to consider further the debate which has been taking place between our respective Counsel as to the status of our clients in relation to the proceedings. As to that, provided that it is clear that our clients are to be treated as parties to the existing proceedings solely for the purposes of your client's application against Lloyds (and in relation to any application for costs they may need to make), our clients have no objection to being joined as parties to the proceedings. However, our clients are not willing to be joined on the footing that it is then open to your client to amend the proceedings to seek substantive relief against them, thereby evading the need to satisfy the requirements for service out of the jurisdiction.

Yours faithfully

**Withers LLP**
Enc

# EXHIBIT 38

AGREEMENT ON THE TAKEOVER AND ADMINISTRATION OF A FOUNDATION

Between

Dr. Marco STOFFEL, 340 W. 12TH Street, New York, NY 10014          (Customer)

And

ORCONSULT SA, Wengistrasse 7, 8026 Zurich          (Orconsult)

1. The customer takes over the foundation indicated hereinafter from Orconsult SA and at the same time commissions Orconsult for its administration.

| | |
|---|---|
| Name: | ALBEAG FOUNDATION |
| Seat: | Vaduz |
| Capital: | CHF 30.000.00 |
| Foundation board: | is assigned by Orconsult or the correspondent of Orconsult in Liechtenstein. |

Special agreements: _____

2. Orconsult follows the written regulations and instructions of the customer in the legally permissible framework. Orconsult is authorized to act in any case if required by urgent circumstances and instructions of the customer may not be obtained in the required time.

3. The customer authorizes Orconsult to charge any present and future claims as well as expenses, fees and other charges of any kind that are caused by the organization and administration to the account of the foundation.
In the event that the foundation account may not be charged for any reason, the customer authorizes Orconsult to withdraw the required amounts from the following account:

_____

The customer assumes joint guarantee with the foundation for the expenses, fees, costs, taxes and other charges.

4. The customer authorizes Orconsult to use the following address as a recipient address of all documents or letters addressed to him, without that any other identity or address indication is necessary:

( ) Send correspondence to: _____
(X) Keep correspondence in the customer file at Orconsult.

The customer regards ever documents and correspondence that is addressed according to these instructions as effectively received. The correspondence kept in the file of the customer at Orconsult is considered as delivered accordingly and namely on the date the correspondence was dated.

5. The customer hereby relieves Orconsult and the persons hired by it (in particular foundation board, possibly a board of control, domicile holder, etc.) explicitly from any liability that is linked to the organization and administration of the foundation, except in the event of intent or gross negligence. The customer holds Orconsult and the persons hired by it harmless from all claims and suits filed by third parties in connection with its activity or that of the foundation against it.

6. The customer confirms that the assets incorporated in the foundation do not proceed directly or indirectly from any criminally relevant actions, including passive bribery, money laundering or similar.

STOFFEL 13613

7. The customer confirms that it has not accepted any bribery payments at any time nor occupied a position in the public sector nor in the government that exposed it to the danger of passive bribery or could have favored or allowed this.

8. In the event that a multitude of customers appears Orconsult is authorized to regard each one of them as exclusively authorized without committing to any obligation towards the other customers. Every customer must provide a joint guarantee under this agreement.

9. The agreement at hand and the powers of attorney assigned to it do not expire due to the death of the customer nor for any other reasons indicated in art. 35 and 405 of the Swiss Code of Obligations.

10. The agreement at hand may be cancelled at any time, observing a two month period.

11. The agreement at hand is subject in its entirety exclusively to the Swiss law. Place of jurisdiction for all disputes resulting from this agreement and connected to it is Zurich. Orconsult has the right to prosecute the customer before every other responsible authority.


Zurich, *11/24/06*


The customer:                                    Orconsult SA
[signature]                                      [signature]


STOFFEL 13614

VEREINBARUNG ZUR ÜBERNAHME UND VERWALTUNG EINER STIFTUNG

Zwischen

Dr. Marco STOFFEL, 340 W. 12th Street, New York, NY 10014 (Kunde)

und

ORCONSULT SA, Wengistrasse 7, 8026 Zürich (Orconsult)

1. Der Kunde übernimmt von der Orconsult SA die unten genannte Stiftung und erteilt gleichzeitig der Orconsult das Mandat zu deren Verwaltung.

Name: ALBEAG FOUNDATION
Sitz: Vaduz
Kapital: CHF 30'000.–
Stiftungsrat: wird von der Orconsult, bzw. vom Korrespondenten der Orconsult in Liechtenstein zur Verfügung gestellt.

Besondere Vereinbarungen:

2. Die Orconsult befolgt im gesetzlich zulässigen Rahmen die schriftlichen Vorschriften und Instruktionen des Kunden. Orconsult ist in jedem Fall zum handeln befugt, wenn dringende Umstände es erfordern und Instruktionen des Kunden in der gebotenen Zeit nicht eingeholt werden können.

3. Der Kunde ermächtigt Orconsult, alle gegenwärtigen und zukünftigen Ansprüche, wie Spesen, Honorare, Gebühren und andere Ausgaben jedwelcher Art, die durch die Organisation und Verwaltung verursacht wurden, dem Konto der Stiftung zu belasten. Sollte das Stiftungskonto aus irgend einem Grunde nicht belastet werden können, so ermächtigt der Kunde die Orconsult die notwendigen Beträge von folgendem Konto abzuheben:

Der Kunde haftet solidarisch mit der Stiftung für die erwähnten Spesen, Honorare, Gebühren, Steuern und anderen Ausgaben.

4. Der Kunde ermächtigt Orconsult, die folgende Adresse als Empfängerangabe aller an ihn gerichteten Dokumente oder Korrespondenz zu benützen, ohne dass eine andere Identität oder Adressangabe nötig wäre:

( ) Korrespondenz senden an:

(X) Korrespondenz im Dossier des Kunden bei Orconsult aufbewahren.

Der Kunde betrachtet jedes Dokument oder jegliche Korrespondenz, die gemäss diesen Anweisungen adressiert ist, als effektiv erhalten zu haben. Die im Dossier des Kunden bei Orconsult aufbewahrte Korrespondenz gilt als ordnungsgemäss zugestellt und zwar am Datierungsdatum.

5. Der Kunde entbindet hiermit Orconsult und die von ihr beauftragten Personen (insbesondere Stiftungsräte, ev. Kontrollstelle, Domizilhalter etc.) ausdrücklich von jeglicher Haftung, die im Zusammenhang mit der Organisation und Verwaltung der Stiftung, steht, ausser bei Absicht oder grober Fahrlässigkeit. Der Kunde bewahrt Orconsult und die von ihr beauftragten Personen vor allen Forderungen und Klagen die Dritte in Verbindung mit ihrer Tätigkeit oder derjenigen der Stiftung ihr gegenüber geltend machen könnten.

6. Der Kunde bestätigt, dass die in die Stiftung einfliessenden Vermögenswerte weder direkt noch indirekt irgendwelchen strafrechtlich relevanten Handlungen entstammen, inklusive passiver Bestechung, Geldwäscherei und dergleichen.

STOFFEL 13612

7. Der Kunde bestätigt, dass er zu keinem Zeitpunkt Bestechungsgelder entgegengenommen hat noch eine Position in öffentlichen Diensten oder ein Regierungsamt bekleidet, die ihn der Gefahr passiver Bestechung aussetzen, diese begünstigen oder ermöglichen könnten.

8. Für den Fall, dass eine Mehrzahl von Kunden auftritt, ist Orconsult berechtigt, jeden von ihnen als ausschliesslich bevollmächtigt zu betrachten, ohne damit irgendeine Verpflichtung den anderen Kunden gegenüber einzugehen. Jeder Kunde ist unter diesem Vertrag solidarisch verpflichtet.

9. Der vorliegende Vertrag und die in ihm erteilten Vollmachten erlöschen weder mit dem Tod des Kunden noch aus anderen, in Art. 35 und 405 des Schweizerischen Obligationenrechts genannten Gründen.

10. Der vorliegende Vertrag ist jederzeit kündbar, unter Beachtung einer zweimonatigen Frist.

11. Der vorliegende Vertrag untersteht in allen Teilen ausschliesslich dem schweizerischen Recht. Gerichtsstand für die aus diesem Vertrag folgenden und die mit ihm im Zusammenhang stehenden Streitigkeiten ist Zürich. Orconsult hat aber das Recht, den Kunden vor jeder anderen zuständigen Behörde zu belangen.

Zürich, 24. 11. 6C

Der Kunde:                                    Orconsult SA



**TRANSPERFECT**
T R A N S L A T I O N S

ALBANY
AMSTERDAM
ATLANTA
AUSTIN
BOSTON
BRUSSELS
CHARLOTTE
CHICAGO
DALLAS
DENVER
FRANKFURT
GENEVA
HONG KONG
HOUSTON
IRVINE
LONDON
LOS ANGELES
MIAMI
MINNEAPOLIS
MONTREAL
MUNICH
NEW YORK
PARIS
PHILADELPHIA
RESEARCH
TRIANGLE PARK
SAN DIEGO
SAN FRANCISCO
SAN JOSE
SEATTLE
SINGAPORE
STOCKHOLM
SYDNEY
TOKYO
TORONTO
WASHINGTON, DC

City of New York, State of New York, County of New York

I, Jinmin Lee, hereby certify that the following is, to the best of my knowledge and belief, a true and accurate translation of the document "AGREEMENT ON THE TAKEOVER AND ADMINISTRATION OF A FOUNDATION," dated November 24, 2006, from German into English.

Jinmin Lee

Sworn to before me this

20th day of September, 2007

Signature, Notary Public

PAUL D. RALSTON
Notary Public, State of New York
No. 01RA6023867
Qualified in Queens County
Commission Expires May 3, 20 11

Stamp, Notary Public
State of New York

THREE PARK AVENUE, 39TH FLOOR, NEW YORK, NY 10016   T 212.689.5555   F 212.689.1059   WWW.TRANSPERFECT.COM

# EXHIBIT 39

# Hughes
# Hubbard

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

April 10, 2008

BY HAND DELIVERY

Honorable Naomi R. Buchwald
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2270
New York, NY 10007

Re:    *Vistra Trust Company (Jersey) Limited et al. v. Stoffel et al.*, No. 08 CV-02844

Dear Judge Buchwald:

We represent defendants Dr. Marco Stoffel and Lauramca Holdings in the above referenced action. On March 18, 2008 we removed the above referenced action to the United States District Court of the Southern District of New York pursuant to 9 U.S.C. § 205 and 28 U.S.C. § 1446.

In compliance with Local Rule 81.1, on April 2, 2008 we filed on the Electronic Case Filing System ("ECF") a copy of all records and proceedings which were available in the state court clerk's office. However, the state court file did not include all the records and proceedings filed by the parties in the state court action. We wish to supplement our April 2 filing with a complete copy of the state court records and proceedings, but the size of this filing is too large to be accommodated by ECF. Therefore, we respectfully request leave of the Court to file a hard copy, in lieu of an electronic copy, of the state court records and proceedings.

Respectfully yours,

Hagit Elul

So Ordered: _____

Hon. Naomi R. Buchwald, U.S. District Judge

New York    ▪    Washington, D.C.    ▪    Los Angeles    ▪    Miami    ▪    Jersey City    ▪    Paris

# EXHIBIT 40

# Hughes
# Hubbard

Hughes Hubbard & Reed LLP
One Battery Park Plaza
New York, New York 10004-1482
Telephone: 212-837-6000
Fax: 212-422-4726
hugheshubbard.com

April 14, 2008

<u>BY HAND DELIVERY</u>

Honorable Naomi R. Buchwald
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Room 2270
New York, NY 10007

> Re: *Vistra Trust Company (Jersey) Limited et al. v. Stoffel et al.*, No. 08 CV-02844

Dear Judge Buchwald:

We write in response to plaintiff's letter of April 11, 2007 objecting to defendants Dr. Marco Stoffel and Lauramca Holdings LLC request for leave to submit a hard copy of certain state court records and proceedings because they exceed the size permitted for electronic filing by ECF.

It is not entirely clear why plaintiffs would want to holdup this Court's access to a complete record in this action. But what is clear is that their attempt to do so rests on a distortion of the facts and a misstatement of the law, including their regrettable failure to draw this Court's attention to controlling case authority from the Second Circuit Court of Appeals.

Plaintiffs construe defendants' April 8 letter as some type of concession that defendants have failed to comply with Local Rule 8.1. Putting aside that no fair reading of that letter yields such a construction, the fact is that plaintiffs are incorrect. Defendants have complied with Local Rule 8.1. On March 18, 2008, Dr. Stoffel and Lauramca removed this action from New York Supreme Court pursuant to the Federal Arbitration Act, 9 U.S.C. § 205. Local Rule 81.1 required that within 20 days thereafter the removing party to file "a copy of all records and proceedings <u>in the state court</u>." (Emphasis added.) On April 1, 2008, defendants did just that; counsel obtained the file from the state court clerk's office, and the following day (within 15 days after removal of the case) uploaded the file to the Court's Electronic Case Filing System ("ECF").

It was apparent, however, that the file held in the state court clerk's office was inexplicably missing certain documents submitted by the parties in this case. Because we thought it appropriate for this Court to have the full record in this case as quickly as possible, we sought this Court's permission in our April 8 letter to supplement the state court file with <u>our own copy set</u> of the missing documents in hard copy, as those documents exceed the size limitations imposed by ECF.

Plaintiff's objection to defendants' request to supplement the record has no basis in either the text of Local Rule 81.1(b) or in case authority. *Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, LLP*, No. 02-2435-CM, 2003 WL 21313957 (D.Kan. May 23, 2003) is on point. There, the court denied plaintiff's motion to remand on the ground that the defendant filed a copy of the state record outside of the local rule's 20-day limit where the complete state court record was not available because of delays in the state court clerk's office.

The cases on which plaintiff relies are in no way on point. They are readily distinguishable on the facts, involving circumstances where the removing party did not make any attempt to submit the state court records, (*Bagnato v. The Home Depot*, 2004 WL 625270, slip op. at *1 (W.D.N.Y. Jan. 15, 2004)), or where the removing party filed only the documents served on it, rather than the file found in the state court (*FastPro International Inc. v. Great Plains Software O.C., Inc.*, No. 01-2082-KHV, 2001 WL 395287 (D.Kan. April 10, 2001).).

Finally, plaintiffs' claim that the Second Circuit case law compels remand for noncompliance with Local Rule 81.1 is simply false. Unfortunately, plaintiffs fail to bring to this Court's attention *Fulfree v. Manchester*, 182 F.3d 899, 1999 WL 385753 ((2d Cir. 1999), where the Second Circuit resoundingly rejected the argument that remand was required for noncompliance with Local Rule 81.1(a),[1] and held that "the district court has the discretion to excuse noncompliance with local court rules". *See also Somiyo v. J.Lu-Rob Enterprises, Inc.* 932 F.2d 1043, 1048-49 (2d Cir.1991) (district court had discretion to "excuse or overlook" noncompliance with local rules in removal petition).

We believe it preferable for this Court to have the entire record in this case as expeditiously as possible, and we seek to do so in the most convenient and precise manner as possible. Thus, we respectfully ask that your Honor grant our request to provide hard copies from our file set of those portions of the state court file that were unavailable from the state court clerk's office.

Respectfully yours,

Hagit Elul

cc:    Scott S. Balber
       Martin J. Murray

---

[1] Local Rule 81.1(a) requires a party removing on diversity grounds to specify the citizenship of all the parties.

# EXHIBIT 41

---

### MANDATE FOR THE INCORPORATION
### AND MANAGEMENT OF A COMPANY

---

Between

Stoffel Marco, British citizen

6, Babmaes Street, London SW1Y6HD                                    **(Client)**


and


ORCONSULT SA, Wengistrasse 7, 8026 Zurich                          **(Orconsult)**


1.   The Client gives Orconsult the order to incorporate or to take over and to manage the following Company **(Company):**

| | |
|---|---|
| Firm name: | Albe Associates Ltd. |
| Domicile: | B.V.I. |
| Objects: | collecting fees and commission |
| Capital: | USD 50'000.-- |
| Nominee Shareholders: | Bearer shares |
| Directors: | will be provided by ORCONSULT SA |
| Accountancy: | none |
| Audit: | none |
| Special clauses: | Incorporation CHF 4'300.--; Management CHF 4'500.-- p.a. |


2.   The share certificate(s) **(Shares)** or any other document embodying the ownership rights of the company shall be deposited with safe Orconsult SA.

3.   Orconsult is empowered, with the right of substitution, to exercise as fiduciary, i.e. in its own name but for account and risk of the Client and in Client's best interest, all rights to vote and to dispose connected with the Shares. Orconsult follows all legal instructions and regulations given in writing by the Client. Nevertheless, Orconsult is authorised to take initiatives on its own in urgent cases if the instructions of the Client cannot be obtained in time.

4.   The Client authorises Orconsult to debit to the account of the Company all the expenses, fees, duties, taxes and other disbursements of any kind which may be caused by the formation of the Company, its organisation and future management.

Should it for any reason not be possible to debit the account of the Company, the Client authorises Orconsult to debit the following account:

_____

The funds necessary to pay up the capital of the Company can also be debited to the above-mentioned account. The Client declares to be jointly and severally debtor towards Orconsult of said expenses, fees, duties, taxes and other disbursements.

5. The Client authorises Orconsult to make use of the following address as recipient of every document or correspondence addressed to him, without any complementary identification of identity or address:

( ) Correspondence to be sent to: _____

( x ) Correspondence is to be kept in Client's file at Orconsult's offices.

The Client considers each and every document or correspondence addressed according to these instructions as actually received. The correspondence in Client's file is to be considered as delivered to the Client on the date of the document.

6. The following persons are authorised to legally represent the Client towards Orconsult in all his rights and obligations in connection with this Agreement:

| Name and address | Signature right (joint/individual) | Signature |
| --- | --- | --- |
| _____ | _____ | _____ |
| _____ | _____ | _____ |
| _____ | _____ | _____ |

7. The Client expressly discharges Orconsult and its attorneys or delegates of any liability arising from the formation of the Company or from its organisation or future management. The Client holds Orconsult and its attorneys and delegates harmless from any claim which could be raised against them by third parties in connection with their activity or the activity of the company. However, Orconsult will remain liable in cases of intentional wrong doing or heavy negligence.

8. Should there be several clients, Orconsult is authorised to consider each single Client as exclusively empowered to exercise all rights in connection with this Agreement, without being responsible in any manner towards the other Clients. Each Client is to be considered jointly and severally liable under this Agreement.

9. The present Agreement and the granted powers of attorney are neither obliterated in case of death of one or several clients nor in case of other reasons mentioned in Articles 35 and 405 of the Swiss Code of Obligations.

10. This Agreement may be cancelled at any time providing a two months notice is served.

11. **This Agreement is governed in all its effects by Swiss Law. Any litigation resulting from this Agreement is to be submitted to the competent Court of Justice in Zurich. However, Orconsult reserves the right to take legal action against the Client before any other competent authority.**

Zurich, November 6, 2000

The client                                          Orconsult SA

# EXHIBIT 42



Potter
Anderson
&Corroon LLP

1313 North Market Street
P.O. Box 951
Wilmington, DE 19899-0951
302 984 6000

www.potteranderson.com

Berton W. Ashman, Jr.
302 984-6180 Direct Phone
302 658-1192 Fax
bashman@potteranderson.com

April 3, 2008

**VIA HAND DELIVERY**

Harry Tashjian, IV
Richards, Layton & Finger
One Rodney Square
920 North King Street
Wilmington, Delaware 19801

Re:    *Colleen Investment AG, et al. v. Stoffel*, C.A. No. 2672-VCS

Dear Harry:

      I write in response to your letter of March 13, 2008, which purports to identify a number of "deficiencies" in the response of Plaintiffs Colleen Investment AG, Colleen Investment, L.L.C., and Logany, L.L.C. ("Plaintiffs") to Marco Stoffel's First Request for the Production of Documents (the "Request").

      As set forth in Plaintiffs' responses and objections to the Request (the "Response"), Plaintiffs have objected to Stoffel's requests to the extent, <u>inter alia</u>, Stoffel seeks documents that (1) Stoffel himself shipped from New York to Switzerland, (2) no longer exist, or are exclusively in Stoffel's possession, (3) Plaintiffs have already made available to Stoffel in this action, as deposition exhibits or exhibits to their filings, and/or (4) are irrelevant to this action and to Plaintiffs' Motion for Sanctions dated August 15, 2007 (together with Plaintiffs' Amended Motion for Sanctions dated November 20, 2007, the "Sanctions Motion").

      Notwithstanding these objections and the fact that Plaintiffs dispute your characterization of the Response, Plaintiffs will make twenty-seven boxes of documents available to Stoffel in New York. This provision of documents, as well as Plaintiffs' specific responses to the various issues raised in your letter, are set forth below:

- <u>Request Nos. 1, 7, 8 and 9</u>: In your letter, you seek access in the United States to the "contents of boxes of documents provided to Plaintiffs by Mr. Urs Christen on or about November 26, 2007," which Plaintiffs have offered to make available to Stoffel in the Bailiwick of Jersey. Plaintiffs will provide Stoffel with access to 27 boxes of documents turned over by Mr. Christen on or about November 26, 2007 (the "Christen Boxes"), for

Harry Tashjian, IV, Esquire
April 3, 2008
Page 2

review and copying at Stoffel's expense, in New York. However, Stoffel will need to pay Plaintiffs -- in advance -- for the cost of shipping the Christen Boxes from Jersey. Plaintiffs should not be required to bear this cost because it was Stoffel who shipped Plaintiffs' business records from New York to Switzerland in the first instance. (See Transcript of December 3, 2007 Argument on Motion for Commissions and the Court's Ruling ("December 3 Transcript") at 36:19-22 (noting that "the first thing you'd ask is, one, get them back; two, why was that done; and, three, we remind you, get them back at your cost, and we're seeing the Judge . . . .") Please contact me at your convenience to discuss the necessary financial and logistical arrangements for the shipment of these boxes.[1]

- Request No. 1: You have asked that Plaintiffs confirm that "none of the documents contained in [the Christen Boxes] were relied upon in the drafting of the Motion for Sanctions." Your request is not appropriate in that it calls for Plaintiffs to produce a narrative response describing the drafting of the Sanctions Motion and for documents or information protected by the work product doctrine.[2] As set forth above, however, Plaintiffs have offered to make the contents of the Christen Boxes available for review and copying by Dr. Stoffel.

- Request Nos. 7 and 8: You have requested documents "related to Plaintiffs' contention that certain documents contained in the aforementioned 26 boxes indicated that they were or should be 'sanitized.'" As noted above, Plaintiffs will make the contents of the Christen Boxes available for review and copying by Dr. Stoffel. Of course, Plaintiffs do not possess and cannot produce any documents that were removed or destroyed by Dr. Stoffel, Mr. Christen, or anyone acting on their behalf during the nine months Mr. Christen was in possession of the documents and denied Plaintiffs access to them.

- Request Nos. 10, 12 and 16: As explained in the initial bullet point herein, Plaintiffs will provide Stoffel with access in New York to the contents of the Christen Boxes.

- Request Nos. 1, 2, 3, 5, 6, 8, 9 and 11: In your letter, you ask that Plaintiffs (1) identify any documents that are being withheld on the basis of Plaintiffs' objection that the Request calls for documents already in Stoffel's possession, custody and control, and (2) set forth the basis for the belief that they are currently in Stoffel's possession, custody and control. Plaintiffs see no reason to produce documents that Dr. Stoffel has already

---

[1]    Plaintiffs are unaware of the existence of any CDs containing digital copies of the contents of the Christen Boxes

[2]    Moreover, request number 1 demands documents "referred to" in the Sanctions Motion. These documents are attached as exhibits to the Sanctions Motion, and Plaintiffs are not obligated to reproduce such documents or identify them for Stoffel.

Harry Tashjian, IV, Esquire
April 3, 2008
Page 3

produced to Plaintiffs or otherwise received, and do not believe that any further response
is required.

- Request Nos. 4, 5 and 6: These requests seek documents which concern Stoffel's
  purported defense to the Sanctions Motion, i.e., that Plaintiffs had, or failed to seek,
  access to the documents Stoffel shipped to Switzerland.  Stoffel's motion seeking the
  issuance of commissions, which sought to elicit testimony on these issues, was denied
  because this Court held that the discovery sought is irrelevant.  (December 3 Transcript,
  at 33:21-22.)  Plaintiffs' purported access to the books and records is irrelevant to the
  issue of Stoffel's shipment of Plaintiffs' books and records to Switzerland in violation of
  the order of the Chancery Court.  Stoffel's arguments in this vein are no more viable in
  the context of the Request than they were in his motion for commissions, which the Court
  denied.  Accordingly, Plaintiffs stand on their objection to document request numbers 4,
  5 and 6.

- Request No. 8:  In your letter, you have requested that Plaintiffs advise whether they
  have withheld any documents that "were destroyed or withheld by Dr. Stoffel."  Plaintiffs
  ask that Stoffel provide Plaintiffs with a list of the documents that he has "destroyed or
  withheld," and Plaintiffs will attempt to determine whether they have obtained those
  documents by other means.

- Request No. 13, 14 and 15:  You have asked Plaintiffs to confirm that they will update
  their responses to these requests.  Plaintiffs advise that they will comply with the
  provisions of Delaware law and any Order of the Court.

  This letter is being sent without prejudice to any objections raised in the
Response, or to any other objection Plaintiffs may raise with respect to the Request or the
demands in your March 13, 2008 letter.  Plaintiffs reserve all of their rights with regard to
such matters.

  Please do not hesitate to contact me if you have any questions.

  Very truly yours,

  Berton W. Ashman, Jr.

858433
cc:  Stephen C. Norman
     Scott S. Balber