UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS,  COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM R. TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

                    Plaintiffs,

          -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

                  Defendants.

Case No. 08 CV 02844

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
<u>THEIR MOTION TO REMAND</u>**

CHADBOURNE & PARKE LLP
Attorneys for Plaintiffs
30 Rockefeller Plaza
New York, NY 10112
(212) 408-5100

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ....................................................................................... 1

PROCEDURAL HISTORY ............................................................................................. 2

STATEMENT OF FACTS ............................................................................................... 3

    A.    Stoffel's Scheme to Defraud Plaintiffs ......................................................... 3

          1.    Stoffel Exercised Near-Total Control Over the Companies
               Owned by the Jersey Trusts ............................................................. 4

          2.    Stoffel Abused His Position to Siphon Off More than
               $30 Million in Plaintiffs' Assets ...................................................... 4

          3.    Despite Vistra's Actions to Remove Stoffel From Power,
               Stoffel Engaged in Continued Malfeasance ................................... 5

    B    Stoffel's Abusive Pursuit of Related Litigation .......................................... 6

ARGUMENT ................................................................................................................... 7

    I    THIS ACTION SHOULD BE REMANDED BECAUSE ALL
        PROPERLY SERVED DEFENDANTS HAVE NOT
        CONSENTED TO REMOVAL .................................................................. 7

    II    THIS ACTION SHOULD BE REMANDED BECAUSE THE
        REMOVING DEFENDANTS HAVE FAILED TO COMPLY WITH
        LOCAL RULE 81.1 .............................................................................. 12

    III    THE CLAIMS AT ISSUE HERE ARE NOT ARBITRABLE ................. 16

          A.    Removal Is Appropriate Only If Plaintiffs' Claims
               are Arbitrable ................................................................................. 16

          B.    Whether This Dispute is Arbitrable is a Question of Law
               for the Court ................................................................................... 17

          C.    The Arbitration Clauses in the Fiduciary Agreements Do Not
               Bind Non-Parties .......................................................................... 19

          D.    The Fiduciary Agreements Do Not Cover the Claims Brought
               By Vistra Against Stoffel ............................................................. 20

IV      STOFFEL HAS WAIVED ANY RIGHT TO ARBITRATE THIS
        DISPUTE.................................................................................................22

CONCLUSION ..............................................................................................25

## TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

AtGames Holdings Ltd. v. Radica Games Ltd.,
    394 F. Supp. 2d 1252 (C.D. Cal. 2005) ...................................................... 17

Bagnato v. Home Depot,
    No. 03-CV-789-E(SC), 2004 WL 625270 (W.D.N.Y. Jan. 15, 2004) ................. 12, 13

Beiser v. Weyler, 284 F.3d 665 (5th Cir. 2002) ............................................... 17

Carrothers Constr. Co. v. USA Slide, Inc.,
    No. 98-2097-JWL, 1998 WL 295602 (D. Kan. May 18, 1998) .................................. 13

Coastal Caisson Corp. v. E.E. Cruz/NAB/Frontier-Kemper,
    No. 05 Civ. 7462 (DLC), 2007 WL 2285936 (S.D.N.Y. Aug. 10, 2007) .................. 18

Com-Tech Assocs. v. Computer Assocs. Int'l, Inc.,
    938 F.2d 1574 (2d Cir. 1991) ...................................................................... 23

Cotton v. Slone, 4 F.3d 176 (2d Cir. 1993) ...................................................... 23

Country Hill Bank v. Gen. Dev. L.P.,
    No. 90-2288-V, 1990 WL 168417 (D. Kan. Sept. 26, 1990) ...................................... 13

Cury v. Royal Palm Sav. Ass'n, 713 F. Supp. 388 (S.D. Fla. 1989) ................................ 13

Doris Trading Corp. v. The SS Union Enterprise,
    406 F. Supp. 1093 (S.D.N.Y. 1976) ...................................................... 9, 10

Employers Ins. of Wausau v. Certain Underwriters of Lloyd's, London,
    787 F. Supp. 165 (W.D. Wis. 1992) ...................................................... 8, 11

Fashion Page, Ltd. v. Zurich Ins. Co., 50 N.Y.2d 265 (1980) ........................................... 9

FastPro Int'l, Inc. v. Great Plains Software O.C., Inc.,
    No. 01-2082-KHV, 2001 WL 395287 (D. Kan. April 10, 2001) ........................ 12, 13

First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938 (1995)........................................ 17

Fulfree v. Manchester, 182 F.3d 899, 1999 WL 385753 (2d Cir. 1999)........................... 13

G.G.G. Pizza, Inc. v. Domino's Pizza, Inc.,
    67 F. Supp. 2d 99 (E.D.N.Y. 1999) ............................................................. 9

GlobalSantaFe Drilling Co. v. Ins. Co. of Pennsylvania,
    No. C 05-4411 CW, 2006 WL 13090 (N.D. Cal. Jan. 3, 2006) ................................. 16

Greater New York Mut. Ins. Co. v. Rankin, 298 A.D.2d 263 (1st Dep't 2002) .......... 19, 20

John Hancock Life Ins. Co. v. Wilson, 254 F.3d 48 (2d Cir. 2001).................................. 17

Katz v. Feinberg, 167 F. Supp. 2d 526 (S.D.N.Y. 2001) ................................................. 17

Kisor v. Collins, 338 F. Supp. 2d 1279 (N.D. Ala. 2004)................................................. 15

Kramer v. Hammond, 943 F.2d 176 (2d Cir. 1991)........................................................ 22

LaFarge Coppee v. Venezolana de Cementos, 31 F.3d 70 (2d Cir. 1994) ................. 12, 13

Leo v. General Elec. Co., 111 F.R.D. 407 (E.D.N.Y. 1986) ...................................... 10, 11

Loeffelbein v. Milberg Weiss Bershad Hynes & Lerach, LLP,
    No. 02-2435-CM, 2003 WL 21313957 (D. Kan. May 23, 2003)............................... 15

Martin v. Archway Inn, 164 A.D.2d 843, 559 N.Y.S.2d 731 (1st Dep't 1990)................. 9

Montrose Global Assets, Inc. v. Bennington Foods, LLC,
    No. 4044-07, 2007 WL 2874952 (Sup. Ct. Nassau Co. Sept. 28, 2007).................... 20

Motorola Credit Corp. v. Uzan, 388 F.3d 39 (2d Cir. 2004) ...................................... 18, 19

Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 348 (1999) .............. 13

Nobu Next Door LLC v. Fine Arts House Inc., 4 N.Y.3d 839 (2005) ............................... 5

PaineWebber, Inc. v. Elahi, 87 F.3d 589 (1st Cir. 1996) ................................................. 18

Patel v. Moore, 968 F. Supp. 587 (D. Kan. 1997) ..................................................... 13, 25

PPG Indus., Inc. v. Webster Auto Parts, Inc.,
    128 F.3d 103 (2d Cir. 1997) ...................................................................... 23

Pollack v. Laidlaw Holdings, Inc., No. 90 Civ. 5788 (DLC),
    1996 WL 112191, *5 (S.D.N.Y. Mar. 14, 1996) ........................................ 24

S & R. Co. of Kingston v. Latona Trucking Inc., 159 F.3d 80 (2d Cir. 1998) ........... 22, 23

Sherman v. A.J. Pegno Constr. Corp., 528 F. Supp. 2d 320 (S.D.N.Y. 2007) ................. 25

Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043 (2d Cir. 1991) ...................................... 8

St. Paul & Chicago Ry. Co. v. McLean, 108 U.S. 212 (1883) ........................................... 13

Telenor Mobile Comms. AS v. Storm LLC,
    524 F. Supp. 2d 332 (S.D.N.Y. 2007) ........................................................ 17

Wilds v. United Parcel Serv., Inc., 262 F. Supp. 2d 163 (S.D.N.Y. 2003) ........................ 8

York Hannover Holding A.G. v. Am. Arbitration Ass'n,
    794 F. Supp. 118 (S.D.N.Y. 1992) ............................................................. 8

## Statutes and Rules                                                    Page(s)

9 U.S.C. § 205 ................................................................................ *passim*

28 U.S.C. § 1441 ............................................................................... 8

28 U.S.C. § 1447 ............................................................................... 12

N.Y. C.P.L.R. 311 .......................................................................... 9, 10

S.D.N.Y. Local Rule 81.1 ............................................................... *passim*

Bundesgesetz uber das Internationale Privatrecht [IPRG]
    [Federal Statute on Private International Law] Dec. 18, 1987, art. 176-194 ........ 18, 19

## Other Authorities                                                     Page(s)

86 N.Y. Jur. 2d Process and Papers § 90 (2001). ........................................... 10

## PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF
## THEIR MOTION TO REMAND

Plaintiffs Vistra Trust Company (Jersey) Limited ("Vistra") as Trustee of the Alsam, Colleen and Logany Settlements (the "Jersey Trusts" or "Trusts"), Colleen Investment AG, Alsam Holding AG, Penny Asset AG, Logany Equity AG, Vierwaldstatter Beteiligungen AG, Clarick AG (the "Swiss Companies"), Colleen Investment, L.L.C. ("Colleen LLC"), Logany, L.L.C. ("Logany LLC," and together with Colleen LLC, the "LLCs"), and William Tacon, Receiver and Manager of the Assets of Maytown Universal SA and Plympton Universal SA, ("Tacon," and collectively, "Plaintiffs") by their attorneys Chadbourne & Parke LLP, respectfully submit this memorandum of law in support of their motion to remand this action against defendants Dr. Marco Stoffel ("Stoffel"), Albe Associates Limited ("Albe"), Bluecolt Securities Corporation ("Bluecolt"), and Lauramca Holdings, L.L.C. ("Lauramca") (together, "Defendants").

## PRELIMINARY STATEMENT

In this action, Plaintiffs (the Trustee of the Jersey Trusts, as well as eight companies owned by the Trusts, and the court-appointed Receiver of two British Virgin Islands companies) seek the return of more than $30 million in assets misappropriated by Defendant Stoffel, an attorney, for his personal benefit. Over a period of nearly eight years, Stoffel engaged in a clandestine campaign of manipulation and malfeasance using the other Defendants named herein as conduits for his illegal scheme. Stoffel spun an elaborate web of deceit that included the fabrication of invoices which Stoffel himself

described as "fake," and the use of an array of offshore shell entities (including Defendants Albe and Bluecolt, both controlled by Stoffel) as a means of concealing his wrongdoing.

Stoffel's removal of this action was improper, and remand to the Commercial Division of the New York Supreme Court for New York County (the "State Court") should be granted, for four reasons. First, Defendants Albe and Bluecolt have been properly served but have not consented to removal of this action. Second, Stoffel has failed to timely provide this Court with the bulk of the state court records and proceedings as required under the terms of this Court's Local Rule 81.1. Stoffel's failure is a procedural defect justifying remand. Third, the claims brought by Plaintiffs here are not arbitrable, and there is accordingly no basis to remove this action under 9 U.S.C. § 205, a provision that allows for removal when the parties have agreed to international arbitration of the claims at issue. Fourth, even if there were an arbitration agreement covering Plaintiffs' claims, Stoffel has waived his right to arbitrate by engaging in a sixteen-month litigation offensive, in which he exploited litigation procedures to Plaintiffs' prejudice.

## PROCEDURAL HISTORY

On December 21, 2007, Plaintiffs commenced this action against Defendants in the State Court, effecting service of the Complaint by hand-delivering it to Stoffel in his personal capacity and on behalf of the other Defendants, all of which he controls. (Declaration of Scott. S. Balber in Support of Plaintiffs' Motion to Remand dated April 17, 2008 ("Balber Decl.") Ex. 1.) Plaintiffs obtained a temporary restraining order barring Stoffel from disposing of millions of dollars worth of luxury cars, objects of art, real

property and financial assets, much of which he obtained by using Albe and Bluecolt as conduits. (Id Ex. 2.) On January 11, 2008, following substantial briefing and a merits hearing, the State Court granted a preliminary injunction barring Stoffel from disposing of the proceeds of the Albe and Bluecolt fraud and his other misdealings with Plaintiffs' assets. (Id. Ex. 3.) On January 22, 2008, Stoffel moved to dismiss this action on grounds of forum non conveniens and purported arbitrability, pointing to twenty-seven purported forum-selection and arbitration agreements (virtually none of them between parties to this action) in support of his motion. (Notice of Removal Ex. 3.) After full briefing, on March 3, 2008, the State Court heard oral argument on Stoffel's Motion to Dismiss and, notwithstanding Stoffel's claims that discovery should be stayed because of the pending motion, entered a Preliminary Conference Order directing that discovery be completed by November 28, 2008. (Balber Decl. Ex. 5.) On March 18, 2008, Stoffel filed a Notice of Removal in this Court, relying exclusively upon three Fiduciary Agreements between one Defendant and one Plaintiff here, and abandoning reliance on the other twenty-four purported agreements that were offered in support of his Motion to Dismiss.

## STATEMENT OF FACTS

### A.    Stoffel's Scheme to Defraud Plaintiffs

Stoffel's elaborate scheme to defraud Plaintiffs is set forth more fully in the Complaint in this action and the preliminary injunction briefing. (Notice of Removal Ex. 1; Balber Decl. Ex 6.) The facts most relevant to the disposition of this Motion to Remand are set forth herein.

3

1.    **Stoffel Exercised Near-Total Control Over the
      Companies Owned by the Jersey Trusts**

On December 18, 1998, Angela and Holger Blickle established the Jersey

Trusts and appointed Plaintiff Vistra as Trustee. (Id. Exs. 9-11.)   The Jersey Trusts owned

the Swiss Companies and, through them, the LLCs.  Two British Virgin Islands

corporations, Maytown Universal SA ("Maytown") and Plympton Universal SA

("Plympton") were later established to hold funds on a nominee basis.  (Notice of Removal

Ex. 1, ¶ 27.)  Until his removal in December 2006,  Stoffel was an officer and director or

exercised total control over all of these entities, and also controlled the Protector of the

Jersey Trusts.  (Id. ¶ 29.)

2.    **Stoffel Abused His Position to Siphon Off More than $30
      Million in Plaintiffs' Assets**

Stoffel abused his positions of authority within the Jersey Trust structure to

transfer $13.8 million belonging to Plaintiffs to Albe and Bluecolt for his own personal

benefit.[1]  Stoffel orchestrated hundreds of transfers of funds from Maytown and Plympton

to seven intermediate shell companies (the "Intermediate Partnerships") on the basis of

what he himself described as "fake invoices," for services that Stoffel admits were never

---

[1]    By at least November of 2000, Stoffel held beneficial ownership of all of the shares of
       Defendant Albe, a British Virgin Islands company, and by at least 2005, Stoffel owned
       Bluecolt, a Panamanian company.  (Balber Decl. Exs. 35-36, p. 2.)

provided to anyone. [2]  (Balber Decl. Exs. 7, pp. 3-4; 18, Tr. 200:9-201:16; 19-22.)  The

money was then transferred from the Intermediate Partnerships to Albe and Bluecolt, and

Stoffel used it to purchase millions of dollars of artwork, antique luxury cars, and other

items, all of which are subject to the Preliminary Injunction issued by the State Court. [3]  (Id.

Exs. 3; 7, pp. 3-4; 19-22.)

> **3.    Despite Vistra's Actions to Remove Stoffel From Power,
>           Stoffel Engaged in Continued Malfeasance**

Upon discovering Stoffel's misconduct, Vistra obtained a court order

suspending the powers of the Protector of the Jersey Trusts and empowering Vistra to take

steps to locate and recover Plaintiffs' assets.  (Id. Ex. 25.)  On December 6 and 7, 2006, the

Swiss Companies resolved to replace their boards of directors, including Stoffel, with

directors chosen by Vistra.  (Id. Ex.26.)  Immediately thereafter, Colleen AG replaced the

officers of the LLCs with new managers.  (Id. Exs. 27-28.)  Stoffel's removal touched off

extensive litigation in multiple jurisdictions which continues to this day.

---

[2]    When questioned under oath about his faxing of these concededly "fake" invoices from
his own fax machine under fax cover sheets in his own handwriting, Stoffel denied
having sent the invoices.  (Id. Ex. 23, Tr. 254:12-272:22.)  Stoffel's personal secretary
testified under oath that the fax machine from which the "fake invoices" were sent is
located in Stoffel's personal office and is used only by Stoffel.  (Id. Ex. 24, Tr. 109:15-
111:4.)

[3]    Because probable success on the merits is a prerequisite to a New York preliminary
injunction, Nobu Next Door LLC v. Fine Arts House Inc., 4 N.Y.3d 839, 840 (2005),
the State Court necessarily found that Plaintiffs had presented sufficient evidence to
show that Albe and Bluecolt likely served as instruments of Stoffel's fraud.

B.    <u>Stoffel's Abusive Pursuit of Related Litigation</u>

While he now contends that all of the claims pled in the Complaint in this action are arbitrable, Stoffel has engaged in a sixteen-month campaign of litigation -- not arbitration -- concerning many of the issues central to this case.  In defense of an action brought against him by Plaintiffs in Delaware Chancery Court relating to his position as manager of the LLCs, Stoffel elected to litigate rather than seek to compel arbitration.  In that case, Stoffel deposed Aline Wey, Plaintiffs' Swiss Counsel and the Secretary at Colleen AG's December 6, 2006 shareholder meeting (<u>id</u>. Exs. 29, 26), participated in third-party depositions (<u>id</u>. Ex. 30), and moved for orders from the Chancery Court directing that commissions be issued for numerous out-of-state subpoenas.  (<u>Id</u>. Ex. 31.)  Twenty-seven boxes of documents, concerning all aspects of the affairs of the LLCs, the Swiss Companies, and Maytown and Plympton, have been made available to Stoffel in discovery in that case.  (<u>Id</u>. Ex. 42.)  As Stoffel himself has acknowledged, he would not be able to obtain this broad-based discovery in Swiss arbitral proceedings.  (<u>See</u> <u>Id</u>. Ex. 32, p. 8.)

Stoffel also admits to having "directed" a strawman litigant to seek discovery in a proceeding in the District of Massachusetts regarding:

- "[Angela] Blickle's intent in her creation of the trust structure, and her intended disposition of the underlying assets;"

- "the intent of Holger Blickle, Clarissa Blickle, and Cedrick Blickle's actions with respect to trust-related entities;" and

- "the location and amount of assets related to the trust structure."[4]

(Id. Ex. 34, ¶ 30.)  That discovery was sought in order to aid Stoffel in a series of Swiss litigations (not arbitrations) involving the question of whether Stoffel was properly removed as a director of the Swiss Companies.  (Id. Ex. 34, ¶¶ 1, 22-26.)   At no point did Stoffel seek to compel arbitration of the Swiss litigations.  Nor did Stoffel seek to compel arbitration of an action commenced by Deutsche Bank Securities in February 2007 in New York Supreme Court regarding the control of certain bank accounts held in the name of Colleen LLC.  Rather, when it has suited his purposes, Stoffel has been happy to litigate and reap the benefits of discovery not available in a Swiss arbitration.

## ARGUMENT

### I

### THIS ACTION SHOULD BE REMANDED BECAUSE ALL PROPERLY SERVED DEFENDANTS HAVE NOT CONSENTED TO REMOVAL

This action should be remanded because defendants Albe and Bluecolt did not consent to its removal.  Although Stoffel contends that Albe's and Bluecolt's consent was not required because they somehow were not "properly served" (Notice of Removal ¶ 14),

---

[4]    Stoffel has submitted a sworn statement to the Massachusetts District Court stating that he "directed Mr. Christen to initiate the[se] § 1782 proceedings."  (Id. Ex. 33, ¶ 8.) After the District Court dismissed Christen's application, Stoffel attempted, unsuccessfully, to substitute himself for Christen as the applicant.

overwhelming evidence shows that Stoffel owns, controls and has the power to act for and accept service on behalf of Albe and Bluecolt. Stoffel's litigation tactic of declining to cause Albe and Bluecolt to consent to removal -- apparently because Stoffel does not wish to be saddled with an admission that he controls these instruments of a massive fraud -- means that he must accept the necessary legal consequence that this action was not properly removed.

It is Stoffel's burden to show that this action was properly removed, and all doubts should be resolved in favor of remand. Wilds v. United Parcel Serv., Inc., 262 F. Supp. 2d 163, 176 (S.D.N.Y. 2003) ("The defendant's right to remove and the plaintiff's right to choose the forum are not equal, and uncertainties are resolved in favor of remand.") (quotation marks omitted); see also Somlyo v. J. Lu-Rob Enters., Inc., 932 F.2d 1043, 1046 (2d Cir. 1991) ("[C]ourts construe the removal statute narrowly, resolving any doubts against removability."). Removal pursuant to 9 U.S.C. § 205 requires the consent of all defendants. Employers Ins. of Wausau v. Certain Underwriters of Lloyd's, London, 787 F. Supp. 165, 169 (W.D. Wis. 1992); see also York Hannover Holding A.G. v. Am. Arbitration Ass'n, 794 F. Supp. 118, 121 (S.D.N.Y. 1992). Indeed, "[t]he language in § 205 as to who can remove does not deviate from the § 1441(a) model that civil actions 'may be removed by the defendant or the defendants,'" and the § 1441(a) language has been widely understood to require the consent of all removing defendants. See Employers Ins. of Wausau, 787 F. Supp. at 169 (noting that § 205 provides further that "the procedure for removal of causes otherwise provided by law shall apply.") Thus, if Albe and Bluecolt

were properly served when Stoffel filed the Notice of Removal in this action, their consent was required for removal.

Pursuant to CPLR § 311(a)(1), personal service upon a domestic or foreign corporation is accomplished by delivering the summons "to an officer, director, managing or general agent, or cashier or assistant cashier or to any other agent authorized by appointment or by law to receive service."[5]  A "managing agent's" actual job title is not controlling; the court should examine a person's actions and authority, and in particular, whether they have been empowered to exercise "judgment and discretion" on the entity's behalf.  See Fashion Page, Ltd. v. Zurich Ins. Co., 50 N.Y.2d 265, 271 (1980) (service may "be delivered to employees of lesser rank who, under a variety of titles, act as managing or general agents for the corporation").  A managing agent need not occupy a position at the top of the entity's hierarchy – to the contrary, even relatively low-ranking corporate agents have been held capable of accepting service of process so long as they exercise "judgment and discretion" in connection with the corporation's affairs.  See Martin v. Archway Inn, 164 A.D.2d 843, 845, 559 N.Y.S.2d 731, 732 (1st Dep't 1990) (a bartender was a "managing agent" where she represented she was "in charge" of the bar); Doris Trading

---

[5]    The propriety of service before removal is judged under the applicable provisions of state law.  G.G.G. Pizza, Inc. v. Domino's Pizza, Inc., 67 F. Supp. 2d 99, 102 (E.D.N.Y. 1999) (noting that "state law governs the sufficiency of service of process before removal").

Corp. v. The SS Union Enterprise, 406 F. Supp. 1093, 1097 (S.D.N.Y. 1976) (service on a

foreign corporation's New York branch manager was sufficient under CPLR § 311 because

although he lacked "the authority to bind [said corporation, that did] not contradict his

managerial position"); Leo v. General Elec. Co., 111 F.R.D. 407, 411 (E.D.N.Y. 1986)

(delivery of summons to a customer service manager constituted service on General

Electric under CPLR § 311 because said manager was "in a position of responsibility

involving judgment and discretion").  If service is made in a manner which, objectively

viewed, is calculated to give the corporation fair notice, the service should be sustained.

86 N.Y. Jur. 2d Process and Papers § 90 (2001).

       Here, it is undeniable that defendants Albe and Bluecolt were beneficially

owned, dominated and controlled by Stoffel when he was served with process on their

behalf.  Stoffel more than exercised "judgment and discretion" over Albe and Bluecolt.  He

controlled their affairs and used them on hundreds of occasions to further his fraudulent

scheme:

- Albe and Bluecolt were acquired in 2000 and 2005 respectively, "on behalf of Dr. Stoffel, after he asked to be provided with a shelf company" (Balber Decl. Exs. 35, p.2; 36, p.2);

- Stoffel "owned and controlled" both Albe and Bluecolt (id. Ex. 37, p. 5, ¶11);

- An addendum to Stoffel's Last Will and Testament lists Albe as among Stoffel's own "undeclared assets" and states that "Albe holds my liquid moneys" (id. Ex. 14);

- Stoffel's personal application for a residential mortgage loan in May of 2007 lists Bluecolt as among Stoffel's assets (id. Ex. 8, p.2);

- Stoffel entered into an agreement with a third party to administer Albe and Bluecolt on his behalf and pursuant to his instructions (id. Exs. 41; 35, p.2; 36, p.2);

- After acquiring Albe and Bluecolt, Stoffel faxed dozens of what Stoffel has admitted were "fake invoices" pursuant to which he caused millions of dollars to be transferred to Albe and Bluecolt (see, e.g., id. Exs. 19-22);

- On December 6, 2006 -- the day of his removal from the management of Plaintiffs -- Stoffel wrote that "I am conferring the shares (100%)" of Albe and Bluecolt to a Liechtenstein foundation known as the Albeag Foundation (id. Exs. 16-17). However, in November 2006, Stoffel had signed an agreement with a third party to operate the Albeag Foundation pursuant to "written instructions and regulations" provided by Stoffel from time to time (id. Ex. 38);

- Bank beneficial ownership forms for an Albe account held at Bank Leu in Switzerland state that Marco Stoffel is the beneficial owner of Albe's assets (id. Ex. 13);

- Similar forms for an Bluecolt account held at VP Bank in Liechtenstein state that Bluecolt is beneficially owned by Stoffel (id. Ex. 15).

In short, defendants Albe and Bluecolt are Stoffel-owned, Stoffel-controlled shell companies, dominated entirely by Stoffel, who acquired these offshore entities for his own nefarious purposes and has directed their every move. Stoffel plainly occupies "a position of responsibility involving judgment and discretion" with respect to Albe and Bluecolt. Leo, 111 F.R.D. at 411. Accordingly, Plaintiffs' personal service of the summons and complaint on Stoffel on December 21, 2007 was sufficient to constitute service on Albe and Bluecolt. Because they have not consented to removal, this action should be remanded. Employers Ins. of Wausau, 787 F. Supp. at 169.

## II

## THIS ACTION SHOULD BE REMANDED BECAUSE THE REMOVING DEFENDANTS HAVE FAILED TO COMPLY WITH LOCAL RULE 81.1

Because Stoffel has failed to file the complete State Court record with the Clerk of this Court, the clear terms of this Court's Local Rule 81.1(b) and 28 U.S.C. § 1447(b) provide for remand of this action.  See LaFarge Coppee v. Venezolana de Cementos, 31 F.3d 70, 72 (2d Cir. 1994) (holding that 28 U.S.C. § 1447(c) authorizes the remand of an action removed under 9 U.S.C. § 205 "on the basis of any defect in removal procedure") (emphasis added).  Section 1447(b) authorizes this Court to "require the moving party to file with its clerk copies of all records and proceedings in such State court" following removal of an action.  (emphasis added).  Pursuant to § 1447(b), this Court has adopted Local Rule 81.1(b), which provides that "[u]nless otherwise ordered by the court, within twenty (20) days after filing the notice of removal, the removing party shall file with the clerk a copy of all records and proceedings in the state court."

The United States District Court for the Western District of New York has held that failure to comply with a similar local rule requiring filing of the complete state court record "is a defect within the meaning of [28 U.S.C.] § 1447(c) that makes it appropriate to remand this action to state court."  See Bagnato v. Home Depot, No. 03-CV-789-E(SC), 2004 WL 625270, at *1 (W.D.N.Y. Jan. 15, 2004).  Other courts have espoused the same view.  See, e.g., FastPro Int'l, Inc. v. Great Plains Software O.C., Inc., No. 01-2082-KHV,

2001 WL 395287, at *1 (D. Kan. April 10, 2001);[6] Carrothers Constr. Co. v. USA Slide, Inc., No. 98-2097-JWL, 1998 WL 295602, at *1 (D. Kan. May 18, 1998); Country Hill Bank v. Gen. Dev. L.P., No. 90-2288-V, 1990 WL 168417, at *2 (D. Kan. Sept. 26, 1990); cf. Cury v. Royal Palm Sav. Ass'n, 713 F. Supp. 388, 389 (S.D. Fla. 1989) (remand appropriate where defendant did not "provide a copy of all filings for the federal court's consideration at the initial determination of jurisdiction").  The untimely filing of the state court record is a clear basis for remand.  See Patel v. Moore, 968 F. Supp. 587, 591 (D. Kan. 1997), abrogated on other grounds, Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 348 (1999).  Because Stoffel has failed to comply with the requirements of Local Rule 81.1, this action should be remanded.[7]

---

[6]  While the relevant District of Kansas rule states that noncompliance is a basis for remand, no such language appears in the Western District of New York rule relied upon by the Bagnato court, and the language of the Second Circuit's decision in LaFarge Coppee expressly provides that "any defect in removal procedure" provides a sufficient basis for remand.  LaFarge Coppee, 31 F.3d at 72; see also St. Paul & Chicago Ry. Co. v. McLean, 108 U.S. 212, 216 (1883) (holding, under prior provisions of federal removal statute, that district court had discretion to remand based on a failure to file the state court record).

[7]  Rather than constituting "controlling case authority" as Stoffel contends, (Balber Decl. Ex. 40, p.1), the Second Circuit's unpublished disposition in Fulfree v. Manchester, 182 F.3d 899, 1999 WL 385753 (2d Cir. 1999), is far afield.  That case involved a different provision of Local Rule 81.1 and stands for the unexceptional proposition that a District Court may exercise discretion in remanding an action for noncompliance with its local rules.  Id.

As Stoffel effectively acknowledges, he has failed to file the large majority of the state court record with this Court within twenty days of the filing of the Notice of Removal. So many documents are presently missing that Stoffel claims that he cannot electronically file the missing items due to their volume. (Balber Decl. Ex. 39.) Stoffel has conceded that the missing materials are state court "records and proceedings," all of which are required to be timely filed under Rule 81.1. (Id.) Moreover, Stoffel concedes that the effect of his disregard of this Court's rules is to "holdup [sic] this Court's access to a complete record in this action." (Id. Ex. 40, p.1.) Stoffel's apparent argument that he complied with Rule 81.1 by providing some of the state court "records and proceedings" is contrary to the text of the Rule. See Local Civ. R. 81.1 (providing that "all records and proceedings" must be timely filed) (emphasis added).

Stoffel's argument that compliance with Rule 81.1 was somehow impeded by the absence of documents from the state court file is implausible, as Stoffel's counsel admits to having "our own copy set" of the missing documents. (Balber Decl. Ex. 40, p. 1 (emphasis in original).)[8] Moreover, in his letters to the Court attempting to justify his

_____

[8]  Nor do "size limitations imposed by ECF" justify Stoffel's noncompliance with Rule 81.1. (See Balber Decl. Ex. 40, p. 1.). Stoffel did not ask the Court's leave to permit paper filing of the missing records and proceedings until April 8, well after the 20-day filing period had run, and Stoffel offers no explanation as to why it was impossible for his counsel -- in full possession of their "own copy set" of the missing materials (id. (emphasis in original)) -- to timely move for leave to make a paper filing if that was necessary.

noncompliance with Rule 81.1, Stoffel does not explain what steps his lawyers took to ensure the completeness his putative Rule 81.1 filing -- which omitted most of Stoffel's own filings in the state court and the transcript of a hearing in which Stoffel's counsel in this Court participated -- or to ensure that papers that were in the State Court's judicial chambers rather than being maintained by the Clerk of the State Court were filed with this Court (whether from Stoffel's counsel's "own copy set" of these materials, or otherwise). This case is therefore unlike <u>Loeffelbein</u> v. <u>Milberg Weiss Bershad Hynes & Lerach, LLP</u>, where noncompliance with a similar local rule was excused because the "state court record was not available to defendants" in a timely manner and the defendants' delay was "not due to any lack of diligence."[9] No. 02-2435-CM, 2003 WL 21313957, at *7 (D. Kan. May 23, 2003).

---

[9]    The procedural defect here is not cured by Stoffel's untimely April 8, 2008 letter to this Court asking leave for a belated submission of the missing records and proceedings. <u>See</u> <u>Kisor</u> v. <u>Collins</u>, 338 F. Supp. 2d 1279, 1280 (N.D. Ala. 2004) ("This court, sitting as a court of limited jurisdiction, cannot ignore a manifest procedural defect that a plaintiff has expressly complained about just because the defect was inadvertent or because the removing defendant tenders a belated correction.").

### III

### THE CLAIMS AT ISSUE HERE ARE NOT ARBITRABLE

Removal of this action was improper because the claims in the Complaint are not covered by any agreement to arbitrate. In his Notice of Removal, Stoffel relies exclusively upon three arbitration agreements (the "Fiduciary Agreements"), which are solely between one of the four Defendants and one of the ten Plaintiffs in this action. As a matter of Swiss law (which governs the interpretation of the Fiduciary Agreement arbitration clauses), these agreements do not bind nonparties, nor do they cover any of the claims at issue in this case. Because there is no basis upon which to require arbitration of this action, it should be remanded to the State Court.

### A. Removal Is Appropriate Only If Plaintiffs' Claims are Arbitrable

Under 9 U.S.C. § 205, removal is appropriate only "[w]here the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the [New York] Convention" and the other prerequisites of valid removal are met. Under the "plain meaning" of § 205, unless a party "is required to arbitrate his []claims . . . the []claims are not 'related to' [a] foreign arbitration agreement." GlobalSantaFe Drilling Co. v. Ins. Co. of Pennsylvania, No. C 05-4411 CW, 2006 WL 13090, at *5 (N.D. Cal. Jan. 3, 2006). Removal is not proper where the parties have not

agreed to arbitrate the disputes at issue. <u>AtGames Holdings Ltd.</u> v. <u>Radica Games Ltd.</u>, 394 F. Supp. 2d 1252, 1255 (C.D. Cal. 2005). [10]

**B.      Whether This Dispute is Arbitrable is a
            Question of Law for the Court**

       Courts should not assume that the parties agreed to preclude courts from determining whether a dispute is arbitrable unless there is "clear and unmistakable" evidence that they did so. <u>First Options of Chicago, Inc</u>. v. <u>Kaplan</u>, 514 U.S. 938, 944 (1995). "[T]here is a strong presumption in favor of judicial rather than arbitral resolution on the issue of arbitrability." <u>Telenor Mobile Comms. AS</u> v. <u>Storm LLC</u>, 524 F. Supp. 2d 332, 351 (S.D.N.Y. 2007); <u>see also</u> <u>Katz</u> v. <u>Feinberg</u>, 167 F. Supp. 2d 526, 563 (S.D.N.Y. 2001) ("The determination of the scope of arbitration is ordinarily one for the Court to make."); <u>John Hancock Life Ins. Co</u>. v. <u>Wilson</u>, 254 F.3d 48, 53 (2d Cir. 2001). In order to rebut this strong presumption, an "express agreement" between the parties must "evidence a clear and unmistakable intent to remove arbitrability questions from judicial determination." <u>John Hancock</u>, 254 F.3d at 56. "[C]ertainly a party who did not sign the agreement did not consider who should decide arbitrability," let alone clearly and

---

[10]   The Fifth Circuit has held that 9 U.S.C. § 205 removal is proper whenever an arbitration agreement could "conceivably affect the outcome" of the dispute. <u>Beiser</u> v. <u>Weyler</u>, 284 F.3d 665, 669-70 (5th Cir. 2002). However, Plaintiffs respectfully submit that it would be a waste of this Court's resources to determine first whether Plaintiffs' claims are "conceivably" arbitrable and then, weeks later, in the posture of adjudicating Stoffel's pending Motion to Dismiss, whether Plaintiffs' claims are actually arbitrable.

unmistakably provide for arbitral resolution of that question.  See id. (quoting PaineWebber, Inc. v. Elahi, 87 F.3d 589, 599 (1st Cir. 1996)).

Where a contract containing an arbitration clause also includes a choice-of-law provision, the interpretation of the arbitration clause is governed by the law chosen by the parties to the contract.  Motorola Credit Corp. v. Uzan, 388 F.3d 39, 51 (2d Cir. 2004) (applying Swiss law in construing agreement to arbitrate and holding that "if defendants wish to invoke the arbitration clauses in the agreements at issue, they must also accept the Swiss choice-of-law clauses that govern those agreements."); accord Coastal Caisson Corp. v. E.E. Cruz/NAB/Frontier-Kemper, No. 05 Civ. 7462 (DLC), 2007 WL 2285936, at *4 (S.D.N.Y. Aug. 10, 2007).  Here, the three Fiduciary Agreements upon which Stoffel's removal rests each contain a Swiss choice-of-law clause.  (Notice of Removal Ex. 4.) Accordingly, whether the Fiduciary Agreements require arbitration of this dispute is a question of Swiss law.

In his Motion to Dismiss filed with the State Court, Stoffel argued that the parties "clearly and unmistakably" committed all questions of arbitrability to an arbitral tribunal because the Fiduciary Agreements call for arbitration in Switzerland pursuant to the provisions of the Swiss Code on Private International Law.  See Bundesgesetz uber das Internationale Privatrecht [IPRG] [Federal Statute on Private International Law] Dec. 18, 1987, art. 176-194 (the "PIL Code").  However, the Second Circuit has recently held that a similar arbitration clause calling for a Swiss arbitration did not unmistakably commit questions of arbitrability to the arbitrators.  Uzan, 388 F.3d at 53 n.11 ("[t]he District Court

18

was not, however, required to refer questions of arbitrability to a Swiss arbitrator" because,

inter alia, Swiss law provides a substantial role for the court in determining arbitrability).

Under the PIL Code, a Swiss court presented with a claim that the dispute before it is

arbitrable is empowered to determine whether the parties have agreed to arbitrate the

disputes before the court.  (See Declaration of Prof. Stephen Berti, executed April 16, 2008

(the "Berti Decl.") ¶ 27.)  Moreover, under the PIL Code, Swiss courts have plenary

authority to set aside an arbitral ruling on jurisdiction.  (Id. ¶ 25.)   Accordingly, a mere

reference to the provisions of the PIL Code does not mean that the parties made a "clear

and unmistakable" commitment to allow the arbitrators, and only the arbitrators, to decide

arbitrability.  This Court should determine whether this dispute is arbitrable.

### C.     The Arbitration Clauses in the Fiduciary Agreements Do Not Bind Non-Parties

The Fiduciary Agreements could not conceivably require the arbitration of any

of the claims brought by the Swiss Companies, the LLCs, or Tacon against any of the

Defendants, or the claims brought by Vistra against Lauramca, Albe or Bluecolt.  Under

Swiss law, it is well-established that an agreement to arbitrate binds *only* the parties that

have entered into the agreement.[11]  (Berti Decl. ¶¶ 2-3, 17.)  Subject to certain limited

---

[11]   The same is true under New York law.  See Greater New York Mut. Ins. Co. v. Rankin,
298 A.D.2d 263 (1st Dep't 2002) ("Under New York law, the right to compel
arbitration does not extend to a party that has not signed the agreement pursuant to
which arbitration is sought unless the right of the nonsignatory is expressly provided

(Cont'd on following page)

19

exceptions that are not implicated here, under Swiss law a nonsignatory to an arbitration agreement may not invoke the provision, nor may a signatory to an arbitration agreement seek to invoke it against nonsignatories.  (See id.)  Accordingly, the Fiduciary Agreements cannot properly be read, under the law governing their interpretation, to provide for arbitration of seven of the eleven causes of action in the Complaint.

Moreover, Swiss law provides that any arbitrable claims must be severed from nonarbitrable claims.  (Berti Decl. ¶ 5.)  There is no basis in the Fiduciary Agreements for this Court to require nine Plaintiffs that never signed the Agreements to arbitrate disputes with Stoffel, let alone the other three Defendants here that are also not parties to the Fiduciary Agreements.

**D.     The Fiduciary Agreements Do Not Cover the Claims Brought By Vistra Against Stoffel**

The Fiduciary Agreements also do not support the removal of this action even as to the claims brought by Plaintiff Vistra against Stoffel.  The Fiduciary Agreements are, by their plain terms, narrow in scope and do not cover the claims asserted by Vistra against Stoffel in the Complaint.  The Agreements expressly "concern" only Stoffel's "activity as Member of the Board of Directors of" the Swiss Companies and "General Attorney" of three defunct Irish companies that are not parties to this action.  (Notice of Removal Ex. 4.)

---

(Cont'd from preceding page)

for in the agreement."); Montrose Global Assets, Inc. v. Bennington Foods, LLC, No. 4044-07, 2007 WL 2874952, at *5 (Sup. Ct. Nassau Co. Sept. 28, 2007) (same).

The Fiduciary Agreements do not support removal here because Plaintiffs are not suing Stoffel for, or even alleging, any breach of those agreements.

Under Swiss law, arbitration clauses of the sort contained in the Fiduciary Agreements encompass only claims "in connection with" the Agreements themselves and do not extend to tort-based claims relating to activities which may be the subject of the Agreements. (Berti Decl. ¶ 21.) To the contrary, such clauses generally apply only to claims asserting a breach of the agreements containing the arbitration clauses, or having as a necessary component claims arising under such agreements. (Id.) Had the parties to the Fiduciary Agreements wished to arbitrate claims based on any of Stoffel's activities with respect to the Swiss Companies, crafting a broad clause of this sort -- covering, for example, claims "arising from or in connection with the performance of activities under this Agreement" -- would have been easy to accomplish. Instead, the Fiduciary Agreements impose certain obligations upon Stoffel pursuant to a narrowly defined set of activities. (Notice of Removal Ex. 4.) Plaintiffs' claims do not arise out of these activities, nor do Plaintiffs assert claims under the Fiduciary Agreements themselves.[12]

Plaintiffs have sued Stoffel for misappropriating funds and devising a complex multinational fraud and money-laundering scheme at Plaintiffs' expense, not for providing

---

[12]   While Stoffel makes much of an isolated reference to the Fiduciary Agreements in the Complaint, he nowhere points to any claim asserted in the Complaint under the Fiduciary Agreements or any allegation that he breached those Agreements.

deficient services as a director of the Swiss Companies or for acting beyond the scope of the power of attorney in his favor granted by defunct Irish entities. Indeed, Stoffel himself has characterized his actions as having been taken pursuant to a multitude of roles other than those as a director of the Swiss Companies.[13] There is no basis to compel Vistra to arbitrate the claims brought here, which do not arise under the Fiduciary Agreements.

## IV

## STOFFEL HAS WAIVED ANY RIGHT TO ARBITRATE THIS DISPUTE

Remand of this action is appropriate for another reason: even if the claims at issue here were within the scope of the Fiduciary Agreements, Stoffel has waived his right to arbitrate through his pursuit of a sixteen-month litigation campaign against Plaintiffs on two continents. A party to an arbitration agreement waives the right to arbitrate "when he engages in protracted litigation . . . that results in prejudice to the opposing party." Kramer v. Hammond, 943 F.2d 176, 179 (2d Cir. 1991). The question of whether a litigant has waived arbitration through its litigation conduct is one for the Court. S & R. Co. of

---

[13] See e.g., Balber Decl. Ex. 23, Tr. 346:11-355:2 (Stoffel claims under oath that his involvement with Albe and Bluecolt pertained to his positions as President and Treasurer of the two purported non-for-profit foundations); id. Ex. 18, Tr. 142:8-152:11 (Stoffel claims under oath that his unauthorized withdrawal of $2.4 million from the LLCs' financial accounts was undertaken in his role as treasurer of the Foundations); id. Ex. 4, Tr. 15:15-19:17 (Stoffel claims under oath that his actions in converting the Swiss Company shares to bearer shares were pursuant to a purported role as "nominee shareholder" of the Swiss Companies); id. Ex. 24, Tr. 53:9-55:19 (Stoffel claims under oath that his actions were taken in his purported role as attorney-at-law for the Blickle family).

Kingston v. Latona Trucking Inc., 159 F.3d 80, 82-83 (2d Cir. 1998).  A litigant's conduct in actions closely related to the action before the Court is relevant to the question of whether arbitration rights have been waived.  PPG Indus., Inc. v. Webster Auto Parts, Inc., 128 F.3d 103, 104 (2d Cir. 1997).

Allowing a party to raise the issue of arbitration after extensive discovery and the taking of depositions and motion practice "would defeat the purpose of arbitration: that disputes be resolved with dispatch and with a minimum of expense."  Com-Tech Assocs. v. Computer Assocs. Int'l, Inc., 938 F.2d 1574, 1578 (2d Cir. 1991).  Prejudice is particularly likely "when a party seeking to compel arbitration engages in discovery procedures not available in arbitration."  See Cotton v. Slone, 4 F.3d 176, 179 (2d Cir. 1993); S&R Trucking, 159 F.3d at 83 (holding that "taking advantage of pre-trial discovery not available in arbitration" supports a finding of waiver).

Here, when it suited his purposes, Stoffel argued that discovery is "improper" when it might be used in Swiss arbitral proceedings and that under Swiss arbitration practice, a party "would never be able to serve . . . expansive document requests," and "would certainly never be able to obtain a pre-hearing deposition . . . ." (Balber Decl. Ex. 32, p.8.)  Nevertheless, Stoffel has already obtained access to tens of thousands of pages of discovery, taken and participated in depositions, and sought third-party discovery.  (See pp. 6-7 supra; Balber Decl. Ex. 45.)  Moreover, Stoffel has engaged in a pattern of other litigation conduct that would make an order compelling arbitration inequitable.  (See pp. 6-7 supra.)

Stoffel's litigation conduct "has caused the plaintiffs to incur significant expense that would doubtlessly have been avoided had this matter gone to arbitration from the outset" and "has also delayed the resolution" of the merits of this dispute.  See Pollack v. Laidlaw Holdings, Inc., No. 90 Civ. 5788 (DLC), 1996 WL 112191, *5 (S.D.N.Y. Mar. 14, 1996).  Under the circumstances, this Court should hold that, if Stoffel indeed ever had any right to arbitrate the claims brought here, he has waived any such right through his inequitable and prejudicial litigation conduct and remand is therefore appropriate.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully request that their Motion to

Remand be granted.[14]


Dated:          New York, New York
                April 17, 2008

                                        CHADBOURNE & PARKE LLP


                                        By _____ /s/ *Scott S. Balber* _____
                                                Scott S. Balber (SB-5807)
                                                A Member of the Firm
                                         30 Rockefeller Plaza
                                         New York, New York 10112
                                         Tel. (212) 408-5100
                                         Fax (212) 541-5369
                                         sbalber@chadbourne.com
                                         Attorneys for Plaintiffs

Of Counsel:

Jonathan C. Cross*
Robert L. Grossman (RG-2431)
CHADBOURNE & PARKE LLP

*Application for Admission to the Bar of this Court Pending

_____

[14]    Under 28 U.S.C. § 1447(c), a district court may award costs, including attorneys' fees,
incurred as the result of a wrongful removal.  <u>See</u> <u>Sherman</u> v. <u>A.J. Pegno Constr.</u>
<u>Corp.</u>, 528 F. Supp. 2d 320, 331 (S.D.N.Y. 2007) (awarding costs and attorney's fees
where, as here, "the removal petition itself noted that one of the defendants . . . had not
joined in seeking removal").  Here, removal was objectively unreasonable because of
the lack of consent of all Defendants (and improperly executed because Plaintiffs failed
to comply with Local Rule 81.1).  <u>See</u> <u>Patel</u>, 968 F. Supp. at 591 (D. Kan. 1997).
Accordingly, the Court should order that Stoffel pay Plaintiffs' reasonable costs and
attorneys' fees.