UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| VISTRA TRUST COMPANY (JERSEY) LIMITED AS TRUSTEE OF THE ALSAM; COLLEEN AND LOGANY SETTLEMENTS; COLLEEN INVESTMENT AG; ALSAM HOLDING AG; PENNY ASSET AG; LOGANY EQUITY AG; VIERWALDSTATTER BETEILIGUNGEN AG; CLARICK AG; COLLEEN INVESTMENT, L.L.C.; LOGANY, L.L.C.; AND WILLIAM TACON, RECEIVER AND MANAGER OF THE ASSETS OF MAYTOWN UNIVERSAL SA AND PLYMPTON UNIVERSAL SA, | Index No.: 08 CV 02844 |
| Plaintiffs, | **DECLARATION OF JOHN FELLAS IN OPPOSITION TO REMAND** |
| -against- | |
| DR. MARCO STOFFEL; ALBE ASSOCIATES LIMITED; BLUECOLT SECURITIES CORPORATION; LAURAMCA HOLDINGS, L.L.C.; AND JOHN DOES 1-10, | |
| Defendants. | |

JOHN FELLAS, pursuant to 28 U.S.C. § 1746, declares under penalty of perjury as follows:

1.    I am a partner in Hughes Hubbard & Reed LLP, attorneys for defendants Dr. Marco Stoffel ("Dr. Stoffel") and Lauramca Holdings, LLC ("Lauramca") (collectively "Defendants") in this action. I am a member in good standing of the Bar of the State of New York and this Court.

2.    I submit this Declaration in support of Marco Stoffel and Lauramca Holdings, LLC's Memorandum of Law In Opposition To Plaintiffs' Motion To Remand, dated May 5, 2008.

3.    Annexed hereto as Exhibit 1 is a true and correct copy of the Notice of Arbitration, dated January 21, 2008 submitted by Defendants in the Zurich Chamber of Commerce (the "Swiss Chambers") styled *Marco Stoffel and Lauramca Holdings LLC v. Maytown Universal SA; Plymptom Universal SA;  Vistra Trust Company (Jersey) Limited As Trustee Of The Alsam, Colleen And Logany Settlements; Alsam Holding AG; Penny Asset AG; Logany Equity AG; Vierwaldstatter Beteiligungen AG; Clarick AG; Colleen Investment AG; Colleen Investment, L.L.C.; Logany, L.L.C.;* and *Albeag Foundation; Albe Associates Ltd; Bluecolt Securities; Orconsult SA;* and *Orconsult Ltd., as trustee for Aquarius and Capicorn trusts.*

4.    Annexed hereto as Exhibit 2 is a true and correct copy of the letter from the Swiss Chambers dated February 5, 2008 inviting the Defendants to "make full particulars of the parties bound to the different agreements to arbitrate and to specify which arbitration agreement Claimants invoke" as binding on the plaintiffs.

5.    Annexed hereto as Exhibit 3 is a true and correct copy of Defendants' response to the Swiss Chambers' request on February 20, 2008 explaining how plaintiffs are bound to arbitration;

6.    Annexed hereto as Exhibit 4 is a true and correct copy of the Swiss Chambers decision dated March 10, 2008, finding that every party to this litigation is bound to arbitration.

7.    Annexed hereto as Exhibit 5 is a true and correct copy of the first complaint in the Court of Chancery in the State of Delaware dated January 12, 2007 styled *Colleen Investment AG; Colleen Investment, LLC and Logany, LLC v. Marco Stoffel*.

8.    Annexed hereto as Exhibit 6 is a true and correct copy of the amended complaint in the Court of Chancery in the State of Delaware dated January 11, 2008 styled *Colleen Investment AG; Colleen Investment, LLC and Logany, LLC v. Marco Stoffel*.

9.    Annexed hereto as Exhibit 7 is a true and correct copy of the Answer dated February 13, 2008 filed by Marco Stoffel in response to the complaint in the Delaware action. Stoffel asserts as his eighth affirmative defense in his Answer that the action is subject to arbitration.

10.   Annexed hereto as Exhibit 8 is a true and correct copy of the Order dated December 3, 2007 of the Delaware Chancery Court denying Stoffel's motion for commissions for subpoenas.

I declare under penalty of perjury that the foregoing is true and correct.
Executed on this 5th day of May 2008.

John Pellas

# Exhibit 1

To Fellas Declaration, dated May 5, 2008

# LALIVE
Attorneys-at-Law

PIERRE LALIVE
MICHAEL E. SCHNEIDER
TERESA GIOVANNINI
XAVIER TROLLER
MARCUS K. DESOLER
CHRISTIANE G. NONACCINI
DOMINIQUE BROWN-BERSET
GÉRALD PAGE
ALAIN PAGE VEILLARD
PATRICK LE HOUELLEUR
MATTHIAS SCHERER
ALEXANDER TROLLER
MARC ANGSTADT
DOMENICA FERRILLI-VALA

CAROLINE DE BOURNON
SÉBASTIEN BESSON
DOMENICA PAIRO
FRANCESCA AIZE
VÉRONIQUE BETERI
NAJORI YOUSSEF
RENI LAPPER
EVA WÜLLER
ARTHUR GIOVANETTI
JOACHIM GOUELI
MARIE PARULAS

Trainees
JOSEPH MEY LAW
ANITA SHUYVAS
CAROLINE MARCE

Counsel
Jean BLAVIER LALIVE
IN-GELMALARUARE
LENA CAPUCCI
Yves ENGELARD
ROBERT SOLE

By Registered Mail

Zurich Chamber of Commerce
Bleicherweg 5
P.O. Box 3058
8022 Zurich

Geneva, 21 January 2008

## NOTICE OF ARBITRATION

In the matter of

1.  **Marco Stoffel**, Hotherstrasse 42, 8700 Kuesnacht, Switzerland

    "Stoffel" / Claimant 1

2.  **Lawrence Holdings LLC**, 340 West 12th Street, New York, New York, USA

    "Lawrence" / Claimant 2

represented by **Teresa Giovannini**, Attorney at Law, Lalive, 35 Rue de la Mairie, 1207 Geneva, Switzerland, telephone: 0041 22 319 87 08; telefax: 0041 22 319 87 60; email: tgiovannini@lalive.ch

RUE DE LA MAIRIE 35 · P.O. BOX 6569 · CH-1211 GENEVA 6
TÉLÉPHONE +41 22 319 87 00 · FAX +41 22 319 87 60 · E-MAIL lalive@lalive.ch · VAT 634 890
http://www.lalive.ch

# LALIVE
Attorneys-at-Law

2

versus

1.  Maytown Universal SA, c/o William Tacon, Receiver and Manager, P.O. Box 4571, Palm Grove House, 2nd Floor, Wickhams Cay, Road Town, British Virgin Islands

    "Maytown" /    Respondent 1

2.  Plympton Universal SA, c/o William Tacon, Receiver and Manager, P.O. Box 4571, Palm Grove House, 2nd Floor, Wickhams Cay, Road Town, British Virgin Islands

    "Plympton" / Respondent 2

Respondents 1 and 2 are represented by RA Dr.Philipp Kocasig, Attorney at Law, Staiger Schwald & Partner, Genferstrasse 24, P.O. Box 2012, 8027 Zürich

3.  Vistra Trust Company (Jersey) Limited, as trustee of the Ahsan, Colleen and Legasty Settlements, 38 Esplanade, St Helier, Jersey, Channel Islands

    "Vistra" / Respondent 3

4.  Ahsan Holding AG, c/o Christen und Zobrist Treuhand AG, Achereggstrasse 10, 6362 Stansted, Switzerland

    "Ahsan AG" Respondent 4

5.  Pennry Asset AG, c/o Christen und Zobrist Treuhand AG, Acheregstrasse 10, 6362 Stansted, Switzerland

    "Pennry AG" / Respondent 5

6.  Legasty Equity AG, c/o Christen und Zobrist Treuhand AG, Acheregstrasse 10, 6362 Stansted, Switzerland

    „Legasty AG" / Respondent 6

7.  Vierwaldstetter Beteiligungen AG, c/o Christen und Zobrist Treuhand AG, Acheregstrasse 10, 6362 Stansted, Switzerland

    "Vierwald AG" / Respondent 7

2

# LALIVE
Attorneys-at-Law

3

8.  Charick AG, c/o Christen and Zobrist Treuhand AG, Achereggstrasse 10, 6362 Stansstad, Switzerland

"Charick AG" / Respondent 8

9.  Colleen Investment AG, c/o Christen und Zobrist Treuhand AG, Achereggstrasse 10, 6362 Stansstad, Switzerland

"Colleen AG" / Respondent 9

10. Colleen Investment LLC, c/o Corporation Service Company, 80 State Street, Albany, New York 12207-25423

"Colleen LLC" / Respondent 10

11. Legany LLC, c/o Corporation Service Company, 80 State Street, Albany, New York 12207-25423

"Legany LLC" / Respondent 11

Respondents 3 - 11 are represented by RA Dr. Bernhard Lötscher and RA Aline Wey, CMS von Erlach Henrici, Dreikönigstrasse 7, P.O. Box 2991, 8022 Zürich

12. Alberg Foundation, c/o Trevisa- Treuhand-Anstalt & Trebona-Anstalt, Verwaltungs-und Treuhandbüro, Landstrasse 8, 9496 Balzers, Liechtenstein

"Alberg" / Respondent 12

13. Albe Associates Limited, c/o Orconsult SA, Wengistrasse 7, PO Box, 8026 Zürich

"Albe" / Respondent 13

14. Bluecolt Securities, c/o Orconsult SA, Wengistrasse 7, PO Box, 8026 Zürich

"Bluecolt / Respondent 14

15. Orconsult SA. Wengistrasse 7, PO Box, 8026 Zürich

"Orconsult SA" / Respondent 15

16. Orconsult Limited, as trustee for Aquarius and Capricorn trusts, c/o Orconsult SA, Wengistrasse 7, PO Box, 8026 Zürich

"Orconsult Ltd" / Respondent 16

Respondents 12 – 16 are represented by Directors Georges Philippe and Guido Banholzer, and Peter Schatz, Attorney at Law, Kellerhals Hess Rechtsanwaelte, Rosenstrasse 5, 8024 Zürich

3

## LALIVE
Attorneys-at-Law

4

## A.    PRAYERS FOR RELIEF

### I.    Preliminarily

1. Order accounting by Orconsult SA of payment of Protector Fee of € 1,800,000, of legal fees for Karlsruhe case and of loans paid to Stoffel, Sue Stoffel and Laurance;

2. Order submission of corporate records, financial statements, bank statements and bank records by Orconsult SA of the Companies managed and controlled and used by them, in particular Maytown, Plympton, Ardeani, Mirlo, Albe and Bluecolt as well as the "Scottish Partnerships" PB Partners, Deltam, ITC, Nevis, IPMG, ATC, Isteln and Interconsultants and all other entities that moneys have been channelled through either for the trusts and their entities, the Blickle Family, Stoffel/Laurance. The same is to be ordered regarding Orconsult SA/Ltd and all other Orconsult's entities as well as the bank accounts of Georges Philippe, insofar as they were used for money transfers and investments of the Blickle family/trusts including trust entities and Stoffel/Laurance.

3. Order accounting of moneys and investments managed for Stoffel and Blickle Family as well as Almire/Colleen/Logany trusts (Respondent 3) and Aquarius/Capricorn trusts and their entities by Orconsult SA and Orconsult Ltd (Respondent 16);

4. Order documents regarding the relationship between Vistra and Orconsult Ltd;

5. Order documents from Vistra regarding agreements between Vistra and Christen and Christen and Zobrist Treuhand AG.

### II.    On the Merits

> First Cause of Action: Order Payments

6. Order all Respondents to pay to Stoffel legal fees in the provisional amount of USD 3,017,771.- plus interest ;

7. Order all Respondents to compensate Stoffel for all expenses and damages, the amount of which will be determined in the course of the proceedings, plus interest;

> Second Cause of Action: Declaratory Judgements - Positive

8. Declare that the amount of USD 3,086,927 paid to Stoffel in Protector Fee and Legal Fees for the Karlsruhe case via loans has been repaid through the setting off of the Protector Fee owed to New Eagle Corp. and the legal fees owed to Stoffel;

9. Declare that Stoffel has legally received USD 3,016,577 in salary and director fees from the Respondents;

4

# LALIVE
Attorneys-at-Law

5

10. Declare that Stoffel has legally received USD 782,614 as BPD research coordination fees;

11. Declare that Stoffel has legally received USD 1.6 million as a loan that he is entitled to set off with the severance payment claims arising out of the mandate dated 1 November 1996;

12. Declare that all other loans made to Stoffel and/or Lauranca and/or Mrs Sue Stoffel were properly made and have been totally and legally repaid and/or formally forgiven;

13. Declare that Stoffel was authorized to release payments from the escrows and accounts held by the various Respondents;

14. Declare that the funds presently held by Albo and Bluecolt in the amount of approximately USD 6 million belong to the Third Millennium Foundation (hereafter referred to as "TMF") and Borderline Personality Disorder Research Foundation (hereafter referred to as "BPDRF").

> **Third Cause of Action: Declaratory Judgements - Negative**

15. Declare and assert that Stoffel did not make any material misstatements of fact to Vistra relating to the Jersey Trusts.

16. Declare and assert that Stoffel did not breach his fiduciary duties in connection with 1) funds channelled by Orconsult SA to Albo/Bluecolt, 2) assets transferred from Abaca/Colleca/Logany trusts to Capricorn/Aquarius trusts and 3) payments received by Lauranca and himself, 4) loans received from Orconsult SA and/or TMF/BPDRF, 5) money transferred to TMF/BPDRF;

17. Declare and assert that Stoffel did not breach his fiduciary duties to Vistra and/or Orconsult Ltd and or any other Respondents in connection with contributions to BPDRF and TMF or the transfer of the Jersey Trust assets;

18. Declare and assert that Lauranca did not aid and abet Stoffel in committing fraud as alleged in paragraph 2 above.

19. Declare and assert that Stoffel did not breach his duties to Maytown and Plympton by not opposing Orconsult SA's using "fake invoices" to order payments from Maytown and Plympton through "Scottish Partnerships" to Albo/Bluecolt, as all these entities were controlled by Orconsult SA and its officers;

20. Declare and assert that Lauranca did not aid and abet Stoffel regarding the allegations in paragraph 19 above;

21. Confirmation that Stoffel did not transfer funds of Vistra and/or Orconsult Limited and/or any trust entities without authority;

22. Declare and assert that Stoffel did not make material misrepresentations to Maytown, Plympton, Vistra, and the Trust Beneficiaries.

## LALIVE
Attorneys-at-Law

6

23. Declare and assert that Stoffel did not make or permit unauthorized transfers to BPDRF, TMF, himself, Bluecolt, or Albe.

24. Declare and assert that Stoffel did not otherwise breach his fiduciary duties to Vistra and/or Orconsult Ltd and/or any of the Respondents and/or to New Eagle;

25. Declare and assert that Stoffel did not transfer funds without authority and that Stoffel did provide truthful and complete information regarding the Respondents' assets;

26. Declare and assert that Stoffel did not expend corporate resources for anything but business purposes and did not otherwise waste Respondents' corporate assets;

27. Declare and assert that Stoffel did not misrepresent to third parties that he was in a position of authority with regard to the Respondents' Colleen LLC and Logany LLC;

28. Declare and assert that Stoffel's role as officer of Colleen LLC and Logany LLC did not result in any misappropriation of their assets;

29. Declare and assert that Stoffel did not otherwise breach his fiduciary duty to Colleen LLC and Logany LLC and/or Maytown and/or Plimpton;

30. Declare and assert that Stoffel did not mismanage the affairs of Colleen LLC and Logany LLC through self dealing, waste, misappropriation of assets or otherwise;

31. Declare and assert that Stoffel has not otherwise breached his fiduciary duties to Colleen LLC and Logany LLC and/or any of the other Respondents;

32. Declare and assert that neither Stoffel nor Lauranca have unjustly enriched themselves by wrongfully withdrawing the assets of the Respondents for personal use or by self dealing with the assets of the plaintiff companies;

33. Declare and assert that both Stoffel and Lauranca did not breach their duties of loyalty by (i) causing payments to be made to BPDRF, TMF, Bluecolt or Albe, (ii) causing payments to be made to themselves from assets of the LLC's and BVI companies (iii) using LLC or BVI company funds for personal expenses, (iv) providing free rental space at the LLCs' expense, (v) executing agreements between the plaintiffs and companies on which Stoffel and Lauranca exercised control, or (vi) by any other means.

34. Declare and assert that neither Stoffel nor Lauranca did unlawfully transfer, receive, possess, retain, or convert funds belonging to the Respondents;

35. Declare and assert that neither Stoffel nor Lauranca did have or receive funds from Respondents that were unlawfully distributed to them;

# LALIVE

Attorneys-at-Law

7

36. Declare and assert that Stoffel has not breached any of his fiduciary duties as officer of the Swiss entities, representative of the Protector, or in any other role;

37. Declare and assert that Stoffel did not control and/or manage Maytown/Plympton, Albo/Bluecolt, the "Scottish Partnerships", or any other of the Respondents.

### III.   In any event

38. Claimants reserve the right to amend or amplify their claims in the course of the arbitration proceedings to the extent allowed under the Swiss Rules or to bring additional claims. Claimants specifically reserve the right to adjust the amount claimed.

39. Order the Respondents, jointly and severally, to the payment of all costs and fees of the arbitration proceedings, including the costs and fees incurred by the Claimants for their defense.

* * * * *

**LALIVE**
Attorneys-at-Law

8

---

## B.   FACTS

### I.   Contractual Basis

1.   The Claims and the various Declaratory Reliefs sought by the Claimants in these arbitration proceedings are based primarily upon the following contractual documents:

1.1.   Donation to Borderline Foundation in Formation dated 16 December 1998 (Exhibit C.1.);

1.2.   Escrow Confirmation from Madison Corporate Developments Limited, Ireland (the Escrow Agent) and Personality Disorder Research Foundation in formation (the Principals) dated 15 January 1999 (Exhibit C.3.) and Taking over the rights of obligations of the Foundations and the Escrow Agent as follows: for the former, Principals, formerly: Personality Disorder Research Foundations in formation, now: Stiftung Persönlichkeitsstörungen, Basel, and Borderline Personality Disorder Research Foundation and Third Millenium Foundation, and for the Escrow Agent, formerly Madison Corporate Developments Limited, Ireland, Maytown Universal SA (Exhibit C.2.A);

1.3.   Adoption of Escrow Confirmation of January 15, 1999 between Maytown Universal SA & Plimpton Universal SA, Colleen Investment AG and Colleen Investment LLC, through their parent company Aksam Holding AG, on the one hand, and Stoffel, Director of PDRF and TMF, on the other hand, dated 29 January 2001 (Exhibit C.3.);

1.4.   Consent of Treasurer Under the Escrow Confirmation of 15 January 1999 and 14 April 2002 dated 15 March 2002 (Exhibit C.4);

1.5.   Employment Agreement between Colleen Investment AG and its subsidiaries Colleen Investment LL and Logasy LLC (the "Companies") on the one hand and Stoffel (the "Employee") on the other hand, dated 23 September 2004 (Exhibit C.5) together with Employment letter of 20 February 2006 (Exhibit C.5.A.), Aktennotiz from STM relating to Aquarius/Capricorn trusts concerning Stoffel's salary (Exhibit C.5.B) and Declaration by STM regarding Stoffel's salary 2006 and 2007 dated 2 February 2007 (Exhibit C.5.C.)

1.6.   Fiduciary Agreement between Chiltern Trust Company (Jersey) [the name was changed thereafter into Vistra] as Trustees of the Colleen Settlement (the "Principal") and Stoffel (the "Trustee) concerning the Trustee's activity as Member of the Board of Directors of Colleen Investment AG and General Attorney of Madison Corporation Development Ltd dated 5 January 1999 (Exhibit C.6);

1.7.   Fiduciary Agreement between Chiltern Trust Company (Jersey) [the name was changed thereafter into Vistra] as Trustees of the Logasy Settlement (the "Principal") and Stoffel (the Trustee) concerning the Trustee's activity as Member of the Board of Directors of Logasy Equity AG and General Attorney of Millennium Import/Export Ltd (Exhibit C.7);

1.7.   Fiduciary Agreement between Chiltern Trust Company (Jersey) [the name was changed thereafter into Vistra] as Trustees of the Aksam Settlement (the

# LALIVE
Attorneys-at-Law

9

"Principal") and M. Stoffel (the Trustee) concerning the Trustee's activity as Member of the Board of Directors of Alaun Holding AG and Penny Asset AG and General Attorney of First Alm Management Ltd (Exhibit C.8);

1.8.    Trust Agreement between Orconsult Ltd, Bermuda, as Trustee of Aquarius Trust and Capricorn Trust (the Principal) and Stoffel, (the Trustee) concerning the Trustee's activity as Fiduciary Shareholder and Member of the Board of Directors of Alaun Holding AG and its subsidiaries Colleca Investment AG and Penny Asset AG dated 20 January 2000 (Exhibit C-9);

1.9.    Trust Agreement between Orconsult Ltd, Bermuda, as Trustee of Aquarius Trust and Capricorn Trust (the Principal) and Stoffel, (the Trustee) concerning the Trustee's activity as Fiduciary Shareholder and Member of the Board of Directors of Legnay Equity AG and its subsidiaries Chrick AG and Vierwaldstätter Beteiligungen AG dated 20 January 2000 (Exhibit C-10);

1.10.   Managing Director Agreement (Geschäftsführer Vertrag) between Angela Blicke on the one hand, and Alaun Holding AG, on the other hand, dated 26 October 1998 (Exhibit C-11);

1.11.   Managing Director Agreement (Geschäftsführer Vertrag) between Clarissa Blicke on the one hand, and Legnay Equity AG, on the other hand, dated 26 October 1998 (Exhibit C-12);

1.12.   Managing Director Agreement (Geschäftsführer Vertrag) between Cedric Blicke on the one hand, and Colleen Investment AG and Penny Asset AG on the other hand, dated 26 October 1998 as amended on 21 January 2000 (Exhibit C-13);

1.13.   Loan Agreements between Stoffel, Sue Stoffel and Laurence, as Borrowers and various entities of Orconsult (ATC, Orconsult SA), Colleen LLC and Colleen AG as per enclosed list including three letters dated 28 January 2003 and 16 December 2005 (Exhibit C-14);

1.14.   Loan Agreements between TMF and BPDRF Foundations on the one hand, as Lenders, and Stoffel, Sue Stoffel and Laurence, as Borrowers, dated 27 August 2002, 12 February 2004, 25 April 2005, 16 December 2005, respectively (Exhibit C-15);

1.15.   Release for the period 1.1.1999 to 31 December 2001 from Clarissa and Cedric Blicke in favour of the STPST, BPDRF and TMF's Foundations as well as their Secretaries and Treasurers (Exhibit C-16);

1.16. . Release for the period 1.1.1999 to 31 December 2001 from Clarissa and Cedric Blicke in favour of the Madison, Stoffel, Maytown and G. Bekshholzer (Exhibit C-17);

1.17.   Releases for the period 1.08.1998 to 31 December 2004 from Clarissa and Cedric Blicke in favour of the Stoffel for his roles in the Jersey (Altaun and Legnay and Colleca) and Bermuda (Aquarius and Capricorn) Trusts (Exhibit C-18);

1.18.   Trust Agreement between Holger, Clarissa and Cedric Blicke, on the one hand, and M. Stoffel, on the other hand, concerning Karlsruhe litigation dated 26 June 2003 (Exhibit C-19);

1.19.   Partition Agreement for Heirs of Angela Blickle (Teilungsvertrag Nachlass Angela Blickle-Lucke), namely Holger, Clarissa and Cedric Blickle dated 26 December 2002 (Exhibit C-20).

# LALIVE
Attorneys-at-Law

10

## C. JURISDICTION OF THE ARBITRAL TRIBUNAL and APPLICABLE LAW

2. The contractual documents referred to above (# B) contain the same or similar arbitration clause providing for arbitration pursuant to the (now) Swiss Rules of International Arbitration in Zurich and for the Swiss substantive law as follows:

| | | | | |
|---|---|---|---|---|
| Donation to Borderline Foundation in Formation | Mühlemann, Forel Alm, Madison, M. Stoffel, Bickle, BPO | 16.12.1988 | C-1 | "All relationships of our family, the trusts (including trustees, protectors and beneficiaries) and its various entities with the officers and directors of the entities as well as with the foundation are subject to Swiss Law. All successors of these persons and entities are bound by this agreement. Exclusive Jurisdiction falls to arbitration in Zurich, according to the rules of the Zurich Chamber of Commerce including the mandatory substitution to its Mini Trial. The parties expressly waive the right of appeal" |
| Escrow Confirmation | Madison Corporate Developments ltd. And Personality Disorder Research Foundations in formation | 15.01.1989 | C-2 | "Any successors to the Principal and/or the Escrow Agent are bound by the rights and duties stipulated in this agreement. In case of disputes an arbitration tribunal is to be set up according to the rules of Zurich Chamber of Commerce and the seat of the arbitration tribunal shall be Zurich/Switzerland. The Parties expressly waive their right to appeal the arbitration award" |

10

# LALIVE
Attorneys-at-Law

11

| Agreement | Parties | Date | Exhibit | Arbitration clause |
|---|---|---|---|---|
| Adoption of Escrow Confirmation | Mayleum Universal SA and Physiplen Universal SA, Colisen Investment AG and Colisen Investment LLC and PDRF and TRF | 29.01.2001 | C-3 | "The Escrow Confirmation of 1.10.1999 forms an integral part of this Agreement. Any successors to the Principal and/or Escrow Agent are bound by the rights and duties stipulated herein. Disputes under this Agreement are subject to arbitration according to the rules of Zurich Chamber of Commerce, the seat of the arbitration tribunal being Zurich, Switzerland. The parties expressly waive their right to appeal the arbitration award" |
| Employment Agreement | Colisen Investment AG (and subsidiaries (Colisen Investment LLC and Logany LLC), for themselves and their related entities | 23.09.2004 | C-5 | "The Agreement is exclusively subject to Swiss law, the place of arbitration being Zurich. Any claim of controversy that arises out of or relates to this agreement, or the breach of it, shall be settled exclusively by arbitration in accordance with the rules of the Zurich Chamber of Commerce. The parties submit to the Mini Trial mediation process as provided but the Chamber appointing the President of the Chamber or a person designated by him as the Mediator. Should the mediation fail, each side appoints one arbitrator and the arbitrators appoint the Chairman. The parties expressly waive their right to appeal and thus the award is final." |
| Fiduciary Agreements | Chiltern Trust Company Limited (principal) and Dr. Marco Stoffel (Trustee) etc. | 5.01.1998 | C-6 /C-7 and C-8 | "This Agreement is exclusively subject to SWISS Law. In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being Zurich" |

11

# LALIVE
Attorneys-at-law

12

| Agreement(s) | Parties | Date | Document | Arbitration Clause |
|---|---|---|---|---|
| Trust Agreements | Circonvault Limited, Bermuda (as Trustee of Aquarius and Capricorn Trust) and Dr. Marco Stoffel | 20.01.2000 | C-9 and C-10 | *"This Agreement is exclusively subject to SWISS LAW, the place of arbitration being Zurich. * In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Zurich Chamber of Commerce, each party appointing one arbitrator and the two arbitrators appointing the Chairman. The parties expressly waive their right to appeal and thus the award is final"* |
| Managing Director Agreements | Angela Blickle, Alexis Cludius, Blickle Legany AG; Cedrik Blickle, Colleen AG and Penny AG | 28.10.1989 | C-11, C-12 and C-13 | *(in free translation): This agreement is subject to Swiss law. In case of disputes, an arbitration proceeding according to the Rules of the Zurich Chamber of Commerce is to be held. The seat of the arbitral Tribunal is Zurich. A sole arbitrator is appointed; if the Parties do not agree on the person of this sole arbitrator, the President of the Zurich Chamber of Commerce appoints this sole arbitrator. The Parties expressly waive an appeal against the arbitral award"* |
| Loans to M. and Sue Stoffel and/or Laurence | | 28.01.2003 | C-14 | *"All disputes arising out and in connection with this agreement shall be finally settled according to the conciliation and arbitration rules of the Swiss Chamber of Commerce, Zurich"* |
| Loans to M. and Sue Stoffel and/or Laurence | | 16.12.2005 | C-14 | *"All disputes arising out and in connection with this agreement shall be finally settled according to the conciliation and arbitration rules of the Zurich Chamber of Commerce."* |

# LALIVE
Attorneys-at-Law

13

| Agreement | Parties | Date | Exhibit | Relevant provisions |
|---|---|---|---|---|
| Declaration Regarding Recipients | Clariden and Cédrick Bickle (Depositors) and SPS, EPORF, TMF, as well as their Secretaries and Treasurers (M.Haig, R. Merritt, and M. Stoffel) (collectively the Recipients) | 5/26/03 | C-16 | "This agreement shall be governed in all respects by SWISS LAW. In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being Zurich. An arbitration tribunal of three arbitrators is to be formed. The rules of the Zurich Chamber of Commerce apply including Mini Trial. The Depositors and the Escrow Agents each appoint one arbitrator. In case one or both sides cannot agree on their on arbitrators, the Chambers President appoints him. The two party arbitrators elect the Chairman of the arbitration tribunal. The parties expressly waive their right to appeal against the arbitration award". |
| Declaration Regarding Escrow Agents | Clariden and Cédrick Bickle (Depositors) Medison and M. Stoffel, and Meytown and G. Belvshotzer | 16.01.2003 | C-17 | "This agreement shall be governed in all respects by SWISS LAW. In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being Zurich. An arbitration tribunal of three arbitrators is to be formed. The rules of the Zurich Chamber of Commerce apply including Mini Trial. The Depositors and the Escrow Agents each appoint one arbitrator. In case one or both sides cannot agree on their on arbitrators, the Chambers President appoints him. The two party arbitrators elect the Chairman of the arbitration tribunal. The parties expressly waive their right to appeal against the arbitration award". |

**LALIVE**
Attorneys-at-Law

14

| Agreement | Parties | Date | Exhibit | Arbitration/Jurisdiction clause |
|---|---|---|---|---|
| Trust Agreement | Holger, Clarissa and Cedric Bickle, and M. Stoffel | 30.06.2003 | C-19 | *"[the] Agreement is exclusively subject to SWISS LAW. In the event of a dispute between the Parties in connection with this Agreement, the Parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being Zurich. An arbitration tribunal of three arbitrators is to be formed. The Rules of the Zurich Chamber of Commerce apply, including mistdist. The Principal and the Trustee each appoint one arbitrator. In case that the three individuals forming that Principal cannot agree on their one arbitrator, the Chamber's President appoints him. The two party arbitrators elect the Chairman of the arbitration tribunal. The parties expressly waive their right to appeal against the arbitration award"* |
| Sharing Agreement for Heirs of Angela Bickle-Luchs | Holger, Clarissa and Cedric Bickle | 28.12.2002 | C-20 | *"The law of the place of conclusion of the contract shall govern for the purposes of the form of this contract. Swiss law shall govern the content of the contract. In the event of disputes arising from this contract, an arbitration court seated in Zurich shall have exclusive jurisdiction; in this regard, an individual arbitration judge appointed by the Chamber shall render a decision. The Rules of the Zurich Chamber of Commerce, including mintdist, shall be applicable. The parties expressly waive contestation of the arbitration judgment"* |

## D.    DESCRIPTION OF THE DISPUTE (SUMMARY)

3.   This litigation is part of a broader series of legal actions brought by some of the Respondents in five different countries. Cast as an action to recover assets purportedly misappropriated by defendant Dr. Stoffel, this action really is about two heirs seeking with the help of Vistra to circumvent the trust structure established by their mother to protect assets and save trusts. The heirs, Clarissa and Cedrick Bickle are two young adults attempting to assert control over the trusts in violation of the intent of the settlor of the trusts (their deceased mother) and in contravention of the trust instruments. Not only do their siblings with the help Vistra seek control for their own selfish ends, but they also want to deny and reverse certain charitable contributions that their mother made shortly before her sudden and untimely death.

14

## LALIVE
Attorneys-at-Law

15

**I.    Creation of the Trust Structure**

4.   In late 1998, Mrs. Angela Bickle, made two charitable donations of $ 24 Mio and $ 12 Mio out of the family's fortune of approximately $80 Mio (DM 150 Mio) and then on behalf of herself and her husband Holger Bickle, created an intricate trust structure, into which the donations were put in escrow with the same trust entities as the rest of the entrusted assets of $ 44 Mio. The purpose of the trust structure was to save the family approximately $40 million in tax liabilities. Accordingly, the trusts were deliberately structured as discretionary and irrevocable as German tax law at that time exempted from gift and estate tax only transfers to such trusts as . *In a non-binding Letter of Wishes* Mrs. Bickle also stipulated that the funds be invested in real estate for the long-term in accordance with the family's traditional buy and hold philosophy.

5.   The trust structure was to serve two basic purposes. On the one hand it was to preserve the approximately $44 Mio assets for herself and her two adult children Clarissa and Cedrick Bickle, particularly from her estranged husband and his two brothers who were engaged in heated litigation with one another about their family fortune. On the other hand, the trusts were to serve as escrow agents for the two charitable donations she made before the trusts were established. For these assets she set up a concept that she called "Doctors with Borders", whereby the trusts could invest these donated funds of approximately $ 36 Mio for their own benefit until the donations were actually needed. Mrs. Bickle's donation of $24 million on December 16, 1998, and her donation of $12 million on December 18, 1998, were specifically designated to fund research into so-called Borderline Personality Disorder, a condition that afflicted Mrs. Bickle's husband and his family and had brought a lot of misery into her marriage. This charitable purpose as later extended to also further tolerance education. Three Trusts, the Alsera, Logany and Colleen Settlements named as plaintiffs herein, were created under the laws of the island of Jersey. The $80 million in assets, consisting of both real estate investments and liquid assets, were held by four Swiss companies, Colleen Investment AG, Logany Equity AG, Alsera Holding AG and Peony Asset AG, which are also named as Respondents herein, and three Irish non-resident companies Millennium, First Aim and Madison, which were all owned by Angela Bickle and her two children

6.   On December 18, 1998 the shares of the four Swiss companies mentioned above were brought into the three Jersey Trusts Alsera, Logany and Colleen Settlements (above, # 5). Viera Trust Company Jersey Ltd. was named as Trustee of the three Settlements and Dr. Stoffel was designated as the person in charge of New Eagle Corporation Ltd. ("New Eagle"), the corporate entity serving as Protector of the trust structure.

7.   Between the death of their mother in February 1999 and the summer of 2006, both Clarissa and Cedrick worked closely with Dr. Stoffel, who acted as the liaison between the trusts and them. They had executed declarations that they were representing the trusts and thus were entitled to give instructions on behalf of the trusts (Declarations re Jersey Trust and Bermuda trusts). Thus, every year Dr. Stoffel sent them the detailed un-audited financial statements listing all entities of the trusts and their assets. Dr. Stoffel explained to both Clarissa and Cedrick the details underlying the un-audited financial statements and, at the end of that

process, both Clarissa and Cedrick issued releases to the trustees, the trust managers and Dr. Stoffel to demonstrate their understanding and approval of the actions taken on their behalf.

8.  In particular Clarissa and Cedrick were informed about the status of the trusts and the tremendous increase in the value of the trusts' assets, including millions of dollars in annual distributions to Respondents Marytown and Plympton . Of particular interest to them were the expenses, which were listed to these statements as "operational expenses." These expenses were divided into two categories: "administrative expense" and "other operational expense." The first category contained mainly transfers made and fees paid to various Oceanustt entities; the second category contained all the distributions to charities and family members.

9.  Clarissa and Cedrick Blickle signed the escrow agreements in 1999 in their own names and on behalf of the trust entities, which held the two donations that their mother had made prior to the establishment of the Trusts. They also were told in detail how the donations were spent in grants contributed to Borderline Personality Disorder research and tolerance education through two charitable foundations – the Borderline Personality Disorder Research Foundation ("BPDRF") and the Third Millennium Foundation ("TMF") (collectively, the "Foundations"). Both Clarissa and Cedrick also issued releases approving these activities.

10. Moreover, in 1999 both Clarissa and Cedrick participated in and approved of a change in the trust structure proposed by Vistra that transferred the trust assets from certain trusts established in the Jersey Islands to two trusts created under the laws of Bermuda, the Capricorn and Aquarius Trusts. Indeed, that structural change was brought about by a challenge to the structure from their father Holger Blickle, who threatened to sue his own children in order to obtain greater personal access to the assets of the trusts. In a meeting on August 13, 1999, attended by representatives of Vistra, the decision was taken to establish three Bermuda Trusts, one each for the children and her father. The Capricorn and Aquarius trusts had as their sole beneficiaries Clarissa and Cedrick Blickle, respectively; and the later established Francis Trust had as sole beneficiary Holger Blickle. Thus, far from eliminating Clarissa and Cedrick as beneficiaries of the trusts, the designation of Aquarius and Capricorn Trusts as beneficiaries was done with the approval and for the protection of Clarissa and Cedrick. At that time Clarissa had finished law school and Cedrick had started grad school of economics; thus they knew very well what they were doing and instructing. In connection with the new trust structure the three Irish companies were replaced with the two BVI companies Marytown and Plympton, two more Swiss companies, Clarick AO and Vierwaldstaetter Beteiligungen AG, and the two US entities Colleen Investment LLC and Logany LLC were added. All six of these companies are also Respondents in this proceeding.

**II    The Blickles' Efforts to Gain Control of the Trust Assets**

11. Respondents 1 to 11 in their various proceedings stated that this dispute is about greed and malfeasance, but they clearly point the finger at the wrong party. These proceedings are not about the purported theft of funds by Claimant Dr. Marco Stoffel. Although Dr. Stoffel has been well compensated over the past ten years, his level of compensation had been fixed by Angela Blickle at what he would have earned in continuing his legal practice that he abandoned for this purpose (Exhibit C-1, # 3). As a matter of fact (and for the purpose of giving an example), his coordination of the research effort led to BPD being a recognized

# LALIVE

Attorneys-at-Law

17

mental illness disorder, which is now listed in the U.S. Government's Directory of Mental Illness IV ("DSM IV"). Due to Dr. Stoffel's efforts, three Nobel Laureates joined the board of BPDRF (at no compensation ). This, in turn, led to young investigators looking into the disorder and to the National Institute of Mental Health ("NIMH") increasing funding into this research from relatively minimal amounts in 1999 to millions of dollars by 2006. Similarly, Dr. Stoffel's efforts in tolerance education led to increases at TMF, which is now the leading field builder of tolerance education.  Last, but not least, his connections in the United States and New York in particular helped the trust to invest in funds that generated huge profits and increase the value of the trust assets from $80 million to at least $150 million. Thus, the unaudited financial compilations as of December 31, 2006 for Maytown/Plympton include the assets held by each of the six Swiss companies, the two U.S. based LLC's, as well as Maytown and Plympton. These financial statements list $115 million in assets.  That $115 million figure does not, however, include approximately $6 million distributed to Clariss and Cedrick between 1999 and 2006, donations of $10.6 million to BPDRF and TMF between 1999 and 2006, $6.9 million in fees paid to Dr. Stoffel and the $12 million (historical exchange rate applied to USD, Euro and CHF) paid by Maytown and Plympton to various Orconsult entities (depending on the applied exchange rate this amount could be as high as $13.8 Mio). Accordingly, the value of the trust assets at least doubled between 1999 and 2006. In fact, the increase in value was substantially greater still, because Logany LLC's investment in the office building at 1 Broadway is valued on the financial statement at only $45 million. Its real market value is actually closer to $104 million.  Thus, the value of the trust assets almost tripled as it increased from approximately $80 million in 1999 to approximately $210 million by the end of 2006.

12. The true measure of greed and malfeasance is to be found with Clariss and Cedrick Blickle and their recent efforts to destroy the trust structure for their own personal gain.  Unwilling to live within the structure designated by their deceased mother, both Clariss and Cedrick now wish to disavow that structure, including it's charitable purposes, in order to get full and complete control over the trust assets.  To accomplish this goal, the Blickle children have had to wrest control of the trust structure from Orconsult Ltd. – the duly appointed Trustee – and from New Eagle Corp (represented by Dr. Stoffel) the entity designated by Angela Blickle as the Protector of the trust structure.  Their methods have been nothing short of astonishing.

13. Indeed, in July 2006, Clariss for the first time stated her view that the trust structure created by her mother in 1998 was never supposed to be permanent and with discretionary distribution powers in the hands of the trustees, but rather was intended by the family to exist for only a limited duration of five years to them be distributed in its entirety to them. That position is, of course, diametrically opposed to the Deeds of Trust that create discretionary (not only for them) and irrevocable (not just for 5 years) trusts.  Especially the alleged limited duration would nullify the irrevocability of the trusts and would require substantially different tax treatment under applicable Swiss and German tax laws. Indeed, Clariss's statement, if true, would be tantamount to tax fraud on the part of the Blickle family and Visera. The Trustee of the Bermuda Trusts, Orconsult Limited, the trust manager Orconsult SA, and the Trust Protector, New Eagle (through Dr. Marco Stoffel), refused the Blickle children's 2006 request to distribute all trust assets to them. In order to circumvent this refusal, the Blickles engaged the former trustee of the Jersey Trusts to challenge the change of 1999 and claim all trust assets to still belong to the Jersey trusts.

# LALIVE
Attorneys-at-Law

18

13. This refusal started the efforts by Blickles and Vistra to regain control of the trust assets. Clarima and Cedrick, along with Vistra began to allege for the first time that the August 13, 1999 decision to transfer all trust assets to the two Bermuda trusts was never implemented and thus null and void. For the previous seven years Vistra and the Blickles had never challenged this transfer. Yet now, in an effort to bust the trust structure, they focus on Vistra's own failure to execute certain documentation evidencing the decision to transfer the assets from one set of trusts to another and assert that Dr. Stoffel somehow acted fraudulently in accomplishing this transfer. Yet, it is Vistra and the Blickles who are engaged in misrepresentations to press their claims before courts in jurisdictions such as the Jersey Islands, Bermuda, the British Virgin Islands, the United Kingdom, the United States and Switzerland.

### III.    Sham Shareholder Meetings of the Swiss Companies

15.  In December of 2006, Clarima and Cedrick escalated the dispute to gain control of the Trust assets. Placing pressure on Vistra, the Trustee of the Jersey Trusts that had been functionally inoperative since 1999, Vistra staged a series of sham shareholder meetings on December 6, 2006 for each of the six Swiss companies without having the bearer shares. All the shares were with Dr.Stoffel based on his fiduciary agreement with Orconsult Limited. Accordingly, the purported shareholders' meetings of the six Swiss Companies, as well as the actions taken therein and pursuant thereto, were without proper authorization and, under applicable Swiss law are null and void. Nullity claims against these shareholders meetings and interpleader claims for assessing the rightful share ownership were thereafter made pendant in the competent Swiss court. The fact that the directors elected in these shareholders meetings were then registered by the Swiss authorities as the companies' officers does not make them valid representatives for those who know about the illegal elections. Vistra and these officers never told third parties about this nullity litigation and asserted control of the trust assets through the illegally appointed officers. Only in two instances did banks not go along with this "hijacking" of assets: Deutsche Bank New York (DB) and HVB Freiburg/Germany ("HVB") did not free the liquid assets in the accounts of the trust entities as requested by these officers. Other banks like Wachovia, Fortis and Lloyds however did follow their instructions to empty the accounts. Respondents went to cast Dr.Stoffel as a criminal in order to convince DB and HVB that they are the rightful owners, without having the Swiss courts decide on the nullity claims and the interpleaders.

### IV.    Vistra's Use of *Ex Parte* Proceedings

16.  Based on these fraudulently conducted shareholders' meetings, Respondent Vistra purported to replace the directors of each of the six Swiss companies. Thus, Mr. Georges Philippe and Mr. Guido Bachotzer, as representatives on the boards of the six Swiss companies for the Bermuda trustee Orconsult Limited and the trust manager Orconsult SA, and Dr. Stoffel as board representative for the Protector New Eagle were replaced by a slate of Vistra designated directors. Vistra then continued on its campaign of instituting legal proceedings in various jurisdictions.

## LALIVE

Attorneys-at-Law

19

17.    Vistra had already initiated an *ex parte* judicial proceeding in the Island of Jersey several weeks earlier seeking, *inter alia*, to remove New Eagle as Protector of the trusts and Dr. Stoffel as the authorized representative of New Eagle. On December 11, 2006, plaintiffs also initiated an *ex parte* proceeding in Bermuda to block Orcosault Limited (the Trustee), New Eagle, (the Protector) and Dr. Stoffel from acting for the Bermuda trusts and the trust related entities.

18.    Shortly after conducting the sham board meetings, Vistra initiated another *ex parte* proceeding in the British Virgin Islands (BVI) to remove Messrs. Benholzer and Philippe as Directors of plaintiffs Maytown and Plympton and to obtain the appointment of plaintiff William Tacon as receiver and manager of the assets of these two entities.

19.    Based upon the order of the BVI court, Vistra initiated an application in Delaware Chancery Court for the books and records of two U.S. Limited Liability Companies that held certain real estate investments in the United States. Not content with that, Vistra next commenced an *ex parte* proceeding in the United States District Court for the Southern District of New York seeking discovery, pursuant to 28 U.S.C. Section 1782, in support of a foreign judicial proceeding – namely the afore mentioned BVI proceeding.

20.    Finally, on the Friday before Christmas Eve, Vistra brought another *ex parte* proceeding in the Supreme Court of the State of New York, County of New York, seeking a Temporary Restraining Order and injunctive relief to freeze Dr. Stoffel's personal assets, including his private bank accounts. As with the other *ex parte* proceedings brought by Vistra, the grounds here are flimsy at best.

21.    To sum it up:

> ➤ if Vistra is the trustee of all Respondents 1-11, these trusts would be sham trusts, as Vistra did nothing from December 1998 through December 2006;
> ➤ if Alsara/Colleen/Logasy Trusts and/or Aquarius/Capricorn Trusts were only established for a limited time and/or have the Blickle Family as sole beneficiaries, Vistra and Orcosault Limited/SA and all their entities would have committed tax fraud;
> ➤ If Orcosault SA paid personal bills of Stoffel and/or Lawrence from trust funds, that were not loans granted or fees earned, they would have violated the Swiss law on money laundering.

## E. PRELIMINARY REQUEST FOR PRODUCTION OF DOCUMENTS

22.    In order to properly ascertain their claims, the Claimants have required from the Tribunal to preliminarily order Respondents to produce documents. These requests (see Prayers for Relief N°...) are briefly motivated hereinbelow:

# LALIVE
Attorneys-at-Law

20

23. Allegedly, the annual Protector fee of € 200'000.- owed to New Eagle was advanced through loans to M. and S. Stoffel amounting to € 1'800'000.- over the nine years passed since inception of the trusts. Orcosuult SA managed this amount and paid personal bills of M. and S. Stoffel is calling that credit line. Also, the legal fees to M. Stoffel for his work on the Kacherho litigation were put into the same funds managed by Orcosuult SA and used to pay M. Stoffel's personal bills as well. Claimants, and probably Respondents 1 to 11, cannot assess how these funds and how much of these funds were used. It is very possible that Orcosuult SA commingled these funds with funds of the Blickles' and or the trusts, which would give the appearance that personal bills of M. Stoffel were paid by these third parties.

24. With respect to the loans, Orcosuult SA, directly or indirectly through its entities, granted loans to Stoffel and Mrs Sue Stoffel and Laurance (Exhibit C-14 and C-15) and it is unclear what the sources of these funds were. The production required will allow the Claimants to fully support their case that these loans were taken from the proper funds.

25. Besides, Claimants have only documents showing the authority of Orcosuult Ltd (as trustee for Aquarius/Capricorn Trusts, the " Bermuda Trusts") to act as owners of the various trust entities (namely the six Swiss companies, the two BVI companies and the two US entities) since December 1999. However, the Claimants do not have the documents that evidence the underlying arrangements for the ownership transfers from Vistra (as trustee of Akasa/Colloca/Logany Trusts, the "Jersey Trusts")) to Orcosuult ltd. These documents are essential since Vistra alleges in various form that the assets of the Jersey trusts were not validly transferred to the Bermuda trusts and that M. Stoffel is responsible for that.

26. Moreover and in addition, Respondents 1 to 11 have to produce the documents evidencing their arrangements with Mr. Christen and/or Christen & Zobrist Treuhand AG. Christen and his company are the domicile holders for all the six Swiss Companies. Respondents 1 to 11 have filed a summons against Mr Christen with the New York Supreme Court, County of New York in December 2007, ordering him to hand over all the files of these six companies. Mr. Christen has complied with this Order. On the other hand, Mr Christen has also filed with the Swiss Courts a motion to withdraw the claims he had previously made against Respondents 1 to 11 for the nullity of the shareholders meeting of December 2006 of all the six Swiss Companies. In addition, Respondents 1 to 11 together with Mr Christen filed with the Swiss Courts to discontinue the litigation about Mr Christen's one percent shareholding in all the six Swiss Companies. It is obvious that these three steps must have all been agreed upon between Vistra and Mr Christen in order to allow Vistra to take total and unlimited control of the Trust entities, namely the six Swiss Companies, the two BVI and the two US companies and thus prevent a court decision on the ownership issues.

27. Besides, Orcosuult SA was the manager of all trust assets. G.Benholzer and G.Philippe had signature power on all accounts of the trust entities and the various onshore and offshore Orcosuult entities. Stoffel only used his signature power on the escrow accounts

# LALIVE
Attorneys-at-Law

21

of Colleen LLC and Colleen AG as per the authority granted to him by the various escrow agreements.

28. The crux of the case is, that the Claimants and probably Respondents 1-11 as well, cannot assess for whom Orconsult SA held funds in which of their entities and what the reasons for the payments from these funds were. Orconsult used dozens of offshore companies and their bank accounts as per the enclosed list (Exhibit C- 22). For example, in another proceeding Respondents 1 and 2 submitted a report of accounts that Orconsult had managed at Lloyds in London, where one can see that transfers were made to their offshore companies (labeled "Scottish Partnerships"), TMF, Colleen LLC, Penny AG, Orconsult Limited and Orconsult SA (Exhibit C - 23). The same Scottish Partnerships (FB Partners, Deltam, ITC, Mirin, Nevis, IFMG, ATC, Intells, Interconsultants) held also moneys of Stoffel from legal bills his firm had charged in 1999 (Exhibit C - 24). Claimants therefore require complete bank records and/or accounting statements for a complete tracing of these transfers.

29. The BVI company Albo was established for the Bleicke Family and held assets for them (London apartment) and for the foundations (see Exhibit C No.15). In 2005 an additional Panamanian company, Bluecolt, was also established by Orconsult SA for the same purpose. As only found out in 2007, Orconsult had wrongly indicated Stoffel as the beneficial owner of these two entities. Allegedly personal bills of Stoffel were paid from Albo and Bluecolt accounts. Stoffel indeed had personal moneys managed by Orconsult SA, which started long before Orconsult managed moneys for the trusts and the Bleicke Family (an example a few transfers of Stoffel's private moneys is listed in Exhibit C N.24). If indeed private bills of Stoffel were paid from Albo/Bluecolt, then their financial statements would have to show, that either these two entities were reimbursed from Stoffel funds or a claim was entered in their books against an entity that held Stoffel funds or an offset was booked with fees and loans owed to Stoffel.

30. These facts show how important it is for resolving this case to have the requested documents, accounting and financial statements submitted in order for the Claims to be properly and adequately addressed.

## F. PROCEDURAL ISSUES

### I. Mediation

31. As required by the arbitration clause contained in the Donation Agreement (Exhibit C-1) as well as in the Employment Agreement (Exhibit C-5) Claimants filed a Request for Mediation with the Zurich Chamber of Commerce on 23 May 2007 (Exhibit C-21). The mediation process failed.

# LALIVE

Attorneys-at-Law

22

---

## II.   Other Procedural Issues

32.   Be it under no express arbitration clause or through the fact that, pursuant to the Donation Agreement of 16 December 1998, " ... all the trusts (including trustees, protectors and beneficiaries) and its various entities with the officers and directors of the entities as well as with the foundation are subject to Swiss law" and " All successors of these persons and entities are bound by this agreement" , it appears that the entirety of the contractual or release documents mentioned above (# B) are subject to arbitration in Zurich under the Swiss Rules, the Swiss substantive law being applicable to the merits of the dispute at hand.

33.   As to the number of the arbitrators, the Claimants hold that the complexity of the contractual and financial relationships makes that a three member tribunal should be appointed. The Claimants designate on their side as their party appointed arbitrator:

Professor Dr Dominique Dreyer
Attorney at Law
Hartmann & Dreyer
Bd de Pérolles 7
P.O. Box 736
Telephone    0041 26 309 20 70
Telefax       0041 26 323 23 66
Email        dominique.dreyer@hdlaw.ch

34.   Claimants paid the Registration Fee of CHF 6'000 .-by transfer to the account of the Zurich Chamber of Commerce on 21 January 2008 (Exhibit C-26)

* * * * *

For the Claimants

Teresa Giovannini, Attorney at Law

Geneva, 21 January 2008

Annex: Power of Attorney and List of Exhibits N° 1 to 26

22

# Exhibit 2

To Fellas Declaration, dated May 5, 2008



Chambers of Commerce    Basel    www.swissarbitration.ch
and Industry of          Berne
                         Geneva
                         Lausanne
                         Lugano
                         Zurich

**By fax and by mail**

Mrs. Teresa Giovannini
Lalive
Attorneys-at-Law
35 Rue de la Mairie
1207 Geneva

Zurich, 5 February 2008 / es

*Re:*          *1. Marco Stoffel, 2. Lauramca Holdings LLC versus 1. Maytown Universal SA, 2. Plympton Universal SA, 3. Vistra Trust Company (Jersey) Limited, as trustee for the Alsam, Colleen and Logany Settlements, 4. Alsam Holding AG, 5. Penny Asset AG, 6. Logany Equity AG, 7. Vierwaldstaetter Beteiligungen AG, 8. Clarick AG, 9. Colleen Investment AG, 10. Colleen Investment LLC, 11. Logany LLC, 12. Albeag Foundation, 13. Albe Associates Limited, 14. Bluecolt Securities, 15. Orconsult SA and 16. Orconsult Limited, as trustee for Aquarius and Capricorn trusts (CH)*

*Case No.:    600116-2008*

Dear Mrs. Giovannini,

The Chamber notes that under lit. C of the Notice of Arbitration Claimants present a list containing several agreements to arbitrate together with the parties to the different contracts.

According to Article 3, paragraph 3c) of the Swiss Rules, the Notice of Arbitration shall include a copy of the arbitration clause or the separate arbitration agreement that is invoked.

The Claimants are invited, **until 15 February 2008**, to make full particulars of the parties bound by the different agreements to arbitrate. We invite Claimants to specify which arbitration agreement they invoke between Claimant 1 and each one of the Respondents 1-16, as well as between Claimant 2 and each one of the Respondents 1-16.

Yours sincerely,

Dr. Lukas Briner
Member of the Arbitration Committee

# Exhibit 3

To Fellas Declaration, dated May 5, 2008

# LALIVE
Attorneys-at-Law

PIERRE LALIVE
MICHAEL E. SCHNEIDER
TERESA GIOVANNINI
MARCUS C. BOEGLIN
CHRISTIANE de SENARCLENS
DOMINIQUE BROWN-BERSET
GÉRALD PAGE
JEAN-PAUL VULLIÉTY
PATRICE LE HOUELLEUR
MATTHIAS SCHERER
ALEXANDRE TROLLER
MARC HENZELIN
VEIJO HEISKANEN
GEORGES RACINE
DOMITILLE BAIZEAU
ROBERT PIETROWSKI
PIERRE-OLIVIER ALLAZ

BERND EHLE
FRANCESCA AZZI PRICE
DOMINIQUE RITTER
DIRK LANGER
ANTONIO ROMANETTI
JOACHIM KNOLL
NICOLAS LEROUX
NORADÈLE RADJAI
VINCENT TATTINI
LAETITIA FEUGLET
NATHALIE BIGLER
THOMAS WIDMER
SONJA MAEDER
GUILLAUME TATTEVIN

Counsel
JEAN-FLAVIEN LALIVE
KAMEN TROLLER
PETER MALANCZUK
LUIGI CAPUCCI
ROBERT KOLB

By Registered Mail

Zurich Chamber of Commerce
Bleicherweg 5
P.O. Box 3058
8022 Zurich

Geneva, 20 February 2008

**COMPLEMENT TO**

**THE**

**NOTICE OF ARBITRATION**

In the matter of

1.   **Marco Stoffel**, Hohenstrasse 42, 8700 Kuesnacht, Switzerland

"**Stoffel**" / **Claimant 1**

2.   **Lauramca Holdings LLC**, 340 West 12th Street, New York, New York, USA

"**Lauramca**" / **Claimant 2**

RUE DE LA MAIRIE 35    P.O. BOX 6569    CH-1211 GENEVA 6
TELEPHONE +41 22 319 87 00    FAX +41 22 319 87 60    E-MAIL: lalive@lalive.ch    VAT 324 679
http://www.lalive.ch

# LALIVE
### Attorneys-at-Law

2

represented by Teresa Giovannini and Christiane de Senarclens, Attorneys at Law, Lalive, 35 Rue de la Mairie, 1207 Geneva, Switzerland, telephone: 0041 22 319 87 08; telefax: 0041 22 319 87 60; email: tgiovannini@lalive.ch; cdesenarclens@lalive.ch

L A L I V E
Attorneys-at-Law

3

---

versus

1.    **Maytown Universal SA**, c/o William Tacon, Receiver and Manager, P.O. Box 4571, Palm Grove House, 2nd Floor, Wickhams Cay, Road Town, British Virgin Islands

**"Maytown" /    Respondent 1**

2.    **Plympton Universal SA**, c/o William Tacon, Receiver and Manager, P.O. Box 4571, Palm Grove House, 2nd Floor, Wickhams Cay, Road Town, British Virgin Islands

**"Plympton" / Respondent 2**

**Respondents 1 and 2 are represented by RA Dr.Philipp Kaenzig**, Attorney at Law, Staiger Schwald & Partner, Genferstrasse 24, P.O. Bpx 2012, 8027 Zurich

3.    **Vistra Trust Company (Jersey) Limited, as trustee of the Alsam, Colleen and Logany Settlements**, 38 Esplanade, St Helier, Jersey, Channel Islands

**"Vistra" / Respondent 3**

4.    **Alsam Holding AG**, c/o Christen und Zobrist Treuhand AG, Achereggstrasse 10, 6362 Stanstad, Switzerland

**"Alsam AG" Respondent 4**

5.    **Penny Asset AG**, c/o Christen und Zobrist Treuhand AG, Achereggstrasse 10, 6362 Stanstad, Switzerland

**"Penny AG" / Respondent 5**

6.    **Logany Equity AG**, c/o Christen und Zobrist Treuhand AG, Achereggstrasse 10, 6362 Stanstad, Switzerland

**„Logany AG" / Respondent 6**

7.    **Vierwaldstaetter Beteiligungen AG**, c/o Christen und Zobrist Treuhand AG, Achereggstrasse 10, 6362 Stanstad, Switzerland

**"Vierwald AG" / Respondent 7**

3

# LALIVE
Attorneys-at-Law

4

---

8.    **Clarick AG,** c/o Christen und Zobrist Treuhand AG, Achereggstrasse 10, 6362 Stanstad, Switzerland

**"Clarick AG" / Respondent 8**

9.    **Colleen Investment AG,** c/o Christen und Zobrist Treuhand AG, Achereggstrasse 10, 6362 Stanstad, Switzerland

**"Colleen AG" / Respondent 9**

10.   **Colleen Investment LLC,** c/o Corporation Service Company, 80 State Street, Albany, New York 12207-25423

**"Colleen LLC" / Respondent 10**

11.   **Logany LLC,** c/o Corporation Service Company, 80 State Street, Albany, New York 12207-25423

**"Logany LLC" / Respondent 11**

**Respondents 3 - 11 are represented by RA Dr.Bernhard Loetscher and RA Ailine Wey, CMS von Erlach Henrici, Dreikönigstrasse 7, P.O. Box 2991, 8022 Zürich**

12.   **Albeag Foundation,** c/o Trevisa- Treuhand-Anstalt & Trebona-Anstalt, Verwaltungs-und Treuhandbüro, Landstrasse 8, 9496 Balzers, Liechtenstein

**"Albeag" / Respondent 12**

13.   **Albe Associates Limited,** c/o Orconsult SA, Wengistrasse 7, PO Box, 8026 Zürich

**"Albe" / Respondent 13**

14.   **Bluecolt Securities,**c/o Orconsult SA, Wengistrasse 7, PO Box, 8026 Zürich

**"Bluecolt / Respondent 14**

15.   Orconsult SA, Wengistrasse 7, PO Box, 8026 Zürich

**"Orconsult SA" / Respondent 15**

16.   **Orconsult Limited, as trustee for Aquarius and Capricorn trusts,** c/o Orconsult SA, Wengistrasse 7, PO Box, 8026 Zürich

**"Orconsult Ltd" / Respondent 16**

**Respondents 12 – 16 are represented by Directors Georges Philippe and Guido Banholzer, and Peter Schatz, Attorney at Law, Kellerhals Hess Rechtsanwaelte, Raemistrasse 5, 8024 Zurich**

## LALIVE
Attorneys-at-Law

5

---

In compliance with the Arbitration Committee of the Swiss Chambers of Commerce and Industry's letter of 5 February 2008, the Claimants show herebelow the arbitration agreements each of them is bound to.

## I. CONTRACTUAL RELATIONSHIPS REGARDING DONATIONS AND ESCROWS

### I.1. The Donations of December 1998

1.  It is recalled here that the entire dispute relates to the implementation of two irrevocable donations by Angela Blickle in December 1998 (Exhibits C-1 and C-32 hereto), which she made before the Jersey Trusts Alsam, Colleen and Logany Settlements (see **Respondent 3**) were established.

2.  With the Donation Agreement of 16 December 1998 (Exhibit C-1), Mrs Angela Blickle irrevocably donated USD 24 million to charitable Foundations (below, # I.2.). In order for this donation to be implemented, Mrs Angela Blickle provided the Irish company Madison to be the escrow agent for this amount. Madison was formed in summer of 1998 and belonged to the Blickle Family. It held accounts at the two Swiss banks Darier Hentsch and UBS.

3.  With a further contract of December 1998 (Exhibit C-32) Angela Blickle donated an additional USD 12 Mio which was put in escrow with Albe Associated Limited (see below, # I.4).

4.  This first structure has been thereafter elaborated in various corporate entities, any and all of them being part and parcel of the initial structure provided for in the Donation Agreement. As a consequence, all entities and individuals connected to this elaborated structure are bound to the obligations contained in the Donation Agreement, and in particular to the arbitration agreement contained therein, as it is shown below (# I.2).

### 1.2. The Donation Agreement (Claimant 1 and successors to Madison)

5.  **The Donation Agreement of 18 December 1998** (The Donation Agreement, Exhibit C-1) was entered into by and between A. Blickle (today deceased), the Irish Companies Millenium, First Aim and **Madison Corporate Developments Limited (Madison)** (the Escrow Agent) (Exhibit C-1, article 2) "Médecins avec Frontières" ("the Irish Companies") represented by Marco Stoffel and **Borderline Foundation in Formation (BPD Foundation)** (the Principal).

6.  The Donation Agreement provided for Claimant 1, Marco Stoffel, to " *act as "Protector.. to supervise the trustees in general and in particular as to the implementation of the donation. Dr Stoffel is also to serve as director of the foundation to put together a BPD research initiative and to assure the donor that*

# LALIVE
Attorneys-at-Law

6

---

> *the moneys are well spent. Dr Stoffel is to be remunerated at DM 1.3 Mio as this represents his average income as an attorney"*

7.  The Donation Agreement provided for an arbitration clause binding upon any and all trusts (including trustees, protectors and beneficiaries, officers and directors of the entities) as well as their successors as follows:

> *"All relationships of our family, the trusts (including trustees, protectors and beneficiaries) and its various entities with the officers and directors of the entities as well as with the foundation are subject to Swiss law. All successors of these persons and entities are bound by this agreement. Exclusive jurisdiction falls to arbitration in Zurich, according to the rules of the Zurich Chamber of Commerce including the mandatory submission to its Mini Trial. The parties expressly waive their right of appeal"*

8.  **As a result of these provisions, the Donation Agreement and the arbitration clause contained therein is binding in particular upon Marco Stoffel (Claimant 1) in his capacity as (a) Protector and (b) Director of the BPD Foundation, on the one hand, and Madison, in the latter capacity of Escrow Agent, on the other hand, as well as on any and all successors of these parties.**

9.  The Escrow Confirmation of 15 January 1999 executed by Madison as Escrow Agent (Exhibit C-2) confirmed Madison as escrow agent as per the Donation Agreement mentioned above . The Escrow Confirmation contains the following arbitration clause:

> *"Any successors to the Principals and/or the Escrow Agent are bound by the rights and duties stipulated in this agreement. In case of disputes an arbitration tribunal is set up according to the rules of the Zurich Chamber of Commerce and the seat of the arbitration tribunal shall be Zurich/Switzerland. The parties expressly waive their right to appeal the arbitration award"*

10. **Thus, it is clear that any and all successors to the Parties to the Escrow Confirmation are bound to the arbitration clause mentioned.**

## I. 3. The Adoptation of 29 January 2001 of Escrow Confirmation (Claimant 1, Respondents 1,2 and 10 and successors companies Respondents 3-9 and 11,16)

11. **By an agreement** dated January 29,2001 by and between Maytown Universal SA (Maytown) & Plimpton Universal SA (Plimpton) and Colleen Investment AG (Colleen AG) & Colleen Investment LLC (Colleen LLC), (the Adoptation of Escrow Confirmation) (Exhibit C-3), **Maytown and Plimpton succeeded Madison as escrow agent under the Escrow Confirmation of 15 January 1999.**

LALIVE
Attorneys-at-Law

7

12. Moreover, the Adoptation of Escrow Confirmation stated that *"some of the money accounts have been transferred to the accounts ...Maytown and Plimpton"* and that *"transfers were made from these two accounts of Maytown and Plimpton to the account of Colleen Investment LLC with Bankers Trust"... or with Logany LLC"*, and further, that:

*.." The Escrow Confirmation of 1.15.1999 forms an integral part of this Agreement. "Any successors to the Principal and/or Escrow Agent are bound by the rights and duties stipulated herein; Disputes under this Agreement are subject to arbitration according to the rules of Zurich Chamber of Commerce, the seat of the arbitration tribunal being Zurich, Switzerland. The parties expressly waive their right to appeal the arbitration award"*

13. **As a result of the three agreements mentioned above (# I.1., I.2 and I.3), Marco Stoffel (Claimant 1) on the one hand, and Maytown (Respondent 1) Plimpton (Respondent 2) and Colleen LLC (Respondent 10) are bound to the Donation Agreement (and the Escrow Confirmation) and the arbitration clause provided therein in their capacity as:**

   (i)     **Protector and Director (Claimant 1)**
   (ii)    **Successors to Madison as escrow agents (Respondents 1, 2 and 10)**

14. Likewise, and as it will be demonstrated further during the arbitration proceedings, Respondents 3 to 9 and Respondents 11 and 16 are equally bound to the arbitration clause contained in the Adoptation inasmuch as there are successors to the Parties mentioned above

**I.4. The Albe Escrow regarding the Donation Agreement re USD 12 Mio made part of the Madison Escrow (Claimants 1 and 2 and Respondent 13 plus its successors Respondents 12 and 14 and Respondents 15 and 16)**

15. The Arbitration Clause in the Escrow Confirmation (Exhibit C-2) and in the Adoptation     Agreement     binds     Respondents     Albeag     Foundation (Albeag)(Respondent 12), , Albe Associates Limited (Albe) (Respondent 13), Bluecolt Securities (Bluecolt) (Respondent 14) , Orconsult SA and Orconsult Ltd **(Respondents     15     and     16)**     for     the     following     reasons:

   (i) Clarissa and Cedrick Blickle signed the Escrow Confirmation of 5 January 1999 (Exhibit C-2, initials) and they are the beneficial owners of Albe (Exhibits C-28 and C-29 hereto);

   (ii) ) The Albe Escrow was made part of the Escrow Confirmation as evidentiated

7

LALIVE
Attorneys-at-Law

8

---

by the Confirmation issued by Alsam AG and Logany AG on 25 April 2005
(Exhibit C-30 hereto) as follows: :

*"Die daraus enstehenden Unter-Depots bei Colleen-Konti und –Immobilienfonds
sowie bei Lauramca, Albe und Stoffel unterliegen deshalb auch den rechten und
Pflichten      in      den      Schenklungs-      und      escrow-Vereinbarungen."*

(iii) Albe is holding its assets for Bluecolt as shown by Albe letter to Bluecolt
Securities Corp. of 17 October 2005 (Exhibit C-31 hereto). As a consequence,
Bluecolt is a successor to the Escrow Confirmation as well.

(iv) Albeag Foundation became shareholder of Albe and Bluecolt (Exhibit C-32
hereto) and is therefore bound as a successor to the Escrow Confirmation as well.

## II.    CONTRACTUAL RELATIONSHIPS REGARDING EMPLOYMENT, MANAGEMENT AND FIDUCIARY POSITIONS

### II.1    The Employment Agreement (Claimant 1, Respondents 9, 10 and 11)

16.    By an additional **Employment Agreement dated 23 September 2004** between
Marco Stoffel on the one hand (the Employee) and Colleen Investment AG and its
subsidiaries Colleen Investment LLC and Logany LLC (**the Employment
Agreement**) (Exhibit C5,C5/A,C5/B, C5/C), Claimant 1 was to receive a salary of
USD 350'000 per year and had to be reimbursed for all expenses resulting from
legal proceedings in connection with his employment.

17.    The Employment Agreement provided for an arbitration clause as follows

*" The Agreement is exclusively subject to Swiss law, the place of arbitration being Zurich.
" Any claim of controversy that arises out of or relates to this agreement, or the breach of it,
shall be settled exclusively by arbitration in accordance with the rules of the Zurich
Chamber of Commerce. The parties submit to the Mini Trial mediation process as provided
but the Chamber appointing the President of the Chamber or a person designated by him
as the Mediator. Should the mediation fail, each side appoints one arbitrator and the
arbitrators appoint the Chairman. The parties expressly waive their right to appeal and thus
the award is final."*

being again specified that:

*" The Companies rights and obligations under this agreement will inure to the
benefit and be binding upon the Companies' preceding owners, its successors and
assignees ".*

18.    **Thus the Employment Agreement and the arbitration clause contained therein
are binding upon Claimant 1, Marco Stoffel, on the one hand, and
Respondents 9, Colleen Investment AG and its subsidiaries Respondent 10,
Colleen Investment LLC, and Respondent 11, Logany LLC.**

8

# LALIVE
### Attorneys-at-Law

9

---

II.2.    **The Fiduciary Agreements (Claimant 1, Respondent 3)**

19.    Further, by three Fiduciary Agreements between Chiltern Trust Company Ltd (now Vistra Trust Company Ltd) **(Vistra)** (Claimant, Exhibit C- 27 hereto) as Trustees of the Colleen Settlement (the Principal) and Marco Stoffel in his capacity as fiduciary shareholder and   Member of the Board of Directors of (a) **Colleen Investment AG** (Exhibit C-6); (b)   **Logany Equity AG** (Exhibit C-7) and (c) **Alsam Holding AG and Penny Asset AG** (Exhibit C-8) dated 5 January 1999 **(The Fiduciary Agreements)** undertook to act according to the instructions of the Principal. The latter **(Vistra)** undertook in particular to " *meet without reservation and in their entirety all liabilities, costs and other financial duties and obligations the Trustee might incur because of the Activity"*.

20.    Besides, these Fiduciary Agreements each provided that the fiduciary Agent was to receive a sum of CHF 30'000.- as compensation for his functions, additional services and expenses to be reimbursed separately.

21.    The three Fiduciary Agreements contained the following dispute resolution clause:

> *"This Agreement is exclusively subject to SWISS LAW.*
> *In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being Zurich"*

22.    **Thus Vistra (Respondent 3) and Marco Stoffel (Claimant 1) are bound to the three Fiduciary Agreement of 5 January 1999 and to the arbitration clause contained therein**

II.3.    **The Trust Agreements (Claimant 1, Respondents 4, 5, 6, 7, 8, 9 and 16)**

23.    By two Trust Agreements of January 20 2000 (Exhibit C-9 and C-10)entered into by and between Orconsult Ltd **(Orconsult Ltd)** (in its capacity as Trustee to Aquarius Trust and Capricorn Trust) (the Principal) on the one hand, and Marco Stoffel in his capacity as fiduciary shareholder and Member of the Board of Directors of **Alsam Holding AG** and its subsidiaries **Colleen Investment AG and Penny Asset AG** , as well as of **Logany Equity AG** and its subsidiaries **Clarick AG und Vierwaldstätter Beteilungen AG** (Exhibit C-10), undertook to act according to the instructions of the Principal. The latter (Orconsult) undertook in particular to " *assume and pay at first request the Trustee's expenses from any legal proceedings with regard to his Activity... ".*

24.    Besides, these Trust Agreement provided that the fiduciary agent was to receive a sum of CHF 30'000.- from Alsam Holding and CHF 20'000.- from each of Collleen Investment AG and Penny Asset AG (Exhibit C-9) and from Vierwalstätter Beteiligungen AG and Clarick AG (Exhibit C-10) as compensation for his functions, additional services and expenses to be reimbursed separately.

# LALIVE
### Attorneys-at-Law

10

25.     It has to be underscored here that the control of all the Swiss Companies mentioned of which Marco Stoffel was a Board Member have been taken up by entities and/or individuals through a Shareholder General Meeting on December 6 2006, where none of the attendees and purported shareholders in fact had possession of the respective companies bearer shares. On December 6 2006, all of the companies' bearer shares were legally in the physical possession of Marco Stoffel. Thus the purported shareholders meeting of December 6 2006 was unauthorised and illegal. Annulment proceedings (art. 706 CO) are pending in this respect.

26.     The Trust Agreements contained the following dispute resolution clause:

> "This Agreement is exclusively subject to SWISS LAW, the place of arbitration being Zurich.
> " In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Zurich Chamber of Commerce, each party appointing one arbitrator and the two arbitrators appointing the Chairman. The parties expressly waive their right to appeal and thus the award is final".

27.     **Thus Orconsult Ltd (Respondent 16), Alsam Holding AG (Respondent 4), Colleen Investment AG (Respondent 9), Penny Asset AG (Respondent 5) Logany Equity AG (Respondent 6) as well as its subsidiaries Clarick AG (Respondent 8) and Vierwaldstaetter Beteiligongen AG (Respondent 7), on the one hand and Marco Stoffel (Claimant 1) are bound to the two Trust Agreements of 20 January 2000 and to the arbitration clauses contained therein.**

**II.4.     The Managing Directors Agreements (Claimant 1, Respondents 4,5,6 and 9)**

28.     By three Managing Director Agreements entered into by and between:

(i)      Angela Blickle on the one hand (*Geschäftsführer*) , and Alsam Holding AG (**Alsam**) on the other hand ( *Geschäftsinhaber*) (Exhibit C-11);

(ii)     Clarissa Blickle on the one hand (*Geschäftsführer* ) and Logany Equity AG (**Logany AG**) on the other hand *Geschäftsinhaber* (Exhibit C-12);

(iii)    Cedric Blickle on the one hand (*Geschäftsführer* ) and Colleen Investment AG (**Colleen AG**) and Penny Asset AG on the other hand (*Geschäftsinhaber*) (Exhibit C-13),

the *Geschäftsinhaber*, represented by Marco Stoffel, assumed any and all responsibility for the companies concerned.

29.     The control of all the companies identified as *Geschäftsinhaber* in the three Managing Directors Agreements have been taken over by entities or individuals through general assembly meetings where the bearer shares, in the possession of Claimant 1, were not represented. In clear words, the control has been taken over in a totally illegal manner. As already mentioned, annulment proceedings are pending in this respect.

# LALIVE
Attorneys-at-Law

30. Claimant I contends and holds that the newly controlled *Geschäftsinhaber* are liable towards him of various discharges in his capacity of directors of these   companies.

31. The three Managing Director Agreements contain the following dispute resolution clause (in free translation):

> *"This agreement is subject to Swiss law. In case of disputes, an arbitration proceeding according to the Rules of the Zurich Chamber of Commerce is to be held. The seat of the arbitral Tribunal is Zurich. A sole arbitrator is appointed; If the Parties do not agree on the person of this sole arbitrator, the President of the Zurich Chamber of Commerce appoints this sole arbitrator. The Parties expressly waive an appeal against the arbitral award"*

32. **Claimant I is therefore clearly bound to resolve disputes arising out from these three Managing Directors Agreements with**

    (i)    **Aksam AG (Respondent 4);**
    (ii)   **Logany AG (Respondent 6)**
    (iii)  **Colleen AG (Respondent 9)**
    (iv)   **Penny AG (Respondent 5)**

    **through arbitration in Zurich.**

## III.     CONTRACTUAL RELATIONSHIPS REGARDING LOANS

### Loans to Marco Stoffel and/or Lauramca (Claimants 1 and 2, Respondent 15)

33. On 28 January 2003, and 16 December 2005 respectively, Orconsult SA granted various loans to Marco and Sue Stoffel as well as to Lauramca Holdings LLC (Exhibit C-14; Exhibit C-15). Theses loans were made and confirmed through Agreements (2) executed by Marco Stoffel on the one hand, and Orconsult SA on the other hand.

34. These agreements contain the following identical dispute resolution clause:

> *"All disputes arising out and in connection with this agreement shall be finally settled according to the conciliation and arbitration rules of the Swiss Chamber of Commerce, Zurich"*

35. **One is bound to conclude therefore that any and all disputes relating to these loans must be resolved through arbitration in Zurich.**

# LALIVE
### Attorneys-at-Law

12

---

IV.    **CONTRACTUAL RELATIONSHIPS REGARDING RELEASES AND WAIVERS**

---

### Discharges (Claimant 1, Respondent 1)

36.    Besides and in connection with Marco Stoffel's roles for Charities and Trusts assets, various discharges have been issued by the Blickle Family (Exhibits C-16, C-17). These declarations, directly connected to Marco Stoffel's obligations vis-à-vis (in particular) **Maytown (Respondent 1)** (Exhibit C-17) contain an arbitration clause as follows:

> " *This agreement shall be governed in all respects by SWISS LAW. In the event of a dispute between the parties in connection with this Agreement the parties will submit to the arbitration proceeding according to the rules of the Swiss Code on International Private Law, the place of arbitration being Zurich. An arbitration tribunal of three arbitrators is to be formed. The rules of the Zurich Chamber of Commerce apply including Mini Trial. The Depositors and the Escrow Agents each appoint one arbitrator. In case one or both sides cannot agree on their on arbitrators, the Chambers President appoints him. The two party arbitrators elect the Chairman of the arbitration tribunal. The parties expressly waive their right to appeal against the arbitration award".*

. . . .

We obviously remain at your disposal for any additional information you might need and remain

Yours sincerely

*[signature]*
Christiane de Senarclens

*[signature]*
Teresa Giovannini

Exhibits

# Exhibit 4

To Fellas Declaration, dated May 5, 2008

SWISS CHAMBERS' ARBITRATION

Chambers of Commerce    Basel        www.swissarbitration.ch
and Industry of         Berne
                        Geneva
                        Lausanne
                        Lugano
                        Zurich

**By Courier Service**

Mrs. Teresa Giovannini
Lalive
Attorneys-at-Law
35 Rue de la Mairie
1207 Geneva

Dr. Philipp Kaenzig
Staiger Schwald & Partner
Attorneys-at-Law
Genferstrasse 24
P.O. Box 2012
8027 Zurich

Dr. Bernhard Lötscher and
Mrs. Aline Wey
CMS von Erlach Henrici
Attorneys-at-Law
Dreikönigstrasse 7
P.O. Box 2991
8022 Zurich

Mr. Peter Schatz
Kellerhals Hess
Attorneys-at-Law
Rämistrasse 5
8024 Zurich

Zurich, 10 March 2008 / es

*Re:          1. Marco Stoffel, 2. Lauramca Holdings LLC versus 1. Maytown Universal SA,
2. Plympton Universal SA, 3. Vistra Trust Company (Jersey) Limited, as trustee for the Alsam,
Colleen and Logany Settlements, 4. Alsam Holding AG, 5. Penny Asset AG, 6. Logany Equity
AG, 7. Vierwaldstaetter Beteiligungen AG, 8. Clarick AG, 9. Colleen Investment AG, 10. Col-
leen Investment LLC, 11. Logany LLC, 12. Albeag Foundation, 13. Albe Associates Limited, 14.
Bluecolt Securities, 15. Orconsult SA and 16. Orconsult Limited, as trustee for Aquarius and
Capricorn trusts (CH)*

*Case No.:   600116-2008*

Dear Madams,
Dear Sirs,

We thank Mrs. Teresa Giovannini for the payment of CHF 6'000.00, representing the Registration
Fee, received on 23 January 2008, as well as for the Notice of Arbitration filed against 1. Maytown
Universal SA, 2. Plympton Universal SA, 3. Vistra Trust Company (Jersey) Limited, 4. Alsam

Holding AG, 5. Penny Asset AG, 6. Logany Equity AG, 7. Vierwaldstaetter Beteiligungen AG, 8. Clarick AG, 9. Colleen Investment AG, 10. Colleen Investment LLC, 11. Logany LLC, 12. Albeag Foundation, 13. Albe Associates Limited, 14. Bluecolt Securities, 15. Orconsult SA and 16. Orconsult Limited on 21 January 2008 and received on 23 January 2008.

On 5 February 2008 the Chamber invited the Claimants to make full particulars of the parties bound by the different agreements to arbitrate and to specify which arbitration agreement Claimants invoke between Claimant 1 and each one of the Respondents 1-16, as well as between Claimant 2 and each one of the Respondents 1-16. The Chamber received Claimants' submission dated 20 February 2008 on 22 February 2008.

The Notice of Arbitration has been filed under the reference "**Case No 600116-2008**", which the parties are kindly invited to mention in all future correspondence.

The Respondents will find herewith sixteen copies of the Notice of Arbitration, together with the pertaining Exhibits, as well as the Claimants' submission dated 20 February 2008 together with the pertaining Exhibits.

For your information, the Chamber of Commerce of Zurich as well as the Chambers of Commerce of Basel, Bern, Geneva, Ticino and Vaud have adopted the new Swiss Rules of International Arbitration ("Swiss Rules"), which entered into force on 1 January 2004. The Swiss Rules unify and harmonize the arbitration rules of the above-mentioned Chambers of Commerce and replace the Chambers' existing Rules in the field of international arbitration.

Pursuant to Article 1, paragraph 3 of the Swiss Rules, these Rules shall apply to all arbitral proceedings in which the Notice of Arbitration is submitted after 1 January 2004.

The Respondents are hereby invited to file their Answers **within thirty days from the receipt of this letter together with the Notice of Arbitration,** in accordance with Article 3, paragraphs 7-10 of the Swiss Rules.

Pursuant to Claimants' submission, it seems that the arbitration clauses provided in the "Donation Agreement" (Claimants' Exhibit C1), the "Escrow Confirmation" (Claimants' Exhibit C2) and the "Adoption of Escrow Confirmation" (Claimants' Exhibit C3) are applicable to all the parties to this arbitration.

The "Donation Agreement" (Claimants' Exhibit C1) provides for Mini-Trial proceedings. On 23 May 2007 Claimant 1 filed a Notice of Mediation under the Swiss Rules of Commercial Mediation against Respondents 3 – 11 since the Mini-Trial proceedings have been replaced by the Swiss Rules of Commercial Mediation. The Mediation process failed.

The three agreements to arbitrate mentioned above do not provide for the number of arbitrators. The Claimants suggest that this case be referred to three arbitrators. The Claimants designated Professor Dr. Dominique Dreyer as arbitrator.

In multy-party proceedings, the arbitral tribunal is constituted in accordance with the parties' agreement (Article 8, paragraph 3 of the Swiss Rules).

In case the parties wish to refer this case to a sole arbitrator, they have the possibility to designate the sole arbitrator **within thirty days from the receipt of this letter**.

In case the parties wish to refer this case to a three-member arbitral tribunal, the Respondents are invited, pursuant to Article 8, paragraph 4 of the Swiss Rules, to designate their arbitrator **within thirty days from the receipt of this letter.**

The parties are advised that, pursuant to Article 8, paragraph 5 of the Swiss Rules, if a party or group of parties fail to designate an arbitrator, the Chamber may appoint all three arbitrators.

The Chamber reminds the parties that all designations of arbitrators are subject to confirmation in accordance with Article 5 of the Swiss Rules.

While maintaining strict neutrality between the parties, I am happy to answer any questions you may have in respect of the Swiss Rules.

Yours sincerely,

Dr. Lukas Briner
Member of the Arbitration Committee

**Enclosures:**
mentioned

# Exhibit 5

To Fellas Declaration, dated May 5, 2008

EFiled: Jan 12 2007  4:05P
Transaction ID 13448652

**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

**IN AND FOR NEW CASTLE COUNTY**

|  |  |
|---|---|
| COLLEEN INVESTMENT AG,<br>COLLEEN INVESTMENT, L.L.C., and<br>LOGANY, L.L.C.,<br><br>        Plaintiffs,<br><br>     v.<br><br>MARCO STOFFEL,<br><br>        Defendant. | C.A. No. _____ |

## VERIFIED COMPLAINT

Plaintiffs, Colleen Investment AG, Colleen Investment, L.L.C., and Logany,

L.L.C. (collectively, "Plaintiffs"), by and through their undersigned counsel, for their complaint

against defendant Marco Stoffel, respectfully allege as follows:

### NATURE OF THE ACTION

1.      This is an action to require defendant Marco Stoffel to turn over the books

and records of Plaintiff Colleen Investment, L.L.C. ("Colleen LLC") and its subsidiary, Logany,

L.L.C. ("Logany") (together, the "Companies").

2.      Plaintiff Colleen Investment AG ("Colleen AG") is the sole managing

member of Colleen LLC.  Colleen LLC is the sole managing member of Logany.

3.      Prior to December 6, 2006, defendant Marco Stoffel ("Stoffel") served as

a director of Colleen AG.  In his capacity as director of Colleen AG, Stoffel participated

materially in the management of the Companies and maintained the books and records of the

Companies.

4.    Owing to various acts of mismanagement and unauthorized conduct, Stoffel was removed from his position as a director of Colleen AG. Consequently, Stoffel no longer has any relationship with the Companies.

5.    Nevertheless, Stoffel continues to hold the books and records of the Companies and refuses to return them to their rightful owners -- Plaintiffs -- in violation of his duties to the Companies.

6.    Accordingly, Plaintiffs seek an order of this Court requiring defendant to immediately turn over to Plaintiffs or their representatives the books and records of the Companies.

### THE PARTIES

7.    Plaintiff Colleen AG is a Swiss company.

8.    Plaintiff Colleen LLC is a limited liability corporation organized under the laws of Delaware. Colleen AG is the sole managing member of Colleen LLC.

9.    Plaintiff Logany is a limited liability corporation organized under the laws of Delaware. Colleen LLC is the sole managing member of Logany.

10.    Upon information and belief, defendant Stoffel is a citizen of the United Kingdom and of Switzerland and a resident of the State of New York, residing at 340 W. 12th Street, New York, New York 10014. Stoffel, in his capacity as director of Colleen AG, caused the formation of Colleen LLC and Logany, and, until December 6, 2006, participated materially in the management of the Companies, including maintaining the books and records of the Companies.

### BACKGROUND

11.    The Companies were created in 1999 to hold a portion of the assets of three Jersey Channel Island trusts (the "Trusts"). The Trusts are the ultimate owners of all of the

membership interests of Colleen LLC and Logany. Colleen AG is the sole member of Colleen LLC, which is the sole member of Logany.

12.    Among other assets, Logany owns a commercial building at One Broadway in New York City. On information and belief, the One Broadway building is the major asset of Logany and accounts for a majority of Colleen LLC's assets.

13.    Defendant Stoffel served as a director of Colleen AG, the manager and sole member of Colleen LLC.

14.    In or around November 2006, it became apparent that Stoffel had engaged in various acts of unauthorized conduct and mismanagement in connection with the Companies.

15.    In particular, Stoffel had: (1) caused the Companies to make unauthorized payments to several entities; (2) taken acts towards selling the building at One Broadway, the most significant asset of the Companies, without proper authorization; and (3) provided incomplete, conflicting and inaccurate reports of the Companies' business affairs to the Trustee and Beneficiaries of the Trusts.

16.    As a result of these actions, the shareholders of Colleen AG took action to remove Stoffel as a director of Colleen AG and to ensure the discontinuance of his participation in the management of the Companies.

17.    Since his removal, Stoffel has continued to hold himself out as having control over One Broadway and has failed to turn over the books and records of the Companies after written request.

18.    Colleen AG, under the direction of its new directors, has now taken over the management of Colleen LLC and Logany. In order to carry out its duties as manager, Colleen AG must have access to the books and records of Colleen LLC and Logany. For

example, Colleen AG is aware that certain capital calls may be due on real estate funds in which

Colleen LLC has an interest, but without the books and records, Colleen AG has no way of

knowing when or if such calls are due, or in what amount. In addition, with respect to Logany,

without the books and records, Colleen AG has no way of knowing if or when payments are due

relating to One Broadway for utilities or other services.

**COUNT I**
**(Breach of Fiduciary Duty)**

19.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-18

above as if fully set forth herein.

20.     As a result of his participation in the management of the Companies,

defendant Stoffel owes a continuing fiduciary duty to the Companies to act with loyalty, due

care, and good faith.

21.     Stoffel has violated his fiduciary duties by, among other things, continuing

to exercise control over the books and records of the Company and refusing to turn them over to

their rightful owner.

22.     Without the books and records, Colleen AG cannot effectively manage the

Companies or their primary asset, the One Broadway building.

23.     As he no longer has any relationship with Colleen AG or the Companies,

Stoffel has no right to keep the books and records.

24.     Plaintiffs have no adequate remedy at law.

**COUNT II**
**(Wrongful Retention of Property)**

25.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-24

above as if fully set forth herein.

26.     As Colleen AG is the sole managing member of Colleen LLC, it has valid

title to, and the right to the immediate possession of, the books and records of Colleen LLC and

its subsidiary, Logany.

27.     Stoffel wrongfully holds the books and records of the Companies and

refuses to turn them over to their rightful owner.

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order as

follows:

(1)     Declaring that defendant Stoffel has no right to possess the books
        and records of the Companies;

(2)     Ordering defendant Stoffel to immediately turn over all of the
        books and records of the Companies to Plaintiffs or their
        representatives;

(3)     Awarding Plaintiffs their costs and expenses, including reasonable
        attorneys' fees in connection with this action; and

(4)     Granting such other and further relief as the Court deems just and
        proper.

POTTER ANDERSON & CORROON LLP

By: _____

OF COUNSEL:                              Michael D. Goldman (#268)
                                         Stephen C. Norman (#2686)
Abbe David Lowell                        Melony R. Anderson (#4377)
Scott S. Balber                          Scott B. Czerwonka (#4844)
Jonathan Cross                           Hercules Plaza, 6th Floor
Robert Grossman                          1313 N. Market Street
CHADBOURNE & PARKE LLP                   P.O. Box 951
30 Rockefeller Plaza                     Wilmington, Delaware  19899-0951
New York, New York 10112                 (302) 984-6000

Dated: January 12, 2007                  *Attorneys for Plaintiffs*
769179v2

**VERIFICATION**

ISLAND
~~STATE~~ OF _JERSEY_     )
                          ) ss:
PARISH
~~COUNTY~~ OF _ST HELIER_ )

---

    I, Rodney Hodges, am the _Director_ of Colleen Investment AG. I state under oath that I have read the foregoing Verified Complaint and that, to the best of my knowledge, information and belief, the statements made therein are true and correct.

        SUBSCRIBED TO AND SWORN before me this _12th_ day of January, 2007

Notary Public
~~My Commission Expires:~~



**My Commission endures for as long as** I shall practise.

        PAUL JAMES MATTHAMS
          NOTARY PUBLIC
           47 Esplanade
            St. Helier
          Jersey JE1 0BD

**APOSTILLE**

(Hague Convention of 5 October 1961/Convention de La Haye du 5 octobre 1961)

**BAILIWICK OF JERSEY**

1.  Country: Jersey, Channel Islands
    Pays: Jersey, Iles de la Manche.

    This public document/ Le présent acte public

2.  Has been signed by       **P J MATTHAMS**
    A été signé par .............................................................

3.  Acting in the capacity of   **NOTARY PUBLIC**
    Agissant en qualité de .........................................................

4.  Bears the seal/stamp of    **THE SAID NOTARY PUBLIC**
    Est revêtu du sceau/timbre de ...................................................
    Certified/Attesté

5.  At St. Helier/à St. Helier    6 the/le ..................... **1 2 JAN 2007** .........

7.  By Her Britannic Majesty's Lieutenant Governor of Jersey/
    Par le Lieutenant Gouverneur de Sa Majesté Britannique à Jersey

8.  Number/sous No. **JYG   22563**

9.  Stamp:                    10 Signature:        ┌──────────────────┐
    Timbre:                                        │ A.M FITZGERALD   │
                                                   └──────────────────┘
    
                              ..............................
                              For the Lieutenant Governor of Jersey/
                              Pour le Lieutenant Gouverneur de Jersey

If this document is to be used in a country which is not party to the Hague Convention of 5 October
    1961, it should be sent to the consular section of the mission representing that country.

# Exhibit 6

To Fellas Declaration, dated May 5, 2008

EFiled: Jan 11 2008 6:08PM EST
Transaction ID 18012326
Case No. 2672-VCS

IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

COLLEEN INVESTMENT AG,
COLLEEN INVESTMENT, L.L.C., and
LOGANY, L.L.C.,

                              Plaintiffs,

                 v.

MARCO STOFFEL,

                              Defendant.

C.A. No. 2672-VCS

## VERIFIED AMENDED COMPLAINT

Plaintiffs Colleen Investment AG ("Colleen AG"), Colleen Investment, L.L.C. ("Colleen"), and Logany, L.L.C. ("Logany") (collectively, "Plaintiffs"), by and through their undersigned counsel, for their Verified Amended Complaint[1] against defendant Marco Stoffel ("Stoffel"), respectfully allege as follows:

## NATURE OF THE ACTION

1.      This action is brought pursuant to Section 18-110 of the Delaware Limited Liability Company Act for a judgment declaring that Rodney Hodges and Tanya Scott-Tomlin are the rightful managers of Plaintiffs Colleen and Logany (together, the "Delaware LLCs"). On December 7, 2006, Mr. Hodges and Ms. Scott-Tomlin were appointed President and Vice President, respectively, of each of the Delaware LLCs by Colleen AG, the Swiss parent entity of the Delaware LLCs. Refusing to recognize the validity of those appointments, Stoffel has taken actions to improperly thwart the exercise of Mr. Hodges' and Ms. Scott-Tomlin's rightful

---

[1]      A black-lined copy of the Verified Amended Complaint, showing all changes to the original Complaint, is attached hereto as Exhibit A.

management of and control over the Delaware LLCs. Among other things, Stoffel – either personally or through third parties – has wrongfully held and failed to return certain books and records belonging to Plaintiffs, has acted to impede the management of Plaintiffs and their assets by Colleen AG, Mr. Hodges and Ms. Scott-Tomlin and, in some cases, has held himself or his agents out to be in control of the Delaware LLCs and their assets. The effect of Stoffel's improper assertions has been to immobilize Plaintiffs because third parties refuse to take instructions from Plaintiffs' managers without a court order. Stoffel's recent behavior gives Plaintiffs no basis to be confident that this interference will cease absent judicial intervention. Accordingly, declaratory relief is necessary pursuant to 6 Del. C. § 18-110. Additionally, Plaintiffs seek an order requiring defendant Stoffel, and any third parties acting under his direction or on his behalf, to immediately turn over to Plaintiffs or their representatives any and all remaining books and records belonging to the Delaware LLCs in his or such third parties' possession or control, and to cease any and all attempts to interfere with the management of Plaintiffs by Mr. Hodges and Ms. Scott-Tomlin.

## PARTIES

2.      Plaintiff Colleen AG is a Swiss company and the sole managing member of Plaintiff Colleen.

3.      Plaintiff Colleen is a limited liability corporation organized under the laws of Delaware and the sole managing member of Plaintiff Logany.

4.      Plaintiff Logany is a limited liability corporation organized under the laws of Delaware.

5.      Upon information and belief, defendant Marco Stoffel is a citizen of the United Kingdom and of Switzerland and a resident of the State of New York, residing at 340 W. 12th Street, New York, New York 10014. Stoffel, in his capacity as a former director of Colleen AG,

2

caused the formation of the Delaware LLCs and, until December 6, 2006, participated materially in their management and maintained their books and records.

## BACKGROUND

6.    The Delaware LLCs were created in 1999 to hold a portion of the assets of three Jersey Channel Island trusts (the "Trusts"). Vistra Trust Company (Jersey) Limited ("Vistra"), formerly Chiltern Trust Company (Jersey) Limited, is and always has been the trustee of the Trusts and, in that capacity, has owned the shares of Colleen AG, which was created to hold and manage a portion of the Trusts' assets, since its inception.

7.    The Trusts are the indirect owners of all of the membership interests of Colleen and Logany. As stated above, Colleen AG is the sole member of Colleen, which is the sole member of Logany.

8.    Among other assets, Logany owns a commercial building at One Broadway in New York City. The One Broadway building is the major asset of Logany and accounts for a majority of Colleen's assets.

9.    Colleen also maintains various limited partnership investments as well as banking and securities accounts with several entities. Although representing only a minority of Colleen's assets, those investments and accounts are substantial.

### Stoffel's Removal from Office

10.    In or around November 2006, it became apparent that Stoffel, who then served as a director of Colleen AG, had engaged in various acts of unauthorized conduct and mismanagement in connection with the Delaware LLCs.

11.    In particular, Stoffel had: (1) caused the Delaware LLCs to make unauthorized payments to several entities; (2) taken steps towards selling the building at One Broadway, the most significant asset of the Delaware LLCs, without proper authorization; and (3) provided

3

incomplete, conflicting and inaccurate reports of the Delaware LLCs' business affairs to the Trustee, Vistra, and the beneficiaries of the Trusts.

12.    As a result of Stoffel's actions, on December 6, 2006, the shareholder of Colleen AG took action to remove Stoffel as a director of Colleen AG and to ensure the discontinuance of his participation in the management of the Delaware LLCs. On that same day, new directors were elected to the Colleen AG board and, on the next day, December 7, 2006, Mr. Hodges and Ms. Scott-Tomlin were appointed officers of the Delaware LLCs.

13.    Nevertheless, after his removal and despite those events, Stoffel continued to hold himself out as having control over One Broadway and other assets of the Delaware LLCs. Among other things, Stoffel has failed to turn over the books and records of the Delaware LLCs after written request. He has also acted to prevent Mr. Hodges or Ms. Scott-Tomlin from carrying out their duties as officers of the Delaware LLCs by writing to banks and investment funds, purporting to issue instructions on behalf of the Delaware LLCs and urging that Mr. Hodges and Ms. Scott-Tomlin not be recognized as the managers of the Delaware LLCs. Stoffel's improper actions created a cloud over the Delaware LLCs' management which persists to this day and which Stoffel has refused to dispel.

14.    On January 16, 2007, Stoffel purported to hold a shareholders meeting at which he "elected" Mr. Urs Christen ("Christen") of Christen & Zobrist Treuhand AG as sole director of Colleen AG. Upon information and belief, Stoffel has since sought to employ Christen in efforts to thwart Colleen AG's rightful control over the Delaware LLCs and to prevent Plaintiffs' rightful possession or even review of the companies' books and records. For instance, on January 26, 2007, Christen wrote Plaintiffs' Delaware counsel in this action to "instruct" counsel "to immediately discontinue this action" against Stoffel, which Christen "d[id] not consider is in

4

the best interest of [Colleen AG] or its subsidiaries." Indeed, until recently, Christen's wrongful

possession and interference with Plaintiffs' review of the Delaware LLCs' books and records has

prevented Mr. Hodges' and Ms. Scott-Tomlin's rightful management of the Delaware LLCs.

Upon information and belief, Christen was dominated and controlled by Stoffel in these actions

as a purported director of Colleen AG and in actions directed toward preventing the proper

management of the Delaware LLCs.

15.     Further confirming the lack of any genuine basis for dispute over the identity of

the LLCs' management, Stoffel has admitted under oath that he has been removed from his prior

positions in relation to the Trusts and the companies which they own, and has intermittently

conceded in emails to third parties that he has been "replaced" as representative of Colleen.

16.     Nevertheless, Stoffel has thus far refused to concede in his communications with

third parties that Mr. Hodges and Ms. Scott-Tomlin are the managers of the Delaware LLCs.

Stoffel's position is indefensible because he has admitted his removal and no other persons have

claimed authority to manage the LLCs.

Plaintiffs' Attempts to Regain Control Over the<br>Delaware LLCs After Stoffel's Removal from Office

17.     The new management of Colleen AG has appointed Mr. Hodges and Ms. Scott-

Tomlin as officers of Colleen and Logany. In order to carry out their duties as managers and

officers, Colleen AG, Mr. Hodges, and Ms. Scott-Tomlin must have access to the books and

records of the Delaware LLCs. For example, Colleen AG and the Delaware LLC officers have

been aware that certain capital calls may be due on real estate funds in which Colleen has an

interest but, without the books and records, they had no way of knowing when or if such calls are

due, or in what amount. In addition, with respect to Logany, without the books and records, they

5

had no way of knowing if or when payments are due relating to One Broadway for utilities or other services.

18.     Because of Stoffel's wrongful and continued interference, representatives at the following firms, all of which hold or manage assets of the Delaware LLCs, have refused to release funds or take actions relating to Colleen or Logany assets without either joint instruction from Plaintiffs' representatives and defendant Stoffel or a court order resolving any disputes regarding management of the Delaware LLCs:  Deutsche Bank Securities Inc.; Deutsche Bank Trust Company Americas; Transwestern Investment Company, L.L.C.; and Sentinel Realty Partners IV.

19.     On February 14, 2007, Deutsche Bank Securities Inc. and Deutsche Bank Trust Company Americas filed an action in the Supreme Court of the State of New York captioned *Deutsche Bank Securities Inc., et al.* v. *Colleen Investment L.L.C., et al.*, Index No. 600473/07, seeking instruction from the court with respect to actions concerning accounts held on behalf of Colleen.  Among other things, the Deutsche Bank plaintiffs (collectively referred to below as "DB") have alleged that:

- "[B]y e-mail dated December 26, 2006, Stoffel asked that DB 'not follow any instructions or give any information to the wrongfully alleged new owners of Colleen.  Please make sure that Colleen's banking continues without interruption at least insofar as it concerns usual transactions.'" (*Deutsche Bank Securities Inc., et al.* v. *Colleen Investment L.L.C., et al.*, No. 600473/07 (Sup. Ct. N.Y. Co.), Complaint at ¶ 11).

- "In an e-mail dated January 5, 2007, Stoffel further advised DB that 'if payments in the normal course of business are not executed by your bank, your bank will make itself subject to possible damages claims.'" (*Id.* at ¶ 12).

- In an e-mail dated February 1, 2007 to DB, "Stoffel inquired whether the accounts of the [Colleen] LLC were frozen and stated that no court order allows or orders DB to freeze the accounts of [Colleen] LLC." (*Id.* at ¶ 15).

- "On or about February 1, 2007, Stoffel wrote a check in the amount of $5,000.00, which was presented to DB for payment on February 8, 2007...." (*Id.* at ¶ 17).

6

Deutsche Bank Securities Inc. and Deutsche Bank Trust Company Americas continue to refuse to take action with regard to Colleen's accounts until any and all claims to control over those accounts are resolved. Colleen has moved for summary judgment as to the question of Stoffel's control over Colleen, and Stoffel has opposed that motion, which is currently awaiting decision.

20.    In order to faithfully fulfill their duties as managers and officers of the Delaware LLCs and to properly manage those entities' assets, Colleen AG, Mr. Hodges and Ms. Scott-Tomlin must have access to the Delaware LLCs' investments, funds and accounts. Their attempts to access and control those investments, funds, and accounts have been stymied by Stoffel. Because of the inability to access those assets, Plaintiffs have suffered and continue to suffer substantial harm.

21.    On December 21, 2007, Vistra, along with several other parties, including Colleen AG and the Delaware LLCs, brought an action (the "New York Action") captioned *Vistra Trust Company (Jersey) Limited, et al.* v. *Marco Stoffel et al.*, No. 116985/07 (Sup. Ct. N.Y. Co.), against Stoffel and others in the Supreme Court of New York, New York County alleging, *inter alia*, fraud, conversion, breach of fiduciary duty, and other tortious conduct by Stoffel and his associates, arising in part from Stoffel's involvement in the affairs of Colleen AG and the Delaware LLCs. On the same day, Justice York of the Supreme Court of New York granted a temporary restraining order barring Stoffel and others associated with him from transferring or dissipating millions of dollars worth of art, classic luxury automobiles, real estate, and financial assets which Plaintiffs in the New York Action believe constitute the fruits of Stoffel's misconduct. A copy of the complaint in the New York Action is attached hereto as Exhibit B.

7

## COUNT I
### (Declaratory Judgment)

22.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-21 above as if fully set forth herein.

23.     On December 6, 2006, by vote of the shareholder of Colleen AG, defendant Stoffel and other then-current directors of Colleen AG were removed from office and replaced with Colleen AG's current board.  Defendant Stoffel's participation in the management of Colleen AG was then terminated.

24.     On December 7, 2006, Rodney Hodges and Tanya Scott-Tomlin were appointed President and Vice President, respectively, of both Colleen and Logany, by the Colleen AG board of directors.   Defendant Stoffel's participation in the management of the LLCs ended as of that date.  Nevertheless, Defendant Stoffel has refused to recognize the validity of such action and has sought to cast continuing doubts in dealings with third parties over Mr. Hodges' and Ms. Scott-Tomlin's control over the Delaware LLCs and their assets.

25.     As a result of Stoffel's actions, several entities have refused to accept instructions from Mr. Hodges and Ms. Scott-Tomlin on behalf of the Delaware LLCs

26.     Thus, a dispute exists concerning who rightfully manages Colleen and Logany.

27.     Pursuant to 6 Del. C. § 18-110, Plaintiffs request that this Court enter an Order declaring Rodney Hodges and Tanya Scott-Tomlin the rightful managers of Colleen and Logany.

28.     Plaintiffs have no adequate remedy at law.

## COUNT II
### (Breach of Fiduciary Duty)

29.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-28 above as if fully set forth herein.

8

30.    As a result of his participation in the management of the Delaware LLCs, Defendant Stoffel owes a continuing fiduciary duty to the Delaware LLCs to act with loyalty, due care, and good faith.

31.    Stoffel has violated his fiduciary duties by, among other things, continuing to exercise control over the books and records of the Delaware LLCs and refusing to turn them over to their rightful owner. While certain documents believed to have been shipped to Mr. Christen by Stoffel after this litigation was instituted have now been turned over to Plaintiffs, there is no assurance that Stoffel has turned over all documents of Plantiffs even now.  Furthermore, Stoffel's actions have frustrated Plaintiffs' ability to access a full set of their own records for nearly a year, causing substantial injury to Plaintiffs.

32.    Without the companies' books and records, Colleen AG, Mr. Hodges, and Ms. Scott-Tomlin cannot effectively manage the Delaware LLCs or their primary asset, the One Broadway building.

33.    As stated above, Stoffel has further violated his fiduciary duties by taking other steps to interfere with or prevent the proper management of the Delaware LLCs and their assets by Mr. Hodges and Ms. Scott-Tomlin.

34.    As he no longer has any relationship with Colleen AG or the Delaware LLCs, Stoffel has no right to keep the Delaware LLCs' books and records or to inhibit the rightful managers from exercising control over and fulfilling their duties as managers of the Delaware LLCs, whether by impeding their access to their books and records or their assets or otherwise. Stoffel's interference with the LLCs' management and wrongful retention of their books and records have injured Plaintiffs.

35.    Plaintiffs have no adequate remedy at law.

## COUNT III
### (Wrongful Retention of Property)

36.     Plaintiffs repeat and reallege the allegations contained in Paragraphs 1-35 above as if fully set forth herein.

37.     As Colleen AG is the sole managing member of Colleen, it has valid title to, and the right to the immediate possession of, the books and records of Colleen and its subsidiary, Logany.

38.     Stoffel has wrongfully held the books and records of the Delaware LLCs and has refused to turn them over to their rightful owner.

WHEREFORE, Plaintiffs respectfully request that this Court enter an Order as follows:

(1)     Declaring that Rodney Hodges and Tanya Scott-Tomlin are the rightful managers of Colleen and Logany and that Defendant Stoffel has no right to manage or to assert authority over the Delaware LLCs and their assets;

(2)     Declaring that Defendant Stoffel has no right to possess the books and records of the Delaware LLCs;

(3)     Ordering Defendant Stoffel to immediately turn over all of the books and records of the Delaware LLCs to Plaintiffs or their representatives, including any and all books and records held by third parties under his direction or on his behalf;

(4)     Ordering Defendant Stoffel and those acting in concert with him to cease and desist in all efforts to interfere, whether directly or indirectly, with the management of the Delaware LLCs by Mr. Hodges and Ms. Scott-Tomlin;

(5)     Awarding Plaintiffs their costs and expenses, including reasonable attorneys' fees in connection with this action; and

(6)     Granting such other and further relief as the Court deems just and proper.

POTTER ANDERSON & CORROON LLP

By: _____

OF COUNSEL:

Michael D. Goldman (#268)
Stephen C. Norman (#2686)
Berton W. Ashman, Jr. (#4681)
Hercules Plaza, 6th Floor
1313 N. Market Street
P.O. Box 951
Wilmington, Delaware  19899-0951
(302) 984-6000

Scott S. Balber
Jonathan Cross
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, New York 10112

Dated:  January 11, 2008

835473

*Attorneys for Plaintiffs*

11

## VERIFICATION

ISLAND OF JERSEY               )
                               ) ss:
PARISH OF ST. HELIER           )

I, Rodney Hodges, am a Director of Colleen Investment AG. I state under oath that I have read the foregoing Verified Amended Complaint and that, to the best of my knowledge, information and belief, the statements made therein are true and correct.

SUBSCRIBED TO AND SWORN before me this 11 day of January, 2008.

Notary Public:

**SHAUN FREDERICK RYAN**
**Notary Public**
**St. Helier**
**Jersey**

Protocol no 01/08

12



# Exhibit 7

To Fellas Declaration, dated May 5, 2008

EFiled: Feb 13 2008 6:05PM EST
Transaction ID 18595029
Case No. 2672-VCS

I N THE COURT OF CHANCERY OF THE STATE OF DELAWARE

|  |  |  |
|---|---|---|
| COLLEEN INVESTMENT AG, COLLEEN INVESTMENT L.L.C., and LOGANY, L.L.C., | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) ) | Civil Action No. 2672-VCS |
| MARCO STOFFEL, | ) ) | |
| Defendant. | ) ) | |

**ANSWER AND DEFENSES TO PLAINTIFFS'
VERIFIED AMENDED COMPLAINT**

Defendant Dr. Marco Stoffel ("Dr. Stoffel" or the "Defendant"), by and through his undersigned attorneys, as set forth below, responds to the Verified Amended Complaint ("Amended Complaint") of Colleen AG,[1] Colleen, and Logany (the "Plaintiffs") as follows.[2]

1)  To the extent that allegations in paragraph 1 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required.  Dr. Stoffel admits that the Amended Complaint purports to seek an order pursuant to 6 *Del. C.* § 18-110 in addition to other relief stated in paragraph 1 of the Amended Complaint.  Dr. Stoffel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 1 of the Amended Complaint concerning the knowledge or actions of the Plaintiffs, and denies them on that basis.  Dr. Stoffel denies the remaining allegations contained in paragraph 1 of the Amended Complaint.

---

[1] Unless otherwise defined herein, all defined terms shall have the same meaning ascribed to them in the Amended Complaint.

2)  Dr. Stoffel admits the allegations contained in Paragraph 2 of the Amended Complaint.

3)  Dr. Stoffel admits the allegations contained in Paragraph 3 of the Amended Complaint.

4)  Dr. Stoffel admits the allegations contained in Paragraph 4 of the Amended Complaint.

5)  Dr. Stoffel admits that (i) he is a citizen of the United Kingdom and of Switzerland, (ii) he maintains residences in the State of New York at 340 West 12th Street, New York, New York and in Switzerland, (iii) he has at certain times served as a director of Colleen AG, (iv) he participated in the formation of the Delaware LLCs and, (v) as an officer, he has at certain times participated in the management of the Delaware LLCs and from time to time maintained certain of their books and records.    Dr. Stoffel denies the remaining allegations contained in Paragraph 5 of the Amended Complaint.

6)  Dr. Stoffel admits that (i) Colleen was formed in May of 1999 and Logany was formed in June of 2000, (ii) Vistra, as the trustee of the Trusts, did at certain times own the stock of Colleen AG, and (iii) Colleen AG was created to hold certain assets beneficially owned by the Trusts. Dr. Stoffel denies the remaining allegations contained in Paragraph 6 of the Amended Complaint.

7)  Dr. Stoffel admits that Colleen AG is the sole member of Colleen, which is the sole member of Logany. Dr. Stoffel denies the remaining allegations contained in Paragraph 7 of the Amended Complaint.

8)  Dr. Stoffel admits the allegations contained in Paragraph 8 of the Amended Complaint.

9)  To the extent that allegations in paragraph 9 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required.    Dr. Stoffel admits that Colleen maintains certain limited partnership

---

² Dr. Stoffel denies that headings contained in the Amended Complaint constitute allegations of fact. To the extent that they are considered as such, they are denied.

investments as well as banking and securities accounts, and that such investments and banking and securities accounts represent a minority of Colleen's assets. Dr. Stoffel denies the remaining allegations contained in paragraph 9 of the Amended Complaint.

10) Dr. Stoffel admits that he served as a director of Colleen AG in November of 2006. Dr. Stoffel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 10 of the Amended Complaint concerning what was or was not apparent to unidentified third parties. To the extent further response is necessary, Dr. Stoffel denies the allegations contained in Paragraph 10 of the Amended Complaint.

11) Dr. Stoffel denies the allegations contained in Paragraph 11 of the Amended Complaint.

12) Upon information and belief, Dr. Stoffel admits that (i) Vistra, which incorrectly professed to have been the holder of the bearer shares of Colleen AG, purported to take action on December 6, 2006 to remove Stoffel as a director of Colleen AG and as a n officer of the Delaware LLCs, and to appoint new directors to the Colleen AG board, and (ii) the new purported directors of Colleen AG took action purporting to elect new officers to the Delaware LLCs. Dr. Stoffel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 12 of the Amended Complaint concerning Vistra's reasons for purporting to take such actions. Dr. Stoffel denies the remaining allegations contained in Paragraph 12 of the Amended Complaint.

13) Dr. Stoffel admits that he does not recognize the validity of the purported shareholder's meeting of December 6, 2006 nor the subsequent appointment of Mr. Hodges and Ms. Scott-Tomlin as officers of the Delaware LLCs, and, in light of the fact that those appointments are being contested in a Swiss court of law, that he has at certain times informed third parties in writing about the questionable validity of those appointments. Dr. Stoffel denies the remaining allegations contained in Paragraph 13 of the Amended

3

Complaint.

14) Dr. Stoffel admits that, as a nominee holder of all bearer shares of Colleen AG in favor of his principal Orconsult Limited as trustee for the Aquarius and Capricorn Trusts, he convened upon instructions from and after a meeting with G. Banholzer and G. Philippe, officers of Orconsult Limited, a stockholder's meeting of Colleen AG on January 16, 2007 at which Urs Christen of Christen & Zobrist Treuhand AG was elected the sole director of Colleen AG, and, upon information and belief, that Urs Christen wrote a letter to Plaintiffs' Delaware counsel on or about January 26, 2007 which instructed them to discontinue action against Dr. Stoffel, which Christen did not consider is in the best interest of Colleen AG or its subsidiaries. Dr. Stoffel respectfully refers the Court to the January 26, 2007 letter for a complete and accurate description of its contents. Dr. Stoffel denies the remaining allegations contained in paragraph 14 of the Amended Complaint.

15) Dr. Stoffel admits that (i) he has stated under oath and in communications with third parties that he was removed from his positions in relation to the Trusts, but denies that the Trusts own any companies, and (ii) he has from time to time sent emails to third parties regarding his status as a representative of Colleen, and respectfully refers the Court to those emails for a complete and accurate description of their contents. Dr. Stoffel denies the remaining allegations contained in paragraph 15 of the Amended Complaint.

16) To the extent that allegations in paragraph 16 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. Dr. Stoffel admits that he does not recognize Mr. Hodges and Ms. Scott-Tomlin as the proper managers of the Delaware LLCs in light of the pending Swiss litigation. Dr.

4

Stoffel denies the remaining allegations contained in paragraph 16 of the Amended Complaint.

17) Dr. Stoffel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 17 of the Amended Complaint concerning the knowledge of Mr. Hodges and Ms. Scott-Tomlin, and denies them on that basis. To the extent that allegations in paragraph 32 of the Amended Complaint are based on speculation or state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. By way of further response, Dr. Stoffel avers that all books and records that Mr. Hodges or Ms. Scott-Tomlin may need to manage the Delaware LLCs are governed by a stipulation and order dated February 28, 2007 (signed by the Court on March 1, 2007) which stipulates that Dr. Stoffel must provide to counsel for Plaintiffs copies of all books and records in his possession; in addition, pursuant to the same order, third parties holding books and records of the Delaware LLCs were requested by counsel to Dr. Stoffel and the Plaintiffs to grant counsel to Plaintiffs access to any such books and records. Dr. Stoffel denies the remaining allegations contained in paragraph 17 of the Amended Complaint.

18) Dr. Stoffel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 18 of the Amended Complaint concerning the knowledge of Deutsche Bank Securities Inc., Deutsche Bank Trust Company Americas, Transwestern Investment Company, L.L.C., and Sentinel Realty Partners IV, and the reasons for those entities taking any particular actions, and denies them on that basis. Dr. Stoffel admits that certain entities dealing with the Delaware LLCs have on occasion requested joint instructions from the parties pending resolution of the disputes concerning control over the assets of the Delaware LLCs. By way of further response, Dr. Stoffel

5

avers that at all times, he has remained willing to provide joint instructions on appropriate terms to relevant third parties. Dr. Stoffel denies the remaining allegations contained in Paragraph 18 of the Amended Complaint.

19) Dr. Stoffel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 19 of the Amended Complaint concerning the knowledge of Deutsche Bank Securities Inc. and Deutsche Bank Trust Company and the reasons for those banks taking any particular actions, and denies them on that basis. Dr. Stoffel admits that on February 14, 2007, Deutsche Bank Securities Inc. and Deutsche Bank Trust Company Americas filed an action in the Supreme Court of the State of New York captioned *Deutsche Bank Securities Inc., et al v. Colleen Investment L.L.C., et al.*, Index No. 600473/07, and respectfully refers the Court to the pleadings in that action for a complete and accurate description of their contents and the relief sought therein. Dr. Stoffel further admits that (i) Colleen has moved for summary judgment in *Deutsche Bank Securities Inc., et al v. Colleen Investment L.L.C., et al.* as to the question of the proper authority and control over the funds and assets of certain accounts of Colleen, (ii) Dr. Stoffel has opposed that motion and the Borderline Personality Disorder Research Foundation and the Third Millennium Foundation (the "Foundations"), of which Dr. Stoffel is director and president, have moved to intervene in support of Dr. Stoffel's authority to direct payment from the accounts of Colleen at Deutsche Bank to the Foundations in fulfillment of certain escrow obligations, and (iii) the parties to that action are currently awaiting decision on the pending motions. Dr. Stoffel denies the remaining allegations contained in paragraph 19 of the Amended Complaint.

20) Dr. Stoffel incorporates by reference his answer to paragraph 17 of the Amended Complaint. Dr. Stoffel denies the remaining allegations contained in Paragraph 20 of the

6

Amended Complaint.

21) Dr. Stoffel admits that (i) on December 21, 2007, Vistra, Colleen AG and the Delaware LLCs, brought an action in the Supreme Court of the State of New York captioned *Vistra Trust Company (Jersey) Limited, et al. v. Marco Stoffel et al.*, No. 116985107 (Sup. Ct. N.Y. Co.), (ii) the Supreme Court of the State of New York entered a temporary restraining order on the same day, and (iii) a copy of the complaint in the New York Action is attached to the Amended Complaint as Exhibit B. Dr. Stoffel respectfully refers the Court to the pleadings in the New York Action for a complete and accurate description of their contents and the relief sought therein, and to the above-referenced temporary restraining order for a complete and accurate description of its contents. Dr. Stoffel denies the remaining allegations contained in paragraph 21 of the Amended Complaint.

22) Dr. Stoffel incorporates by reference, as if fully set forth herein, his responses to paragraphs 1 through 21 of the Amended Complaint.

23) Dr. Stoffel denies the allegations contained in Paragraph 23 of the Amended Complaint.

24) Dr. Stoffel admits that he does not recognize the validity of the purported shareholders meeting of Colleen AG on December 6, 2006 nor the subsequent appointment of Mr. Hodges and Ms. Scott-Tomlin as officers of the Delaware LLCs, and that he has informed third parties about the questionable validity of those appointments and the fact that those appointments are being contested in a Swiss court of law. Dr. Stoffel denies the remaining allegations contained in paragraph 24 of the Amended Complaint.

25) Dr. Stoffel lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in paragraph 25 of the Amended Complaint concerning the actions of unspecified third parties, and denies them on that basis. Dr. Stoffel denies the

RLF1-3253570-1

remaining allegations contained in paragraph 25 of the Amended Complaint.

26) To the extent that allegations in paragraph 26 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. Dr. Stoffel admits that he does not believe that Rodney Hodges and Tanya Scott-Tomlin were properly appointed as managers of Colleen and Logany, and that there is a pending Swiss litigation regarding ownership and control of Colleen AG, the sole member of Colleen, but denies that he is a proper party with whom to litigate whether Rodney Hodges and Tanya Scott-Tomlin were properly appointed because he is not a current member, manager or officer of the Delaware LLCs. Dr. Stoffel denies the remaining allegations contained in paragraph 26 of the Amended Complaint.

27) To the extent that allegations in paragraph 27 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. Dr. Stoffel admits that the Amended Complaint, *inter alia*, purports to seek an order pursuant to 6 *Del. C.* § 18-110 declaring Rodney Hodges and Tanya Scott-Tomlin the rightful managers of Colleen and Logany. By way of further response, Dr. Stoffel avers that the Amended Complaint also seeks other relief that is overbroad and outside the scope of a summary proceeding under 6 *Del. C.* § 18-110. Dr. Stoffel denies the remaining allegations contained in paragraph 27 of the Amended Complaint.

28) To the extent that allegations in paragraph 28 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. Dr. Stoffel denies the remaining allegations contained in paragraph 28 of the Amended Complaint.

29) Dr. Stoffel incorporates by reference, as if fully set forth herein, his responses to paragraphs 1 through 28 of the Amended Complaint.

8

30) The allegations contained in paragraph 30 of the Amended Complaint state legal conclusions, and therefore, no responsive pleading is required. To the extent paragraph 30 of the Amended Complaint contains allegations of fact, Dr. Stoffel denies such allegations.

31) To the extent that allegations in paragraph 31 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. Dr. Stoffel admits that all documents shipped to Mr. Christen have been provided to the Plaintiffs. Dr. Stoffel denies the remaining allegations contained in paragraph 31 of the Amended Complaint.

32) Dr. Stoffel incorporates by reference his answer to paragraph 17 of the Amended Complaint. Dr. Stoffel denies the remaining allegations contained in paragraph 32 of the Amended Complaint.

33) To the extent that allegations in paragraph 33 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. Dr. Stoffel denies the remaining allegations contained in paragraph 33 of the Amended Complaint.

34) To the extent that allegations in paragraph 34 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. Dr. Stoffel denies the remaining allegations contained in paragraph 34 of the Amended Complaint.

35) To the extent that allegations in paragraph 35 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. Dr. Stoffel denies the remaining allegations contained in paragraph 35 of the Amended Complaint.

9

36) Dr. Stoffel incorporates by reference, as if fully set forth herein, his responses to paragraphs 1 through 35 of the Amended Complaint.

37) Dr. Stoffel admits that Colleen AG, as nominee for the Aquarius and Capricorn Trusts as its principal, is the sole managing member of Colleen. To the extent that allegations in paragraph 37 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. Dr. Stoffel denies the remaining allegations contained in paragraph 37 of the Amended Complaint.

38) To the extent that allegations in paragraph 38 of the Amended Complaint state a legal conclusion or argument, Dr. Stoffel declines to answer as no responsive pleading is required. Dr. Stoffel denies the remaining allegations contained in paragraph 38 of the Amended Complaint.

### DEFENSES

1) Dr. Stoffel raises and reserves all applicable equitable defenses, including, but not limited to, the doctrines of laches, waiver, acquiescence, unclean hands, and estoppel.

2) Because Dr. Stoffel does not contend to be a current member, manager or officer of Logany or Colleen, he is not a proper defendant in this action.

3) The causes of action alleged in the Amended Complaint do not present an actual case or controversy.

4) The Amended Complaint fails to state a claim upon which relief may be granted.

5) The Amended Complaint, insofar as it seeks the books and records of the Delaware LLCs, is moot.

6) Dr. Stoffel is not a proper defendant in this action because his legal interests are not adverse to those of the Plaintiffs with respect to some or all of the relief sought in the Amended Complaint.

10

7)    The relief sought in the Amended Complaint is overbroad and inconsistent with that which may be pursued under 6 *Del. C.* § 18-110.

8)    This Court lacks subject matter jurisdiction to hear certain claims made in the Amended Complaint because they are subject to an arbitration clause in Dr. Stoffel's employment agreement.

9)    In light of the pending Swiss litigation regarding ownership and control of Colleen AG, to the extent the Plaintiffs purport to act for and on behalf of Colleen AG (and the Delaware LLCs based on their purported control over Colleen AG), their standing and authority to do so is subject to that litigation.

10)    This Court lacks personal jurisdiction over Dr. Stoffel under 6 *Del. C.* § 18-110.

## PRAYER FOR RELIEF

WHEREFORE, Dr. Stoffel prays for relief as follows:

1.    That Plaintiffs take nothing by reason of the Amended Complaint, that the Amended Complaint be dismissed with prejudice in its entirety;

2.    That Dr. Stoffel be awarded the costs of this suit, including his disbursements and reasonable attorneys' fees and expert fees; and

3.    That Dr. Stoffel be awarded such other and further relief as the Court deems just and proper.

OF COUNSEL:
Thomas M. Mueller
MORRISON & FOERSTER, LLP
1290 Avenue of the Americas
New York, NY 10104
(212) 468-8000

Dated: February 13, 2008

Daniel A. Dreisbach (#2583)
Harry Tashjian, IV (#4609)
Seth Barrett Tillman (#4777)
RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
(302) 651-7700
*Attorneys for Defendant*

11

RLF1-3253570-1

# Exhibit 8

To Fellas Declaration, dated May 5, 2008



EFiled: Dec 4 2007 10:48AM EST
Transaction ID 17512234
Case No. 2672-VCS

## COURT OF CHANCERY JUDICIAL ACTION FORM

Date: DEC 3, 2007                    CA: 2672 - VCS

☐ CHANCELLOR WILLIAM B. CHANDLER      ☐ VICE CHANCELLOR DONALD F. PARSONS, JR

☐ VICE CHANCELLOR STEPHEN P. LAMB     ☐ MASTER SAM GLASSCOCK III

☒ VICE CHANCELLOR LEO E. STRINE, JR.  ☐ MASTER KIM AYVAZIAN

☐ VICE CHANCELLOR JOHN W. NOBLE

PLAINTIFF: Colleen Investment AG et al.

DEFENDANT: Marco Stoffel

### NATURE OF PROCEEDING

TEMPORARY RESTRAINING ORDER ___      TRIAL _____

MOTION TO DISMISS ___                PRELIMINARY INJ. ____

OTHER  Motion for Commissions

_____

DECISION BY COURT: X                 RESERVED: _____

Denied, All oral rulings on record.

_____

_____

### BRIEFING SCHEDULE

OPENING DUE: _____          ANSWERING DUE: _____

REPLY DUE: _____

CLERK: Clynahan

STARTING TIME          ENDING TIME          CHANCELLOR

2:07 pm                3:15 pm

**Plaintiff (s) Attorney:**

STEVE NORMAN, ESQ.

BERT ASHMAN, ESQ.

SCOTT BALBER, ESQ.

JONATHON CROSS, ESQ.

**Defendant (s) Attorney:**

DAN DREISBACH, ESQ.

THOMAS MUELLER, ESQ.

STEVE BRAVERMAN, ESQ.

**Court Reporters**

| | | | |
|---|---|---|---|
| William Dawson | ☐ | Maureen McCaffery | ☐ |
| Diane McGrellis | ☒ | Neith Ecker | ☐ |
| Jennie Washington | ● | | |

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a true and correct copy of Defendants' Opposition to Plaintiffs' Motion to Remand; the Declaration of John Fellas, Esq. in Support Thereof, with accompanying exhibits; and the Declaration of Dr. Marco Stoffel in Support Thereof, with accompanying exhibits, to be served by First Class Mail and by electronic means via ECF to the following:

Scott Balber, Esq.
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112

Martin Murray, Esq.
475 Park Avenue South
25th Floor
New York, NY 10016
*Attorneys for Plaintiffs*

I declare under penalty of perjury that the foregoing is true and correct.

Dated: May 5, 2008
　　　　New York, New York

　　　　　　　　　　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Hagit Elul