UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS,  COLLEEN
INVESTMENT AG, ALSAM HOLDING AG, PENNY
ASSET AG, LOGANY EQUITY AG,
VIERWALDSTATTER BETEILIGUNGEN AG,
CLARICK AG, COLLEEN INVESTMENT, L.L.C.,
LOGANY, L.L.C., and WILLIAM R. TACON,
RECEIVER AND MANAGER OF THE ASSETS OF
MAYTOWN UNIVERSAL SA AND PLYMPTON
UNIVERSAL SA,

                                  Plaintiffs,

                -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES
CORPORATION, LAURAMCA HOLDINGS, L.L.C.,
and JOHN DOES 1-10,

                                Defendants.

---

Case No. 08 CV 02844

**DECLARATION OF SCOTT
S.  BALBER IN SUPPORT OF
PLAINTIFFS' MOTION TO
REMAND**

SCOTT S. BALBER, hereby declares, pursuant to 28 U.S.C. § 1746, as follows:

1.  I am a member of the Bar of this Court and a partner of the law firm of
Chadbourne & Parke LLP, attorneys for Plaintiffs Vistra Trust Company (Jersey) Limited
("Vistra") and Colleen Investment AG ("Colleen AG"), Alsam Holding AG, Penny Asset AG,
Logany Equity AG, Vierwaldstätter Beteiligungen AG and Clarick AG (the "Swiss
Companies"), Colleen Investment, L.L.C. ("Colleen LLC") and Logany, L.L.C. ("Logany
LLC," and together with Colleen LLC, the "LLCs"), and William R. Tacon, Receiver and

Manager of the assets of Maytown Universal SA ("Maytown) and Plympton Universal SA ("Plympton") (together, "Plaintiffs"). I am fully familiar with all the facts set forth herein. I make this affirmation in support of Plaintiffs' motion to remand this action against Defendants Dr. Marco Stoffel ("Stoffel"), Albe Associates Limited ("Albe"), Bluecolt Securities Corporation ("Bluecolt"), Lauramca Holdings, L.L.C. ("Lauramca"), and John Does 1-10 (together, "Defendants").

2.    Attached hereto as Exhibit 1 is a copy of the Affidavit of Service filed by Plaintiffs in the Commercial Division of the New York Supreme Court, New York County (the "State Court") in this action, reflecting service of the Complaint on Stoffel.

3.    Attached hereto as Exhibit 2 is a copy of the temporary restraining order entered against Defendants in this action on December 21, 2007.

4.    Attached hereto as Exhibit 3 is a copy of the January 11, 2008 order granting a preliminary injunction against Defendants in this action. This exhibit also includes a copy of the settled order granting the preliminary injunction and the schedule of enjoined assets.

5.    Attached hereto as Exhibit 4 is copy of excerpts from Stoffel's November 9, 2007 deposition testimony in the matter captioned *Colleen Investment AG et al.* v. *Marco Stoffel*, C.A. No. 2672-VCS (Del. Ch. Ct.) (the "Delaware Action").

6.    Attached hereto as Exhibit 5 is a copy of the Preliminary Conference Order entered by the State Court in this action on March 3, 2008.

2

7.  Attached hereto as Exhibit 6 is a copy of the statement of facts set forth in the Memorandum of Law in Support of Plaintiffs' Application for a Temporary Restraining Order and a Preliminary Injunction dated December 21, 2007, which was submitted by Plaintiffs in this action.

8.  Attached hereto as Exhibit 7 is a copy of a letter from Withers LLP to William Tacon dated October 3, 2007.

9.  Attached hereto as Exhibit 8 is a copy of a Uniform Residential Loan Application filed by Stoffel on May 21, 2007.

10. Attached hereto as Exhibits 9-11 are copies of the Alsam, Colleen and Logany Settlement Deeds dated December 18, 1998.  The material terms of these Settlement Deeds are identical.  The first paragraph of each of the Settlement Deeds evidences that Vistra was the Trustee of the Alsam, Colleen and Logany Trusts at their inception (prior to 2006, Vistra operated under the name of Chiltern Trust Company (Jersey) Limited).

11. Attached hereto as Exhibit 12 is a copy of the Stipulation and Order Regarding Access to Books and Records entered in the Delaware Action on March 1, 2007.  Paragraph 3 of this order states that Stoffel will receive access to third party disclosures of Plaintiffs' own books and records to Plaintiffs.

12. Attached hereto as Exhibit 13 is a copy of Albe's Bank Leu account opening form dated January 15, 2002.  The form states that Marco Stoffel is the beneficial owner of the assets held in Albe's name by Bank Leu.

13.   Attached hereto as Exhibit 14 is a copy of an addendum to Stoffel's last Will and Testament dated March 16, 2002.  On the first page of the Will Addendum, Stoffel states that he is the owner of Albe and lists its shares as part of his undeclared assets.

14. Attached hereto as Exhibit 15 is a copy of Bluecolt's VP Bank account opening form dated June 22, 2006.  The form states that Stoffel is the beneficial owner of the assets held in Bluecolt's name by VP bank.

15.   Attached hereto as Exhibits 16 and 17 are copies of letters from Stoffel to Orconsult dated December 6 and 28, 2006.  The letters state that Stoffel is conferring the shares of Albe and Bluecolt to the Albeag Foundation.

16. Attached hereto as Exhibit 18 is a copy of excerpts from Stoffel's August 2, 2007 deposition testimony in the matter captioned *Application of Vistra Trust Company (Jersey) Limited and William Tacon, Receiver and Manager, for an Order of Judicial Assistance Pursuant to 28 U.S.C. Section 1782*, No. M-139 (S.D.N.Y.).

17. Attached hereto as Exhibit 19 is a copy of a facsimile from Stoffel to Guido Banholzer of Orconsult SA ("Banholzer") dated January 22, 2002 and a certified translation thereof. The facsimile states that Banholzer should arrange for Maytown and Plympton to pay the attached invoices. The exhibit also includes bank statements evidencing Maytown and Plympton's payment of those invoices and the immediate transfer of such payments to Albe.

18. Attached hereto as Exhibit 20 is a copy of a facsimile from Stoffel to Banholzer dated May 15, 2002 and a certified translation thereof. The facsimile states that Banholzer should arrange for payment of the attached invoices. The exhibit also includes bank statements evidencing Maytown and Plympton's payment of those invoices and the immediate transfer of such payments to Albe.

19. Attached hereto as Exhibit 21 is a copy of a facsimile from Stoffel to Banholzer dated March 26, 2004 and a certified translation thereof. The facsimile states that Banholzer should arrange for payment of the attached invoices. The exhibit also includes bank statements evidencing Maytown and Plympton's payment of those invoices and the immediate transfer of such payments to Albe.

20. Attached hereto as Exhibit 22 is a copy of a facsimile from Stoffel to Banholzer dated June 25, 2006 and a certified translation thereof. The facsimile states that Banholzer should arrange for payment of the attached invoices. The exhibit also includes bank statements evidencing Maytown and Plympton's payment of those invoices.

21. Attached hereto as Exhibit 23 is a copy of excerpts from Stoffel's December 20, 2007 deposition testimony in the matter captioned *Application of Vistra Trust Company (Jersey) Limited and William Tacon, Receiver and Manager, for an Order of Judicial Assistance Pursuant to 28 U.S.C. Section 1782*, No. M-139 (S.D.N.Y.).

22. Attached hereto as Exhibit 24 is a copy of an excerpt from Connie Kendig's February 15, 2008 deposition testimony in the Delaware Action.

23. Attached hereto as Exhibit 25 is a copy of an Order entered by the Royal Court of Jersey on November 15, 2006 in the matter captioned *In the Matter of the Representation of Vistra Trust Company (Jersey) Limited, Formerly Known as Chiltern Trust Company (Jersey) Limited as Trustee of the Alsam, Colleen and Logany Settelements and in the Matter of Articles 51 and 53 of the Trusts (Jersey) Law 1984 (as amended)*, No. 2006/352. Paragraph one of that Order states that the powers of New Eagle Limited, the Protector of the Jersey Trusts, are suspended.

24. Attached hereto as Exhibit 26 are copies of meeting minutes from the Swiss Companies' December 6, 2006 board meetings. The meeting minutes state that each of the Swiss Companies resolved to dismiss Messrs. Stoffel, Banholzer and Georges Phillipe from their respective Boards of Directors and appointed directors chosen by Vistra as Trustee. The minutes also state that Aline Wey Spiers served as Secretary at these meetings.

25.   Attached hereto as Exhibit 27 is a copy of the written consent of Colleen AG, the sole member of Colleen LLC, dated December 7, 2006.  This consent states that Rodney Hodges is the Manager of Colleen LLC.

26.   Attached hereto as Exhibit 28 are copies of the written consents of the new Managers of Colleen LLC and Logany LLC dated December 7, 2006.  These consents state that any and all persons authorized at that time to act as officers of Colleen LLC and Logany LLC are replaced with Rodney Hodges and Tanya Scott-Tomlin.

27. Attached hereto as Exhibit 29 is a copy of an excerpt of the November 20, 2007 deposition of Aline Wey Spiers taken by Stoffel's counsel in the Delaware Action.  Ms. Spiers is an attorney at CMS von Erlach Henrici, Plaintiffs' Swiss Counsel.

28. Attached hereto as Exhibit 30 is a copy of an excerpt from the November 21, 2007 deposition of Urs Christen in the Delaware Action.  The excerpt evidences Stoffel's counsel, Mr. Mueller, examining Mr. Christen.

29. Attached hereto as Exhibit 31 are copies of motions made by Stoffel in the Delaware Action for orders directing that commissions be issued for testimony outside Delaware of Abbe David Lowell (Plaintiffs' former counsel), Scott S. Balber (Plaintiffs' current counsel), Willkie Farr & Gallagher LLP (the LLCs' former agent), and Fulvio & Associates, LLP (the LLCs' former accountant).

30. Attached hereto as Exhibit 32 is a copy of an excerpt from the Reply Memorandum of Law in Further Support of Marco Stoffel's Motion to Quash Subpoenas dated June 5, 2007, which was submitted in the action captioned *Application of Vistra Trust Company (Jersey) Limited and William Tacon, Receiver and Manager, for an Order of Judicial Assistance Pursuant to 28 U.S.C. Section 1782*, No. M-139 (S.D.N.Y.).

31. Attached hereto as Exhibit 33 is a copy of the Declaration of Dr. Marco Stoffel dated January 18, 2008, which was submitted in the action captioned *In re: Application Pursuant to 28 U.S.C. § 1782 of Urs Christen to take discovery of Holger Blickle*, 1:07-mc-10263 (D. Mass.).

32. Attached hereto as Exhibit 34 is a copy of the Declaration of Urs Christen in Support of Application for Order to Take Discovery Pursuant to 28 U.S.C. § 1782 dated October 23, 2007, which was submitted in the action captioned *In re: Application Pursuant to 28 U.S.C. § 1782 of Urs Christen to take discovery of Holger Blickle*, 1:07-mc-10263 (D. Mass.).

33. Attached hereto as Exhibit 35 is a copy of a letter from Withers LLP to Appleby, a Bermuda law firm, dated November 21, 2007.

34. Attached hereto as Exhibit 36 is a copy of a letter from Withers LLP to Appleby, a Bermuda law firm, dated November 27, 2007.

35. Attached hereto as Exhibit 37 is a copy of the Second Witness Statement of Graeme Kleiner dated July 20, 2007, which was submitted in an action in the High Court of England and Wales, Chancery Division in the matter entitled *William Richard Tacon* v. *Lloyds TSB Bank PLC*.

36. Attached hereto as Exhibit 38 is a copy of the Agreement on the Takeover and Administration of a Foundation between Stoffel and Orconsult SA dated November 24, 2006 and a certified translation thereof.

37. Attached hereto as Exhibit 39 is a copy of a letter from Hughes Hubbard & Reed, Stoffel's counsel in this action, to this Court dated April 10, 2008.

38. Attached hereto as Exhibit 40 is a copy of a letter from Hughes Hubbard & Reed LLP to this Court dated April 14, 2008.

39. Attached hereto as Exhibit 41 is a copy of an agreement entitled Mandate for the Incorporation and Management of a Company dated November 6, 2000 by and between Stoffel and Orconsult SA. This agreement states that it pertains to the management of Albe.

40. Attached hereto as Exhibit 42 is a copy of a letter from Potter, Anderson & Corroon LLP, Plaintiffs' Delaware counsel, to Richards, Layton & Finger, Stoffel's Delaware counsel, dated April 3, 2008. The letter states that plaintiffs in the Delaware Action will make twenty-seven boxes of documents available to Stoffel in response to his document request in that action.

9

I declare under penalty of perjury that the foregoing is true and correct.

Dated: New York, New York
April 17, 2008

_____
Scott S. Balber

# EXHIBIT 6

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

---

VISTRA TRUST COMPANY (JERSEY) LIMITED AS
TRUSTEE OF THE ALSAM, COLLEEN, AND
LOGANY SETTLEMENTS, COLLEEN INVESTMENT
AG, ALSAM HOLDING AG, PENNY ASSET AG,
LOGANY EQUITY AG, VIERWALDSTATTER
BETEILIGUNGEN AG, CLARICK AG, COLLEEN
INVESTMENT, L.L.C., LOGANY, L.L.C., and
WILLIAM TACON, RECEIVER AND MANAGER OF
THE ASSETS OF MAYTOWN UNIVERSAL SA AND
PLYMPTON UNIVERSAL SA,

                            Plaintiffs,

                -against-

DR. MARCO STOFFEL, ALBE ASSOCIATES
LIMITED, BLUECOLT SECURITIES CORPORATION,
LAURAMCA HOLDINGS, L.L.C., and JOHN DOES 1-10

                     Defendants.

Index No.

---

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFFS' APPLICATION FOR A TEMPORARY
## <u>RESTRAINING ORDER AND A PRELIMINARY INJUNCTION</u>

       Plaintiffs Vistra Trust Company (Jersey) Limited ("Vistra") as Trustee of

the Alsam, Colleen and Logany Settlements (the "Jersey Trusts"), Colleen Investment

AG, Alsam Holding AG, Penny Asset AG, Logany Equity AG, Vierwaldstatter

Beteiligungen AG, Clarick AG (the "Swiss Companies"), Colleen Investment, L.L.C.

("Colleen LLC"), Logany, L.L.C. ("Logany LLC," and together with Colleen LLC, the

"LLCs"), and William Tacon, Receiver and Manager of the Assets of Maytown Universal SA and Plympton Universal SA, ("Tacon," and collectively, "Plaintiffs") by their attorneys Chadbourne & Parke LLP, respectfully submit this memorandum of law, the affirmation of Scott S. Balber, dated December 21, 2007, with the exhibits annexed thereto (the "Balber Affirmation" or "Balber Aff."), and the affidavit of Tanya Scott-Tomlin, dated December 19, 2007, (the "Scott-Tomlin Affidavit" or "Scott-Tomlin Aff.") in support of their application for a temporary restraining order and preliminary injunction against defendants Dr. Marco Stoffel ("Stoffel"), Albe Associates Limited ("Albe"), Bluecolt Securities Corporation ("Bluecolt"), Lauramca Holdings, L.L.C. ("Lauramca"), and John Does 1-10 (together, "Defendants").  Plaintiffs will refer to the Swiss Companies, the LLCs, Maytown Universal SA ("Maytown") and Plympton Universal SA ("Plympton") as the "Companies."

Unless provisional relief is immediately granted to prevent Defendants from removing, dissipating, disposing or adversely affecting in any manner assets originating from Plaintiffs' funds and currently in the improper control of Defendants, and to preserve the status quo, it will not be possible to undo the harm caused by the dissipation of such assets.

## PRELIMINARY STATEMENT

Plaintiffs seek the return of more than $30 million dollars in assets misappropriated by Defendant Stoffel, an attorney, for his personal benefit while serving in a fiduciary capacity for plaintiffs, various trusts and corporate entities.  Over a period

of nearly eight years, Stoffel engaged in a clandestine campaign of manipulation and malfeasance using the other Defendants named herein as conduits for his illegal scheme. To effectuate his scam, Stoffel spun an elaborate web of deceit that included the fabrication of phony invoices -- which Stoffel himself described as "fake" -- and the use of an array of offshore shell entities as a means of concealing his wrongdoing.

Now Plaintiffs seek to reclaim their misappropriated assets. However, they face a real and substantial risk that Stoffel will continue his longstanding shell game and move the millions of dollars in assets currently located within the state of New York, and elsewhere in the United States, to Switzerland, his home for many years, where he continues to maintain a residence and has longstanding personal and professional ties. Plaintiffs' concerns about assets disappearing are not speculative. Plaintiffs have learned that Stoffel recently sought -- unsuccessfully -- to have various objects of art and antiquities which are the subject of this application sent to Switzerland. And in response to a Delaware Chancery Court directive to maintain certain corporate books and records, Stoffel shipped more than twenty-six boxes of documents to Switzerland, outside the jurisdiction of the United States Courts in flagrant derogation of that Court's authority. Accordingly, there is an imminent danger that Plaintiffs' efforts to obtain the return of their assets through this lawsuit will be forever frustrated if Defendants are not prohibited from absconding with them. Because Plaintiffs are faced with an imminent danger of irreparable harm, they seek a temporary restraining order and preliminary injunction to preserve the status quo pending the final resolution of this action.

In light of the overwhelming evidence of Stoffel's campaign of plunder, as detailed more fully in the Balber Affirmation and Scott-Tomlin Affidavit, Plaintiffs can demonstrate that there is a substantial likelihood of success on the merits. Further, Plaintiffs will be irreparably injured if Defendants are not immediately enjoined from dissipating the assets at issue. Finally, because this irreparable harm greatly outweighs the utter lack of any inconvenience or prejudice to Defendants of maintaining the status quo pending the resolution of the action, the equities plainly weigh in favor of Plaintiffs. Under these circumstances, Plaintiffs' application for a temporary restraining order and preliminary injunction should be granted.

## STATEMENT OF FACTS

The facts which underlie this application are set forth in Plaintiffs' complaint dated December 21, 2007 (the "Complaint"), and in the Balber Affirmation and Scott-Tomlin Affidavit. For the convenience of the Court, the most salient facts are set forth below.

**A.    Jersey Island Trusts Were Formed For the Benefit of the Blickle Family**

On December 18, 1998, Angela and Holger Blickle established the Jersey Trusts for the benefit of the Blickle family under the laws of the Bailiwick of Jersey. (Balber Aff. Exs. 3-5.) The original beneficiaries were Angela Blickle, Cedrick and Clarissa Blickle (the son and daughter of Angela and Holger Blickle), and the direct descendants of Cedrick and Clarissa. (Id.)

4

The trust documents appointed Plaintiff Vistra as Trustee.  (Id.)  Vistra has served as the Trustee of the Jersey Trusts since their inception.  (Scott-Tomlin Aff. ¶ 4.) Further, the trust documents appointed New Eagle Corporation Limited ("New Eagle"), an Irish corporation, as "Protector" of the Jersey Trusts.  (Balber Aff. Exs. 3-5.)  As Protector, New Eagle had certain duties, powers and obligations toward the Jersey Trusts. Following Angela Blickle's death in 1999, Stoffel, a citizen of the United Kingdom and of Switzerland and a resident of New York who had served as the Blickle family lawyer for several years, represented to Vistra that he was a director of New Eagle.  (Scott-Tomlin Aff. ¶ 10.)  Thus, from that time until his removal in December 2006, Stoffel claimed to act on behalf of the Protector of the Jersey Trusts.[1]

Vistra owned the shares of the Swiss Companies.  (Balber Aff. Exs. 3-5.) One of the Swiss Companies, Plaintiff Colleen AG owns Plaintiffs, Colleen LLC and Logany LLC, both Delaware limited liability companies.  (Scott-Tomlin Aff. ¶ 5-6.)

In April 1999, Vistra entered into nominee agreements with three Irish companies pursuant to which each Irish company was to hold bank deposits belonging to the Jersey Trusts.  (Id. Ex. 6-8; Scott-Tomlin Aff. ¶ 7.)  Stoffel was appointed as the Irish companies' attorney.  (Balber Aff. Exs. 12-14, Scott-Tomlin Aff. ¶ 12.)  Under the

---

[1]    New Eagle's powers as Protector have been suspended pursuant to an order of the Royal Court of Jersey.  (Balber Aff. Ex. 96.)

nominee agreements, as well as fiduciary agreements entered into between Stoffel and Vistra in January 1999, Stoffel was accountable to and was authorized only to act on the instructions of Vistra with respect to the Swiss and Irish companies. (Balber Aff. Exs. 15-17.)

In mid-1999, the Irish companies transferred the bank deposits to two British Virgin Islands corporations, Maytown Universal SA ("Maytown") and Plympton Universal SA ("Plympton") which were formed to succeed them as nominees. (Scott-Tomlin Aff. ¶ 8.)

**B.    Stoffel Assumed Positions as Fiduciary to the Jersey Trusts, the Swiss Companies and the US LLC**

Until his removal from all positions of authority in December 2006, Stoffel was an officer and director or exercised total control over the Irish companies, and their successors, Maytown and Plympton, as well as the Swiss Companies and the LLCs and controlled the Protector of the Jersey Trusts. (Scott-Tomlin Aff. ¶¶ 10-13.) Thus, Stoffel owed fiduciary duties to the Jersey Trusts, the Swiss Companies and the LLCs.

**C.    Stoffel Established a Network of Conduits For the Misappropriation of Plaintiffs' Assets and Siphoned Off More than $30 Million in Plaintiffs' Assets**

While serving in this fiduciary capacity with respect to Vistra, the Swiss Companies and the LLCs, Stoffel also utilized companies of his own. By at least November of 2000, Stoffel held beneficial ownership of all of the shares of Defendant Albe, a British Virgin Islands company, and by at least 2005, Stoffel owned Bluecolt, a Panamanian company. (Balber Aff. Exs. 18-22.) Although while testifying under oath,

Stoffel disclaimed any ownership in Albe and Bluecolt, (Id. Ex. 11, Tr. 192:9-23; 197:17-19), this deception is belied by the evidence and even by Stoffel's own will. In fact, Stoffel's will accounts for Albe as a company owned by him whose purpose is to "hold[ his] liquid moneys." (Id. Ex. 19.) Further, in December 2006, Stoffel executed documents "conferring" -- retroactively to January 1, 2006 -- the shares of Albe and Bluecolt to a Liechtenstein entity known as the Albeag Foundation, demonstrating that at least until late 2006, Stoffel owned Albe and Bluecolt and had the power to dispose of their shares. (Id. Exs. 21-22.) Stoffel executed an agreement under which Orconsult SA ("Orconsult"), a Swiss trust company, held the shares of Albe and Bluecolt on Stoffel's behalf and managed the companies in accordance with Stoffel's instructions. (Scott-Tomlin Aff. ¶ 21.) In addition, in 2002, Stoffel formed Defendant Lauramca, a Delaware company. (Balber Aff. Ex. 23.) Under a divorce settlement, Stoffel was to receive his former spouse's 50% share in Lauramca, leaving Stoffel as the owner of all of the membership interests in Lauramca. (Id. Ex. 25.) As set forth below, Stoffel used Defendants Albe, Bluecolt and Lauramca as conduits for his misappropriation of Plaintiffs' assets.

Stoffel abused his position of power to fund Albe and Bluecolt with $13.8 million of moneys belonging to the Plaintiffs for his own personal benefit. (Scott-Tomlin Aff. ¶ 20.) In particular, Stoffel orchestrated hundreds of transfers of funds from Maytown and Plympton to seven intermediate shell companies on the basis of what he himself described as "fake invoices" for services that Stoffel now admits were never

7

provided to anyone.  (Balber Aff. Ex. 11, Tr. 200:9-201:16; Scott-Tomlin Aff. ¶ 23.)  The

phony services were described in the vaguest of terms -- such as "business logistics" --

and Stoffel periodically sent these false and misleading documents by facsimile to

Orconsult to support payments made by Maytown and Plympton to seven intermediate

Scottish partnerships.[2]  (Balber Aff. Exs. 26-27.)

Although the transfers to Albe and Bluecolt came from accounts that were

at all times beneficially owned by Plaintiffs, these transfers were never authorized.

(Scott-Tomlin Aff. ¶ 23.)  This opaque series of offshore cash transfers through British

Virgin Islands, Panamanian, and Scottish shell companies had only one purpose -- to

launder the proceeds of Stoffel's wrongdoing and conceal its nature and extent.

    1.    **Stoffel Misappropriated Plaintiffs' Assets to Purchase
Art and Antiquities**

Stoffel then drew funds from Albe and Bluecolt to purchase artwork

which Stoffel now believes to be worth approximately $4 million.  (Balber Aff. Ex. 111,

Tr. 307-19-309:3)

    (a)    On March 17, 2001, Stoffel instructed Orconsult to transfer US$

8,100 to the account of Arndt & Partner for an artwork entitled "Rosignano 98 Sea 3

---

[2]    The fictitious Scottish partnerships are named Istalla International Limited, PB
Partners & Co., Interconsultants & Associates, ATC Advanced Technology
Consultants & Co., Nevis Corporation & Co., ITC International Traders Corporation
& Co. and IPMG Limited.  (Id. Ex. 26.)

Piccola, 1998." (Balber Aff. Ex. 38.) On March 20, 2001, Albe transferred US$ 8,150 to Orconsult and Orconsult then transferred US$ 8,100 to Arndt & Partner on that same date. (Id.)

        (b)      On March 27, 2001, the Springer & Winckler Gallery invoiced Stoffel US$ 3,600 for three pieces of art entitled "Buochs, 1956," "Stansstad 1959," and "Hergiswil 1971." (Id. Ex. 39.) On April 10, 2001, Albe transferred US$ 3,650 to Orconsult and Orconsult then transferred $US 3,600 to Springer & Winckler on that same date. (Id.)

        (c)      On June 26, 2001, Stoffel instructed Orconsult to pay US$ 15,000 to Galerie Christian Nagel for artwork entitled "Architecture: Reflections on Claustrophobia, Paranoia and Conspiracy Theory, #4, 2001." (Id. Ex. 40.) On June 29, 2001, Albe transferred US$ 56,500 to Orconsult and on July 2, 2001, Orconsult transferred US$ 15,000 to Galerie Christian Nagel. (Id.)

        (d)      On June 26, 2001, Stoffel instructed Orconsult to pay US$ 26,000 to Galerie Max Hetzler for artwork entitled "L.P., IV, 2000." (Id. Ex. 41.) On June 29, 2001, Albe transferred US$ 56,500 to Orconsult and on July 2, 2001, Orconsult transferred US$ 26,000 to Galerie Max Hetzler. (Id.)

        (e)      On June 26, 2001, Stoffel instructed Orconsult to pay US$ 8,800 to Galerie Krinzinger for artwork entitled "Marble Floor, 1999." (Id. Ex. 42.) On June 29, 2001, Albe transferred US$ 56,500 to Orconsult and on July 2, 2001, Orconsult transferred US$ 8,800 to Galerie Krinzinger. (Id.)

(f)    On June 26, 2001, Stoffel instructed Orconsult to pay CHF 11,000 to Galerie Krinzinger for artwork entitled "Fusion, 2001." (Id. Ex. 43.) On June 29, 2001, Albe transferred US$ 56,500 to Orconsult and on July 2, 2001, Orconsult transferred CHF 11,000 to Galerie Krinzinger. (Id.)

(g)    On June 28, 2001, Stoffel instructed Orconsult to pay US$ 36,000 to the Alexander and Bonin Gallery for artwork entitled "Chairs (Red)." (Id. Ex. 44.) On July 2, 2001, Albe transferred US$ 36,100 to Orconsult and Orconsult transferred US$ 36,000 to the Alexander and Bonin Gallery that same date. (Id.)

(h)    On July 13, 2001, Stoffel instructed Orconsult to transfer GBP 4,500 to the Entwistle Gallery for artwork entitled "Schnorkel Drawing, 2000." (Id. Ex. 45.) On July 17, 2001, Albe transferred US$ 13,000 to Orconsult and Orconsult then transferred GBP 4,500 to Entwistle. (Id.)

(i)    On July 13, 2001, Stoffel instructed Orconsult to transfer GBP 4,500 to the Lisson Gallery for artwork entitled "A Treasury of Human Inheritance, Levy's Case, 2001." (Id. Ex. 46.) On July 17, 2001, Albe transferred US$ 13,000 to Orconsult and Orconsult then transferred GBP 4,500 to the Lisson Gallery on that same date. (Id.)

(j)    On July 20, 2001, Stoffel instructed Orconsult to transfer GBP 4,500 to the Asprey Jacques Gallery for artwork entitled "Salmon Pink with Frilly Aubergine Vase, 2000." (Id. Ex. 47.) On July 25, 2001, Albe transferred US$ 6,500 to

Orconsult and Orconsult transferred GBP 4,500 to the Asprey Jacques Gallery on that same date. (Id.)

       (k)    On March 5, 2003, the Gunter Puhze gallery sent Stoffel an invoice for EUR 4,000 for artwork entitled "1 Kopf eines Junglings, Marmor, romisch, 2." (Id. Ex. 48.) On March 12, 2003, Albe transferred EUR 4,000 to the Gunter Puhze gallery. (Id.)

       (l)    On March 6, 2003, the Jean-David Cahn gallery sent Stoffel an invoice for EUR 6,040.89 for artwork entitled "Weibliche Statuette." (Id. Ex. 49.) On March 12, 2003, Albe transferred EUR 6,040.89 to Jean-David Cahn. (Id.)

       (m)    On March 14, 2003, Stoffel instructed Orconsult to pay the Gunter Puhze gallery EUR 6,000 for artwork entitled "1 terracotta figure of a dancer, late-Minoaen, 14th cent. BC." (Id. Ex. 50.) On March 19, 2003, Albe transferred EUR 6,000 to the Gunter Puhze gallery. (Id.)

       (n)    On May 10, 2003, Stoffel instructed Orconsult to transfer GBP 10,000 to the Miro gallery. (Id. Ex. 51.) On May 14, 2003, Albe transferred GBP 10,100 to Orconsult and Orconsult transferred GBP 10,000 to the Miro Gallery that same date. (Id.)

       (o)    On December 29, 2003, Albe transferred EUR 22,200 to Orconsult and Orconsult then transferred EUR 22,000 to the Roswitha Eberwein gallery on that same date. (Id. Ex. 52.)

(p)    On January 28, 2004, Stoffel instructed Orconsult to transfer US$ 60,000 to the Safani Gallery. (Id. Ex. 53.) On February 2, 2004, Albe transferred US$ 60,100 to Orconsult and Orconsult transferred US$ 60,000 to the Safani Gallery on that same date. (Id.)

(q)    On January 31, 2004, Stoffel instructed Orconsult to transfer US$ 42,800 to M. Eisenberg Inc. (Id. Ex. 54.) On February 4, 2004, Albe transferred US$ 43,000 to Orconsult and Orconsult transferred US$ 42,800 to M. Eisenberg Inc. on that same date. (Id.)

(r)    On March 22, 2004, Stoffel instructed Orconsult to transfer EUR 110,000 to the Gallery Thaddaeus Ropac for an artwork entitled "Domain XXXIII, 2003." (Id. Ex. 55.) On March 23, 2004, Albe transferred EUR 110,100 to Orconsult and Orconsult transferred EUR 110,000 to the Gallery Thaddaeus Ropac on March 24, 2004. (Id.)

(s)    On April 17, 2004, Stoffel informed Orconsult that it would receive EUR 400,000 from each of Maytown and Plympton and instructed Orconsult to use the EUR 800,000 to pay several invoices from art galleries. (Id. Ex. 56.) Stoffel instructed Orconsult to transfer US$ 64,500 to the Sperone Westwater gallery for artwork entitled "Sled, 2004." (Id.) On April 28, 2004, Albe transferred US$ 64,600 to Orconsult and Orconsult transferred US$ 64,500 to Sperone Westwater on that same date. (Id.)

(t)     On April 17, 2004, Stoffel also instructed Orconsult to transfer - EUR 250,000 to the Gallery Thaddaeus Ropac for artwork entitled "Ich halte alle Indien in meiner Hand, 2004." (Id. Ex. 57.) On April 28, 2004, Albe transferred EUR 250,100 to Orconsult and Orconsult transferred EUR 250,000 to the Gallery Thaddaeus Ropac on that same date. (Id.)

(u)     On June 30, 2004, Stoffel instructed Orconsult to transfer US$ 64,500 to the Chinese Porcelain Company for artwork entitled "Group of twenty-eight figures, Ming Dynasty, 16th century." (Id. Ex. 58.) On July 14, 2004, Albe transferred US$ 64,600 to Orconsult and Orconsult transferred US$ 64,500 to the Chinese Porcelain Company on that same date. (Id.)

(v)     On September 21, 2004, Stoffel instructed Orconsult to transfer US$ 28,000 to the Safani Gallery. (Id. Ex. 59.) On September 24, 2004, Albe transferred US$ 28,100 to Orconsult and Orconsult transferred US$ 28,000 to the Safani Gallery on that same date. (Id.)

(w)     On November 30, 2004, Stoffel instructed Orconsult to transfer payment to the Sean Kelly Gallery. (Id. Ex. 60.) On December 1, 2004, Albe transferred US$ 45,200 to Orconsult and Orconsult transferred US$ 45,106.53 to the Sean Kelly Gallery on December 17, 2004. (Id.)

(x)     On May 28, 2005, Stoffel instructed Orconsult to transfer US$ 26,964 to the Phillips gallery for artwork entitled "Stonehenge." (Id. Ex. 61.) On May

30, 2005, Albe transferred US$ 27,000 to Orconsult and Orconsult transferred US$ 26,964 to the Phillips gallery on May 31, 2005. (Id.)

(y)    On October 21, 2006, Stoffel instructed Orconsult to transfer US$ 7,100 to Red Gate (Int'l) Ltd, Hong Kong for an artwork. (Id. Ex. 62.) On October 25, 2006, Bluecolt transferred US$ 67,500 to Orconsult and Orconsult transferred US$ 7,100 Red Gate (Int'l) Ltd, Hong Kong on November 14, 2006. (Id.)

(z)    On October 21, 2006, Stoffel instructed Orconsult to transfer US$ 60,000 to the Sperone Westwater Gallery for artwork entitled "Talisman, 2006-2007." (Id. Ex. 63.) On October 25, 2006, Bluecolt transferred US$ 67,500 to Orconsult and Orconsult transferred US$ 60,000 to the Sperone Westwater Gallery on November 14, 2006. (Id.)

(aa)    On October 31, 2006, the Contrasts Gallery invoiced Stoffel US$ 47,500 for artwork entitled "Work No. 1 of 2004." (Id. Ex. 64.) On December 4, 2006, Bluecolt transferred US$ 50,000 to Orconsult and Orconsult transferred US$ 47,500 to the Contrasts Gallery on December 15, 2006. (Id.)

(bb)    On November 9, 2006, Stoffel instructed Orconsult to transfer EUR 23,750 to Galerie Ursmeile for artwork entitled "Mongolians, 2006." (Id. Ex. 65.) On November 13, 2006, Bluecolt transferred EUR 23,750 to Meile Kunst AG. (Id.)

(cc)    On November 19, 2006, Stoffel instructed Orconsult to pay an invoice in the amount of EUR 88,000 from the Mai 36 Galerie for artwork entitled "Man

14

with White Shirt and Black Trousers, Relief 4 Circles, 2006." (Id. Ex. 66.)  On

November 21, 2006, Bluecolt transferred EUR 88,000 to the Mai 36 Galerie.  (Id.)

(dd)    On January 31, 2004, Stoffel instructed Orconsult to pay an

invoice in the amount of US$ 37,500 from the Royal-Athena Galleries for artwork

entitled "Egyptian Old Kingdom." (Id. Ex. 67.)

(ee)    On January 31, 2004, Stoffel instructed Orconsult to pay an

invoice in the amount of US$ 12,500 from the Royal-Athena Galleries for artwork

entitled "Etruscan terracotta head of Herakles." (Id.)

(ff)    On May 27, 2004, the Royal-Athena Galleries invoiced Stoffel

US$ 6,420 for an artwork entitled "Attic white-ground lekythos." (Id. Ex. 68.)  Stoffel

paid for the artwork with a check drawn on an Orconsult account.  (Id.)

### 2.    Stoffel Misappropriated Plaintiffs' Assets to Purchase Automobiles

Stoffel also utilized funds he laundered through his companies,

Defendants Albe and Bluecolt, to purchase numerous antique luxury cars.

(a)    On May 7, 2001, Stoffel instructed Orconsult to transfer US$

64,859.37 to the account of Autosport Sales Corp. at Fleet Bank, reference number

"Stoffel, DB5/1835/R." (Id. Exs. 69-70)  On May 14, 2001, Albe transferred US$ 65,000

to Orconsult and Orconsult then transferred US$ 64,859.37 to the Autosport Sales Corp.

account at Fleet Bank.  (Id.)  These funds were used to purchase an Aston Martin 1965

Coupé, Serial No. DB5/1835/R.  (Id.)

       (b)     On August 13, 2001, Stoffel instructed Orconsult to transfer US$ 78,073 to the account of Autosport Sales Corp. at Fleet Bank, reference number "1958 AC Bristol, Serial # BEX 487." (Id. Ex. 71.)  On August 22, 2001, Albe transferred US$ 78,173 to Orconsult and Orconsult then transferred US$ 78,073 to the Autosport Sales Corp. account at Fleet Bank.  (Id.)  These funds were used to purchase a 1958 AC Bristol. (Id.)

       (c)     On July 9, 2002, Allen Glew, an English classic car dealer, invoiced Stoffel GBP 67,500 for a Rolls Royce. (Id. Ex. 76-78.)  On July 15, 2002, Orconsult transferred GBP 67,500 to Allen Glew.  (Id.)  These funds were used to purchase a Rolls Royce 1922 Silver Ghost Chassis No. 11BG.  (Id.)

       (d)     On December 11, 2003, Stoffel instructed Orconsult to transfer GBP 182,500 to Allen Glew with reference to "Purchase 1905E." (Id. Ex. 72.)  On December 12, 2003, Albe transferred GBP 182,700 to Orconsult and Orconsult transferred GBP 182,500 to Allen Glew on that same date.  (Id.)  These funds were used to purchase a Rolls Royce Silver Ghost 1912 Chassis 1905E.  (Id.)

       (e)     On February 13, 2004, Stoffel instructed Orconsult to transfer GBP 155,000 to Gregor Fisken, a vendor of luxury automobiles. (Id. Ex. 73.)  On February 18, 2004, Albe transferred GBP 155,100 to Orconsult and Orconsult transferred GBP 155,000 to Gregor Fisken that same day.  (Id.)  These funds were used to purchase a Bentley 1924 Chassis No. 615.  (Id.)

(f)     On December 18, 2006, Stoffel instructed Orconsult to transfer CHF 86,800 to Emil Frey AG, another dealer of fine automobiles. (Id. Ex. 75.) On December 20, 2006, Bluecolt transferred CHF 86,800 to Emil Frey AG. (Id.) These funds were used to purchase a BMW 530 xi. (Id.)

(g)     On June 1, 2004, Stoffel instructed Orconsult to transfer US$ 83,642.50 for the purchase of a BMW X5. (Id. Ex. 79.)

(h)     On May 15, 2002, Stoffel used a cojoint Stoffel/Orconsult SA Prudential Securities Command Account to purchase a Bentley 1949 Mark 6 for USD $15,000. (Id. Ex. 80.)

### 3.     Stoffel Misappropriated Plaintiffs' Assets to Purchase an Apartment in London

Other luxury items that Stoffel acquired using Plaintiffs' assets, include a timeshare in a London apartment at 47 Park Street. (Id. Ex. 84, ¶ 15(c); Scott-Tomlin Aff. ¶ 32.) Notably, Stoffel has represented in certain court proceedings and under oath that Albe purchased the apartment on behalf of the Blickles. (Balber Aff. Ex. 84, ¶ 15(c), Ex. 112, Tr. 357:14-358:21; Scott-Tomlin Aff. ¶ 32.) However, Stoffel has not transferred Albe's interest in this property to Plaintiffs or the Blickles. (Scott-Tomlin Aff. ¶ 32.) Further, Stoffel could not recall a single instance in which any of the Blickles used the apartment and did not know whether they were even aware of its existence, although Stoffel himself and several of his close associates have used the apartment on numerous occasions. (Balber Aff. Ex. 112, Tr. 357A:14-361-12.)

4.    **Stoffel Misappropriated Plaintiffs' Assets to
      Purchase, Renovate and Furnish a Multimillion Dollar
      Townhouse in Manhattan**

Moreover, Stoffel caused improper payments of Plaintiffs' assets to be made to his company, Defendant Lauramca. In August 2002, Lauramca purchased a townhouse at 340 W. 12th Street in New York City (the "Townhouse"). (Scott-Tomlin Aff. ¶ 25.) The Townhouse was purchased and renovated largely (if not entirely) with Plaintiffs' assets and/or loan proceeds acquired by mortgaging property purchased with Plaintiffs' assets. (Id.; Balber Aff. Ex. 84, ¶ 22(a).) Approximately one week prior to consummating the purchase of the Townhouse, Stoffel borrowed $2.5 million by signing a promissory note to Washington Mutual Bank. (Id. Ex. 81; Scott-Tomlin Aff. ¶ 25.) The Washington Mutual loan was secured on his home in Scarsdale, which Stoffel has testified was purchased with Plaintiffs' assets. (Balber Aff. Ex. 11, Tr. 21:20-22:2.) Lauramca financial statements reveal that Stoffel has loaned $2.5 million to Lauramca (see id. Ex. 82), strongly suggesting that Stoffel's Washington Mutual Bank loan was used to purchase the Townhouse. Furthermore, a dubious and unauthorized "loan" which has never been repaid to Plaintiffs, was used by Lauramca to renovate the Townhouse. (Id. Ex. 84, ¶ 22(a).)

Stoffel also caused Colleen LLC to pay Lauramca over $100,000 to furnish the Townhouse. (Id. Ex. 87.) Again, Plaintiffs did not approve these payments and these funds have not been returned despite the fact that Colleen LLC never occupied the Townhouse. In addition, Stoffel transferred vast amounts of Plaintiffs' assets to the

bank account of Lauramea.  (Id. Exs. 82, 85-86; Scott Tomlin Aff. ¶¶ 26-27.)  In 2006

alone, the Lauramea account received $330,000 in payments from Colleen AG despite

never having rendered any services to that entity.  (Id.)  Lauramea also received

$931,335.95 in Plaintiffs' assets from Orconsult.  (Id.)  Although these transfers were

designated as "loans," Lauramea never repaid Orconsult or Plaintiffs.  (Id.)  Further, in

November 2006 Lauramea charged and received $210,000 from Colleen LLC for rent

and office services expenses, which were never provided to Colleen LLC, and which

have not been returned to Plaintiffs.  (Id.)

<div style="margin-left: 2em;">

**5.**    **Stoffel Misappropriated Plaintiffs' Assets to Purchase a Multimillion Dollar Home in Scarsdale, New York**

</div>

Stoffel's misconduct did not stop at using his companies, Defendants

Albe, Bluecolt and Lauramea, as conduits through which Stoffel pillaged Plaintiffs'

assets.  To the contrary, the evidence shows that he also abused positions of control over

other companies whose shares were owned by Vistra.

For example, in 1999, Stoffel purchased a luxury home in Scarsdale, New

York with the proceeds of a US$ 2.4 million loan that originated from Plaintiffs' assets.

(Id. Ex. 11, Tr. 21:14-22:1; 23:5-23:23)  Stoffel allegedly caused this loan to be

"forgiven" on the basis of management fees purportedly owed to New Eagle, but such

fees were wildly excessive given the limited role of the Protector with respect to the

Jersey Trusts.  (Id.)  A typical annual fee for a person performing this function would be

less than 1% of this figure.  Only Vistra could ever pay such fees, and at no point did it do so.  (Scott-Tomlin Aff. ¶ 30.)

6.  **Stoffel Used Colleen AG Accounts As His Personal Piggy Bank**

In addition, Stoffel has used Colleen AG's bank account as his own personal account.  (Id. Ex. 88.)  In 2006 alone, he improperly withdrew over $850,000 from this account.  (Id.)  While Stoffel claims that these withdrawals amounted to a severance payment with respect to his termination by Plaintiffs, this is at best a *post hoc* rationalization, because the banking records show that almost all of the money was withdrawn long before he was terminated or informed of his termination.  (Id.)  He has also presented conflicting accounts of his actual salary as director of the LLCs.  (Id. Exs. 11, Tr. 141:20-24, 137:4-21; 84, ¶ 7.)

D.  **Despite Vistra's Actions to Remove Stoffel From Power, Stoffel Engages in Continued Malfeasance**

Upon discovering Stoffel's malfeasance, Vistra obtained an order from the Royal Court of the Island of Jersey suspending the powers of the Protector of the Jersey Trusts and empowering Vistra to take steps to locate and recover Plaintiffs' assets.  (Id. Ex. 97.)  On December 6 and 7, 2006, the Swiss Companies resolved to replace their boards of directors, including Stoffel, with directors chosen by Vistra.  (Id. Exs. 98-99.)  Immediately thereafter, Colleen AG replaced the officers of the LLCs with new Vistra appointed managers.  (Id. Ex. 100.)  As a result, the LLCs are now under the exclusive control of Vistra.

20

Astonishingly, despite being removed from all positions of authority, Stoffel has continued to misappropriate assets belonging to the Plaintiffs. Within twelve days of his removal, Stoffel brazenly transferred a total of US$ 2.4 million from bank accounts belonging to Colleen LLC and Colleen AG to himself or entities acting on his behalf. (Id. Exs. 102-103; Scott-Tomlin Aff. ¶ 34.) Thus, only days after being removed from power, Stoffel managed to dissipate an additional $2.4 million in assets.

In an attempt to unravel Stoffel's web of deceit, in January 2007, Plaintiffs Colleen AG and the LLCs brought an action in the Delaware Chancery Court against Stoffel for the return of the LLC's corporate books and records. (Balber Aff. Ex. 104.) The action is captioned Colleen Investment AG et al. v. Marco Stoffel, C.A. No. 2672-VCS. After Vice Chancellor Strine directed Stoffel to maintain the status quo, Stoffel's assistant shipped more than twenty-six boxes of the LLCs' corporate book sand records to Switzerland, preventing the plaintiffs in the Delaware action -- Colleen AG and the LLCs -- from obtaining their own records for a period of nine months. (Id. Exs. 105-106.) In recognition of the egregiousness of Stoffel's conduct, at oral argument in connection with Colleen AG and the LLC's motion for sanctions, Vice-Chancellor Strine likened Stoffel's conduct to that of a skilled "card dealer of documents" and suggested that "the way [Stoffel] creates security for documents is to move them around." (Id. Ex. 107, Tr. 34:16, 40:7-8.) It is particularly relevant in evaluating the need for a status quo order here that when sued for the return of documents as opposed to assets, Stoffel took

immediate action to transfer the subject of the Delaware action out of the Chancery Court's jurisdiction.

Moreover, there has been a suggestion that, due to mounting pressure, Stoffel may leave the United States for an indefinite period of time. (Id. Ex. 108.) Stoffel has suggested that he may leave the United States and not return and has provided written direction regarding the disposition of his United States assets if this occurs. (Id.) Alarmingly, there is also recent evidence that Stoffel is attempting to transfer assets out of the country. Stoffel has admitted under oath that he recently told his former wife that "[f]or asset protection reason," he preferred that Lauramca be assigned to his "friend," a Swiss attorney named Marco Bazzani, because "[i]f Lauramca is in my name there is a good chance that the Blickle Trusts lawyers could succeed in attaching the interests; otherwise they have to fight in Switzerland against Bazzani . . . ." (Id. Ex. 110; Ex. 112, Tr. 392:25-398:18) Indeed, Stoffel recently directed his former wife that "[a]ll the antiquities should go to Zurich" and implored her to "think of a way, that they do not get confiscated or taxed." (Id. Ex. 109.) Stoffel has also admitted under oath that he wrote to his ex-wife regarding strategies for avoiding "tracing claims" by the Plaintiffs. (Id. Ex. 112, Tr. 399:25-400-17.) Thus, in light of this evidence, there is no question that when faced with Plaintiffs' Complaint, Stoffel may move quickly to abscond from this jurisdiction and move the assets at issue out of Plaintiffs' reach in order to "create security" for himself at great detriment to Plaintiffs.

E.    **Plaintiffs Seek the Return of the Pillaged Assets**

As detailed above, and as specifically identified in Schedule A attached hereto, Stoffel used the monies that he laundered through his companies and pillaged from the companies for whom he acted as a fiduciary to purchase assets and fund accounts located in New York, London and elsewhere. Plaintiffs now seek to enjoin Stoffel from dissipating these assets. Specifically, these ill-gotten assets consist of:

(1)    Art and antiquities, (the "Art and Antiquities") (see supra pp. 8-15);

(2)    Certain automobiles owned by Stoffel, (the "Automobiles") (see supra pp. 15-17);

(3)    A London apartment at 47 Park Street, London, England, purchased by Albe (the "London Apartment") (see supra p. 17);

(4)    Lloyds TSB bank accounts held in the name of Albe with account numbers 11358707, 86065558, and 1936979 and Bank Leu bank accounts held in the name of Albe with account numbers 619606-82, 619696-82-1, and 619606-85, (the "Albe Accounts," Balber Aff. Exs. 28-33, );

(5)    VP bank accounts held in the name of Bluecolt with account numbers 346.377.010, 346.377.013, 346.377.016, and 346.377.900, (the "Bluecolt Accounts," Balber Aff. Exs. 34-37);

(6)    Furniture purchased for the Townhouse, (the "Furniture") (see supra p. 18);

(7)    First Republic Bank account held in the name of Lauramca with account number 97100063381 (the "Lauramca Account") (see supra pp. 18-19);

(8)    First Republic Bank accounts held in the name of Stoffel
       with account numbers 97100063373 and 97900044482,
       (the "First Republic Accounts") (Balber Aff. Ex. 88-90,
       102);

(9)    UBS AG Bank accounts held in the name of Stoffel,
       including account number 230-253441.01F, (the "UBS AG
       Account"; Balber Aff. Exs. 11, Tr. 142:8-25, 88, 103);

(10)   Real property located at 340 W. 12th Street, New York,
       New York, (the "Townhouse," and collectively the
       "Enumerated Assets") (See supra at p. 18).

Tacon, as Receiver of Maytown & Plympton, and Vistra now endeavor to

locate the Enumerated Assets which were improperly acquired using Plaintiffs' funds.

Only very recently did Tacon and Vistra learn: (1) the breadth of Stoffel's malfeasance

and misappropriation; (2) the location of the Enumerated Assets; (3) the traceability of

the Enumerated Assets to Plaintiffs' funds; and (4) the substantial risk of Stoffel moving

the Enumerated Assets and/or disappearing himself.

## ARGUMENT

### PLAINTIFFS ARE ENTITLED TO A TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION TO MAINTAIN THE STATUS QUO UNTIL A FINAL ADJUDICATION ON THE MERITS OF THE CASE

Plaintiffs seek a preliminary injunction and temporary restraining order

pursuant to Sections 6301 and 6313 of the Civil Practice Law and Rules to prevent the

irreparable harm that will occur if Defendants dissipate the Enumerated Assets. The

standard for issuing a preliminary injunction and temporary restraining order under New

York law is well-settled. CPLR Section 6301 provides that:

24

# EXHIBIT 7

03-10-07   17:00   FROM-withers                    02075976000         T-257  P.002/026  F-093



16 Old Bailey, London EC4M 7EG
Telephone: +44 (0)20 7597 6000
Fax: +44 (0)20 7597 6543
DX 180 London/Chancery Lane

GXK/ORC/LN62086.001

3 October 2007

**By Fax & By Post**

Mr W Tacon

Kroll (BVI) Limited

PO Box 4571

Palm Grove House, 2nd Floor

Wickhams Cay, Road Town

Tortola,

VG 1110

British Virgin Islands

Dear Sir

**Plympton Universal SA and Maytown Universal SA
Orconsult Limited**

We write in connection with your letters of 27 and 28 August 2007 addressed to Sandra von Salis of Kellerhals Hess and your letter of 4 September 2007 addressed to the directors of Orconsult Limited, in relation to which you have previously corresponded with Cox Hallett Wilkinson. As you will recall, this firm previously acted for the Scottish partnerships and IPMG Limited ("the Recipient Entities") in your disclosure proceedings in London earlier this year. We have now been instructed also on behalf of Orconsult Limited and have taken instructions from Mr Banholzer and Mr Philippe in their capacities as directors of that company, although we do not act for them in their personal capacities.

We have discussed with Mr Banholzer and Mr Philippe the rough transcript of the deposition of Marco Stoffel which you recently supplied to Cox Hallett Wilkinson, and which Cox Hallett Wilkinson has forwarded to us ("the deposition"). In the light of the deposition, we have also discussed your letters further with Dr von Salis, with Peter Schatz (a partner in Kellerhals Hess), and with Nicholas Harrison, the English barrister, who with this firm acted for the Recipient Entities in the proceedings mentioned above. This letter has been prepared in consultation with all these parties. The letter is also being copied to the English and Swiss legal representatives of Clarissa and Cedrick Blickle.

Although at this stage we have not yet had the opportunity to digest the deposition in full, nor have we yet seen a number of the documents referred to in the deposition, it is an understatement to say that our

direct: 020 7597 6178
e-mail: graeme.kleiner@withersworldwide.com

Withers LLP is a limited liability partnership registered in England and Wales with registered number OC384140 and is regulated by the Solicitors Regulation Authority. A full list of members' names and their professional qualifications may be inspected at our registered office, 16 Old Bailey. All members of Withers LLP are solicitors or US lawyers.

document number: LN62086/1-L-724808/3

Geneva: +41 (0)22 593 7777
Milan: +39 02 2906801

Withers Bergman LLP
New York: +1 212 848 9800
Greenwich: +1 203 302 4100
New Haven: +1 203 789 1320

www.withersworldwide.com

clients are alarmed by its contents. The deposition contains numerous false and misleading statements by Dr Stoffel concerning the role of our clients. It is further apparent from the contents of the deposition that our clients have themselves been misled by Dr Stoffel in relation to a number of matters. Having never previously acted (whether through a corporate entity or otherwise) as trustees of an Anglo-Saxon trust, we understand from Mr Banholzer and Mr Philippe that in carrying out their duties as directors of Orconsult Limited they relied heavily on Dr Stoffel, whom they understood to have effectively plenipotentiary powers (which were stated in the Bermuda trust deeds to be personal powers) as the representative of the protector of the trusts with the full confidence of the Blickle family over many years. In the light of the facts disclosed by the deposition, and the advice which our clients have now received, they are extremely concerned at the extent to which it appears that Dr Stoffel has taken advantage of the confidence reposed in him to abuse his position.

We will address and correct as many as we can of the various factual misrepresentations made by Dr Stoffel in due course. Our immediate concern, however, is Dr Stoffel's evidence concerning the payments made to the Recipient Entities which were the subject of your disclosure proceedings, and which are now the principal subject of your letter of 27 August 2007. As set out below, it is our clients' case that Dr Stoffel's evidence as to these matters is false, and that it appears from that evidence that Dr Stoffel has procured those payments by fraud.

**Restrictions under Swiss law**

As you will be aware, the approach of Mr Banholzer and Mr Philippe to date has been affected by the constraints imposed upon them by Swiss law. First, Article 271 of the Swiss Penal Code prohibits Swiss citizens from cooperating with a person acting in an official role for a foreign state, and Kellerhals Hess have advised that as the judicially appointed receiver of Maytown and Plympton (and an officer of the BVI Court) you may, as a matter of Swiss law, fall into this category. Second, as regards the payments received by the Recipient Entities and what has subsequently become of them, direct contractual obligations of confidentiality are owed to Dr Stoffel and/or entities beneficially owned by him in their capacities as clients of Orconsult SA. Concern as to these constraints has limited in certain respects the information which could be disclosed to you (for example in this firm's letter to Lawrence Graham of 20 July 2007).

However, as set out in the letter to you from Kellerhals Hess of today's date, the position described in the previous paragraph has now changed. In view of the evidence of apparent fraud on the part of Dr Stoffel contained in the deposition, and the allegations which he has himself made, Kellerhals Hess have now advised Mr Banholzer and Mr Philippe that they should no longer consider themselves constrained by any contractual obligations of confidentiality owed by Orconsult SA as regards the information which you seek.

As regards the effect of Article 271 of the Swiss Penal Code, the position as set out in Kellerhals Hess's letter is more complex. Insofar as the information which you seek is information known to Mr Banholzer and Mr Philippe in their capacities as directors of Orconsult Limited or as directors or representatives of the partners of the Recipient Entities (none of which are Swiss entities), Kellerhals Hess have advised that such information may be disclosed to you by those entities. This applies to the majority of the

questions you ask, including in particular your questions relating to the invoices raised by the Recipient Entities.

However, insofar as the information which you seek is known to Mr Banholzer and Mr Philippe only in their capacities as directors of Orconsult SA, Kellerhals Hess have advised that there remains a risk that disclosure of this information to you could expose them to penal sanctions under Article 271. This applies to certain of the questions you ask, including in particular your questions concerning Albe, Bluecolt and the Albeag Foundation. We have discussed this difficulty with Kellerhals Hess in an effort to find a solution which would enable our clients and theirs to make the disclosure which you seek at the earliest opportunity. As set out in Kellerhals Hess's letter, the solution they propose is that the requests for information already made by representatives of the beneficiaries in Bermuda should be extended also to include the information which you seek. We would invite the representatives of the beneficiaries to give their own consideration to this proposal.

**Your letter of 27 August 2007**

Against this background, we turn first to the matters raised in your letter of 27 August 2007. We deal with these matters as far as we are now able to do so under the headings set out in your letter.

*Invoices raised by the Recipient Entities*

As stated in this firm's letter of 20 July 2007, the invoices raised by the Recipient Entities were prepared in accordance with the requests of Dr Stoffel, and indeed in some cases, the invoices were prepared by Dr Stoffel himself and sent by fax to Mr Banholzer. Copies of some of these faxes are enclosed with this letter by way of example.

As also stated in our letter of 20 July 2007, our clients were clearly informed by Dr Stoffel that the invoices were in respect of services rendered by him to Orconsult Limited as trustee of the Bermuda trusts. As can be seen from the exhibit to the affidavit of Clarissa Blickle in the proceedings commenced by Vistra in Bermuda (see for example CAB1 pages 182-8), the invoices were in form and content broadly similar to invoices which Dr Stoffel had previously rendered to Vistra (or Chiltern, as it then was) and which Vistra had paid, in respect of Dr Stoffel's services to the Jersey trusts. Mr Banholzer and Mr Philippe were made aware from their day to day contact with Dr Stoffel of his continuing work in respect of the matters which were the subject of the invoices and understood from him that he was entitled to be paid as invoiced. They further understood from Dr Stoffel that he did not wish to be identified as the recipient of the invoiced funds, not because of any question as to his entitlement to receive them, but for undisclosed extraneous reasons which our clients had until recently thought were most likely connected with his divorce. It was on this basis and this basis alone that the Recipient Entities agreed to provide the invoicing services which Dr Stoffel requested.

In the light of the above, you will understand that our clients are astonished at the statements now made by Dr Stoffel concerning these invoices in his recent deposition. Mr Stoffel's allegation that the invoices were prepared by Mr Philippe or by Orconsult SA at Mr Philippe's behest, supposedly for the purposes of extracting money from the trusts in respect of a debt owed by Mr Philippe, is completely untrue. As Mr

Stoffel well knows, the invoices were prepared in accordance with his own faxed instructions, as set out above.

Further, in view of Dr Stoffel's evidence on oath that none of the invoices was in fact justified by services rendered by him, our clients are now driven to conclude that the statements made to Mr Banholzer and Mr Philippe on the basis of which the invoices were prepared were fraudulent statements, and the payments which Maytown and Plympton made on the authority of Mr Banholzer and Mr Philippe pursuant to the invoices were accordingly procured by fraud. This may have further consequences for our clients' position which they are still considering. In this connection, we would be grateful if you would send us the final version of the transcript of the deposition, together with the accompanying documents, as soon as possible.

Insofar as the questions you asked in this section of your letter are not answered by what we have said above, the position is as follows. Mr Banholzer and Mr Philippe understood that the funds held by Maytown and Plympton were held by them as nominees for Orconsult Limited in its capacity as trustee of the Bermuda trusts. Accordingly, they did not understand there to be any other party from whom they needed authorisation to make the payments in question, and they did not seek such authorisation. For the same reason, the question whether Maytown and Plympton themselves gained valuable consideration from the payments was not a question addressed by Mr Banholzer and Mr Philippe; they understood that Orconsult Limited as trustee of the Bermuda Trusts had obtained valuable consideration, and that the funds held by Maytown and Plympton were held by them as nominees for Orconsult Limited in that capacity.

*Subsequent transfers*

We can confirm that, as stated in this firm's letter of 20 July 2007, the beneficial owner of Albe and Bluecolt is Dr Stoffel. However, as we have said, further information you seek concerning Albe, Bluecolt and the Albeag Foundation and the sums transferred to the latter is information known to Mr Banholzer and Mr Philippe only in their capacities as directors of Orconsult SA rather than as directors of Orconsult Limited; accordingly, Kellerhals Hess have advised that its disclosure to you might constitute a violation of Article 271 of the Swiss Penal Code. The solution proposed by Kellerhals Hess to enable this information to be disclosed is as set out in their letter of today's date and summarised above. In the event that this solution is adopted, disclosure of the further information can be made to the beneficiaries of the Aquarius and Capricorn trusts forthwith.

As regards the last four questions raised in this section of your letter, again the understanding of Mr Banholzer and Mr Philippe was that the funds held by Maytown and Plympton were held by them as nominees for Orconsult Limited in its capacity as trustee of the Bermuda trusts, and that Orconsult Limited in that capacity had obtained valuable consideration for the payments. They understood that they were payments made in the normal course of business of Orconsult Limited in that capacity. They did not consider there to be any conflict of interest arising from their roles in the Recipient Entities, since the 1% commission received by the Recipient Entities was paid by Dr Stoffel out of the fees which he received to which Mr Banholzer and Mr Philippe believed that he was entitled, and not by Maytown and Plympton.

*Arbitration proceedings in Switzerland*

You request the preliminary comments of Mr Banholzer and Mr Philippe concerning sections (iv) and (v) of the request for arbitration served by Nater Dallafior, a copy of which is attached to your letter. This is a matter which we believe is generally best dealt with between Kellerhals Hess and your own Swiss lawyer, Mr. Philippe Känzig of Stalger, Schwald & Partner, with whom we understand Kellerhals Hess have already been in discussion. For present purposes, suffice to say that we understand from Mr Banholzer and Mr Philippe that they have no direct knowledge of most of the allegations made; in general their instructions in relation to the foundations were given exclusively by Dr Stoffel, on whom they relied for their information as to these matters. We further understand, however, that they now have some doubts as to the authenticity of certain of the documents relied on by Nater Dallafior, both in the request for arbitration to which you refer and the request for mediation exhibited to your second affidavit in your disclosure proceedings in London last July. These doubts extend to some of the primary documentation on which the claims advanced on behalf of the foundations are based.

We confirm that Mr Banholzer and Mr Philippe will assist to the best of their ability in relation to the defence of the arbitration proceedings.

**Your letter of 28 August 2007**

In your letter of 28 August 2007, you seek information and documentation relating to the specific payments made from the accounts of Maytown and Plympton listed in the schedule to your letter. You may be aware that disclosure of similar information and documentation relating to these and other payments has already been sought by Clarissa and Cedrick Blickle in the course of proceedings brought by them in Bermuda to which our clients are party. Indeed, we are aware that a letter from Appleby to Cox Hallett Wilkinson requesting extensive further information in this regard was received only yesterday.

Our clients will provide such information as they can in relation to the payments you identify, as well as the further information sought by Clarissa and Cedrick Blickle, as rapidly as they can. There is however a very large quantity of material involved (your letter alone lists approximately 100 payments) and we would like to discuss with you and with the representatives of Clarissa and Cedrick Blickle how this may best be done in an efficient and cost-effective manner. We are meeting with the representatives of Clarissa and Cedrick Blickle in Zurich tomorrow to discuss this amongst other matters, and we suggest that it may be sensible for you also to coordinate with them following that meeting.

**Further steps**

In the light of the matters referred to in this letter specifically concerning the payments made through the Recipient Entities, we and our clients consider that it is now a matter of the highest priority – as we are sure you will agree – to identify and if possible freeze and recover the substantial sums which appear to have been misappropriated by Dr Stoffel. We wish to make clear that, so far as they properly can, our clients wish fully to co-operate with you and with the representatives of Clarissa and Cedrick Blickle, to assist in this exercise. Again, this is a matter which will be discussed with the representatives of Clarissa

Mr W Tacon

and Cedrick Blickle at the meeting with them in Zurich tomorrow, and we will contact you again following that meeting.


Yours faithfully,

Withers LLP


Copy:    Baker & McKenzie, London (reference Anthony Poulton by fax only)

Baker & McKenzie, Zurich (reference Richard Gassmann by fax only)


Enc.    Letter from Peter Schatz of Kellerhals Hess dated 3 October 2007

A selection of faxes from Dr Stoffel to Banholzer attaching invoices

# EXHIBIT 8

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the lender's assistance. Applicants should complete this form as "Guarantor" or "Co-Guarantor", as applicable. Co-Guarantor information must also be provided (and the appropriate box checked) when ☒ the income or assets of a person other than the "Guarantor" (including the Guarantor's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Guarantor's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Guarantor resides in a community property state, the security property is located in a community property state, or the Guarantor is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Guarantor and Co-Guarantor each agree that we intend to apply for joint credit (sign below):

_____    _____
Guarantor                   Co-Guarantor

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | ☐ VA  ☒ Conventional  ☐ Other (explain): _____ | Agency Case Number | Lender Case No. |
|---|---|---|---|
| | ☐ FHA  ☐ USDA/Rural Housing Service | | REDACTED 68-5A |

| Amount $ 3,000,000.00 | Interest Rate 7.000 % | No. of Months 360 | Amortization Type: | ☐ Fixed Rate  ☐ GPM | ☒ Other (explain): ARM type: 1M LIB,7Y FX,1M |
|---|---|---|---|---|---|

ARM,IO,AM

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Units |
|---|---|
| 340 West 12th Street,New York,NY 10014 | 3 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| See Preliminary Title Report | |

| Purpose of Loan | ☐ Purchase  ☐ Construction  ☐ Other (explain): | Property will be: |
|---|---|---|
| | ☒ Refinance  ☐ Construction-Permanent | ☒ Primary Residence  ☐ Secondary Residence  ☐ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements  ☐ made  ☐ to be made |
|---|---|---|---|---|
| | $ | $ | Home Improvement | Cost: $ |

| Title will be held in what Name(s): Lauramca Holdings LLC | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| | | ☒ Fee Simple  ☐ Leasehold (show expiration date) |

| Source of Down Payment, Settlement Charges and/or Subordinate Financing (explain) |
|---|
| |

## III. GUARANTOR INFORMATION

| Guarantor | Co-Guarantor |
|---|---|

| Guarantor's Name (include Jr. or Sr. if applicable) | Co-Guarantor's Name (include Jr. or Sr. if applicable) |
|---|---|
| Marco Stoffel | |

| Social Security Number REDACTED 5128 | Home Phone (incl. area code) 914-722-2752 | DOB (MM/DD/YYYY) REDACTED | Yrs. School 5V | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|

| ☒ Married  ☐ Separated  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) no. 3  ages 12 14 16 | ☐ Married  ☐ Separated  ☐ Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) no.  ages |
|---|---|---|---|

| Present Address (street, city, state, ZIP) ☒ Own  ☐ Rent  No. Yrs. 3 | Present Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|
| 340 W 12th St New York, NY 10014 | |

| Mailing Address (street, city, state, ZIP) | Mailing Address (street, city, state, ZIP) |
|---|---|
| | |

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. | Former Address (street, city, state, ZIP)  ☐ Own  ☐ Rent  No. Yrs. |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Guarantor | Co-Guarantor |
|---|---|

| Name & Address of Employer  ☐ Self Employed | Yrs. on this job 1.6 | Name & Address of Employer  ☐ Self Employed | Yrs. on this job |
|---|---|---|---|
| Dr. Marco Stoffel 650 Madison Ave 340 W 12th St New York, NY 10022 10014 | Yrs. employed in this line of work/profession 20 | | Yrs. employed in this line of work/profession |

| Position/Title/Type of Business Trustee | Business Phone (incl. area code) 212-937-1955 | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| Stoffel & Partner | | | |
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business Corporate Attorney | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer  ☐ Self Employed | Dates (from - to) | Name & Address of Employer  ☐ Self Employed | Dates (from - to) |
|---|---|---|---|
| | | | |
| | Monthly Income $ | | Monthly Income $ |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Freddie Mac Form 65    01/04                         Page 1 of 4                         Fannie Mae Form 1003

REDACTED   §8–5A

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Guarantor | Co-Guarantor | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 32,500.00 | $ | $ 32,500.00 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | | $ 17,500.00 |
| Bonuses | | | | Other Financing (P&I) | | |
| Commissions | | | | Hazard Insurance | | 875.00 |
| Dividends/Interest | | | | Real Estate Taxes | | 7,812.50 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in "describe other income," below) | | | | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 32,500.00 | | $ 32,500.00 | Total | $ | 26,187.50 |

*Self Employed Guarantor(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income** Notice: Alimony, child support, or separate maintenance income need not be revealed if the Guarantor (B) or Co-Guarantor (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Guarantors if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise separate Statements and Schedules are required. If the Co-Guarantor section was completed about a spouse, this Statement and supporting schedules must be completed about that spouse also.

Completed [ ] Jointly [ X ] Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| | | Name and address of Company | $ Payment/Months | $ |
| **List checking and savings accounts below** | | HSBC SAKS FIFTH AVE | | |
| Name and address of Bank, S&L, or Credit Union | | | | |
| **Bluecolt Securities** | | | | |
| | 3,488,400.70 | REDACTED   9813 | 15.00 | 65.00 |
| | | Acct. no. | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| **First Republic Bank** | | | | |
| | | Acct. no. | | |
| Acct. no. | | Name and address of Company | $ Payment/Months | $ |
| Name and address of Bank, S&L, or Credit Union | | | | |
| | | | | |
| Acct. no. | | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| | | | | |
| Acct. no. | | Acct. no. | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| | | | | |
| Acct. no. | | | | |
| Stocks & Bonds (Company name/number & description) | $ | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | | | |
| **Subtotal Liquid Assets** | $ 3,488,400.70 | Acct. no. | | |
| Real estate owned (enter market value from schedule of real estate owned) | $ | Name and address of Company | $ Payment/Months | $ |
| Vested interest in retirement fund | $ | | | |
| Net worth of business(es) owned (attach financial statement) | $ | | | |
| Automobiles owned (make and year) | $ | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job Related Expense (child care, union dues, etc.) | $ | |
| | | Total Monthly Payments | | 15.00 |
| Total Assets a. | $ 3,488,400.70 | Net Worth (a minus b) $ 3,488,335.70 | Total Liabilities b. | $ 65.00 |

## VI. ASSETS AND LIABILITIES (cont.)

**Schedule of Real Estate Owned** (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| | | $ | $ | $ | $ | $ | $ |
| | | | | | | | |
| | | | | | | | |
| | | | | | | | |
| | Totals | $ | $ | $ | $ | $ | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 1,399,657.00 |
| e. Estimated prepaid items | 4,083.31 |
| f. Estimated closing costs | 68,964.00 |
| g. PMI, MIP, Funding Fee | |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 1,472,704.31 |
| j. Subordinate financing | |
| k. Borrower's closing costs paid by Seller | |
| l. Other Credits (explain) | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | 3,000,000.00 |
| n. PMI, MIP, Funding Fee financed | |
| o. Loan amount (add m & n) | 3,000,000.00 |
| p. Cash from/to Borrower (subtract j, k, l & o from i) | (1,527,295.69) |

## VIII. DECLARATIONS

If you answer "yes" to any questions a through i, please use continuation sheet for explanation.

| | Guarantor Yes No | Co-Guarantor Yes No |
|---|---|---|
| a. Are there any outstanding judgments against you? | ☐ ☒ | ☐ ☐ |
| b. Have you been declared bankrupt within the past 7 years? | ☐ ☒ | ☐ ☐ |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ ☒ | ☐ ☐ |
| d. Are you a party to a lawsuit? | ☐ ☒ | ☐ ☐ |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | ☐ ☒ | ☐ ☐ |
| (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name and address of Lender, FHA or VA case number, if any, and reasons for the action.) | | |
| f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ ☒ | ☐ ☐ |
| g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ ☒ | ☐ ☐ |
| Is any part of the down payment borrowed? | ☐ ☒ | ☐ ☐ |
| Are you a co-maker or endorser on a note? | ☐ ☒ | ☐ ☐ |
| i. Are you a U.S. citizen? | ☒ ☐ | ☐ ☐ |
| j. Are you a permanent resident alien? | ☐ ☒ | ☐ ☐ |
| k. Do you intend to occupy the property as your primary residence? If "Yes," complete question m below. | ☒ ☐ | ☐ ☐ |
| l. Have you had an ownership interest in a property in the last three years? | ☒ ☐ | ☐ ☐ |
| (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | |
| (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | SP | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

The undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of the information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described herein; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated herein; (6) any owner or servicer of the Loan may verify or reverify any information contained in the application from any source named in this application, and Lender, its successors or assigns may retain the original and/or an electronic record of this application, even if the Loan is not approved; (7) the Lender and its agents, brokers, insurers, servicers, successors and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to the closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the owner or servicer of the Loan may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer credit reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

| Guarantor's Signature | Date | Co-Guarantor's Signature | Date |
|---|---|---|---|
| X | 5/21/07 | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling, in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a Lender may discriminate neither on the basis of this information, nor on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation or surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| GUARANTOR | ☐ I do not wish to furnish this information | CO-GUARANTOR | ☐ I do not wish to furnish this information |
|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino |
| Race: | ☐ American Indian or Alaskan Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☒ White | Race: | ☐ American Indian or Alaskan Native   ☐ Asian   ☐ Black or African American   ☐ Native Hawaiian or Other Pacific Islander   ☐ White |
| Sex: | ☐ Female   ☒ Male | Sex: | ☐ Female   ☐ Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) Douglas McNulty | Name and Address of Interviewer's Employer First Republic Bank |
|---|---|---|
| This application was taken by: ☒ Face-to-face interview ☐ Mail ☐ Telephone ☐ Internet | Interviewer's Signature / Date 4/3/07 | 10 Columbus Circle New York, NY 10019 |
| | Interviewer's Phone Number (incl. area code) 212-331-0088 | |

| Freddie Mac Form 65   01/04 | Page 3 of 4 | Fannie Mae Form 1003   07/05 |
|---|---|---|

Marco Stoffel

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B for Guarantor or C for Co-Guarantor. | Guarantor: **Marco Stoffel** | Agency Case Number: |
| | Co-Guarantor: | Lender Case Number: **REDACTED 68-5A** |

Prior Employment Information Continued

| Name & Address of Employer | | Self Employed | Dates (from - to) | Name & Address of Employer | | Self Employed | Dates (from - to) |
|---|---|---|---|---|---|---|---|
| | | | Monthly Income $ | | | | Monthly Income $ |
| Position/Title/Type of Business | | Business Phone (incl. area code) | | Position/Title/Type of Business | | Business Phone (incl. area code) | |

Other Income

Whose:                    Description:                    Amount:

### ADDITIONAL DISCLOSURE FOR CALIFORNIA, OHIO, OR MASSACHUSETTS RESIDENTS

**If you are applying in California,** the following applies: Under California Civil Code 1812.30(i) Credit applications for the obtainment of money, goods, labor, or services shall clearly specify that the applicant, if married, may apply for a separate account.

**If you are applying in Ohio:** Equal Credit Opportunity Notice: You are hereby provided the following "Equal Credit Opportunity" notice as required by Section 4112.02.021 of the Ohio Revised Code. "The Ohio laws against discrimination require that all creditors make credit equally available to all credit worthy customers, and that credit reporting agencies maintain separate credit histories on each individual upon request. The Ohio civil rights commission administers compliance with this law."

**If you are applying in Massachusetts,** the following applies: Under Massachusetts statute, MASS GEN L ch 184, Section 17b, you, the Borrower are entitled to know the following:

1. The responsibility of the attorney for the mortgagee is to protect the interest of the mortgagee.

2. The mortgagor may, at his own expense, engage an attorney of his own election to represent his own interests in the transaction.

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Guarantor's Signature | Date | Co-Guarantor's Signature | Date |
|---|---|---|---|
| X | 5/21/07 | X | |

Freddie Mac Form 65   01/04                    Page 4 of 4                    Fannie Mae Form 1003   07/05